UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 24-MD-3101-JSC<br><br>MDL 3101<br><br>Hon. Jacqueline Scott Corley<br><br>**DEFENDANT CAMPBELL SOUP COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' MASTER LONG-FORM COMPLAINT**<br><br>Hearing Date: February 27, 2025<br>Time: 9:00 a.m.<br>Location: Courtroom 8 |

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that Defendant Campbell Soup Company hereby files its Motion to Dismiss Plaintiffs' Master Long-Form Complaint. A hearing has been scheduled for Thursday, February 27, 2024 at 9:00 a.m., or as soon thereafter as counsel may be heard.

The grounds for this motion are: (1) the Master Complaint fails establish that plaintiffs have Article III standing because it fails to plausibly allege their injuries are fairly traceable to Campbell Soup Company and (2) the Master Complaint never alleges that Campbell Soup Company manufactured or sold Baby Food products, and plaintiffs have wrongly sued Campbell Soup Company based solely on its status as the former parent company of Plum, PBC.

This motion is based upon the pleadings and papers on file in this action, this Notice of Motion and Motion, and the Memorandum of Points and Authorities.

Dated:  December 2, 2024

Respectfully submitted,

COZEN O'CONNOR

/s/ Peter M. Ryan
Peter M. Ryan
Joan M. Taylor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103

Brett Taylor
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401

*Counsel for Campbell Soup Company*

i

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| III. | LEGAL STANDARD | 4 |
| | A. Rule 12(b)(1) | 4 |
| | B. Rule 12(b)(6) | 5 |
| IV. | ARGUMENT | 6 |
| | A. Plaintiffs Fail to Plausibly Allege That Their Injuries Are Fairly Traceable to Campbell Soup Company and Campbell Soup Company Products. | 6 |
| | B. Plaintiffs Sued the Wrong Company. | 7 |
| V. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*920 S. Beach Blvd., LLC v. City of Bay Saint Louis*,
  No. 1:21-CV-263-TBM-RPM, 2023 WL 2749170 (S.D. Miss. Mar. 31, 2023) ...................... 4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 5, 10

*Bastidas v. Good Samaritan Hosp.*,
  No. C 13-04388 SI, 2014 WL 3362214 (N.D. Cal. July 7, 2014) ............................................. 8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................... 5

*Best Carpet Values, Inc. v. Google, LLC*,
  90 F.4th 962 (9th Cir. 2024) .............................................................................................. 6

*Calzone v. Hawley*,
  866 F.3d 866 (8th Cir. 2017) ............................................................................................. 5

*Coubaly v. Cargill*,
  610 F. Supp. 3d 173 (D.D.C. 2022) ............................................................................... 5, 7

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ........................................................................................................... 5

*Doe v. Walmart Inc.*,
  No. 18-CV-2125-LHK, 2019 WL 499754 (N.D. Cal. Feb. 8, 2019) ......................................... 4

*In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*,
  87 F.4th 315 (6th Cir. 2023) .......................................................................................... 5, 7

*Easter v. Am. West Fin.*,
  381 F.3d 948 (9th Cir. 2004) ......................................................................................... 4, 6

*In re Gilead Sciences Securities Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ..................................................................................... 6, 10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................................... 4

*Mahon v. Ticor Title Ins. Co.*,
  683 F.3d 59 (2d Cir. 2012) ................................................................................................ 5

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) ........................................................................................... 4

*Perez v. Wells Fargo & Co.*,
  No. C 14-0989 PJH, 2015 WL 1887354 (N.D. Cal. Apr. 24, 2015) ................................... 4, 7

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ........................................................................................ 8, 9

*Runaj v. Wells Fargo Bank*,
  667 F. Supp. 2d 1199 (S.D. Cal. 2009) ................................................................................ 6

*Sarmiento v. Bank of New York Mellon*,
  No. CIV. 10-00349 JMS, 2011 WL 884457 (D. Haw. Mar. 10, 2011) ................................ 8

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ............................................................................................................ 4

*United States v. Bestfoods*,
  524 U.S. 51 (1998) .............................................................................................................. 8

*Usher v. City of L.A.*,
  828 F.2d 556 (9th Cir. 1987) .............................................................................................. 5

*whiteCryption Corp. v. Arxan Techs., Inc.*,
  No. 15-CV-00754-WHO, 2015 WL 3799585 (N.D. Cal. June 18, 2015) ............................ 8

**Statutes**

Del. Code Ann. tit. 8, § 362(a) .................................................................................................. 9

**Court Rules**

Fed. R. Civ. P. 8 ............................................................................................................. 5, 9, 10

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 1, 4, 10

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 1, 5, 8, 10

# STATEMENT OF ISSUES TO BE DECIDED

1. Whether Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure should be granted where plaintiffs' Master Complaint fails establish that plaintiffs have Article III standing because it fails to plausibly allege their injuries are fairly traceable to Campbell Soup Company.

2. Whether Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted where the Master Complaint never alleges that Campbell Soup Company manufactured or sold Baby Food products, and plaintiffs have wrongly sued Campbell Soup Company based solely on its status as the former parent company of Plum, PBC.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant Campbell Soup Company respectfully submits its Motion to Dismiss the Master Long-Form Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Master Complaint fails for two reasons: Plaintiffs cannot establish Article III standing to pursue the claims alleged against Campbell Soup Company. Plaintiffs have also sued the wrong party. From June 13, 2013, to May 3, 2021, Campbell Soup Company indirectly owned a subsidiary, Plum, PBC, which manufactured (through contract manufacturers) and sold baby food products. Campbell Soup Company, however, did not and does not manufacture or sell baby food products.

The Master Complaint speaks in impermissible generalities. Plaintiffs allege that they consumed "Contaminated Baby Foods" but name no Campbell Soup Company products in the 661 products listed in Appendix A to the Master Complaint. Dkt. #197, Appendix A. Without explanation, plaintiffs equate Campbell Soup Company with Plum, PBC, a baby food company that used to be an indirect Campbell Soup Company subsidiary. Plaintiffs' allegations about the products of another company are insufficient to establish standing under federal law, which requires plaintiffs to show that Campbell Soup Company caused the injury for which plaintiffs seek relief.

Plaintiffs sued the wrong company. The Master Complaint alleges "the presence of Toxic Heavy Metals" in the products of Plum, PBC, which products plaintiffs simply re-name as "Campbell and Plum's Baby Food." Dkt. #197 ¶ 48. While plaintiffs acknowledge that Plum, PBC, is, was, and always has been an independent and distinct corporate and legal entity, the Master Complaint describes "Plum Organics" as a Campbell Soup Company brand.

Plum, PBC, was an indirectly wholly owned subsidiary of Campbell Soup Company from June 13, 2013, until May 3, 2021, when Plum, PBC, was sold in a stock purchase agreement to Sun-Maid Growers of California. Plum, PBC, was and is a public benefit corporation under Delaware law responsible for its own products.

Courts have long recognized that a parent company is not directly liable for the actions of its subsidiary. Plaintiffs allege no basis for their direct claims against Campbell Soup Company save its former ownership interest in Plum, PBC, and the alleged involvement of Campbell Soup

1

**DEFENDANT CAMPBELL SOUP COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6) TO DISMISS PLAINTIFFS' MASTER LONG-FORM COMPLAINT,
Case No. 24-MD-3101-JSC**

Company employees in Plum product quality and testing and in responses to Congressional inquiries about Plum products in 2020 and 2021.  None of these allegations is sufficient to disregard Plum, PBC's status as a duly incorporated legal entity under Delaware law.

The Master Complaint fails to allege Article III standing and fails to state actionable claims against Campbell Soup Company.  Campbell Soup Company, Plum PBC's former parent company, is not a proper party for claims based on Plum Organics products.  The Court should dismiss plaintiffs' claims against Campbell Soup Company.

## II.    FACTUAL BACKGROUND

Campbell Soup Company is incorporated in New Jersey, with its principal place of business in Camden, New Jersey.  Compl., Dkt. #197 ¶ 25; *see also* Declaration of Peter M. Ryan in Support of Defendant Campbell Soup Company's Request for Judicial Notice in Support of Motion Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to Dismiss Plaintiffs' Master Long-Form Complaint [hereinafter, the "Ryan Declaration" or "Ryan Decl."], Ex. A, at 1.[1]  Campbell Soup Company acquired Plum, Inc., in June 2013.  Compl., Dkt. #197 ¶ 24; Ryan Decl., Ex. B, at 1; Ex. C, at 3.  Plum was incorporated as a public benefit corporation—Plum, PBC—in October 2013. Ryan Decl., Ex. I. at 3.

Campbell Soup Company held Plum, PBC, as an indirect wholly owned subsidiary.  *Id.* Ex. A, at 9; Ex. E, at 4.  At all times, Plum, PBC, was a duly incorporated, separate legal entity.  *Id.* On May 3, 2021, Campbell Soup Company sold its interest in Plum, PBC, and ceased reporting revenues relating to Plum Organics products in its consolidated financials.  *Id.*

In February 2021, the Subcommittee on Economic and Consumer Policy of the U.S. House of Representatives Committee on Oversight and Reform issued a report regarding heavy metals in baby food products.  Compl., Dkt. #197 ¶ 42.  Numerous lawsuits have since been filed around the country against companies listed in the report.  The law firms of Plaintiffs' Lead Counsel in this multidistrict litigation have filed most of these lawsuits.

---

[1] Campbell Soup Company respectfully requests that the Court take judicial notice of the publicly available documents attached as **Exhibits A-K** to the Ryan Declaration, for the reasons described in its Request for Judicial Notice in Support of Motion Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to Dismiss Plaintiffs' Master Long-Form Complaint, also filed today.

The Master Complaint makes general "Baby Food" product and harm allegations committed by "Defendants" in the aggregate. Compl., Dkt. #197 ¶ 1 ("Defendants *knowingly* sold baby food contaminated with lead, arsenic, mercury, cadmium, and aluminum…."); *id.* ¶ 3 ("Plaintiffs, here, are all children that live with brain injuries and neurodevelopmental harm caused by exposure to the Defendants' Contaminated Baby Food…."); *id.* ¶¶ 141 & 157 (**COUNT I**: "At all relevant times, Defendants engaged in the business of researching, testing, developing, designing, manufacturing, labeling, marketing, selling, inspecting, distributing, and promoting Baby Foods, which are defective and unreasonably dangerous to consumers…. As a direct and proximate result of the Defendants' failure to provide an adequate warning of the risks of exposure to the Toxic Heavy Metals in their Contaminated Baby Foods, Plaintiffs have been injured…."); *id.* ¶¶ 160 & 169 (**COUNT II**: "At all times herein mentioned, Defendants designed, manufactured, tested, marketed, sold, handled, and distributed the Contaminated Baby Foods consumed by Plaintiffs…. As a direct and proximate result of the Defendants' defective manufacture of the Contaminated Baby Foods, Plaintiffs have been injured…."); *id.* ¶¶ 173 & 183 (**COUNT III**: "At all relevant times, Defendants' Baby Food products were designed and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use or consumption by infants and babies, including Plaintiffs…. The design defects in Defendants' Contaminated Baby Foods were substantial factors in causing Plaintiffs' injuries."); *id.* ¶ 191 (**COUNT IV**: "Defendants failed and deliberately refused to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of their products and to those who would foreseeably use or be harmed by Defendants' Contaminated Baby Foods."); *id.* ¶ 212 (**COUNT V**: "Defendants' improper manufacturing of Baby Foods was willful, wanton, malicious, and conducted with reckless disregard for the health and safety of users of the Contaminated Baby Foods, including Plaintiffs."); *id.* ¶ 220 (**COUNT VI**: "The Defendants breached their duty by failing to use reasonable care in the design of Contaminated Baby Foods by negligently designing the foods with ingredients and/or components contaminated with Toxic Heavy Metals."); *id.* ¶ 236 (**COUNT VII**: "Defendants' negligence includes, but is not limited to, their marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling and/or distributing Contaminated Baby Foods….").

3

**DEFENDANT CAMPBELL SOUP COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6) TO DISMISS PLAINTIFFS' MASTER LONG-FORM COMPLAINT,**
Case No. 24-MD-3101-JSC

1  The Master Complaint is more vague and conclusory in its allegations about Campbell Soup Company. Plaintiffs do not allege that Campbell Soup Company itself manufactured or sold any baby food, only that "Campbell sold baby food under the brand name Plum Organics *through* Plum." Dkt. #197 ¶ 25 (emphasis added). Plaintiffs fail to make a single product-specific allegation about Campbell Soup Company. Plaintiffs acknowledge that Campbell Soup Company and Plum, PBC, are and were separate companies but allege without elaboration that "allegations related to Plum between 2013 and May 3, 2021 apply equally to Campbell." *Id.* ¶ 27.

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

A federal court has subject matter jurisdiction if the complaint sufficiently alleges Article III standing. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact'…; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* Traceability requires a showing that the plaintiff's injury "was likely caused by the defendant." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021).

"The party invoking federal jurisdiction bears the burden" to adequately plead standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When a plaintiff alleges claims against multiple defendants, the plaintiff must show each element of standing as to *each* defendant. *See, e.g.*, *Easter v. Am. West Fin.*, 381 F.3d 948, 961-62 (9th Cir. 2004) ("As to those trusts which have never held a named plaintiff's loan, Borrowers cannot allege a traceable injury and lack standing."); *Doe v. Walmart Inc.*, No. 18-CV-2125-LHK, 2019 WL 499754, at *8-10 (N.D. Cal. Feb. 8, 2019) (granting motion to dismiss for lack of standing against defendant corporations because plaintiffs failed to allege injuries "traceable to any conduct by those Defendants"); *Perez v. Wells Fargo & Co.*, No. C 14-0989 PJH, 2015 WL 1887354, at *4-5 (N.D. Cal. Apr. 24, 2015) (dismissing complaint against five corporate entities, which the plaintiffs "refer[red] to collectively as 'Wells Fargo,'" because plaintiffs failed to allege facts sufficient to show standing as to each entity); *920 S. Beach Blvd., LLC v. City of Bay Saint Louis*, No. 1:21-CV-263-TBM-RPM, 2023 WL 2749170, at *8 (S.D.

Miss. Mar. 31, 2023) ("[T]he Court must determine whether the Plaintiff's alleged injuries are 'fairly traceable' to each Defendant, individually.").

A plaintiff cannot satisfy the standing requirement by lumping multiple defendants together as a collective group, because "standing is not dispensed in gross." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006); *In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 87 F.4th 315, 320 (6th Cir. 2023) ("*In re E.I. du Pont*"); *see also, e.g.*, *Coubaly v. Cargill*, 610 F. Supp. 3d 173, 180 (D.D.C. 2022) ("[P]laintiffs cannot establish standing at the industry level.") (citing *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 900 (4th Cir. 2022); *Calzone v. Hawley*, 866 F.3d 866, 869-70 (8th Cir. 2017); and *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65 (2d Cir. 2012)).

Here, plaintiffs must allege facts sufficient to show that their alleged injuries are plausibly traceable to Campbell Soup Company and Campbell Soup Company products. *In re E.I. du Pont*, 87 F.4th at 320 (applying the *Twombly/Iqbal* plausibility requirement to standing element of traceability); *see also* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). The Master Complaint summarily attributes all seventy-six Plum products listed in Appendix A to Plum, PLC, *and* to Campbell Soup Company, under the heading "Plum Products." *Compare* Dkt. #197 ¶¶ 25 & 27 *with* Dkt. #197-1, at 16. Campbell Soup Company previously owned Plum, PBC, which marketed and sold baby food products, but Campbell Soup Company did not and does not make or sell baby food.

**B.    Rule 12(b)(6)**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

In determining whether plaintiffs have stated claims upon which relief can be granted, the Court accepts plaintiffs' allegations as true and draws all reasonable inferences in their favor. *Usher*

*v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008); *Best Carpet Values, Inc. v. Google, LLC,* 90 F.4th 962, 968 (9th Cir. 2024) (court need not and should not accept legal conclusions as true when considering motion to dismiss); *Runaj v. Wells Fargo Bank*, 667 F. Supp. 2d 1199, 1204 (S.D. Cal. 2009) ("Notwithstanding this deference [to the nonmoving party], the court need not accept 'legal conclusions' as true."). Here, the Master Complaint asserts in conclusory fashion that Campbell Soup Company is responsible for alleged injuries arising from the consumption of seventy-six Plum Organics products because Campbell Soup Company used to own the stock of Plum, PBC.

## IV. ARGUMENT

### A. Plaintiffs Fail to Plausibly Allege That Their Injuries Are Fairly Traceable to Campbell Soup Company and Campbell Soup Company Products.

The Court should dismiss the Master Complaint because plaintiffs have not plausibly pled an injury traceable to Campbell Soup Company or any Campbell Soup Company product. *See Easter*, 381 F.3d at 961-62. Plaintiffs fail to allege that they consumed *any* Campbell Soup Company product.[2] Instead, plaintiffs treat Campbell Soup Company and Plum, PBC, as indistinguishable and summarily lump both companies together with all other defendants as presumed makers of "Contaminated Baby Foods." Dkt. #197 ¶¶ 5-6. It is impossible, based on the allegations in the Master Complaint, to trace any alleged injury to Campbell Soup Company or its products.

Plaintiffs contend that Campbell Soup Company and its former indirect subsidiary, Plum, PBC, are a single entity based on conclusory allegations that Campbell Soup Company "controlled and owned" Plum, PBC, and "sold baby food under the brand name Plum Organics *through* Plum." *Id.* ¶ 24-25 (emphasis added); *see also id.* at ¶ 48 (alleging the presence of "Toxic Heavy Metals in

---

[2] None of the 661 products listed in Appendix A to the Master Complaint is a Campbell Soup Company product. Appendix A never mentions Campbell Soup Company. Dkt. #197-1 Appendix A; *see also* Dkt. #197 ¶ 133 (Appendix A "is a list of the Defendants' products now known to be defective").

6

**DEFENDANT CAMPBELL SOUP COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6) TO DISMISS PLAINTIFFS' MASTER LONG-FORM COMPLAINT, Case No. 24-MD-3101-JSC**

*Campbell and Plum* Baby Food…" (emphasis added)).  The Master Complaint treats Plum, PBC, as a Campbell Soup Company brand, while simultaneously alleging that Campbell Soup Company sold Plum products "through Plum." *Id.* ¶ 25.  Plum, PBC, is and was at all times a separate public benefit corporation under Delaware law with its own products, brands, and intellectual property. *See* Ryan Decl., Ex. B (Plum, PBC Certificate of Good Standing), at 1; *id.* Ex. F, at 1 (Nest Collective Statement and Designation by Foreign Corporation); *id.* Ex. G, at 1 (Plum Amended Statement by Foreign Corporation); *id.* Ex. J (January 5, 2016 Registration of Plum Stylized Trademark); *id.* Ex. K (March 7, 2017 Registration of Plum Trademark).  Plaintiffs' allegations fail to trace their injuries to Campbell Soup Company or any Campbell Soup Company product. *Perez*, 2015 WL 1887354 (N.D. Cal. Apr. 24, 2015); *see also Coubaly*, 610 F. Supp. 3d at 180 ("[P]laintiffs must establish causation separately for each defendant.").[3]

### B.    Plaintiffs Sued the Wrong Company.

Plaintiffs do not allege that Campbell Soup Company manufactured or sold "Contaminated Baby Food."  Plaintiffs' allegations are based on Campbell Soup Company's erstwhile status as Plum, PBC's parent company.  Dkt. #197 ¶ 24 ("Plum was directly controlled and owned by Defendant Campbell."); *id.* ¶ 25 ("Campbell sells food and beverages and was the parent company

---

[3] Plaintiffs fail to trace their injuries to any specific Defendant.  They level almost all allegations at "Defendants" in the aggregate. *See*, *e.g.*, Dkt. 197 ¶ 1 ("Defendants *knowingly* sold baby food contaminated with lead, arsenic, mercury, cadmium, and aluminum…."); *id.* ¶ 160 ("Defendants designed, manufactured, tested, marketed, sold, handled, and distributed the Contaminated Baby Foods consumed by Plaintiffs.").  The Sixth Circuit's recent holding in *In re E.I. Du Pont* confirms that such sweeping allegations are insufficient to establish Article III standing.  In *In re E.I. Du Pont*, plaintiff sued ten defendants alleging that all manufactured a family of chemicals called per- and polyfluoroalkyl substances ("PFAS") and that plaintiff had PFAS in his blood.  87 F.4th at 318-319.  Plaintiff "treat[ed] the defendants as a collective.  The subject of nearly every verb … is 'Defendants.'" *Id.* at 320; *see also id.* at 318 ("[R]arely does [plaintiff] allege an action by a specific defendant.").  The court found that these allegations fell far short of "plausibly supporting an inference that each defendant 'likely caused' at least one of those PFAS compounds to end up in his blood." *Id.* at 320; *see also id.* at 321 (plaintiff "has not alleged facts supporting a plausible inference that any of these defendants caused these five particular PFAS to end up in his blood"); *id.* at 320 ("[A] plaintiff cannot sue ten defendants—by lumping them all together in his allegations—when the more particular facts would allow him to proceed against only one.  (Much less none.)").  Even a plaintiff who meets the actual-injury requirement "does not thereby obtain a license to sue anyone over anything," because "standing is not dispensed in gross." *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006)).

of Plum until May 3, 2021…. Campbell sold baby food under the brand name Plum Organics through Plum."); *id.* ¶ 27 ("For the purposes of this Complaint, allegations related to Plum between 2013 and May 3, 2021 apply equally to Campbell…."). The Court need not treat "allegations related to Plum" as "equally [applicable] to Campbell" simply because plaintiffs say so.

Courts have repeatedly held that a parent company cannot be held liable for the actions of a subsidiary simply by virtue of its ownership of the subsidiary. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.") (internal quotation omitted); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) ("As a general principle, corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary."). Plaintiffs fail to allege facts to warrant disregarding this rule. Campbell Soup Company is not liable for the alleged acts of Plum, PBC, which, as a duly incorporated, stand-alone entity at all times relevant to this action, is the proper entity to defend against—and is defending against—claims relating to Plum products.

Courts routinely dismiss claims under Rule 12(b)(6) when plaintiffs wrongly sue a parent company. *See, e.g.*, *Bastidas v. Good Samaritan Hosp.*, No. C 13-04388 SI, 2014 WL 3362214, at *4 (N.D. Cal. July 7, 2014) (granting defendant parent company's motion to dismiss where plaintiff failed to allege "sufficient facts to support liability"); *see also whiteCryption Corp. v. Arxan Techs., Inc.*, No. 15-CV-00754-WHO, 2015 WL 3799585, at *4 (N.D. Cal. June 18, 2015) (granting parent company's motion to dismiss where plaintiff pled insufficient facts regarding parent company's conduct); *Sarmiento v. Bank of New York Mellon*, No. CIV. 10-00349 JMS, 2011 WL 884457, at *3 (D. Haw. Mar. 10, 2011) (granting motion to dismiss because a "mere parent/subsidiary relationship is insufficient to create liability.").

Here, plaintiffs have wrongly sued a parent company; seek to undermine the corporate separateness of parent and subsidiary by treating them as a single entity; and fail to differentiate each company's products in the Master Complaint. *See, e.g.*, Dkt. #197 ¶ 48 (alleging the presence of "Toxic Heavy Metals in Campbell and Plum Baby Food…"). As Plum, PBC's incorporation and

8

**DEFENDANT CAMPBELL SOUP COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6) TO DISMISS PLAINTIFFS' MASTER LONG-FORM COMPLAINT, Case No. 24-MD-3101-JSC**

other corporate documents show, Plum, PBC, is and always has been a separate legal entity from Campbell Soup Company.  *See* Ryan Decl., Ex. B, at 1 (Plum, PBC Certificate of Good Standing); *id.* Ex. F, at 1 (Nest Collective Statement and Designation by Foreign Corporation); *id.* Ex. G, at 1 (Plum Amended Statement by Foreign Corporation).

Campbell Soup Company acquired the stock of (then) Plum Organics, Inc., in June 2013. *Id.* Ex. C, at 3.  Plum re-incorporated as a Delaware public benefit corporation on August 1, 2013. *Id.* Ex. H, at 1-2; Ex. I, at 1-2.[4]  Campbell Soup Company held Plum, PBC, as a wholly owned, indirect subsidiary until Campbell sold its interest in Plum, PBC, in May 2021.  *Id.* Ex. A, at 9, 12. At all times, Plum, PBC, remained a separate legal entity responsible for its own products and marks. *Id.*; *see also id.* Exs. J-K.  Campbell Soup Company's "corporate separateness insulates [it] from liability created by its subsidiary."  *Ranza*, 793 F.3d at 1070.  The Master Complaint includes no allegations about any Campbell Soup Company product and fails to allege facts "showing that [plaintiffs are] entitled to relief" from Campbell Soup Company based on Plum, PBC's products. Fed. R. Civ. P. 8(a)(2).

The conclusory allegations in Paragraph 25 of the Master Complaint equating Campbell Soup Company and Plum, PBC, are legally insufficient to disregard Plum, PBC's separate existence, or are legal conclusions the Court need not accept as true:

- "***Campbell sold baby food under the brand name Plum Organics through Plum.***" The Court can and should take judicial notice that Plum, PBC, is a separate corporation and that "Plum Organics" was and is a Plum, PBC product mark and brand, not a Campbell Soup Company mark and brand.  Ryan Decl., Exs. A-L.

- "**[M]any of the scientists and researchers that monitored the safety of Toxic Heavy Metals in Plum's baby foods were directly employed by Campbell or were directly controlled and trained by Campbell agents and employees.**" Neither the direct involvement of Campbell employees in "monitor[ing] the safety

---

[4] "A 'public benefit corporation' is a for-profit corporation … that is intended to produce a public benefit or public benefits and to operate in a responsible and sustainable manner.  To that end, a public benefit corporation shall be managed in a manner that balances the stockholders' pecuniary interests, the best interests of those materially affected by the corporation's conduct, and the public benefit or public benefits identified in its certificate of incorporation."  Del. Code Ann. tit. 8, § 362(a).  Plum, PBC's certificate of incorporation states that "The public benefits to be promoted by the Corporation include the delivery of nourishing, organic food to the nation's little ones and raising awareness and advancing solutions for childhood hunger and malnutrition in the United States."  Ryan Decl. Ex. H, at 1.

9

**DEFENDANT CAMPBELL SOUP COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6) TO DISMISS PLAINTIFFS' MASTER LONG-FORM COMPLAINT, Case No. 24-MD-3101-JSC**

of Toxic Heavy Metals in Plum's baby foods" nor the "train[ing]" of "scientists and researchers" by "Campbell agents and employees" states a valid basis to disregard Plum, PBC's status as a separate subsidiary corporation under Delaware law with its own products.

- ***"[I]t was Campbell's attorneys that responded to Congressional inquiries about heavy metals in Plum baby foods in 2019."*** No rule of law in Delaware (or anywhere else) states or implies that a parent company's response to a Congressional inquiry about its subsidiary is a valid basis to disregard the separate and independent existence of a duly created corporation.

- **"Campbell exercised control over Plum's baby food selling in the United States until May 3, 2021."** The Court is not required to accept as true "allegations that are merely conclusory." In re Gilead Sciences Securities Litig., 536 F.3d 1049, 1055 (9th Cir. 2008); see also Iqbal, 556 U.S. at 678-79 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

Campbell Soup Company is not Plum, PBC. The Plum, PBC products listed in Appendix A to the Master Complaint are not Campbell Soup Company products. From 2013 to 2021, Campbell Soup Company's indirectly wholly owned subsidiary, Plum, PBC, manufactured and sold baby food products, but Campbell Soup Company did not and does not manufacture or sell baby food products. The Court should dismiss Campbell Soup Company under Rule 12(b)(6).

## V.  CONCLUSION

The Master Complaint fails to plausibly trace plaintiffs' alleged injuries to Campbell Soup Company or any Campbell Soup Company product. Plaintiffs have wrongly sued Campbell Soup Company based solely on products and alleged actions of Campbell Soup Company's former subsidiary, Plum, PBC, a separate legal entity. The Court should accordingly dismiss the Master Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Dated:  December 2, 2024                      Respectfully submitted,

**COZEN O'CONNOR**

/s/  Peter M. Ryan
Peter M. Ryan
Joan M. Taylor
1650 Market St., Suite 2800
Philadelphia, PA 19103

Brett Taylor
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401
*Counsel for Campbell Soup Company*

# CERTIFICATE OF SERVICE

I certify that on December 2, 2024, I electronically filed the foregoing Motion to Dismiss with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

　　　　　　　　　　　　　　　　　　　　/s/ *Peter M. Ryan*
　　　　　　　　　　　　　　　　　　　　Peter M. Ryan