UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*Watkins v. Nurture, LLC, et al.*,<br>Case No. 24-cv-2832 JSC | Case No. 24-md-03101-JSC<br><br>**ORDER RE: RETAILER DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED PETITION**<br><br>Re: Dkt. No. 228 |

Plaintiffs allege toxic heavy metals in baby food caused their child to develop autism spectrum disorder ("ASD") at 2 years and nine months of age. Born in April 2018, Plaintiff allegedly consumed baby food sold by Amazon and Whole Foods ("Retailer Defendants") in substantial quantities prior to the ASD diagnosis. (Second Amended Petition "SAP" ¶¶ 46-47.) Among other claims, Plaintiffs assert negligence and redhibition claims against these Retailer Defendants. The Court granted Retailer Defendants' motion to dismiss the negligence claim with leave to amend. (Dkt. No. 207.)[1] Plaintiffs then filed their SAP, expanding on their negligence claim and adding a claim under the Louisiana Products Liability Act ("LPLA"). Now pending before the Court are Retailer Defendants' Rule 12(b)(6) motion to dismiss the negligence and LPLA claims and Rule 12(f) motion to strike portions of Plaintiffs' redhibition claim as well as the entire LPLA claim.

After carefully considering the parties' submissions, and with the benefit of oral argument

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1  on November 7, 2024, the Court GRANTS the motion to dismiss and DENIES the motion to
2  strike.  Plaintiffs have not plausibly alleged Retailer Defendants are "manufacturer-sellers" to
3  advance the LPLA claim.  Further, Plaintiffs have not plausibly alleged Retailer Defendants
4  negligently undertook a duty to monitor baby food products for the presence of heavy metals.

## DISCUSSION

Louisiana law governs the claims.  Plaintiffs first assert Retailer Defendants, as "manufacturer-sellers," are strictly liable under the LPLA for injuries caused by the heavy metals found in purchased baby food.  Next, Plaintiffs argue Retailer Defendants are liable for a negligent undertaking because Retailer Defendants assumed a duty to warn customers about potential dangers by adopting product-monitoring measures such as a product safety team and an unacceptable ingredients list.  Retailer Defendants move to dismiss under Rule 12(b)(6) for failure to state a claim.

The Court addresses each argument in turn, assuming the truth of the allegations stated in the SAP and drawing reasonable inferences in favor of the non-moving party.

### I.   LOUISIANA PRODUCTS LIABILITY ACT (COUNT VII)

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products," and the Act only applies to manufacturers.  La. Stat. Ann. § 9:2800.52; *see also Pickard v. Amazon.com, Inc*., 2023-01596 (La. 6/28/24), 387 So. 3d 515, 518 ("The Products Liability Act only applies to manufacturers.").  The statute defines a "manufacturer," in relevant part, as:

> (1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
>
> . . .
>
> (b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.

La. Stat. Ann. § 9:2800.53(1)(b).  A seller's exercise of control or influence over a "characteristic" of the product refers specifically to the "characteristic that *causes damage*," not "simply a seller's

exercise or [sic] control of **any** characteristic." *Stone Energy Corp. v. Nippon Steel*, 475 F. Supp. 3d 563, 568 (W.D. La. 2020) (emphasis added); *see also Frierson v. Spanset*, *Inc.*, 2010 WL 11537999 at *4-5 (E.D. La. Aug. 8, 2010) (explaining why the plain language of the statute means "causes damage" applies to the product's defective characteristic rather than the product as a whole).

While there is no dispute Retailer Defendants are sellers of baby food products, Plaintiffs do not plausibly allege Retailer Defendants exercised control or influence over a characteristic of the baby food that "caused damage"—that is, the toxic heavy metals. Plaintiffs' LPLA claim rests on the following allegations: 1) Whole Foods maintains lists of acceptable and unacceptable ingredients, (SAP ¶ 129), 2) communicates those lists to suppliers through a Category Merchant, (*id*. ¶ 130), and 3) refuses to sell products that contain ingredients on the unacceptable ingredients list, (*id*. ¶ 132). Plaintiffs assert that, by communicating these standards to manufacturers, Whole Foods exercises control over every ingredient that goes into products ultimately stocked in its stores. (*Id*. ¶ 164.) As for Amazon, Plaintiffs allege it possesses control over the acceptable and unacceptable ingredients lists via its role as parent company to Whole Foods. (*Id*. ¶ 165.) In support of this allegation, Plaintiffs further allege the number of ingredients on the Whole Foods unacceptable ingredients list increased following Amazon's acquisition of the company. (*Id*. ¶ 166.) Even assuming the truth of these allegations, Plaintiffs fail to plausibly plead an LPLA violation.

To start, communicating a list of unacceptable ingredients to baby food manufacturers does not support a plausible inference of "control" or "influence" over the presence of heavy metals in the baby food. *See Stone Energy Corp.*, 475 F. Supp. 3d at 568 (citing *Parks ex rel. Parks v. Baby Fair Imports, Inc*., 726 So. 2d 62 (La. App. 5th Cir. 1998)) (holding "mere relay of information" does not create manufacturer-seller liability under the LPLA). Retailer Defendants' maintenance of an unacceptable ingredients list does not have a "direct and specific influence" over the manufacturers' actual production of the food. *See Meunier v. Home Depot U.S.A., Inc*., No. 19-cv-12141, 2021 WL 795878, at *4 (E.D. La. Mar. 2, 2021) (holding the seller's regular inspections of the allegedly defective product for any quality that would render the product

3

1    unusable, and performing repairs if needed, did not make the seller a "manufacturer-seller").

2    *Parks* is instructive on this point. In *Parks*, a three-year old was injured when his shirt purchased

3    at K-Mart ignited. 726 So. 2d at 62-63. The Louisiana Court of Appeal considered whether K-

4    Mart was a "manufacturer-seller" given K-Mart had communicated garment specifications to the

5    manufacturer and performed quality assurance testing on the garments received. *Id*. at 64. The

6    court held that even when such specifications and testing were performed, the retailer was not a

7    "manufacturer-seller," since it had not exercised influence or control over "the design,

8    construction or quality of the product." *Id*.

9        Plaintiffs allege far less control or influence here. They do not allege Retailer Defendants

10   were involved in baby food heavy metal testing, either with the manufacturer or separately. Nor

11   do they allege Retailer Defendants told the manufacturers what to put in the baby food; at most,

12   they allege communication with Retailer Defendants regarding what ingredients are unacceptable.

13   And even then, Retailer Defendants do not exercise control over a manufacturer's process, design

14   decisions, or whether the manufacturer chooses to substitute or add other ingredients not on the

15   list. (Dkt. No. 228-2 at 8-9) (deposition testimony from a Whole Foods Category Merchant noting

16   manufacturers determine on their own whether and how to reformulate a product if it does not

17   comply with the unacceptable ingredients list).[2] On these allegations, Plaintiffs have not plausibly

18   pled the requisite influence or control necessary to state an LPLA claim.

19       Plaintiffs' arguments to the contrary are unpersuasive. First, Plaintiffs argue *Stone Energy*

20   *Corp*. and *Frierson* do not determine the standard for a manufacturer-seller's "control" or

21   "influence" since both cases were decided on summary judgment rather than a motion to dismiss.

22   But those cases' procedural posture is unrelated to the legal question of how "manufacturer-seller"

23   is interpreted in La. R.S. § 9:2800.53(1)(b). Second, Plaintiffs assert Retailer Defendants maintain

---

[2] The Court may consider materials submitted with and attached to the complaint. *United States v. Corinthian Colleges*, 655 F.3d 984, 998–99 (9th Cir. 2011). The Court may also consider unattached evidence on which the complaint necessarily relies if the complaint refers to the document, the document is central to the plaintiff's claim, and no party questions the authenticity of the document. *Id*. at 999. Neither party contests the authenticity of the November 11, 2022, deposition of Paige Brady discussed here. Further, the SAP relies on testimony from this deposition to support necessary elements of both the LPLA and negligent undertaking claims.

1  more than just an unacceptable ingredients list; they also keep an acceptable ingredients list.
2  Assuming the acceptable ingredients list is communicated to manufacturers, Plaintiffs do not
3  explain how an acceptable ingredients list exhibits any more control or influence than an
4  unacceptable ingredients list. (SAP ¶ 30.) Indeed, Plaintiffs do not—and cannot—allege Retailer
5  Defendants told baby food manufacturers to include ingredients with unacceptable levels of heavy
6  metals in the baby food products. At most they urge "discovery may prove that Whole Foods and
7  Amazon allow products to contain certain levels of heavy metals in Baby Food products sold in its
8  stores." (Dkt. No. 233 at 15.) But whether Retailer Defendants "allow" certain levels of heavy
9  metals is not the relevant question under Louisiana products liability law. Rather, the law looks to
10 whether Retailer Defendants controlled or influenced the addition of heavy metals to the baby
11 food. Here, Plaintiffs have not plausibly alleged such influence or control.
12     Consequently, Plaintiffs have not alleged facts permitting a plausible inference that
13 Retailer Defendants are "manufacturer-sellers" under the LPLA—an essential element of their
14 claim. The Court therefore GRANTS the motion to dismiss this claim.

## II. NEGLIGENT UNDERTAKING (COUNT V)

16     "Under Louisiana law, one who does not owe a duty to act may assume such a duty by
17 acting." *Hebert v. Rapides Par. Police Jury*, 2006-2001 (La. 4/11/07), 974 So. 2d 635, 643, *on*
18 *reh'g* (Jan. 16, 2008). This theory of liability has multiple names in the common law, including
19 "negligent undertaking," "voluntary assumption of duty," "assumption of duty," and the "Good
20 Samaritan doctrine." *Pickard v. Amazon.com, Inc.*, No. 5:20-cv-01448, 2023 WL 8191903, at *5
21 (W.D. La. Nov. 27, 2023), *certified question accepted*, 2023-01596 (La. 2/14/24), 379 So. 3d 19,
22 *certified question answered*, 2023-01596 (La. 6/28/24), 387 So. 3d 515. To assume a duty under
23 this liability theory, "[a]n affirmative or positive undertaking is required, and courts should
24 consider the scope of the defendant's involvement, the extent of defendant's authority, and
25 defendant's underlying intent." *Pickard v. Amazon.com, Inc.*, 2023-01596 (La. 6/28/24), 387 So.
26 3d 515, 525. In Louisiana, the question of whether a duty has been assumed is one of fact. *See*
27 *Schulker v. Roberson*, 91-1228 (La. App. 3 Cir. 6/5/96), 676 So. 2d 684, 688 ("The question of
28 whether a person has voluntarily assumed a duty is one of fact."); *see also Pickard*, 387 So. 3d at

526 (declining to determine whether safety procedures adopted by Amazon constitute an assumption of duty since it was not a question or proposition of Louisiana law).

Louisiana courts look to the Restatement (Second) of Torts for the elements of a negligent undertaking claim. *Id*. at 524. The Restatement discusses negligent undertaking in two provisions. Section 323 articulates liability in a two-party scenario:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if:
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965). Whereas Section 324A describes a theory of liability to third parties:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if:
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965).

**A.    Negligent Undertaking by Retailer Defendant Amazon**

To successfully plead such an undertaking, Plaintiffs must plausibly allege: 1) Amazon undertook services recognizable as necessary for the protection of another, 2) Amazon failed to exercise reasonable care in those services, and 3) the plaintiffs suffered harm because they relied on Amazon's undertaking.

Plaintiffs argue Amazon assumed a duty to warn customers because its product safety team monitors the Amazon website and may post warnings or remove products based on its own investigations or customer feedback. (SAP ¶¶ 124-27.) As to breach of this duty, Plaintiffs

6

1  further allege Amazon acted unreasonably by: 1) failing to remove the baby food from its site after
2  customers posted reviews regarding heavy metals, and 2) failing to remove the products despite
3  certain published industry reports that Amazon should have known about.  The Court assumes,
4  without deciding, that the existence of the product safety team amounts to an assumption of duty.
5  But even so, Plaintiffs' allegations do not plausibly state a failure to exercise reasonable care.

### 1. Amazon Customer Reviews of Baby Food Products

Plaintiffs do not allege facts to permit a plausible inference that Amazon failed to act reasonably in monitoring customer reviews on its platform.  Exhibits to the SAP include reviews on Happy Baby food products—manufactured by Nurture, LLC—that discuss the presence of heavy metals in the food.  (*Id*. at Exs. A, B.)  Plaintiffs allege "[m]onitoring these reviews revealed or would have revealed questions and concerns about heavy metals in Nurture's baby foods—and, upon information and belief, in Hain's baby foods—years before Plaintiff was born." (*Id.* ¶ 126.) However, the Exhibits upon which Plaintiffs rely all show the manufacturer responding to the customer reviews, indicating the products were not "unsafe."  (*Id*. at Exs. A, B.)  Plaintiffs have not alleged any facts, nor cited any law, to plausibly suggest reliance on the manufacturer's representations would be unreasonable.  Indeed, a food retailer "can reasonably rely on the assumption that a sealed container of foodstuff obtained from a reputable dealer was not contaminated." *Ard v. Kraft, Inc*., 540 So. 2d 1172, 1177 (La. Ct. App.), *writ denied*, 542 So. 2d 515 (La. 1989).  The Exhibits attached to the SAP show more than a reasonable assumption: Amazon received affirmative representations from Nurture, LLC that the products were safe. Even if Amazon had seen the customer reviews, (SAP ¶¶ 126-27), the SAP does not allege any facts that would plausibly put Amazon on notice of a legitimate safety concern for these baby food products.

### 2. Amazon's Knowledge of Industry Reports on Heavy Metals

Plaintiffs further assert Amazon should have known about certain industry reports related to heavy metals in baby food because Amazon is a manufacturer of its own baby food products. The Court is not persuaded.  At oral argument, Plaintiffs referred to a Happy Babies Bright Futures ("HBBF") report published in October 2019 that indicated the presence and risks of heavy

7

metals in the food.³ (*Id*. ¶¶ 14-15, 133.) However, the SAP does not allege facts that support an inference of how, when, or under what circumstances this information came to Amazon's attention. Further, Plaintiff was already 18 months old by the time the HBBF report was published, and it is not alleged that Amazon knew of the report's contents prior to its publication. Even assuming the heavy metals in the baby food caused Plaintiff to develop ASD, the SAP does not address whether the alleged neurological injury was due to conduct occurring before or after the publication of the HBBF report. Further, the SAP does not allege any facts regarding how Amazon would have learned of the report in the 15-month window between its publication and Plaintiff's ASD diagnosis, and, if it had, what it should have done. Plaintiffs merely conclude that since Amazon manufactures its own line of baby food, it should have known about the report as an "expert[] in the field." (*Id*. ¶¶ 133-34.) This allegation is insufficient to plausibly support an inference of breach of a duty of care. Without more, Plaintiffs have not plausibly alleged Amazon knew or should have known about the risks presented by heavy metals in the manufacturers' baby food.

\* \* \*

For the reasons stated above, the Retailer Defendants' motion to dismiss Plaintiffs' negligent undertaking claim against Amazon is GRANTED.

### B.   Negligent Undertaking by Retailer Defendant Whole Foods

Plaintiffs have also failed to plausibly allege a negligent undertaking by Whole Foods. As with the Court's analysis regarding Amazon, Plaintiffs must similarly allege three elements: 1) Whole Foods undertook services recognizable as necessary for the protection of another, 2) failed to exercise reasonable care in those services, and 3) the plaintiffs suffered harm because they relied on Whole Food's undertaking. Here, the first and second elements have not been plausibly alleged.

As to the first element, Plaintiffs allege Whole Foods affirmatively undertook a duty to warn customers about heavy metals in baby food by maintaining a quality standards team that

---

³ Plaintiffs do not reference the HBBF report in their opposition briefing.

8

develops "standards for ingredients, products, and the sourcing of products prior to products being placed on Whole Foods' shelves," (SAP ¶ 128), including a list of acceptable and unacceptable ingredients, (*id.* ¶ 129). Plaintiffs further allege Whole Foods employs a "Category Merchant," who communicates the acceptable and unacceptable ingredients lists to baby food manufacturers. (*Id.* ¶ 130.) Even assuming the truth of these allegations, Plaintiffs have not plausibly alleged Whole Foods undertook to monitor manufactured goods for the presence of heavy metals. To start, drawing reasonable inferences in Plaintiffs' favor, the unacceptable ingredients list refers only to ingredients or additives that would appear on a food label. Heavy metals such as lead, mercury, or cadmium are neither ingredients nor additives, and therefore, do not fall within the scope of Whole Foods' voluntary standards. Whole Foods' representations to customers about unacceptable ingredients does not support an assumption of duty regarding possible contaminants—such as heavy metals—that are beyond the scope of the list.[4] Further, Plaintiffs do not allege the Category Merchant coordinated with manufacturers regarding heavy metal or other contaminant testing. Indeed, the deposition testimony upon which Plaintiffs rely (*id.* ¶ 129 n.48), confirms the Category Merchant addresses only ingredients as they appear on food labeling per FDA regulations. (Dkt. No. 228-2 at 6, 8.) On these allegations, Plaintiffs have not plausibly pled Whole Foods undertook services recognizable as necessary for the protection of customers.

As to the second element, Plaintiffs' allegations do not permit a plausible inference that Whole Foods acted unreasonably. Plaintiffs assert Whole Foods failed to exercise reasonable care because it did not ensure "baby food products sold in its stores complied with its internal and external quality standards and acceptable ingredient lists," and did not "add toxic heavy metals to [its] unacceptable ingredient list . . . ." (Dkt. No. 233 at 11-12.) However, the SAP does not allege Whole Foods failed to enforce the acceptable or unacceptable ingredients lists with manufacturers. Indeed, the allegations regarding the Category Merchant's activity suggest the

---

[4] At the November 7 hearing, Plaintiffs argued additionally that the unacceptable ingredients list does not exclude contaminants because it includes bromated flour and bromate is not an ingredient. The Court disagrees. The FDA considers bromated flour and potassium bromate optional ingredients in bakery products. *See, e.g.*, 21 C.F.R. § 136.110(c)(1). Such ingredients must also be included on food labeling. 21 C.F.R. § 136.110(f).

9

1   opposite. (SAP ¶¶ 129-30.) Instead, the SAP only alleges a failure to include heavy metals on the
2   unacceptable ingredients list. (*Id.* ¶ 137.) But, as stated above, the unacceptable ingredients list
3   does not encompass contaminants like heavy metals, which do not appear on food labels.
4   Plaintiffs' allegation that Whole Foods failed to include *non-ingredient* metals on a list dealing
5   only with *ingredients* does not permit a plausible inference that Whole Foods acted unreasonably
6   here.

Accordingly, the Retailer Defendants' motion to dismiss Plaintiffs' negligent undertaking claim against Whole Foods is GRANTED.

### III.   MOTION TO STRIKE

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted). "Motions to strike are generally disfavored" and "should only be granted if the matter sought to be stricken clearly has no possible bearing on the subject matter of the litigation." *Gutzalenko v. City of Richmond*, No. 22-cv-02130, 2024 WL 1141689, at *2 (N.D. Cal. Mar. 15, 2024).

Retailer Defendants move to strike the entirety of the redhibition and LPLA claims for violating the Court's Order Re: July 25 Case Management Conference. (Dkt. No. 207.) There, the Court permitted Plaintiffs to file an "amended complaint that amends their negligence claims against Amazon.com and Whole Foods." (*Id*.) The Court further noted Plaintiffs "may not otherwise amend their complaint without leave of Court." (*Id*.) Retailer Defendants argue Plaintiffs violated this order by adding two paragraphs to the redhibition section of the SAP and adding the LPLA claim; therefore, the claims should be stricken. Based on the conduct evinced here, the Court declines to impose the "disfavored" remedy of striking the entire claims.

As to the redhibition claim, the two amended paragraphs are not redundant, immaterial, impertinent, scandalous, or an insufficient defense as required to strike the claim. *See Whittlestone, Inc.,* 618 F.3d at 973. The Court does not construe these additional paragraphs as in

10

violation of the Court's order, but rather as related to Plaintiffs' negligence allegations. Therefore, the Court will not strike the entire redhibition claim based on Plaintiffs' amendments. Further, the motion to strike the LPLA claim is rendered moot by the Court's dismissal of that claim under Rule 12(b)(6).

## CONCLUSION

For the reasons stated above, the Court GRANTS the motion to dismiss the LPLA claim and the negligent undertaking claim. Plaintiffs are granted leave to amend the negligent undertaking claim against Amazon. The remaining negligent undertaking claim against Whole Foods is dismissed without leave to amend, as amendment would be futile given Plaintiffs rely solely on the acceptable and unacceptable ingredients lists to support creation of the duty. The dismissal of the LPLA claim is also without leave to amend as based on Plaintiffs' allegations neither Retailer Defendant is a manufacturer-seller as a matter of law. Last, the Court DENIES the motion to strike.

Any amended complaint must be filed by December 20, 2024. Plaintiffs may not add new claims or defendants without further leave of court.

This Order disposes of Docket No. 228.

**IT IS SO ORDERED.**

Dated: December 3, 2024

*Jacqueline Scott Corley*

JACQUELINE SCOTT CORLEY
United States District Judge

11