

**DLA Piper LLP (US)**
4365 Executive Drive
Suite 1100
San Diego, California 92121-2133
www.dlapiper.com

Brooke K. Kim
brooke.kim@us.dlapiper.com
T  619.699.3439
F  619.764.6739

January 6, 2025
*FILED VIA ECF*

Hon. Jacqueline Scott Corley
450 Golden Gate Avenue
19th Floor, Courtroom 8
San Francisco, CA 94102

Re:   In re: Baby Food Products Liability Litigation (MDL 3101)
      Joint Letter Brief Regarding Short Form Plaintiff Fact Sheet

Dear Judge Corley:

Pursuant to Pretrial Order No. 10 ("PTO 10"), the parties exchanged proposed short form Plaintiff Fact Sheets ("PFS") on December 20, 2024. The parties were unable to resolve all disputes related to a proposed PFS through the meet-and-confer process.[1] Accordingly, the parties hereby submit their respective proposals to the Court.

As described in more detail below, Plaintiffs' proposal involves the completion of three short documents: (1) a short PFS to be completed by the Plaintiff's parent or guardian; (2) a short Preservation Disclosure Form to be completed by the Plaintiff's Counsel; and (3) a Defendant Fact Sheet. Pursuant to PTO 10, Defendants' proposal only involves a PFS.

Plaintiffs' proposed PFS is attached hereto as **Exhibit A**. Plaintiffs further submit a proposed Plaintiff's Preservation Disclosure Form as **Exhibit B**, and a proposed short form Defendant Fact Sheet as **Exhibit C**. Defendants' proposed PFS is attached hereto as **Exhibit D**. To assist the Court in identifying the differences between Plaintiffs' proposed "Preservation Disclosure Form" and Defendants' proposed PFS, attached hereto as **Exhibit E** is a redline of Plaintiffs' Preservation Disclosure Form as the original, with Defendants' proposed PFS as the revised version.

In support of their respective proposals, the parties raise in this letter brief five primary areas of disagreement between the parties' respective proposals.

---

[1] Defendants raising jurisdictional challenges did not participate in the meet and confer process and are not included in the term "Defendants" in this letter brief.



*VIA ECF*

Hon. Jacqueline Scott Corley
January 6, 2025
Page Two

### 1. The Structure of the Parties' Respective Proposals

**Plaintiffs' Position:** The issue regarding an initial fact sheet emerged following concerns by Defendants that third-party discovery was not being preserved. It has since grown to include plaintiff-specific discovery related to product identification. Accordingly, Plaintiffs propose three forms aimed at accomplishing both objectives, i.e., third-party preservation and product identification discovery.

Regarding third-party preservation, Plaintiffs propose a Preservation Disclosure Form ("PDF"), which provides a framework for identifying third parties that may have discoverable information. See Exhibit B. From the PDF, Defendants will be able to take whatever actions they believe are necessary to preserve discoverable information. Because this document is not in lieu of formal discovery, but is meant to facilitate third-party preservation, it is a document prepared by and submitted by counsel. Indeed, preservation letters and informal preservation disclosures are always prepared and signed by counsel.

Regarding product identification discovery, Plaintiffs propose facts sheets for both Plaintiffs and Defendants. The Plaintiff's initial fact sheet ("PIFS"), see Exhibit A, which is signed by the plaintiff or a guardian (if plaintiff is a minor), facilitates formal discovery related to those products consumed by the Plaintiff, to the best of the Plaintiff's knowledge. The Defendant's initial fact sheet ("DIFS"), see Exhibit C, similarly facilitates responsive product identification discovery as it pertains to the products identified by Plaintiff in the PIFS. Neither of these forms are necessary for general causation. However, with product identification discovery proceeding, a mutual exchange of product identification discovery is fair.

**Defendants' Position:** Plaintiff Fact Sheets are routinely signed by plaintiffs in MDLs, and Plaintiffs raise no justification to deviate from this practice. At Plaintiffs' request, Defendants agreed that the PFS need not be signed under oath. But if Plaintiffs, via their parents or guardians, are not attesting that they each performed a diligent search for the relevant information, reviewed the responses, and believe the responses are accurate to the best of their knowledge, the information Defendants receive will have little or no purpose or reliability.

Plaintiffs' only stated objection to having their clients sign the PFS is a purported fear that their disclosures will be used as a "gotcha." 12/12/24 Hearing Tr. 49:8-51:1. The Court already rejected this argument, finding that providing basic information to the best of one's knowledge as it exists at a particular point is not a "gotcha"—it's the truth. *Id*. at 51:2-8 ("If your clients can't remember, they don't remember—at one point now, this is what they remember…Then, after, being shown a list, they remember some other things[.] That's not a gotcha. That's the truth.").



*Via ECF*

Hon. Jacqueline Scott Corley
January 6, 2025
Page Three

Notwithstanding this clear guidance, Plaintiffs propose a multi-tier PFS whereby only the (1) case name; (2) Plaintiff's address and parent(s)' names; (3) alleged injury; and (4) Defendants' baby food products each Plaintiff alleges he or she at are disclosed in a signed PFS. All other information is part of Plaintiffs' proposed "Preservation Disclosure Form" signed only by counsel. Plaintiffs' attempt to recast the PFS into a "Preservation Disclosure Form" not only ignores this Court's clear guidance, it also fails to comply with PTO 10, which unambiguously calls for a PFS. Dkt. 297 at 3. Thus, this Court should adopt a single short form PFS, in the form proposed by Defendants and attached as Exhibit D, signed by each of Plaintiff's parent(s)/guardian(s).

2. **Whether the Fact Sheet / Disclosure Should Be Limited to Defendants' Baby Foods**

**Plaintiffs' Position:** Plaintiffs' Preservation Disclosure Form (Exhibit B) would provide Defendants with purchasing information for all commercial baby foods that Plaintiff contends caused or contributed to his/her injury. Ex. B (Question #2). Plaintiffs have agreed to identify the locations where Plaintiff's parent/guardian purchased *commercial baby food*. Plaintiffs have agreed to include with this list: (1) the store/website loyalty account number and phone number associated with the account; (2) the payment methods used; and (3) where applicable, credit card or debit card numbers used at the store. This gives Defendants the information necessary to make efforts it deems necessary to preserve purchasing records at those retailers at this stage of the litigation.

Yet, Defendants want more. They seek a list of every place Plaintiffs' parents or guardians ever purchased *any food* that may have been fed to Plaintiff, ever. Plaintiffs believe that at this stage of the litigation, the proper focus is *on commercial baby foods* – the products at issue in this MDL. Plaintiffs' position – limiting food purchasing records to commercial baby food – focuses on the products and purchases at issue, without unduly burdening Plaintiffs at this stage of the litigation and implicating large swathes of irrelevant information about foods not at issue. Plaintiffs therefore request that the Court restrict the question to focusing on retailers where commercial baby food Plaintiff consumed was purchased at this stage of the MDL.

Plaintiffs also request inclusion of language with this question noting that "This information is provided for preservation purposes only and is not meant to be an exclusive or exhaustive list. Rather, it is provided to the best of current recollection." Ex. B (Question #2). Yet Defendants oppose including this language. There is no legitimate purpose of excluding this language, which fairly captures the purpose of the PDF.

**Defendants' Position:** Defendants' PFS No. 6 requests information related to retailers at which each Plaintiff's caregivers purchased *all* foods that may have been fed to Plaintiff. Plaintiffs' proposed limitation that Plaintiffs disclose information related only to *Defendants'* baby foods the Plaintiff ate is untenable.



*Via* ECF

Hon. Jacqueline Scott Corley
January 6, 2025
Page Four

*First*, Plaintiffs' core allegation is Defendants' baby foods are defective and caused ASD/ADHD because they contain "detectable" levels of heavy metals. It is undisputed that such heavy metals are not exclusive to Defendants' baby foods but rather are widely found in the fruits, vegetables, and grains that baby foods contain. One cannot "shop one's way around" the issue. This means that any heavy metal exposure analysis *must* consider the totality of Plaintiffs' food consumption—not just Defendants' baby food. Defendants therefore have a right to obtain evidence of what families *actually* fed Plaintiffs, documented by purchase records. This is true not just because the heavy metal exposure from other foods may be as great or greater than from Defendants' baby foods, but also because a diverse diet reduces even the theoretical import of any particular heavy metal exposure from any particular dietary source.

*Second*, as a practical matter, it is unlikely that Plaintiffs' parents can reliably identify and exclude from their PFS retailers where they bought foods but *not* Defendants' baby foods. Experience has repeatedly shown that families buy baby foods along with other foods and often make baby food purchases at stores they do not readily recall as the stores where they shopped for baby food.

*Third*, there is no undue burden from this request. To date, state court plaintiffs have each identified a dozen or fewer stores at which they shopped for groceries, and similar numbers are expected here. Credit card statements are generally available to assist Plaintiffs in identifying stores where they purchased food. And, as this Court has repeatedly pointed out, a Plaintiff can only identify the stores his or her caregivers remember shopping at based on a reasonably diligent investigation of available records. Moreover, it is in everyone's interest to avoid a situation where purchase records are lost because Plaintiffs' caregivers failed to identify relevant stores at this early stage.

For these same reasons, each Plaintiff should identify all commercial baby food products he or she consumed, including baby food products made by non-Defendants. Ex. D, Defs.' PFS No. 10.

### 3. Whether the Fact Sheet / Disclosure Should Include an "Unsure" Option

**Plaintiffs' Position:** Plaintiffs' proposed Preservation Disclosure Form includes an optional answer for certain questions that he/she is "Unsure" of the answer. As with all discovery questions, sometimes the answer is unknown. Plaintiffs cannot be forced to answer yes or no to a question if they are unsure of the answer. For example, Question 12 in Plaintiffs' Preservation Disclosure Form (Exhibit B) asks "Has Plaintiff, Plaintiff's Parent, or biological sibling of Plaintiff undergone genetic testing?" The possible responses to this question are "Yes," "No," and "Unsure." It is completely reasonable and understandable that someone may be unsure whether a family member had undergone any genetic testing, at any time. As such, including an "Unsure" option recognizes the reality that a yes/no answer is not always going to be possible.



*Via ECF*

Hon. Jacqueline Scott Corley
January 6, 2025
Page Five

**Defendants' Position:** In response to multiple questions regarding whether Plaintiff has access to relevant records, in addition to "Yes" or "No," Plaintiffs seek to add an "Unsure" option. *See* Ex. B, Pls.' Preservation Form Nos. 4-5, 9-12. An "Unsure" answer is unnecessary because the PFS already includes a caveat that the answer was provided to the best of the person's knowledge based on a reasonably diligent investigation. If a parent responds "No," the answer is a representation that the individual performed a diligent search but was not able to locate any responsive records—in other words, the answer communicates that a reasonable investigation occurred, not 100% certainty of the record's existence. By contrast, an "Unsure" response conveys no useful information, and the option to select an "Unsure" answer in lieu of conducting a reasonably diligent search to arrive at a "Yes" or "No" would severely undermine the utility of the PFS.

  4. **Whether the Fact Sheet / Disclosure Should Include Information Related to Plaintiffs' Access to Photos, Videos, and Genetic Testing**

**Plaintiffs' Position:** Defendants' proposed Fact Sheet includes questions about the specific method of storage of any photos or videos that Plaintiffs may have, as well as questions about whether certain documents may be available to Plaintiffs "via an online portal." Ex. D (Questions 12-14, 19(b)). As has previously been represented to the Court, Plaintiffs' Counsel has instructed our clients to preserve all evidence potentially relevant to their claims, including all evidence in the form of electronically stored information. Yet, Defendants want more. They seek further information on exactly how certain information is stored, i.e., they want discovery about discovery before case-specific discovery even commences. This is too far—the information in the PDF is sufficient to give Defendants the information they need concerning third-party preservation. There is no basis for Defendants' demand that Plaintiffs specify how exactly certain information is being stored.

**Defendants' Position:** In the state court proceedings, photos and videos of plaintiffs have proven highly relevant to a variety of defenses, including by showing consumption of non-Defendant baby foods and indicators of ASD well before the date of diagnosis—thereby shortening the relevant exposure period. Accordingly, Defendants' proposed PFS asks for the form of existing photos/videos, and whether such photos/videos have been preserved. *See* Ex. D, Defs' PFS Nos. 12-14. Plaintiffs have articulated no burden from these requests. And, in state court, plaintiffs' failure to properly produce photos/videos has led to delays and complications in discovery, underscoring the need for Plaintiffs to investigate and identify the photos/videos available to them at this early stage.

Similarly, while Plaintiffs do not object to disclosing whether each Plaintiff or family members underwent heavy metal or genetic testing, Plaintiffs refuse to answer whether Plaintiffs have access



*VIA ECF*

Hon. Jacqueline Scott Corley
January 6, 2025
Page Six

to such testing. *See* Ex. D, Defs.' PFS Nos. 17(b), 18(b), and 19(b). These questions cause no burden, are directly relevant to Plaintiffs' preservation obligations, and should be included.

   5. **Plaintiffs' Proposed Defendant Fact Sheet**

**Plaintiffs' Position:** The third document is a DIFS, which would be completed by each Defendant following receipt of the PIFS and PDF from each Plaintiff. Reciprocating defendant fact sheets, in response to a plaintiff's fact sheet, are typical in MDLs. Because Defendants insist on Plaintiff-specific product identification discovery from each Plaintiff, Plaintiffs are entitled to plaintiff-specific product identification discovery from each Defendant.

The DIFS contains questions narrowly tailored to the specific baby food products identified in a Plaintiff's PIFS. *See* Ex. C. The DIFS would require Defendants to provide information relating to the years a baby food product identified in a Plaintiff's PIFS was sold, identifying information regarding that product, identification of the testing information on that product, and information on whether the product was manufactured by the defendant or by a co-manufacturer. *See* Ex. C. In nearly every MDL, defendant fact sheets go hand in hand with Plaintiff fact sheets to facilitate the mutual exchange of information, and the information requested in the DIFS is proportional to the information in the PIFS.

**Defendants' Position:** PTO 10 orders the parties to submit a proposed PFS. A Defendant Fact Sheet ("DFS") was never discussed; nor was a DFS contemplated by PTO 10. Indeed, Defendants have already provided extensive discovery to Plaintiffs, including with respect to preservation. The PFS was therefore meant to elicit basic information from Plaintiffs who have not yet engaged in this MDL—not create a redundant round of discovery on Defendants.

In addition to being beyond the scope of PTO 10, Plaintiffs' DFS should be rejected for multiple reasons. The DFS aims to require Defendants to produce a list of products, identifying where and when they were sold. *See* DFS No. 1. The Court already denied this request. 12/12/24 Hearing Tr. at 46:11-14 ("I'm not going to do that. I'm not going to order [Defendants] to give you a [product list].") Also, Plaintiffs' DFS would require Defendants to do Plaintiffs' work for them and identify by bates number each test result associated with a particular product—an analysis that is not consistent with the goals of a fact sheet, goes beyond what is required by Rule 26, and is already covered and being briefed in connection with Plaintiffs' discovery requests. *See* DFS No. 2. Similarly, other requests duplicate discovery already served related to identification of co-manufacturers, test results, and Defendants' contracts with co-manufacturers, which has been answered and/or is being teed up to the Court. Defendants already identified the co-manufacturers of the products included in Appendix A of the Master Complaint (and agreed to respond to an interrogatory asking for the same information). *See* DFS No. 3. Defendants also already



*VIA ECF*

Hon. Jacqueline Scott Corley
January 6, 2025
Page Seven


represented to Plaintiffs that they produced the test results for the products in Appendix A they were able to locate after a reasonably diligent search (and Plaintiffs are insisting Defendants do this again—twice—in response to Requests for Production). DFS No. 4, 7. Further, Defendants' contracts are irrelevant to general causation, and such requests can be addressed in the discovery process. *See* DFS Nos. 5-6. Plaintiffs' proposed DFS is therefore unnecessary.


Respectfully submitted,

*/s/ Brooke Killian Kim*
Brooke Killian Kim (SBN 239298)
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Telephone: (619) 699-3439
E-mail: brooke.kim@dlapiper.com

*Liaison Counsel for Defendants*

*/s/ Aimee H. Wagstaff*
Aimee H. Wagstaff (SBN 278480)
**WAGSTAFF LAW FIRM**
940 N. Lincoln Street
Denver, CO 80203
Telephone: (303) 376-6360
E-mail: awagstaff@wagstafflawfirm.com

*/s/ R. Brent Wisner*
R. Brent Wisner (SBN 276023)
**WISNER BAUM, LLP**
11111 Santa Monica Blvd., Suite 1750
Los Angeles, CA 90025
Telephone: (310) 207-3233
E-mail: rbwisner@wisnerbaum.com

*Co-Lead Counsel for Plaintiffs*