1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>ALL ACTIONS | Case No. 24-md-3101-JSC<br><br>MDL 3101<br><br>Hon. Jacqueline Scott Corley<br><br>**JOINT STATEMENT FOR MARCH 27, 2025 CASE MANAGEMENT CONFERENCE**<br><br>Date: March 27, 2025<br>Time: 9:00 a.m. PT<br>Location:   Courtroom 8<br>            19th Floor 450 Golden Gate Ave.<br>            San Francisco, CA 94102 |

Plaintiffs and Defendants[1] respectfully submit this Case Management Conference Statement in advance of the March 27, 2025 Case Management Conference.

## I. Short Form Complaints

On February 21, 2025, Plaintiffs submitted a final version of a proposed Short Form Complaint to be used by Plaintiffs in connection with the Long Form Master Complaint. Defendants object to portions of the Short Form Complaint. Pursuant to Pretrial Order No. 13 (ECF No. 413), Defendants' objections have been fully briefed. *See* ECF Nos. 420, 426, and 431. The parties will be prepared to discuss this issue with the Court at the March CMC.

## II. Plaintiff Fact Sheets

In compliance with PTO 12, the parties filed the Initial Plaintiff Fact Sheet on January 31, 2025. *See* ECF No. 361. In compliance with PTO 13, the parties have selected a vendor for electronic submission.

*Plaintiffs' Position:*

Plaintiffs propose that each Plaintiff filing a complaint after the Initial Plaintiff Fact Sheet is finalized by court order shall have ***60 days*** to serve a completed Initial Plaintiff Fact Sheet after filing of the Short Form Complaint.

*Defendants' Position:*

Defendants propose that each Plaintiff filing a complaint after the Initial Plaintiff Fact Sheet is finalized by court order shall have ***45 days*** to serve a completed Initial Plaintiff Fact Sheet after filing of the Short Form Complaint. Defendants need the information in the Plaintiff Fact Sheets as soon as possible to ensure that critical evidence is preserved, including food and baby food purchasing records, medical records, and educational records.

/ / /

/ / /

---

[1] As used herein, "Defendants" includes only those defendants that have not been dismissed from the MDL.

1
JOINT STATEMENT FOR MARCH 27, 2025 CASE MANAGEMENT CONFERENCE
24-MD-3101-JSC

### III. General Causation Schedule

*Plaintiffs' Position:*

Plaintiffs renew their request for an extension to the general causation schedule. This MDL represents an effort that no prior case or court in this litigation has undertaken: analyzing testing data for hundreds of products across seven manufacturing Defendants on behalf of dozens of clients. Plaintiffs were optimistic that this undertaking would run seamlessly. But that has not been the case. Additionally, Plaintiffs' nutritionist, who is going to determine the hypothetical menus for general causation, recently and unexpectedly lost a close family member, which will impact her ability to render a timely report in this matter. Plaintiffs respectfully renew their request that the Court extend the general causation schedule four months to allow the parties time to present the most robust evidence available given the circumstances. This modest extension will allow Plaintiffs and their experts time to receive, ingest, and analyze the outstanding discovery while not prejudicing Defense.

Plaintiffs took the Court's recent guidance to heart and are attempting to work with Defendants to resolve outstanding discovery issues. Nevertheless, critical issues remain on both the discovery and data processing fronts. Some of these issues would benefit from having additional time to resolve. On other issues, Plaintiffs and certain Defendants have reached an agreement in principle but Plaintiffs have yet to receive the additional anticipated information from Defendants. The information, once received, will need to be assessed by Plaintiffs, ingested by Plaintiffs' data experts, and the revised data outputs analyzed by Plaintiffs' other experts.

For example, to date, neither Walmart nor any of its co-manufacturers have produced any pre-2017 product formulas. Walmart has agreed to help Plaintiffs obtain these formulas from its co-manufacturers, but hardly any have been produced yet. One co-manufacturer, Baxters, refuses to produce any pre-2019 testing documents. Baxters claims that the documents are stored off-site and are difficult to retrieve. However, without these documents, or at least a representative sampling of them, Plaintiffs experts will be required to opine about a likely non-representative data set. Additionally, and perhaps most importantly, Plaintiffs have only been able to collect finished product and/or ingredient testing that can be assigned to 53% of Appendix A Walmart

1  products despite diligent conferrals, follow-ups, and formal written requests.

2  In another example, Defendant Gerber has not produced any finished product testing for
3  eighteen products, more than ten percent of Gerber's Appendix A products. Similarly, Plaintiffs
4  have identified several years of missing product formulas. In other words, although Plaintiffs have
5  formulas covering certain years for a particular product, Plaintiffs are missing formulas that cover
6  the entire period that the product has been on the market. Plaintiffs are working with Gerber to
7  determine whether those missing formulas are due to production errors or because formulas for
8  one particular year also cover additional years. Plaintiffs hope to have that issue resolved in the
9  coming weeks.

10  Defendant Nurture's requirements about the confidentiality of its product formulas also
11  created delays. For example, Nurture produced its formula database in a manner that allows only a
12  limited number of attorneys and experts review the product formulas. These product formulas
13  were not OCR'd, meaning that to find specific information, the reviewer would need to read each
14  page rather than use a search function to find information quickly. Nor could the reviewer take
15  electronic notes regarding the formula contents. Compounding the problem, Plaintiffs recently
16  discovered the Nurture provided Plaintiffs access to only a subset of product formulas relevant to a
17  separate state court case, not the product formulas for all of the Appendix A products.
18  Additionally, Nurture's security requirements for accessing its formulas has impeded Plaintiffs'
19  experts' ability to do their work. Nurture, for example, has objected to the use of certain
20  processors and data extraction tools being applied to their formulas. Plaintiffs and Nurture are
21  working together to rectify these issues—specifically to create a secure third-party-hosted
22  environment for Plaintiffs' experts to extract Nurture's formula data, but no resolution has been
23  reached. Until a resolution is reached, Plaintiffs' data experts are unable to process Nurture's
24  formula data. And even when a resolution is reached, it will take time to set up this environment
25  and for Plaintiffs and their experts to extract, review, and assess the new information.

26  There is other outstanding discovery Plaintiffs anticipate receiving from each Defendant.
27  Plaintiffs are anticipating updated interrogatory responses from at least Hain, Beech-Nut, Nurture,
28  Plum, and Sprout. Plaintiffs anticipate receiving additional responses as to the ambiguous testing

1   from at least Hain, Beech-Nut, Nurture, and Sprout. For much of the outstanding discovery,
2   Plaintiffs do not know when Defendants will provide it or in what form it will be provided. Once
3   received, the information will need to be ingested by Plaintiffs' data experts and analyzed by
4   Plaintiffs' exposure and other experts.

5   On the data processing front, Plaintiffs submit the declaration of Lacey Keller, Plaintiffs'
6   Data Analyst. Ms. Keller is dedicated to working as quickly as possible, and she has dedicated
7   hundreds of hours to her assignment so far. But ingesting the data and resolving the
8   inconsistencies within the data have proven to be a more time-intensive endeavor than originally
9   anticipated. *See* Keller Decl. at ¶¶12-17. Ms. Keller's declaration outlines the many issues that
10  require more time to address within Defendants' produced data. That additional time will allow
11  Ms. Keller and her team to sufficiently ingest and analyze the data such that it can be provided to
12  Plaintiffs' other experts to interpret. But even then, additional time is required for those other
13  experts to analyze the data from Ms. Keller in forming their opinions. *See* Jones Decl. at ¶¶ 15-16.
14  Thus, Plaintiffs seek a reasonable adjustment to the schedule that will not prejudice Plaintiffs nor
15  Defendants.

16  Plaintiffs request the Court extend the general causation schedule four months, as follows:

|  | **Current Date** | **New Date** |
|---|---|---|
| **Plaintiff Expert Reports** | April 25, 2025 | August 22, 2025 |
| **Defense Expert Reports** | June 6, 2025 | October 3, 2025 |
| **Plaintiff Rebuttal Expert Reports** | June 20, 2025 | October 17, 2025 |
| **Close of GC Discovery** | August 22, 2025 | December 19, 2025 |
| **Rule 702 Motions** | September 19, 2025 | January 16, 2026 |
| **Rule 702 Oppositions** | October 24, 2025 | February 20, 2026 |
| **Rule 702 Replies** | November 7, 2025 | March 6, 2026 |
| **Rule 702 Hearing** | December 8, 2025 | April 6, 2026 |

26  / / /
27  / / /
28  / / /

***Defendants' Position:***

At the CMC on February 27, 2025, Plaintiffs requested a four-month extension of their deadline to serve expert reports and of the general causation schedule, including the Rule 702 hearing dates that the Court carefully selected with the parties' input and agreement, based on unfounded accusations that Defendants had not complied with their discovery obligations. After a CMC during which the Court heard argument regarding several discovery "disputes" raised by Plaintiffs, many of which Plaintiffs raised for the first time in the joint CMC statement without any meet and confer efforts, the Court denied Plaintiffs' request to extend the general causation schedule.

Nothing has changed. Plaintiffs have had the information and documents they said they needed for general causation since at least October 2024. Indeed, it cannot reasonably be disputed that Plaintiffs have the information they need to serve general causation expert reports, because nearly two months ago, Plaintiffs' lead counsel here served six general causation expert reports (consisting of hundreds of pages) in the California state court litigation. None of those experts claimed they needed more test results or other information to render their opinions. Plaintiffs' request also comes only four months after they represented to the Court that an expert disclosure date in April 2025 was "just fine to us," and more than ten months after Plaintiffs boasted to this Court that they had "a full roster of experts. I have ***hundreds and hundreds of pages of [general causation] expert reports ready to go.***" 11/07/24 Tr. at 29:17-18; 05/16/24 Tr. at 27:12-15.

The Court should deny Plaintiffs' second request for a four-month extension of the general causation schedule deadlines for the same reasons it denied Plaintiffs' first request; Plaintiffs already have all of the information they need to comply with the existing schedule. Since the February CMC, Defendants have continued to meet and confer with Plaintiffs regarding their requests for additional information. Despite objecting to the scope of Plaintiffs' discovery requests as exceeding what is necessary for and/or relevant to general causation, Defendants have attempted in good faith to provide Plaintiffs with the information they claim they need, including identifying products that correspond to overbroad lists of purportedly "ambiguous" test results. Defendants' compliance with their discovery obligations is confirmed by the simple fact that Plaintiffs have not filed a single

Letter Brief regarding a discovery dispute since the Court denied Plaintiffs' last two requests for relief (on almost every issue) in January 2025. *See* ECF Nos 312, 357. Plaintiffs have had Defendants' test results for over two years in the state court litigation, which test results (and more) Defendants re-produced in October 2024 in this MDL. Plaintiffs have not complained about deadlines for submitting general and specific causation expert reports in the state-court *N.C.* and *Landon R.* cases using the same test results and formulas they now claim are insufficient.

If the Court does not simply deny Plaintiffs' request, Defendants request an opportunity to fully brief the issue. Like last month, Plaintiffs again gave Defendants little notice regarding their requested extension, leaving Defendants an unreasonably short time to respond. The parties met and conferred regarding the March CMC Statement on Monday, March 17. Plaintiffs stated that they intended to request a four-***week*** extension of their deadline to serve expert reports with no change to the December hearing date and did not preview the grounds for their request. Defendants provided Plaintiffs with a one-page CMC statement on Wednesday, March 19. Despite Defendants' requests that Plaintiffs provide their positions in a timely manner, Plaintiffs did not provide their initial statement to Defendants until Sunday, March 23, at which time Plaintiffs pivoted back to a four-***month*** extension request and a complete overhaul of the Court's schedule. Plaintiffs then provided a revised statement to Defendants on Monday, March 24, at 1:19 p.m., that added new substantive arguments.

In addition, Plaintiffs provided essentially ***no notice*** of the two declarations they filed in support of their request for an extension. Plaintiffs did not provide the supporting declarations of their data analyst, Lacey Keller and their exposure expert, Dr. Rachael M. Jones, ***until 10:39 a.m. on Tuesday, March 25, the same day the CMC statement was due at noon***. The Keller declaration is comprised of 17 paragraphs spanning 6 pages. The Jones declaration is comprised of 16 paragraphs spanning 5 pages. Plaintiffs offer no explanation for sending two lengthy, substantive declarations a little more than an hour before the filing deadline, thereby depriving Defendants of an opportunity to respond before the filing deadline. Defendants will do their best to respond to the declarations, but it is not clear they can do so in advance of the CMC and therefore the Court should decline to consider Plaintiffs' supporting declarations.

Plaintiffs raise two general discovery issues in support of their second request for a four-month extension.  Plaintiffs state they expect to receive additional discovery from certain Defendants (e.g., supplemental interrogatory responses and responses to Plaintiffs' inquiries regarding "ambiguous" test results), but "Plaintiffs do not know when Defendants will provide it or in what form it will be provided."  Plaintiffs' statements lack specificity and are too general for Defendants to respond with any precision.  They are also not accurate.  For example, certain Defendants that intend to serve supplemental interrogatory responses have already provided Plaintiffs with the information that will be included in those responses, or at least previewed the type of information they will provide.  In the context of Plaintiffs' inquiries regarding "ambiguous" test results, Defendants have explained to Plaintiffs whenever possible why Defendants' test results are not in fact ambiguous and how Plaintiffs can resolve their confusion based on the information already provided to them.  Defendants also generally told Plaintiffs when they can expect responses from Defendants to Plaintiffs' inquiries.  And with respect to one Defendant, the parties agreed in concept to a stipulation that would globally address outstanding "ambiguous" test results on March 13, 2025.  Plaintiffs requested to draft the stipulation, but have still not circulated a draft nearly two weeks after offering to do so.

Put simply, over the past few months, Plaintiffs have continuously raised new and different issues with each Defendant. Despite Defendants' objections to the scope and relevance of Plaintiffs' inquiries, Defendants have met and conferred in good faith and provided information where appropriate to Plaintiffs promptly and efficiently.  If Plaintiffs had any genuine disputes regarding the scope or timing of discovery, they should have filed letter briefs months ago.  That Plaintiffs only raise these discovery issues in CMC statements (or shortly before the deadline to file CMC statements) demonstrates that they are not genuine disputes, but rather were manufactured as support for Plaintiffs' requests for extensions to the general causation schedule.

Plaintiffs also raise specific discovery issues as to three Defendants in their statement. As demonstrated below, none of these issues warrants a change to the general causation schedule.

/ / /

/ / /

**A. Walmart**

Plaintiffs state that Walmart's pre-2017 formulations have not been produced. Plaintiffs neglect to inform the Court, however, that these formulations have not been produced because neither Walmart nor the relevant co-manufacturers (all of whom have been subpoenaed) possess responsive formulations going back that far. For instance, during the parties' meet-and-confer on March 21, 2025, Plaintiffs confirmed that there were only two co-manufacturers Plaintiffs were waiting to hear from regarding the production of pre-2017 formulations. One co-manufacturer has since confirmed that it has performed a diligent search and has not been able to locate any responsive formulations. Baxters anticipates producing the responsive formulations it has been able to locate this week. Thus, all pre-2017 formulations, to the extent they exist and can be located, will be produced this week and cannot be the basis of Plaintiffs' proposed request to delay the Court's schedule.

Similarly, Plaintiffs complain about the volume of test results related to Walmart's private label products. But again, Plaintiffs have already subpoenaed *all* Walmart co-manufacturers who supplied the relevant products and even several ingredient suppliers of such co-manufacturers. Walmart, Walmart's co-manufacturers, and ingredient suppliers have produced the test results they were able to locate; there is nothing left to produce. Indeed, Baxters is the *only* co-manufacturer who may have any additional test results to produce, has spent weeks locating a representative sampling of test results, and is producing the sampling this week. Plaintiffs' position that this Court's schedule should be upended so Plaintiffs can file a motion to compel a single co-manufacturer to search off-site warehouses in the off chance it can find pre-2019 test results to supplement the testing it already produced for such products is meritless. Indeed, Plaintiffs already had approximately four months to compel Baxters to comply with Plaintiffs' subpoena if they believed it was necessary for general causation and chose not to do so.

**B. Gerber**

Plaintiffs' statement that they are "missing" test results for 18 Gerber products does not support Plaintiffs' requested extension and is in any event inaccurate. Gerber produced its test results on October 31, 2024 (most of which had been produced to the same counsel in other litigation

1  in 2022 and 2023). Plaintiffs waited nearly five months until March 14, 2025, to inquire about test results for the 18 products referenced in Plaintiffs' statement. Having waited that long, Plaintiffs cannot not use this delay as a basis for an extension.

Plaintiffs' assertion is also incorrect. Gerber has already produced test results for at least 11 of the 18 products Plaintiffs reference. Gerber has also located and will produce no later than next week test results for at least 5 additional products. Thus, Plaintiffs either already have, or will soon have, test results for at least 16 of the 18 products. Having only received Plaintiffs' inquiry a few days ago, Gerber will attempt to locate test results for the 2 remaining products and expects it will be able to do so. However, even if there are two products for which Plaintiffs do not have finished product test results, that still would not support Plaintiffs' request to extend the general causation schedule. Gerber has already produced over 6,000 finished product test results for 139 of the 141 Gerber baby food products identified in Appendix A to the Master Complaint as well as over 18,000 ingredient test results. Plaintiffs already have what they need and offer no explanation how missing test results for only two products would meaningfully impact general causation, much less warrant a four-month extension.

Similarly, Plaintiffs' contention that "Plaintiffs are missing formulas that cover the entire period that the product has been on the market" also does not support their request to extend the general causation schedule. First, Plaintiffs offer no explanation why the formulas Gerber has already produced for its products are insufficient for general causation – i.e., why Plaintiffs need formulas for every year each product was sold. Second, Plaintiffs offer no explanation for their delay in raising this issue. Gerber produced most of its formulas in 2022 and 2023, and more on October 31, 2024. Nearly four months later, on February 23, 2025 (shortly before the February CMC Statement was filed), Plaintiffs sent Gerber a letter purporting to identify dozens of "missing" formulas. Gerber subsequently explained to Plaintiffs that their letter was inaccurate in several respects and, most importantly, missed formulas Gerber had already produced. On a meet and confer call on March 7, 2025, Plaintiffs **conceded** that their letter was inaccurate and stated that they would send a new, narrower letter identifying a handful of formulas they claim are actually "missing." Plaintiffs still have not sent any such letter. In sum, neither of the two issues Plaintiffs

9

JOINT STATEMENT FOR MARCH 27, 2025 CASE MANAGEMENT CONFERENCE
24-MD-3101-JSC

raise regarding Gerber supports Plaintiffs' requested relief.

**C. Nurture**

Even if Nurture's formulas were somehow relevant, Nurture has long made the formulas available to Plaintiffs in a usable format. As agreed in underlying litigations, Nurture produced most of the formulas at issue in this case over two years ago into a secure database. Nurture produced a limited number of additional formulas in November 2024. Lead counsel, Brent Wisner, and multiple of his colleagues have had access to these formulas since that time and have been using them, without incident, to prepare expert reports.

Plaintiffs' counsel raised no concern about Nurture's formula production until February 21, 2025, when they notified Nurture that they did not have access to formulas Nurture had, in fact, produced. After review, Nurture confirmed that the missing formulas were produced in an early state court case and existed in an MDL formula database, to which Plaintiffs never requested access or provided a confidentiality order acknowledgment. Upon receipt of the acknowledgment, Nurture promptly provided access to these formulas. Plaintiffs are also incorrect that only one person has access to these formulas. There are five individuals who have access: Pedram Esfandiary, Brent Wisner, Mayra Maturana, Jeremy Johnson, and Madeline Clavier.

With respect to the format of the production, despite having Nurture formulas for many months or even years, it was only earlier this month that Plaintiffs asked for the formulas in Native format. Nurture agreed and has been working diligently with the Plaintiffs to develop a working solution to import the Native formulas, which will both meet Plaintiffs' needs and honors the agreed-upon Protective Order.

Dated: March 25, 2025

Respectfully submitted,

WAGSTAFF LAW FIRM

By: */s/ Aimee H. Wagstaff*

Aimee H. Wagstaff (SBN: 278480)
940 N. Lincoln Street
Denver, Colorado 80203
Telephone: 303.376.6360
Facsimile: 303.376.6361
awagstaff@wagstafflawfirm.com

|   |   |
|---|---|
| | WISNER BAUM, LLP |
| | By: */s/ R. Brent Wisner* |
| | R. Brent Wisner (SBN: 279023)<br>rbwisner@wisnerbaum.com<br>100 Drakes Landing Rd., Suite 160<br>Greenbrae, CA 94904<br>Telephone: (310) 207-3233<br>Facsimile: (310) 820-7444 |
| | *Co-Lead Counsel for Plaintiffs in MDL 3101* |
| Dated: March 25, 2025 | DLA PIPER LLP (US) |
| | By: */s/ Brooke Killian Kim*<br>Brooke Killian Kim (CA Bar No. 239298)<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92121<br>Telephone: (619) 699-3439<br>Facsimile: (858) 677-1401<br>E-mail: brooke.kim@dlapiper.com |
| | *Defendants' Liaison Counsel* |

**ATTESTATION OF CONCURRENCE IN FILING**

In accordance with Northern District of California Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the signatories who are listed on the signature page.

Dated: March 25, 2025                              /s/ Brooke Killian Kim
                                                               Brooke Killian Kim
                                                               *Defendants' Liaison Counsel*

**CERTIFICATE OF SERVICE**

I certify that on March 25, 2025, I electronically filed the foregoing Joint Statement with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

/s/ Brooke Killian Kim
Brooke Killian Kim
*Defendants' Liaison Counsel*