UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>ALL ACTIONS | Case No. 24-md-3101-JSC<br><br>MDL 3101<br><br>Hon. Jacqueline Scott Corley<br><br>**JOINT STATEMENT FOR APRIL 24, 2025 CASE MANAGEMENT CONFERENCE**<br><br>Date: April 24, 2025<br>Time: 9:00 a.m. PT<br>Location: Courtroom 8<br>　　　　19th Floor 450 Golden Gate Ave.<br>　　　　San Francisco, CA 94102 |

Plaintiffs and Defendants respectfully submit this Case Management Conference Statement in advance of the April 24, 2025 Case Management Conference.

## I. DEADLINE TO ADD PLAINTIFFS TO THE MDL

*Plaintiffs' Position*

Plaintiffs believe that lawsuits filed before August 29, 2025—the close of general causation discovery—should constitute the universe of Plaintiffs that are subject to this initial general causation phase. Plaintiffs filed after that date will not have had a meaningful opportunity to participate in general causation and, thus, would have a due process right to mount their own general causation case. Defendants take issue with that, below, suggesting that if they prevail on general causation they prevail in every case. But, that is not true. This Court is not, itself, putting on a lab coat and answering the general causation question. Rather, it is deciding whether Plaintiffs' experts' methodology in rendering a general causation opinion is sufficiently reliable under *Daubert*. The inquiry is expert specific. If this Court strikes an expert, that reason might not apply to another future expert. Indeed, this general causation phase has also been severely cabined by Defendants' refusal to produce significant discovery, limiting the scope of the case to a subset of products (recall, Defendants refused to identify all their products so this could be done one time) and a subset of time (recall, Defendants refused to produce discovery outside of the time frame of discovery that was previously produced).

Below, Defendants take the position that after August 29, 2025, no Plaintiff should be allowed to file a case in this MDL. Because each family retains their due process right to file suit in federal court even if the court imposes a filing deadline, Defendants are essentially trying to create an arbitrary restriction on a family's right to participate in this MDL. To be certain, centralization creates great benefit to MDL families and, also, to defendants. The MDL structure allows consistency in the adjudication of common issues and allows cost sharing advantages. Plaintiffs are unaware of any legal authority or MDL precedent to arbitrarily implement a deadline to add plaintiffs to an MDL, especially so early in the MDL proceeding, and such a proposition is difficult to comprehend.

1  Some families have retained lawyers but remain uncertain if they want to put their family
2  through the stress of litigation.  Forcing these families to prematurely file suit for fear they will be
3  excluded from the MDL proceeding, for no compelling reason, is not fair and frustrates the
4  purpose of the MDL statute.  If a Plaintiff needs or wants to file a case in federal court, unless and
5  until the Judicial Panel on Multidistrict Litigation closes the MDL, that case will be transferred to
6  this Court.  However, that "incentivizes" Plaintiffs to act, as argued below, is irrelevant.  Plaintiffs
7  do not think that this MDL should shut the doors to any new case unless and until a motion to
8  terminate the MDL is granted by the JPML.

**Defendants' Response:**

10  Defendants take no issue with August 29, 2025 as the last day for individual plaintiffs to
11  file claims in this MDL, but Plaintiffs misapprehend PTO 15 and the meaning of that deadline. In
12  PTO 15, the Court ordered the parties to "propose a deadline to add new plaintiffs to the MDL"—
13  that is, a date after which Plaintiffs' counsel are not permitted to add additional plaintiffs to this
14  MDL. Plaintiffs instead insist that after August 29, 2025, they can continue to file claims on behalf
15  of new plaintiffs, but those plaintiffs will not be bound by the Court's order on general causation.
16  Instead of encouraging plaintiffs to file their claims before the close of the window, Plaintiffs'
17  approach would incentivize individual plaintiffs, most of whom are minors with no statutory
18  period running until age of majority, to *delay* bringing their claims until September or later. This
19  approach would create a proceeding where all Defendants are bound by the Court's ruling on
20  general causation, but if Defendants are successful, would create additional work for the Court in
21  ensuring (through show cause orders or similar mechanisms) that the general causation ruling is
22  dispositive of the potentially hundreds of claims filed after August 29, 2025.
23  Plaintiffs cannot seriously contend that claimants joining the proceeding after August 29,
24  2025, have no meaningful way to participate in the general causation proceeding. A general
25  causation proceeding, by its very nature, applies *generally* and does not require participation by
26  individual plaintiffs. Moreover, all claims filed to date have been brought by counsel who are part
27  of the leadership structure in this MDL and have been involved in this case since formation of the
28  MDL. Indeed, one of the very purposes of an MDL leadership structure is to ensure that the rights

of all of the claimants are protected, even if their specific lawyers might not have an active role in the litigation. Accordingly, Defendants request that the Court clarify that the deadline to add new plaintiffs to the MDL is a deadline after which no new claims may be filed without leave of Court.

Defendants do not object to Plaintiffs' proposed date of August 29, 2025 as the deadline to file claims in this MDL. PTO 14 allows individual plaintiffs up to 60 days to petition the Court for appointment of a guardian *ad litem*. A date in late August will allow time for the Court to appoint guardians for each plaintiff prior to the December general causation hearing.

## II.     AMENDED MASTER COMPLAINT

On April 16, 2025, Plaintiffs filed an amended master complaint naming for the first time five new defendants: Danone North America, PBC, Danone Nutricia Nederland BV, Nestlé USA, Inc., Nestlé Enterprises S.A., and Société des Produits Nestlé S.A.

***Defendants' Position:***

In light of the amended master complaint, Defendants make two requests. First, consistent with PTO 3, Defendants request that the Court confirm that Defendants are under no obligation to respond to the amended master complaint or any direct-filed complaints at this time, and instead, order the parties to submit a joint stipulation regarding the timing of any motions challenging the amended master complaint. Second, Defendants request that the Court defer ruling on Plaintiff's Motion for Alternate Service until the newly named foreign defendants—one of which is a citizen of a foreign nation of which no other prior or current defendant is a citizen—are served and have had an opportunity to enter an appearance and to submit their positions with respect to the motion.

Defendants also request that the Court confirm that any deadlines for responding to the Amended Master Complaint are stayed – including for any Defendants who have been served – and that there is no obligation at this time for Defendants to respond to the Amended Master Complaint, except pursuant to a further court order or stipulation of the parties.

***Plaintiffs' Response:***

Once the new Defendants are served, they should be required to comply with the Federal Rules of Civil Procedure. If, at that time, they believe those rules do not allow for sufficient time to respond, Plaintiffs are happy to meet and confer. If we cannot reach resolution, then they can

seek relief from the Court. For parties that are not present and unrepresented, seeking "preemptive" relief from compliance with the Rules is premature and procedurally awkward.

Defendants Beech-Nut, Hain, Gerber, Nurture, Plum, Sprout, and Walmart should be ordered to answer the complaint. The Amended Master Complaint did not add any new claims or allegations against those Defendants—and where they prevailed on their Rule 12 challenges, those allegations were removed. Thus, there is no need for more Rule 12 motions by these Defendants, and they should be required to answer the Amended Master Complaint.

For Defendants Campbells and Sun Maid, they have been served with the Amended Complaint, and they will likely want to challenge the pleadings, as amended against them, under Rule 12. Plaintiffs are happy to meet and confer with those Defendants about a briefing schedule.

### III.   "DOE" DEFENDANTS IN NEWLY FILED COMPLAINTS

***Defendants' Position:***

Since the Court's March 17, 2025 order dismissing several foreign entities—Danone S.A., Hero, A.G., and Nestlé S.A.—several plaintiffs direct-filing claims in the MDL have included claims against these entities as "Doe" defendants. For example, in *A.T. v. Beech-Nut Nutrition Company*, *et al.*, the plaintiff alleged claims against three Doe defendants, "Hero Group," "Nestlé," and "Danone."

The Court dismissed Hero AG, Danone S.A., and Nestlé S.A. as defendants in the MDL on March 17, 2025. *See* Order Re Defendants' Motions to Dismiss and Motion to Strike (Mar. 17, 2025) (filed under seal); *see also* Amended Order Re Defendants' Motions to Dismiss and Motion to Strike (Apr. 2, 2025) (Dkt. 447) ("Amended Order"). Nevertheless, Hero A.G. and Nestlé S.A. were recently named in a new complaint captioned *B.J. (Grant) v. Beech-Nut Nutrition Company, et al.* (filed Apr. 7, 2025) ("Grant Compl.").[1]

As to naming dismissed entities (or non-entities, such as "Hero Group," "Nestlé," or "Danone") as "Doe" defendants, this too is improper. *See C.C. (Collier) v. Beech-Nut Nutrition*

---

[1] We understand that counsel for Hero A.G. has been conferring with Plaintiffs' counsel about this and are hopeful that Hero A.G. will be promptly removed from the *Grant* Complaint.

4

*Company, et al.*, (filed April 1, 2025) ("Collier Compl.") (naming "Hero Group," "Nestlé," and "Danone" as Defendant Does 1-3 respectively). The Court indicated in the latest Case Management Conference (CMC) that any attempts to add any other defendant to the MDL would be closely scrutinized  *See* Hr'g Tr. (Mar. 27, 2025) at 33:20-23; 34:17-20; 35:7-9; 37:9-10 (noting that the Court would not be comfortable with plaintiffs naming new defendants through the short form complaint).  Nevertheless, Plaintiffs have persisted in this approach as to the dismissed entities, including in *J.V. (Vanostrand) v. Beech-Nut Nutrition Company, et al.* (3:25-cv-2853) (filed Mar. 26, 2025) ("Vanostrand Compl.") (naming "Hero Group" and "Nestlé" as Doe Defendants); *M.R. (Restrepo) v. Beech-Nut Nutrition Company, et al.* (3:25-cv-2918) (filed Mar. 28, 2025) ("Restrepo Compl.") (naming "Hero Group" as a Doe Defendant); *A.T. (Thompson) v. Beech-Nut Nutrition Company, et al.*  (filed April 1, 2025) ("Thompson Compl.") (naming "Hero Group," "Nestlé," and "Danone as Doe Defendants)*; C.C. (Collier) v. Beech-Nut Nutrition Company, et al.* (filed April 1, 2025) ("Collier Compl.") (naming "Hero Group," "Nestlé," and "Danone" as Doe Defendants)*; Braxton v. Beech-Nut Nutrition Company, et al.* (filed April 4, 2025) ("Braxton Compl.") (naming "Hero Group" and "Nestlé" as Doe Defendants); *L.W. (Wallace) v. Beech-Nut Nutrition Company, et al.* (filed April 10, 2025) ("Wallace Compl.") (naming "Hero Group" as a Doe Defendant). Plaintiffs have now submitted their First Amended Master Long-Form Complaint (Dkt. 451) and, tellingly, reserved their right to name additional "Hero Group," "Nestlé," or "Danone" "entities that further discovery may reveal," even though no Hero entity is specifically named.  *See* Amended Compl. ¶¶ 12, 23, 36.

   Federal courts generally have rejected Doe pleading practice when the basis for federal jurisdiction is diversity of citizenship under 28 U.S.C. § 1332 because the inclusion of Doe defendants destroys diversity jurisdiction. *See Garter-Bare Co. v. Munsingwear, Inc.*, 650 F.2d 975, 981 (9th Cir. 1980).  For that reason, a plaintiff must allege sufficient facts to establish a Doe defendant's place of citizenship. *See Vogel v. Go Daddy Grp., Inc.*, 266 F. Supp. 3d 234, 239–40 (D.D.C. 2017).  Plaintiffs have failed to do that here. Plaintiffs have not included a single allegation about Doe defendants' (i.e., unspecified entities') place of citizenship.  Plaintiffs have only vaguely alleged that "Hero Group" "has been directly involved in the tortious conduct in the

1   United States and its various states that give rise to these lawsuits." *See* Vonostrand Compl. ¶¶
2   26–28; Restrepo Compl. ¶¶ 24–26; Thompson Compl. ¶¶ 27-29; Collier Compl. ¶¶ 26-28; Braxton
3   Compl. ¶¶ 16-18; Wallace Compl. ¶¶ 15-17. The same is true for "Nestlé," *see* Vonostrand Compl.
4   ¶¶ 23–25; Thompson Compl. ¶¶ 30-32; Collier Compl. ¶¶ 29-31; Braxton Compl. ¶¶ 19-21, and
5   "Danone," *see* Thompson Compl ¶¶ 33-34; Collier Compl. ¶¶ 32-33. But as Hero AG, Nestlé S.A.,
6   and Danone S.A. explained in their respective pleading papers and during the hearing on their
7   motions to dismiss, "Hero Group," "Nestlé" and "Danone" are umbrella terms for groups of
8   entities and not any single entity in particular. The Court, in its order dismissing these defendants,
9   agreed. *See* Amended Order at 7, (criticizing Plaintiffs for "simply assum[ing] that any reference
10  to 'Nestlé' must refer to Nestlé S.A."); *id.* at 11 (finding "'Hero Group' does not refer to any
11  actual entity, but rather is shorthand for all affiliated entities under the Hero AG umbrella"); *id.* at
12  14 (noting that "there are nearly 100 different entities across the Danone S.A. portfolio with the
13  word 'Danone' in the name"). Thus, plaintiffs in these complaints could be referring to any one of
14  the "Hero Group," "Nestlé," or "Danone" entities, including ones that are not citizens of any State
15  within the United States. And plaintiffs cannot remedy these pleading deficiencies at this time
16  because plaintiffs are admittedly "currently investigating which ["Hero
17  Group"/"Nestlé"/"Danone"] entity is involved[.]"  Vonostrand Compl. ¶¶ 25, 28; Restrepo Compl.
18  ¶ 26; Thompson Compl. ¶¶ 29, 32, 34; Collier Compl. ¶¶ 28, 31, 33; Braxton Compl. ¶¶ 18, 21;
19  Wallace Compl. ¶ 17.
20          The inclusion of Doe Defendants also further complicates determining diversity
21  jurisdiction.  As discussed in further detail below, Plaintiffs' co-lead counsel filed a complaint in
22  this MDL 3101—the Vanostrand Complaint—that raises these very jurisdictional concerns.  For
23  example, Beech-Nut "is a citizen of . . . New York with its principal place of business located at 1
24  Nutritious Pl. Amsterdam, New York 12010." Vanostrand Compl. ¶ 16.  Despite representing to
25  the Court at the last CMC that lead counsel ensures diversity jurisdiction before bringing a case,
26  on March 26, 2025, counsel filed a complaint against Beech-Nut on behalf of Joey Vonastrand, a
27  resident of New York.  *See* Hr'g Tr. (Mar. 27, 2025) at 40:10-13 (Mr. Wisner: "For what it's
28  worth, for my cases – I can't speak for other plaintiffs at this point, but I can say for our cases we

6

always run is there subject matter jurisdiction in the court we're filing."). Beech-Nut brought the issue to counsel's attention, and his office responded that they would amend the complaint to correct the jurisdictional issue once the short form complaint is implemented. While Defendants appreciate counsel's prompt attention to this issue, the example illustrates the challenge of keeping track of even the current Defendants *vis-à-vis* subject matter jurisdiction. For all of these reasons, Defendants believe that Plaintiffs should not be permitted to plead "Doe" defendants in any of their pleadings, and that any "Doe" defendants should be promptly dismissed.

*Plaintiffs' Response:*

The practice of naming Doe defendants exists when the Plaintiff knows that an entity is liable but does not yet know the proper name of that entity. In other words, the practice of naming Doe defendants is ideally suited to the situation here, where it is unclear which Nestle, Danone, or Hero entity is the company that is shown, in the documents, to exercise direct control over the safety of certain Defendants' baby foods. Defendants have refused to engage in any discovery about who these entities are as stated in the documents they produced, and to date this Court has not required such discovery as it is not related to general causation. So, Plaintiffs are left with the fact that some Nestle, Danone, or Hero entity, which will one day be revealed, is a properly named defendant, but Plaintiffs do not know, at this time, which one. Hence, a few recent complaints have alleged claims against these Doe Nestle, Danone, and Hero entities, and Plaintiffs will amend and specify the correct entity as soon as they are allowed to discover who these entities are, as discussed in the Defendants' own documents.

Defendants' primary "concern" regarding Doe defendants is ascertaining whether this Court possesses subject matter jurisdiction, as it is unknown whether the Doe defendants are subject to complete diversity. This issue can be easily addressed - Plaintiffs that wish to allege Doe claims must also allege the citizenship(s) of the Doe defendants (which should be easy to do here). Indeed, Plaintiffs that have filed cases where there is concern over subject matter jurisdiction intend to file amended complaints to address this issue. As indicated to the Defendants already, those Plaintiffs will do so when they file their short form complaint. In other words, this issue can and will be addressed on a case-by-case basis, and Plaintiffs are willing to

1  work with Defendants to address any claims that they believe have subject matter jurisdictional

2  concern.[2]

3        A CMC statement, however, is not the proper place to litigate whether a Doe defendant is,

4  as matter of law, appropriate, especially in the abstract. If, following SFC amendments,

5  Defendants have a challenge to a named Doe defendant, then it must be addressed in proper Rule

6  12 motion, where the issue, tethered to a specific complaint, can be addressed on the merits. For

7  now, in the context of a CMC statement, it is inappropriate to seek categorical relief.

**IV.  SHORT FORM COMPLAINT**

9        Pursuant to Pretrial Order No. 15, the Parties submitted competing versions of the updated

10  Short Form Complaint on Tuesday April 22, 2025. Only two disputes remain:

11        The Parties have narrowed the issues in dispute to two items: (1) the procedure for naming

12  new defendants in the short form complaint; and (2) whether Plaintiffs are required under Rule 8

13  to plead causation on a defendant-by-defendant basis.

14        **1.  Naming New Defendants in the Short Form Complaint (SFC)**

15  *Defendants' Position:*

16        In Section I.3 and elsewhere, Plaintiffs propose adding entirely new defendants to these

17  proceedings. Defendants object to that approach and do not believe such a process comports with

18  due process. Moreover, Defendants believe adding further defendants to this MDL at this point

19  will only make this MDL even more prolix and unwieldy, and therefore object to this practice. The

20  Court has already rightly indicated its skepticism toward such an approach. *See*, *e.g.*, Mar. 27,

21  2025 Hr'g Tr. ("I am not sure I agree with you necessarily that [the SFC's] adaptable to future

22  cases, that it can expand the MDL."). If Plaintiffs want to sue a completely new defendant,

---

[2] At the last hearing, Mr. Wisner represented to the Court his firm's practices about checking subject matter jurisdiction before filing. Unfortunately, the evening before, unbeknownst to him, his firm filed one case that appears to have a jurisdictional issue. This error, internally, arose from a misunderstanding that has, since, been corrected. This is the only case, amoung many his firm has filed in this MDL, that has this issue. This was a mistake and Wisner Baum is working to actively correct the issue, and, indeed, plans to address it with an amended pleading as soon as short form complaint is entered. Defendants, however, could not help but seize on this honest error and place it in their CMC statement portion.

1  Plaintiffs should be required to file a new case in the federal court in which the case could
2  properly be brought.  They can then tag the case for the Judicial Panel on Multidistrict Litigation
3  to evaluate as to whether it is sufficiently related to become part of this MDL.  Such an approach
4  would comport with due process and permit any new defendant to challenge transfer and
5  consolidation.

6  ***Plaintiffs' Response:***

7  A procedure must be in place for Plaintiffs to name additional defendants to their
8  complaints. Defendants agreed in writing to Plaintiffs proposed process to add additional
9  defendants (not claiming any due process violation), but then revoked that agreement when
10 Plaintiffs would not agree to Defendants preferred pleading language. The procedure proposed by
11 Plaintiffs is simple and identical to the procedure recently adopted by the Honorable Judge
12 Rowland in MDL 3060: *In Re: Hair Relaxer Marketing, Sales Practices, and Products Liability*
13 *Litigation*, Northern District of Illinois. Plaintiffs propose that the SFC include a space to add
14 additional defendants, with a requirement that the SFC include "additional allegations not
15 contained in the First Amended Master Long-Form Complaint."  In the "additional allegation"
16 section, the Plaintiff would include any case specific allegations as well as any allegations related
17 to new defendants.  Then, each additional defendant shall be served in accordance with Fed. R.
18 Civ. P. 4 and 5 with the operative master complaint and the SFC related to the new defendant.
19 This is the simplest and most efficient method to include additional defendants, and it does not
20 violate any due process rights.  The Court is familiar with the *Watkins* case. There, Amazon and
21 Whole Foods were both included as Defendants. Even so, and with full knowledge of that
22 circumstance as the Watkins cases received individual attention in the JPML papers, the JPML
23 transferred the Watkins case into this MDL. It stands to reason that cases with similar allegations
24 and additional defendants will similarly be transferred to this MDL.

25  **2.  Pleading Causation and Stating a Claim**

26  ***Defendants' Position:***

27  In Section III and throughout their version of the SFC, Plaintiffs have removed language
28 that is essential to stating causes of action against each Defendant individually.  *See*, *e.g*., Section

III.1, III.3, IV.3, VI.  Because subject matter jurisdiction in this MDL is based on diversity, underlying state law controls for purposes of whether any given plaintiff has stated a claim.  The relevant states' laws require causation to be pleaded on a defendant-by-defendant basis.  *See*, *e.g.*, *Perez v. Wells Fargo & Co.*, 2015 WL 1887354, at *5 (N. D. Cal. Apr. 24, 2015) (dismissing complaint that lacked sufficient facts to show that each plaintiff's injury "is fairly traceable to a specific defendant's conduct"); *Union Pac. R.R. Co. v. Ameron Pole Prods. LLC*, 43 Cal. App. 5th 974, 981 (2019) (in a case with multiple alleged tortfeasors, a defendant's conduct must have been a "substantial factor" in bringing about the harm); *Daniels v. ArvinMeritor, Inc.*, 146 N.E. 3d 655, 670 (Ill. Ct. App. 2019) (same, under Illinois law).  This is not a mere nicety; causation is an element of the claims being pled.

Plaintiffs have failed to do this in the First Amended Master Complaint, which is rife with impermissible group pleading.  *See*, *e.g.*, Dkt. 451 ¶ 76 ("some Defendants implemented dangerously high internal limits . . . for the maximum level of Toxic Heavy Metals that Defendants allowed in the baby foods"); ¶ 77 (some Defendants failed to implement any internal specifications for the amount of Toxic Heavy Metals allowed in ingredients or finished baby foods); ¶ 78  ("Defendants did not routinely adhere to their own internal metal specifications"); ¶ 79  ("Defendants' manufacturing practices also contributed to contamination or standards").  Group pleading is impermissible under the federal rules in cases where defendants are not "similarly situated" or are not engaged in "precisely the same conduct."  *Cf. United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 681 (9th Cir. 2018); *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see also Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (affirming dismissal of a complaint under Rule 8 "replete with allegations that 'the defendants engaged in certain conduct, making no distinction among the fourteen defendants charged'").  Accordingly, when completing a SFC, for each Plaintiff to state a cognizable claim against each Defendant under Fed. R. Civ. P. 8 and 11, a plaintiff must plead the element of causation.  Plaintiffs should be willing to take this step, as it will greatly reduce the motion practice that will otherwise be necessary, thus reducing the burden on the Court and the parties.

***Plaintiffs' Response:***

The Short Form Complaint is Plaintiffs' pleading, and the version submitted by Plaintiff complies with Rule 8. Defendants seek to rewrite the lawsuit and force unnecessary language into the SFC which would require Plaintiffs to affirmatively plead that for each Defendant being included in the SFC, that Defendants' baby food products *alone* caused the Plaintiff's injuries. *See* Sections I(3) of Defendant's Proposed PFS (adding language that a Plaintiff "affirmatively claims each such Defendant's baby food products alone is a substantial factor of cause of Plaintiff's injury(ies)."). *See also* Defendants' language at III(3), IV(3), and VI. Plaintiffs believe this language is unnecessary in the SFC and is problematic for several reasons.

The SFC is a form pleading that relates to all fifty states, each of which has their own state-specific burdens of proof and their own separate jury instructions regarding proximate causation, particularly in the context of multiple defendants. The language Defendants seek to include would introduce state-specific burden of proof language into a document that relates to all fifty states which would only serve to confuse the burdens of proof of multiple states. That is why other MDL Courts have recognized that the "primary purpose of the Short Form Complaint[]" is to "provide a small amount of Plaintiff specific information and incorporate select counts" into the master pleading. *In re Zantac Products Liability Litigation*, 339 F.R.D. 669, 681 (S.D. Fla. 2021). At their core, short-form complaints are intended to give defendants notice of plaintiff-specific allegations, and that is what Plaintiffs' proposal does. General pleading is fully acceptable under Fed. R. Civ. P. 8, and Plaintiffs' proposal complies with Rule 8's pleading requirements without the extra language that Defendants' propose. Plaintiffs' SFC explicitly incorporates the allegations of the Master Complaint. Thus, all allegations about each individual Defendant's conduct are equally alleged in the SFC. When individual cases have not been set for trial, "purported deficiencies with the complaints can be addressed at that time by subsequent Court order." *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2019 U.S. Dist. LEXIS 9247, at *61 (N.D. Ohio Jan. 18, 2019).

Moreover, the proposed SFC already alleges causation on a Defendant-by-Defendant basis. Section III, paragraph 2 states "Plaintiff consumed the following Baby Food product(s) which

Plaintiff contends *caused and/or contributed to Plaintiff's injury(ies) and brings claims against the following Defendants"* Ex. A at § III(2).

Other MDL Courts that have recently implemented SFCs are aligned with Plaintiffs' position and have not required Plaintiffs in an SFC to plead causation as to each Defendant. For example, the *In Re: Hair Relaxer* MDL, currently pending in the United States District Court for the Northern District of Illinois and overseen by the Hon. Judge Mary Rowland, is an example of a recent MDL involving multiple defendants, and the language used in that MDL is nearly identical to the language Plaintiffs seek here. *See* Ex.A, *In Re: Hair Relaxer Marketing, Sales Practices, and Products Liability Litigation*, 2:23-md-2036 SFC at p.3 ("6. Upon information and belief, Plaintiff used the following hair relaxer product(s), which Plaintiff contends caused and/or contributed to their injury(ies) and brings claims against the following Defendants."). That MDL did not require Plaintiffs to plead in the SFC that each Defendant's products alone were a cause of their injuries. Plaintiffs are not aware of any other MDLs involving multiple Defendants which have required the type of language that the Defendants here seek to require.

## V.   SUBJECT MATTER JURISDICTION

At the last status conference, the Court inquired as to whether subject matter jurisdiction has been confirmed.

***Defendants' Position:***

As discussed above, Defendants reviewed the cases presently pending in the MDL and identified at least two cases in which it appears the Court lacks subject matter jurisdiction.

The Court appears to lack subject matter jurisdiction in the following case because the Plaintiff resides in the state of Michigan and Defendant Gerber is also a citizen of the state of Michigan:

- *Neal Patrick Halverson, on behalf of N.D.H., a minor v. Beech-Nut Nutrition Company, et al.*, 3:25cv2270.

The Court appears to lack subject matter jurisdiction in the following case because the Plaintiff resides in the state of New York and Defendant Beech-Nut is also a citizen of the state of New York:

- *Joey Vanostrand, individually and as a personal representative and administrator of the estate of J.V., a minor-decedent v. Beech-Nut Nutrition Company, et al.*, 3:25cv2853.

No subject matter jurisdiction exists in these cases and Defendants respectfully request that the Court issue an order to show cause why the cases should not be dismissed for lack of subject matter jurisdiction.

Additionally, Defendants have identified at least two pending complaints that do not allege the corresponding plaintiff's state of residence, so it is impossible to know if subject matter jurisdiction exists in these cases. *See* Compl., *M.A. v. Beech-Nut Nutrition Company, et al.*, case no. 3:24-cv-07213-JSC (N.D. Cal. Oct. 16, 2024) (ECF No. 1); Compl., *I.M. v. Beech Nut Nutrition Co., et al.*, case no. 3:25-cv-01387 (N.D. Cal. Feb. 10, 2025) (ECF No. 1). Defendants respectfully request that the Court issue an order requiring Plaintiffs in these cases, and any others where plaintiff's state of residence is not alleged, to file amended complaints containing that information within one week.

*Plaintiffs' Response:*

Plaintiffs have not met and conferred with defense on this topic as this information was only provided to counsel shortly before the CMC statement was shared on Monday evening. Plaintiffs propose that the jurisdictional concerns with the two cases identified above (*Halverson & Vanostrand*) be addressed with an amended pleading, which will be filed following the establishment of a short form complaint (which should be very soon). This was conveyed to Defendants already, when a letter was sent concerning this issue late last week. If, following that amended pleading, Defendants still have concerns about subject matter jurisdiction, the Parties can meet and confer and/or engage in motions practice. Additionally, the two cases which do not allege Plaintiffs' state of residence (*M.A. & I.M.),* will be corrected when they file their short form complaints, as that information is required within the short form pleading itself. There is no need for an order to show cause at this time.

## VI. THE FIRST JCCP TRIAL

The first case to proceed to trial in the Judicial Counsel Coordinated Proceeding ("JCCP")

*Hain Celestial Baby Food Cases*[3], JCCP No. 5217, is set for trial to commence on July 21, 2025 in Los Angeles Superior Court, against Defendants Plum Organics, PBC, Nurture, Inc., and Hain Celestial Group. On July 14, 2025, Judge Lawrence Riff will hold a final status conference and begin hearings on dispositive and *in limine* motions, including motions to exclude experts or expert opinions. Judge Riff has indicated that the parties will not complete the hearing on these matters on that date.

## VII.   *WATKINS* THIRD AMENDED COMPLAINT

Per Docket Entry No. 396, (i) Whole Foods' Motion to Dismiss Plaintiffs' Redhibition Claim Against a Seller with Knowledge (365) and (ii) Amazon's Motion to Dismiss Plaintiffs' Third Amended Petition (366) are scheduled for hearing at the April 24, 2025 Case Management Conference.

Dated: April 22, 2025                    Respectfully submitted,

WAGSTAFF LAW FIRM

By: */s/ Aimee H. Wagstaff*

Aimee H. Wagstaff (SBN: 278480)
940 N. Lincoln Street
Denver, Colorado 80203
Telephone: 303.376.6360
Facsimile: 303.376.6361
awagstaff@wagstafflawfirm.com

WISNER BAUM, LLP

By: */s/ R. Brent Wisner*

R. Brent Wisner (SBN: 279023)
rbwisner@wisnerbaum.com
100 Drakes Landing Rd., Suite 160
Greenbrae, CA 94904
Telephone: (310) 207-3233
Facsimile: (310) 820-7444

*Co-Lead Counsel for Plaintiffs in MDL 3101*

---

[3] Despite the caption of the JCCP, the cases involve claims against other baby food manufacturers.

| | | |
|---|---|---|
| 1 | Dated: April 22, 2025 | DLA PIPER LLP (US) |
| 2 | | By: */s/ Brooke Killian Kim* |
| | | Brooke Killian Kim (CA Bar No. 239298) |
| 3 | | 4365 Executive Drive, Suite 1100 |
| 4 | | San Diego, CA 92121 |
| | | Telephone: (619) 699-3439 |
| 5 | | Facsimile: (858) 677-1401 |
| | | E-mail: brooke.kim@dlapiper.com |
| 6 | | |
| 7 | | *Defendants' Liaison Counsel* |

**ATTESTATION OF CONCURRENCE IN FILING**

In accordance with Northern District of California Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the signatories who are listed on the signature page.

Dated: April 22, 2025

/s/ *Aimee H. Wagstaff*
Aimee H. Wagstaff, Esq.
*Plaintiffs' Co-Lead Counsel*

## **CERTIFICATE OF SERVICE**

I certify that on April 22, 2025, I electronically filed the foregoing Joint Statement with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

Dated: April 22, 2025             */s/ Aimee H. Wagstaff*
                                                  Aimee H. Wagstaff, Esq.
                                                  *Plaintiffs' Co-Lead Counsel*