UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS | Case No. 24-MD-301-JSC<br><br>MDL 3101<br><br>Hon. Jacqueline Scott Corley<br><br>**JOINT STATEMENT FOR JUNE 26, 2025 CASE MANAGEMENT CONFERENCE**<br><br>Date:     June 26, 2025<br>Time:    9:00 a.m. PT<br>Location: Courtroom 8<br>             19th Floor 450 Golden Gate Ave.<br>             San Francisco, CA 94102 |

Pursuant to Pretrial Order No. 3 (ECF No. 148), the Parties submit this Joint Statement in preparation for the June 26, 2025 Case Management Conference:

**I.     Privilege Log Discovery Letter**

On June 23, 2025, the parties filed a joint discovery letter related to privilege log issues, ECF 498. The parties will be prepared to present oral argument at the June 2025 conference.

**II.    Expert Deposition Dates**

**Defense position:** Plaintiffs provided deposition dates for their expert witnesses within the discovery period, which ends on August 29, 2025. The parties are conferring on the scheduling of those depositions and Defendants anticipate most scheduling issues will be resolved through that process. However, for two experts, Dr. Howard Hu (epidemiology) and Dr. Tomas Guilarte

(environmental science), Plaintiffs provided a single proposed deposition date. Both offer opinions on the ultimate issue in the general causation proceeding, and neither has previously provided a report or sat for deposition in heavy metals baby food litigation. Defendants ask for the Court's assistance in requiring Plaintiffs to provide additional deposition availability for these two experts.

Plaintiffs provided a single proposed deposition date for Dr. Hu in the last week of the discovery period (August 28) and state that he has no other availability. At least three of Defendants' experts will respond to Dr. Hu's opinions. Defendants' experts should not be put in a position of having to rebut Dr. Hu without the benefit of his testimony. Additionally, Defendants are taking the deposition of another epidemiologist, Dr. Beate Ritz, in Berlin, Germany during that week. Dr. Hu (and all experts, for both sides) have known for months what the expert deposition schedule was, so he had ample time to ensure that he could offer more than a single day of availability during the entire two-month period.

Plaintiffs initially identified June 27, 2025 as Dr. Guilarte's only available deposition date, but since, have retracted that date and offered July 3, 2025 as the only available date. Defendants have conflicts with this date as a result of both professional conflicts and holiday-related commitments and have offered to take this deposition on a weekend if necessary. Again, several of Defendants' experts will respond to Dr. Guilarte and his deposition should go early in the discovery period.

Plaintiffs have provided no explanation for why neither expert is available for deposition in a two-month window, save for a single day. Defendants request that the Court order Plaintiffs to provide additional availability for Drs. Hu and Guilarte.

**Plaintiff position:** There are twenty experts disclosed in this general causation proceeding: plaintiffs (9) and defense (11). Scheduling the depositions within the discovery period is exceedingly difficult. There is no agreement or court order on priority of depositions, and both sides appear to be acting in good faith.  Both sides have requested a deposition take place in Europe (Ritz and Sanders) and both sides have offered only one available date for an expert at the end of the discovery period (Hu, August 28 and Kelleher, August 29).  In an act of good faith, Plaintiffs agreed to an extension for three defense experts, whose reports have yet to be disclosed.

1    Despite the good faith and cooperation, Defendants are now demanding that Dr. Hu be deposed prior to a handful of their experts and appear unwilling to accept Dr. Guilarte's limited availability. Dr. Guilarte originally offered June 27 for his deposition, but that date was not accepted, and the date was later withdrawn after Defendants delayed in responding.  Plaintiffs have offered deposition dates within the expert discovery period and the reasons for insisting on alternate dates are uncompelling.

   Plaintiffs provided deposition availability for their experts on June 9, 2025—offering multiple dates for the vast majority of their experts with some windows of availability as broad as two weeks. For two experts with particularly busy schedules—Drs. Hu and Guilarte—Plaintiffs offered one day each (Defendants similarly offered just one available day for experts Sanders and Kelleher), which is both workable and doable given the high degree of flexibility offered by Plaintiffs' other experts and the number of capable counsel retained by Defendants in this case.

   Since then, the parties have worked together to accept dates provided or find new dates convenient for everyone. Plaintiffs have been happy to secure several deposition dates that were hand selected by defense.  However, unfortunately, Plaintiffs cannot agree to make Dr. Hu available on dates requested by Defendants because they simply do not work for his schedule. Similarly, July 3 is the only date Dr. Guilarte is available for deposition that works with his team. To be clear, July 3 is not an ideal date for Plaintiffs' counsel either as we will experience the same travel inconveniences as defense that accompany holiday travel.  However, with so many moving parts, we understand that is necessary to complete the depositions within the discovery period.

   Dr. Hu has offered August 28 as the only date available for his deposition within the discovery period. Counsel has asked him three times for additional dates and three times he has stated that is his only date available.  As an important reminder, Defendants are not stating that they are unavailable on August 28. Instead, Defendants complain that Dr. Hu's testimony should be taken prior to several of their experts.  That "priority" was never discussed during the original general causation planning and was not a part of any agreement or court order.  When scheduling twenty expert depositions in under two months, it is not practical to insist on a priority of order. Additionally, because of scheduling complications, Dr. Ritz's deposition is no longer occurring on

August 26. Plaintiffs have offered August 9 or anytime the week of August 18 for Dr. Ritz's deposition. As such, Dr. Ritz's deposition will not impact Dr. Hu's August 28 deposition.

Collectively, Defendants have legions of capable counsel, no doubt many with the flexibility to make August 28 work with more than two months' notice. Absent suggestion that they absolutely cannot or for some other compelling reason, Defendants should accept the date offered by Drs. Hu and Guilarte. Plaintiffs will continue to work cooperatively with Defendants to schedule the remaining depositions.

### III. Expert Deposition Length

**Defense position**: Defendants seek leave to depose four of Plaintiffs' experts—Ms. Priscilla Barr, Dr. Tomas Guilarte, Dr. Howard Hu, and Dr. Rachael Jones—for a total of two seven-hour days each. This case involves multiple defendants, and two expert witnesses (Barr and Jones) offer defendant-specific opinions for each of the manufacturer defendants, meaning each of those Defendants' counsel will have to (and are entitled to) examine the witness. The other two witnesses have not appeared and have not been deposed in any of the heavy-metal related baby food litigation. Therefore, good cause exists for the additional time requested. Notably, Defendants limit this request to four of Plaintiffs' nine experts.

The seven-hour "presumptive duration" of depositions provided for in Federal Rule of Civil Procedure 30(d)(2) may be extended for good cause. Fed. R. Civ. Proc. 30 cm. note. "The court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." *Id*. Courts routinely find good cause exists to extend the length of a deposition in multi-party litigation involving voluminous expert reports and multiple attorneys who will travel out of state for the deposition. *E.g.*, *Sexton v. Exxon Mobil Corp.*, 17-cv-482-JWD-RLB, 2020 U.S. Dist. LEXIS 19505, at *9 (M.D. La. Jan. 31, 2020) (granting motion for "two days of deposition testimony to not exceed 7 hours each day" to depose expert witness in "a multi-party litigation involving a voluminous expert report"); *In re TelexFree Sec. Litig.*, 4:14-md-2566-NMG, 2024 U.S. Dist. LEXIS 90845 (D. Mass May 21, 2024) (granting defendants' request for 14 hours over two consecutive days of deposition time based on, *inter alia*, the "multiple parties and

expert evidence addressing a voluminous and complex factual record" and the "out-of-state travel by numerous attorneys and, potentially, party representatives"). A defendant need not wait to raise the issue of extending a deposition until the first day of deposition proves inadequate. *Sexton*, 2020 U.S. Dist. LEXIS 19505, at *9-10 (holding that it is "impractical" to "require the questioning parties to seek additional time to depose the expert witness only after the first 7 hours is completed."); *Del Sol v. Whiting*, No. CV-10-01061-PHX-SRB, 2015 WL 12090268, at *4 (D. Ariz. Mar. 10, 2015) (faulting deposing party for failing to raise need for additional time in advance of deposition and denying motion as untimely).

Good cause exists to depose four of Plaintiff's experts for two seven-hour days. Except for Ms. Barr, none of these experts have offered reports or have been deposed in any heavy-metal related baby food litigation and their opinions are entirely new to Defendants. Ms. Barr, although deposed previously in a case that included some but not all of Defendants here, offers an MDL report that includes a new analysis that is entirely different from her work in prior baby food litigation.

Ms. Barr and Dr. Jones provide opinions that are specific to each defendant. Plaintiff's counsel provided Ms. Barr with seven baby food "menus," one for each manufacturer defendant, purporting to represent what hypothetical plaintiffs may have eaten. (Each suggested menu includes products sold by one defendant only.) In her report, Ms. Barr evaluates Plaintiffs' counsel's menus for caloric intake and nutrition for each Defendant, and whether they could reflect patterns of consumption for American children. Dr. Jones then relies on those menus to offer opinions about levels of heavy metal exposure from each Defendant's baby foods that a hypothetical plaintiff supposedly would have ingested had he or she eaten the foods on each menu. Each Defendant is entitled to ask these experts about the assumptions built into the sample menu and exposure calculation for that Defendant's foods. Defendants intend to have one lawyer examine these witnesses on issues that are common to all Defendants, but then each of the seven Defendants will have to examine the witnesses about the defendant-specific opinions. That cannot reasonably be accomplished in seven hours.

Dr. Guilarte and Dr. Hu both are designated to provide opinions on the foundational issue

1  in the general causation proceeding, namely, whether consumption of Defendants' baby food can
2  cause autism and/or ADHD. They collectively cite over 450 publications in nearly 100 pages of
3  reports, before summarily concluding—in nearly identical paragraphs citing to no authority
4  whatsoever—that the heavy metal exposure estimates Dr. Jones provides for the menus Plaintiff's
5  counsel created suggest exposure levels consistent with levels these witnesses claim are reported
6  in the scientific literature as associated with autism or ADHD.[1] Defendants have not deposed
7  either witness previously and will require time to explore and untangle these unfounded and
8  complex opinions.

9  "Given the central issues raised by [these] voluminous reports and the number of parties
10 seeking testimony in support of their own positions," the additional deposition time requested is
11 warranted. *Sexton*, 2020 U.S. Dist. LEXIS 19505, at *9. To the extent Plaintiffs suggest that
12 Defendants should take the first day of these depositions before moving for additional time,
13 Defendants should not be required to take a wait-and-see approach. Multiple attorneys will travel
14 from out-of-state for these depositions, meaning that waiting will double the costs of each
15 deposition. Additionally, the discovery period ends in just over 60 days and the witnesses already
16 have limited availability. Deferring this request would result in challenges meeting the schedule
17 ordered by the Court. Defendants ask that the Court enter an order permitting 14 hours of
18 deposition time with each of Drs. Guilarte, Hu, and Jones and Ms. Barr.

19 **Plaintiff position**: *Since receiving Defendants' statement, the Parties have agreed that*
20 *defense shall have 12 hours on the record to depose Dr. Jones over 2 days.*

21 While Plaintiffs concede additional time is warranted to depose Dr. Jones, Defendants can
22 complete the depositions of Ms. Barr, Dr. Hu, and Dr. Guilarte in a single day. Defendants fail to
23 demonstrate good cause as to why they are incapable of doing so.

24 "Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7
25 hours." Fed. R. Civ. P. 30(d) (1). The Court should allow additional time consistent with the

26

---

28 [1] Dr. Hu also offers an opinion regarding whether nutrients in baby food impact uptake of trace heavy metals in baby food.

factors spelled out in Rule 26(b)(2), only if additional time is demonstrated to be needed. "In weighing these factors, and applying them to whether a deposition should be longer than seven hours, the court should begin with the presumption that the seven-hour limit was carefully chosen and that extensions of that limit should be the exception, not the rule." *Somerset Studios, LLC v. Sch. Specialty, Inc.*, No. C 10-5527 MEJ, 2011 WL 4344596, at *5 (N.D. Cal. Sept. 14, 2011) (quoting *Roberson v. Bair*, 242 F.R.D. 130, 138 (D.D.C. 2007). Indeed, because diligence and efficiency are required before good cause is established, "the better practice is for the deposition to go forward to determine how much is able to be covered in the seven hours and, then, if additional time is needed, for counsel to stipulate to extend the deposition for a specific additional time period. If the parties cannot reach a stipulation, then Court intervention may be sought." *Somerset Studios*, 2011 WL 4344596, at *5 (quoting *Malec v. Trustees of Boston College*, 208 F.R.D. 23, 24 (D. Mass. 2002)). Indeed, considering the extensive discovery to be completed in this MDL, both in the context of experts and fact witnesses, it sets a dangerous precedent to impose multi-day depositions. Time limits are essential to forcing questioners to be disciplined and focused on the issue before the Court, i.e., admissibility under Daubert. Multiday fishing expeditions designed to get "sounds bites" should not be encouraged. Only if there is a real need should the Court depart from the seven-hour limit.

**Regarding Ms. Barr,** she is a Neonatal and Pediatric Registered Dietitian/Nutritionist the focuses her practice on nutrition for infants and young children. She does not offer any general causation opinions. Her report is 25 pages long. She was given hypothetical diets of the Defendants' baby foods and her limited role was to assess "whether these diets are inconsistent with national data on caloric intake and consumption patterns for children ages 0-3, whether these diets are inconsistent with the nutritional requirements for calories and key nutrients for children ages 0-3, and whether the diets are aligned with the developmental feeding skills for children ages 0-3." Her opinions are not complicated. In the state court litigation, Ms. Barr offered a much more extensive report, covering complicated issues like nutrient absorption in baby foods and whether they mitigate the uptake or toxic effect of metals on the brain. She also offered case-specific opinions about the plaintiff's nutrition. In state court, her report was 30 pages long and

involved a much larger library of references. And, there, Defendants were able to complete her deposition in two days. Here, Ms. Barr's opinions and report are significantly narrower. There is no reason why Defendants cannot complete this deposition in a single day.

*Regarding Dr. Hu*, he is a tenured Professor of Medicine and Epidemiology at the University of Southern California. He offers an opinion about whether ingestion of lead, including from baby foods, is generally capable of causing autism or attention deficit hyperactivity disorder or worsening those conditions. He does not offer any opinion on any other metals, i.e., arsenic or mercury. There is no reason why Defendants cannot complete his deposition in a single day, especially considering the comprehensive nature and detail in his report. What he opines, how he arrived at those opinions, and the methodology he used are spelled out in detail in his report, which lessens the need for a multiday deposition. Although he has never been deposed before, it is worth using, as a reference, what Defendants were able to accomplish in state court. There, in 2021, plaintiffs disclosed their general causation experts—Drs. Beate Ritz, Hannah Gardener, and Michael Aschner. Each expert proffered extensive general causation opinions regarding lead and arsenic, and their ability to cause autism and, for lead, their ability to cause ADHD. Despite their opinions covering multiple metals, and despite the fact that California state court does not have a presumptive seven-hour limit, the Defendants were able to complete their depositions in a single day. Considering that Defendants now, four years later, have an extensive understanding of the issues and science, there is no reason why they cannot complete their depositions in a single day on less subject matter. At the very least, Defendants should attempt to complete their deposition in a single day and if they are unable to, the parties can meet and confer about additional, limited, time.

*Regarding Dr. Guilarte*, he is the Dean of the Robert Stempel College of Public Health & Social Work and Professor in the department of Environmental Health Sciences (EHS) at Florida International University. He opines that "the weight of the evidence indicates that the age-appropriate ingestion of lead and arsenic in contaminated baby food, in the presence or absence of genetic variants, is a causative factor in ASD and ADHD and can impact the severity of the disease." Although his opinions cover arsenic and lead, there is no reason why Defendants cannot

complete his deposition in a single day, just has they were able to do with Drs. Ritz, Gardener, and Aschner back in 2021 when they took their first deposition. Like with Dr. Hu, Defendants have an extensive report, so there is no reason why they cannot utilize seven hours to focus on *Daubert* issues, which the entire focus of this phase of the proceeding. If, after a full day, Defendants believe that they need additional time, Plaintiffs are happy to discuss. But, they should first be required to attempt to discipline themselves in their questioning.

### IV.   Briefing Schedule for Foreign Defendant Motions

In PTO 17, the Court set a briefing schedule for motions challenging the Amended Master Complaint for all defendants who had been served with the Amended Master Complaint as of the date of that Order, and provided that the timing of Rule 12 motions for foreign defendants would be addressed at a later Case Management Conference. Plaintiffs have now served the following foreign defendants: Danone Nutricia Nederland BV, Nestlé Enterprises S.A., and Société des Produits Nestlé S.A. (the "Foreign Defendants"). The parties propose the following briefing schedule for the Foreign Defendants:

- Motions shall be filed by Monday, July 28, 2025;
- Opposition briefs shall be filed by Wednesday, August 27, 2025; and
- Reply briefs shall be filed by Wednesday, September 17, 2025

The parties request that the Court enter an order imposing these deadlines.[2] The parties are available to argue the motions at the convenience of the Court.

### V.   September CMC Hearing

At the last CMC conference, the Court set a CMC hearing for Wednesday, September 24, 2025. Having reviewed calendars, the parties jointly request that this CMC hearing be moved to accommodate religious observance of Rosh Hashanah, which begins on the evening of Monday, September 22 and ends at sundown on Wednesday, September 24. The parties are available on the

---

[2] This agreement does not apply to individual complaints naming Defendant Neptune Wellness Solutions ("Neptune"). Neptune and Plaintiffs will further meet and confer regarding service of process of individual complaints and a procedure for challenging jurisdiction or otherwise responding to the complaints.

prior Thursday, September 18, 2025, if convenient for the Court, or would welcome discussion of other mutually convenient dates.[3]

Dated: June 24, 2025

Respectfully submitted,

WAGSTAFF LAW FIRM

By: /s/ Aimee H. Wagstaff

Aimee H. Wagstaff (SBN: 278480)
940 N. Lincoln Street
Denver, Colorado 80203
Telephone: 303.376.6360
Facsimile: 303.376.6361
awagstaff@wagstafflawfirm.com

WISNER BAUM, LLP

By: /s/ R. Brent Wisner

R. Brent Wisner (SBN: 279023)
rbwisner@wisnerbaum.com
100 Drakes Landing Rd., Suite 160
Greenbrae, CA 94904
Telephone: (310) 207-3233
Facsimile: (310) 820-7444

*Co-Lead Counsel for Plaintiffs in MDL 3101*

---

[3] The following Thursday, October 2, 2025, conflicts with Yom Kippur.

**CERTIFICATE OF SERVICE**

I certify that on June 24, 2025, I electronically filed the foregoing Joint Statement with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

*/s/ Aimee H. Wagstaff*
Aimee H. Wagstaff