Peter Ryan (*Admitted Pro Hac Vice*)
Email: pryan@cozen.com
Joan Taylor (*Admitted Pro Hac Vice*)
Email: joantaylor@cozen.com
COZEN O'CONNOR
1650 Market St., Suite 2800
Philadelphia, PA 19103
Telephone:  215-665-2000

Brett Taylor (SBN 274400)
Email: btaylor@cozen.com
COZEN O'CONNOR
401 Wilshire Blvd, Suite 850
Santa Monica, CA 90401
Telephone: 310-393-4000

Attorneys for Defendant
*The Campbell's Company*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:  BABY FOOD PRODUCTS LIABILITY LITIGATION | Case No. 24-MD-3101-JSC |
| | MDL 3101 |
| | Hon. Jacqueline Scott Corley |
| This Document Relates To: | |
| ALL ACTIONS | **THE CAMPBELL'S COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT** |
| | Hearing Date:    September 18, 2025 |
| | Time:               9:00 a.m. |
| | Location:          Courtroom 8 |

i

<u>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS**</u>

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that The Campbell's Company hereby files its Motion to Dismiss Plaintiffs' First Amended Master Long-Form Complaint. A hearing has been scheduled for September 18, 2025, or as soon thereafter as counsel may be heard.

The grounds for this motion are: Plaintiffs' First Amended Master Complaint fails to allege facts supporting the direct liability of The Campbell's Company, in strict liability or negligence, for the baby food products of Campbell's former subsidiary Plum, PBC. The Court should dismiss the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is based upon the pleadings and papers on file in this action, this Notice of Motion and Motion to Dismiss, and the Memorandum of Points and Authorities.

Dated: June 27, 2025

Respectfully submitted,

**COZEN O'CONNOR**

<u>*/s/ Peter M. Ryan*</u>
Peter M. Ryan
Joan M. Taylor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103

Brett Nicole Taylor
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401

*Counsel for The Campbell's Company*

**DEFENDANT THE CAMPBELL'S COMPANY'S NOTICE OF MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED MASTER LONG-FORM COMPLAINT**

# TABLE OF CONTENTS

**Page**

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS....................................ii

STATEMENT OF ISSUES TO BE DECIDED..........................................................................vii

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................................1

    I.      INTRODUCTION.............................................................................................1

    II.     PROCEDURAL HISTORY ..............................................................................2

          A.     The Original Master Complaint Used the Language of Derivative Liability to Allege Campbell's Direct Liability for Plum's Baby Food Products. ................................................................................ 2

          B.     The Court Dismissed Plaintiffs' Claims Against Campbell Because Plaintiffs Failed to Allege Campbell's Direct Participation in Tortious Conduct. ................................................................................ 2

    III.    PLAINTIFFS' AMENDED MASTER LONG-FORM COMPLAINT .................4

          A.     The Amended Master Complaint Alleges that, from 2013 Through 2021, Campbell Did Not Set Heavy Metal Limits for Plum Finished Products and Did Not Implement a Testing Program for Plum Finished Products. ......................................................................... 4

          B.     The Amended Master Complaint Alleges that, from 2013 to 2016, Campbell Did Not Set Lead, Cadmium, or Arsenic Limits for Plum Product Ingredients and Did Not Test Plum Ingredients for Heavy Metals. From 2013 to 2021, Campbell Did Not Set a Plum Ingredient Limit for Mercury and Tested No Ingredients for Mercury. ........................ 4

          C.     The Amended Master Complaint Alleges that, in or Around 2017, Campbell Expanded a General Corporate Policy for Lead, Cadmium, and Arsenic Limits in Campbell Ingredients to Include Plum Product Ingredients. ........................................................................... 5

    IV.    RULE 12(B)(6) LEGAL STANDARD.................................................................5

    V.     ARGUMENT ......................................................................................................6

          A.     Plaintiff's Strict Liability and Negligence Claims Arise Under the Law of States That Use the Direct Liability Test Described in U.S. v. Bestfoods. ............................................................................... 7

          B.     Plaintiffs' Allegation that Campbell Personnel and Management Did Not Set Heavy Metals Limits for Finished Plum Products from 2013 Through 2021 Is Not a Basis for Direct Liability. ......................................... 7

          C.     Campbell's Alleged Expansion of a General Corporate Policy Limiting Lead, Cadmium, and Arsenic in Campbell Company

iii

Ingredients to Include Plum Ingredients Is Not a Basis for Direct Liability. ................................................................................................... 9

D.    Plaintiffs Fail to Allege Facts Supporting Required Elements of Their Claims. ............................................................................................................. 10

1.    Plaintiffs' Strict Liability Claims—Failure to Warn, Manufacturing Defect, and Design Defect (Counts I, II, and III)—Do Not Plausibly Allege that Campbell Is a Manufacturer, Designer, or Seller of Plum's Products. .................. 12

2.    Plaintiffs' Negligence-Based Claims (Counts IV, V, VI, and VII) Do Not Plausibly Allege That Campbell Had a Direct Duty of Care to Purchasers of Its Former Subsidiary's Products. ......................................................................................... 15

VI.    CONCLUSION ................................................................ 17

CERTIFICATE OF SERVICE .......................................................... 18

**TABLE OF CONTENTS**

# TABLE OF AUTHORITIES

<strong>Page(s)</strong>

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................. 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................. 5

*Best Carpet Values, Inc. v. Google, LLC*,
  90 F.4th 962 (9th Cir. 2024) ............................................................................................... 6

*Bily v. Arthur Young & Co.*,
  3 Cal. 4th 370 (Cal. 1992) ................................................................................................. 15

*Bristow v. Lycoming Engines*,
  No. S-06-1947 LKK/GGH, 2007 WL 1106098 (E.D. Cal. Apr. 10, 2007) .......................... 15

*Calles v. Scripto-Tokai Corp.*,
  864 N.E.2d 249 (Ill. 2007) ................................................................................................. 16

*Enduracare Therapy Mgmt., Inc. v. Drake*,
  681 S.E.2d 168 (Ga. Ct. App. 2009) ................................................................................. 15

*Finerty v. Abex Corp.*,
  51 N.E.3d 555 (N.Y. 2016) ................................................................................................ 14

*In re Gilead Sci. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) .............................................................................................. 6

*Hagstrom v. Safeway, Inc.*,
  No. C20-1160 RAJ-TLF, 2020 WL 6826736 (W.D. Wash. Nov. 20, 2020) ........................ 9

*Joiner v. Ryder Sys. Inc.*,
  966 F. Supp. 1478 (C.D. Ill. 1996) ............................................................................... 10, 16

*Linsner v. Exelon Corp.*,
  No. 1-11-753, 2012 WL 6961999 (Ill. App. Ct. Mar. 28, 2012) .......................................... 10

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ............................................................................................ 14

*McConkey v. McGhan Med. Corp.*,
  144 F. Supp.2d 958 (E.D. Tenn. 2000) .............................................................................. 16

*Oliva v. NBTY, Inc.*,
  No. 11080850-CIV-DIMITROULEAS, 2012 WL 12849959 (S.D. Fla. Dec. 18,
  2012) ................................................................................................................................... 16

*Parkinson v. Guidant Corp.*,
  315 F. Supp.2d 741 (W.D. Pa. 2004) ................................................................................. 13

*Radus Tek Servs., Inc. v. IDC Technologies Inc.*,
  767 F. Supp.3d 972 (N.D. Cal. 2025) ............................................................ 16

*Salinero v. Johnson & Johnson*,
  No. 1:18-cv-23643-UU, 2019 WL 4585215 (S.D. Fla. Sept. 20, 2019) ................ 13

*Smith v. Isaacs*,
  777 S.W.2d 912 (Ky. 1989) .............................................................................. 9

*Sonora Diamond Corp. v. Super. Ct.*,
  83 Cal. App. 4th. 523 (Cal. Ct. App. 2000) ...................................................... 10

*U.S. v. Bestfoods*,
  524 U.S. 51 (1998) .................................................................................*passim*

*Usher v. City of L.A.*,
  828 F.2d 556 (9th Cir. 1987) ............................................................................ 5

*Vandermark v. Ford Motor Co.*,
  391 P.2d 168 (Cal. 1964) (en banc) ................................................................ 16

*Watkins v. MGA Ent., Inc.*,
  574 F. Supp.3d 747 (N.D. Cal. 2021) ................................................................ 5

*Wyatt v. Union Mortg. Co.*,
  24 Cal.3d 773 (Cal. 1979) ................................................................................ 7

**Statutes**

CONN GEN. STAT. § 33-673(b) ........................................................................... 9

GA. CODE ANN. § 14-2-622(b) .......................................................................... 9

IND. CODE § 23-1-26-3(b) ................................................................................. 7

KY. REV. STAT. ANN. § 271B.6-220(2) ............................................................. 9

**Other Authorities**

Restatement (Second) of Torts § 402A ........................................................ 12, 13

1 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF
  CORPORATIONS § 33 ...................................................................................... 7

**TABLE OF AUTHORITIES**

1

## **STATEMENT OF ISSUES TO BE DECIDED**

2       1.       Whether the Court should dismiss plaintiffs' First Amended Master Complaint under
3   Rule 12(b)(6) of the Federal Rules of Civil Procedure because it fails to allege facts supporting the
4   direct liability of The Campbell's Company in strict liability or negligence for the baby food
5   products of Campbell's former subsidiary Plum, PBC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF ISSUE TO BE DECIDED**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On April 2, 2025, the Court dismissed plaintiffs' master complaint because it did not allege facts permitting a reasonable inference that The Campbell's Company [hereinafter "Campbell"] was "directly a participant in the wrong complained of." Dkt. No. 447, at 20 (quoting *U.S. v. Bestfoods*, 524 U.S. 51, 64 (1998)).[1]  The Court should dismiss plaintiffs' First Amended Master Long-Form Complaint ("AMC") for the same reason.

The AMC alleges a lack of conduct by Campbell and no actionable duty of care.  Plaintiffs assert that, throughout the relevant period, Campbell—which has not owned Plum, PBC, since 2021—did not monitor heavy metals in Plum's finished products and did not have a comprehensive heavy metal testing program for Plum ingredients or finished products.  A lack of conduct is not a basis for direct parental liability.

Plaintiffs, moreover, fail to allege Campbell's direct involvement in the manufacture, design, or sale of Plum products, a necessary element of their manufacturing and design defect claims.  Plaintiffs may not rely solely, or derivatively, on their allegations against Plum, the actual manufacturer (through co-manufacturers) of Plum products.  Nor may plaintiffs summarily ascribe to Campbell Plum's duty of care as a manufacturer, a necessary element of plaintiffs' negligence and failure-to-warn claims.

In its April 2 Order, the Court expressed reservations about the applicability of the direct liability rule described in *Bestfoods*, a CERCLA case, to strict liability and negligence claims arising under state statutory and common law.  *Id.* at 20.  This memorandum and its appendices address the Court's concern.  The statutory and common law rules of the eleven States relevant to plaintiffs' claims incorporate the principles of limited liability and direct liability articulated in *Bestfoods*.  Absent a basis to pierce the corporate veil—a theory plaintiffs do not and cannot rely on—a parent corporation is not derivatively liable for the acts of its subsidiaries, but may be directly liable for its "own actions through its personnel and management." *Id.*

---

[1] Record citations are to docketed materials in the Electronic Case File (ECF).  Pin-point citations are to the ECF-generated page numbers at the top margin of documents.

The relevant States also recognize *Bestfoods*' limitation on direct liability, *i.e.*, that actions "consistent with the parent's investor status, such as monitoring of a subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures …. should not give rise to direct liability." *Id.* (quoting 524 U.S. at 72). Campbell's alleged expansion, in or around 2017, of a general corporate policy setting lead, cadmium, and arsenic limits for Campbell company ingredients to include Plum ingredients is not a basis for direct liability.

Plaintiffs' amended allegations are insufficient under state law and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to support claims that Campbell is directly liable or had a duty regarding its subsidiary's products. The Court should accordingly dismiss plaintiffs' claims against Campbell.

## II.    PROCEDURAL HISTORY

### A.    The Original Master Complaint Used the Language of Derivative Liability to Allege Campbell's Direct Liability for Plum's Baby Food Products.

Plaintiffs filed the original Master Long Form Complaint on July 15, 2024.  Dkt. No. 197. The master complaint equated Campbell with Plum and used the language of derivative alter ego liability to assert Campbell's direct liability for its former subsidiary's baby food products.  Plaintiffs alleged that Campbell "sold baby food … through Plum" and that allegations about Plum "apply equally" to Campbell.  *Id.* ¶¶ 25, 27.  Plaintiffs recharacterized the seventy-six "Plum Products" listed in their appendix as "Campbell and Plum Baby Food."  *Id.* Appendix A & ¶ 48.

Plaintiffs alleged two facts to show Campbell's purported direct liability:  (i) that "many of the scientists and researchers that monitored the safety of Toxic Heavy Metals in Plum's baby foods were directly employed by Campbell or were directly controlled and trained by Campbell agents and employees"; and (ii) that "Campbell's attorneys … responded to Congressional inquiries about heavy metals in Plum's baby foods in 2019."  Dkt. No. 197 ¶ 25.

### B.    The Court Dismissed Plaintiffs' Claims Against Campbell Because Plaintiffs Failed to Allege Campbell's Direct Participation in Tortious Conduct.

On April 2, 2025, the Court granted Campbell's Rule 12(b)(6) motion and dismissed plaintiffs' claims against Campbell without prejudice.  Dkt. No. 447.  The Court accepted the

2

plaintiffs' statement (in opposition to Campbell's motion) that they "do not rely on an alter ego theory of liability…. Rather, Plaintiffs assert [that Campbell is] liable for [its] direct involvement in the alleged tortious conduct." *Id.* at 19.

The Court, however, noted that "direct liability manifests when 'the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management' and 'the parent is directly a participant in the wrong complained of.'" *Id.* at 19-20 (quoting *U.S. v. Bestfoods*, 524 U.S. 51, 64 (1998)).  The "touchstone" for determining "when a parent company's actions amount to direct involvement" in tortious conduct is "whether the parent's actions were 'consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures….' Such routine conduct 'should not give rise to direct liability.'" Dkt. No. 447, at 20 (quoting *Bestfoods*, 524 U.S. at 72).  "Ultimately, '[t]he critical question is whether, in degree and detail, actions … by an agent of the parent alone are eccentric under accepted norms of parental oversight of a [subsidiary].'" *Id.*

Turning to plaintiffs' two allegations—that "Campbell responded to congressional inquiries regarding Plum's baby food products" and "either employed or 'directly controlled and trained' the 'scientists and researchers that monitored the safety of Toxic Heavy Metals in Plum's baby food,'" *id.* at 21 (quoting Dkt. No. 197 ¶¶ 25, 48)—the Court concluded that "neither allegation permits a reasonable inference that Campbell was involved in setting heavy metal limits for Plum's baby food."  Dkt. No. 447, at 21.  Plaintiffs, the Court found, "offer no supporting factual allegations" about Campbell employees, "such as how, when, or under what circumstances they monitored toxic heavy metals." *Id.* at 22.  "Under *Bestfoods*, Plaintiffs' theory of liability against Campbell is based on its direct involvement in the alleged tortious conduct." *Id.* at 22-23; *see also id.* at 20 ("*Bestfoods* recognizes a difference between derivative theories of liability (e.g., an alter ego theory) and direct liability based on the parent company's own actions through its personnel and management.").  Because plaintiffs failed to plausibly allege tortious conduct by Campbell personnel, the Court dismissed plaintiffs' strict liability and negligence claims against Campbell without prejudice. *Id.* at 23.

III.    **PLAINTIFFS' AMENDED MASTER LONG-FORM COMPLAINT**

    A.    **The Amended Master Complaint Alleges that, from 2013 Through 2021, Campbell Did Not Set Heavy Metal Limits for Plum Finished Products and Did Not Implement a Testing Program for Plum Finished Products.**

Plaintiffs filed their First Amended Master Long-Form Complaint ("AMC") on April 16, 2025.  Dkt. No. 451.  The AMC alleges that, throughout the period relevant to Campbell in this MDL, Campbell personnel and management did not set heavy metal limits for Plum finished products or implement a heavy metal testing program for Plum finished products.

Plaintiffs allege that Campbell "owned and controlled" Plum "from June 2013 until roughly May 2021 when Plum was sold to Sun-Maid." *Id.* ¶ 100.  In Paragraph 102 of the AMC, plaintiffs allege that "Plum and Campbell failed to set limits on the amount of heavy metals that could be present in Plum's finished baby food products.  From 2007 to at least April 2021, they did not set *any* limits for the amount of lead, arsenic, mercury, cadmium, or aluminum that their finished products could contain." *Id.* ¶ 102 (emphasis in original).  Plaintiffs allege that "Plum and Campbell/Sun-Maid … did not conduct heavy metal testing on Plum products prior to sale" and that "no rigorous heavy metal testing program on ingredients and finished product was ever implemented." *Id.* ¶ 106.

    B.    **The Amended Master Complaint Alleges that, from 2013 to 2016, Campbell Did Not Set Lead, Cadmium, or Arsenic Limits for Plum Product Ingredients and Did Not Test Plum Ingredients for Heavy Metals. From 2013 to 2021, Campbell Did Not Set a Plum Ingredient Limit for Mercury and Tested No Ingredients for Mercury.**

Plaintiffs contend that, from 2013 through 2016, Campbell did not set limits for lead, cadmium, arsenic, or mercury in Plum product ingredients and tested no Plum ingredients for heavy metals.  Paragraph 103 of the AMC alleges that:

> [Campbell] failed to set limits on the amount of heavy metals that could be present in the ingredients used in Plum's baby food products.  Prior to 2016, they did not set limits for the amount of heavy metals that could be present in the ingredients used in Plum products.

Dkt. No. 451 ¶ 103.  Plaintiffs further allege that "as of April 2021, Plum and Campbell still had no limits for the amount of mercury and aluminum that could be in the ingredients used in their baby food products." *Id.*  According to plaintiffs, Campbell did "not hav[e] a comprehensive ingredient

4

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT**

testing program" and had a "pattern and practice of failing to test ingredients." *Id.* ¶¶ 106 & 67.

### C. The Amended Master Complaint Alleges that, in or Around 2017, Campbell Expanded a General Corporate Policy for Lead, Cadmium, and Arsenic Limits in Campbell Ingredients to Include Plum Product Ingredients.

Plaintiffs allege that "[w]hen Plum and Campbell did begin to implement heavy metal limits for Plum ingredients (in or around 2017), it did so only for lead, arsenic, and cadmium." Dkt. No. 451 ¶ 103. "When Plum and Campbell/Sun-Maid did begin to require testing on some of the ingredients used in its products for lead and arsenic, those efforts were scattershot and did not extend to all lots of all ingredients used in Plum baby food products." *Id.* ¶ 105.

The AMC asserts that Campbell employees deposed in the *N.C.* case in Los Angeles County Superior Court in 2023—two years after Campbell had sold its stock interest in Plum to Sun-Maid Growers of California—"confirmed that Campbell initiated and directed the heavy metal testing for Plum products" in 2017. *Id.* ¶ 40-41. Plaintiffs allege that "Timothy Spitzenberger, Campbell's Principal Scientist for Food Safety … confirmed that he personally was responsible for setting limits on the amount of Toxic Heavy Metals allowed in Plum Baby Foods." *Id.* ¶ 41.

## IV.    RULE 12(b)(6) LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

In determining whether plaintiffs have stated actionable claims, the Court accepts plaintiffs' allegations as true and draws all reasonable inferences in their favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). "A complaint must 'contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.'" *Watkins v. MGA Ent., Inc.*, 574 F. Supp.3d 747, 753 (N.D. Cal. 2021) (quoting *Twombly*, 550 U.S. at 562).

5

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT**

1    The Court need not accept as true "allegations that are merely conclusory, unwarranted

2    deductions of fact, or unreasonable inferences." *In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1055

3    (9th Cir. 2008); *Best Carpet Values, Inc. v. Google, LLC,* 90 F.4th 962, 968 (9th Cir. 2024) (court

4    need not and should not accept legal conclusions as true when considering motion to dismiss).

5    Here, the AMC alleges in conclusory fashion that Campbell (rather than Plum) was the

6    manufacturer, designer, and seller of Plum products and that Campbell (rather than Plum) owed a

7    duty to consumers of its former subsidiary's baby food products.  Dkt. No. 451 ¶ 43 ("Campbell

8    conducted business and derived substantial revenues from its manufacturing, advertising,

9    distributing, selling, and marketing of baby foods…."); *id.* ¶ 207 ("Defendants researched,

10   developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted,

11   sold, and otherwise released into the stream of commerce their Contaminated Baby Foods, and …

12   directly advertised or marketed the products to consumers and end users … and therefore had a duty

13   to warn….").

14   The AMC fails to allege facts sufficient to show Campbell's direct involvement in any

15   tortious conduct and fails to connect Campbell—which did not manufacture, design, or sell Plum's

16   products—to material elements of plaintiffs' strict liability and negligence claims.  Plaintiffs'

17   conclusory attribution to Campbell of an alleged duty of care owed by Plum resurrects the alter ego

18   theory plaintiffs have disavowed.

19   **V.    ARGUMENT**

20   Under the Court's April 2, 2025 Order, plaintiffs must allege facts permitting "a reasonable

21   inference that Campbell was involved in setting heavy metal limits for Plum's baby food."

22   Dkt. No. 447, at 21. Plaintiffs may not rely solely, or derivatively, on their allegations against Plum.

23   Nor may plaintiffs ascribe to Campbell a duty of care relating to Plum, the manufacturer, designer,

24   and seller of Plum products.  Plaintiffs must allege facts showing Campbell's direct involvement in

25   the tortious conduct underlying their strict liability and negligence claims.

26   The AMC, however, alleges a lack of conduct.  Plaintiffs allege that Campbell did not

27   monitor heavy metals in Plum's finished products in the relevant period; that Campbell did not have

28   a comprehensive testing program for Plum ingredients or finished products at any time; and that

6

Campbell, in or around 2017, expanded a general corporate policy of lead, cadmium, and arsenic limits in Campbell ingredients to include Plum ingredients. These allegations do not establish Campbell's direct liability for Plum's products.

### A. Plaintiff's Strict Liability and Negligence Claims Arise Under the Law of States That Use the Direct Liability Test Described in *U.S. v. Bestfoods*.

Plaintiffs allege strict liability and negligence claims against Campbell under the laws of the States of California, Connecticut, Florida, Georgia, Illinois, Indiana, Kentucky, Maryland, Missouri, Pennsylvania, and Washington. These States incorporate statutory and/or common law principles of general corporation law equivalent to the holding in *U.S. v. Bestfoods*, 524 U.S. 51, 61-63, 65 (1998), that, absent a basis to pierce the corporate veil, a parent corporation is not derivatively liable for the acts of its subsidiaries but may be directly liable for "its own actions."[2] The appendix attached at **Tab A** lists statutory and/or common law authority from each relevant State for the general limited liability rule that a parent company is not liable for the torts of its wholly owned subsidiary but may be directly liable for its own conduct.[3]

### B. Plaintiffs' Allegation that Campbell Personnel and Management Did Not Set Heavy Metals Limits for Finished Plum Products from 2013 Through 2021 Is Not a Basis for Direct Liability.

The Court allowed plaintiffs to amend the original master complaint to allege facts showing "direct liability based on [Campbell's] own actions through its personnel and management." Dkt. No. 447, at 20. The AMC, however, alleges that from 2013 to 2021—the period when Plum

---

[2] *See also id.* at 64 ("As Justice (then-Professor) Douglas noted almost 70 years ago, derivative liability cases are to be distinguished from those in which 'the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management' and 'the parent is directly a participant in the wrong complained of.'" (quoting Douglas & Shanks, *Insulation from Liability Through Subsidiary Corporations*, 39 YALE L.J. 193, 207, 208 (1929))); *see also* 1 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 33 [hereinafter "FLETCHER CYCL."] ("At common law, a … shareholder … is not personally liable for the torts of a corporation or of any other agent merely because of … shareholdings; some additional connection with the tort is required. The shareholders of a corporation are not liable individually for torts committed by the corporation unless they personally participate in them.").

[3] *See also, e.g.*, **California**: *Wyatt v. Union Mortg. Co.*, 24 Cal.3d 773, 785 (Cal. 1979) ("Shareholders of a corporation are not normally liable for its torts, but personal liability may attach to them through application of the 'alter ego' doctrine … or when the shareholder specifically directed or authorized the wrongful acts."); **Indiana**: IND. CODE § 23-1-26-3(b): "*Shareholder liability*. Unless otherwise provided in the articles of incorporation, a shareholder of a corporation is not personally liable for the acts or debts of the corporation except that the shareholder may become personally liable by reason of the shareholder's own acts or conduct."

was Campbell's wholly owned subsidiary, Dkt. No. 451 ¶ 100—Campbell personnel and management did not set heavy metal limits for Plum finished products or implement a heavy metal testing program. That is not a basis for direct liability.

Plaintiffs allege a lack of parental activity and involvement:

- "Plum and Campbell failed to set limits on the amount of heavy metals that could be present in Plum's finished baby food products. From 2007 to at least April 2021, they did not set *any* limits for the amount of lead, arsenic, mercury, cadmium, or aluminum that their finished products could contain." Dkt. No. 451 ¶ 102 (emphasis in original).
- "Plum and Campbell/Sun-Maid also did not conduct heavy metal testing on Plum products prior to sale…." *Id.* ¶ 106.
- "[N]o rigorous heavy metal testing program on ingredients and finished product was ever implemented." *Id.*

According to the AMC:

- "Campbell and Plum" had a "pattern and practice of failing to test ingredients…." *Id.* ¶ 67.
- "Campbell and Plum/Sun-Maid" did "not hav[e] a comprehensive ingredient testing program…." *Id.* ¶ 106.
- "Plum and Campbell … failed to set limits on the amount of heavy metals that could be present in the ingredients used in Plum's baby food products. Prior to 2016, they did not set limits for the amount of heavy metals that could be in the ingredients used in Plum products." *Id.* ¶ 103.
- "As of April 2021, Plum and Campbell … had no limits for the amount of mercury and aluminum that could be in the ingredients used in their baby food products." *Id.*
- Campbell "did not undertake an effort to source ingredients with the lowest amount of heavy metals available." *Id.* ¶ 101.

These are not allegations of "how, when, or under what circumstances [Campbell] monitored toxic heavy metals." Dkt. No. 447, at 22. The AMC alleges quite the opposite: that Campbell personnel and management did not monitor heavy metals in Plum finished products; that Campbell did "*ad hoc*" finished Plum product testing "only as a response to public reports of the heavy metals in those products"; and that "Plum and Campbell/Sun-Maid" conducted only "scattershot" ingredient testing. Dkt. No. 451 ¶¶ 102, 41, 105.

The corporate statutes and/or common law of the States relevant to plaintiffs' claims recognize the fundamental principle, which "Justice (then-Professor) Douglas noted almost 70 years ago" (524 U.S. at 64), and this Court identified in its April 2, 2025 Order: that "direct liability [is]

8

based on the parent company's own actions through its personnel and management" (Dkt. No. 447, at 20), not the parent company's inaction.[4]  The AMC's allegations—that Campbell personnel and management did not set heavy metals limits for finished Plum products from 2013 through 2021 and had a "pattern and practice of failing to test ingredients"—fail to state claims that Campbell is directly liable for Plum's products.

**C.    Campbell's Alleged Expansion of a General Corporate Policy Limiting Lead, Cadmium, and Arsenic in Campbell Company Ingredients to Include Plum Ingredients Is Not a Basis for Direct Liability.**

The AMC also alleges that Campbell "implement[ed] heavy metal limits for Plum ingredients (in or around 2017) … for lead, arsenic, and cadmium."  Dkt. No. 451 ¶ 103. Campbell's alleged 2017 expansion of a general corporate policy—setting limits for the presence of three heavy metals in ingredients used by brands and companies in the Campbell corporate family— to include Plum ingredients is not a basis to conclude that Campbell is directly liable for Plum's products.

As the Court noted in its April 2 Order, the "touchstone" for "when a parent company's actions amount to direct involvement" in tortious conduct is "whether the parent's actions were 'consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures….' Such routine conduct 'should not give rise to direct liability.'" Dkt. No. 447, at 20 (quoting *Bestfoods*, 524 U.S. at 72).

Here, plaintiffs allege that (i) Campbell, in or around 2017, expanded a general corporate policy for "testing on some of the ingredients used in its products" to include Plum ingredients, Dkt. No. 451 ¶ 105, and (ii) some of this ingredient testing was done "at Campbell's lab in Napoleon, Ohio," *id.* ¶ 41.  A parent company's articulation of a general policy is not "eccentric

---

[4] *See* **Tab A** (appendix of direct liability authority by state); *see also, e.g.*, CONN. GEN. STAT. § 33-673(b) (shareholder "may become personally liable by reason of his own acts or conduct"); GA. CODE ANN. § 14-2-622(b) (same); KY. REV. STAT. ANN. § 271B.6-220(2) (same); *Smith v. Isaacs*, 777 S.W.2d 912, 915 (Ky. 1989) (shareholder "may be liable by reason of his own conduct or acts"); *Hagstrom v. Safeway, Inc.*, No. C20-1160 RAJ-TLF, 2020 WL 6826736, *3 (W.D. Wash. Nov. 20, 2020) ("[A] parent company can be held directly liable for its own conduct when the parent directly participates in the conduct, directs the conduct, or the alleged wrong can otherwise be traced to the actions of the parent company." (citing *Bestfoods*, 524 U.S. at 64-65)).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT**

under accepted norms of parental oversight of a [subsidiary]," Dkt. No. 447, at 20 (quoting *Bestfoods*, 524 U.S., at 72), nor is Campbell's provision of affiliated services to facilitate the policy's implementation.[5] *See, e.g.*, *Linsner v. Exelon Corp.*, No. 1-11-753, 2012 WL 6961999, at *7 (Ill. App. Ct. Mar. 28, 2012) (allegations "that a parent [company] monitored a subsidiary's performance and articulated general policies and procedures for that entity do not give rise to direct participant liability" for negligence); *id.* at *7-8 (allegation regarding parent company's involvement in subsidiary's safety policies failed to show parent "directly participated in any actions that proximately caused [plaintiff's] injuries"); *Joiner v. Ryder Sys. Inc.*, 966 F. Supp. 1478, 1485-86 (C.D. Ill. 1996) (parent company's "implementation of a safety policy … which each subsidiary must adhere to" and provision to subsidiaries of "legal services, printing services, and cash management services" were not bases to find parent directly liable in strict liability or negligence); *see also Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th. 523, 551 (Cal. Ct. App. 2000) ("Diamond's monitoring of Sonora Mining's performance … and setting [of] general policies and procedures to be followed by Sonora Mining" are "of a type or nature deemed by the law to be appropriate, normal involvement by a parent corporation with its subsidiary and therefore insufficient alone or in combination to support a finding of agency").  Campbell's expansion of a generally applicable, corporate policy limiting heavy metals in Campbell company ingredients— which Plum applied to its products (through its co-manufacturers), Dkt. No. 451 ¶ 104 ("Plum set the heavy metal limits for all Plum ingredients [in 2017] ….")—"should not give rise to direct liability." *Bestfoods*, 524 U.S. at 72.

### D.    Plaintiffs Fail to Allege Facts Supporting Required Elements of Their Claims.

Campbell did not manufacture, design, or sell Plum's products.  At times, plaintiffs admit this.  They allege that "Plum was founded in 2007 and has sold a wide variety of baby food products

---

[5] Plum's use, beginning in or around 2017, of another Campbell subsidiary's lab in Napoleon, Ohio—as well as outside labs—to test Plum product ingredients does not constitute tortious conduct by Campbell.  For purposes of plaintiffs' allegations, there is no legal or qualitative difference between conducting ingredient testing, or finished product testing, at a third-party lab and at an affiliated Campbell facility.  Tr. of Proceedings (Feb. 27, 2025), at 51:8-13 ("THE COURT: I don't know that doing testing would give rise to liability. Let's say they out sourced their testing. Did you make that out source company liable because they did the testing? You are not challenging the testing. You are saying based on what the testing was they should have warned. They should have changed their sourcing, that type of thing."), attached hereto at **Tab B**.

10

under the name Plum Organics since that time." Dkt. No. 451 ¶ 100. By contrast, plaintiffs allege only that "Campbell sells food and beverages," *id.* ¶ 39—which is true; plaintiffs do not mention "baby food" in paragraph 39 because Campbell did not make or sell the products that are the subject of their claims.

Plaintiffs nevertheless contend elsewhere in the AMC that "Campbell sold baby food under the brand name Plum Organics ***through*** Plum," *id.* (emphasis added), a derivative, alter ego attribution which the Court has determined plaintiffs "do not rely on," Dkt. No. 447, at 19, but which plaintiffs nevertheless include in the AMC as an aspirational conduit to direct parent liability. *See also id.* ¶ 46 ("For the purposes of this Complaint, allegations related to Plum between 2013 and May 3, 2021 apply equally to Campbell ….").

The Court should reject plaintiffs' derivative attribution. Plaintiffs allege strict liability and negligence claims against Campbell via the conclusory assignment to Campbell of Plum's status as the manufacturer (through co-manufacturers) and seller of Plum products. In paragraph 38 of the AMC, plaintiffs allege that "Plum has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling, and marketing of baby foods within this judicial district and throughout the United States." In paragraph 43, plaintiffs substitute "Campbell" for "Plum," alleging that "***Campbell*** conducted business and derived substantial revenue from ***its*** manufacturing, advertising, distributing, selling, and marketing of baby foods within this judicial district and throughout the United States." Dkt. No. 451 ¶¶ 38 & 43 (emphasis added). Word substitution does not make Campbell the manufacturer, designer, or seller of Plum's products under any State's strict liability or negligence regime.

The AMC ubiquitously conflates Plum with Campbell. Plaintiffs allege conduct by "Plum and Campbell" or, worse, "Plum and Campbell/Sun-Maid" thirteen times in the AMC. *Id.* ¶¶ 101-06. Campbell, however, is not strictly (or directly) liable based on Plum's status as the manufacturer and seller of Plum products; nor is Campbell directly liable in negligence based on Plum's alleged duty of care as a product manufacturer. The rule described in *Bestfoods*, and applied by each of the relevant States, requires more than a summary presumption of identity. A parent company can be "directly liable for its own actions," 524 U.S. at 65, but not for the conduct or

11

manufacturing status of its subsidiary, absent a finding of derivative liability (a theory plaintiffs disavow).

Plaintiffs' amended claims, however, are still premised on the assumption that Campbell is Plum, *i.e.*, that Campbell is the manufacturer, designer, or seller of Plum's products (rather than Plum) and that Campbell owes a duty of care to its former subsidiary's customers.  The Court need not accept these legal conclusions.  *Best Carpet Values*, 90 F.4th at 968.  Without facts supporting reasonable inferences that Campbell (i) manufactured, designed, or sold Plum's products; and/or (ii) owed a duty directly to Plum customers, plaintiffs fail to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  The Court should accordingly dismiss plaintiffs' claims against Campbell because the AMC fails to allege material elements of their strict liability and negligence claims.  *Watkins*, 574 F. Supp.3d at 753.

> **1.     Plaintiffs' Strict Liability Claims—Failure to Warn, Manufacturing Defect, and Design Defect (Counts I, II, and III)—Do Not Plausibly Allege that Campbell Is a Manufacturer, Designer, or Seller of Plum's Products.**

It is easy to tell who the manufacturer defendants are in this MDL.  The Court, in its April 2, 2025 Order, described "Nurture, LLC, Hain Celestial Group, Inc., Beech-Nut Nutrition Company, Walmart, Inc., Gerber Products Company, Sprout Foods, Inc., [and] Plum, PBC"[6] as "[t]he manufacturers of the baby food products at issue …" Dkt. No. 447, at 24.  Plaintiffs' strict liability claims against Campbell (Counts I, II, and III) fail because Campbell is the former parent of Plum, not the manufacturer, designer, or seller of Plum products.  Campbell sold Plum, PBC, in 2021, and Plum continues to make and sell baby food.

It is axiomatic that to be liable for an allegedly defective product in strict liability, the defendant must have the requisite relationship to the product.  *See* Restatement (Second) of Torts § 402A(1)(a) (providing for strict liability of sellers of defective products where "the seller is engaged in the business of selling such a product").  To state claims for Campbell's direct liability under Counts I, II, and III, plaintiffs must plausibly allege facts showing that Campbell "personnel

---

[6] Neptune Wellness Solutions, Inc., the alleged foreign parent of Sprout Foods, Inc., also joined the manufacturer defendants' motion to dismiss.  Dkt. No. 447, at 24.

and management … direct[ly] participa[ted] in the wrong complained of," 525 U.S. at 64, *i.e.*, that Campbell—rather than Plum—manufactured, designed and/or sold Plum products. They cannot.

Under § 402A:

> [o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts § 402A.[7]  The rationale for the rule is that "the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it." *Id.* cmt. c.  Thus, strict liability applies "to any manufacturer of such a product" and "any wholesale or retail dealer or distributor." *Id.* cmt. f.

To be subject to strict liability, a defendant must be "engaged in the business of selling products for use or consumption." *Id.*  Section 402A applies to entities in the chain of product distribution. *Parkinson v. Guidant Corp.*, 315 F. Supp.2d 741, 745 n.3 (W.D. Pa. 2004).  "Those potentially liable are 'downstream' of the original" manufacturer, designer, or seller of the defective product. *Salinero v. Johnson & Johnson*, No. 1:18-cv-23643-UU, 2019 WL 4585215, at *2 (S.D. Fla. Sept. 20, 2019); *see also id.* ("Florida courts have expanded the doctrine of strict liability to others in the distributive chain including retailers, wholesalers, and distributors.").

Campbell, as Plum's parent, sat "upstream" of Plum's chain of product distribution.  Strict liability is an inapt means to seek liability against a parent that does not make or sell its subsidiary's products. *See, e.g.*, *Salinero*, 2019 WL 4585215, at *2 ("The Court has not located any case of 'upstream' liability for a parent holding company that indirectly profits from sale of the product only because it owns the subsidiary-designer."); *see also Parkinson*, 315 F. Supp.2d at 745-46 & n.3 (citing *Bestfoods* and declining to apply § 402A's definition of "seller" to parent company where

---

[7] **Tab C** lists authority from the eight relevant States (California, Florida, Illinois, Indiana, Kentucky, Maryland, Missouri, and Pennsylvania) that have adopted § 402A (via statute or case law), and the three relevant States (Connecticut, Washington, and Georgia) that have not adopted § 402A but have strict liability statutes that do not materially depart from § 402A's requirement that the defendant be a manufacturer and/or seller of the allegedly defective product.

product was designed, manufactured, distributed, and sold by subsidiary; "[P]laintiff has not cited, nor has the Court found, any authority in Pennsylvania suggesting that parent corporations of suppliers in the chain of distribution should be liable for the acts of their independent subsidiaries, nor any authority suggesting that the general principle that mere ownership does not make a parent liable for the acts of its subsidiary ceases to apply in strict liability cases."); *cf. Finerty v. Abex Corp.*, 51 N.E.3d 555, 559 (N.Y. 2016) (dismissing strict liability defective design and failure-to-warn claims where plaintiff failed to show parent company manufactured or sold product components).

Here, the AMC fails to allege facts supporting a reasonable inference that Campbell was the manufacturer, designer, or seller of Plum products or was otherwise a participant in the chain of distribution for Plum products. Plaintiffs allege that Campbell did not monitor heavy metals in Plum's finished products in the relevant period; that Campbell did not have a comprehensive testing program for Plum ingredients or finished products at any time; and that Campbell expanded lead, cadmium, and arsenic ingredient limits in or around 2017 as a general corporate policy for all Campbell brands and companies to include Plum ingredients. These allegations do not establish Campbell as the manufacturer, designer, or seller of Plum products.[8]

Plaintiffs also allege that, "[o]nce Campbell acquired Plum, Campbell's logo appeared on Plum products." *Id.* ¶ 39. The basis for this allegation—which is obviously wrong to anyone who has seen a Plum product—is not clear. Plaintiffs cannot point to a single Plum product containing Campbell's logo.[9] Because the AMC fails to plausibly allege that Campbell manufactured, designed, or sold Plum products, the Court should dismiss Counts I, II, and III against Campbell.

---

[8] Plaintiffs allege that the 2023 "person most qualified" testimony of certain Campbell quality, testing, and marketing employees in the *N.C.* case against Plum (Campbell was not a party), two years after Campbell sold Plum to Sun-Maid, supports their strict liability and negligence claims. Dkt. No. 451 ¶¶ 40-41. Plum's compliance with a California procedural rule is not a basis to attribute direct liability to Campbell. Regardless, this allegation—that Campbell employees had knowledge about Plum products in the period when Campbell owned Plum—falls well within the normal scope of parental control over a subsidiary and is insufficient to make Campbell directly liable.

[9] In their opposition to Campbell's motion to dismiss the original master complaint, plaintiffs attached two Plum product label schematics (*see* Exs. 63 & 64, Dkt. Nos. 383-2 & 383-3) and contended that "Plum product labels bore Campbell's logo." Dkt. No. 382, at 67. A label schematic is not a Plum product. Under Rule 12(b)(6), the Court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT**

1

2
> **2.    Plaintiffs' Negligence-Based Claims (Counts IV, V, VI, and VII) Do Not Plausibly Allege That Campbell Had a Direct Duty of Care to Purchasers of Its Former Subsidiary's Products.**

3   To state negligence-based claims of Campbell's liability under Counts IV, V, VI, and VI,

4   plaintiffs must allege facts plausibly showing that Campbell "personnel and management …

5   direct[ly] participa[ted] in the wrong complained of," 525 U.S. at 64, *i.e.*, that Campbell—not simply

6   Plum—owed a duty of care directly to Plum's customers.  They have not and cannot do so.

7   Plaintiffs allege duties in the aggregate and based on the conclusory assumption that all

8   defendants manufactured, designed, and sold the baby food products at issue.[10]  The elements of a

9   common law negligence claim are familiar:  the defendant owed a duty of care to the plaintiff, and

10   the defendant's breach of that duty caused injury.  These elements apply to product liability claims

11   sounding in negligence.[11]

12   Plaintiffs' negligence-based claims fail because Campbell, Plum's former parent, did not

13   owe a duty of care to Plum's customers.  A parent company does not owe a duty of care to the

14   customers of its subsidiary.  *See Bristow v. Lycoming Engines*, No. S-06-1947 LKK/GGH, 2007

15   WL 1106098, at *8 (E.D. Cal. Apr. 10, 2007) (granting motion to dismiss claims against parent

16   company based on alleged design defect because parent had no duty to disclose defect in product

17   "designed, manufactured, and sold by a separate entity"); *Enduracare Therapy Mgmt., Inc. v. Drake*,

18   681 S.E.2d 168, 172-73 (Ga. Ct. App. 2009) (to sustain direct negligence claim against corporate

19   shareholder, plaintiff must identify a duty owed by the shareholder distinct from duty of care owed

20   by the corporation; allegation that shareholder knew or should have known about subsidiary's

21   *Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

22
23   [10] *See, e.g.*, Dkt. No. 451 ¶ 207 (**Count IV**: "Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce their Contaminated Baby Foods … and therefore had a duty to warn …."); ¶ 225 (**Count V**: "The Defendants had a duty to exercise reasonable care, in the manufacturing, testing, marketing, sale, and distribution of baby foods."); ¶ 237 (**Count VI**: "The Defendants owed a duty to all reasonably foreseeable users to design a safe product."); ¶ 253(D) (**Count VII**: "Defendants owed a duty because they designed, manufactured, controlled, distributed, and sold their products to Plaintiffs.").

24
25

26   [11] "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." *Bily*

27   *v. Arthur Young & Co.*, 3 Cal. 4th 370, 397 (Cal. 1992).  **Tab D** lists authority from the relevant States on the elements of common law negligence and the general proposition that products liability

28   claims sounding in negligence incorporate the common law negligence notion of a duty of care.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT**

negligence is insufficient); *Oliva v. NBTY, Inc.*, No. 11080850-CIV-DIMITROULEAS, 2012 WL 12849959, at *5-6 (S.D. Fla. Dec. 18, 2012) (citing *Fletcher v. Martin Electronics, Inc.*, 825 F.2d 301, 303-04 (11th Cir. 1987)) (parent had no duty to provide safe workplace to subsidiary's employees where parent did not affirmatively undertake such duty); *Joiner v. Ryder Sys. Inc.*, 966 F. Supp. 1478, 1489–90 (C.D. Ill. 1996) (parent company had no duty to direct subsidiary to redesign or modify product even if parent was aware product was potentially dangerous).[12]

Nor can plaintiffs rely on Campbell's status as Plum's former parent to establish a duty of care. The derivative attribution of Plum's duty of care to Campbell would resurrect the alter ego theory that plaintiffs have disclaimed and, in any event, cannot establish.

Manufacturers have "a nondelegable duty to design reasonably safe products." *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 264 (Ill. 2007); *see also Vandermark v. Ford Motor Co.*, 391 P.2d 168, 171 (Cal. 1964) (en banc) (manufacturer "cannot delegate its duty to have its [products] delivered to the ultimate purchaser free from dangerous defects"). Plaintiffs cannot reasonably contend that the Court should treat Plum's duty of care as the manufacturer of its products (through contract manufacturers) as Campbell's duty. Campbell's "*ad hoc* testing" of finished Plum products and Plum's use, beginning in 2017, of a Campbell subsidiary's Ohio lab for "scattershot" ingredient testing does not transfer Plum duties to its former parent. Dkt. No. 451 ¶¶ 41, 105.

The AMC alleges no enforceable common law basis, and no other legal basis—fiduciary, contractual, or statutory—to conclude that Campbell owed a duty to purchasers of baby food products manufactured and sold by its subsidiary. *Radus Tek Servs., Inc. v. IDC Technologies Inc.*, 767 F. Supp.3d 972, 979 (N.D. Cal. 2025) ("A duty of care may arise through statute, contract, or a special relationship between the parties."). Because plaintiffs fail to plausibly allege that Campbell owed them a direct duty of care regarding Plum's products, the Court should dismiss Counts IV, V, VI, and VII of the AMC against Campbell.

---

[12] *Cf. McConkey v. McGhan Med. Corp.*, 144 F. Supp.2d 958, 964 (E.D. Tenn. 2000) (where parent company did not manufacture allegedly defective product, parent had no duty to warn subsidiary's customers).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT**

1    **VI.    CONCLUSION**

2        The AMC fails to allege Campbell's direct liability for Plum baby food products, or that

3    Campbell had a non-derivative duty of care relating to Plum's manufacture and sale of those

4    products.  The Court should accordingly dismiss plaintiffs' amended claims against Campbell under

5    Rule 12(b)(6) of the Federal Rules of Civil Procedure.

6    Dated: June 27, 2025               Respectfully submitted,

7                                       **COZEN O'CONNOR**

8                                       */s/ Peter M. Ryan*
                                   Peter M. Ryan

9                                       Joan M. Taylor
                                   1650 Market St., Suite 2800

10                                      Philadelphia, PA 19103

11                                      Brett Nicole Taylor
                                   401 Wilshire Blvd., Suite 850

12                                      Santa Monica, CA 90401

13                                      *Counsel for The Campbell's Company*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE
CAMPBELL'S COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER
LONG-FORM COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 27, 2025, I electronically filed the foregoing Motion to Dismiss Plaintiffs' First Amended Master Long-Form Complaint with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

/s/ Peter M. Ryan
Peter M. Ryan

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT**