**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

IN RE: BABY FOOD PRODUCTS
LIABILITY LITIGATION

_____

This Document Relates To:

ALL ACTIONS

Case No. 24-MD-3101-JSC

MDL 3101

Hon. Jacqueline Scott Corley

**THE CAMPBELL'S COMPANY'S
REPLY BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED MASTER
LONG-FORM COMPLAINT**

## <u>TABLE OF CONTENTS</u>

Page

I.  INTRODUCTION ................................................................................................. 1

II. ARGUMENT ...................................................................................................... 3

    A.  Under Rule 12(b)(6), the Court Need Not Accept as True Allegations
        Contradicted by Documents Plaintiffs Rely on in the AMC .................................. 3

    B.  Unlike the AMC, Which Simply Attributes Plum's Alleged Duties as a
        Manufacturer to Campbell, Plaintiffs' Opposition Argues for the First
        Time that Campbell "Assumed" Duties Relating to Plum's Products. .................... 5

    C.  Plaintiffs Concede that the Relevant States Use *Bestfoods*' Parental Policy
        & Procedure Exclusion from Direct Liability.  Campbell's General
        Corporate Policy Limiting Heavy Metals in Ingredients Is Core Parental
        Conduct and Not a Basis for Direct Liability ........................................................ 7

III. CONCLUSION ................................................................................................... 8

i

**THE CAMPBELL'S COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*E & J. Gallo Winery v. EnCana Energy Serv., Inc.*,
   No. CV F 03-5412, 2008 WL 2220396 (E.D. Cal. May 27, 2008)...........................................8

*Emerson v. N. Tr. Corp.*,
   No. 23-CV-241-TLT, 2023 WL 11884751 (N.D. Cal. Jun. 20, 2023) ...................................7

*Gueye v. Wells Fargo Bank*,
   No. 3:22-CV-08904-JSC, 2024 WL 1024740 (N.D. Cal. Mar. 7, 2024)..................................5

*Karns & Karns LLP v. Quintessa Mktg., LLC*,
   No. 2:23-CV-04434-SPG-KS, 2023 WL 9894466 (C.D. Cal. July 25, 2023).......................5

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018).................................................................................................3

*Lauren Sun v. Siemens AG*,
   No. CV 10-174, 2010 WL 11549643 (C.D. Cal. Aug. 4, 2010) ............................................8

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008)...............................................................................................3

*U.S. v. Bestfoods*,
   524 U.S. 51 (1998)...................................................................................................2, 3, 7, 8

*U.S. v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003).................................................................................................3

*Wallis v. Centennial Ins. Co.*,
   No. 08-CV-2558, 2013 WL 3803971 (E.D. Cal. Jul. 19, 2013) ............................................7

*whiteCryption Corp. v. Arxan Techs., Inc.*,
   No. 15-CV-754, 2015 WL 3799585 (N.D. Cal. Jun. 18, 2015) .............................................7

**Other Authorities**

Rule 12(b)(6) ...................................................................................................................2, 3, 8

ii

**THE CAMPBELL'S COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT**

1
## I.    INTRODUCTION

2       In their opposition to The Campbell's Company's [hereinafter "Campbell"] motion to

3  dismiss the Amended Master Complaint ("AMC"), plaintiffs attribute Plum, PBC's alleged duty of

4  care—as the manufacturer and seller of Plum baby food products (and a participating defendant in

5  this MDL)—to Campbell.  Plaintiffs do not dispute that the AMC is predominantly a catalog of

6  things Campbell did not do:

7
8
- From 2013 through 2021, Campbell did not set heavy metals limits for Plum finished products and did not implement a testing program for Plum finished products, Dkt. No. 451 ¶ 102;[1]

9
10
11
- From 2013 through 2016, Campbell did not set lead, cadmium, or arsenic limits for Plum product ingredients and did not test Plum product ingredients for heavy metals, *id.* ¶ 103;

12
13
- From 2013 through 2021, Campbell did not set a Plum ingredient limit for mercury and tested no ingredients for mercury, *id.*; and

13
14
- Campbell did not have a comprehensive ingredient testing program and had a "pattern and practice of failing to test ingredients."  *Id.* ¶¶ 106 & 67.

15       In their opposition, plaintiffs mischaracterize this inactivity as a "failure[] to take actions

16  required by the duties that Campbell assumed for Plum's baby foods."  Dkt. No. 553, at 13.  This is

17  the first time plaintiffs have argued that Campbell "assumed" any duty.  The AMC nowhere alleges

18  as a fact or element of any claim that Campbell assumed a duty of care "for Plum's baby foods."

19       Absent an affirmative duty to act, Campbell's alleged inactivity regarding Plum's products

20  cannot predicate direct liability.  The AMC and plaintiffs' opposition identify no duty of care

21  requiring Campbell to set heavy metal limits or implement a testing program for its subsidiary

22  Plum's products in the years when plaintiffs allege that Campbell did neither.

23       Plaintiffs' direct liability claims from 2013 to 2016 fail because the AMC alleges no conduct

24  by and no duty of care for Campbell, a parent company that did not manufacture or sell Plum

25  products.

26

27
[1] Record citations are to docketed materials in the Electronic Case File (ECF).  Pin-point citations are to the ECF-generated page numbers at the top margin of documents.
28

**THE CAMPBELL'S COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT**

1    Plaintiffs' direct liability claims for following years likewise fail because Campbell's 2017

2  expansion—to include Plum ingredients—of a general corporate policy limiting lead, cadmium, and

3  arsenic in the ingredients procured by Campbell brands and companies, Dkt. No. 451 ¶ 103, is

4  precisely the kind of parental "interference that stems from the normal relationship between parent

5  and subsidiary" and "should not give rise to direct liability." *U.S. v. Bestfoods*, 524 U.S. 51, 71, 72

6  (1998).

7    Plaintiffs disagree, but the AMC defeats their argument.  They argue that "[n]othing

8  currently before the Court supports th[e] characterization" of Campbell's ingredient limits as "a

9  mere expansion of a general corporate policy."  Dkt. No. 553, at 14.  But plaintiffs themselves

10  contend that their ground for direct liability is "what Campbell said they did in prior depositions."

11  *Id.* (citing Dkt. No. 451 ¶¶ 41-42).  The AMC alleges that Tim Spitzenberger, Campbell's former

12  toxicologist, confirmed that ███████████████████████████████████████████████████████

13  ███████████████████████████████████████████  Dkt. No. 451 ¶ 41. What Mr. Spitzenberger

14  said, however, was ███████████████████████████████████████████████████████████

15  ███████████  Dkt. No. 383-13, Exhibit 74, at 102 (emphasis added).[2] Mr. Spitzenberger spoke

16  of a general policy for all Campbell company ingredients, including Plum ingredients. Plaintiffs

17  cannot rely in the AMC on a misstatement of Mr. Spitzenberger's words but deny what he actually

18  said.   Under Rule 12(b)(6), the Court need not accept as true an allegation contradicted by a

19  document plaintiffs rely on in the AMC.[3]

20    Plaintiffs' opposition says next to nothing about *Bestfoods* or how the Relevant States apply

21  *Bestfoods*' direct liability holding to strict liability and negligence claims.  The Relevant States have

22  adopted *Bestfoods*' direct liability rule, *see* Dkt. No. 511, **Tab A**, and courts have applied the general

23  

---

24  [2] Plaintiffs attached an excerpt from Mr. Spitzenberger's 2023 unfinished deposition in the *NC v. Hain Celestial Group, Inc.* case in California Superior Court to their omnibus opposition to defendants' motions to dismiss the original master complaint.  Dkt. No. 383-13 (Exhibit 74).

25  They refer to and rely on that excerpt in the AMC.

26  [3] Plaintiffs mischaracterize Mr. Spitzenberger's statement in the AMC and their opposition to bolster their direct liability claims against Campbell.  Campbell directs the Court to his actual

27  statement for the limited purpose of showing plaintiffs' reliance on a document that contradicts their allegation.  Campbell reserves all admissibility and other objections to plaintiffs' use of Mr. Spitzenberger's incomplete deposition for any purpose.

28

policy/procedure exclusion from direct liability that *Bestfoods* described, *id*. at 17.  Plaintiffs fail to address the *Bestfoods*-related case law and statutes of the Relevant States in **Tab A** to Campbell's motion.  Nor do plaintiffs dispute the strict liability and negligence authority in **Tabs C** and **D**, or show how Campbell, which did not manufacture, design, or sell Plum products, is directly liable under the state law claims in the AMC.

Plaintiffs say they "do not assert" a derivative theory of liability against Campbell, Dkt. No. 553, at 12, but their claims attribute to Campbell—without basis in fact or law—Plum's duty of care as the manufacturer of Plum products.  The Court should accordingly dismiss plaintiffs' claims against Campbell.

## II.    ARGUMENT

### A.    Under Rule 12(b)(6), the Court Need Not Accept as True Allegations Contradicted by Documents Plaintiffs Rely on in the AMC.

The Court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Plaintiffs may not rely on paraphrased references in the AMC to deposition testimony allegedly stating (according to their opposition) that Campbell had "day-to-day control," Dkt. No. 553, at 13, over "the heavy metal testing for Plum products," Dkt. No. 451 ¶ 41, when the witness said something else.

Under Rule 12(b)(6), "[a] court may … consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  The "incorporation-by-reference" doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018), *cert. denied*, *Hagan v. Khoja*, 587 U.S. 1014 (2019). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908.

**THE CAMPBELL'S COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT**

Here, plaintiffs expressly rely in the AMC on a mischaracterization of a statement taken from the unfinished 2023 deposition in the *N.C.* case of Tim Spitzenberger, Campbell's former "Principal Scientist for Food Safety," Dkt. No. 451 ¶ 41.  Mr. Spitzenberger's deposition was never completed due to health reasons, *see* Dkt. No. 497, at 19-21.  In their opposition, plaintiffs deny that Tim Spitzenberger described "a general corporate policy," Dkt. No. 553, at 14, when he testified about Campbell's 2017 expansion of lead, cadmium, and arsenic limits in Campbell ingredients to include Plum ingredients, but this is what Mr. Spitzenberger actually said:

Dkt. No. 383-13, at 102: 1-11.

.  Plaintiffs may not change his testimony to say something more favorable to their direct liability argument.

Plaintiffs' mischaracterization of documents they rely on in the AMC is not limited to avoiding unhelpful testimony.  The AMC also makes the conclusory allegation that "[o]nce Campbell acquired Plum, Campbell's logo appeared on Plum products."  Dkt. No. 451 ¶ 39.  Plaintiffs made the same assertion in their opposition to Campbell's motion to dismiss the original master complaint, Dkt. No. 382, at 43 ("Once Campbell acquired Plum, Campbell's logo appeared on Plum products."); *see also id.* at 67 ("Plum product labels bore Campbell's logo."), and attached two supporting exhibits, Dkt. Nos. 383-2 & 383-3 (Exhibits 63 & 64).  Exhibits 63 and 64, however, are plainly label design schematics, not Plum product labels.  Plaintiffs attach no actual Plum product labels to support this allegation (because there are none).  They insist that "the Master Complaint controls here," Dkt. No. 553, at 14 n.8, but the Court need not accept a conclusory allegation when the documents plaintiffs rely on show the allegation to be false.

**B.    Unlike the AMC, Which Simply Attributes Plum's Alleged Duties as a Manufacturer to Campbell, Plaintiffs' Opposition Argues for the First Time that Campbell "Assumed" Duties Relating to Plum's Products.**

Plaintiffs argue that "Campbell was directly responsible for the ingredients and amounts of heavy metals in the products that Plum sold and Plaintiffs ate." Dkt. No. 553, at 9.  In their opposition, plaintiffs assert for the first time that Campbell "assumed" duties "for Plum's baby foods." Dkt. No. 553, at 13; *see also id.* ("The Master Complaint specifically alleges that Campbell assumed relevant duties….").  The AMC, however, does not allege that Campbell "assumed" any duty.  The AMC simply attributes to Campbell all alleged duties of its former subsidiary.  No alleged fact or claim in the AMC contends that Campbell affirmatively "assumed relevant duties."

Plaintiffs may not make assumption-of-duty allegations for the first time in their opposition. *Karns & Karns LLP v. Quintessa Mktg., LLC*, No. 2:23-CV-04434-SPG-KS, 2023 WL 9894466, at *5 (C.D. Cal. July 25, 2023) ("Plaintiff[s] may not make additional allegations for the first time in opposition to a motion to dismiss."); *see also Gueye v. Wells Fargo Bank*, No. 3:22-CV-08904-JSC, 2024 WL 1024740, at *2 (N.D. Cal. Mar. 7, 2024) ("[I]n assessing Defendants' motion to dismiss, the Court cannot consider the new allegations raised in Plaintiff's opposition.").

The AMC and plaintiffs' opposition brief present different liability theories.  The AMC equates Plum with Campbell; according to the AMC, if Plum had a duty, so did Campbell.[4]  In their opposition, however, plaintiffs argue that Campbell affirmatively "assumed" duties.  It is plaintiffs who are assuming here.  When plaintiffs argue that "Campbell[] fail[ed] to perform ***these duties***," they refer back to alleged facts (in the immediately preceding sentence of their opposition brief) which they call "duties," Dkt. No. 553, at 13 (emphasis added), namely that:

- "Campbell failed to set metal limits for finished products";

- "Campbell did not test Plum products for heavy metals until after sale"; and

---

[4] *See e.g.*, Dkt. No. 451 ¶ 43 ("Campbell exercised control over Plum's baby food selling in the United States…. [and] conducted business and derived substantial revenues from ***its manufacturing, advertising, distributing, selling, and marketing of baby foods***…." (emphasis added)); *id.* ¶ 102 ("***Plum and Campbell*** failed to set limits on the amount of heavy metals that could be present in Plum's finished baby food products." (emphasis added)); *id.* ¶ 103 ("***Plum and Campbell*** also failed to set limits on the amount of heavy metals that could be present in the ingredients used in Plum's baby food products" (emphasis added)).

**THE CAMPBELL'S COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- "Campbell never implemented a rigorous or comprehensive heavy metal testing program for Plum products."

*Id.* These are not duties. Plaintiffs here simply repeat the AMC's catalog of things Campbell did not do. Absent a prior duty to act—and the AMC alleges none—allegations of a lack of conduct cannot form the basis for claims against Campbell.

Plaintiffs also contend that "[t]he Master Complaint specifically alleges that Campbell assumed relevant duties by acting through its own 'personnel,'" and "[t]hat is what Campbell said they did in prior depositions" Dkt. No. 553, at 13. Plaintiffs' account of these "prior depositions," however, describes witnesses testifying about Plum, not Campbell. The AMC alleges that:

- "Tracy Hicks, a Campbell Manager for Global Analytical Chemistry and Senior Manager for Chemical Safety, … testified to ***Plum's policies and practices*** for testing ingredients and finished products for Toxic Heavy Metals." Dkt. No. 451 ¶ 40 (emphasis added);

- "Christina Strapp, who served as Campbell's group Manager for the Plum brand, and … testified to ***Plum's supply chain and manufacturing processes***." *Id.* (emphasis added); and

- "Annalisa Fornarelli, Campbell's Vice President of Food Safety and Quality, … testified to ***Plum's efforts*** to evaluate the safety of its Baby Foods and the decision not to warn about the presence of Toxic Heavy Metals in those foods." *Id.* (emphasis added).

The testimony of these witnesses, who testified as Plum's designees under California's "Person Most Qualified" procedure in the *N.C.* case (Campbell was not a party), does not establish that Campbell "assumed" duties relating to Plum's products. Similarly, plaintiffs allege in the AMC that Steve DeMuri, Campbell's former director of operations and quality, "confirmed" in a deposition that he was "in charge of the safety of Plum Baby Food," but the same paragraph of the AMC concedes that Plum had its own "Quality Director." Dkt. No. 451 ¶ 41. The AMC alleges no facts showing that Campbell "failed to adequately perform a duty it had assumed." Dkt. No. 553, at 13.[5]

---

[5] Plaintiffs also say Campbell's 2019 response to a Congressional inquiry retroactively establishes Campbell's assumption of "relevant duties" in prior years. Dkt. No. 553, at 13. A response to a Congressional inquiry on behalf of a then-wholly owned subsidiary is not the de facto assumption of the subsidiary's legal duties; it is a response to Congress's inquiry. Campbell responded in

6

### C. Plaintiffs Concede that the Relevant States Use *Bestfoods*' Parental Policy & Procedure Exclusion from Direct Liability. Campbell's General Corporate Policy Limiting Heavy Metals in Ingredients Is Core Parental Conduct and Not a Basis for Direct Liability.

In its April 2 Order dismissing plaintiffs' claims against Campbell in the original master complaint, the Court inquired about the applicability of *Bestfoods*' direct liability rule to plaintiffs' claims and noted that "whether a defendant is liable as a manufacturer often requires consideration of state statutory and common law." Dkt. No. 447, at 20. Campbell's motion to dismiss and appendices address both of the Court's questions. Plaintiffs avoid them entirely.

Plaintiffs' opposition fails to address any of the *Bestfoods*-related case law and statutes of the Relevant States in **Tab A** to Campbell's motion. Plaintiffs rely on two cases dealing with an agency theory of liability that the AMC does not (and cannot) allege.[6] The opposition says little about the Relevant States' strict liability and negligence authority in **Tabs C** and **D**, other than conceding that Campbell "could surely have cited more." Dkt. No. 553, at 15. True.

Plaintiffs wave away the Court's questions about (i) whether the Relevant States have adopted the *Bestfoods* direct liability rule (they have, *see* Dkt. No. 511, **Tab A**); (ii) whether the Relevant States have applied *Bestfoods*' general policy/procedure exclusion from direct liability (they have, *id.* at 17); and (3) whether the Relevant States have applied the policy/procedure exclusion to strict liability and negligence claims (they have, *see id.* & **Tabs C** & **D**).

Plaintiffs summarily dismiss the caselaw and statutes cited in Campbell's motion, arguing that *Bestfoods* only precludes claims against parents "that were not as involved" as Campbell. Dkt. No. 553, at 14. That is demonstrably not what *Bestfoods* held; nor is it how the Relevant States have applied *Bestfoods* or its policy/procedure exclusion from direct liability.[7] Plaintiffs

---

2019 because the Congressional inquiry was addressed to Campbell. It would have been inappropriate for Campbell not to respond.

[6] Dkt. No. 553, at 13, citing *whiteCryption Corp. v. Arxan Techs., Inc.*, No. 15-CV-754, 2015 WL 3799585, at *2-3 (N.D. Cal. Jun. 18, 2015) (dismissing counterclaims for failure to adequately allege "agency liability"); and *Wallis v. Centennial Ins. Co.*, No. 08-CV-2558, 2013 WL 3803971, at *3 (E.D. Cal. Jul. 19, 2013) (allowing plaintiffs to "proceed on their agency theory" on condition that they "elect to proceed against either [the parent company] or [the subsidiary]," because plaintiffs "cannot sue *both*" (emphasis in original), and "the liability is alternative").

[7] *See, e.g.*, Dkt. No. 511, at 17 (citing cases); *see also Emerson v. N. Tr. Corp.*, No. 23-CV-241-TLT, 2023 WL 11884751, at *8 (N.D. Cal. Jun. 20, 2023) (dismissing breach of fiduciary duty and unfair competition claims against parent that approved subsidiary's business plans and senior

**THE CAMPBELL'S COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION**
**TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT**

fail to show how Campbell, which did not manufacture, design, or sell Plum products, is directly liable under the state law strict liability and negligence claims in the AMC.

## III.    CONCLUSION

The AMC fails to allege Campbell's direct liability for Plum baby food products, or that Campbell had a non-derivative duty of care relating to Plum's manufacture and sale of those products.  The Court should accordingly dismiss plaintiffs' claims in the AMC against Campbell under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

**COZEN O'CONNOR**

August 14, 2025

*/s/ Peter M. Ryan*
Peter M. Ryan
Joan M. Taylor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103

Brett Nicole Taylor
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401

*Counsel for The Campbell's Company*

---

management because "[t]hese are more akin to the activities of a parent that do not give rise to liability" (citing *Bestfoods*' policy/procedure exclusion, 524 U.S. at 72)); *E & J. Gallo Winery v. EnCana Energy Serv., Inc.*, No. CV F 03-5412, 2008 WL 2220396, at *15 (E.D. Cal. May 27, 2008) (dismissing unfair competition claim against parent because "the setting of an overall ethics policy by a parent that is applicable to the parent's subsidiaries is an important part of its risk management policy and lies well within the parent's accepted authority to set general policies and procedures without transforming the parent/subsidiary relationship to a principal/agent relationship" (citing *Bestfoods*)); *cf. Lauren Sun v. Siemens AG*, No. CV 10-174, 2010 WL 11549643, at *4 (C.D. Cal. Aug. 4, 2010) (dismissing breach of contract, conversion, and false light claims against parent for lack of personal jurisdiction because "'articulation[s] of general policies and procedures' are appropriate for a parent company [and] will not cause Defendant Siemens AG to incur liability" (citing *Bestfoods*)).

8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 14, 2025, I electronically filed the foregoing The Campbell's Company's Reply Brief in Support of Its Motion to Dismiss Plaintiffs' First Amended Master Long-Form Complaint with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

_/s/ Peter M. Ryan_____
Peter M. Ryan

**THE CAMPBELL'S COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT**