R. Brent Wisner (SBN 276023)
rbwisner@wisnerbaum.com
**WISNER BAUM, LLP**
11111 Santa Monica Blvd., Suite 1750
Los Angeles, CA 90025
Tel: (310) 207-3233
Fax: (310) 820-7444

Aimee H. Wagstaff (SBN: 278480)
awagstaff@wagstafflawfirm.com
**WAGSTAFF LAW FIRM**
940 N. Lincoln Street
Denver, Colorado 80203
Telephone: 303.376.6360
Facsimile: 303.376.6361

*Co-Lead Counsel for Plaintiffs in MDL 3101*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION | Case No. 24-MD-301-JSC |
| | MDL No. 3101 |
| This document relates to: | Hon. Jacqueline Scott Corley |
| ALL ACTIONS | **PLAINTIFFS' OPPOSITION TO FOREIGN NESTLÉ DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT:** |

1) **DEFENDANT SOCIÉTÉ DES PRODUITS NESTLÉ S.A.'S MOTION TO DISMISS (DKT. NO. 542)**
2) **DEFENDANT NESTLÉ ENTERPRISES S.A.'S MOTION TO DISMISS (DKT. NO. 543)**

**[REDACTED PUBLIC VERSION]**

Date:        September 18, 2025
Time:        9:00 a.m. PT
Location: Courtroom 8
                 19th Floor, 450 Golden Gate Ave.
                 San Francisco, CA 94102

# TABLE OF CONTENTS

Page

**INTRODUCTION** ..................................................................................................**1**

**BACKGROUND** ...................................................................................................**2**

    I.    Defendants' Baby Foods Are Contaminated with Toxic Heavy Metals ..............2

    II.    Defendants Knowingly Participated in Manufacturing and Selling Baby
        Foods Contaminated with Toxic Heavy Metals .....................................................4

**ARGUMENT** ........................................................................................................**5**

    I.    The Foreign Nestlé Defendants Were Properly Served with the Operative
        Master Complaint ...............................................................................................5

    II.    The Foreign Nestlé EntiTies Are Subject to Specific Personal Jurisdiction in
        this MDL ............................................................................................................9

    a.    The Court Has Specific Personal Jurisdiction over SPN ....................................11

    b.    The Court Has Specific Personal Jurisdiction over Nestlé Enterprises ..............14

    c.    Alternatively, the Court Should At Least Order Targeted Jurisdictional
        Discovery ...........................................................................................................16

    III.    Plaintiffs Have Stated Plausible Claims Against the Foreign Nestlé
        Defendants...........................................................................................................17

**CONCLUSION** ...................................................................................................**19**

PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS'
FIRST AMENDED LONG-FORM COMPLAINT

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

**Cases**

4

*Arasan Chip Sys. v. Sonix Tech. Co. Ltd.*,
   No. 5:09-CV-02172, 2010 WL 890424 (N.D. Cal. Mar. 8, 2010) ............................................ 9

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
   223 F.3d 1082 (9th Cir. 2000) .............................................................................. 10, 13, 14, 15

*Benny v. Pipes*,
   799 F.3d 489 (9th Cir. 1986) ................................................................................................ 8

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) .............................................................................................. 16

*Burda Media, Inc. v. Viertel*,
   417 F.3d 292 (2d Cir. 2005) ................................................................................................ 6

*Butcher's Union Local No. 498*,
   788 F.2d .............................................................................................................................. 16

*Gelboim v. Bank of Am. Corp*,
   574 U.S. 405 (2015) ............................................................................................................ 9

*Henderson v. U.S.*,
   517 U.S. 654 (1996) .......................................................................................................... 6, 7

*In re 701 Mariposa Project, LLC*,
   514 B.R. 10 (B.A.P. 9th Cir. 2014) ...................................................................................... 8

*In re Chinese Drywall*,
   2015 WL 13387769 ............................................................................................................ 8

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
   MDL No. 09-2047, 2018 WL 279629 (E.D. La. Jan. 2, 2018) .................................................. 6

*In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, No. 11 C,
   5468, 2012 WL 3582708 (N.D. Ill. Aug. 16, 2012) ................................................................ 9

*Loomis v. Amazon.com LLC*,
   63 Cal. App. 5th 466 (Cal. App. 2nd Dist. 2021) ............................................................. 17, 18

*Moletech Global Hong Kong Ltd. v. Pojery Trading Co.*,
   No. C 09-00027, 2009 WL 506873 (N.D. Cal. Feb. 27, 2009) ............................................ 9, 10

*Russo v. Federal Medical Servs., Inc.*,
   744 F. Supp. 3d 914 (N.D. Cal. 2024) ................................................................................ 11

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS'
FIRST AMENDED LONG-FORM COMPLAINT

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ...................................................................................... 10

*Shahri v. Los Rios Cmty. Dist.*,
    Case No. 2:23-cv-01569-DJC-JDP, 2024 WL 2883472 (E.D. Cal. June 7, 2024)...................... 8

*Travelers Cas. & Sur. Co. of Am. v. Brenneke*,
    551 F.3d 1132 (9th Cir. 2009) .................................................................................... 6

*United States v. Bestfoods*,
    524 U.S. 51 (1998).................................................................................................. 10

*US Fire Pump Co., LLC v. Alert Disaster Control (Middle East) Ltd.*,
    No. 19-335-SDD-EWD, 2021 WL 296073 (M.D. La. Jan. 28, 2021)........................................ 7

*Whale v. U.S.*,
    792 F.2d 951 (9th Cir. 1986) ....................................................................................... 8

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006) ..................................................................................... 9

1

## **INTRODUCTION**

2      The Plaintiffs suffered lifelong neurological harm because they ate foods that Defendants

3  marketed for babies and that were contaminated with excessive levels of toxic heavy metals lead,

4  arsenic, mercury, and cadmium.  Plaintiffs endeavor to assert claims against those entities—and

5  only those entities—that played a substantial role in causing this contamination and, thus, bear

6  liability for Plaintiffs' injuries.  To that end, Plaintiffs voluntarily dismiss claims against Danone

7  Nutricia Nederland BV ("Danone ELN").  Based on its motion to dismiss and other information

8  discovered since naming them, this particular Danone entity appears to be the wrong one, i.e., not

9  the Danone entity repeatedly referred to as dictating the heavy metal content of Nurture baby foods.[1]

10      The same cannot be said for Defendants Société des Produits Nestlé S.A. and Nestlé

11  Enterprises S.A. (collectively, the "Foreign Nestlé Defendants")—those Nestlé entities are the

12  entities that played a substantial role in causing Gerber's baby food products to be heavily

13  contaminated with toxic heavy metals.  The Court previously held that references to "Nestlé" in

14  documents discovered to date did not suffice to establish personal jurisdiction over Nestlé S.A.

15  (the ultimate corporate parent of Defendant Gerber Products Company) because relevant

16  documents did not reference Nestlé S.A., but some other Nestlé entity.  *See* Am. Order Re Defs.'

17  Mots. To Dismiss and Mot. To Strike, Dkt. 447, at 6–10 (Apr. 2, 2025) ("First MTD Order").  But

18  relevant documents *do* specifically indicate that the Foreign Nestlé Defendants now named in

19  Plaintiffs' First Amended Master Long-Form Complaint, Dkt. 451 (Apr. 16, 2025) ("Master

20  Complaint") were directly involved in, among other things, sourcing decisions for Gerber baby

21  foods, monitoring and testing Gerber baby foods for heavy metals, and setting the internal

22  specifications (i.e., purported limits) for the heavy metals in Gerber baby foods.  In short, these

23  Foreign Nestlé Defendants were, in part, responsible for the harmful levels of heavy metals that

24  led to the claims in this case.

25

26  ───────────────────

27  [1] As explained in Plaintiffs' notice of voluntary dismissal for Danone ELN, Plaintiffs have reason
to believe that a different Danone entity was responsible for the actions previously attributed to
Danone ELN.  Plaintiffs intend to pursue claims against that entity in the manner that the Court
28  deems appropriate.

PLAINTIFFS' OPPOSITION TO FOREIGN NESTLÉ DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT

The documents discovered to date therefore suffice to establish a *prima facie* jurisdictional case, and allegations based on those documents suffice to state plausible claims against the Foreign Nestlé Defendants. These normally lenient pleading standards do not change just because, in this unique case, Plaintiffs have more (though by no means complete) discovery from concurrent state litigation than they might otherwise have received by this point. Under the standards articulated in this Court's prior order, and for the reasons further articulated herein, the Foreign Nestlé Defendants' motions to dismiss should be denied.

## BACKGROUND

### I.    DEFENDANTS' BABY FOODS ARE CONTAMINATED WITH TOXIC HEAVY METALS

Lead, arsenic, cadmium, and methylmercury are well-known neurotoxins.[2] No safe exposure level has been identified for these heavy metals, which pose acute dangers to a baby's brain development. Independent research, including from Happy Babies Bright Futures ("HBBF") and Consumer Reports, has raised concerns about the level of these metals in Defendants' baby foods. These reports were followed by a Congressional investigation, which found substantial amounts of these metals in Defendants' baby foods and attributed those levels to Defendants' failures, whether to set reasonable internal limits for the metals in their baby foods, or any limits at all, or to adhere to whatever dangerous levels they set.

So federal and state regulators took action. These actions include California's Baby Food Protection Act (the "California Act"), which, as of January 2025, requires baby food manufacturers to disclose heavy metal test results both on their websites and directly on product packaging. *See* CAL. HEALTH & SAFE CODE § 110962(b)(2). And, as of January 6, 2025, the FDA has issued final guidance for lead, setting limits at 10 or 20 ppb for baby foods (10 ppb for fruits, 10 ppb for single or mixed vegetable purees/puddings, 20 ppb for single ingredient root vegetables, and 20 ppb for dry cereals) and 10 or 20 ppb for juices (10 ppb for apple juice or

---

[2] Like Plaintiffs' opposition to the other pending motions to dismiss, this brief provides a condensed account of background facts laid out more fully in the operative Master Complaint and in Plaintiffs' prior briefing. *See* Pls.' Omnibus Opp. to Defs.' Mots. to Dismiss, Dkt. No. 338, at 6–15 (Jan. 16, 2025).

single-strength juice and 20 ppb for juice blends containing apple juice).[3]  The FDA has also issued draft guidance for lead in juices, arsenic in apple juice, and arsenic in rice cereal,[4,5] with a proposed limit of 10 ppb for arsenic in apple juice.[6]  These are in addition to the FDA's updated limit for lead in bottled drinking water, which is 5 ppb.[7]

It is worth noting that the California and Federal regulation of baby food appears to be working.  Many products now sold by these Defendants have been reformulated to have non-detectable levels of lead, arsenic, and mercury in their products, as shown by the published testing required by California law.[8]  It is particularly gratifying that these lawsuits, combined with regulation, are making significant progress in securing the food supply for infants.  Thus, it is hopeful that there will be less injuries moving forward.  However, for the thousands of infants who were previously exposed to high levels of toxic heavy metals and injured prior to the public outcry spurred by the Congressional Report, justice is still needed.

For purposes of their present motions, Defendants do not dispute these facts.  And to be clear, these facts do not raise concern about *all* the Defendants' foods.  As Defendants have demonstrated, they can make safe baby foods, and they are selling safe baby foods today.  This case is about foods that Defendants previously sold and that, without warning, contained levels of heavy metal well beyond what is safe and what Defendants could have achieved.

---

[3] Action Levels for Lead in Food Intended for Babies and Young Children: Guidance for Industry (Jan. 2025), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-action-levels-lead-processed-food-intended-babies-and-young-children.

[4] Action Levels for Lead in Food Intended for Babies and Young Children: Draft Guidance for Industry, U.S. Food & Drug Admin. (Jan. 2023), https://www.fda.gov/media/164684/download; Action Levels for Lead in Juice: Guidance for Industry, U.S. Food & Drug Admin. (Apr. 2022), https://www.fda.gov/media/157949/download.

[5] Action Level for Inorganic Arsenic in Apple Juice: Guidance for Industry, Food & Drug Admin. (June 2023), https://www.fda.gov/media/86110/download.

[6] Action Level for Inorganic Arsenic in Apple Juice, *supra* n.3.

[7] Lead in Food and Foodwares, U.S. Food & Drug Admin. (last updated Dec. 12, 2024), https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares#:~:text=For%20lead%2C%20this%20level%20is,that%20can%20leach%20from%20pipes.

[8] *See, e.g.*, Plum Organics Heavy Metals Test Results, Pouches (accessed Aug. 20, 2025) *available at* https://plumorganics.com/heavy-metals-test-results-for-pouches/

PLAINTIFFS' OPPOSITION TO FOREIGN NESTLE DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT

## II.     DEFENDANTS KNOWINGLY PARTICIPATED IN MANUFACTURING AND SELLING BABY FOODS CONTAMINATED WITH TOXIC HEAVY METALS

The present motions concern two entities within the Nestlé corporate family, which sells Gerber-branded baby foods.

Founded in 1936, Defendant Société des Produits Nestlé S.A. ("SPN") is a citizen of Switzerland and a wholly owned subsidiary of Nestlé S.A., which is also the parent brand of Gerber baby foods.  SPN has approximately 2,500 employees, several of whom made key decisions about the safety of Gerber baby foods, including the amount of toxic heavy metals in Gerber baby foods. ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████

Founded in 1999, Defendant Nestlé Enterprises S.A. ("Nestlé Enterprises") is another citizen of Switzerland and wholly owned subsidiary of Nestlé S.A. that exerted significant control over the safety of Geber baby foods, including the levels of toxic heavy metals in those foods.  *See id* ¶ 21.  Nestlé Enterprises has approximately 1,000 employees, ████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

4

PLAINTIFFS' OPPOSITION TO FOREIGN NESTLÉ DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT

1 ████████████████████████████████

2 Thus, and as further shown throughout this brief, the Master Complaint's allegations—and

3 the underlying evidence to which they refer—raise a "plausible inference" that these Defendant

4 entities contributed to the defects that caused Plaintiffs' injuries. These entities exerted control

5 over how much toxic heavy metal would be in the products that Gerber sold, including by "setting

6 heavy metal limits" for those products and "exercis[ing] control over the testing process" for those

7 products. First MTD Order at 21–22.

8 <u>**ARGUMENT**</u>

9 The Foreign Nestlé Defendants seek dismissal on three grounds. First, they argue that they

10 are not yet subject to personal jurisdiction in this MDL because they have been served with only

11 the Master Complaint, not individual short-form complaints. Second, they argue that they cannot

12 be subject to specific personal jurisdiction in this MDL because they purportedly had nothing to

13 do with the heavy metals in Gerber's baby food. Third, and for similar reasons, they argue that the

14 Master Complaint fails to state plausible claims against them.

15 All these arguments fail. There is no support for Defendants' formalistic interpretation of

16 the service required to bring them into this MDL. And their other arguments simply reject the

17 Master Complaint's well-supported allegations, which control at this stage.

18
19 **I.    THE FOREIGN NESTLÉ DEFENDANTS WERE PROPERLY SERVED WITH THE OPERATIVE MASTER COMPLAINT**

20 The complaint at issue here is the First Amended Master Long-Form Complaint. That is

21 the pleading that both Foreign Nestlé Defendants move to dismiss. *See* SPN Mot. To Dismiss

22 Master Complaint, Dkt. 542, at 1 (July 21, 2025) ("SPN MTD") (moving "for an order dismissing

23 the First Amended Master Long-Form Complaint (ECF No. 451) and each claim therein"); Nestlé

24 Enterprises Mot. To Dismiss Master Complaint, Dkt. 543, at 1 (July 21, 2025) (same). And both

25 Foreign Nestlé Defendants have been served with that pleading through the Hague process. Thus,

26 in their Joint Statement for the June 2025 Case Management Conference, the Parties jointly

27 represented to the Court that "Plaintiffs have now served . . . Nestlé Enterprises S.A., and Societe

28 des Produits Nestlé S.A." Joint Statement, Dkt. 499, at 9 (June 24, 2025). The parties therefore

proposed a briefing schedule for motions to dismiss; the Court entered a briefing schedule; and the Foreign Nestlé Defendants have followed it.  Before those motions were filed, no present Defendants had argued that they had not been served because they had been served only with the Master Long-Form Complaint rather than with various short-form complaints.  After all, neither the parties nor the Court have treated service of any short-form complaints as a precondition to resolving any other Rule 12(b) issues.  *See* Pretrial Order No. 9, Dkt. 261, at 2 (Nov. 8, 2024) (ordering Plaintiffs to "begin preparing a short-form complaint with the goal of finalizing it following the Court's ruling on Rule 12(b) motions" filed against the previous master complaint).

Nevertheless, the Foreign Nestlé Defendants now argue that the Court lacks personal jurisdiction over them in this MDL because they have not been served with individual short-form complaints.  This argument is meritless.[9]  "The core function of service," including under the Hague Convention, "is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson v. U.S.*, 517 U.S. 654, 672 (1996); *see also, e.g.*, *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 09-2047, 2018 WL 279629, at *7 (E.D. La. Jan. 2, 2018) ("*In re Chinese Drywall*") (noting that the Hague Convention "was intended to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time") (quoting *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 300 (2d Cir. 2005)).  "So long as a party receives sufficient notice of the complaint," therefore, "Rule 4 is to be liberally construed to uphold service." *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (quotation marks omitted).  The "essential issue is whether service" of the Master Complaint provided "adequate notice of this litigation." *In re Chinese Drywall*, 2018 WL 279629, at *7.

The Foreign Nestlé Defendants cannot credibly argue that they have been denied adequate notice of this litigation or a fair opportunity to "answer the complaint and present defenses and

---

[9] Defendants also state that this alleged service defect justifies dismissal under Rule 12(b)(4). This argument is otherwise undeveloped and fails for the reasons herein.

objections." *Henderson*, 517 U.S. at 672.  Both Defendants have filed motions to dismiss, pursuant to the Court's schedule, offering various jurisdictional and merits arguments under Rules 12(b)(1) and 12(b)(6), with employee declarations in support.  *See US Fire Pump Co., LLC v. Alert Disaster Control (Middle East) Ltd.*, No. 19-335-SDD-EWD, 2021 WL 296073, at *14 (M.D. La. Jan. 28, 2021) (by providing an affidavit, the defendant demonstrated that he was "apprised of the pendency of the action and afforded the opportunity to present his objections").  And both of their motions are self-evidently able to rely on generally applicable legal principles like those the Court applied in its prior order (and that suffice to defeat those motions here).  As these Defendants' own arguments demonstrate, then, the Master Complaint contains all the information necessary to give them notice of—and to bring them into—the administratively consolidated pretrial proceedings of this MDL.   Indeed, that is the purpose of a master pleading in an MDL, i.e., to provide the factual allegations necessary for an individual Plaintiff to assert a claim against a Defendant by simply checking off a box on a short form document.

A short-form complaint would provide these Defendants no additional relevant notice.  The purpose of the short-form complaint that the Court has approved is primarily to indicate which specific baby food products a particular Plaintiff consumed.  *See* Short-Form Compl., Dkt. 471-1 (May 7, 2025); Order Re: Timing of Short Form Complaint Filing, Dkt. 473 (May 8, 2025).  Otherwise, the short-form complaint "incorporates by reference the allegations contained *in the First Amended Master Long-Form Complaint*."  Short-Form Compl. at 1 (emphasis added).  To be sure, parties can and will meet and confer to determine how to efficiently effect service of short-form complaints after the Court resolves the pending motions to dismiss.  But that step is not necessary to bring them into this MDL.  Nor is it practical.  Both Defendants' basic argument is that, "[w]ithout the short form complaints, service is incomplete."  SPN MTD at 9.  By that logic, initial service would not be effective without Hague process of a short-form complaint for every Plaintiff—and, in a case with thousands of potential claimants, would never be complete.  That is clearly not the result that the Federal Rules' liberal notice requirement contemplates for this administratively consolidated proceeding.  The "purpose or requiring satisfactory service of process" to "assure that the potential litigant receives full, valid and accurate notice of complaints

1    or lawsuits against them" has been satisfied.  *In re Chinese Drywall*, 2015 WL 13387769, at *4.

2          In any event, any purported service defect would be no basis for dismissal here.  Service

3    need only be in "substantial compliance" with Rule 4.  *Shahri v. Los Rios Cmty. Dist.*, Case No.

4    2:23-cv-01569-DJC-JDP, 2024 WL 2883472, at *1 (E.D. Cal. June 7, 2024); *accord, e.g.*, *Benny*

5    *v. Pipes*, 799 F.3d 489, 492 (9th Cir. 1986).  "Substantial compliance" means that "(a) the party

6    that had to be served personally received actual notice, (b) the defendant would suffer no prejudice

7    from the defect in service, (c) there is a justifiable excuse for the failure to serve properly, and (d)

8    the plaintiff would be severely prejudiced if his complaint were dismissed."  *In re 701 Mariposa*

9    *Project, LLC*, 514 B.R. 10, 17 (B.A.P. 9th Cir. 2014) (quoting *Whale v. U.S.*, 792 F.2d 951, 953

10   (9th Cir. 1986)).  As just seen, the Foreign Nestlé Defendants have received actual notice of the

11   claims in this MDL and have suffered no prejudice from any purported service defect.  And even

12   if Rule 4 required more at this stage (which it does not), Plaintiffs were justified in serving only

13   the Master Complaint.  These Foreign Nestlé Defendants were added as Defendants in the

14   operative Master Complaint.  At the time that Plaintiffs began the extensive process of serving

15   these Defendants through the Hague Convention, no individual plaintiff had filed an individual or

16   short-form complaint naming these Defendants, because Plaintiffs believed that the overall Nestlé

17   parent entity (Nestlé S.A.) was a proper defendant.  The Court disagreed but allowed Plaintiffs to

18   amend the master complaint to name other proper defendants, and Plaintiffs have endeavored to

19   do so in compliance with the Court's prior dismissal order.  Plaintiffs would be severely

20   prejudiced if their allegations against those entities were now dismissed on service grounds.

21   Plaintiffs would need to file another master complaint naming these entities, and then repeat the

22   burdensome process of service through the Hague Convention, only to land the Court and parties

23   back where we are right now.

24          The "purpose [of service] is not to compel the expenditure of excessive costs, or cause

25   undue delay or encourage evasive action," particularly in the "unique[] MDL context."  *In re*

26   *Chinese Drywall*, 2015 WL 13387769, at *4.  None of Defendants' cited cases holds otherwise.

27   SPN cites *Gelboim v. Bank of Am. Corp.*, a case about whether an order dismissing antitrust

28   claims for lack of antitrust injury was a final appealable decision, for a footnote stating in pertinent

part that "[p]arties may elect to file a 'master complaint' and a corresponding 'consolidated answer,' which supersede prior individual pleadings.  In such a case, the transferee court may treat the master pleadings as merging the discrete actions for the duration of the MDL pretrial proceedings."  574 U.S. 405, 413 n.3 (2015).  That simply describes the process that the parties are following here.  *See* Stipulation and Proposed Order Regarding Schedule and Process for Moving to Dismiss and Answering the Amended Master Complaint, Dkt. 484 (May 20, 2025).  As the motions practice to date has shown, "[w]here defendants bring a motion to dismiss that raises issues common to all plaintiffs, . . . the administrative nature of a Master Complaint does not necessarily preclude 12(b)(6) motion practice."  *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, No. 11 C 5468, 2012 WL 3582708, at *4 (N.D. Ill. Aug. 16, 2012).  The Foreign Nestlé Defendants' motions to dismiss raise issues common to all plaintiffs.  No less than the domestic Defendants' also-pending motions to dismiss, these Defendants' motions are ripe for review regardless of the current status of service of the short-form complaints.[10]

## II.     THE FOREIGN NESTLÉ ENTITIES ARE SUBJECT TO SPECIFIC PERSONAL JURISDICTION IN THIS MDL

The Foreign Nestlé Defendants are subject to specific personal jurisdiction in this MDL because the "effects" of their relevant actions—namely in determining the heavy metal contents of Gerber products—"were felt" in the forums where Plaintiffs were injured by those products.  First MTD Order at 4 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)).  These Defendants seek dismissal under Rule 12(b)(2) for the same reason that they seek dismissal under Rule 12(b)(6): because they purportedly are not the direct manufacturers or sellers of Gerber baby foods in the United States.  It remains undisputed,

---

[10] Should the Court find that service of the Master Complaint alone is insufficient to effect service on the Foreign Nestlé Defendants, the Court has the discretion to quash the service rather than dismiss the action.  *See Arasan Chip Sys. v. Sonix Tech. Co. Ltd.*, No. 5:09-CV-02172, 2010 WL 890424, at *1 (N.D. Cal. Mar. 8, 2010).  Indeed, dismissal "is inappropriate when there exists a reasonable prospect that service may yet be obtained.  In such instances, the district court should, at most, quash service, leaving the plaintiffs free to effect proper service."  *Id.* (quoting *Moletech Global Hong Kong Ltd. v. Pojery Trading Co.*, No. C 09-00027, 2009 WL 506873, at *3 (N.D. Cal. Feb. 27, 2009)).  If required at this stage (which it is not), Plaintiffs could serve the Master Complaint along with a short-form complaint and a summons naming an individual plaintiff.

however, that "direct liability" can "manifes[t]" even where a defendant entity is not a direct manufacturer or seller, specifically where "the alleged wrong can seemingly be traced to the [defendant] through the conduit of its own." *Id*. at 20 (quoting *United States v. Bestfoods*, 524 U.S. 51, 64 (1998)).  Simply put, any entity in the corporate chain can be directly liable where it "is directly a participant in the wrong complained of." *Id*. (quoting *Bestfoods*, 524 U.S. at 64). And by the same token, the entity will be subject to specific personal jurisdiction in any state where that wrong occurred, which here means any state covered by this MDL. *See id*. at 4–5.

The Court previously held that references to "Nestlé" in various discovery documents were insufficient to raise inferences that Nestlé S.A.—the ultimate parent of Gerber, SPN, and Nestlé Enterprises—was involved in causing Plaintiffs' injuries.  The operative Master Complaint now relies upon documents showing that personnel at SPN and Nestlé Enterprises specifically were involved in the conduct from which those injuries arise, i.e., the conduct that led to the sale of Gerber baby foods contaminated with excessive toxic heavy metals.  These Defendants have submitted affidavits baldly contesting those facts.  When a Rule 12(b)(2) motion "is based on written materials rather than an evidentiary hearing," however, "the plaintiff need only make a *prima facie* showing of jurisdictional facts" through contrary evidence, and the court "only inquire[s] into whether the plaintiff's pleadings and affidavits make a *prima facie* showing of personal jurisdiction." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quotation marks omitted).  This "*prima facie* jurisdictional analysis requires [the court] to accept the plaintiff's allegations as true" and therefore to "adopt the plaintiff's version of events." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (brackets omitted).  Although "the plaintiff cannot simply rest on the bare allegations of its complaint," any "uncontroverted allegations in the complaint must be taken as true" and any "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id*.

Plaintiffs' well-supported allegations against SPN and Nestlé Enterprises more than satisfy these standards and the Court's prior order.  As a result, these Foreign Nestlé Defendants are

1  properly subject to this MDL.[11]

2  **A. The Court Has Specific Personal Jurisdiction over SPN**

3  SPN personnel made key decisions about the safety of Gerber's baby food products, and,

4  more specifically, about the heavy metals in those foods. Gerber relied on those decisions in

5  selling baby foods to a nationwide market in the United States, including the forums at issue here.

6  These alleged actions subject SPN to this Court's specific personal jurisdiction. And the evidence

7  discovered to date bears these allegations out.

8  ████████████████████████████████████████

9  ████████████████████████████████████████

10  ████████████████████████████████████████

11  ████████████████████████████████████████

12  ████████████████████████████████████████

13  ████████████████████████████████████████

14  ████████████████████████████████████████

15  ████████████████████████████████████████

16  ████████████████████████████████████████

17  ████████████████████████████████████████

18  ████████████████████████████████████████

19  ████████████████████████████████████████

20  ████████████████████████████████████████

21  ████████████████████████████████████████

22  ████████████████████████████████████████

23  ████████████████████████████████████████

24  ████████████████████████████████████████

25

26  [11] The Foreign Nestlé Defendants also rehash Defendants' prior arguments that the Master Complaint commits improper "group pleading." But the Foreign Nestlé Defendants do not seek

27  dismissal on this ground under Rule 8. Nor could they. The Master Complaint specifies what each Defendant did wrong and thereby gives each Defendant sufficient notice of the claims against

28  them. *See, e.g.*, *Russo v. Federal Medical Servs., Inc.*, 744 F. Supp. 3d 914, 922 (N.D. Cal. 2024).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO FOREIGN NESTLÉ DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT



.

SPN does not cite a case with remotely similar facts that nevertheless dismisses an entity

for lack of a *prima facie* jurisdictional case.  SPN does note that Nestlé S.A. and "other Nestlé

affiliates" (not SPN) have been dismissed in other cases.  SPN MTD at 2 n.1.  At most, those

examples show the general requirements for specific personal jurisdiction at work, and Plaintiffs

do not dispute those requirements.  Otherwise, however, SPN simply cites cases that articulate

those general requirements.  Articulating those requirements does nothing to contradict that, in *this*

case, the evidence satisfies those requirements under the *prima facie* standard.  Nor does SPN's

supporting declaration eliminate Plaintiffs' *prima facie* case.  Given the evidence above, it could

not.  *See Bancroft*, 223 F.3d at 1087.  But it also does not.  Although SPN might not directly

PLAINTIFFS' OPPOSITION TO FOREIGN NESTLÉ DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' FIRST AMENDED MASTER LONG-FORM COMPLAINT

1  manufacture or sell Gerber foods, as it claims, the evidence above shows that SPN personnel were

2  involved in key decisions related to the (unsafe) levels of heavy metals in Gerber products sold to

3  U.S. consumers such as Plaintiffs.  SPN personnel assessed the heavy metal contamination of

4  Gerber foods, determined and instructed actions to be taken in response, and communicated those

5  instructions—███████████████████████████████.  Under this Court's prior order

6  and the controlling caselaw that it applies, those actions suffice to establish at the pleading stage

7  that SPN directed actions to relevant forums, that Plaintiffs' claims arise from and relate to those

8  actions, and that SPN may be fairly haled into this MDL.

9        **B.  The Court Has Specific Personal Jurisdiction over Nestlé Enterprises**

10        Nestlé Enterprises similarly contributed to the heavy metals in the Gerber baby foods that

11  have been sold to U.S. consumers.  Indeed, neither SPN nor Nestlé Enterprises argue that Gerber

12  was the responsibility of some *other* Nestlé entity.  The evidence discovered to date indicates that

13  these two entities bore related responsibilities for these products.

14  ████████████████████████████████████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████████████████████████████

17  ████████████████████████████████████████████████

18  ████████████████████████████████████████████████████

19  ████████████████████████████████████████████████

20  ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████

22  ██████████████████████████████████████████

23  ████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████

25  ████████████████████████████████████████████████

26  ██████████████████████████████████████████████

27  ██████████████████████████████████████████

28  ████████████████████████████████████████████████

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21         Attempting to refute that testimony, Nestlé Enterprises has submitted a declaration from

22    Servais, who acknowledges that he "provided information relating to regulatory compliance,

23    scientific best practices, and levels of contaminant risks," but who now claims that he did not

24    personally "enforce or mandate compliance with any guidelines circulated."  Decl. of Colin

25    Servais, Dkt. 543-2, ¶ 5 (July 21, 2024).  That self-serving statement makes no difference here.

26    Servais might not have personally enforced the "guidelines," e.g., internal heavy metal limits, that

27    he communicated down to Gerber.  But the above-cited documents speak for themselves, and they

28    exemplify that Nestlé Enterprises personnel took an active role in creating those "guidelines,"

1   dictating those "guidelines," and monitoring to ensure compliance.  And nothing in Servais's

2   declaration indicates that Gerber was not in fact required to comply.

3        To be sure, the evidence discovered to date might not necessarily resolve all questions that

4   could arise later about the full scope of Nestlé Enterprise's role in the tortious conduct at issue.

5   That is what further fact-finding is for.  For present purposes, however, the above documents—

6   coupled with Servais's now-acknowledged role—suffice to establish a *prima facie* case that Nestlé

7   Enterprises was involved in the tortious conduct at issue and is therefore subject to specific

8   personal jurisdiction in this MDL.  And like SPN, Nestlé Enterprises cites no case holding that a

9   plaintiff with a similar amount of support had failed to satisfy the jurisdictional requirements at

10  this stage, or that it would be somehow unreasonable to assert personal jurisdiction over large

11  companies with a documented role in sending contaminated foods to U.S. consumers.

12           **C.  Alternatively, the Court Should At Least Order Targeted Jurisdictional**

13               **Discovery**

14       If any questions about the Foreign Nestlé Defendants' Rule 12(b)(2) motions remained,

15  Plaintiffs respectfully request that the Court order jurisdictional discovery.  Jurisdictional

16  discovery should "be granted where pertinent facts bearing on the question of jurisdiction are

17  controverted . . . or where a more satisfactory showing of the facts is necessary."  *Butcher's Union*

18  *Local No. 498*, 788 F.2d at 540 (quotation marks and citations omitted); *accord, e.g.*, *Boschetto v.*

19  *Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).  The Court previously found that "non-specific

20  reference[s] to 'Nestlé'" in existing discovery documents did not warrant jurisdictional discovery

21  against Nestlé S.A.  First MTD Order at 17–18.  But the evidence submitted with this response is

22  materially different.  Plaintiffs have identified documents with specific references to specific

23  personnel at SPN and Nestlé Enterprises.  Those documents indicate that, through such personnel,

24  SPN and Nestlé Enterprises exerted control over the heavy metal content of Gerber products at

25  issue.  In response, these Defendants have submitted declarations, including from one of the

26  employees whom Plaintiffs have identified, that assert otherwise.  But as explained above, those

27  declarations do not trump what the documents say, certainly not at the pleading stage.  If anything,

28  they create only a factual question about the extent to which these and other personnel of the

16

Foreign Nestlé Defendants were specifically involved in testing Gerber products for heavy metals, setting internal limits for heavy metals, and ensuring that Gerber complied. As also explained above, any such factual disputes, if they existed, would not suffice to warrant dismissal under Rule 12(b)(2). In any event, the Court should not order dismissal without resolving them, which the Court can do by ordering targeted jurisdictional discovery. Plaintiffs should at least be permitted to seek further discovery, whether through deposition or document requests, of the specific personnel whom the parties have identified. This discovery would seek to clarify whether such personnel did in fact exert the types of control over the heavy metal content of Gerber products that the above-cited documents indicate.

Again, Plaintiffs seek only to litigate against entities with relevant information and potential liability. Based on the evidence discussed herein, Plaintiffs believe that describes the Foreign Nestlé Defendants, but Plaintiffs are more than willing to cooperate with these Defendants over the scope of discovery needed to resolve any remaining questions. It is already clear, however, that the evidence ultimately resolves any such questions. The Foreign Nestlé Defendants are proper parties in this MDL.

## III.     PLAINTIFFS HAVE STATED PLAUSIBLE CLAIMS AGAINST THE FOREIGN NESTLÉ DEFENDANTS

The Foreign Nestlé Defendants also move to dismiss under Rule 12(b)(6) for failure to state a claim. Unlike the motions discussed above, these motions relate only to the allegations in the Master Complaint and do not take into account the underlying evidence in support. Nevertheless, these motions fail for much the same reasons. Consistent with the Court's prior order, the Master Complaint names entities that Plaintiffs can "reasonabl[y] infe[r]," based on information disclosed to date, were "involved in setting" and enforcing "heavy metal limits for" their respective baby food brands. First MTD Order at 21. Even considering the allegations alone, that inference is at least a plausible one. After all, the allegations generally detail the information gleaned from many of the documents discussed above.

Both Foreign Nestlé Defendants suggest that they could not be held liable in California for injuries from Gerber products under *Loomis v. Amazon.com LLC*, 63 Cal. App. 5th 466, 477 (Cal.

App. 2nd Dist. 2021).  That case rejected a consumer's strict products liability and negligence

claims against the operator of an online shopping marketplace after she was injured by the

hoverboard she purchased from a third-party seller through the marketplace.  *Id*.  The allegations

here are plainly different.

SPN, Nestlé Enterprises, and Gerber are all part of the same corporate family. ██████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████

Put more succinctly, SPN and Nestlé Enterprises personnel were "involved in setting" and

enforcing "heavy metal limits for" Gerber baby foods that caused Plaintiffs' neurodevelopmental

injuries.  First MTD Order at 21.  And the Master Complaint alleges how these actions subject

SPN to both strict liability and negligence claims.  Both Defendants also argue that they cannot be

liable for negligence under California law because they bore no duty of care.  Yet they both

acknowledge that such a duty arises where a defendant is responsible for creating a risk of harm.

*See* SPN MTD at 23; Nestlé Enterprises MTD at 22.  Plaintiffs allege that they created this risk,

and thus bore and breached their duty of care, by determining the (dangerously high) levels of

heavy metals that were allowed in the Gerber products sold to Plaintiffs and other U.S. consumers.

These Defendants were not "minor character[s] in Plaintiffs' story."  Nestlé Enterprises MTD at

20.  Regardless, however they might prefer to characterize their role is an issue for another day.

For purposes of their Rule 12(b)(6) motions, Plaintiffs' allegations control. Those allegations suffice to state plausible claims against both Foreign Nestlé Defendants under the standards that the Court has applied in this case.

### CONCLUSION

For the foregoing reasons, Defendants' motions should be denied.

Dated:  August 20, 2025                    Respectfully Submitted,

COOPER LAW PARTNERS PLLC

By: */s/ Joseph O. Masterman*
Joseph O. Masterman (*pro hac vice*)
joe@cooperlawpartners.com
1717 Pennsylvania Ave. NW, Suite 1025
Washington, DC 20006
Tel: 202-866-0173

*Plaintiffs' Steering Committee Member*

WISNER BAUM, LLP

By: */s/ R. Brent Wisner*
R. Brent Wisner (SBN: 279023)
rbwisner@wisnerbaum.com
100 Drakes Landing Rd., Suite 160
Greenbrae, CA 94904
Telephone: (310) 207-3233
Facsimile: (310) 820-7444

WAGSTAFF LAW FIRM

By: */s/ Aimee H. Wagstaff*
Aimee H. Wagstaff (SBN: 278480)
940 N. Lincoln Street
Denver, Colorado 80203
Telephone: 303.376.6360
Facsimile: 303.376.6361
awagstaff@wagstafflawfirm.com

*Co-Lead Counsel for Plaintiffs in MDL 3101*

1

## **CERTIFICATE OF SERVICE**

2

I certify that on August 20, 2025, I electronically filed the foregoing with the Clerk of the

3

Court using the ECF system, which sent notification of such filing to all counsel of record.

4

5

6

By: _R. Brent Wisner_

R. Brent Wisner (SBN: 279023)
*Attorneys for Plaintiffs*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28