UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION <br><br> This document relates to: <br><br> ALL ACTIONS | Case No. 24-MD-301-JSC <br><br> MDL 3101 <br><br> Hon. Jacqueline Scott Corley <br><br> **JOINT STATEMENT FOR THE SEPTEMBER 18, 2025 CASE MANAGEMENT CONFERENCE** <br><br> Date: September 18, 2025 <br> Time: 9:00 a.m. PT <br> Location: Courtroom 8 <br> 19th Floor 450 Golden Gate Ave. <br> San Francisco, CA 94102 |

Pursuant to Pretrial Order No. 3 (ECF No. 148), the Parties submit this Joint Statement in preparation for the September 18, 2025 Case Management Conference:

**I.     General Causation Motion Hearings**

The Parties have met and conferred regarding the anticipated hearings on motions to exclude experts designated to provide general causation opinions, which are scheduled for the week of December 8, 2025. Generally, the Parties propose that the hearings should begin with short opening statements by both sides (15–20 minutes), followed by testimony from expert witnesses during the week (Monday, December 8, 2025 – Thursday, December 11, 2025), with the final day, Friday, December 12, 2025, being reserved for closing statements and oral argument. Subject to the Court's preference, the Parties wish to review the motions and oppositions before

proposing to the Court which experts they believe should be called to testify. The Parties believe it would be helpful to hold a hearing to discuss the witnesses who will testify at the December hearings after filing their respective proposals in a joint statement. To facilitate a hearing after receiving the Parties' proposals, the Parties respectfully request that the Court vacate the status conferences currently set for October 23, 2025 and November 20, 2025, and set a status conference during the week of November 3, 2025. Defendants are available on November 5 and 7, 2025. At the status conference, the Court can direct the Parties about how it would like to proceed with testimony.

## II.    Discovery Update

### Gerber's Recent Discovery Responses.

Dr. Jones (Plaintiffs' expert who is analyzing the testing data) relied on the data produced by Gerber. In preparing to cross examine Dr. Jones, it appears that Gerber discovered some of the data it produced was just wrong. Why was it wrong? That is unclear. What is clear is that new test results were produced *3 weeks after* Plaintiffs served their expert reports—despite Defendants repeatedly assuring Plaintiffs and the Court that all relevant test results had been produced. *See* ECF 307 at 4 "Defendants have produced all test results they have for the relevant products and ingredients."); *See also* ECF 406 at 6; ECF 435 at 9-10 ("Defendants' Position:…Gerber produced its test results on October 31, 2024." 3/27/25 CMC Transcript at 47:23-47:5 (MR. PETROSINELLI: …they had the data since October.") And then, just ten days ago, on September 5, 2025, Gerber served supplemental responses to Plaintiffs' first set of interrogatories and first and second sets of requests for production. Gerber's September 5, 2025 supplemental discovery responses designated new heavy metal testing documents as relevant.

These late produced and recently designated test results were featured prominently in Defendants' expert work up despite not being produced in time for Plaintiffs' experts to consider them in preparing their reports, and despite Gerber's counsel's prior representations to the court.

Gerber points the finger at Dr. Jones and claims that she should have 'just known' Gerber's data was wrong. This suggestion is puzzling given that Gerber did not identify these test results as ones they disputed the accuracy of in response to Plaintiffs' interrogatories requesting

1  same. To suggest Dr. Jones should not rely on verified discovery responses is curious. Gerber's
2  interrogatory supplement also comes six weeks after Dr. Jones' deposition, where she was
3  questioned at length about test results that Gerber still at that time had not identified as being
4  potentially inaccurate.

5       This late production of test results and questioning about why Plaintiffs' expert had not
6  considered information Gerber failed to provide is the exact sort of gotcha that the Court has
7  repeatedly instructed should be avoided. *See* 8/24/24 CMC Transcript at 54:11-19 ("THE
8  COURT: …to the extent in the general causation proceeding any of your experts would make that
9  argument or would rely -- anything -- anything anyone is going to rely on in connection with
10 general causation, of course, has to be produced."); See also 1/24/25 CMC Transcript at 8:14-15
11 ("THE COURT:…plaintiffs should know what the defendants know about the test results.") and
12 15:20-16:17 ("THE COURT:… I'm saying, they need this information; provide it to them; work
13 with them; and do it in an admissible format or binding format so that when we get to our expert
14 discovery, when you get to your expert depositions, everyone's operating with the same
15 information."); *See also* Pre-Trial Order 12 ("As the Court noted during the conference, both
16 Plaintiffs and Defendants should have the same understanding of the testing information and the
17 products/ingredients to which the information applies prior to expert discovery.") Plaintiffs raise
18 this issue for the Court's awareness and reserve all rights to seek relief related to this late
19 disclosure of key case documents and information should it prejudice Plaintiffs' case.

20      **<u>Gerber's Response to Plaintiffs' Statement.</u>**

21      Gerber served these responses pursuant to its continuing obligations under Rule
22 26(e)(1)(A) after it produced five lab reports (26 pages) on June 19, 2025, two of which related to
23 two test results Dr. Jones had mistakenly relied on in her initial report served in May 2025. This
24 supplemented Gerber's production of over 18,000 test results long ago produced in this MDL.
25 The so-called "issue for the Court's awareness" is a mischaracterization of the supplemental
26 responses in an apparent effort to shift to Gerber the blame for the many deficiencies and errors in
27 the three reports of Dr. Jones, whose opinions will soon be the subject of a Rule 702 motion, and it
28 is inappropriate to raise with the Court outside the context of a discovery motion.

Included in the dozens of errors in Dr. Jones's initial report, she relied on two outlier test results that should have raised obvious questions as to their accuracy. As a result, Gerber located and produced five lab reports, two of which showed Dr. Jones had mistakenly relied on these two test results. This small supplemental production occurred a full month before Dr. Jones's deadline for a rebuttal report, and six weeks before her deposition.

The sole impact of the production was that Dr. Jones ultimately agreed she had mistakenly relied on the two test results and revised her calculations as to the products involved. Plaintiffs' statement that these five lab reports were "featured prominently in Defendants' expert work up" is untrue. Defendants' expert Dr. Scrafford devoted six sentences of her 84-page report to address one test result referenced in the five lab reports.

Plaintiffs do not – and cannot – demonstrate any prejudice resulting from Gerber's June 19 production. Dr. Jones received the five lab reports nearly a month before she served her rebuttal report and nearly six weeks before her deposition, and she has now revised her calculations accordingly in her two rebuttal reports.

Dated: September 16, 2025

Respectfully submitted,

By: /s/ Aimee H. Wagstaff
Aimee H. Wagstaff (SBN: 278480)
WAGSTAFF LAW FIRM
940 N. Lincoln Street
Denver, CO 80203
Telephone: 303-376-6360
E-mail: awagstaff@wagstafflawfirm.com

By: /s/ Brent Wisner
Brent Wisner (SBN: 276023)
WISNER BAUM, LLP
11111 Santa Monica Blvd., Suite 1750
Los Angeles, CA 90025
Telephone: (310) 207-3233
E-mail: rbwisner@wisnerbaum.com

*Co-Lead Counsel for MDL 3101 Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on September 16, 2025, I electronically filed the foregoing Joint Statement with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

*/s/ Aimee H. Wagstaff*
Aimee H. Wagstaff