United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION

This document relates to:

*Watkins v. Nurture, LLC, et al.*,

Case No. 24-cv-2832 JSC

Case No. 24-md-03101-JSC

**ORDER RE RETAILER DEFENDANTS' MOTIONS TO DISMISS THE THIRD AMENDED PETITION**

Re: Dkt. Nos. 365, 366

Public Redacted Version

Plaintiffs allege toxic heavy metals in baby food sold by Amazon and Whole Foods ("Retailer Defendants") caused their child to develop autism spectrum disorder ("ASD"). The Court previously granted Retailer Defendants' motion to dismiss the Second Amended Petition, with leave to amend the negligent undertaking cause of action against Amazon only. (Dkt. No. 285 at 11.)[1] Plaintiffs timely filed their Third Amended Petition ("TAP") on January 15, 2025. (Dkt. No. 328.) Now pending before the Court are Retailer Defendants' Rule 12(b)(6) motions to dismiss the negligent undertaking claim against Amazon as well as the Louisiana state law bad faith seller redhibition claim against both retailers.

After carefully considering the parties' submissions, the Court concludes oral argument is not required, *see* Civ. L.R. 7-1(b), and GRANTS in part and DENIES in part the motions to dismiss.

//

//

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**DISCUSSION**

The standard for adjudicating a motion under Federal Rule of Civil Procedure 12(b)(6) is well established. In reviewing the complaint, a district court must assume the plaintiffs' allegations are true and draw all reasonable inferences in their favor. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). However, a court need not construe conclusory statements or unreasonable inferences as true. *Id*.

To support dismissal, Amazon argues Plaintiffs fail to allege a negligent undertaking for three reasons: 1) Amazon's product safety team does not commit to taking any action in response to customer safety complaints, and therefore, Amazon did not engage in an affirmative undertaking; 2) Amazon exercised reasonable care by relying on manufacturer representations about the safety of the baby food; and 3) Plaintiffs do not plausibly allege they relied on the product safety team's actions prior to purchasing baby food. As to the bad faith seller redhibition claim, both Retailer Defendants assert the TAP fails to plausibly allege they knew of the baby food's heavy metal levels prior to sale.

**I. NEGLIGENT UNDERTAKING BY AMAZON**

The Court has previously addressed the standard applicable to a Louisiana state law negligent undertaking claim. *See In re Baby Food Prods. Liab. Litig.*, No. 24-CV-2832 JSC, 2024 WL 4982984, at *3-*4 (N.D. Cal. Dec. 3, 2024). For the sake of brevity, the Court repeats only the elements of the claim as set out in the Restatement (Second) of Torts:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if:
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965). Three elements surface from this section of the Restatement: 1) an affirmative undertaking by the defendant, which he should recognize as necessary for the protection of the plaintiff; 2) the defendant failed to exercise reasonable care in

United States District Court
Northern District of California

performing the undertaking; and 3) either the defendant's undertaking increased the risk of harm to the plaintiff, or the plaintiff relied on the undertaking to his detriment. The Court addresses each element in turn.

**A. Affirmative Undertaking**

To advance their claim, Plaintiffs must allege "[a]n affirmative or positive undertaking" by Amazon, and the Court "should consider the scope of the defendant's involvement, the extent of defendant's authority, and defendant's underlying intent." *Pickard v. Amazon.com, Inc.*, 2023-01596 (La. 6/28/24), 387 So. 3d 515, 525. Previously, the Court assumed, without deciding, "that the existence of the product safety team amount[ed] to an assumption of duty." *In re Baby Food Prods. Liab. Litig.*, No. 24-CV-2832 JSC, 2024 WL 4982984, at *4 (N.D. Cal. Dec. 3, 2024). The Court employed that assumption because the claim could not advance on a separate ground; namely, Plaintiffs had not plausibly alleged failure to exercise reasonable care. *Id*. Now, the Court directly addresses the arguments on this first element.

Plaintiffs plausibly allege an affirmative undertaking. Amazon represents to customers publicly that its product safety team conducts the following activities:[2]

> Our Product Safety Team investigates and acts on reported safety complaints and incidents to protect customers from risks of injury related to products sold on Amazon.com . . . . We monitor the products sold on our website for product safety concerns. In concerning situations, we may do the following:
>
> - Remove the product from the website.
> - Contact sellers and manufacturers for more information.
> - Put warnings on the product detail page.
> - Take other actions depending on the situation.
> - Report product safety concerns to relevant government agencies. This will strengthen their safety data and help with any necessary recalls.

---

[2] The Court may consider unattached evidence on which a complaint necessarily relies if the complaint refers to the document, the document is central to the plaintiff's claim, and no party questions the authenticity of the document. *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). The text of Amazon's website regarding the product safety team is not included in its entirety within the TAP, but it is central to Plaintiffs' claim and is cited frequently. (*See, e.g.*, TAP ¶¶ 135, 143, 148.) Neither party questions the authenticity of the webpage, so the Court considers it incorporated by reference.

Product Safety and Recalls, https://www.amazon.com/gp/help/customer/display.html?nodeId=GLD7VXFKV4AWU78X (last visited Apr. 23, 2025). As alleged, the product safety team "affirmatively 'investigates and acts on reported safety complaints'" (TAP ¶ 143) and *may* take any of the actions listed above in "concerning situations" (*id.* ¶ 135). Though Amazon does not guarantee a specific action will be taken in response, it does state it will investigate and act on "reported safety complaints and incidents."

Beyond these representations, Plaintiffs also allege Amazon received and acted upon customer complaints regarding the presence of heavy metals in baby food manufactured by Nurture and Hain. (*Id.* ¶¶ 179-95.) Specifically, Plaintiffs allege Amazon contacted Nurture regarding complaints about heavy metals in the Superfood Puffs Variety Pack. (*Id.* ¶ 182.) In an email chain with Nurture employees, Amazon noted it was aware of a complaint that the product "[c]ontain[ed] dangerous levels of heavy metals" including arsenic and lead. (*Id.* Ex. D.) Amazon then requested confirmation as to whether the "units in [Nurture's] inventory [were] free from the above mentioned [sic] defect," as well as whether there had been prior similar complaints, or any solutions for the defect. (*Id.*) Plaintiffs allege Nurture did not respond to this request with confirmation that the product was free of lead or arsenic and did not report prior complaints. (*Id.* ¶¶ 184-85.) Moreover, Amazon did not follow up to procure that information and continued to sell the product without providing a warning to customers. (*Id.* ¶¶ 187-88.) Plaintiffs further allege other complaints regarding the Nurture product led Amazon to open another investigation only to close it within an hour. (*Id.* ¶ 189.) These allegations permit a reasonable inference that Amazon undertook a duty to monitor and investigate Nurture baby food on its platform for safety hazards.

As to Hain's products, Plaintiffs allege Amazon knew of customer complaints and initiated an investigation by contacting Hain in October 2018. (*Id.* ¶ 192.) In an email chain with Hain employees, Amazon referenced a customer complaint regarding "high levels of arsenic" in an organic infant cereal product. (*Id.* Ex. F.) Amazon then requested Hain confirm whether the product was free from this defect, if there had been similar complaints in the past, and any



United States District Court
Northern District of California

solutions. (*Id.*) Plaintiffs allege Hain never supplied this information to Amazon, and yet Amazon continued to sell the product without warning customers. (*Id.* ¶ 194.) These allegations similarly permit a reasonable inference that Amazon undertook a duty to monitor and investigate Hain baby food on its platform for safety hazards.

In response, Amazon argues the product safety team only "may" take certain action, and this qualified language indicates no duty to affirmatively act in response to customer complaints. (Dkt. No. 364-3 at 17.) Citing *Pickard v. Amazon.com, Inc.*, Amazon asserts the representation that it "may" take action cannot establish an affirmative undertaking since "inspections and safety recommendations, which are not mandatory or within defendant's authority to remediate, do not create [] a duty." 2023-01596 (La. 6/28/24), 387 So. 3d 515, 525 (citing *Bujol v. Entergy Servs., Inc.*, 2003-0492 (La. 5/25/04), 922 So. 2d 1113, 1133-34, and *Hebert v. Rapides Par. Police Jury*, 2006-2001 (La. 4/11/07), 974 So. 2d 635, 644). This argument is unpersuasive for a few reasons.

First, Amazon misapplies the cited portion from *Pickard*. There, the Supreme Court of Louisiana relied on two prior cases, *Bujol* and *Hebert*, to support its holding. In *Bujol*, the court considered whether a parent company had assumed its subsidiary's "duty to guarantee a safe working environment" for the subsidiary's employees. 922 So. 2d at 1133. Holding there was no assumption of duty, the court noted the safety guidelines provided by the parent were merely recommendations, and the subsidiary was not required to follow them. *Id.* at 1133-34. The present allegations are the inverse of the facts in *Bujol*. It is Amazon who represents it "may" take certain actions, but there are no allegations that any action taken by Amazon does not impose an enforceable consequence for Nurture or Hain. Indeed, Plaintiffs allege Amazon corresponded with both manufacturers about defective products, and Amazon "required" certain action "to resolve the issue." (*See* TAP Exs. D, F.)

Such was the case in *Hebert* as well. There, the court determined the Louisiana State Department of Transportation & Development ("DOTD") did not assume a duty to maintain the safe condition of a bridge. *Hebert*, 974 So. 2d at 650-51. Though DOTD performed mandatory inspections of the bridge, it was statutorily proscribed from maintaining the bridge. *Id.* at 650. Ultimately, the court held no duty had been assumed because DOTD could not act to fix or

improve the bridge in response to its findings. In light of these two cases, the language from *Pickard* establishes a defendant does not assume a duty where the defendant's own actions do not impose an obligation on the third party. Unlike in *Bujol* and *Hebert*, Plaintiffs here plausibly allege Amazon can impose obligations on the manufacturers—such as requiring them to supply information—and can remediate issues by preventing the sale of their products on its website.

Second, while Amazon focuses on the word "may" in the online statements about the product safety team, it ignores other language that is not similarly qualified. For instance, Amazon states the product safety team "investigates and acts on reported safety complaints and incidents to protect customers from risks of injury." (TAP ¶ 143.) Amazon does not say it "may investigate" or "may act." Though Amazon does not commit to posting a warning or removing a product, it represents to consumers that it will investigate and monitor the products on its site. And per Plaintiffs' allegations, Amazon did just that for certain Nurture and Hain products when consumers complained of heavy metals. (*See*, *e.g.*, *id*. Exs. D, F.) These allegations permit a plausible inference that Amazon assumed a duty under Louisiana law to monitor and investigate these products for potential safety hazards.

Changing tack, Amazon next argues the TAP alleges it assumed a duty to test the baby food for heavy metals, which conflicts with Louisiana law establishing "[t]here is no duty to inspect '[p]roducts prior to sale to determine the possibility of inherent vices or defects.'" (Dkt. No. 364-3 at 18 (citing *Jackson v. Sears Authorized Retail Dealer Store*, 36,166 (La. App. 2 Cir. 6/12/02), 821 So. 2d 590, 593).) The Court disagrees. To start, Amazon does not cite a specific portion of the TAP to support its narrow reading of the alleged duty. Rather, the TAP contains various allegations regarding Amazon's duty to monitor and investigate products for safety hazards, not test those products for heavy metals itself. (*See, e.g.*, TAP ¶¶ 135-36, 143, 208.) Additionally, Amazon's cited authority does not address Plaintiffs' theory of liability. True, the Court of Appeal of Louisiana has held a non-manufacturing seller has "no duty to inspect or test the product for . . . inherent design vices or defects . . . ." *Jackson,* 821 So. 2d at 593. But *Jackson* was not an assumption of duty case. While a retailer may not have such a duty *ex-ante*, Plaintiffs have alleged something different—that Amazon *assumed* a duty not ordinarily owed by

sellers through the actions of its product safety team. *Jackson* is therefore inapposite.

Accordingly, Plaintiffs have plausibly alleged Amazon assumed a duty to monitor and investigate the Nurture and Hain baby food products on its website for safety hazards.

**B. Exercise of Reasonable Care**

In considering breach of duty, a court inquires whether the defendant, "'as [an] ordinarily prudent person[] under all the circumstances of [his] conduct,' should have reasonably foreseen an injury to the plaintiff and whether the defendant[] 'fail[ed] to exercise reasonable care to avoid the injury.'" *Bursztajn v. United States*, 367 F.3d 485, 490 (5th Cir. 2004). In the Court's prior order granting Amazon's motion to dismiss the negligent undertaking claim, the Court held Plaintiffs had not plausibly alleged Amazon failed to exercise reasonable care. *See In re Baby Food Prods. Liab. Litig*., 2024 WL 4982984 at *4. The basis of Plaintiffs' claim was alleged customer complaints posted on Amazon's website, to which the manufacturer had responded stating the products were safe. *See id*. ("Plaintiffs have not alleged any facts, nor cited any law, to plausibly suggest reliance on the manufacturer's representations would be unreasonable."). Through amendment, Plaintiffs have included further allegations regarding Amazon's response to customer complaints about heavy metals. These additional allegations permit a plausible inference that Amazon failed to exercise reasonable care in monitoring and investigating Nurture and Hain baby food sold on its site.

To begin, Plaintiffs now allege Amazon initiated investigations into Nurture and Hain products and reached out to the companies regarding customer complaints about heavy metals. (*See* TAP ¶¶ 179-195; *see also* TAP Exs. D, F.) In these communications, Plaintiffs allege Amazon requested information on heavy metals in the products as well as whether Nurture or Hain had received similar complaints in the past. (*Id*. Exs. D, F.) Moreover, Plaintiffs allege Nurture and Hain did not provide that information, yet Amazon permitted the products to remain on its site. (*Id*. ¶¶ 184-85, 188, 194.) The exhibits attached to the TAP detailing these communications do not show whether Hain or Nurture ever responded to Amazon or supplied the requested information. (*Id*. Exs. D, F.) However, the Court must draw all inferences in favor of the non-movant and assume the truth of Plaintiffs' allegations that Amazon failed to follow



United States District Court
Northern District of California

through on its investigation.

Further, Plaintiffs allege that Amazon removed a Nurture rice cake product from its site in early 2021 due to "a food safety concern." (*Id*. Ex. C.) Exhibit C to the TAP shows an email chain among Nurture employees discussing this removal and showing Amazon's reasons. (*Id*.) Per the email, Amazon also stated "if requested, please include a Certificate of Analysis (CoA) containing microbiological, heavy metals, and organoleptic testing (Question 7 in the email)." (*Id*.) Plaintiffs highlight the inconsistency between Amazon's decision to remove this Nurture product but continue selling other Nurture products subject to similar customer complaints. This inconsistency, they argue, serves as an example of Amazon's failure to apply reasonable care to its investigations. Previously, Plaintiffs based their claim on customer complaints directly addressed by Nurture and Hain. These new allegations permit a plausible inference that Amazon did not simply rely on manufacturer representations, but rather conducted a negligent investigation.

Amazon counters by arguing these new allegations still show it reasonably relied on manufacturer representations about the safety of the products. (Dkt. No. 429-3 at 14-16.) For instance, Amazon points to an August 2018 post by Nurture about that safety. (TAP Ex. B.) But Plaintiffs' new allegations show Amazon conducted investigations in October 2018. (*Id*. Exs. D, F.) If Amazon were simply relying on the manufacturers' representations, then it would have no need to begin an investigation dated *after* Nurture's post on the website. Further, Amazon cannot point to the email chains attached as Exhibits D and F to support their position because—as noted above—those emails do not show whether Nurture or Hain ultimately responded to the investigation. Though both email chains show internal discussion on how Nurture and Hain *would* respond to Amazon's inquiry, neither includes the final response to Amazon or whether the manufacturers complied with Amazon's requests. (*Id*.)

Consequently, Plaintiffs have plausibly alleged Amazon failed to exercise reasonable care in its assumed duty to monitor and investigate these baby food products.

**C. Increased Risk to Plaintiffs or Reliance Upon the Undertaking**

As to the final element of a negligent undertaking claim, Plaintiffs must plausibly allege Amazon either increased the risk of harm to them, or that they suffered harm because they relied

on Amazon's undertaking. *See Pickard*, 387 So. 3d at 525. "To establish an increase in the risk of harm under Subsection 324A(a) [of the Restatement], [a] plaintiff must prove some change in conditions that increased the risk of harm over the level of risk that existed before defendant became involved." *Id*. Further, to increase the risk of harm, a defendant must induce "some physical change to the environment or some other material alteration of circumstances." *Bujol* 922 So. 2d at 1135 (quoting *Patentas v. U.S.*, 687 F.2d 707, 717 (3rd Cir.1982)). Plaintiffs have not alleged any facts to support a plausible inference that Amazon's product safety team increased the existing risk of injury by monitoring and investigating customer complaints. Indeed, the only allegation related to this element is Plaintiffs' conclusory statement that by selling these baby food products while purporting to monitor them, "Amazon exacerbated the risk that unsafe products would be eaten by consumers like Plaintiff." (TAP ¶ 207.) The TAP includes no allegations explaining how Amazon altered circumstances that increased the risk of harm from heavy metals in the baby food. Nor do Plaintiffs allege any facts regarding how Amazon's actions physically changed the environment, or the risk already present from these products being on the market.

Plaintiffs' remaining allegations address their reliance on the product safety team's affirmative undertaking. In their opposition briefing, Plaintiffs refer to two paragraphs in the TAP discussing their reliance:

> Plaintiff could not have reasonably discovered the defects and risks associated with Baby Foods prior to or at the time of Plaintiff consuming Baby Foods. Plaintiff relied upon the skill, superior knowledge, and judgment of the Defendants to know about and disclose serious health risks associated with using Defendants' products.

(*Id*. ¶ 73.)

> . . . Plaintiff suffered harm because he and his parents relied upon Amazon's representations regarding the safety of the products they sold and the active monitoring and curating Amazon represented that they conducted on the products they sold.

(*Id*. ¶ 207.) The allegations in paragraph 73 do not aid the Court's analysis, since they refer to Plaintiffs' product liability cause of action against the Manufacturer Defendants *only*. Therefore, the reference to "Defendants" in the paragraph does not include Amazon. That said, the allegations in paragraph 207 identify Plaintiffs' reliance on Amazon's representations and specify

United States District Court
Northern District of California

the subject of those representations, i.e. "the active monitoring and curating" of the products on its site. Such allegations suffice to permit a plausible inference that Plaintiffs' injury was connected to the product safety team's affirmative undertaking.

To counter, Amazon argues Plaintiffs could not have relied on Amazon's representations about the product safety team because the cited webpage was not published on Amazon's site until December 21, 2020. (Dkt. No. 429-3 at 13.) "Plaintiff was born on April 5, 2018, and diagnosed with ASD in early 2021," meaning Plaintiff's parents had purchased the baby food from Amazon's site for over two years prior to publication of the product safety team page. (TAP ¶ 46.) To advance this argument, Amazon relies on the Declaration of Rebecca Hartley, a "litigation paralegal at Amazon.com Services LLC." (Dkt. No 430-2 ¶ 1.) However, the Court cannot consider this evidence on a motion to dismiss.

In adjudicating a motion to dismiss, the Court may consider the allegations in the complaint, documents incorporated by reference, and matters subject to judicial notice. *Mauia v. Petrochem Insulation, Inc.*, 5 F.4th 1068, 1071 (9th Cir. 2021). Amazon cites *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005), to argue the declaration may be incorporated by reference since it "provides context" about the product safety team webpage, which is itself incorporated by reference. (Dkt. No. 429-3 n.1.) This argument is unpersuasive. The "incorporation by reference" doctrine permits the Court "to take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel*, 393 F.3d at 1076. Amazon provided the Hartley Declaration on reply, meaning Plaintiffs had no opportunity to address its contents in the papers. Therefore, the Court cannot confirm the contents of the declaration are undisputed. Further, the original publication date for the webpage is not apparent on the face of the webpage itself, and Amazon has not cited any case holding such data may be considered "contents" of the webpage under the "incorporation by reference" doctrine.

Accordingly, the Court determines Plaintiffs have plausibly alleged reliance on Amazon's affirmative undertaking.

* * *

For the reason stated above, the Court DENIES Amazon's motion to dismiss the negligent undertaking claim.

**II. OTHER NEGLIGENCE THEORIES**

In opposing both motions, Plaintiffs now argue the Court should consider a non-manufacturing seller theory of negligence in addition to the negligent undertaking theory. (Dkt. No. 414-3 at 19; Dkt. No. 416-3 at 10.) Plaintiffs state: "Although the Court has focused on Plaintiff's negligent undertaking theory, it is appropriate for the Court to revisit its ruling on Whole Foods' negligence based on the facts shown through discovery." (Dkt. No. 416-3 at 9; *see also* Dkt. No. 414-3 at 19 (similar regarding Amazon).) Further, Plaintiffs argue the Court may "correct a mistake arising from oversight or omission" in its prior order under Federal Rule of Civil Procedure 60. (Dkt. No. 416-3 at 9.) Such a correction is warranted here, they claim, "because discovery shows Whole Foods knew about the 2019 HBBF report and the accompanying testing revealing contamination of several Nurture and Hain products." (*Id.*)

Plaintiffs are wrong. First, during the hearing on the motion to dismiss the Second Amended Petition, the Court inquired about Plaintiffs' theory of negligence:

> THE COURT: What I want to address is the negligence claim. And as I understand it from plaintiffs' opposition, it's just – it's a negligent undertaking theory. That's the theory.
>
> MR. SMITH: Yes, Your Honor.

(Dkt. No. 268 at 6.) To wit: the Court asked whether the theory was just negligent undertaking, and counsel for Plaintiffs responded, "Yes, Your Honor." Throughout the November 7, 2024 hearing, Plaintiffs could have raised—at any time—an alternative theory of negligence, or corrected their previous statement. They did not. Nor did Plaintiffs address this theory in their prior opposition papers. So, the Court "has focused on Plaintiff's negligent undertaking theory" because that is the case Plaintiffs brought.

Second, Plaintiffs' attempt to move for relief from the Court's December 3, 2024 Order in their opposition to the pending motion is substantively incorrect and procedurally improper. Plaintiffs do not explain how a party's failure to raise a theory of liability constitutes an "oversight

United States District Court
Northern District of California

or omission" by the Court under Rule 60(a). Moreover, Plaintiffs do not explain why the emails appended to their opposition briefing could not have been discovered with reasonable diligence prior to the Court's December 3, 2024 Order. If Plaintiffs indeed "submit that the Court should revisit its ruling on Whole Foods' negligence," the proper vehicle would be a motion for leave to file a motion for reconsideration under Civil Local Rule 7-9.

For these reasons, the Court DENIES Plaintiffs' request.

## III. BAD FAITH SELLER REDHIBITION

"Louisiana Civil Code article 2520 provides a warranty of redhibition for the sale of goods." *Franco v. Mercedes-Benz USA, LLC*, 17-431 (La. App. 5 Cir. 10/17/18), 258 So. 3d 1053, 1056. To state a redhibition claim, the plaintiff must plausibly allege: "1) the seller sold the item to him and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that, judged by the reasonable person standard, had he known of the defect, he would never have purchased it; 2) the item contained a non-apparent defect at the time of sale; and 3) the seller was given an opportunity to repair the defect." *Morris v. United Servs. Auto. Ass'n*, 32,528 (La. App. 2 Cir. 2/18/00), 756 So. 2d 549, 560-61. A plaintiff may also advance a redhibition claim where she plausibly alleges a defect that "diminishes the item's value to the extent that the buyer would still have bought it, but for a lesser price." *Id.* Under Louisiana Civil Code article 2545, "[a] seller who knows but omits to declare the vice of the thing he sells is answerable to the buyer not only for restitution of the purchase price and repayment of expenses, including reasonable attorney fees, but also for damages." *Id.*

Here, Retailer Defendants argue Plaintiffs have not plausibly alleged knowledge of the defect at the time of sale to establish Retailer Defendants were bad faith sellers under article 2545.

### A. Claim Against Amazon

As the Court noted previously, Plaintiffs' amended allegations include communications between Amazon, Nurture, and Hain regarding customer complaints from October 2018 about heavy metals in their products. *See* Part I.B., *supra*. Amazon initiated an investigation, and per Plaintiffs' allegations, failed to receive certain required information from the manufacturers, but nonetheless permitted the products to remain on its site. *Id.* Plaintiffs further allege that, on at

least one occasion, they purchased—and their child consumed—a Nurture baby food product *after* Amazon had received customer complaints in 2018. (*See* TAP ¶ 157.) Combined, these allegations permit a plausible inference that Amazon had knowledge of heavy metals in the baby food products at the time such products were sold to Plaintiffs.

In response, Amazon argues the communications between Amazon and the manufacturers do not show Amazon's knowledge of the defect. (Dkt. No. 429-3 at 18.) But this argument requires the Court to draw inferences in favor of Amazon. Properly drawing inferences in favor of Plaintiffs, the allegations show Amazon was aware of customer complaints about heavy metals in the products, chose to begin an investigation, did not receive sufficient information from manufacturers regarding the heavy metals, yet continued to sell the products on the Amazon site. Plaintiffs have alleged enough to advance their redhibition claim.[3]

**B. Claim Against Whole Foods**

Unlike the allegations against Amazon, Plaintiffs do not allege Whole Foods received any complaints regarding heavy metals in the baby food products. Indeed, the TAP does not allege any facts to support the conclusory statement that "[u]pon information and belief, Whole Foods . . . knew or should have known about the heavy metals in the Baby Foods sold to Plaintiff's parents and consumed by Plaintiff." (TAP ¶ 122.)

In opposition, Plaintiffs now argue Whole Foods had actual knowledge of the 2019 Happy Babies, Bright Futures ("HBBF") report based on an email sent from the Environmental Defense Fund to a Whole Foods employee linking to, and discussing, the report. (Dkt. No. 416-4 at 3.) However, the Court cannot consider material appended to the opposition when it is not incorporated by reference into the complaint or subject to judicial notice. *See Mauia*, 5 F.4th at 1071 ("Our review is limited to the complaint, materials incorporated by reference into the complaint, and matters of which we may take judicial notice.").

Plaintiffs subsequently argue Whole Foods had constructive knowledge of the 2019 HBBF

[3] Since Plaintiffs have plausibly alleged Amazon's knowledge of the heavy metals in the baby food, the Court does not reach the parties' arguments regarding whether Amazon had actual or constructive knowledge of the 2019 Happy Babies, Bright Futures report.

report because under Louisiana law, "a manufacturer is held to the knowledge and skill of an expert," and "must keep abreast of scientific knowledge, discoveries, and advances and is presumed to know what is imparted thereby." *Gregor v. Argenot Great Cent. Ins. Co.*, 2002-1138 (La. 5/20/03), 851 So. 2d 959, 969 (citing *Simeon v. Doe*, 618 So. 2d 848, 852 (La. 1993)). Since Whole Foods manufactures its own separate baby food product, Plaintiffs assert the standard in *Gregor* applies, even if Whole Foods did not manufacture the baby food at issue. (Dkt. No 416-3 at 8.) Whole Foods responds by pointing to distinctions between the instant case and *Gregor*, such as the difference between the strict product liability action at issue there compared to the redhibition claim here. (Dkt. No. 428 at 7-8.)

To avoid prematurely wading into this question of Louisiana state law, the Court will not address the merits until it is confident all allegations of Whole Foods' actual or constructive knowledge are properly before the Court for consideration. Therefore, the Court GRANTS Whole Foods' motion to dismiss, with leave to amend. Plaintiffs are granted leave to amend only their redhibition claim against Whole Foods to include allegations regarding Whole Foods' actual or constructive knowledge of the alleged defect.

**CONCLUSION**

For the reasons discussed above, the Court DENIES Amazon's motion to dismiss the negligent undertaking claim and the bad faith seller redhibition claim. The Court further DENIES Plaintiffs' request for the Court to consider alternate theories of negligence.

As to the bad faith seller redhibition claim against Whole Foods, the Court GRANTS Whole Foods' motion, with leave to amend. Plaintiffs are granted leave to amend the Complaint to include further allegations regarding Whole Foods' actual or constructive knowledge of the alleged defects for purposes of the redhibition claim only. Plaintiffs may not further amend without leave of court. Should Plaintiffs choose to amend in accordance with this Order, they must do so by May 9, 2025. Lastly, the hearing on Retailer Defendants' motions currently scheduled for April 24, 2025, is VACATED.

//

//

United States District Court
Northern District of California

This Order disposes of Docket Nos. 365 and 366.

**IT IS SO ORDERED.**

Dated: October 1, 2025

JACQUELINE SCOTT CORLEY
United States District Judge