R. Brent Wisner (SBN 276023)
rbwisner@wisnerbaum.com
**WISNER BAUM, LLP**
11111 Santa Monica Blvd., Suite 1750
Los Angeles, CA 90025
Tel: (310) 207-3233
Fax: (310) 820-7444

Aimee H. Wagstaff (SBN: 278480)
awagstaff@wagstafflawfirm.com
**WAGSTAFF LAW FIRM**
940 N. Lincoln Street
Denver, Colorado 80203
Telephone: 303.376.6360
Facsimile: 303.376.6361


*Co-Lead Counsel for Plaintiffs in MDL 3101*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*ALL ACTIONS* | Case No. 24-MD-03101-JSC<br><br>MDL 3101<br><br>Hon. Jacqueline Scott Corley<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND MASTER COMPLAINT**<br><br>Date:      November 27, 2025<br>Time:      10:00 A.M.<br>Location: Courtroom 8, 19th Floor<br>                San Francisco, CA 94102 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 27, 2025 at 10:00 a.m., or as soon thereafter as counsel may be heard, in the above-entitled Court located at 450 Golden Gate Avenue, Courtroom 9, 19th Floor, San Francisco, California 94102, Plaintiffs will, and hereby do, move for leave to amend the First Amended Complaint and file a Second Amended Complaint.

Plaintiffs bring this motion seeking relief for leave to amend the First Amended Complaint and File a Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the declaration of William L. Smith, and the exhibits attached to it.

Dated: October 21, 2025                          Respectfully submitted,


                                                 /s/ William L. Smith
                                                 William L. Smith (SBN: 324235)
                                                 wsmith@anapolweiss.com
                                                 **ANAPOL WEISS**
                                                 6060 Center Drive, 10th Floor
                                                 Los Angeles, CA 90045
                                                 Telephone:  (424) 419-1634

                                                 *Plaintiffs' Steering Committee Member*

## TABLE OF CONTENTS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:...........................................................1

TABLE OF AUTHORITIES ...................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

INTRODUCTION ......................................................................................................................1

BACKGROUND .......................................................................................................................2

    A.    What the Foreign Defendants Did. ...................................................................2

    B.    The Procedural Path to This Motion. ...............................................................3

    C.    Plaintiffs Bring Claims in Sixteen States. ........................................................4

WHY AMENDMENT SHOULD BE ALLOWED ......................................................................5

    A.    The Standard Is Generous. ..............................................................................5

    B.    The Jurisdictional Framework. ........................................................................6

PLAINTIFFS CAN MAKE A PRIMA FACIE SHOWING OF JURISDICTION ..............................7

    A.    The Foreign Defendants Exploited a Nationwide Market. .................................7

    B.    Those Acts Were Expressly Aimed at the Forum States. ..................................9

    C.    Plaintiffs' Claims Arise Out of the Foreign Defendants' Conduct.............................11

    D.    Exercising Jurisdiction Is Reasonable. ..........................................................12

CONCLUSION..........................................................................................................................12

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*American Type Culture Collection v. Coleman*,
     83 S.W.3d 801 (Tex. 2002) (Texas) ....................................................................................4

*Andra v. Left Gate Prop. Holding, Inc.*,
     453 S.W.3d 216 (Mo. 2015) (Missouri) .............................................................................4

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
     874 F.3d 1064 (9th Cir. 2017) ...........................................................................................6

*In re Baby Food Prods. Liab. Litig.*,
     No. 24-md-03101-JSC, 2025 U.S. Dist. LEXIS 63596 (N.D. Cal. Apr. 2, 2025).....................6

*Briskin v. Shopify, Inc.*,
     135 F.4th 739 (9th Cir. 2025) ...........................................................................6, 10, 11

*Carrico v. City and County of San Francisco*,
     656 F.3d 1002 (9th Cir. 2011) ...........................................................................................5

*Carvalho v. Equifax Info. Servs., LLC*,
     629 F.3d 876 (9th Cir. 2010) .............................................................................................5

*DCD Programs, Ltd. v. Leighton*,
     833 F.2d 183 (9th Cir. 1987) .............................................................................................5

*Desertrain v. City of Los Angeles*,
     754 F.3d 1147 (9th Cir. 2014) [*5].....................................................................................5

*Downing v. Losvar*,
     21 Wash. App. 2d 635, 654, 507 P.3d 894 (2022) (Washington)..............................................4

*Eminence Cap., LLC v. Aspeon, Inc.*,
     316 F.3d 1048 (9th Cir. 2003) ...........................................................................................5

*Foman v. Davis*,
     371 U.S. 178 (1962)...........................................................................................................5

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
     592 U.S. 351, 141 S. Ct. 1017 (2021).............................................................. *passim*

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
     72 F.4th 1085 (9th Cir. 2023) ...........................................................................................12

*Hernandez v. City of Beaumont*,
　No. EDCV 13-00967 DDP, 2014 U.S. Dist. LEXIS 169662, 2014 WL 6943881
　(C.D. Cal. Dec. 8, 2014) ...................................................................................................7

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
　485 F.3d 450 (9th Cir. 2007) ...........................................................................................6

*Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank*,
　279 Ga. 672, 620 S.E.2d 352 (2005) (Georgia) ..............................................................4

*Mehr v. Fed'n Internationale de Football Ass'n*,
　115 F. Supp. 3d 1035 (N.D. Cal. 2015) ...........................................................................6

*Meyer v. Paschal*,
　330 S.C. 175, 498 S.E.2d 635 (S.C. 1998) (South Carolina)..........................................4

*Nat'l Grange Mut. Ins. Co. v. White*,
　83 S.W.3d 530 (Ky. 2002) (Kentucky) ............................................................................4

*Sifers v. Horen*,
　385 Mich. 195, 188 N.W.2d 623 (1971) (Michigan)........................................................4

*Star & Crescent Boat Co. v. Sunsplash Marina Ltd. Liab. Co. (In re Star & Crescent
　Boat Co.)*,
　549 F. Supp. 3d 1145 (S.D. Cal. 2021)............................................................................6

**Statutes**

735 ILCS 5/2-209(c) ...............................................................................................................4

42 Pa.C.S. § 5322(b) ..............................................................................................................4

Cal. Civ. Proc. Code § 410.10 ...............................................................................................4

Conn. Gen. Stat. § 52-59b.......................................................................................................4

Fla. Stat. § 48.193 ..................................................................................................................4

La. Rev. Stat. § 13:3201(B) ....................................................................................................4

NRS 14.065(1) ........................................................................................................................4

**Other Authorities**

CPLR 302..................................................................................................................................4

Fed. R. Civ. P. 3.......................................................................................................................3

Fed. R. Civ. P. 15(a)(2)........................................................................................................5

Indiana Trial Rule 4.4(A).....................................................................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs ask the Court for leave to amend the First Amended Master Long-Form Complaint to assert claims against Nestlé Enterprises S.A. ("Nestle Enterprises") and Société des Produits Nestlé S.A. ("SPN") (collectively "the Foreign Defendants"). The Court's October 1, 2025 order invited this motion and asked Plaintiffs to identify the states where they must make a prima facie showing of personal jurisdiction. The Court also asked Plaintiffs to explain why the allegations in the Amended Master Complaint support jurisdiction over the Foreign Defendants. This motion responds to both requests.

## INTRODUCTION

The Court dismissed claims against the foreign Nestlé entities for a straightforward reason: Plaintiffs served the Master Complaint without also serving the Short-Form Complaints that identify individual plaintiffs. The Court held that both documents together make up the complete pleading in this MDL. Serving only one was not enough.

But the Court did not say the jurisdictional allegations themselves were inadequate. After explaining the service problem, the Court gave Plaintiffs leave to file this motion and asked Plaintiffs to lay out their jurisdictional case that the foreign entities had sufficient contacts with the relevant states.

Plaintiffs can make that showing. The allegations in the Master Complaint describe how Nestlé Enterprises and SPN controlled the safety standards for Gerber baby food sold across the United States. They set limits for toxic heavy metals. They decided how much lead and arsenic Gerber could allow in products destined for American babies. They knew those products would reach every state, including the sixteen states where Plaintiffs who name these defendants now live. And they knew that children in those states would eat the contaminated baby food and suffer harm as a result.

That is enough for specific jurisdiction. The Foreign Defendants made deliberate decisions about products they knew would be sold nationwide. Those decisions caused injuries in each forum state. The Constitution permits courts in those states to exercise jurisdiction over the entities that made those decisions.

1

## BACKGROUND

**A.  What the Foreign Defendants Did.**

Nestlé Enterprises and SPN are Swiss companies wholly owned by Nestlé S.A. They are not just passive corporate parents. They actively controlled the safety standards and heavy metal limits for Gerber baby food sold in the United States. The Master Complaint spells this out in detail.

**Nestlé Enterprises** employed Colin Servais as its Business Quality Manager for Baby Food. (FAMC ¶ 21). Gerber's own witnesses identified Servais as a key decision maker who set and communicated heavy metal limits to Gerber employees in the United States. *Id.* The record shows what Servais did:

He talked with the FDA about arsenic levels in rice. *Id.* He told Gerber to reduce the arsenic limit in rice flour from 100 parts per billion to 85 ppb. *Id.* He discussed ways to lower arsenic through rinsing and changes to irrigation. *Id.* He tracked regulatory developments in Europe and flagged when the EU planned to tighten lead limits. *Id.* He ran a project comparing Gerber's contamination standards to those of competitors, with an eye toward loosening Gerber's rules to make ingredient sourcing easier. *Id.* He wrote guidance on when Gerber could release batches of baby food for sale even when those batches had elevated arsenic. *Id.* And he created a risk matrix in 2020 that classified and ranked the dangers of arsenic, lead, and other metals in infant food.

**Société des Produits Nestlé** also had employees making decisions about metal contamination in Gerber products. (FAMC ¶ 22). One SPN quality specialist conducted risk assessments for contaminants in a Gerber snack product. *Id.* That employee found concerning levels of lead and other metals and noted that Gerber needed to take further action. *Id.* Karin Kraehenbuehl, who worked as a contaminants expert for SPN, sent quarterly updates about changes to internal contamination specifications. *Id.* In those updates, she told other Nestlé employees that baby food products would have "less strict limits" for aluminum and "additional flexibility" for arsenic in infant cereals. *Id.* She explained that these limits were "safety based" but were "not necessarily aligned with strictest regulatory limit worldwide." *Id.* Kraehenbuehl also prepared a presentation for the U.S. co-manufacturing team about chemical contaminants in baby meals, snacks, and cereals. *Id.* In that presentation, she acknowledged that heavy metals cause "significant adverse health effects" and that

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND MASTER COMPLAINT
CASE NO. 24-MD-03101-JSC

lead exposure can result in "impaired cognitive development and intellectual performance" in children. *Id.*

These are not the activities of distant corporate parents with no connection to the American market. These are the activities of entities that set the rules governing what goes into baby food sold in California, Texas, New York, and every other state.

**B.    The Procedural Path to This Motion.**

Plaintiffs added the foreign Nestlé entities as defendants in the First Amended Master Complaint filed on April 16, 2025. Those defendants moved to dismiss for lack of jurisdiction and improper service. On October 1, 2025, the Court granted the motions.

The Court's ruling focused on service. The Court explained that in this MDL, the Master Complaint and Short-Form Complaints work together. The Master Complaint lays out common allegations that apply to many or all defendants. Each Short-Form Complaint identifies a specific plaintiff, specifies which products that plaintiff consumed, and incorporates the relevant portions of the Master Complaint. The cover page of the Master Complaint says explicitly that "this Complaint in addition to a filed Short Form Complaint, constitute each Plaintiffs' pleading under Fed. R. Civ. P. 3."

Because the two documents together form the complete pleading, the Court held that both must be served. Plaintiffs had served only the Master Complaint on the Foreign Defendants. That was not sufficient. But the Court did not stop there. The Court gave Plaintiffs an opportunity to fix the problem. The Court directed Plaintiffs to file this motion, and told Plaintiffs to identify the states where they need to show jurisdiction and to explain why the allegations support jurisdiction in those states.

Plaintiffs are working toward serving the Foreign Nestle Defendants with Short Form Complaints, navigating the extensive service process through the Hague. That said, once service is complete, the question will become whether the Court can exercise jurisdiction over these defendants based on the conduct alleged in the Master Complaint.

### C. Plaintiffs Bring Claims in Sixteen States.

Plaintiffs from sixteen states have named the foreign Nestlé entities in their Short-Form Complaints. Those states are California, Connecticut, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Michigan, Missouri, Nevada, New York, Pennsylvania, South Carolina, Texas, and Washington. These states can be broken into two groups: (1) those with long-arm statutes or case law that extend their long-arm to the full extent of the constitution; and (2) those that first consider whether conduct fits an enumerated act before turning to the constitutional analysis. Thirteen states (California, Georgia, Illinois, Indiana, Kentucky, Louisiana, Michigan, Missouri, Nevada, Pennsylvania, South Carolina, Texas, and Washington) fall into Group 1. *See* Cal. Civ. Proc. Code § 410.10 (California); *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank*, 279 Ga. 672, 673, 620 S.E.2d 352, 354 (2005) (Georgia); 735 ILCS 5/2-209(c) (Illinois); Indiana Trial Rule 4.4(A) (Indiana), *Nat'l Grange Mut. Ins. Co. v. White*, 83 S.W.3d 530, 534 (Ky. 2002) (Kentucky); La. Rev. Stat. § 13:3201(B) (Louisiana); *Sifers v. Horen*, 385 Mich. 195, 199, 188 N.W.2d 623, 623-24 (1971) (Michigan); *Andra v. Left Gate Prop. Holding, Inc.*, 453 S.W.3d 216, 226 (Mo. 2015) (Missouri); NRS 14.065(1) (Nevada); 42 Pa.C.S. § 5322(b) (Pennsylvania); *Meyer v. Paschal,* 330 S.C. 175, 498 S.E.2d 635 (S.C. 1998) (South Carolina); *American Type Culture Collection v. Coleman,* 83 S.W.3d 801, 806 (Tex. 2002) (Texas); and *Downing v. Losvar*, 21 Wash. App. 2d 635, 654, 507 P.3d 894, 905 (2022) (Washington). The remaining three states (Connecticut, Florida, and New York) fall into group 2. *See* Conn. Gen. Stat. § 52-59b (Connecticut); Fla. Stat. § 48.193 (Florida); CPLR 302 (New York).

Each of the "enumerated acts" states includes both committing a tortious act within the state and committing a tortious act outside the state that causes injury to a person within the state as a basis for specific personal jurisdiction. In each of these states, Defendants either committed a tortious act within the state or committed a tortious act outside the state that caused harm to a person within the state. Thus, the first step of the analysis, whether Defendants' conduct fits an enumerated act in those states, is met and the analysis can then turn to whether Defendants' conduct also satisfies Constitutional requirements.

Thus, for both groups the ultimate question becomes: Does the Constitution permit jurisdiction over these foreign entities based on the conduct described in the Master Complaint? It does.

## WHY AMENDMENT SHOULD BE ALLOWED

### A. The Standard Is Generous.

Rule 15 tells courts to give leave to amend freely when justice requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A court can deny leave only if the party opposing amendment shows bad faith, undue delay, prejudice, or futility. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). The burden is on the party resisting amendment, not on the party seeking it. *Id.* at 187.

Under Rule 15, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This standard "is to be applied with extreme liberality." *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) [*5]. "However, the district court may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). That said, "[n]ot all of the factors merit equal weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Rather, "[p]rejudice is the 'touchstone of the inquiry under rule 15(a).'" *Id.* (citation omitted). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* (emphasis in original) (citation omitted).

Futility is the only potential issue here. An amendment is futile if the amended complaint could not survive a motion to dismiss. *See Carrico v. City and County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). Accordingly, the question here comes down to jurisdiction. If Plaintiffs can show that the allegations state a prima facie case for jurisdiction in each of the sixteen states, then amendment is not futile and leave should be granted. Further, where Plaintiffs have identified facts from discovery that were not previously pled, leave to amend should be granted in those additional facts would help plaintiffs in stating a prima facie case for jurisdiction.

**B. The Jurisdictional Framework.**

Because this is an MDL, the Court exercises jurisdiction "only to the same degree that the original transferor court could have." *In re Baby Food Prods. Liab. Litig.*, No. 24-md-03101-JSC, 2025 U.S. Dist. LEXIS 63596, at *36 (N.D. Cal. Apr. 2, 2025). That standard means the Court applies the law of each transferor state.

For specific jurisdiction in a tort case, three things must be true. First, the defendant must have purposefully directed activities at the forum *or* purposefully availed itself of the forum. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Second, the plaintiff's claim must arise out of or relate to those forum activities. *Id.* Third, exercising jurisdiction must be reasonable. *Id.*

The Court previously focused its first prong analysis on the Calder "effects test," which many Ninth Circuit cases apply. The Ninth Circuit has held, however, that "it is well established that the *Calder* test *applies only to intentional torts*, not to [ ] breach of contract and negligence claims[.]" *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) (emphasis added); s*ee also, e.g.*, *Mehr v. Fed'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1049 (N.D. Cal. 2015) ("In some cases, the Ninth Circuit has limited the "purposeful direction" test to claims involving intentional torts."). Moreover, even if the Calder test did apply, the Ninth Circuit recently held that express aiming does not require differential targeting. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 757 (9th Cir. 2025). The *Briskin* Court, discussing *Ford*, wrote, "the Supreme Court has considered and rejected the argument that because a nationwide company is everywhere, it is jurisdictionally nowhere except in its principal place of business and state of incorporation." *Id.* The *Briskin* Court cautioned that "requiring differential targeting would have the perverse effect of allowing a corporation to direct its activities toward all 50 states yet to escape specific personal jurisdiction in each of those states for claims arising from or relating to their relevant contacts in the forum state that injure that state's residents. *Id.* 135 F.4th 739, 758 (9th Cir. 2025).

That said, in tort cases involving negligence, courts analyze whether the defendant committed acts showing purposeful *availment* of the forum state. *Star & Crescent Boat Co. v. Sunsplash Marina Ltd. Liab. Co. (In re Star & Crescent Boat Co.)*, 549 F. Supp. 3d 1145, 1162 (S.D. Cal. 2021); *see*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND MASTER COMPLAINT
CASE NO. 24-MD-03101-JSC

*also Hernandez v. City of Beaumont*, No. EDCV 13-00967 DDP, 2014 U.S. Dist. LEXIS 169662, 2014 WL 6943881, at *3 (C.D. Cal. Dec. 8, 2014) ("Here, the City's claims are based on negligence and products liability, not intentional torts. Thus, the Court will apply the more general purposeful availment analysis.")

To show purposeful availment, as the Supreme Court instructs in *Ford*, Plaintiffs "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 359, 141 S. Ct. 1017, 1025 (2021) (citing *Walden* v. *Fiore*, 571 U. S. 277, 285 (2014)). It matters not whether the company is foreign or domestic. When its "business is everywhere," specific jurisdiction attaches when a company serves a market for a product in the forum State and the product malfunctions there. *Id.* at 363.

Then, Plaintiffs must show that their claim "relates to" a defendant's forum activities when there is "an affiliation between the forum and the underlying controversy." 592 U.S. 351, 359, 141 S. Ct. 1017, 1025 (2021). The Court does not require strict but-for causation. Instead, when a company has "continuously and deliberately exploited [a State's] market," it should expect to be sued there "to answer for conduct connected to that market." *Id.* at 364. The key is whether the defendant's contacts with the forum and the plaintiff's claims share a "connection." *Id.* at 361-362.

## PLAINTIFFS CAN MAKE A PRIMA FACIE SHOWING OF JURISDICTION

The allegations in the Master Complaint support jurisdiction in all sixteen states. The Foreign Defendants exploited a nationwide market, purposefully availing themselves of the privileges of operating in each of the forum states. Additionally, the Foreign Defendants committed intentional acts expressly aimed at the United States market, including each forum state. Those acts directly caused the harm that Plaintiffs suffered. And Plaintiffs' claims arise out of precisely the conduct that brought the defendants into contact with each forum.

**A. The Foreign Defendants Exploited a Nationwide Market.**

The Foreign Defendants purposefully availed themselves of the privileges of operating in each of the forum states. They set safety standards for Gerber baby food. They established limits for toxic heavy metals. They decided how much lead, arsenic, mercury, and cadmium could be present in

7

ingredients and finished products. They communicated those limits to Gerber's U.S. operations. They monitored compliance with those limits. They authorized exceptions when products exceeded the limits. They adjusted the limits based on business considerations like ingredient availability and cost. And they did all of this knowing that Gerber would use their standards to produce and distribute baby food throughout the United States. The Foreign Defendants' conduct was not passive investment in a subsidiary. It was active control over product design and safety. The Foreign Defendants were not silent partners. They were decision makers.

Purposeful availment occurs when a defendant creates, maintains, or participates in a distribution network that brings products into the forum state. In *World-Wide Volkswagen Corp. v. Woodson*, the Supreme Court explained that a manufacturer or distributor that "serves, directly ***or indirectly***, the market for its product in [the forum State]" has purposefully availed itself of that market. 444 U.S. 286, 297 (1980) (emphasis added). The Court distinguished between a consumer who unilaterally brings a product into a state and a company that "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers" there. *Id.* The Court noted that even indirect service of a market is enough to subject a company to personal jurisdiction. *Id.* ("Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly ***or indirectly***, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.") (emphasis added).

The Supreme Court's more recent decision in *Ford* is instructive. Ford sold cars nationwide through an extensive dealer network. When those cars caused injuries in Montana and Minnesota, Ford argued it could not be sued there because the specific cars at issue were not originally sold in those states. The Supreme Court rejected that argument. Citing *World-Wide Volkswagen*, the Court explained that specific jurisdiction attaches "when a company cultivates a market for a product in the forum State and the product malfunctions there." *Ford*, 592 U.S. at 352-353.

The Foreign Defendants did not make a product that happened to end up in the forum states through the unilateral actions of consumers. Instead, they set the standards for a product that Gerber

deliberately marketed and sold in every American state. They knew Gerber had a nationwide distribution network. They knew their standards would govern products sold from California to New York, from Texas to Michigan. They intended exactly that result.

**B. Those Acts Were Expressly Aimed at the Forum States.**

Even under the more exacting *Calder* effects test, Plaintiffs' allegations state a prima facie case. The Court found this element lacking when it dismissed Nestlé USA for want of jurisdiction. The Court said that testing baby food in Ohio, discussing ingredient sourcing, and participating in consumer messaging were not enough. Those activities did not show conduct "expressly aimed" at California, Connecticut, Florida, Indiana, or Illinois. The Court stated that the evidence did not demonstrate "individualized targeting" of the forum or any conduct directed specifically at those states.

The Foreign Defendants' conduct differs in several ways.

**First, they controlled the product itself.** The Foreign Defendants set the rules that determined what Gerber could sell. When Colin Servais told Gerber to reduce the arsenic limit from 100 ppb to 85 ppb, he was not making a suggestion. (FAMC ¶ 21). He was issuing a standard that Gerber had to follow. When Karin Kraehenbuehl sent quarterly updates changing internal contamination specifications, she was not offering advice. (FAMC ¶ 22). She was setting corporate policy that governed products sold in every American state.

This distinction matters because it goes beyond the passive involvement the Court found insufficient for Nestlé USA. Deciding what levels of poison can go into baby food sold nationwide is not testing. It is not monitoring. It is active control over the product design and safety profile.

**Second, they knew exactly where the products would go.** Gerber is not a regional brand. It sells baby food in supermarkets and stores nationwide. The Foreign Defendants knew this fact. They knew that when they loosened arsenic standards or allowed elevated lead levels, those decisions would affect products sold in California, New York, Texas, Georgia, and every other state. They knew that babies in those states would consume the food. And they knew that harm from heavy metal exposure would manifest in those states, where the children live and develop.

9

**Third, they made deliberate choices to allow higher contamination in U.S. products than in products sold elsewhere.** The Master Complaint alleges that Gerber "often implemented stricter standards for baby foods sold in other countries." (FAMC ¶ 86.) Karin Kraehenbuehl's emails confirm this. She wrote that the contamination limits she was setting were "not necessarily aligned with strictest regulatory limit worldwide." (FAMC ¶ 22.) In other words, the Foreign Defendants knew stricter limits were possible, knew those limits were in effect in other markets, and chose to allow more contamination in the United States.

That conduct is targeting. When a company decides that American babies will be exposed to higher levels of neurotoxic metals than babies in Europe, it has made a deliberate choice about the American market. It has expressly aimed its conduct at the United States, including every state where its product is sold.

**Fourth, they directed their activities at U.S. business operations.** Colin Servais communicated heavy metal limits directly to Gerber employees in the United States. (FAMC ¶ 21) Karin Kraehenbuehl gave a presentation on chemical contaminants to the "US Co-Man team," meaning the teams that work with U.S. co-manufacturers. (FAMC ¶ 22). These were not global pronouncements sent out to all Nestlé operations worldwide. These were specific communications directed at the people responsible for producing baby food for the American market. Thus, both Defendants exploited the baby food markets of each forum state, and the products they controlled and helped create caused injury in the forum states.

Thus, the Foreign Defendants purposefully directed their conduct towards each state because their conduct towards these forums was not random, isolated, or fortuitous. *C.f. Briskin v. Shopify, Inc.*, 135 F.4th 739, 758 (9th Cir. 2025) (interactive platform that operates nationwide expressly aims its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous).

Here, too, *Ford* is instructive. What mattered there was that Ford had "continuously and deliberately exploited" the state markets and that the plaintiffs' claims were connected to that exploitation. *Id.* The same logic applies here. Nestlé Enterprises and SPN deliberately exploited every state market by setting safety standards for a product sold nationwide. They did not need to separately

Case 3:24-md-03101-JSC   Document 636   Filed 10/21/25   Page 17 of 20

target each state. *See Briskin*, 135 F.4th 739 at 757. By controlling the product design and safety rules for a nationally distributed consumer good, they purposefully reached into each state where that product was sold.

**C. Plaintiffs' Claims Arise Out of the Foreign Defendants' Conduct.**

The second prong asks whether Plaintiffs' claims "arise out of or relate to" the Foreign Defendants' contacts with the forum states. *Ford* makes clear that this is not a strict causation test. The plaintiff need not show that the defendant's forum contacts were the but-for cause of the injury. 592 U.S. at 361. Instead, the question is whether there is "an affiliation between the forum and the underlying controversy." *Id.* at 369-370.

There is. Plaintiffs allege that they were injured by consuming Gerber baby food contaminated with toxic heavy metals. They allege that the contamination occurred because Defendants set inadequate safety standards, used contaminated ingredients, and failed to test adequately. (FAMC ¶¶ 84-90.) Those are the very activities the Foreign Defendants controlled.

Colin Servais set the arsenic limits. He decided when batches with elevated arsenic could be released for sale. He ran projects aimed at loosening contamination standards to ease ingredient sourcing. Karin Kraehenbuehl established internal specifications that allowed "less strict limits" for metals in baby food. She acknowledged that those limits were set for business reasons and were not aligned with the strictest global standards. (FAMC ¶ 22). Another SPN employee conducted risk assessments that identified lead contamination concerns but allowed the product to proceed anyway. *Id.*

These decisions caused Plaintiffs' injuries. If the Foreign Defendants had set stricter limits, if they had required more testing, if they had prohibited the use of contaminated ingredients, the products would have been safer. Plaintiffs would not have been exposed to the same levels of toxic metals. Their neurodevelopmental injuries would have been prevented or reduced.

That is a direct connection between the defendants' forum-related activities and Plaintiffs' claims. The Foreign Defendants set the standards that governed the safety of baby food sold in the forum states. Plaintiffs were injured by the inadequacy of those standards. Thus, the claims arise out of the very conduct that established the Defendants' contacts with the forum.

11

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND MASTER COMPLAINT
CASE NO. 24-MD-03101-JSC

**D. Exercising Jurisdiction Is Reasonable.**

The third prong asks whether exercising jurisdiction comports with "fair play and substantial justice." The plaintiff has the burden of proving the first two prongs. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023). But if the plaintiff meets that burden, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (internal quotations and citations omitted). The Foreign Defendants cannot meet that burden here. Indeed, SPN and Nestlé Enterprises, in their initial motions challenging personal jurisdiction, cited no case holding that it would be somehow unreasonable to assert personal jurisdiction over large companies with a documented role in sending contaminated foods to U.S. consumers.

## CONCLUSION

For these reasons, the Court should grant Plaintiffs' motion for leave to amend the Master Complaint.

Dated: October 21, 2025                         Respectfully submitted,


*/s/ William L. Smith*
William L. Smith (SBN: 324235)
wsmith@anapolweiss.com
**ANAPOL WEISS**
6060 Center Drive, 10th Floor
Los Angeles, CA 90045
Telephone: (424) 419-1634

*Plaintiffs' Steering Committee Member*


*/s/ Brent Wisner*
R. Brent Wisner, SBN 276023
rbwisner@wisnerbaum.com
**WISNER BAUM, LLP**
11111 Santa Monica Blvd., Suite 1750
Los Angeles, CA 90025
Tel: 310-207-3233

*/s/ Aimee H. Wagstaff*
Aimee H. Wagstaff, SBN 278480
awagstaff@wagstafflawfirm.com

**WAGSTAFF LAW FIRM**
940 N. Lincoln Street
Denver, CO 80203
Tel: 303-376-6360
*Co-Lead Counsel for Plaintiffs*

13

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on October 21, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

*/s/ Aimee H. Wagstaff*