**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION | Case No. 24-MD-301-JSC |
| | MDL 3101 |
| | Hon. Jacqueline Scott Corley |
| This document relates to: | **JOINT STATEMENT PURSUANT TO PRETRIAL ORDER NO. 3** |
| ALL ACTIONS | Date:        November 5, 2025 |
| | Time:        9:00 a.m. PT |
| | Location:  Remote |

Pursuant to Pretrial Order No. 3 (ECF No. 148), the Parties submit this Joint Statement in preparation for the November 5, 2025 Case Management Conference.

**I.      Rule 702 / *Daubert* Hearings**

The parties wish to use the November 5, 2025 status conference to gain clarity on the procedure for the Rule 702 / *Daubert* hearings, set for December 8-12, 2025. Below, the Parties' proposals are all subject to the Court's preferences.

**A.      Proposed allocation of time**

The Parties agree that the hearings should begin with short opening statements by each side. Plaintiffs propose 30 minutes per side; Defendants propose 20 minutes per side. Plaintiffs anticipate calling four witnesses—Drs. Hannah Gardener (neurological epidemiology), Howard Hu (environmental and heavy metal epidemiology), Beate Ritz (environmental epidemiology and psychiatry), and Kevin Shapiro (pediatric neurology).  Plaintiffs "may" call Dr. Michael Aschner

(heavy metal toxicologist) as well.  The Parties believe the examination of these witnesses will be completed by December 10, 2025.

Defendants anticipate calling one witness—Dr. Mathew State (genetics and child psychiatry).  Defendants "may" call Drs. Eric Fombonne (child psychiatry and epidemiology), Elise Robinson (psychiatric epidemiology), and Stephan Sanders (pediatric neurogenetics), depending on the substance of the testimony from Plaintiffs' experts.  The Parties anticipate that they can complete the examination of Defendants' witnesses by the mid-day break of December 12, 2025.  The parties request the opportunity to present closing arguments on the afternoon of December 12, 2025.

The Parties agree that any changes to these lists must be made no later than November 7, 2025. The Parties also agree to provide the other side with a list of the order in which witnesses will be called no later than December 1, 2025.

**B.    Direct Examinations**

The parties have a disagreement about whether Plaintiffs should be permitted to conduct any direct examination.

**Plaintiffs' Position**: Plaintiffs would like to conduct short and targeted direct examinations to address the issues raised by Defendants in their Motions and soon-to-be-filed Replies.  In Defendants' moving papers, they make numerous arguments predicated on misleading and out-of-context sound bites, cherrypicked from the depositions.  And, there is a lot of material.  For example, Defendants have already taken the depositions of (or cross-examined in Court during the first general causation trial in state court) Drs. Ritz, Gardener, Aschner, and Shapiro five *or more* times *each*.  Defendants have been hammering these experts for almost five years.  These experts should be given an opportunity, on direct, to address the specific and false attempts to characterize their testimony before yet another cross-examination ensues.  After all, Plaintiffs, not Defendants, bear the burden of proving, by a preponderance of the evidence, that their experts' opinions comply with the four elements of Rule 702.  As such, Plaintiffs must be allowed to meet that burden and address the challenges made in the briefing in the first instance.

/ / /

Having now had a chance to review the Defendants' motions and respond to them, Plaintiffs anticipate needing between 30 and 45 minutes, depending on the witness, to conduct targeted direct examinations.  These examinations will focus on the issues raised in the briefing related to each expert, and give each expert a chance to respond to those specific challenges, and any questions from the Court, before Defendants retread the arguments they made in their briefs.

**Defendants' Position**: Defendants agree with the Court's inclination that for expert witnesses called at the Rule 702 hearings, the testimony should begin with cross-examination, followed by any re-direct examination and re-cross-examination for any new material first raised in the re-direct. The Court will have read the experts' detailed reports, which set forth the qualifications, methodology, affirmative opinions, and bases for the opinions that each expert offers—in other words, the exact subjects a direct examination would cover. Plaintiffs presumably prepared their reports with their burden of proof in mind and included all subjects necessary to meet that burden of proof in these reports. Given the number of experts expected to testify, there is no need for the Court and the parties to sit through direct examinations that largely will mirror what is already included in the Rule 26 disclosures. The party proffering each expert will have an opportunity to conduct a re-direct examination to clarify any testimony given on cross-examination and to raise any additional issues that the party deems relevant to the motions.

At the September 18, 2025 CMC, Plaintiffs confirmed that the Court's inclination to begin with cross-examination "made a lot of sense" but that they "might" want to conduct "like 5 or 10 minutes" of direct. Tr. at 4, 5. Plaintiffs now indicate that they wish to conduct a 30 to 45 minute direct—in other words, a full direct examination that undoubtedly will reiterate the same qualifications, opinions, and methods that are set forth in the expert reports. Defendants believe that such a presentation is both unnecessary and inefficient. In evaluating the pending motions, the Court will be better served getting immediately to cross-examination by the opposing party (and any questioning by the Court), which will highlight the most significant Rule 702 challenges that the Court will need to decide. As the Court noted, that process would "save[] a lot of time."

/ / /

/ / /

## II.    Short Form Complaint and Plaintiff Fact Sheet Deficiencies

Defendants request that the Court enter an order to show cause as to several of Plaintiffs' failures to file a Short Form Complaint and/or serve a Plaintiff Fact Sheet, as required by the Court's May 8, 2025 Order. Plaintiffs oppose this request.

**Defendants' Position**: On May 8, 2025, the Court entered an Order Re: Timing of Short Form Complaint Filing (ECF # 473) that required Plaintiffs in all cases pending in the MDL as of that date to (1) file a Short Form Complaint ("SFC") on or before July 7, 2025 and (2) serve a Plaintiff Fact Sheet ("PFS") on or before September 7, 2025. Plaintiffs requested an extension until September 7, 2025 for a select group of SFCs. On September 23, 2025, Defendants sent Plaintiffs' counsel letters identifying those cases in which no SFCs had been filed and/or no PFSs had been served. As of the date of this statement, the cases identified in the attached Appendix A remain delinquent as to one or both documents and Defendants ask the Court to enter an order to show cause why they should not be dismissed without prejudice for failing to comply with the Court's order. An OSC process is appropriate where, as here, these Plaintiffs have not complied with the Court's order. Resolving pleading issues before the December hearings will provide clarity as to which Plaintiffs are subject to the Court's orders on those motions. Resolving issues with PFSs will allow Defendants to protect against loss of third-party information during the pendency of these motions.

**Plaintiffs' Position**: This has been the subject of several meet and confers.  Many of the Plaintiffs on Appendix A are in the process of being voluntarily dismissed and others have become nonresponsive to counsel's outreach.  The specific details of each can involve potentially complicated and individual reasons, and those will need to be raised and adjudicated individually. At the appropriate time, Plaintiffs will likely not oppose the relief requested for certain Plaintiffs and oppose it for others, depending on the specific circumstances.  However, engaging in this time-consuming effort now, on the eve of *Daubert*, makes little sense.  The litigants are extremely busy getting ready for this important hearing and are in the middle of briefing still.  Spending considerable resources and time on addressing specific deficiencies, implicating dismissal, is not prudent.  Plaintiffs propose that the parties focus their time and resources on the upcoming

*Daubert* proceeding and that the Parties address this issue in early 2026—wherein, in all likelihood, many of these "deficiencies" will have been cured. Waiting to address SFC/PFS deficiencies until early 2026 (which is just 90 days) will allow the parties time to continue to cure deficiencies while also allowing the parties to focus on general causation. Defense will not suffer any prejudice by waiting 90-days to address this matter.

Furthermore, Plaintiffs do not believe an OSC process is appropriate here. Instead, Plaintiffs believe dismissals should ensure based on an actual motion from the Defendants—where they meet the elements, for a specific case, demonstrating that dismissal is appropriate. It is odd and, candidly, awkward, for dismissals to come, *sua sponte*, as an OSC from the Court. Indeed, typically in MDLs, Defendants file a motion and Plaintiffs, where able, oppose, followed by a ruling from the Court. This process can be streamlined, of course, and the Parties should meet and confer about a streamlined process that does not require that the Court to enter OSCs at the requet of Defendants.

### III.    Motion to Dismiss Ruling

Defendants seek the Court's guidance in applying the Court's Order Regarding Defendants' Motions to Dismiss entered on October 1, 2025.

**Defendants' Position**: The October 1, 2025 order dismissed all claims against certain Defendants (Nestle USA, Danone North America, Sun-Maid Growers of California, Nestle Enterprises S.A., and Societe des Produits Nestle S.A.) without leave to amend. On August 20, 2025, Plaintiffs dismissed the master complaint as to Danone Nutricia Nederland BV without prejudice. Dkt. 577. Individual Plaintiffs cannot sue any of these entities without first seeking leave to amend the Master Complaint. Notwithstanding, individual plaintiffs continue to name some of these entities in Short Form Complaints. The Short Form Complaint incorporates the allegations of the Master Complaint and therefore, must be amended to reflect the rulings of the Court on the Master Complaint.

Defendants request the Court's assistance in effecting the order dismissing these Defendants (Dkt. 622). For cases already in existence which name these Defendants, Defendants propose that the Court enter the order dismissing these Defendants on the individual dockets for

each case. Defendants can provide the Court with an index of all cases to which the order applies. To prevent the filing of future cases against these dismissed Defendants, Defendants request that Plaintiffs amend the Short Form Complaint to remove the dismissed Defendants. This will prevent Plaintiffs from improperly adding these dismissed Defendants by virtue of checking boxes in the Short Form Complaint. This relief does not, as Plaintiffs suggest, *a priori* prevent a future plaintiff from suing an entity who is not a Defendant in this action—but it does prevent future plaintiffs from using the Court's *Short Form Complaint process*, which was intended to streamline the litigation, to (inadvertently) add new Defendants to this action by virtue of checking a box.

**Plaintiffs' Position**:  Plaintiffs have a right to sue whomever they want—whether the Court dismisses those claims is another story.  Failing to name a Defendant in a pleading can constitute waiver of claims against that Defendant.  At some point, Plaintiffs may wish to challenge the Court's prior rulings dismissing certain Defendants on appeal, and there is no way to preserve that challenge unless a Plaintiff alleges such claims and the Court, over Plaintiff's objection, enters an order dismissing those claims—an order that would then be the subject of an appeal.  Preventing all Plaintiffs from being allowed to name a Defendant, *a priori*, is procedurally improper and likely constitutes a material deprivation of due process.  That said, Plaintiffs are *not* suggesting that the Court relitigate the same issues—that would make little sense and undermine the purpose of an MDL.  Instead, Plaintiffs propose that the Parties prepare stipulations and proposed orders dismissing those entities dismissed from the Master Complaint for specific plaintiffs' claims[1], and in those stipulations, preserve all arguments against that dismissal—including the past briefing and oral arguments—for appeal.  That accomplishes the important balance of treating each case individually and avoids the unorthodox approach of a Court preventing a Plaintiff from even naming an entity that they, in good faith, believe is jointly and severally liable.  Plaintiffs are masters of their own complaint; *a priori* orders substantively abrogating that authority runs afoul, unnecessarily, of basic due process.

---

[1] A single stipulation and proposed order could, with an attached appendix, apply to any number of cases in one fell swoop.  Plaintiffs anticipate these could be done periodically as cases are filed in the MDL.

IV.     **Guardian Ad Litem Appointments**

**Defendants' Position**:

(a) Defendants believe the plaintiffs listed in Appendix B may not have filed their guardian *ad litem* applications in compliance with the deadlines in the Court's Pretrial Order (PTO) No. 14, signed March 10, 2025. Defendants request that the Court enter an order to show cause why these plaintiffs' cases should not be dismissed if they have not filed their guardian *ad litem* applications by November 21, 2025.

(b) Additionally, under PTO No. 14, all new plaintiffs making their first appearance in this MDL after the entry of that PTO have 60 days after their appearance to file their guardian *ad litem* applications. In view of the general causation hearing in this MDL scheduled to begin on December 8, 2025, Defendants request that the Court issue an order requiring that *all* such plaintiffs, to the extent they have not already done so, file their applications for guardian *ad litem* appointments no later than December 1, 2025.

(c) Several adult plaintiffs have also filed cases in this MDL, at least some of whom claim they have "brain damage." Defendants request that the Court require counsel for these plaintiffs to file a written representation with the Court by December 1, 2025, that these plaintiffs are competent to proceed for themselves without the appointment of a guardian *ad litem*.

Resolving these issues prior to the Rule 702 motion hearings is important to prevent minor plaintiffs from claiming that orders on those motions do not apply to them because their case was brought by a proper party under Rule 17(c).

**Plaintiffs' Position**:

(a) For the same reasons explained above related to purportedly deficient SFC and/or fact sheets, the Court should put this issue off until January 2026, letting Plaintiffs' counsel focus on the general causation—a potentially dispositive issue.  There is no prejudice to delaying this until then and, as demonstrated by recent filings, many of these issues are resolving themselves as Parents work through the specific issue holding up their GAL applications, e.g., one client recently lost custody of her child in a divorce.  Getting into the weeds on these issues, now, on the doorstep of *Daubert*, doesn't make much sense.

    (b) There is no valid reason to modify PTO No. 14, which provides that all new plaintiffs making their first appearance in this MDL 60 days to file their guardian *ad litem* applications. Plaintiffs have been diligently complying with this PTO and have been submitting guardian *ad litem* applications through bundled *ex parte* applications submitted by Plaintiff's liaison counsel. Defendants proposed procedure does not account for any new plaintiffs whose cases might be transferred to this Court *after* Defendants' proposed December 1, 2025 deadline.  PTO No. 14 should remain operative throughout the duration of this MDL.

    (c) If an adult plaintiff's injury renders them so impaired that they lack capacity to sue, then counsel for that plaintiff will file an application for appointment of guardian *ad litem*, pursuant to Fed. R. Civ. Proc. 17.  If there is no application for appointment of a guardian *ad litem* filed on behalf of an adult plaintiff, and this Court has no reason to believe that the adult plaintiff is incompetent or lacks capacity to sue, then that plaintiff may proceed without appointment of a guardian *ad litem*, and should not be required to submit any written representation to the Court verifying this.  Fed. R. Civ. Proc. 17 imposes no such obligation on litigants, even if the injury alleged is a brain injury or neurodevelopmental injury.

                                        Respectfully submitted,

Dated: November 3, 2025          **DLA PIPER LLP (US)**

                                  By: */s/ Brooke Killian Kim*
                                  Brooke Killian Kim (SBN: 239298)
                                  4365 Executive Drive, Suite 1100
                                  San Diego, CA 92121
                                  Telephone: (619) 699-3439
                                  E-mail: brooke.kim@dlapiper.com

                                  *Liaison Counsel for Defendants*

Dated: November 3, 2025          **WAGSTAFF LAW FIRM**

                                  By: */s/ Aimee H. Wagstaff*
                                  Aimee H. Wagstaff (SBN: 278480)
                                  940 N. Lincoln Street
                                  Denver, CO 80203
                                  Telephone: 303-376-6360
                                  E-mail: awagstaff@wagstafflawfirm.com

1    Dated: November 3, 2025                    **WISNER BAUM LLP**

2

3                                              By: */s/ Brent Wisner*
                                              Brent Wisner (SBN: 276023)
                                              11111 Santa Monica Blvd., Suite 1750
4                                              Los Angeles, CA 90025
                                              Telephone: (310) 207-3233
5                                              E-mail: rbwisner@wisnerbaum.com

6                                              *Co-Lead Counsel and Liaison Counsel for Plaintiffs*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTESTATION OF CONCURRENCE IN FILING**

In accordance with Northern District of California Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the signatories who are listed on the signature page.

                                            */s/ Brooke Killian Kim*
                                            Brooke Killian Kim

**APPENDIX A**

| Plaintiff | Docket No. | Plaintiff's Counsel | No SFC Filed | No PFS Served |
|---|---|---|---|---|
| A.M. | 3:25-cv-03288 | Wagstaff Law Firm | | X |
| C.C. | 3:25-cv-03003 | Wisner Baum | | X |
| C.P. | 3:25-cv-03823 | Wagstaff | | X |
| H.L. Lucas, Charles | 3:24-cv-02486 | Wisner Baum | | X |
| L.C.N. | 3:24-cv-02485 | Wisner Baum | X | X |
| L.P. | 3:25-cv-03824 | Wagstaff | | X |
| L.W. | 3:25-cv-03243 | Wisner Baum | X | X |
| M.D. | 3:25-cv-03471 | Wisner Baum | X | X |
| M.H. | 3:25-cv-04612 | Wisner Baum | | X |
| R.F. | 3:25-cv-03825 | Wagstaff | | X |

1

2

**APPENDIX B**
**No application for guardian ad litem located**

3

4

| Plaintiff | Guardian or representative alleged in complaint | Docket # |
|---|---|---|
| G.R. | Traylor | 3:24-cv-07484 |
| I.F. | Fortune-Brown | 3:24-cv-09126 |
| A.V.M. | Morejon | 3:25-cv-01082 |
| L.W. | Wallace | 3:25-cv-03243 |
| A.M. | Menyfield | 3:25-cv-03288 |
| M.D. | Libardi | 3:25-cv-03471 |
| C.P. | Oakley | 3:25-cv-03823 |
| L.P. | Oakley | 3:25-cv-03824 |
| R.F. | Ferreira | 3:25-cv-03825 |
| V.C. | Coccia | 3:25-cv-07120 |
| C.S. | Rodriguez | 3:25-cv-07299 |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28