UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS | Case No. 24-md-03101-JSC<br><br>**ORDER RE: NESTLE USA, INC.'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 513 |

During oral argument on Nestlé USA's motion to dismiss for lack of personal jurisdiction and failure to state a claim, the Court requested supplemental briefing from the parties regarding the application of Georgia products liability law. (*See* Dkt. No. 625 at 17-18.[1]) Supplemental briefing was completed on October 9, 2025. (Dkt. No. 631.)

Having considered the parties' submissions, including the supplemental briefing, the Court determines the motion is suitable for disposition without further oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L. R. 7-1(b). For the reasons discussed below, the Court **GRANTS** Nestlé USA's motion to dismiss claims by Georgia Plaintiffs under Federal Rule of Civil Procedure 12(b)(6).

**DISCUSSION**

Nestlé USA originally moved to dismiss the Amended Master Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(6) for failure to state a claim. (Dkt. No. 513.) In its supplemental brief, Nestlé USA additionally argues Plaintiffs have failed to plausibly allege Article III standing. (Dkt. No. 609.) Since subject-matter jurisdiction is not waivable, the Court first considers the belated argument as to whether the

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Amended Master Complaint plausibly alleges standing. Then, the Court addresses the parties' arguments regarding the sufficiency of the allegations as to the products liability and negligence claims. Last, the Court turns to Plaintiffs' additional arguments related to personal jurisdiction over Nestlé USA, the subject of the Court's October 29, 2025 Order. (*See* Dkt. No. 644.)

I. **SUBJECT-MATTER JURISDICTION**

"Article III of the United States Constitution limits federal courts 'to deciding cases and controversies,' which requires the plaintiff to have standing to bring suit." *In re Baby Food Prods. Liab. Litig.*, No. 24-MD-03101-JSC, 2025 WL 986959, at *2 (N.D. Cal. Apr. 2, 2025) (citing *Bova v. City of Medford*, 564 F.3d 1093, 1095 (9th Cir. 2009)). Accordingly, a plaintiff bears the burden of plausibly alleging three elements of standing:

> (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

A motion to dismiss under Rule 12(b)(1) "may assert a factual or facial challenge to jurisdiction." *Borowsky v. Hamilton Beach Brands, Inc.*, 788 F. Supp. 3d 1092, 1095 (N.D. Cal. 2025). "A factual challenge 'disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction,' while a facial challenge argues 'the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.'" *Id.* (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "To resolve a factual challenge, the court may review evidence beyond the complaint and need not presume the truthfulness of the plaintiff's allegations. The court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Id.* (internal quotations omitted). Here, Nestlé USA raises a factual challenge to Plaintiffs' jurisdictional allegations, relying on the declarations of Douglas J. Keaton filed in connection with Nestlé USA's original motion to dismiss the Amended Master Complaint for lack of personal jurisdiction. (*See* Dkt. Nos. 513-1, 573-1.)

The thrust of Nestlé USA's argument is Plaintiffs have failed to plead their alleged injury

1    is "fairly traceable" to Nestlé USA's conduct.  In resolving the first round of motions to dismiss

2    brought by Parent Entity Defendants, the Court addressed and rejected this argument.  *See In re*

3    *Baby Food Prods. Liab. Litig.*, 2025 WL 986959, at *2.  "When questions of subject-matter

4    jurisdiction are entwined with questions of fact going to the merits of the case, the court must

5    defer the jurisdictional question until a ruling on the merits." *Id*. (citing *Safe Air for Everyone*,

6    373 F.3d at 1039).  Such is the case here, as Nestlé USA argues it has not "directed, controlled

7    decided, or had responsibility for Gerber's baby food products or alleged heavy metals in those

8    products"—the same basis on which it challenges Plaintiffs' allegations under Rule 12(b)(6).

9    So, the Court considers Nestlé USA's argument not as a challenge to standing but as a

10   challenge to the sufficiency of the pleadings under Rule 12(b)(6).  Therefore, to the extent Nestlé

11   USA relies on subject-matter jurisdiction as a basis for dismissal, the motion is **DENIED**.  As for

12   the sufficiency of the pleadings, the Court addresses those arguments below.

## II.   RULE 12(b)(6) MOTION

In adjudicating a 12(b)(6) motion, "the district court must assume the plaintiffs' allegations are true and draw all reasonable inferences in their favor.  That said, the Court need not construe as true conclusory statements or unreasonable inferences." *In re Baby Food Prods. Liab. Litig.*, 2025 WL 986959, at *11 (citation omitted).  Plaintiffs advance strict products liability and negligence claims against Nestlé USA under Georgia law.  Nestlé USA argues Plaintiffs have failed to plausibly allege Nestlé USA falls within the definition of a "manufacturer" subject to Georgia products liability law, and thus cannot state a claim.

Section 51–1–11(b)(1) of the Official Code of Georgia Annotated creates liability for manufacturers of products that cause injury to consumers:

> The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

O.C.G.A. § 51–1–11(b)(1).  Georgia courts interpreting the statutory language have articulated

three scenarios in which an entity can be considered a "manufacturer" for purposes of products liability:

>    (a) an actual manufacturer or designer of the product; or
>    (b) a manufacturer of a component part which failed and caused the plaintiff injury; or
>    (c) an assembler of component parts who then sells the item as a single product under its own trade name.

*Morgan v. Mar-Bel, Inc.*, 614 F. Supp. 438, 440 (N.D. Ga. 1985). Section 51–1–11 has been construed narrowly, and "applies only to those actively involved in the design, specifications, or formulation of a defective final product or of a defective component part which failed during use of a product and caused injury." *Davenport v. Cummins Alabama, Inc.*, 284 Ga. App. 666, 671 (2007).

Plaintiffs rely on three allegations to establish Nestlé USA constitutes a "manufacturer" under Georgia law. First, they allege Nestlé USA tested Gerber baby food for the presence of heavy metals at the Nestlé Quality Assurance Center ("NQAC") in Solon, Ohio. (Dkt. No. 450-3 ¶ 19.) Second, they allege Nestlé USA's Procurement Business Partner Manager, Frances Reno, sent messages to Gerber employees about procuring rice for baby food products. (*Id.*) These emails discussed:

>  . . . arsenic risk levels and the importance of ensuring supplier quality, observed that Procurement was responsible for requesting testing data from rice suppliers and for determining which materials to sample from a particular supplier, stated that new rice or a new supplier was needed due to failed arsenic test results, and made recommendations about changes in rice supply due to these failed results.

(*Id.*) Reno further stated: "We need to provide the business with the understanding that we're building a new market for lower arsenic levels and there could still be risks." (*Id.*) Third, Plaintiffs allege Nestlé USA was "involved in consumer messaging regarding the safety" of Gerber baby food products. (*Id.*) Plaintiffs ultimately argue these allegations show Nestlé USA played an active role in the "design" or "specification" of Gerber's products. (Dkt. No. 626 at 8-9.) Though these allegations permit an inference of *some* involvement in ingredient procurement, they fall short of plausibly alleging *active* involvement "in the design, specifications, or

4

formulation of a defective final product" required to establish manufacturer liability. *Davenport*, 284 Ga. App. at 671.

Section 51–1–11(b) "is in derogation of common law," and so "it must be strictly construed to apply to actual manufacturers or designers only." *Boyce v. Gregory Poole Equip. Co.*, 269 Ga. App. 891, 894 (2004). Given this narrow construction, courts have excluded entities without significant involvement in product design from the definition of "manufacturer." *See, e.g.*, *Bailey v. B. Braun Med., Inc.*, No. 1:16-CV-1544-LMM, 2021 WL 5038738, at *4 (N.D. Ga. Sept. 10, 2021) (an entity that provided design input on valves for a biomedical device was not considered a "manufacturer" under Georgia law); *Davenport*, 284 Ga. App. at 672 (input on the placement of a hydraulic pump on a wood chipper was not sufficient to consider an entity a "manufacturer" of the product). For instance, in *Boyce v. Gregory Poole Equip. Co.*, an employee of the defendant had served on the advisory board for the design team of a standup forklift produced by another company. 269 Ga. App. at 892. The employee provided input on design elements that were ultimately adopted into the final product. *Id*. Affirming summary judgment in favor of the defendant, the Court of Appeals of Georgia held this level of contribution to a product's design was outside the scope of Section 51–1–11(b). *Id*. at 894. The court emphasized the narrow construction of the statute precluded liability where the entity was not the actual designer. *Id*.

Here, Nestlé USA's alleged involvement in the manufacture of Gerber baby food mirrors the defendants in *Bailey*, *Davenport*, and *Boyce*. To start, Plaintiffs allege Nestlé USA's testing of Gerber baby food at the NQAC constitutes active involvement in the design and specification of the product. (Dkt. No. 450-3 ¶ 19.) But product or safety testing do not render an entity a "manufacturer" under Georgia law. *See, e.g., Williams v. Pac. Cycle, Inc.*, 661 F. App'x 716, 720 (11th Cir. 2016) ("Georgia courts have held that the presence of a testing program is not sufficient to bring a company within the definition of a manufacturer under Georgia law."); *Morgan*, 614 F. Supp. at 440 (defendant that inspected and tested the product while it was being assembled and "offered suggestions for improvement" was not a "manufacturer" under Georgia law).

As for Nestlé USA's role in procuring rice for Gerber products, Plaintiffs do not allege

Nestlé USA set or enforced the heavy metal limits or dictated Gerber's actions. Rather, Plaintiffs allege a Nestlé USA employee offered input about arsenic levels in certain suppliers' rice and offered "recommendations about changes in rice supply." (Dkt. No. 450-3 ¶ 19.) Drawing inferences in Plaintiffs' favor, these alleged contributions do not exceed the level of design involvement in cases like *Boyce*, which was insufficient to fall within the statutory definition of "manufacturer." Indeed, Georgia courts have rejected more expansive readings of Section 51–1–11, which would have extended liability to entities that "prescribe[] and control[] the specifications and quality standards of an item constructed by another . . . ." *Morgan*, 614 F. Supp. at 441.

And lastly, Plaintiffs' allegations regarding Nestlé USA's role in marketing or communications do not alter the Court's analysis. Section 51–1–11.1(b) excludes from liability a "product seller." The Section then defines the term to include any entity that merely "leases or sells and distributes; installs; prepares; blends; packages; labels; [or] markets" a product. O.C.G.A. § 51–1–11.1(a); *see also In re Stand 'N Seal, Prods. Liab. Litig.*, No. 1:07MD1804-TWT, 2009 WL 2145911, at *3 (N.D. Ga. July 15, 2009) ("The statutory exception to strict liability for mere sellers explicitly applies to those who package, label, or market the product."). Consequently, allegations regarding marketing or labeling do not permit a plausible inference Nestlé USA acted as a "manufacturer" under Georgia law.

To counter, Plaintiffs argue the three allegations against Nestlé USA permit a reasonable inference of control over the design process. (Dkt. No 626 at 9.) They do not. All the allegations show are Nestlé USA's testing of Gerber baby food and that a Nestlé USA employee engaged in certain discussions recommending changes to rice procurement. (Dkt. No. 450-3 ¶ 19.) No allegation goes to Nestlé USA's control of the manufacturing process or any enforceable mandate regarding heavy metal limits. Further, the only case Plaintiffs cite as analogous fails to support their argument. In *Buchan v. Lawrence Metal Prods., Inc.*, 270 Ga. App. 517 (2004), the court held there was a triable issue of fact as to whether the defendant was a "manufacturer" as opposed to a "product seller." There, the defendant had constructed half of the component parts of the final product and assembled the product. *Id*. at 521. Importantly, the plaintiff had alleged the product

6

defect included the component part manufactured by the defendant. *Id*. These facts are clearly distinguishable from the allegations against Nestlé USA. Plaintiffs do not allege Nestlé USA made the Gerber baby food or any part of it. Instead, they allege Nestlé USA was involved in sourcing rice for some of the products, and also tested those products for the presence of heavy metals. (Dkt. No. 450-3 ¶ 19.) Recommendations about ingredient sourcing do not constitute the same level involvement as physically manufacturing a component part of a defective product. Moreover, Nestlé USA's testing of the baby food is not the basis of Plaintiffs' injury—they allege the *corporate decisions* that permitted sale of the food even when test results showed high levels of heavy metals are to blame. (Dkt. No. 450-3 ¶¶ 84-90.) Ultimately, *Buchan* illustrates the gap between actionable claims against a manufacturer and the alleged conduct of Nestlé USA.

Therefore, the Court **GRANTS** the motion to dismiss the Georgia Plaintiffs' claims against Nestlé USA.

### III. PERSONAL JURISDICTION

During the September 18, 2025 hearing, the Court permitted Plaintiffs to submit supplemental briefing on whether they have made a *prima facie* showing of personal jurisdiction over Nestlé USA. (Dkt. No. 625 at 18-19.) Following the hearing, the Court decided to nonetheless issue a ruling on the personal jurisdiction issue in its October 29, 2025 Order. (*See* Dkt. No. 644.) The Court now considers the arguments advanced in the supplemental briefing as a motion for reconsideration of the order granting Nestlé USA's motion to dismiss for lack of personal jurisdiction. Having reviewed Plaintiffs' additional authority, the Court is not persuaded to amend its ruling.

Plaintiffs rely almost exclusively on *Briskin v. Shopify, Inc.*, 135 F.4th 739, 757 (9th Cir. 2025) (en banc), to argue the Ninth Circuit does not require express aiming when a defendant services a national market. (Dkt. No. 626 at 13-14.) The Court disagrees with Plaintiffs' interpretation of *Briskin*. There, the Ninth Circuit held the "express aiming" prong of the specific personal jurisdiction analysis does not require "differential targeting," meaning a plaintiff need not show the defendant had a "forum-specific focus" to their conduct. *Id*. But the court did not do away with the express aiming requirement. Indeed, the online platform, Shopify, had contacts

with the forum state (California) because it allegedly installed software onto user devices and mined their personal information. *Id*. at 756, 760. Further, the privacy claims advanced by the plaintiffs arose out of those contacts. *Id*. at 760. *Briskin* merely stands for the proposition that a defendant's contacts with the forum need not differ from its contacts with other fora to satisfy the "express aiming" prong.

Plaintiffs here have failed to allege any conduct by Nestlé USA expressly aimed at the relevant fora, aside from Wendy Johnson's role in the 2020 Food & Nutrition Conference & Expo in Indiana. (Dkt. No. 644 at 6-7.) As described in the Court's October 29, 2025 Order, the Indiana Expo has no relation to Plaintiffs' claims. (*Id*.) Additionally, the Nestlé USA emails about rice procurement did not indicate any contact with a forum, or individualized targeting of consumers in a state, falling far short of the express aiming requirement. (*Id*.) Ultimately, *Briskin* confronted a different fact pattern and different evidence, which do not alter the analysis here.

For these reasons, as well as the reasons discussed in the Court's October 29, 2025 Order, Plaintiffs have not made a *prima facie* showing of specific personal jurisdiction over Nestlé USA.

## IV.    LEAVE TO AMEND

Plaintiffs' theory of liability against Nestlé USA is that it actively participated in the design and specification of Gerber baby food by testing the products for heavy metals and sourcing certain ingredients for at least the baby food containing rice. These activities, they argue, fall within the definition of "manufacturer" under Georgia products liability law. Both parties rely upon cases interpreting the relevant Georgia statutory provisions at the motion for summary judgment stage—a different posture from the instant case. However, those cases clearly hold that, as a matter of law, the product testing and involvement in procurement alleged here do not rise to the level of an "actual" manufacturer or designer, as required to establish liability under Georgia law. *See Boyce*, 269 Ga. App. at 894. Further, Plaintiffs have not alleged activity by Nestlé USA that falls outside the consideration of the cases cited above. Having considered Plaintiffs' Amended Master Complaint, the September 18 oral argument on Nestlé USA's motion, and the parties' supplemental briefing, the Court determines Plaintiffs' theory of liability falls outside the scope of Georgia products liability law. Plaintiffs have not indicated any other theory of liability

to advance against Nestlé USA, and so further amendment would be futile. Accordingly, the Court **GRANTS** Nestlé USA's motion to dismiss the claims of the Georgia Plaintiffs without leave to amend. The Georgia Plaintiffs may continue with their claims against the manufacturers of the challenged baby food products.

## CONCLUSION

For these reasons, Nestlé USA's Rule 12(b)(6) motion to dismiss claims brought by Georgia Plaintiffs is **GRANTED**, without leave to amend.

This Order disposes of Docket No. 513.

**IT IS SO ORDERED.**

Dated: November 5, 2025

*Jacqueline Scott Corley*
JACQUELINE SCOTT CORLEY
United States District Judge