Livia M. Kiser (CA Bar No. 285411)
Michael Anthony Lombardo (CA Bar No. 311365)
**KING & SPALDING LLP**
110 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Telephone: (312) 764-6911
Facsimile: (312) 995-6330
E-mail: lkiser@kslaw.com
E-mail: mlombardo@kslaw.com

Todd P. Davis (*pro hac vice*)
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
E-mail: tdavis@kslaw.com

*Attorneys for Defendants Beech-Nut Nutrition Company
and Walmart Inc.*

(Additional counsel on signature page)

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION<br><br><br>This Document Relates to:<br>ALL ACTIONS | Case No. 3:24-md-3101-JSC<br><br>MDL 3101<br><br>Hon. Jacqueline Scott Corley<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>Date: July 9, 2026<br>Time: 2:30 p.m.<br>Location: Courtroom 8<br>　　　19th Floor 450 Golden Gate Ave.<br>　　　San Francisco, CA 94102 |

DEFENDANTS' NOTICE OF MOTION AND                    CASE NO. 3:24-MD-3101-JSC
MOTION FOR SUMMARY JUDGMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 9, 2026, at 2:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Jacqueline Scott Corley in the United States Courthouse, Courtroom 8, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Beech-Nut Nutrition Company, Gerber Products Company, The Hain Celestial Group, Inc., Nurture, LLC, Plum, PBC, Sprout Foods, Inc., The Campbell's Company, Walmart Inc., Amazon.com Services LLC, and Whole Foods Market Services, Inc. (collectively, "Defendants") will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 56 for an Order granting summary judgment to Defendants as to all claims in this MDL in all cases listed in Exhibit 2 to the Declaration of Livia Kiser.

This motion is based upon the pleadings and papers on file in this action, this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the Declaration of Livia M. Kiser submitted in support hereof.

Dated:  May 1, 2026                           KING & SPALDING LLP


                                              By: */s/ Livia M. Kiser*
                                              Livia M. Kiser
                                              Michael Anthony Lombardo
                                              Todd P. Davis (*pro hac vice*)
                                              *Attorneys for Defendants Beech-Nut Nutrition Company and Walmart Inc.*

Dated:  May 1, 2026                            WHITE & CASE LLP


                                               By:  */s/ Bryan A. Merryman*
                                               Bryan A. Merryman


                                               WILLIAMS & CONNOLLY LLP

                                               By:  */s/ Joseph G. Petrosinelli*
                                               Neelum J. Wadhwani
                                               Joseph G. Petrosinelli (*pro hac vice*)

                                               *Attorneys for Defendant Gerber Products Company*

Dated:  May 1, 2026                           DLA PIPER LLP (US)

                                              By: */s/ Brooke Killian Kim*
                                              Brooke Killian Kim

1

Mary Gately (*pro hac vice*)
Loren H. Brown (*pro hac vice*)

*Attorneys for Defendant Nurture, LLC*

Dated:  May 1, 2026                    COVINGTON & BURLING LLP

By: /s/ *Michael X. Imbroscio*
Michael X. Imbroscio (*pro hac vice*)
Phyllis A. Jones (*pro hac vice*)
David N. Sneed (*pro hac vice*)
Elizabeth T. Fouhey (*pro hac vice*)

*Attorneys for Defendant The Hain Celestial Group, Inc.*

Dated:  May 1, 2026                    GORDON REES SCULLY MANSUKHANI, LLP

By: /s/ *Michael R. Klatt*
Michael R. Klatt (*pro hac vice*)
Nancy Mae Erfle (*pro hac vice*)

*Attorneys for Defendant Sprout Foods, Inc.*

Dated:  May 1, 2026                    DECHERT LLP

By: /s/ *Hope Freiwald*
Hope S. Freiwald (*pro hac vice*)
Michelle H. Yeary (*pro hac vice*)
*Attorneys for Defendant Plum, PBC*

Dated:  May 1, 2026                    COZEN O'CONNOR

By*: /s/ Peter M. Ryan*
Peter M. Ryan (*pro hac vice*)
Brett Nicole Taylor

*Attorneys for The Campbell's Company
(f/k/a Campbell Soup Company)*

Dated:  May 1, 2026                    DAVIS WRIGHT TREMAINE LLP

By*: /s/ Ashley L. Vulin*
Ashley L. Vulin (*pro hac vice*)
P. Andrew McStay, Jr. (*pro hac vice*)

2

DEFENDANTS' NOTICE OF MOTION AND                    CASE NO. 3:24-MD-3101-JSC
MOTION

*Attorneys for Amazon.com Services LLC*

Dated:   May 1, 2026                          BAKER DONELSON

By: */s/ Brian M. Ballay* (*pro hac vice*)
N. Kordell Caldwell (*pro hac vice)*

*Attorneys for Whole Foods Market Services, Inc.*

3

## TABLE OF CONTENTS

I.      INTRODUCTION................................................................................................................1

II.     BACKGROUND..................................................................................................................2

III.    LEGAL STANDARD ..........................................................................................................4

IV.    ARGUMENT ......................................................................................................................4

      A.      Plaintiffs' Failure to Provide Admissible Expert Testimony on General Causation Compels Entry of Summary Judgment. ..................................................4

      B.      Plaintiffs' Argument that No Plaintiff Is Subject to Summary Judgment Lacks Merit. ...................................................................................................................6

      C.      Pursuant to Its Past Orders, the Court Should Grant Summary Judgment to Defendants on All Cases Filed on or Before November 21, 2025.........................11

V.     CONCLUSION ..................................................................................................................12

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

CASE NO. 3:24-MD-3101-JSC

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*,
   524 F. Supp. 2d 1166 (N.D. Cal. 2007) ...................................................................................... 7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................................. 4

*In re Deepwater Horizon BELO Cases*,
   119 F.4th 937 (11th Cir. 2024)................................................................................................. 8

*In re Hanford Nuclear Rsrv. Litig.*,
   292 F.3d 1124 (9th Cir. 2002).........................................................................................*passim*

*Hardeman v. Monsanto Co.*,
   997 F.3d 941 (9th Cir. 2021).............................................................................................. 5, 8

*Kennedy v. S. Cal. Edison Co.*,
   268 F.3d 763 (9th Cir. 2001).............................................................................................. 1, 5

*In re Lipitor (Atorvastatin Calcium) Mktg, Sales Pracs. & Prods. Liab. Litig*,
   227 F. Supp. 3d 452 (D.S.C. 2017), *aff'd*, 892 F.3d 624 (4th Cir. 2018) ................................. 6

*Lust By & Through Lust v. Merrell Dow Pharms., Inc.*,
   89 F.3d 594 (9th Cir. 1996)..................................................................................................... 5

*In Re Mirena IUD Prods. Liab. Litig.*,
   202 F. Supp. 3d 304 (S.D.N.Y. 2016), *aff'd*, 713 F. App'x 11 (2d Cir. 2017) ......................... 6

*Mitchell v. Gencorp Inc.*,
   165 F.3d 778 (10th Cir. 1999)................................................................................................. 8

*Newkirk v. ConAgra Foods, Inc.*,
   727 F. Supp. 2d 1006 (E.D. Wash. 2010) ........................................................................... 7, 8

*Norris v. Baxter Healthcare Corp.*,
   397 F.3d 878 (10th Cir. 2005)................................................................................................. 5

*In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prods. Liab. Litig.*,
   424 F. Supp. 3d 781 (N.D. Cal. 2020) .................................................................................... 5

*Wells v. Smithkline Beecham Corp.*,
   601 F.3d 375 (5th Cir. 2010).................................................................................................. 5

*Wright v. Willamette Indus. Inc.*,
   91 F.3d 1105 (8th Cir. 1996)................................................................................................... 8

ii

*In re: Zantac (Ranitidine) Litig.*,
2026 WL 1009008 (Del. Super. Ct. Apr. 14, 2026) ........................................................... 1, 6, 7

*In re Zoloft (Sertralinehydrochloride) Prods. Liab. Litig.*,
176 F. Supp. 3d 483 (E.D. Pa. 2016), *aff'd*, 858 F.3d 787 (3d Cir. 2017) ................................ 6

**Other Authorities**

Fed. R. Civ. P. 56 ........................................................................................................................... 1, 4

Rule 702 ..........................................................................................................................*passim*

## I.    INTRODUCTION

As the Court recognized early in this MDL, a threshold legal question underlying all of Plaintiffs' claims is general causation: whether a child's consumption of each Defendant's baby food products is capable of causing autism spectrum disorder ("ASD" or "autism") and/or Attention-Deficit/Hyperactivity Disorder ("ADHD").  General causation is an essential element of all claims consolidated in this MDL, and admissible expert testimony is required to establish it.  *In re Hanford Nuclear Rsrv. Litig.*, 292 F.3d 1124, 1133 (9th Cir. 2002); *Kennedy v. S. Cal. Edison Co.*, 268 F.3d 763, 768 (9th Cir. 2001).  The Court therefore structured the MDL to address that question first, requiring Plaintiffs to provide expert opinions purporting to establish general causation.  The Court's February 27, 2026 Order finding that all of Plaintiffs' general causation experts' opinions are unreliable and inadmissible under Rule 702 means that Defendants are entitled to summary judgment.  (*See* Dkt. No. 710, Rule 702 Order.)

As to which Plaintiffs and claims are subject to the Court's summary judgment order, in April 2025, the Court gave express notice before expert discovery on general causation began that all Plaintiffs who filed cases in the MDL on or before November 21, 2025, would be bound by the Court's rulings on the Rule 702 motions.  (Dkt. No. 448 at 48:12-50:4, Mar. 27, 2025 Status Conf. Hr'g Tr.; Dkt. No. 466 at 23:20-24:20, 27:1-28:13, Apr. 24, 2025 Status Conf. Hr'g Tr; Dkt. No. 467, Pretrial Order No. 16.); *see also In re: Zantac (Ranitidine) Litig.*, 2026 WL 1009008, at *4, 7 (Del. Super. Ct. Apr. 14, 2026) (rejecting the argument, in litigation involving the same Plaintiffs' counsel, that the Rule 702 ruling excluding plaintiffs' general causation experts did not apply to all 75,000 plaintiffs, explaining that "[t]he record is clear that both the parties and this Court understood that any rulings on general causation would apply docket-wide").  Plaintiffs' leadership counsel consented to this process, and no Plaintiff objected to it.  For the cases filed or transferred after that date, Defendants ask the Court to establish an Order to Show Cause process requiring any Plaintiffs who wish to avoid summary judgment to explain how they can do so in light of the Court's Rule 702 order.  This process is consistent with how other MDL courts have managed similar situations. The parties have agreed to address whether and how such a process should be established after the Court rules on summary judgment.

1

DEFENDANTS' NOTICE OF MOTION AND MOTION

CASE NO. 3:24-MD-3101-JSC

For these reasons and those set out below, Defendants request that the Court enter summary judgment for Defendants as to all claims in this MDL in all cases listed in Exhibit 2 to the Declaration of Livia Kiser.

## II.    BACKGROUND

On April 11, 2024, the Judicial Panel on Multidistrict Litigation created the *In re Baby Food* MDL and assigned it to this Court for pretrial coordination. (Dkt. No. 1.)  The MDL centralizes all federal cases alleging that lead, arsenic, cadmium, and/or mercury in Defendants' baby food products were a cause of Plaintiffs' ASD and/or ADHD.[1]  (*Id*.)  More than 400 cases are now part of the MDL.

Consistent with its charge, and as is typical in virtually all MDLs, one of the Court's initial Orders appointed leadership counsel for all MDL Plaintiffs.  (*See* Dkt. No. 147.)  Leadership counsel's responsibilities include the duties to "determine … and present to the Court and opposing parties the position of the Plaintiffs on all matters arising during pretrial proceedings," "coordinate the scheduling and conduct of discovery on behalf of Plaintiffs," and "suggest … the ordering, priority, and response to pending and anticipated motions." (*Id*. at 1-2.)  Because of the relatively small number of law firms that brought federal baby food cases, every firm serving as lead counsel on a filed federal case at the time these appointments were made was given some leadership position. (*Id*. at 1.)  No Plaintiff has ever objected to the Court's appointment Order or sought to withdraw from leadership.

The Court also recognized early on that Plaintiffs' ability to meet their general causation burden with admissible expert testimony presented a threshold, cross-cutting issue which impacted the litigation.  As a result, the Court implemented a phased approach to discovery and motions practice.  Under this process, the parties would first address whether consumption of each Defendant's baby food products is capable of causing ASD or ADHD because of the levels of lead,

---

[1] Several Plaintiffs in this MDL have also pleaded claims related to infant formula.  Because the Court has held that those infant formula claims are not part of the MDL, (*see* Dkt. No. 440, Pretrial Order No. 15 (granting motion to strike infant-formula allegations and confirming they are not part of the MDL)), this summary judgment motion does not address those claims.  After the Court rules on this motion, Defendants propose to meet and confer with Plaintiffs about how to address infant formula claims.

2

arsenic, cadmium, and mercury those products may have contained. (Dkt. Nos. 148 at ¶ 7, 188 at ¶ 3; *see also* Dkt. No. 710 at 12, 13.)

As the case was about to move into expert discovery on general causation, Plaintiffs' leadership counsel advised the Court that their firms and others had clients who intended to assert claims but had not yet filed complaints in the MDL. In response, the Court notified the parties that it would set a deadline for Plaintiffs to join the MDL, explaining that "because we're doing general causation" there needed to be a deadline so that Plaintiffs would be "bound one way or the other." (Dkt. No. 448 at 48:9-12.) Plaintiffs' leadership counsel acknowledged that if Defendants prevailed on motions challenging Plaintiffs' general causation experts, the ruling would apply "to the people who had filed in the MDL." (*Id.* at 49:25-50:5.) The Court set the deadline as November 21, 2025, two weeks before the date for the hearings on Rule 702 motions. (Dkt. No. 466 at 27:1-3; Dkt. No. 467 at 1.) No Plaintiff objected to that Order or deadline.

Thereafter, in accordance with the established case management schedule, Plaintiffs identified eight experts to support their claim of general causation: a dietician and an exposure scientist, three epidemiologists, two toxicologists, and a pediatric neurologist. (Dkt. No. 710 at 38-39.) Only five of those experts (the epidemiologists and toxicologists) offered a causation opinion, and they limited their opinions to lead and arsenic. None of Plaintiffs' experts offered any opinions about cadmium or mercury exposure through Defendants' baby foods. At the outset of the Rule 702 hearing, Plaintiffs confirmed that they were abandoning these claims, recognizing that would result in entry of a summary judgment order as to those metals. (Dkt. No. 710 fn. 1 (highlighting that Plaintiffs' lead counsel noted "that his clients were dismissing their claims as to those metals with prejudice."); Dkt. No. 697 at 5:11-13 (Court: "Summary judgment would be granted [as to claims related to cadmium and mercury] because there's no expert testimony." Plaintiffs' lead counsel: "Precisely.").)

On February 27, 2026, following a multi-day hearing that included live testimony from four of Plaintiffs' experts opining on lead and arsenic exposure, the Court issued a 43-page opinion granting Defendants' Rule 702 motions as to all five of Plaintiffs' experts who offered a general

3

causation opinion and the two experts who offered exposure-related opinions.[2]  The Court subsequently set a deadline for Defendants to file a summary judgment motion based on Plaintiffs' lack of admissible general causation evidence.  (Dkt. No. 723, Pretrial Order No. 20.)

## III.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There "can be no genuine issue as to any material fact" where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.*  If "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," "the moving party is entitled to a judgment as a matter of law."  *Id.* at 323.

## IV.    ARGUMENT

There is no legal or factual basis upon which Plaintiffs may now challenge Defendants' right to summary judgment.  Where, as here, general causation is a complex medical question, a plaintiff must introduce admissible expert testimony supporting general causation.  Because the Court has excluded all such testimony, Plaintiffs lack proof of an essential component of their claims.  Courts routinely grant summary judgment in these circumstances.  The Court should do the same.

### A.    Plaintiffs' Failure to Provide Admissible Expert Testimony on General Causation Compels Entry of Summary Judgment.

Proof of general causation is an essential element of all Plaintiffs' claims—if consumption of Defendants' baby foods is not capable of causing ASD or ADHD, then Plaintiffs cannot prevail on any cause of action pleaded in this MDL.  *Hanford*, 292 F.3d at 1134 (to prevail on their claims, plaintiffs "must establish both gener[al] and individual causation"); (*See* Dkt. No. 451 ¶¶ 176, 188, 203, 221, 233, 249, 258.)  And to prove general causation, Plaintiffs must provide admissible expert

---

[2] The Court denied the motion as to Dr. Kevin Shapiro, a pediatric neurologist, who offered only a biological plausibility opinion.

4

testimony on the subject. *See Hardeman v. Monsanto Co.*, 997 F.3d 941, 963 (9th Cir. 2021); *Hanford,* 292 F.3d at 1130–31, 1137; *Kennedy*, 268 F.3d at 768 (general causation "must be proven within a reasonable medical probability based upon competent expert testimony"); *Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) ("Summary judgment was appropriate since without [the expert's] testimony, [Plaintiff] offered no evidence of causation, a necessary element of his personal injury action.").

"Sequence matters: a plaintiff must establish general causation before moving to specific causation." *Wells v. Smithkline Beecham Corp.,* 601 F.3d 375, 378 (5th Cir. 2010); *see also Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 881 (10th Cir. 2005) ("Plaintiff must first demonstrate general causation because without general causation, there can be no specific causation."). In a toxic tort case, in order to satisfy the burden of proof on general causation, a plaintiff must offer expert evidence that the allegedly toxic product can cause the alleged injury at "levels people realistically may have experienced." *Hardeman*, 997 F.3d at 963. In this MDL, therefore, Plaintiffs were required to provide admissible expert testimony that "a child's consumption of each Defendant's baby food—at realistic doses—is capable of causing ASD or ADHD." (Dkt. No. 710 at 12.)

As to the claims based on mercury and cadmium in Defendants' baby foods, Plaintiffs chose not to offer any general causation expert testimony, thus abandoning those claims. (Dkt. No. 710 fn. 1.) After the Court confirmed this at the December 8, 2025, Rule 702 hearing, Plaintiffs' lead counsel agreed that summary judgment on claims related to cadmium and mercury would be granted. (Dkt. No. 697 at 5:11-13 (The Court: "Summary judgment would be granted [as to claims related to cadmium and mercury] because there's no expert testimony." Plaintiffs' lead counsel: "Precisely.")) Thus, no dispute exists that summary judgment should be entered for Defendants on Plaintiffs' claims as to mercury and cadmium.

As to the claims based on lead and arsenic in Defendants' baby foods, summary judgment must be granted because the Court's Rule 702 Order leaves Plaintiffs with no admissible expert evidence of general causation. Many MDL courts in products liability matters have similarly granted summary judgment after granting Rule 702 motions on general causation. *See*, *e.g.*, *In re*

5

*Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prods. Liab. Litig.*, 424 F. Supp. 3d 781, 798–99 (N.D. Cal. 2020); *Zantac*, 2026 WL 1009008, at *4, 7; *In re Zoloft (Sertralinehydrochloride) Prods. Liab. Litig.*, 176 F. Supp. 3d 483, 498–501 (E.D. Pa. 2016), *aff'd*, 858 F.3d 787, 800 (3d Cir. 2017) (excluding general causation opinions and entering summary judgment in numerous personal injury cases); *In re Lipitor (Atorvastatin Calcium) Mktg, Sales Pracs. & Prods. Liab. Litig*, 227 F. Supp. 3d 452, 469, 485 (D.S.C. 2017), *aff'd*, 892 F.3d 624, 638, 647–49 (4th Cir. 2018) (MDL court granting summary judgment in numerous personal injury cases, based on exclusion of general causation opinions); *In Re Mirena IUD Prods. Liab. Litig.*, 202 F. Supp. 3d 304, 327–28 (S.D.N.Y. 2016), *aff'd*, 713 F. App'x 11, 14–16 (2d Cir. 2017) (same).  Indeed, Plaintiffs' lead counsel recognized this risk early in this litigation, when he confirmed that the relevant question is whether Plaintiffs' "expert testimony is … sufficient to defeat summary judgment." (Dkt. No. 194 at 34:25-35:7, Jun. 20, 2024 Status Conf. Hr'g Tr.)  Because Plaintiffs have no admissible expert testimony to support their claims based on lead and arsenic, they cannot defeat summary judgment.

**B.     Plaintiffs' Argument that No Plaintiff Is Subject to Summary Judgment Lacks Merit.**

Plaintiffs apparently intend to argue that the years-long general causation process should have no impact on any individual case because "the Court's *Daubert* order … is based on excluding hypothetical menus that would not apply in an individual Plaintiff's case." (Dkt. No. 716 at 2.)  In other words, Plaintiffs' position appears to be that each individual Plaintiff should be able to proceed with their case by showing the type and amounts of baby foods *he or she ate*, and seek to prove that the dose of lead or arsenic in those foods caused *him or her* to develop autism or ADHD, even in the absence of admissible general causation evidence, *i.e.*, population- level (epidemiological) data reliably showing a causal association at any realistic exposure dose.

This argument defies common sense and mischaracterizes the extensive Rule 702 general causation process that the Court oversaw for two-plus years.  The entire purpose of the general causation undertaking (including general causation expert reports; expert depositions; extensive briefing to the Court; and a four-day Rule 702 hearing) was to avoid wasting time and effort engaging in discovery on specific causation if Plaintiffs could not provide scientific evidence

6

proving the threshold requirement of general causation. (*See* Dkt. No. 710 at 19-21.) Plaintiffs now claim that the general causation proceedings in which the parties actively engaged for the last two years mean nothing and were an exercise in futility. Tellingly, Plaintiffs never claimed that the general causation proceedings were futile until they lost, and, indeed, outside this courtroom Plaintiffs' counsel readily conceded that the Court's general causation order is dispositive of this litigation. (*See* Mar. 23, 2026 *Baby Food Litig. JCCP 5317* Hr'g Tr. before Judge Riff at 59:7-59:13, attached as Exhibit 1) (Plaintiffs' counsel telling JCCP court that "Judge Corley granted the defendants' *Daubert* motions with respect to all the plaintiffs' experts, [except] with respect to Dr. Shapiro. But since Dr. Shapiro was not directly opining on general cause, that's it with that case.")). Having just lost the exact same argument in a different products liability mass tort proceeding, Plaintiffs' counsel should be well aware of the consequences of the Court's Rule 702 order. *In re: Zantac (Ranitidine) Litig.*, 2026 WL 1009008, at *2, *5 (rejecting plaintiffs' counsel's argument that they were entitled to present specific causation experts notwithstanding the exclusion of all general causation experts).

Moreover, Plaintiffs' position fundamentally misapprehends the difference between general and specific causation and ignores governing Ninth Circuit law. In a toxic tort case, a plaintiff must prove both general causation (that the alleged toxic product is capable of causing a particular injury in any human being) and specific causation (that the alleged toxic product in fact caused the injury in the specific plaintiff). *Hanford*, 292 F.3d at 1134 (for Plaintiffs to prevail on their claims, they "must establish both gener[al] *and* individual causation"). There can be no specific causation without general causation: if a plaintiff can't prove, with admissible expert evidence, that the product can cause the alleged injury in humans in the first place, then by definition the plaintiff can't prove the product caused that injury in him. "If a plaintiff is not able to establish general causation, it is unnecessary to consider whether the plaintiff can establish specific causation." *Newkirk v. ConAgra Foods, Inc.*, 727 F. Supp. 2d 1006, 1030 (E.D. Wash. 2010). Only "specific causation" requires having a "particular plaintiff before the Court." *In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1172 (N.D. Cal. 2007).

What Plaintiffs really argue is that, at the general causation stage, they are not required to

7

prove a dose or level at which the alleged exposure is capable of causing the injury. As the Court has recognized, this is wrong. To prove general causation, Plaintiffs must show with admissible expert evidence that the allegedly harmful agent "can cause [the injury] *at exposure levels people realistically may have experienced.*" *Hardeman*, 997 F.3d at 963, 965 (emphasis added); *see also Newkirk*, 727 F. Supp. 2d at 1029. This is a threshold inquiry that must be made before a court or jury can even consider the question whether any individual's exposure caused that individual's harm. *In re Deepwater Horizon BELO Cases*, 119 F.4th 937, 945 (11th Cir. 2024) (explaining that "a plaintiff must demonstrate the level of exposure to the allegedly harmful chemical that is hazardous to a human being" (citation modified)); *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781–83 (10th Cir. 1999) (same); *Wright v. Willamette Indus. Inc.*, 91 F.3d 1105, 1106 (8th Cir. 1996) (same). Thus, there is no avoiding summary judgment after a general causation failure of proof. *Newkirk*, 727 F. Supp. 2d at 1034.[3]

To the extent Plaintiffs contend that issues of dose and realistic exposure are wholly irrelevant at the general causation stage, the Court already assessed and rejected that argument. (*See* Dkt. No. 710 at 19-21.) Moreover, Plaintiffs fully recognized that they needed to present expert testimony on a "realistic menu" and represented that their expert dietician, Priscilla Barr, provided this purported evidence:

> **THE COURT:** It doesn't have to be any plaintiff in this case, but it has to fit. It has to be realistic, because if the menu you come up with isn't realistic, what's the point of going forward, because no plaintiff will satisfy it, right?
>
> **MR. WISNER:** That's specific causation. And we opposed --
>
> **THE COURT:** I understand that's specific causation, but you don't get there if you can't have general causation based -- look, you wouldn't come forward with a menu that had 50 jars being eaten a day, would you, because that's not realistic?
>
> **MR. WISNER:** Sure.

---

[3] Notably, Plaintiffs told the Court from the very first status conference in May 2024 that Plaintiffs stood ready to meet a general causation challenge: "[By Mr. Wisner]: … we have a full roster of experts. I have hundreds and hundreds of pages of expert reports ready to go." (Dkt. No. 155 at 28:13-15, May 16, 2024 Status Conf. Hr'g Tr.)

8

**THE COURT:** Right?

**MR. WISNER:** And Ms. Barr would have said, "Get out of here."

**THE COURT:** That's not realistic. So it has to be realistic. So at least we're in agreement there.

**MR. WISNER:** Sure.

**THE COURT:** *So there's no dispute you have to come up with a realistic menu.*

**MR. WISNER:** *Yes. And that's why we engaged Ms. Barr, to address that issue.* And just to be candid, Your Honor, we opposed the bifurcation of GC --

(Dkt. No. 700 at 22:9-23:6, December 11, 2025 Hr'g Tr.) (emphasis added). Thus, the general causation phase fully afforded Plaintiffs the opportunity to meet the evidentiary burden that they knew existed.

As for the methodology that they employed, no one forced Plaintiffs' counsel to concoct the "hypothetical menus" relied upon by Plaintiffs' general causation experts or to use any other specific method for determining a realistic exposure dose. Plaintiffs' counsel created those all on their own, and they alone controlled this approach. Having decided to create, use, and rely upon these "hypothetical menus" as the means to establish general causation, Plaintiffs cannot now cast aside this strategy by claiming that they could have done something different. Plaintiffs and their lawyers chose to use a flawed and unreliable methodology that could not withstand scrutiny under Rule 702, and they must live with the consequences.

Finally, the Court found that Plaintiffs' experts' general causation opinions were unreliable and inadmissible for reasons independent of the flaws with the hypothetical menus created by Plaintiffs' counsel, relied upon by Ms. Barr, and used by their exposure scientist, Dr. Rachael Jones, in her calculations. (*See e.g.,* Dkt. No. 710 at 31 ("[E]ven if Plaintiffs had shown Dr. Jones's calculations were reliable, the epidemiology and toxicology experts do not provide a scientific rationale for concluding those estimated exposure levels can cause ASD or ADHD."))

For one, although Plaintiffs' causation experts pointed to numerous epidemiological studies,

9

they all failed to satisfy the "non-discretionary" Bradford-Hill criterion of temporality and/or suffered from other critical flaws (*e.g.*, failed to look at the relevant exposure period or diagnosed ASD or ADHD). (*Id*. at 33, 37, 38.)  In the end, Plaintiffs' epidemiology experts could point to *no study* that looked at the relevant exposure window, satisfied temporality, and showed that lead or arsenic exposure statistically significantly increased the risk of ASD diagnosis. (*Id*. at 38.)  As for ADHD, only one study (Ji et al. 2018) satisfied the temporality requirement, used a diagnosis of ADHD and assessed the relevant time-period.  (*Id.* at 39.)  That study observed a statistically significant increased risk only in boys, and only at blood levels over 5 micrograms per deciliter, which—as the Court noted—"is higher than all of Dr. Jones' calculated mean blood lead levels, and higher than most of her maximum estimated levels." (*Id.* (citing Dkt. No. 611-25 at 35, Dr. Jones Amended Rebuttal Expert Report.))  In short, as the Court found, Plaintiffs' experts' inability to point to any studies that could reliably support a general causation opinion is fatal to Plaintiffs' claims and independently supports summary judgment.

Additionally, the Court concluded that Plaintiffs' experts lacked the hallmarks of reliability expected under Rule 702.  For example, even when there were significant changes in the assumptions on which the experts purported to base their opinions, "Plaintiffs' causation experts did not further engage with the literature to update their opinions." (Dkt. No. 710 at 32.)  "This kind of perfunctory analysis" was "common across Plaintiffs' experts" and made it impossible to evaluate the experts' methods or their reliability. (*Id.*)

In short, there is no way for Plaintiffs to avoid summary judgment.  The notion that the parties' two-year general causation process, week-long evidentiary hearing, and the Court's Rule 702 motion rulings apply to no one is unsupported by any law or precedent and should be rejected. All of Plaintiffs' general causation experts—individually and collectively—failed to provide evidence sufficient to put the cases to a jury.  Without such evidence, summary judgment should be entered as a matter of law.  *Hanford,* 292 F.3d at 1130–31, 1134, 1137.

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

CASE NO. 3:24-MD-3101-JSC

**C.    Pursuant to Its Past Orders, the Court Should Grant Summary Judgment to Defendants on All Cases Filed on or Before November 21, 2025.**

When Plaintiffs' leadership counsel pointed out, before general causation expert discovery began, that they and other lawyers had clients who intended to file in the MDL but had not yet done so, the Court established a deadline for Plaintiffs to join the MDL to make clear who would be "bound one way or the other" by the Rule 702 rulings. (Dkt. No. 448 at 48:9-12); (*see also id.* at 49:25-50:2 (Plaintiffs' co-lead counsel acknowledging that if defendants prevailed on general causation, the ruling would apply "to the people who had filed in the MDL")). That deadline was November 21, 2025. (Dkt. No. 466 at 27:1-3; Dkt. No. 467 at 1.) Thus, all Plaintiffs who filed cases on or before November 21, 2025 did so with notice that they would be subject to the Court's Rule 702 rulings. Summary judgment as to each of those Plaintiffs is appropriate.

In meet and confer discussions leading up to this motion, Plaintiffs suggested that the only Plaintiffs who could be bound by the Court's Rule 702 order are those who filed cases in the MDL on or before May 23, 2025, the date on which Plaintiffs served their general causation expert disclosures. There is no basis for this argument. For one thing, as noted above, the Court gave notice in late April 2025, a month before Plaintiffs' expert disclosures were due, that any Plaintiff who joined the MDL on or before November 21, 2025 would be bound (for better or worse) by the Court's Rule 702 rulings. So, for example, if the Court had denied Defendants' Rule 702 motions—and even granted Plaintiffs' Rule 702 motions—Defendants would not have been able to relitigate those issues as to any Plaintiff who had filed in the MDL by November 21. One can be sure that those Plaintiffs would have eagerly accepted the benefit of such rulings. Having filed in the MDL with full knowledge that they would be bound by the rulings, they cannot now seek to avoid the results.

Drawing the line at May 23, 2025—rather than at the Court-ordered MDL participation deadline of November 21, 2025—also would undermine the purpose of the general causation proceedings and effectively exempt a majority of cases from the Court's ruling. Of the over 400 cases currently pending in the MDL, more than half were filed after May 23, 2025. (*See generally* Dkt.) Excluding those cases would permit Plaintiffs who knowingly filed into the MDL before the

11

Court deadline and while general causation was being litigated to avoid the consequences of those proceedings and the Court's rulings.

Such a result would undermine the structure of this MDL and contradict the Court's leadership appointment Order, which authorized Plaintiffs' leadership counsel to designate general causation experts and litigate Rule 702 motions on behalf of all Plaintiffs in the MDL, not only those with cases pending when expert reports were filed.  No Plaintiff objected to that Order.  With a single recent exception, each of the law firms representing Plaintiffs in this MDL has been actively involved since the outset, and the majority of those firms have at least one attorney on the Plaintiffs' Steering Committee established back in May 2024.  The vast majority of cases filed between May 24 and November 21, 2025 were filed by those same firms.  These firms knew of the experts Plaintiffs' leadership selected, many participated directly in the presentation of the experts, and all had the opportunity to review the experts' reports, raise concerns about the experts' opinions or methods, and propose alternative experts or reports.  No Plaintiff who filed a case during this period sought to exclude his or her case from the general causation process, objected to the presented experts, or attempted to offer alternative experts.  Having acquiesced in the process with full opportunity to participate, these Plaintiffs are bound by its outcome.  (Dkt. No. 466 at 28:11-13.)[4]

## V.  CONCLUSION

For all the foregoing reasons, the Court should grant summary judgment in favor of Defendants on all Plaintiffs' claims in MDL member actions filed on or before November 21, 2025.

Dated:  May 1, 2026

KING & SPALDING LLP

By: */s/ Livia M. Kiser*
Livia M. Kiser
Michael Anthony Lombardo
Todd P. Davis (*pro hac vice*)

*Attorneys for Defendants Beech-Nut Nutrition Company and Walmart Inc.*

---

[4] The parties will discuss a procedure to address summary judgment for later filed cases after the Court issues its order on this motion. (*See* Dkt. No. 723 at 2.)

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

CASE NO. 3:24-MD-3101-JSC

Dated:  May 1, 2026                    WHITE & CASE LLP

                                       By:  */s/ Bryan A. Merryman*
                                       Bryan A. Merryman


                                       WILLIAMS & CONNOLLY LLP

                                       By:  */s/ Joseph G. Petrosinelli*
                                       Neelum J. Wadhwani
                                       Joseph G. Petrosinelli (*pro hac vice*)

                                       *Attorneys for Defendant Gerber Products Company*

Dated:  May 1, 2026                    DLA PIPER LLP (US)

                                       By: */s/ Brooke Killian Kim*
                                       Brooke Killian Kim
                                       Mary Gately (*pro hac vice*)
                                       Loren H. Brown (*pro hac vice*)

                                       *Attorneys for Defendant Nurture, LLC*

Dated:  May 1, 2026                    COVINGTON & BURLING LLP

                                       By: */s/ Michael X. Imbroscio*
                                       Michael X. Imbroscio (*pro hac vice*)
                                       Phyllis A. Jones (*pro hac vice*)
                                       David N. Sneed (*pro hac vice*)
                                       Elizabeth T. Fouhey (*pro hac vice*)

                                       *Attorneys for Defendant The Hain Celestial Group, Inc.*

Dated: May 1, 2026                     GORDON REES SCULLY MANSUKHANI, LLP

                                       By: */s/ Michael R. Klatt*
                                       Michael R. Klatt (*pro hac vice*)
                                       Nancy Mae Erfle (*pro hac vice*)

                                       *Attorneys for Defendant Sprout Foods, Inc.*

Dated:  May 1, 2026                    DECHERT LLP

                                       By: */s/ Hope Freiwald*
                                       Hope S. Freiwald (*pro hac vice*)
                                       Michelle H. Yeary (*pro hac vice*)

                                       *Attorneys for Defendant Plum, PBC*

13

Dated:  May 1, 2026                          COZEN O'CONNOR

                                             By: /s/ Peter M. Ryan
                                             Peter M. Ryan (*pro hac vice*)
                                             Brett Nicole Taylor

                                             *Attorneys for The Campbell's Company*
                                             *(f/k/a Campbell Soup Company)*

Dated:  May 1, 2026                          DAVIS WRIGHT TREMAINE LLP

                                             By: /s/ Ashley L. Vulin
                                             Ashley L. Vulin (*pro hac vice*)
                                             P. Andrew McStay, Jr. (*pro hac vice*)

                                             *Attorneys for Amazon.com Services LLC*

Dated:   May 1, 2026                         BAKER DONELSON

                                             By: /s/ Brian M. Ballay (*pro hac vice*)
                                             N. Kordell Caldwell (*pro hac vice*)

                                             *Attorneys for Whole Foods Market Services, Inc.*

14

DEFENDANTS' NOTICE OF MOTION AND                    CASE NO. 3:24-MD-3101-JSC
MOTION FOR SUMMARY JUDGMENT

## **L.R. 5-1 ATTESTATION**

I, Livia M. Kiser, attest that all signatories listed herein, and on whose behalf this filing is submitted, concur in this filing's content and have authorized this filing.

*/s/ Livia M. Kiser*
Livia M. Kiser

DEFENDANTS' NOTICE OF MOTION AND                    CASE NO. 3:24-MD-3101-JSC
MOTION FOR SUMMARY JUDGMENT