# EXHIBIT 1



Status Conference

3/23/2026

Baby Food Litigation - JCCP 5317 (Landon R. v. Hain Celestial Group, Inc, et al)

**Hartford Reporting & Technology**

**7733 Forsyth Boulevard, Suite 1100**

**St. Louis, Missouri  63105**

**(855) 443-3767**

**www.hartfordreporting.com**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT 1                     HON. LAWRENCE P. RIFF, JUDGE

-OOO-

COORDINATION PROCEEDING SPECIAL    )
TITLE (RULE 3.550)                 )
                                   )
HAIN CELESTIAL BABY FOOD CASES     )
_____)  CASE NUMBER
                                   )  23STCV24844
LANDON R,  A MINOR,                )
                                   )
                    PLAINTIFF,     )
                                   )
   VS.                             )
                                   )
HAIN CELESTIAL GROUP, INC.,        )
NURTURE, INC., PLUM PBC, D.B.A.    )
PLUM ORGANICS; BEECH-NUT           )
NUTRITION COMPANY; GERGER          )
PRODUCTS COMPANY, SPROUT FOODS,    )
INC.; RALPHS GROCERY COMPANY;      )
AND DOES 1 THROUGH 100,            )
INCLUSIVE,                         )
                                   )
                    DEFENDANTS.    )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MONDAY, MARCH 23, 2026

(APPEARANCES ON THE NEXT PAGE.)

DEBBIE HINO-SPAAN
CSR. NO. 7953, RPR, RMR, CRR, CRC
OFFICIAL REPORTER PRO TEMPORE

**Hartford Reporting & Technology, LLC**
**www.hartfordreporting.com**

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

APPEARANCES:

FOR PLAINTIFF:

       WISNER BAUM, LLP
       BY:  PEDRAM ESFANDIARY, ESQ.
          (VIA LACOURTCONNECT)
          MONIQUE ALARCON, ESQ.
          HEATHER BISHOP, ESQ.
       11111 SANTA MONICA BOULEVARD
       SUITE 1750
       LOS ANGELES, CALIFORNIA 90025
       310.207.3233

FOR DEFENDANT NUTURE LLC:

       DLA PIPER
       BY:  MARY ELIZABETH GATELY, ESQ.
          BROOKE KIM, ESQ.
       500 EIGHTH STREET NORTHWEST
       WASHINGTON, D.C. 20004
       703.772.0190

FOR DEFENDANT GERBER PRODUCTS COMPANY:

       WHITE & CASE LLP
       BY:  BRYAN A. MERRYMAN, ESQ.
       555 SOUTH FLOWER STREET
       SUITE 2700
       LOS ANGELES, CALIFORNIA 90071
       213.620.7802


FOR DEFENDANTS BEECH-NUT AND WALMART, INC.:

       KING & SPALDING
       BY:  TODD P. DAVIS, ESQ.
          LIVIA KISER, ESQ.
       1180 PEACHTREE STREET, N.E.
       ATLANTA, GEORGIA 30309
       404.572.3589

FOR DEFENDANT HAIN CELESTIAL GROUP, INC.:

       COVINGTON & BURLING LLP
       BY:  MICHAEL X. IMBROSCIO, ESQ.
       ONE CITYCENTER
       850 TENTH STREET, NW
       WASHINGTON, DC 20001
       202.662.5694

APPEARANCES (CONTINUED):


FOR DEFENDANT PLUM, PBC:

        DECHERT LLP
        BY:  HOPE S. FREIWALD, ESQ.
             ALLISON OZUROVICH, ESQ.
        2929 ARCH STREET
        PHILADELPHIA, PENNSYLVANIA 19104
        215.994.2514

FOR DEFENDANT SPROUT FOODS, INC.

        GORDON REES SCULLY MANSUKHANI, LLP
        BY:  MICHAEL R. KLATT, ESQ.
        2705 BEE CAVES ROAD
        SUITE 220
        AUSTIN, TEXAS 78746
        512.582.6485

ALSO PRESENT VIA LACOURTCONNECT:

        DREW BENCIE, ESQ.
        MICHELLE YEARY, ESQ.
        J. TAYLOR AKERBLOM, ESQ.
        ELIZABETH FOUHEY, ESQ.
        RENATO BLOOM, ESQ.
        MATT DART, ESQ.
        PETER M. RYAN, ESQ.

CASE NUMBER:                23STCV24844

CASE NAME:                  LANDON R. VS. HAIN CELESTIAL
                            GROUP, INC., ET AL.

LOS ANGELES, CALIFORNIA   MONDAY, MARCH 23, 2026

DEPARTMENT 1              HON. LAWRENCE P. RIFF, JUDGE

APPEARANCES:             (AS HERETOFORE MENTIONED.)

REPORTER:                DEBBIE HINO-SPAAN, CSR NO. 7953

TIME:                    9:17 A.M.

                         -O0O-


              (THE FOLLOWING PROCEEDINGS WERE HELD

              IN OPEN COURT:)


              THE COURT:  GOOD MORNING EVERYBODY.


              (THE PARTIES COLLECTIVELY RESPONDED

              "GOOD MORNING.")


              THE COURT:  WE ARE HERE ON MATTER 2,

JCCP5317, HAIN CELESTIAL GROUP CASES, DEBBIE HINO-SPAAN,

CSR 7953, REPORTING IN PERSON.

              YOU ALL HAVE CHECKED IN, I KNOW, SO THAT I

WON'T TAKE FORMAL APPEARANCES, BUT DO IDENTIFY YOURSELF

FOR THE RECORD BEFORE YOU BEGIN SPEAKING -- OR, YEAH, IF

YOU HAVE SOMETHING TO SAY, JUST TELL US WHO YOU ARE

BEFORE YOU DO.

              I PROPOSE TO TALK ABOUT THE DISCOVERY

BEFORE TALKING ABOUT THE STATUS CONFERENCE BECAUSE IT

SEEMS TO ME WHAT OCCURS RELATIVE TO THE DISCOVERY DISPUTES MAY WELL AFFECT WHAT HAPPENS WITH RESPECT TO THE STATUS CONFERENCE.

IS THAT OKAY WITH YOU, PLAINTIFF, IF WE DO IT THAT WAY?

MR. ESFANDIARY:  GOOD MORNING, YOUR HONOR, PEDRAM ESFANDIARY FOR THE PLAINTIFF.  I'M IN D.C. FOR BUSINESS.  I'LL BE SPEAKING TO YOU REMOTELY TODAY. THAT'S FINE WITH PLAINTIFF.

THE COURT:  OKAY.  DEFENSE, OKAY WITH YOU?

MR. DAVIS:  YES, YOUR HONOR.

THE COURT:  ALL RIGHT.  ONE MOMENT.  I HAVE A QUESTION FOR PLAINTIFF'S SIDE.

THE COURT'S ORDER EARLIER THIS WEEK I THINK MADE THE OBSERVATION THAT THE DISCOVERY ACT DOES NOT REQUIRE ANYBODY, I DON'T THINK, MUCH LESS THIRD PARTIES TO SIGN AUTHORIZATIONS FOR RELEASE OF MEDICAL AND EMPLOYMENT INFORMATION.

THAT SAID, I DO HAVE A QUESTION OF THE PLAINTIFF'S SIDE, WHICH IS WHY ARE YOU OPPOSED TO THAT -- WHY ARE YOU OPPOSED TO ACCEDING ON BEHALF OF YOUR CLIENTS AND THEIR PARENTS TO EXECUTING AUTHORIZATIONS WHEN THE ALTERNATIVE IS TO PROCEED BY SUBPOENAS, WHICH IS GOING TO SLOW DOWN EVERYTHING, PROBABLY, WHEN, IN THE SAME BREATH, YOU WANT A TRIAL DATE SOONER RATHER THAN LATER?

CAN ANYBODY TALK TO ME ABOUT THAT?

MR. ESFANDIARY:  YES, YOUR HONOR, PEDRAM

ESFANDIARY FOR THE PLAINTIFF.  GOOD MORNING.

WE'RE NOT CATEGORICALLY OPPOSED TO EXECUTING AUTHORIZATIONS.  THE ISSUE IS THE AUTHORIZATIONS THAT THE DEFENDANTS REQUESTED SEEK EVERY SINGLE RECORD EVER PERTAINING TO THIRD PARTIES IRRESPECTIVE OF TIME, IRRESPECTIVE OF SCOPE.

ALSO, THE DEFENDANTS ARE OBJECTING TO ALLOWING US TO DO BASIC PRIVILEGE REVIEWS OF THOSE DOCUMENTS CULLED BY THE AUTHORIZATIONS BEFORE PRODUCTION, WHICH, YOUR HONOR, IT'S UNHEARD OF.  BUT EVERYONE GETS TO DO IT AT LEAST -- PUTTING ASIDE OUR DIFFERENCES ABOUT THE PRIVACY REVIEW, WHICH I KNOW IN THE COURT'S OPINIONS ABOUT THAT, I KNOW WE TALKED ABOUT THAT, IT'S UNHEARD OF FOR PARTIES TO NOT BE PERMITTED TO DO PRIVILEGE REVIEWS, ESPECIALLY WHEN THE REQUESTED INFORMATION IS EVERY SINGLE MEDICAL RECORD UNDER THE SUN.

BECAUSE THE DEFENDANTS HAVE NOT AGREED TO PARAMETERS FOR THE AUTHORIZATIONS, WE HAVE NOT AGREED TO EXECUTE THEM AND HAVE CHOSEN INSTEAD TO PROCEED BY WAY OF SUBPOENA WHICH WE CAN -- WE HAVE A PROCEDURAL MECHANISM IN COURT, WHICH WE GET TO ASK THE QUESTION, GIVEN THE BREADTH AND GIVEN THAT THE DEFENDANTS WILL NOT AGREE TO US TO DO A PRIVILEGE AND PRIVACY REVIEW BEFORE PRODUCTION.

THE COURT:  BUT IF YOU PROCEED BY SUBPOENA, THERE IS NO PREPRODUCTION, SO TO SPEAK, PRIVILEGE REVIEW ANYWAY; CORRECT?  THAT ALL HAPPENS FOLLOWING THE

CUSTODIAN OF RECORDS PRODUCTION.

MR. ESFANDIARY:  RIGHT.  WELL, THE IDEA WOULD BE THAT THE SUBPOENAS WILL BE MODIFIED OR CONDITIONED TO ALLOW FOR THIS PROCESS OF US DOING A PRIVILEGE REVIEW BEFORE WE TURN OVER THE DOCUMENTS TO THE DEFENDANTS.

THE COURT:  OKAY.

MR. ESFANDIARY:  I CAN ADDRESS THE POINT ABOUT THE TRIAL DATE AS WELL, IF YOUR HONOR WANTS TO HEAR ABOUT THAT.

THE COURT:  LET ME ASK THE DEFENSE.  I'LL BE HONEST WITH YOU, I REALLY FOCUSED ON ONE OF THESE MOTIONS, THE SAMUEL R., ASSUMING CALEB R. IS PRETTY MUCH THE SAME THING, BUT I ONLY WANTED TO FOCUS ON ONE TO BEGIN WITH.  SO THAT'S WHERE I FOCUSED.  SO LET'S TALK ABOUT SAMUEL R.

YOU'VE SEEN WHAT I'VE SEEN WHICH ARE THE PROPOSED LIMITATIONS ON THE SCOPE OF THE SUBPOENAS IN QUESTION.  I HAVE READ THE DECLARATION OF DR. FOMBONNE, F-O-M-B-O-N-N-E, I BELIEVE IT IS.  SO I HAVE SOME EXPECTATION OF WHAT YOU'RE ABOUT TO SAY NEXT.  BUT I WILL ASK, ARE YOU AMENABLE TO THEIR LIMITATIONS?

MR. DAVIS:  YOUR HONOR, TODD DAVIS ON BEHALF OF DEFENDANTS.  AND YOU ARE CORRECT IN TERMS OF THE FOCUSING ON ONE OF THE TWO MOTIONS.  THE TWO MOTIONS AND THE OPPOSITIONS ARE VIRTUALLY IDENTICAL.

SPEAKING ON BEHALF OF BEECH-NUT AND WALMART IN THE CALEB R. CASE, I CAN TELL YOU THAT, NO, WE'RE

NOT.  AND THE REASON WE'RE NOT AMENABLE TO THE TIME, SCOPE RESTRICTIONS IS BECAUSE WE KNOW THAT TIME -- THE TIME LIMIT DOES NOT CAPTURE ALL POTENTIAL ALTERNATIVE CAUSATION EVIDENCE.  AND WE KNOW THAT BECAUSE WHAT WE'RE TALKING ABOUT HERE ARE DEVELOPMENTAL DISORDERS, PSYCHIATRIC DISORDERS WE CONTEND BEGAN BEFORE BIRTH, ADHD AND AUTISM.

AND WE KNOW THAT THERE IS A STRONG LINK AS DR. FOMBONNE SETS OUT IN HIS DECLARATION, THAT SHOWING THAT THERE'S A HOST OF PSYCHIATRIC AND MEDICAL DISORDERS THAT HAVE SHOWN A LINK IN THE SCIENTIFIC LITERATURE FOR INCREASING THE RISK OF HAVING A CHILD BORN WITH A PSYCHIATRIC DISORDER INCLUDING AUTISM AND ADHD.

SO IF WE CUT OFF THE ACCESS TO THE PARENTAL RECORDS, WHETHER IT BE MEDICAL OR PSYCHIATRY RECORDS OR EMPLOYMENT OR EDUCATIONAL, WHAT WE'RE DOING IS CUTTING OFF ACCESS TO INFORMATION ABOUT THE DEVELOPMENTAL HISTORIES OF THE PARENTS, WHICH IS CRITICAL.  BECAUSE THE DEVELOPMENTAL HISTORIES, HOW THEY PERFORMED, ISSUES THAT AROSE DURING THEIR CHILDHOOD, ARE RELEVANT TO HELPING ANSWER THE QUESTION, AS DR. FOMBONNE OUTLINES, OF IS THIS CHILD THAT'S AT ISSUE HERE IN THE CASE, IS THAT CHILD AT RISK FOR HAVING A GENETIC DISORDER FROM AUTISM BECAUSE OF THE PARENTAL -- THE PARENTS' HISTORIES OF MEDICAL AND PSYCHIATRIC CONDITION.

SO THE SHORT ANSWER IS NO, WE'RE NOT AMENABLE TO THAT.  AND I WOULD SAY ALSO THAT A NUMBER OF THIS HAS BEEN ADDRESSED BY THE COURT ALREADY.  WE'RE

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

HERE NOW FOR THE FOURTH TIME ON A REQUEST FOR A FIRST-PASS ASSESSMENT.  THE COURT HAS HAD TWO IDCS ON THAT AND DECIDED THE ISSUE BACK ON FEBRUARY 26 ABOUT A FIRST PASS ISSUE.  AND ENCOMPASSED WITHIN THAT RULING IS YOUR HONOR TOOK INTO CONSIDERATION THE PRIVACY ISSUES OF THE PARENTS, TOOK INTO CONSIDERATION THE OBJECTIONS ABOUT THE BREADTH AND SCOPE OF THE REQUESTS THAT WERE AT ISSUE, AND YOU OVERRULED THOSE OBJECTIONS.  AND SO BECAUSE OF THE ISSUES HERE, WE KNOW THAT IT'S IMPORTANT TO HAVE ACCESS TO THOSE RECORDS.

PLAINTIFF'S COUNSEL SAYS IT'S UNPRECEDENTED TO HAVE THIS TYPE OF REVIEW, BUT WE DID THIS EXACT REVIEW, TWO CASES THAT THEY HANDLED PRIOR, NC AND --

THE COURT:  I'M SORRY, WHAT REVIEW ARE YOU --

MR. DAVIS:  JUST THE ACCESS TO ALL THE PARENTS' MEDICAL RECORDS AND THE EDUCATIONAL RECORDS AND THE EMPLOYMENT RECORDS, WE HAD ACCESS TO THAT WITHOUT A LIMIT ON TIME OR SCOPE.  AND IT PROVED TO BE SIGNIFICANT.

THE COURT:  OKAY.  I UNDERSTAND WHAT YOU'RE TELLING ME.

IS THERE ANY PROCESS THAT YOU CAN CONCEIVE OF THAT WOULD SATISFY YOU THAT WOULD GIVE THE PLAINTIFFS THE FIRST LOOK THEY'RE LOOKING AT, LITERALLY LOOKING FOR?

MS. KISER:  NO, YOUR HONOR.

THE COURT:  LET ME PROPOSE ONE JUST FOR THE

ACADEMIC AND INTELLECTUAL EXERCISE OF DOING SO.

WHAT IF PLAINTIFFS GET A FIRST LOOK, ANYTHING THAT THEY SAY SHOULD NOT BE PRODUCED IS -- WHAT WOULD BE THE RIGHT WORD? -- SEQUESTERED, I SUPPOSE, AND SUBMITTED TO SOMEONE WHO IS A NEUTRAL TO DECIDE WHETHER IT SHOULD BE PRODUCED OR NOT?

MR. DAVIS:  YOUR HONOR --

THE COURT:  WHAT'S THE PROBLEM WITH THAT?

MR. DAVIS:  WELL, A COUPLE PROBLEMS.  AND I THINK YOUR HONOR HAS THOUGHT OF SOMETHING SIMILAR IN PRIOR DISCUSSIONS THAT WE'VE HAD WITH YOU OF HOW TO DO THIS -- IS THERE A WAY TO PARSE THIS OUT IN TERMS OF MAKING AN ASSESSMENT, AND AS DR. FOMBONNE SETS OUT IN HIS DECLARATION, HAVING THE FULL ACCESS TO UNREDACTED INFORMATION IS IMPORTANT BECAUSE EVEN EXPERTS IN THE FIELD CAN DISAGREE ABOUT THE SIGNIFICANCE OF DIFFERENT SYMPTOMS OR NOT.  AND THAT'S AT ONE OF THE VERY LAST PARAGRAPHS IN HIS DECLARATION.  I BELIEVE THAT'S PARAGRAPH 51 AND 52.  AND SO --

THE COURT:  OKAY, LET ME STOP YOU.  I HEAR YOU.  AND AGAIN, I'M NOT SURE ANY OF THIS IS A GOOD IDEA.  AND YOU'RE ABSOLUTELY RIGHT, THAT I HAVE PLOWED THIS FURROW BEFORE.  BUT I WANT TO PLOW IT AGAIN TODAY.

SO WHAT IF, UNDER THIS HYPOTHETICAL SCENARIO, THE COURT HOLDS A HEARING IN A CLOSED COURT SESSION, AND DEFENSE, YOU GET TO BRING IN DR. FOMBONNE OR ANYBODY ELSE WHO GETS TO LOOK AT THIS STUFF AND TELL THE COURT WHY IT IS OR IS NOT IMPORTANT.

NOW, THAT MAY OR MAY NOT SATISFY PLAINTIFF, BECAUSE IN A SENSE THAT IF THAT WERE TO OCCUR, THEN THE -- WELL, OBVIOUSLY, THE RECORDS AT THAT POINT HAVE BEEN DISCLOSED.  BUT THEY'RE DISCLOSED IN A PRETTY PROTECTIVE KIND OF SETTING.  AND THE PLAINTIFFS MIGHT FIND SOME SUCCOR, S-U-C-C-O-R -- NO, S-U-C-C-O-R, RIGHT, KNOWING THAT IF THE COURT SAYS, "WELL, DR. FOMBONNE, I HEAR YOU, BUT I DON'T AGREE.  SO THE FOLLOWING RECORDS ARE NOT GOING TO BE -- YOU KNOW, SHOULD NOT HAVE BEEN PRODUCED" OR WORDS TO THAT EFFECT, THEN AT LEAST WE KNOW IN AN OPEN TRIAL SETTING THOSE RECORDS WOULD NOT BE THE SUBJECT OF THE TRIAL.

WHAT -- WHAT'S THE MATTER WITH THAT OTHER THAN THE FACT IT'S VERY EXPENSIVE?

MR. DAVIS:  WELL, IT'S VERY EXPENSIVE AND THE OTHER THING IS WHAT WE'RE TALKING ABOUT HERE IS THEY'VE AGREED THAT PSYCHIATRIC INFORMATION OF THE PARENTS IS GERMANE TO THIS.  THEY DO NOT CONTEST THAT. THEY DON'T CONTEST THAT THEIR MEDICAL --

THE COURT:  LET ME STOP YOU AGAIN. BASICALLY WHAT YOU'RE NOW TELLING ME IS THAT WERE WE TO GO THROUGH THIS EXERCISE, WHEN PUSH COMES TO SHOVE, THERE WOULDN'T BE VERY MANY RECORDS IDENTIFIED BY THE PLAINTIFF AS OUTSIDE THE SCOPE OF APPROPRIATE DISCOVERY.

MR. DAVIS:  I WAS ACTUALLY TRYING TO HIT ON A DIFFERENT POINT, WHICH WAS SIMPLY THAT GIVEN THAT THE PLAINTIFFS AGREE THAT PSYCHIATRIC AND OTHER MEDICAL CONDITIONS ARE RELEVANT IN THIS CASE, THE QUESTION THEN

BECOMES WHAT'S LEFT THAT IS SOMETHING OF A SENSITIVE OR PERSONAL NATURE TO -- THAT WOULD NOT -- THAT WOULD BE SOMETHING DIFFERENT OR OF MORE SEVERITY THAN WHAT THEY ALREADY AGREED TO HAVE ACCESS TO.

THE COURT:  SO THEN WHEN YOU ARE SAYING THINGS LIKE "PSYCHIATRIC CONDITIONS," IF THAT'S THE WORD YOU USED, WHAT THE PLAINTIFFS POINT TO ARE THINGS LIKE SEXUAL PROCLIVITIES.

IS THAT A PSYCHIATRIC CONDITION?

MR. DAVIS:  IT COULD BE, YES.

THE COURT:  THE QUESTION BEING -- LET ME JUST ASK YOU, IF WE BRING IN DR. FOMBONNE, DO YOU THINK -- YOU KNOW, IF IT TURNS OUT HYPOTHETICALLY THAT THERE IS SOME PSYCHIATRIC RECORDS THAT REFER TO -- I CAN'T EVEN IMAGINE WHAT SEXUAL PROCLIVITIES WE MIGHT BE TALKING ABOUT, DO YOU THINK IF I SAID, "DO YOU THINK THAT HAS ANYTHING TO DO WITH ETIOLOGY OF AUTISM?"  HE WOULD SAY "YES"?

MS. FREIWALD:  YOUR HONOR, IF I MAY.

THE COURT:  GET THE MIC.  YOU MAY IF YOU GET THE MIC.

MS. FREIWALD:  I JUST WANT TO REMIND --

THE COURT:  YOU ARE?

MS. FREIWALD:  I'M HOPE FREIWALD FOR DEFENDANT.

I JUST WANT TO REMIND THE COURT THAT IN THE PAST TWO CASES, AS OUR BRIEFS SAY, WE WENT THROUGH AN IN LIMINE PROCESS AFTER DISCOVERY WHERE THE PLAINTIFFS

DID CHALLENGE THE ADMISSIBILITY OF EVIDENCE.  AND THAT'S APPROPRIATE.  THEY CAN DO THAT AFTER WE HAVE OUR EXPERT REPORTS.

BUT IT SEEMS TO ME NOT APPROPRIATE, RESPECTFULLY, AND REALLY NOT WORKABLE FOR DEFENDANTS TO ASK OUR EXPERTS TO START TO FORMULATE REAL-TIME OPINIONS AS DISCOVERY IS EMERGING ABOUT PARTICULAR DOCUMENTS OR THINGS.  WHAT IS GOING -- THEY NEED TO SEE THE TOTALITY OF WHAT COMES IN.

THE COURT:  WELL, IF YOU'RE RIGHT, IF YOU'RE RIGHT, THEN POTENTIALLY DR. FOMBONNE WOULD SAY, "WELL, I DON'T KNOW, MAYBE.  MAYBE THE SEXUAL PROCLIVITIES WILL BE RELEVANT TO MY OPINION ON ETIOLOGY WHEN CONSIDERED IN COMBINATION WITH SOMETHING ELSE."

MS. FREIWALD:  RIGHT.  AND WE SAW THAT IN ANOTHER CASE.  WE SAW THAT THERE WAS A HISTORY OF SUBSTANCE ABUSE COMBINED WITH SOME CRIMINAL BEHAVIOR, COMBINED -- THERE WAS ALSO ISSUES OF TROUBLE IN SCHOOL, BEHAVIORAL ISSUES IN SCHOOL.

WE'VE SEEN THESE ISSUES DEVELOP IN TOTALITY.  AND WE'VE ALSO SEEN THAT YOU DON'T NECESSARILY HAVE A FORMAL DIAGNOSIS.  YOU HAVE BEHAVIORS THAT MAY BE SELF-REPORTED, BEHAVIORS THAT MAY BE REPORTED BY PEOPLE WHO AREN'T NECESSARILY MEDICAL EXPERTS.  AND THE DOCTORS TAKE THIS IN TOTALITY WHICH THEY WOULD DO IF THEY HAD A PATIENT IN FRONT OF THEM IN THE REAL WORLD.  AND WHAT PLAINTIFFS -- AND YOUR HONOR WAS SPOT ON WHEN YOU RULED IN OUR FAVOR ON THIS ALREADY

IN THE CONTEXT OF THE AUTHORIZATIONS, THAT WE HAVE A TWO-TIER PROTECTIVE ORDER, AND FOR PLAINTIFF TO START TO PICK AND CHOOSE IS GOING TO BE AN UNWORKABLE PROCESS THAT'S GOING TO BOG DOWN THE CASE FOREVER, AND --

THE COURT:  WELL, THAT'S ON THEM.  I MEAN, I SAY THAT, KIND OF, IN A FLIP FASHION.  THEY ARE VERY KEEN TO GET TO TRIAL VERY QUICKLY.  AND IF AS A CONSEQUENCE OF A PROCESS THAT'S NECESSARY TO PROTECT EVERYBODY'S RIGHTS, THERE IS A SLOWING DOWN OF FORWARD PROGRESS, WELL, THEN THAT IS A CONSEQUENCE THAT THE COURT CAN'T DO MUCH ABOUT.

MS. FREIWALD:  BUT IT CAN'T BE A PROCESS THAT FORCES ALL EXPERTS INTO A POSITION WHERE THEY'RE GIVING ITERATIVE OPINIONS BEFORE THEY HAVE THE WHOLE VIEW.  AND WHAT WE HAD THE LAST TIME WAS A PROCESS THAT ALLOWED FOR THE PRODUCTION OF THE RECORDS, KEPT THOSE RECORDS CONFIDENTIAL, AND THEN AS WE APPROACHED TRIAL, THE COURT MADE DECISIONS ABOUT WHAT WAS IN AND WHAT WAS OUT BASED UPON WHAT EXPERTS WERE PREPARED TO STAND BEHIND.

THE COURT:  YOU KNOW, THERE'S A MIRROR IMAGE THING HAPPENING HERE, I THINK.  LET ME SEE IF I CAN ARTICULATE IT.

DEFENSE, YOU SAY, "WELL, PLAINTIFF'S COUNSEL REALLY ARE NOT IN A POSITION TO IDENTIFY WHAT'S CLEARLY RELEVANT AND NOT CLEARLY RELEVANT BECAUSE WHAT DO THEY KNOW?  THEY MAY BE VERY GOOD LAWYERS, BUT THEY ARE NOT EXPERT WITNESSES IN THE AREA OF THE ETIOLOGY OF

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

THESE CONDITIONS."

THE MIRROR IMAGE IS THAT NOBODY ON THE DEFENSE SIDE, EXPERT OR PLAINTIFF, IN THE DISCOVERY STAGE CAN SAY THAT SOMETHING IS NOT CLEARLY RELEVANT. BECAUSE MAYBE ANYTHING IS POTENTIALLY RELEVANT.

MAYBE THAT'S NOT SUCH A GREAT MIRROR IMAGE POINT TO BE MADE. BUT BASICALLY, DEFENSE, YOU'RE TELLING ME THERE IS NO LINE TO BE DRAWN, THAT ANY AND ALL RECORDS NEED TO BE CAUGHT UP IN WHAT THE PLAINTIFFS SAY IS A DRAGNET, AND WE'LL SORT IT OUT LATER. I MEAN, THAT'S THE DEFENSE POSITION. THERE IS NO LINE TO BE DRAWN AT THIS POINT. AND I JUST WONDER IS THAT REALLY WHAT THE HILL COURT HAS TAUGHT US ABOUT THESE PRIVACY MATTERS IN DISCOVERY?

MR. DAVIS: WELL --

MR. ESFANDIARY: YOUR HONOR, MAY I BE HEARD?

THE COURT: IN A MINUTE.

MR. DAVIS: YOUR HONOR, I THINK THE PROBLEM IS, IS JUST THE VERY NATURE OF THE PSYCHIATRIC DISORDERS THAT ARE IN PLAY. AND THE FACT THAT THERE ARE SO MANY DIFFERENT PLACES IN THE SCIENTIFIC LITERATURE THAT SAY DIFFERENT MEDICAL CONDITIONS, DIFFERENT PSYCHIATRIC DISORDERS ALL ARE ALTERNATIVE -- POTENTIAL ALTERNATIVE CAUSES FOR WHAT THE PLAINTIFFS SAY IS, "NO, IT'S BABY FOOD AND HEAVY METAL EXPOSURE. THAT'S WHAT CAUSED THE AUTISM OR THE ADHD."

AND THE ABILITY TO TRY TO PARSE OUT PAGE BY

PAGE, DOCUMENT BY DOCUMENT FOR A PROCESS THAT HAS NOT BEEN -- THAT HAS NOT SHOWN TO BE UNWORKABLE OR UNFAIR TO THE PLAINTIFF IN TWO PRIOR CASES --

THE COURT:  HARD TO KNOW.  I MEAN, MS. ALARCON WAS PRETTY ANIMATED IN PRIOR PROCEEDINGS, IN LANDON R., WITH RESPECT TO PRIVACY ISSUES.  I'M NOT SURE SHE WOULD AGREE WITH YOU THAT EVERYTHING WAS SO HUNKY-DORY ALL THE WAY ALONG.

MS. FREIWALD:  WELL, THAT WAS -- YOUR HONOR, THAT WAS ABOUT THE NAME OF THE PLAINTIFF.

THE COURT:  I AGREE.

MS. FREIWALD:  I MEAN, THAT WASN'T ABOUT ANYTHING SPECIFIC, WHICH IS PART OF THE PROBLEM WE HAVE HERE, WHICH IS THAT THEIR EXAMPLES ARE ENTIRELY THEORETICAL.  AND -- I MEAN, THERE'S NO REASON TO THINK THAT ANY OF THE THINGS THAT THEY'RE SPECULATING ABOUT ARE, FOR EXAMPLE, IN THE PRIVILEGE SIDE ARE IN THERE.

WE ALSO HAVE PARENTS, FRANKLY, YOUR HONOR, AS WE SAID IN OUR PAPERS, WHO HAVE PUT A GREAT DEAL OF THEIR OWN LIVES, INCLUDING IN RELATION TO THEIR CHILDREN HAVING AUTISM, OUT IN THE PUBLIC ALREADY.  NOT THIS LAWSUIT, BUT ON SOCIAL MEDIA, ON PUBLIC PLATFORMS.

SO WE'RE -- WE ARE WILLING TO ADHERE TO THIS -- TO THE PROTECTIVE ORDERS THAT WE HAVE, EVEN FOR STUFF THAT THE PARENTS HAVE PUT OUT PUBLICLY, WHICH IS A GREAT DEAL ABOUT THEMSELVES ALREADY.  BUT WE NEED TO BE -- WE NEED TO BE ABLE TO HAVE THEIR MEDICAL RECORDS BECAUSE THE NATURE OF THIS LITIGATION, AS YOUR HONOR HAS

RECOGNIZED, IS THAT IT PUTS THE FAMILY MEDICAL AND SOCIAL HISTORY AT ISSUE.

THE COURT:  MR. ESFANDIARY, DO YOU WANT TO SAY SOMETHING?

MR. ESFANDIARY:  YES.

THE COURT:  GO AHEAD.

MR. ESFANDIARY:  THERE IS A LOT OF THINGS LOST IN THIS CONVERSATION.  THERE IS TWO MAJOR ISSUES IN FRONT OF US.  NUMBER 1 IS PRIVILEGE.  I'M JUST GOING TO START THERE.

THE DEFENDANTS' REQUESTS, AS WE OBJECT, ARE SO ALL-ENCOMPASSING THAT BY DEFINITION THEY PUT IN PRIVILEGED MATERIALS.  PRIVILEGED TEXT RECORDS, PRIVILEGED EMPLOYMENT RECORDS, MARITAL COMMUNICATIONS, ATTORNEY-CLIENT COMMUNICATIONS.  AND THIS COURT OF APPEAL IS VERY CLEAR, YOU CANNOT DEPRIVE A PARTY DURING A PRIVILEGE REVIEW PRIOR TO THE PRODUCTION OF DOCUMENTS BECAUSE OTHERWISE IT'S WAIVED.

THE DEFENDANTS' NOTION THAT "IT'S OKAY, WE'LL DEAL WITH THEM ON THE BACK END" IS MOOT.  BECAUSE WHEN IT COMES TO PRIVILEGE, WHEN THAT DOCUMENT FROM THAT THIRD-PARTY PROVIDER IS GIVEN TO DEFENDANTS WITHOUT US HAVING REVIEWED IT AND THERE'S PRIVILEGED COMMUNICATION MATERIAL IN THERE, THAT IS WAIVED.  AND THAT IS WHY WE MADE THE OBJECTION, AND THAT'S WHY EVERY SINGLE PARTY LITIGATION, YOUR HONOR -- I MEAN, I'VE BEEN DOING THIS, NOT AS LONG AS YOU HAVE, TEN YEARS, I'VE NEVER HEARD OF A PARTY NOT BEING ALLOWED TO DO A PRIVILEGE REVIEW,

ESPECIALLY WHEN IT COMES TO HIGHLY SENSITIVE PSYCHIATRIC AND MEDICAL RECORDS, AS WELL AS EMPLOYMENT RECORDS AND LITIGATION RECORDS OF THIRD PARTIES.

SO THAT'S JUST -- THAT'S THE THRESHOLD ISSUE THAT, PUTTING ASIDE THE PRIVACY DISPUTE, WE SHOULD BE ALLOWED TO DO A FIRST PASS REVIEW TO SCREEN FOR PRIVILEGE.  AND IF THERE IS SOMETHING PRIVILEGED, WE WOULD FOLLOW THE PO AND THE REPORT.

THE COURT:  CAN I ASK A QUESTION ABOUT THAT?

MR. ESFANDIARY:  YES, YOUR HONOR.

THE COURT:  DOES IT SOLVE THE PROBLEM IF THE SUBPOENA SAYS "AND ANY AND ALL RECORDS EXCEPT FOR THE FOLLOWING POTENTIALLY PRIVILEGED KINDS OF COMMUNICATION"?

MR. ESFANDIARY:  YES, IN PART.  AND ACTUALLY OUR NOTICE OF MOTION AND THE REQUEST THAT WE HAVE, IN THE MOTION TO QUASH, CONTEMPLATES THAT.  WE SPECIFICALLY CRAFTED A REVISED VERSION OF DEFENDANTS' REQUEST THAT EXPLICITLY -- EXPLICITLY IN THE SUBPOENA EXCLUDES PRIVILEGED MATERIAL.

THE COURT:  ALL RIGHT.  SO HOW IS THE CUSTODIAN OF RECORDS AT, YOU KNOW, GENERAL PRACTITIONER DR. SO-AND-SO'S OFFICE SUPPOSED TO DEAL WITH THAT?  HOW DO THEY KNOW WHAT'S PRIVILEGED AND WHAT'S NOT?

MR. ESFANDIARY:  WELL, I'M GOING TO SAY IT VARIES PER INSTITUTION.  FOR EXAMPLE, THE LEGAL DEPARTMENT OF AN EMPLOYER WHEN SUBPOENAED FOR EMPLOYMENT

RECORDS, ALSO LITIGATION RECORDS, WOULD OBVIOUSLY BE ABLE TO MAKE THAT DISTINCTION, AND HOUSE COUNSEL -- IN-HOUSE COUNSEL OF THOSE INSTITUTIONS WOULD KNOW WHAT TO DO.  BUT I AGREE.  THAT'S NOT ALWAYS FEASIBLE OR PRACTICAL FOR THE INSTITUTION TO DO THAT, TO MAKE THAT DISTINCTION.  THAT IS WHY WE TRUST LAWYERS IN LITIGATION TO DO THAT.

THAT'S WHAT WE DO AS LAWYERS, WE MAKE PRIVILEGE ASSESSMENTS.  AND WHEN WE COME ACROSS SOMETHING THAT'S PRIVILEGED, WE FOLLOW THE PROTOCOL, PRODUCE THE PRIVILEGE LOG, IDENTIFY SUFFICIENT INFORMATION IN THERE SO THE DEFENDANTS KNOW WHAT IS BEING WITHHELD AND WHAT PRIVILEGE GROUND, ACCORDING TO THE CODE, AND THEN THEY CAN MOVE TO COMPEL DISCLOSURE OF THAT PRIVILEGE IF THEY BELIEVE IT IS WARRANTED AND NOT SUPPORTED BY THE LAW.

I MEAN, THE DEFENDANTS HAVE DONE THIS. THEY'VE PRODUCED TO US PRIVILEGE LOGS AND WE HAVE FOLLOWED THE PROTOCOL ACCORDINGLY.  THEY'VE DONE THEIR PRIVILEGE REVIEWS.  WE'RE SIMPLY ASKING FOR THE OPPORTUNITY TO -- FOR THIRD PARTIES TO DO THEIR PRIVILEGE REVIEWS.  I WOULD ALSO SAY, YOUR HONOR, THAT'S WITH RESPECT TO PRIVILEGE.

WITH RESPECT TO THE PRIVACY, NOT EVEN DR. FOMBONNE'S LENGTHY DECLARATION -- I READ EVERY SINGLE WORD OF IT LAST NIGHT -- NOWHERE DOES IT SAY EVERY SINGLE RECORD IS NEEDED FOR ME TO DO WHAT I NEED TO DO IN THIS CASE.  IT JUST DOESN'T.  HE DOESN'T SAY

WHY TAX RECORDS ARE NEEDED, WHY RECORDS RELATING TO A BROKEN ARM IN A MEDICAL RECORDS FROM 30 YEARS AGO ARE NEEDED.

THIS DRAGNET THAT THE DEFENDANTS ARE REQUESTING IS NOT SUPPORTED BY THEIR OWN EXPERT'S DECLARATION FOR GOOD REASON BECAUSE IT WOULD BE INSANE TO SUGGEST THAT A REFERENCE, FOR EXAMPLE, TO SOMEONE ENJOYING BESTIALITY IN A MEDICAL RECORD THAT IS SOMEHOW RELEVANT TO THE CHILD HAVING AUTISM.  I MEAN, THAT'S PREPOSTEROUS.  DR. FOMBONNE WOULD NEVER SAY THAT.

I'LL ALSO ADDRESS MS. FREIWALD'S COMMENT ABOUT THIS CANNOT BE DEALT WITH WITH AN MIL, THAT ISN'T THE ISSUE.  THE ISSUE THAT THE HILL COURT VERY EXPLICITLY LAYS OUT IS A MATTER OF CAN PARTIES TO BEGIN WITH BE ALLOWED TO INTRUDE UPON THE PRIVACY RIGHTS OF THE THIRD PARTIES AND DISCOVERY MATTER.

WE'RE NOT AT THE MIL STAGE.  THAT'S A WHOLE DIFFERENT ARGUMENT AND A DIFFERENT -- AND A DIFFERENT STANDARD.  THE INQUIRY THE COURT NEEDS TO GRAPPLE WITH IS I DO NEED TO DRAW LINES, BECAUSE WHEN IT COMES TO THE RECORDS OF THIRD PARTIES, THE CALIFORNIA COURT OF APPEALS MADE IT VERY CLEAR, WE DON'T KNOW WHETHER SOMETHING IS RELEVANT IS NOT GOOD ENOUGH.  CAN'T DO IT. MAYBE YOU CAN WITH RESPECT TO PARTY DISCOVERY, THE OFFICIAL EXPEDITIONS IN THE GREYHOUND CASE, I READ THE LAW, I KNOW THE LAW, THAT'S ALLOWED TO SOME EXTENT.  BUT THE COURT OF APPEALS MADE IT VERY CLEAR, WHEN IT COMES TO THIRD-PARTY PRIVACY INTERESTS, WE DON'T KNOW, THAT

Case 3:24-md-03101-JSC    Document 728-2    Filed 05/01/26    Page 23 of 120    CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

THIS MAY LEAD TO SOMETHING, AND WE'RE JUST GOING TO THROW IN THE KITCHEN SINK AND SEE WHAT STICKS, THAT'S NOT GOOD ENOUGH.  THE COURTS RULE IN DISCRETIONAL MANDATES THAT YOU DRAW SOME LINES.  AND OUR NOTICE OF MOTION PROPOSES VERY REASONABLE AND RATIONAL LINES TO BE DRAWN THAT PROTECTS PRIVILEGE AND PRIVACY AT THE OUTSET, BEFORE THE DEFENDANTS SEE THE RECORDS AND THE PRIVACY AND PRIVILEGE AND RIGHTS ARE VIOLATED.

THE COURT:  LET ME ASK A COUPLE QUESTIONS.

FIRST OF ALL, A POINT I THINK THE DEFENSE MAKES, IS THERE A CALIFORNIA CASE, A PUBLISHED CASE THAT RECOGNIZES A FIRST LOOK/FIRST PASS PROCESS RELATIVE TO A SUBPOENA SERVED ON CUSTODIAN OF RECORDS RELATIVE TO THIRD PARTIES?

MR. ESFANDIARY:  I CAN'T, SITTING HERE, THINK OF A CASE, YOUR HONOR.

THE COURT:  IS THERE SUCH A THING IN THE FEDERAL COURT?

MR. ESFANDIARY:  I DON'T KNOW.

THE COURT:  OKAY.

MR. ESFANDIARY:  BUT REMEMBER, THAT -- I THINK THAT GETS MOST OF THE PRIVACY POINT.  WHEN IT COMES TO A PRIVILEGE, THERE IS AN ABUNDANCE OF CASE LAW.

THE COURT:  THAT SAYS WHAT?  I MEAN WITH RESPECT TO -- SO, I MEAN, WHAT WE'RE TALKING ABOUT NOW -- LET'S SAY IT'S A PARTY, TO MAKE IT A LITTLE EASIER.

MR. ESFANDIARY:  SURE.

THE COURT: SO A DEFENDANT SERVES A DEPOSITION SUBPOENA ON THE CUSTODIAN OF RECORDS FOR ANY AND ALL EMPLOYMENT RECORDS FOR SOME REASON. AND THE DEFENDANT SAYS, "OH, THAT'S -- THAT IS VERY LIKELY TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE."

HOW IS THERE A PRIVILEGE REVIEW BEFORE THOSE DOCUMENTS ARE PRODUCED BY THE CUSTODIAN OF RECORDS? WHEN DOES THAT HAPPEN AND HOW DOES THAT HAPPEN?

MR. ESFANDIARY: WELL, I THINK THERE IS -- I THINK THERE IS TWO THINGS. SO, NUMBER ONE, YOU'RE RIGHT, THE SUBPOENA ITSELF, TECHNICALLY, AS SERVED, UNLESS IT EXPLICITLY EXCLUDES SPECIFIC PRIVILEGES AND CONTENT, WILL NOT ALLOW FOR THAT PROCESS.

THAT'S WHY WE HAVE A PROCEDURE IN PLACE FOR THE MOTION TO QUASH -- I FORGET THE STATUTORY CODE THAT ALLOWS THIRD PARTIES TO BRING THIS MOTION -- THAT WILL ALLOW US TO CONDITION OR MODIFY THE SUBPOENA. AND THAT STATUTORY PROCESS IS WHAT GRANTS THE COURT, WITH THE DISCRETION, BECAUSE THE LANGUAGE IS VERY BROAD. MODIFIED -- QUASH, MODIFY, OR CONDITION TO SUBPOENAS. AND I WOULD ARGUE THAT THE MODIFY AND CONDITION LANGUAGE IS WHAT GRANTS THE COURT WITH THE DISCRETION TO CONFER THAT THE RELIEF THAT THE THIRD PARTIES ARE SEEKING -- WHICH WOULD BE TO DO A PRIVILEGE REVIEW.

THERE MAY NOT BE A CASE OUT THERE THAT SAYS IT. THE STATUTE ITSELF PROVIDES FOR THAT WORLD, FOR THAT ABILITY. BECAUSE THE LEGISLATURE IS -- RECOGNIZES

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

THAT WHEN PARTIES ENGAGE WITH THIRD-PARTY DISCOVERY, INEVITABLY THEY ARE GOING TO MAKE A REQUEST THAT A PARTY LITIGATION OR THIRD PARTIES OBJECTED ON THE GROUNDS OF PRIVILEGE OR PRIVACY, WHAT HAVE YOU.

AND THAT'S WHY THEY GAVE THE COURT THAT BROAD STATUTORY DISCRETION TO CONDITION THE SUBPOENAS BY, FOR EXAMPLE, ALLOW YOUR FIRST PASS REVIEW FOR PRIVILEGE.  IT'S BALANCING BETWEEN PARTIES' RIGHT TO DISCOVERY AND ENSURING THAT PRIVILEGES AND PRIVACIES ARE PROTECTED.

THE COURT:  LET ME ASK THE DEFENSE A QUESTION.

IS OR ARE YOUR SUBPOENAS BROAD ENOUGH TO CAPTURE PRIVILEGED INFORMATION?

MR. DAVIS:  YOUR HONOR, TODD DAVIS FOR BEECH-NUT AND WALMART.

BEFORE I ANSWER THAT QUESTION, LET ME TELL YOU SPECIFICALLY WHAT THE SUBPOENAS ARE DIRECTED AT. MEDICAL RECORDS, EMPLOYMENT RECORDS, EDUCATIONAL RECORDS, PSYCHIATRIC RECORDS, OKAY, IN THE POSSESSION OF THOSE HEALTHCARE PROVIDERS OR SCHOOLS OR EMPLOYERS, RIGHT?

THE COURT:  RIGHT.

MR. DAVIS:  WE ARE NOT TALKING ABOUT PLACES OR ENTITIES THAT ARE GOING TO HAVE ATTORNEY-CLIENT COMMUNICATION INFORMATION AS PART OF THE DAY-TO-DAY WORK THAT THEY DO IN ANY OF THOSE PARTICULAR FIELDS.  WE'RE NOT TALKING -- AND, IN FACT, THE PLAINTIFF HAS NEVER

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

IDENTIFIED ANY DOCUMENT THAT MAY BE SUBJECT TO ANY PRIVILEGE THAT THEY'VE ASSERTED.

SECOND -- AND THINK ABOUT THAT FOR A SECOND --

THE COURT:  WELL, I HAVE THOUGHT ABOUT IT. I KNOW WHAT YOU'RE SAYING, BUT YOU'RE NOT -- SO LET'S SAY HYPOTHETICALLY THERE IS A COMMUNICATION FROM, YOU KNOW, A SPIRITUAL LEADER TO, YOU KNOW, TO ONE OF THESE PARENTS, YOU KNOW, GIVING IN A SPIRITUAL COUNSELING AND ADVICE, OKAY, AND I'M ASKING YOU JUST HYPOTHETICALLY TO GO WITH ME ON THAT.  AND FOR SOME REASON IT'S IN THE EMPLOYER'S FILE.

IS YOUR SUBPOENA BROAD ENOUGH TO DRAGNET THAT IN?

MR. DAVIS:  THE EMPLOYEE THEY ASKED FOR -- THE SUBPOENAS ASKED FOR EMPLOYMENT RECORDS --

THE COURT:  RIGHT.  SO IT'S IN THE -- I'M ASKING YOU TO ASSUME, PER THE HYPO, THAT IT'S IN THE EMPLOYEE'S PERSONNEL FILE.

MR. DAVIS:  LET'S ASSUME THAT.  THERE IS A CALLBACK PROVISION IN THE PROTECTIVE ORDER --

MS. FREIWALD:  JUST A MINUTE.  JUST A MINUTE.

THE COURT:  ALL RIGHT.  HE'S GOT THE FLOOR.

MR. DAVIS:  JUST LET ME GET THROUGH IT. GIVE ME A LITTLE BIT OF TIME.

THE COURT:  WE'VE GOT ALL DAY.

MR. DAVIS:  YEAH, THANK YOU, YOUR HONOR.

THANK YOU FOR YOUR PATIENCE.

FIRST OF ALL, THAT THERE'S A CLAWBACK PROVISION IF THERE'S SOMETHING THAT'S POTENTIALLY PRIVILEGED.  THE PROTECTIVE ORDER PROVIDES FOR THAT.

SECOND OF ALL, THINK ABOUT THAT FOR A SECOND IN TERMS OF HOW IT PLAYS OUT IN PRACTICALITY, THAT THERE IS A PRIVILEGED COMMUNICATION THAT'S BEEN -- THAT THE PLAINTIFFS HAVE THAT HAVE BEEN GIVEN TO A THIRD PERSON.  THERE IS NO PRIVILEGE ANY LONGER.

THIRD, THEY HAVE NOT COME FORWARD IN THEIR MOTION TO QUASH WITH ANY SPECIFIC CIRCUMSTANCES TO SAY THAT ANY SUCH DOCUMENT EXISTS OR THEY EVEN HAVE A SUSPICION THAT THEY ACTUALLY EXIST.

FOURTH, YOUR HONOR, WHEN WE -- YOUR HONOR ADDRESSED THE PRIOR OBJECTIONS BACK -- IN YOUR MARCH 2ND ORDER.  ONE OF THE OBJECTIONS THEY MADE WAS THAT -- AND I'LL READ IT TO YOU, IT SAYS THAT THEY WANTED THIS FIRST PASS REVIEW BECAUSE THEY WANTED THE OPPORTUNITY TO REVIEW, DETERMINE RELEVANCE, MATERIALITY, AND ANY APPLICABLE PRIVILEGE OR IMMUNITY FROM PRODUCTION.

YOUR HONOR ASSESSED THIS CLAIM OF PRIVILEGE OR IMMUNITY AND OVERRULED THE OBJECTION.

THE COURT:  IN THE CONTEXT OF A FIRST-PASS REQUEST.

MR. DAVIS:  YES.  WHICH IS EXACTLY WHAT THEY'RE ASKING FOR HERE.

SO THE IDEA THAT THERE IS SOME PRIVILEGED COMMUNICATION THAT WOULD EVEN EXIST IN THESE CUSTODIAL

Case 3:24-md-03101-JSC    Document 728-2    Filed 05/01/26    Page 28 of 120

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

FILES FOR MEDICAL OR PHARMACY OR INSURANCE RECORDS IS REALLY -- IT'S NOT SUSTAINABLE, BUT HOW THESE ENTITIES OPERATE IN WHAT THEY DO OR THEY DON'T.  AND LAWYERS AREN'T INVOLVED IN THAT.  AND TO THE EXTENT THE PLAINTIFF ASSERTS THERE IS SOMETHING, THAT THE DISCLOSURE OF THAT TYPE OF INFORMATION TO THIRD PARTIES DESTROYS THE CONFIDENTIAL COMMUNICATION, DESTROYS THE PRIVILEGE.  AND EVEN IF IT DID NOT, THEY STILL HAVE THE MECHANISM OF A CLAWBACK WHERE WE COULD CONTEST THAT ISSUE UNDER THE PROTECTIVE ORDER.

SO THIS DOESN'T -- THIS GROUNDS FOR A "WE NEED TO DO THIS BECAUSE IT'S PRIVILEGED," TO DO A REVIEW FOR MEDICAL AND INSURANCE, PHARMACY RECORDS, I'LL BE HONEST WITH YOU, I'VE NEVER HEARD OF THAT ANYWHERE IN KIND OF MASS COURT WORK WHERE THAT KIND OF -- THAT KIND OF REVIEW IS DONE.  AND THE REASON IT'S NOT DONE IS OBVIOUS.  THOSE AREN'T THE ENTITIES THAT HAVE THIS KIND OF INFORMATION.

THE COURT:  ALL RIGHT.

MR. ESFANDIARY:  YOUR HONOR?

THE COURT:  HOLD ON.  HOLD ON.

MR. ESFANDIARY, LET'S TALK ABOUT PRIVILEGE, OKAY?  THE POSSIBILITY THAT THERE ARE PRIVILEGED MATERIALS IN THESE RECORDS THAT NEED TO BE SCREENED FOR IN ADVANCE.

WHAT ARE YOU TALKING ABOUT?  WHAT KIND OF PRIVILEGED DOCUMENTS ARE YOU IDENTIFYING IN YOUR MIND?

MR. ESFANDIARY:  FOR SURE.  AND JUST FOR

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

CONTEXT, THE DEFENDANTS' REQUEST IS FOR ANY AND ALL.  IN EVERY SINGLE REQUEST IT'S ANY AND ALL EMPLOYMENT, MEDICAL, AND EDUCATIONAL RECORDS THROUGHOUT TIME GOING BACK TO DAY ONE.

WE'RE TALKING ABOUT TAX RECORDS PRIVILEGE. REQUESTING THE PARTIES TAX -- THIRD PARTIES' TAX RECORDS, WHICH THEY'VE DONE, THAT IMPLICATES THE TAX RECORD PRIVILEGE, WITH NO EXCEPTION.

REQUESTING THE ENTIRE EMPLOYMENT FILE, INCLUDING CLAIMS RELATED TO LITIGATION, WORKERS' COMP, SO ON, THAT IMPLICATES ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES WITH NO APPLICABLE EXCEPTION.

THERE IS THE PSYCHOTHERAPIST-PATIENT PRIVILEGE.  REQUESTING A THIRD PARTIES' ENTIRE PSYCHIATRIC HISTORY RECORDS, THAT IMPLICATES AND VIOLATES THE PSYCHOTHERAPIST-PATIENT PRIVILEGE WITH NO APPLICABLE EXCEPTION.

THE DEFENDANTS WILL SAY THAT RIGHT HAS BEEN WAIVED, THAT PRIVILEGE HAS BEEN WAIVED BECAUSE OF THE PARTY LITIGANT EXCEPTION.  I SUBMIT, YOUR HONOR, WE SUBMITTED IN OUR PAPERS IT'S NOT ACCURATE.  THE PARTY LITIGANT EXCEPTION IS LIMITED TO WHAT THE NAMES ON IT HAS, PARTY LITIGANTS.

THESE PARENTS ARE NOT PARTY LITIGANTS, THEY'RE THIRD PARTIES.  SO THE NOTION THAT THEY SOMEHOW WAIVED THEIR PSYCHOTHERAPIST-PATIENT PRIVILEGE OR THEIR PHYSICIAN-PATIENT PRIVILEGE UNDER CALIFORNIA LAW, IS NOT SUPPORTED BY THE LAW IN THE STATUTE.

Case 3:24-md-03101-JSC   Document 728-2   Filed 05/01/26   Page 30 of 120

I WILL SAY TO THE EXTENT THERE IS ANY KIND OF PARTY LITIGANT WAIVER THAT'S OCCURRED BY VIRTUE OF THE FILING OF THIS CASE, THE STATUE IS VERY CLEAR, THE CONDITION HAS TO BE RELATED TO WHAT IS BEING LITIGATED. RANDOM CONDITIONS AND OFFHAND REFERENCES TO A PARTY'S PAST, YOU KNOW, ARE NOT -- BY DEFINITION DO NOT ALWAYS MEAN RELATED TO AUTISM.

I GAVE A PRETTY EXPLICIT EXAMPLE EARLIER. NO ONE IS GOING TO COME AND SAY THAT CAUSED AUTISM. THAT'S PRECISELY THE KIND OF SITUATION THAT THE PSYCHOTHERAPIST PRIVILEGE RIGHT IS TRIGGERED TO THE EXTENT THAT PARTY LITIGANT EXCEPTION HAS BEEN RECOGNIZED AND THAT PIECE OF INFORMATION IS STILL PROTECTED UNDER PRIVILEGE.

THE COURT:  WHAT ABOUT --

MR. ESFANDIARY:  I'LL ALSO SAY --

THE COURT:  HOLD ON.  WHAT ABOUT -- WHAT IF THERE WERE A SUBPOENA DIRECTED TO SAMUEL R.'S PARENTS' DERMATOLOGIST.  IT SAYS, "HEY, I WANT ANY AND ALL RECORDS REGARDING YOUR DERMATOLOGICAL CONDITION."  IS THAT OKAY OR NOT OKAY?

MR. ESFANDIARY:  ANY AND ALL RECORDS RELATED TO -- DOES THE SUBPOENA SPECIFY DERMATOLOGIC -- I CAN'T PRONOUNCE THE WORD.

THE COURT:  ANY AND ALL RECORDS RELATING TO YOUR CARE AND TREATMENT OF, YOU KNOW, MR. R.

MR. ESFANDIARY:  YEAH.  TO THE EXTENT THAT'S SEEKING THE PARENTS' RECORDS, THE

PHYSICIAN-PATIENT PRIVILEGE WILL PROTECT THOSE,
ABSOLUTELY, UNDER CALIFORNIA LAW.  JUST BY DEFINITION IT
WOULD.

THE COURT:  SO THE REASON I PICK ON THAT IS
BECAUSE DR. FOMBONNE TELLS ME IN PARAGRAPH 44 OF HIS
DECLARATION THAT PSORIASIS IS A RELEVANT THING.  HE
NEEDS TO KNOW ABOUT PSORIASIS.

MR. ESFANDIARY:  RELEVANCE DOES NOT
OVERCOME PRIVILEGE.

THE COURT:  WELL, OKAY.  BUT WE'RE --
RELEVANCE DOES NOT OVERCOME PRIVILEGE.

MR. ESFANDIARY:  IF SOMETHING IS
PRIVILEGED, IT'S PRIVILEGED.  IF THESE COMPANIES HAVE
INTERNAL MEMOS BETWEEN THEM AND THEIR LAWYER'S SAYING,
"WE BELIEVE HEAVY METALS IN A BABY CAUSES AUTISM," IT
SURE AS HECK IS RELEVANT TO MY CLIENT.  BUT I CAN'T SEE
IT BECAUSE OF ATTORNEY-CLIENT COMMUNICATIONS.

THE COURT:  WELL, IT'S INTERESTING.  YOU
KNOW, I THINK THE PARENTS HERE ARE NEITHER -- LET ME SAY
THAT DIFFERENTLY.

I DON'T THINK IT IS ACCURATE TO DESCRIBE
THE PARENTS' PARTICIPATION IN THIS LAWSUIT EITHER AS
PARTY LITIGANTS OR TRUE THIRD PARTY -- THIRD PARTIES.
THEY'RE SOMEWHERE IN BETWEEN, TO BE HONEST WITH YOU.
PRESUMABLY, THEY ARE PARTICIPATING IN THIS LITIGATION BY
CONSENT.  NOBODY -- NOBODY IS SEEKING TO FORCE THEM TO
PARTICIPATE IN THIS LITIGATION, YET HERE THEY ARE.

MAYBE I'M WRONG ON THAT.  MAYBE, YOU KNOW,

MRS. R., ONE OF THE MRS. R.'S OR MR. R. IS SAYING, YOU KNOW, "I DON'T WANT ANY PART OF THIS, BUT THE GUARDIAN AD LITEM IS PROCEEDING ANYWAY." BUT I HAVEN'T SEEN ANYTHING LIKE THAT. AND WE HAVE A SITUATION WHERE I THINK EVERYBODY AGREES THE GENETICS IS A FUNDAMENTAL QUESTION WITH WHICH THE COURT, THE PARTIES, AND THE JURY MUST GRAPPLE.

SO YEAH, YOU'RE RIGHT -- WELL, I'M NOT SURE YOU'RE RIGHT WHEN YOU SAY THAT RELEVANCE NEVER OVERCOMES PRIVILEGE. PRIVILEGE, LET'S SEE.

SO THE PATIENT TELLS THE DOCTOR SOMETHING IN CONFIDENCE AND IT GOES INTO A MEDICAL RECORD. DOESN'T THAT HAPPEN ALL THE TIME IN PERSONAL INJURY LITIGATION WHERE THEN THE RECORD IS OBTAINED IN DISCOVERY AND THE THOUGHT IS THAT THE PARTY PUT THAT IN -- THAT MEDICAL CONDITION AT ISSUE AND THEREFORE... I'M WONDERING WHAT "THEREFORE" IS. IS IT THE PRIVILEGE NO LONGER APPLIES OR IS IT THE PRIVACY NO LONGER APPLIES?

MR. ESFANDIARY: YOUR HONOR, THERE'S TWO ANSWERS TO THAT QUESTION.

NUMBER ONE, I WOULD JUST SAY ABSOLUTELY THERE IS A DIFFERENCE BETWEEN PARTIES AND THESE PARENTS. THESE PARENTS ARE NOT GOING TO BE ON THE VERDICT FORM AT TRIAL. THEY ARE NOT PARTIES TO THE LITIGATION. THEIR RIGHTS ARE NOT BEING AFFECTED BY JUDGMENTS AND ORDERS THIS COURT MAKES OUTSIDE THE CURRENT DISPUTE WE'RE HAVING OVER THEIR THIRD-PARTY RECORDS.

SO ABSOLUTELY THERE IS A DISTINCTION BETWEEN PARTIES AND THESE PARENTS AS OPPOSED TO NONPARTIES IN THIS LITIGATION.  AND COURT OF APPEALS IS VERY CLEAR, SERVING AS A GUARDIAN AD LITEM FOR A CHILD IN LITIGATION DOES NOT MAKE YOU A PARTY TO THAT LITIGATION.  WE HAVE CLEAR CASE LAW THAT WE CITED IN OUR BRIEF.

THE COURT:  I TAKE YOUR POINT ON THAT. YOU'RE RIGHT ABOUT THAT, BUT WHAT'S UNIQUE HERE, AT LEAST AMONG THE CASES CITED TO ME, IS THAT THE PARENTS -- THE PARENTS' GENOMES AND THE PARENTS' LIVES ARE THE SOURCE OF THE RELEVANT INFORMATION.

NOW, THAT DOESN'T MEAN THEY DON'T HAVE ANY RIGHTS, PRIVACY, PRIVILEGE, OR OTHERWISE, BUT THIS IS NOT A SITUATION WHERE A THIRD PARTY THAT IS ABSOLUTELY REMOTE AND ATTENUATED FROM THE UNDERLYING DISPUTE IS BEING DRAGGED IN AGAINST ITS WILL.  I THINK WE HAVE TO RECOGNIZE THAT.

MR. ESFANDIARY:  ABSOLUTELY.  AND THAT'S EXACTLY WHY THE COURT OF APPEALS INSTRUCTS TRIAL COURTS TO DRAW LINES.  THAT IS WHY DEFENDANTS' ALL-OR-NOTHING APPROACH DOESN'T WORK BECAUSE THE COURT, USING ITS DISCRETION, HAS TO GRAPPLE WITH, OKAY, WHERE DO I DRAW THE LINES RESPECTIVE TO WHAT THE GERMANE FACTS OF THIS CASE ARE, RECOGNIZING THAT THIRD PARTIES AUGMENTED A HIGH PROTECTION AGAINST DISCOVERY, AND RECOGNIZING THAT PRIVILEGES ARE BEING IMPLICATED.

SO WHEN IT COMES --

THE COURT:  LET ME JUST SAY I MIGHT HAVE MADE A MISTAKE BY AGREEING TO ADVANCING THIS MOTION FROM ITS ORIGINAL DATE, WHICH I THINK WAS APRIL 2 OR SOMETHING.  BECAUSE WHAT I SAID IS, "YEAH, YEAH, YEAH, I'LL DO THAT IF YOU ALL WANT, AND I'LL JUST GIVE THE PLAINTIFFS AN ORAL REPLY."

THE PROBLEM IS I SURE WOULD LOVE TO SEE A DECLARATION FROM THE PLAINTIFF'S SIDE'S EXPERT IN RESPONSE TO FOMBONNE TELLING ME WHERE THE LINE SHOULD BE DRAWN.  BECAUSE ALL I'VE GOT RIGHT NOW IN FRONT OF ME IS AN EXPERT TELLING ME "DON'T DRAW ANY LINES."  AND I'VE GOT LAWYERS TELLING ME, "NO, NO, NO, YOU HAVE TO DRAW LINES."

IT WOULD HELP ME TREMENDOUSLY TO HEAR FROM A PLAINTIFF'S EXPERT SAYING, "HERE'S WHERE FOMBONNE IS WRONG, AND HERE ARE THE LINES YOU SHOULD DRAW."  AND LET ME JUST SAY ONE OTHER THING TO GET IT OUT IN THE OPEN.

YOU KNOW, PLAINTIFF SAYS, "WELL, IF YOU DON'T BASICALLY GRANT OUR MOTION, WE'RE GOING TO SEEK A WRIT REVIEW," I INVITE THAT.  I HOPE YOU DO.  OR I HOPE MAYBE BOTH SIDES DO.  IT WOULD BE GREAT TO GET SOME COURT OF APPEAL GUIDANCE ON THIS BECAUSE I DON'T THINK EXISTING LAW PROVIDES MUCH GUIDANCE TO A TRIAL COURT IN THIS SITUATION.

SO I WOULD LIKE TO HAVE A RECORD THAT YOU ALL WANT IF YOU WANT TO GO UP ON A WRIT REVIEW.  AND FRANKLY, THE RECORD ON THE MOTION TO OVERRULE OBJECTIONS TO THE AUTHORIZATIONS IS A CRUMMY RECORD.  RESPECTFULLY

TO ALL INVOLVED, I DON'T THINK IT WAS A VERY WELL-THOUGHT-OUT MOTION, EITHER SIDE.

YOU KNOW, THE DEFENSE THOUGHT THAT THE WHOLE DISPUTE WAS ABOUT THIRD PARTY -- I'M SORRY, A FIRST PASS. THAT'S WHAT I SHOULD HAVE SAID, THAT THE WHOLE DISPUTE IS JUST, WELL, PLAINTIFFS WANT A FIRST PASS, AND THEY DON'T GET A FIRST PASS, AND THEREFORE, THE MOTION'S OVER. AND THE PLAINTIFF SAYS TO ME, "OH, NO, NO, WE HAVE ALL THESE OTHER OBJECTIONS THAT WE WANT YOU TO RULE ON," TO WHICH THE DEFENDANTS HAVE PUT IN BASICALLY NOTHING IN OPPOSITION.

SO I DON'T LOVE THE RECORD, AND I HOPE MY -- I HOPE THAT CAME ACROSS IN MY, WHAT IS IT, MARCH 2 ORDER, WHERE I SAID, "WELL, YOU KNOW, I GUESS I HAVE TO RULE ON THESE." I DON'T -- AND SO HERE I HAVE.

I AM NOT UNHAPPY, I'LL PUT IT THAT WAY, THAT THE PLAINTIFFS ARE TEEING THIS UP AFRESH WITH RESPECT TO THE DEPOSITION SUBPOENAS. BECAUSE I THINK WE NOW HAVE A MORE FOCUSED PROCEEDING.

MR. DAVIS: YOUR HONOR, MAY I RESPOND?

MR. ESFANDIARY: IN RESPONSE TO THE POINT ABOUT GETTING A DECLARATION FROM OUR EXPERT, I THINK THIS IS WHERE THE NUANCE COMES IN.

YES, THAT COULD POTENTIALLY FURTHER ELUCIDATE YOUR HONOR WHEN IT COMES TO THE PRIVACY ISSUE. I DON'T THINK IT'S NECESSARILY THAT MUCH MORE INFORMATIVE ONE WAY OR ANOTHER WHEN IT COMES TO PRIVILEGE. BECAUSE WHEN IT COMES TO MAKING A PRIVILEGE

Case 3:24-md-03101-JSC    Document 728-2    Filed 05/01/26    Page 36 of 120

OBJECTION, YOUR HONOR, I THINK IT'S VERY CLEAR THAT IT MAKES SENSE THAT THE STATUTE AT ISSUE THAT WE'RE LITIGATING WOULD CONFIRM WITH THE COURT THE DISCRETION TO ALLOW A NONPARTY TO DO A PRIVILEGE REVIEW BEFORE DOCUMENTS ARE PRODUCED TO PRESERVE ANY POTENTIAL PRIVILEGE BECAUSE OTHERWISE, THEY'VE WAIVED.

THE COURT:  HOLD ON.

YOU ARE -- LOOK, MR. ESFANDIARY, YOU ARE ARGUING FOR, IN GOOD FAITH, A MAJOR EXTENSION OF THE LAW.  BECAUSE NOBODY HAS TOLD ME, INCLUDING YOU, THAT THERE IS ANY LAW PROVIDING FOR WHAT YOU'RE ASKING FOR.

NOW, I'M NOT SAYING THAT A COURT OF APPEAL COULD NOT CREATE A NEW PROCESS AND ENGRAFT IT ONTO THE DISCOVERY ACT, BUT THEY HAVEN'T YET.  SO, I MEAN, IT IS NOT A MINOR POINT, A MINOR THING THAT THE PLAINTIFFS ARE CONTENDING HERE FOR.  AND I DON'T -- HOLD ON.  AND I DON'T THINK IT WILL SATISFY YOU, MR. ESFANDIARY, IF I SIMPLY SAY TO THE DEFENDANTS, "REISSUE YOUR SUBPOENA AND PUT IN THE FOLLOWING APPOSITIVE CLAUSE, COMMA, EXCLUDING ALL PRIVILEGED MATERIAL, COMMA."

YOU'RE NOT GOING TO BE VERY HAPPY WITH THAT, ARE YOU?

MR. ESFANDIARY:  I AGREE, BUT HERE'S THE THING.  THE LAW, YOUR HONOR, WHEN IT COMES TO PRIVILEGE, IS VERY CLEAR.  THERE IS A REASON THE COURT OF APPEALS SAYS IT CANNOT FORCE A PARTY TO PRODUCE DOCUMENTS CLAIMING PRIVILEGE OVER, EVEN IF IT MEANS TO DO AN IN-CAMERA REVIEW.

THE PARTY HAS TO BE ALLOWED TO DO THEIR PRIVILEGE REVIEW.  IF THEY ASSERTED A PRIVILEGE OBJECTION OVER A DOCUMENT, IT SHOULD BE ALLOWED TO DO PRIVILEGE REVIEW EVEN BEFORE THE COURT GETS TO DO IN-CAMERA REVIEW OF THE DOCUMENTS TO DETERMINE WHETHER A PRIVILEGE ACTUALLY EXISTS OR DOESN'T EXIST.

THE COURT:  AND YOU SAY IT'S VERY CLEAR, YET I ASKED YOU, SHOW ME THE STATUTE OR THE CASE THAT SAYS IT'S VERY CLEAR THAT IN A DEPOSITION SUBPOENA GOING TO A THIRD-PARTY DOCTOR, THAT THERE IS A PRIVILEGE REVIEW PRIOR TO THE PRODUCTION OF THOSE RECORDS.  NOW, MAYBE THAT WOULD BE A GREAT LAW FOR THE LEGISLATURE TO ENACT OR THE COURT OF APPEAL TO CREATE A JUDGE-MADE LAW. BUT I DON'T SEE THAT LAW YET.

MR. ESFANDIARY:  YOUR HONOR, IF THE RECORDS BELONG -- HERE, THE MEDICAL RECORDS BELONG TO THE PARTY MAKING THE OBJECTION, THERE ISN'T MUCH DIFFERENCE BETWEEN THE PARTY MAKING THE OBJECTION IN THE CONTEXT OF THE THIRD-PARTY SUBPOENA TO THE PARTY MAKING THE OBJECTION WHEN IT ITSELF IS IN POSSESSION OF THE RECORDS THAT IS GOING TO REQUEST FOR PRODUCTION AND BEFORE TURNING THEM OVER IT MAKES AN OBJECTION ON PRIVILEGE.

THE RECORDS FUNDAMENTALLY BELONG TO THAT PARTY.  I THINK THIS IS A PROCEDURAL NUANCE THAT'S KIND OF GETTING LOST IN THE CONVERSATION ABOUT THE SUBSTANTIVE RIGHT.  THE SUBSTANTIVE RIGHT OF PRIVILEGE IT EXTENDS TO DOCUMENTS BELONGING TO THAT PARTY.

THE COURT:  IT'S NOT A NUANCE.  I AGREE

WITH YOU WHAT YOU JUST SAID.  SO THE NOTICE TO CONSUMER GOES OUT.  THE CONSUMER SAYS, "OH, MY GOSH, THIS IS OVERBROAD.  THERE IS PRIVILEGED STUFF IN THERE, I OBJECT."  AND THEREFORE, I DIRECT THE THIRD-PARTY CUSTODIAN OF RECORDS, DON'T PRODUCE RECORDS THAT I OBJECT TO OR DON'T PRODUCE ANYTHING.  AND THEN EVERYBODY COMES TO COURT, AND PRIOR TO PRODUCTION THERE IS SOME TAILORING THAT PERHAPS -- ON THE SCOPE OF THE SUBPOENA.

BUT FOR YOU TO SAY, WELL, IT'S JUST A MERE NUANCE BETWEEN THAT AND A FIRST-LOOK REVIEW BY THE CONSUMER, I DON'T AGREE WITH YOU.  THAT IS NOT A MERE NUANCE.  THAT IS A WHOLE NEW PROCEDURE THAT YOU ARE CALLING FOR.

MR. ESFANDIARY:  BUT IT'S THE PROCEDURE THAT IS SUPPORTED BY THE DISCRETION GIVEN TO THE COURT IN A STATUTE THAT SAYS THE COURT CAN CONDITION, MODIFY, OR QUASH THE SUBPOENA.

THE COURT:  YOU MIGHT BE RIGHT.  LET ME ASK THE DEFENSE.

IS HE RIGHT?  IS IT WITHIN MY DISCRETION TO SAY, YOU KNOW WHAT, THERE IS ABSOLUTELY NO LAW IN THIS, BUT IN THIS CASE, I THINK THAT'S A REALLY GOOD IDEA AND I'M GOING TO ALLOW IT?

WOULD THAT BE AN ABUSE OF DISCRETION?

MR. DAVIS:  YOU MEAN, IN TERMS OF -- JUST SO I'M CLEAR, YOUR HONOR, WHAT YOU'RE ASKING --

THE COURT:  FIRST LOOK.

MR. DAVIS:  FIRST LOOK.

THE COURT: THE HYPOTHETICAL IS THERE IS NO LAW ON THIS THAT I CAN FIND IN THE STATE. I HAVEN'T LOOKED IN OTHER STATES OR THE FEDERAL SYSTEM, BUT, YOU KNOW, I'M LOOKING FOR BINDING OF CALIFORNIA AUTHORITY, AND I DON'T FIND ANY, BUT, YOU KNOW WHAT, IN THIS CIRCUMSTANCE, I THINK IT'S A REALLY GOOD IDEA TO LET PLAINTIFF'S COUNSEL HAVE A FIRST LOOK AND HOLD BACK THINGS THAT THEY CONTEND ARE PRIVILEGED AND ARE PRIVATE -- SUFFICIENTLY PRIVATE THAT THEY OUGHT NOT BE PRODUCED IN LIGHT OF THE SCOPE OF DISCOVERY.

COULD I DO THAT OR IS THAT -- WOULD THAT BE AN ABUSE OF DISCRETION?

MR. DAVIS: WE DON'T KNOW -- WE DON'T HAVE THE CASES. JUST --

THE COURT: YOU GOT A LOT OF HELP DOWN THERE.

MR. DAVIS: I'M GETTING A LOT OF HELP. I'M COMING BACK TO YOUR POINT THAT YOU'VE ALREADY MADE, YOUR HONOR, WHICH IS THERE IS NO CASE LAW, THERE IS NO STATUTE, THERE IS NO PROVISION THAT ALLOWS THE COURT TO DO THIS KIND OF FIRST PASS REVIEW.

THE COURT: SOMEBODY'S GOT TO BE THE FIRST.

MR. DAVIS: WELL, THE CASE LAW IS --

MR. MERRYMAN: YOUR HONOR, BRYAN MERRYMAN FOR GERBER.

THERE IS A CCP SECTION THAT WE CITE IN THE MOTION TO QUASH AND WE CITED -- IN OUR OPPOSITION AND WE CITED IN OUR LAST MOTION THAT SPECIFICALLY REQUIRES THE

THIRD PARTY. AND WE'RE TALKING ABOUT THIRD PARTIES HERE WHERE WE CAN'T GET OVER THE WAIVER ISSUE THAT REQUIRES A THIRD PARTY TO SEND THE PRODUCTION TO THE DOCUMENT -- TO THE LITIGATION -- THE -- IN THE SUBPOENA THERE'S AN ADDRESS TO WHOMEVER IS IN THE -- IDENTIFIED ON THE SUBPOENA AND THE CCP SECTION REQUIRES THE DOCUMENTS BE SENT THERE.

THERE IS NO PROVISION OR ALLOWANCE IN THE CODE TO DEVIATE FROM THAT. SO THERE IS A CCP SECTION THAT TELLS US HOW THIS IS SUPPOSED TO HAPPEN AND MUST HAPPEN.

THE COURT: SO WHAT'S THE ANSWER TO MY QUESTION? IF I ORDER IT ANYWAY, IS THAT AN ABUSE OF DISCRETION?

MR. MERRYMAN: YES, YOUR HONOR, BECAUSE YOU WOULD BE IN -- CONTRADICTING THE CCP SECTION ON POINT HERE.

THE COURT: OKAY.

MR. ESFANDIARY: YOUR HONOR, THAT'S NOT ACCURATE.

CCP 1987.1, IT SPECIFICALLY SAYS THE COURT CAN MAKE ANY ORDER TO QUASH, AMEND, OR CONDITION THE SUBPOENA. THAT IS A DISCRETION GIVEN TO THE TRIAL COURT. YOU CAN REWRITE THE SUBPOENA COMPLETELY. YOU CAN IMPOSE TIME RESTRICTIONS. YOU CAN IMPOSE A FIRST PASS REVIEW PROCESS FOR PRIVILEGE. IT DOESN'T -- THE COURT IS NOT CONFINED TO AN ALL-OR-NOTHING APPROACH. THAT'S THE DISCRETION GIVEN TO YOU UNDER THAT SECTION OF

THE CODE PARTICULARLY AS IT RELATES TO THIRD-PARTY SUBPOENAS AND THEIR OBJECTIONS TO THOSE.

THE COURT: OKAY. I HEAR YOU.

SO LET ME ASK THE PLAINTIFF'S SIDE. I'M OFFERING YOU AN OPPORTUNITY TO HAVE A MORE EXPANDED RECORD IF YOU WANT IT FOR ANY WRIT REVIEW.

DO YOU WANT ME TO GIVE YOU A CHANCE TO PUT IN A REPLY WITH A DECLARATION FROM YOUR EXPERT, ONE OR MORE EXPERTS IN SUPPORT OF YOUR LINE DRAWING?

MR. ESFANDIARY: WELL, MY IMMEDIATE RESPONSE IS YES, BUT MAY I JUST QUICKLY CONFER BY ELECTRONIC MEANS BY MS. ALARCON?

YES, YOUR HONOR, WE'RE FINE WITH THAT.

MR. DAVIS: YOUR HONOR, MAY I ADD SOMETHING TO THAT?

MS. ALARCON: JUST BEFORE YOU MOVE OVER TO DEFENSE, YOUR HONOR, NOT ONLY WOULD WE TAKE THE OPPORTUNITY TO SUBMIT A REPLY, BUT WE COULD ALSO ADDRESS YOUR HONOR'S QUESTION REGARDING WHAT AUTHORITY YOU HAVE TO ORDER IT TO BE PRODUCED TO PLAINTIFF'S COUNSEL, FOR EXAMPLE.

THE COURT: WELL, I'D LOVE YOU TO CITE ME A CASE THAT SAYS I CAN DO IT.

MR. DAVIS: YOUR HONOR, JUST TO CIRCLE BACK ON THIS POINT ABOUT AN EXPERT'S DECLARATION, RIGHT, AND JUST TO RECYCLE, WE GOT HERE BECAUSE THIS WAS THE PROCESS THAT THE PLAINTIFFS WANTED.

THEY WANTED TO WAIVE THEIR REPLY AND THEY

CERTAINLY HAD THE OPPORTUNITY TO PRESENT A DECLARATION AT ANY OF THE OTHER OPPORTUNITIES THAT WE'VE ADDRESSED THIS ISSUE ON MULTIPLE OCCASIONS.

BUT SETTING THAT ASIDE, I WOULD POINT THE COURT TO PARAGRAPH 52 OF DR. FOMBONNE'S DECLARATION WHERE HE SAYS THAT IF REDACTIONS ARE MADE TO THESE RECORDS BY ANY PERSON, PHYSICIAN OR OTHERWISE, UNFAMILIAR WITH THE MYRIAD OF POTENTIAL ISSUES AT PLAY, INFORMATION THAT ALLOWS A MEDICAL REVIEWER TO ASSESS A FULL MEDICAL PSYCHIATRIC PICTURE MAY BE OMITTED.  AND EVEN IF A PHYSICIAN WERE INVOLVED, THERE COULD BE REASONABLE DISAGREEMENTS ABOUT WHAT INFORMATION IS INFORMATIVE TO THE PARENTS' POTENTIAL RISK FACTORS FOR ASD OR ADHD.

THE COURT:  OKAY.

MR. DAVIS:  THIS ALSO APPLIES TO SIBLING RECORDS.

THE COURT:  WHAT'S YOUR POINT?

MR. DAVIS:  MY POINT IS THAT EVEN IF WE GET INTO THIS DISAGREEMENT BY EXPERTS ABOUT WHAT IS OR IS NOT RELEVANT, WE HAVEN'T BEEN ABLE TO DISPOSITIVELY SAY THAT THE INFORMATION THAT COULD BE POTENTIALLY REDACTED IS NOT INFORMATIVE AND SPEAKS TO THE VERY ISSUE OF ALTERNATIVE CAUSATION.

THE COURT:  I HEAR YOU, BUT DO YOU SEE THE SITUATION I'M IN -- THE COURT, THAT IS -- IS IN?

THE PROPOSITION IS PUT TO ME THAT THE COURT SHOULD DRAW SOME LINES.  AND THAT IS NOT A REMARKABLE

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PROPOSITION.  I DO THINK THAT THE LAW IS CLEAR, THE LEGAL CULTURE OF DISCOVERY IS CLEAR THAT COURTS DO DRAW LINES WHEN IT COMES TO THINGS LIKE PRIVACY.

I AGREE WITH YOU, MR. ESFANDIARY, THERE'S NOT MUCH LINE DRAWN TO BE HAD WITH PRIVILEGE.  PRIVILEGE IS KIND OF A CATEGORICAL THING THAT IT EITHER IS OR ISN'T.  BUT THE PLAINTIFF IS SAYING TO ME YOU NEED TO DRAW SOME LINES AND THE DEFENSE IS SAYING THERE ARE NO LINES THAT CAN BE DRAWN AND HERE'S A VERY HIGHLY-QUALIFIED EXPERT WHO, IN 53 PARAGRAPHS, EXPLAINS WHY.  AND, YOU KNOW, IT'S A VERY GOOD DECLARATION, AND I BELIEVE DR. FOMBONNE IS VERY WELL-CREDENTIALED.

IN RESPONSE TO THAT, I HAVE LAWYERS FROM THE PLAINTIFF SAYING YOU SHOULD DRAW LINES ANYWAY, AND HERE ARE THE LINES YOU SHOULD DRAW.  AND I'VE ALREADY SAID I RESPECT PLAINTIFF'S COUNSEL VERY MUCH, BUT THEY ARE NOT AS WELL-QUALIFIED AS DR. FOMBONNE, BUT THEY PROBABLY HAVE AN EXPERT WHO IS.  SO I WOULD BE INTERESTED TO SEE WHAT THAT EXPERT HAS TO SAY ON THE LINE DRAWING PROPOSITION.

I TAKE YOUR POINT THAT THOSE EXPERTS MAY DISAGREE.  I WAS GOING TO SAY PROBABLY.  I DON'T KNOW. MAYBE THEY WON'T.  I MEAN, IF, YOU KNOW, MAYBE BOTH WOULD SAY, YOU KNOW WHAT, IF MR. R. BROKE HIS ARM WHEN HE WAS 13 YEARS OLD, NO, I DON'T REALLY NEED THOSE RECORDS, AT WHICH POINT YOU MIGHT COME TO ME AND SAY REALLY, YOU WANT THE CUSTODIAN OF RECORDS TO NOW TAKE OUT THE BROKEN ARM FROM -- WHEN THIS 48-YEAR-OLD

GENTLEMAN WAS 13 YEARS OLD?

MR. DAVIS:  THAT HARDLY QUALIFIES AS HIGHLY SENSITIVE INFORMATION COMPARED TO EVERYTHING ELSE.  I AGREE.

MS. FREIWALD:  MAY I --

MR. DAVIS:  SO TO THE POINT -- YOUR HONOR, THE ISSUE KIND OF -- THIS IS AN ISSUE YOU HAVE KIND OF SET OUT WAY BACK IN AUGUST OF 2022, WHEN YOU WERE ASSESSING THIS VERY FIRST -- FOR THE VERY FIRST TIME AT THE IDC AND NC.  AND YOUR HONOR HEARD ARGUMENTS ALMOST PARALLEL TO ALL OF WHAT YOU'VE HEARD TODAY ABOUT THE ACCESS TO THE PARENTAL RECORDS AND YOU DECIDED, ON BALANCE, BECAUSE OF THE REASONS FOR SPEAKING TO ALTERNATIVE CAUSATION, THOSE SHOULD BE PRODUCED.  AND THEY WERE IN THAT CASE, AND THEN THEY WERE AGAIN IN THE LANDON R. CASE.  AND THEN WE'VE HEARD ISSUES AGAIN ABOUT THESE TWO CASES.

AND, YOUR HONOR, I THINK THE REITERATION OF THE PRIVILEGE ARGUMENT, I'M GOING TO SET ASIDE ATTORNEY-CLIENT PRIVILEGE BECAUSE THAT TO ME IS KIND OF A DIFFERENT ISSUE, BUT WE'VE SPOKEN TO AS TO ANY PRIVILEGE AS TO THOSE PSYCHIATRIC AND MEDICAL RECORDS AND THE MEDICAL HISTORIES OF THE PLAINTIFF, TO THE EXTENT THAT'S THE PRIVILEGE THAT PLAINTIFFS ARE TALKING ABOUT, YOUR HONOR HAS ADDRESSED THIS OVER AND OVER AGAIN.  AND YOU DID IT -- YOU DID IT AT THAT TIME UNDERSTANDING OF WHAT THE CAUSATION ISSUES WERE IN PLAY, AND THAT'S PROVEN BY THE HISTORY OF THESE CASES THAT

THAT WAS A RESULT THAT WAS FULLY SUPPORTED BY THE

SCIENCE.  AND DR. FOMBONNE'S EXPERT DECLARATION OUTLINES

THOSE -- ALL THOSE ISSUES IN SPADES.

AND SO HERE WE ARE AGAIN, SEVERAL YEARS

LATER, WRESTLING -- YOU KNOW, WRESTLING WITH THE SAME

ARGUMENT AND NOTHING HAS REALLY CHANGED.

THE COURT:  WELL, SOMETHING'S CHANGED, AND

THAT IS THAT AT LEAST IN SOME OF THESE PRIOR OCCASIONS,

IT WAS AN IDC.  AND I HAVE NO RECORD.  AND --

MR. ESFANDIARY:  YOUR HONOR.

THE COURT:  HOLD ON.  AND I SAID WHAT I

SAID IN THE IDC AND THE PARENTS APPARENTLY ACQUIESCED TO

IT BECAUSE THERE WAS NO MOTION PRACTICE THEREAFTER.  BUT

NOW THIS MAY BE DIFFERENT.  THERE IS A RECORD.

AND I MEAN, LOOK, I THINK IT'S -- I GIVE

AWAY NOTHING WHEN I TELL YOU THAT -- WITHDRAWN.

WITHDRAWN.

MS. FREIWALD:  MAY I --

THE COURT:  I'M GOING TO GIVE YOU A CHANCE,

MS. FREIWALD.  LET ME JUST SEE IF I CAN FINISH MY

THOUGHT HERE.

I THINK THE COURT OF APPEAL WOULD EXPECT OF

A TRIAL JUDGE IN THIS CIRCUMSTANCE TO REALLY PRESS AND

PROBE THE ASSERTION THAT ALL RECORDS ARE NECESSARY.

BECAUSE IT IS -- THE "ANY AND ALL" RECORDS

GOING -- WE'LL JUST TALK ABOUT, SAY, MEDICAL RECORDS AND

PSYCHIATRIC RECORDS INVOLVING THESE PARENTS, WHETHER WE

CHOOSE TO CALL THEM THIRD PARTIES OR IN SOME, YOU KNOW,

ARE QUASI-NONPARTY, NONTHIRD-PARTY STATUS, WHICH I SUGGESTED MIGHT EXIST HERE, IT IS A -- IT'S PRETTY BROAD, "ANY AND ALL."

GENERALLY SPEAKING, I'M NOT A BIG FAN OF "ANY AND ALL" DOCUMENT REQUESTS.  SO I DO THINK THAT THE COURTS OF APPEAL WOULD EXPECT ME TO DIG DEEPER.

SO I WANT TO GIVE THE PLAINTIFF A CHANCE TO TELL ME THROUGH AN EXPERT WHERE THE LINE SHOULD BE DRAWN.  AND LOOK, I'M LOOKING FOR SPECIFICS.  IF -- PLAINTIFF'S SIDE, I MEAN, YOU HAVE ARGUED IN YOUR MOTION THAT THIS IS WHERE THE LINE SHOULD BE DRAWN.  SO MAYBE YOU'LL WANT TO DIVERT FROM THAT A LITTLE BIT, DIVERGE FROM THAT A LITTLE BIT BASED ON WHAT YOUR EXPERTS CITE, BUT I NEED CLEAR GUIDANCE, NOT -- I WAS GOING TO SAY PLATITUDES.  THAT'S THE WRONG WORD.

I DON'T NEED BROAD STATEMENTS OF DISCOVERY POLICY, OKAY?  I KNOW WHAT TO -- I KNOW THAT THERE IS A RIGHT OF PRIVACY IN THE CALIFORNIA CONSTITUTION.  I'VE READ HILL AND ITS PROGENY.  I UNDERSTAND THAT.  WHAT I NEED IS HELP APPLYING IT SPECIFICALLY IN THIS CASE -- IN THESE TWO CASES.

THE OTHER THING I REALLY WANT TO KNOW MORE ABOUT IS YOUR PRIVILEGE CLAIM.  I'LL BE HONEST WITH YOU. I DON'T REALLY SEE IT.

I HEAR YOU ON TAX RECORDS, WONDERS IF CALIFORNIA LAW ON CIVIL DISCOVERY OF TAX RECORDS IS A PRIVILEGE OR NOT.  I THINK IT'S DESCRIBED AS SUCH. ALTHOUGH IT'S VERY INTERESTING.  I WILL TELL YOU AS A

FORMER FAMILY LAW JUDGE, THAT THE FAMILY LAW BAR WOULD BE AGHAST TO HEAR THAT THERE IS ANY PROHIBITION ON THE PRODUCTION OF TAX RECORDS.

IN FACT, THERE'S A STATUTE REQUIRING THE PRODUCTION OF TWO YEARS OF TAX RECORDS WITHIN 60 DAYS OF THE FILING OF ANY PETITION FOR DISSOLUTION.  SO THERE'S THAT.  BUT CIVIL, I UNDERSTAND IS A LITTLE DIFFERENT.

WORKERS' COMP RECORDS AND MEDICAL AND PSYCHIATRIC RECORDS ARE CUSTOMARILY PRODUCED RELATIVE TO THE PLAINTIFF, AND I TAKE THE PLAINTIFF'S POINT HERE THAT THESE RECORDS AREN'T DIRECTED TO A PLAINTIFF, BUT TO THE PARENTS OF THE PLAINTIFF.  I UNDERSTAND THAT. AND I UNDERSTAND THAT MAYBE A DIFFERENT RULE NEEDS TO APPLY OR MAYBE IT DOESN'T.

SO IS THERE ANYTHING ELSE THE DEFENSE WANTS TO SAY?

MS. KISER:  YES, YOUR HONOR.  THANK YOU, THIS IS LIV KISER ON BEHALF OF BEECH-NUT WALMART.

I JUST WANT TO CREATE A RECORD ON THE CONCEPT OF A BROKEN ARM BECAUSE I DO REPRESENT A LOT OF AUTISTIC KIDS IN MY PRO BONO PRACTICE.

THE CONTEXT IN WHICH THAT OCCURRED COULD BE RELEVANT.  IF A CHILD, SAY, JUMPED 20 FEET FROM THE TOP OF A TREE, IT'S IMPULSIVITY.  SOME OF THESE CHILDREN, THEY INJURE THEMSELVES.  THESE ARE THINGS THAT COULD BE RELEVANT AND I THINK THE THING THAT THE DEFENSE IS STRUGGLING WITH IS THE IDEA THAT YOU COULD SOMEHOW DRAW THESE LINES WITHOUT THE CONTEXT BECAUSE THE CONTEXT IS

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

EVERYTHING.

THE COURT:  OKAY.  I UNDERSTAND THE POINT.

MR. MERRYMAN:  YOUR HONOR, BRYAN MERRYMAN FOR GERBER.

PRIVILEGE OBJECTIONS, AS YOUR HONOR STATED IN YOUR MARCH 2 ORDER, NEED TO BE MADE WITH SPECIFICITY, AND WE'VE HEARD A LOT OF TYPES OF PRIVILEGED DOCUMENTS THROWN OUT HERE AT THIS HEARING, AND YOUR HONOR JUST MENTIONED TAX RECORDS.

I LOOKED AT -- THE ONLY SUBPOENA WHERE I CAN THINK OF THAT MIGHT HAVE COME UP WOULD BE THE EMPLOYER SUBPOENAS, AND I JUST LOOKED AT ONE.  THERE'S NO REQUEST FOR TAX RECORDS.  THERE'S NOT EVEN A REQUEST FOR INCOME.  THE REQUEST ASKS FOR A LOT OF OTHER THINGS, AND IT'S POSSIBLE THAT --

THE COURT:  THAT THERE'S A W-9 IN THERE.

MR. MERRYMAN:  EXACTLY, WHICH IS DISCOVERABLE.  BUT IF THE PLAINTIFFS ARE CONCERNED THAT THEY GAVE A TAX RETURN, PUTTING ASIDE WHAT YOUR HONOR SAID ABOUT WHETHER OR NOT IT'S DISCOVERABLE, THEN THE LAW REQUIRES THEM TO MAKE A SPECIFIC OBJECTION BASED ON PRIVILEGE AND SAY WE GAVE OUR TAX -- EMPLOYER X MAY HAVE OUR TAX RETURNS AND WE OBJECT TO THE PRODUCTION OF THE TAX RETURN.

THE COURT:  AND YOUR POINT TO ME IS YOU DON'T THINK THAT THAT WAS -- THAT THE OBJECTIONS ARE SPECIFIC ENOUGH HERE TO THESE SUBPOENAS RELATIVE TO PRIVILEGE?

MR. MERRYMAN: YES, YOUR HONOR. AND THAT'S AFTER YOU GET BY THE WAIVER ISSUE, WHICH THE COURT SHOULD JUST ADDRESS FIRST IN TOTAL ON THESE. THESE ARE THIRD-PARTY SUBPOENAS.

SO GENERALLY, WHEN INFORMATION IS SHARED WITH A THIRD PARTY, THE PRIVILEGE IS WAIVED.

THE COURT: YOU KNOW, GENERALLY, YOU'RE RIGHT. ALTHOUGH IT'S NOT ALWAYS THE CASE. YOU KNOW, MARITAL PRIVILEGE STUFF THAT IS SHARED WITH A THIRD PARTY ISN'T NECESSARILY ALWAYS WAIVED.

MR. MERRYMAN: I'M NOT -- I AGREE, YOUR HONOR. THERE ARE EXCEPTIONS. BUT THAT'S MY POINT. THE PLAINTIFFS -- OR THE PARENTS HERE WERE REQUIRED TO HAVE OBJECTED, IF THEY'RE OBJECTING ON PRIVILEGE WITH SPECIFICITY.

SO IN RULING ON THAT OBJECTION, I'M JUST ASKING THAT THE COURT LOOK AT WHETHER THE OBJECTIONS WERE WITH SUFFICIENT SPECIFICITY. THANK YOU.

MR. ESFANDIARY: YOUR HONOR, CONCLUDING REMARKS?

THE COURT: HOLD ON. HOLD ON.

LET ME GET THE DEFENSE CONCLUDING REMARKS AND THEN I'LL GET THE PLAINTIFF CONCLUDING REMARKS.

MS. FREIWALD: JUST -- HOPE FREIWALD. JUST FOR THE RECORD, YOUR HONOR, I THINK IT'S IMPORTANT TO NOTE THAT YOU HAVE MORE THAN TWO IDCS FROM THE PRIOR LITIGATION.

YOU HAVE THE EXPERIENCE OF THOSE

LITIGATIONS WHICH WENT START TO FINISH, AND IN THOSE CASES, IN FACT, THERE WAS SOME INFORMATION THAT THE PLAINTIFF PARENTS THOUGHT WAS SENSITIVE.

IT WAS ALSO NOT BLACK AND WHITE THE WAY THE PLAINTIFFS ARE TRYING TO SUGGEST THE LINES WOULD BE DRAWN.  FOR EXAMPLE, THERE WASN'T A CLEAR DIAGNOSIS OF X OR Y, OR A CLEAR ADMISSION OF A OR B.  THERE WERE BEHAVIORS THAT WERE OBSERVED.

THERE WAS HISTORY OF TROUBLE OF VARIOUS KIND THAT EXPERTS THEN USED TO CREATE A PICTURE.  AND WE HAD THOSE RECORDS.  AND THEN THERE WAS AN OPPORTUNITY PRIOR TO TRIAL FOR THE PLAINTIFFS TO FILE MOTIONS IN LIMINE, AND THE COURT ACTUALLY DENIED THOSE MOTIONS IN LIMINE AS WE SAID IN OUR PAPERS.

THE COURT:  WHERE DO THEY DO THAT?  IN NC?

MS. FREIWALD:  IN NC AND IN LANDON, I BELIEVE.

THE COURT:  I'M NOT SURE I GOT TO --

MS. FREIWALD:  MAYBE NOT, MAYBE -- NO, I'M SORRY, LANDON, WE DIDN'T GET THERE.  YOU'RE CORRECT.  IT WAS IN NC.  BUT WE DID COLLECT THE RECORDS IN BOTH CASES.  IN BOTH CASES IT WAS IMPORTANT TO OUR ABILITY TO UNDERSTAND THE FAMILY HISTORY, THE FAMILY GENETIC HISTORY, THE FAMILY PSYCHOSOCIAL HISTORY, AND WHAT WE'RE DOING HERE IS NO DIFFERENT FROM WHAT WE DID SUCCESSFULLY IN THOSE CASES, SUBJECT TO THE TWO-TIER PROTECTIVE ORDER.

AND IT'S EXACTLY WHAT WE LITIGATED AND WHAT

YOUR HONOR RULED ON ON MARCH 2ND.  BECAUSE AS YOUR HONOR RECOGNIZED ON MARCH 2ND, THE SUBSTANTIVE ANALYSIS IS THE SAME, WHETHER YOU'RE DOING IT THROUGH AN AUTHORIZATION OR THROUGH A SUBPOENA.  THE PLAINTIFF'S ARGUMENTS ARE FUNCTIONALLY THE SAME.

SO WHAT WE HAVE HERE IS JUST KIND OF, YOU KNOW, THE FOURTH BITE AT THE APPLE TO SOME DEGREE DRESSING UP THE PRIVACY LINE THAT THE PLAINTIFFS WANT TO NAVIGATE BY THEIR OWN SAY-SO UNDER THE HEADER OF PRIVILEGE.

THE COURT:  ALL RIGHT.  MR. ESFANDIARY AND/OR MS. ALARCON.

MR. ESFANDIARY:  YES, YOUR HONOR.

I WILL SAY THIS PRIOR HISTORY THAT WE HAD WITH NC AND LANDON IS VERY INFORMATIVE.  YOUR HONOR ALLOWED US TO DO A FIRST PASS REVIEW OF EDUCATIONAL AND EMPLOYMENT RECORDS IN THOSE TWO CASES.  IT DID NOT CLIMB UP THE CASE, IT DID NOT LEAD TO ANY DISPUTES.  WE DID SOME REDACTIONS.  WE WITHHELD SOME STUFF.  WE REACHED OUT TO THE DEFENDANTS AND WE WORKED IT OUT.  PRACTICALLY SPEAKING, ON THIS FIRST PASS, NOT MUCH IS GOING TO COME OF IT.

PRACTICALLY SPEAKING, WE'RE NOT GOING TO WITHHOLD, FOR EXAMPLE, DERMATOLOGY RECORDS ON SOME PRIVILEGE OBJECTION.  THE POINT IS THAT THE THIRD PARTIES HAVE TO BE GIVEN THE OPPORTUNITY TO SCREEN FOR THAT PRIVILEGE.  THAT'S WHAT EACH -- EVERY PARTY IS ENTITLED TO DO.  WE SHOULD BE ABLE TO SCREEN FOR THE

PRIVILEGE BEFORE PRODUCING IT.

OF COURSE THE DEFENDANTS ARE GOING TO GET PARENTS' PSYCHIATRIC RECORDS.  OF COURSE THEY'RE GOING TO GET THE MEDICAL RECORDS.  IT'S ABOUT THE PROCESS BY WHICH TO DO SO, SO THAT THE THIRD PARTIES DON'T WAIVE THEIR PRIVILEGE OBJECTIONS, THEIR POTENTIAL PRIVILEGE OBJECTIONS GIVEN HOW BROAD THESE SUBPOENAS ARE.

SO I WANT TO LAY THAT OUT THERE THAT, PRACTICALLY SPEAKING, THIS IS NOT GOING TO HAVE THE DOOMSDAY RESULTS THAT THE DEFENDANTS AND THE COURT HAVE ALLUDED TO BECAUSE WE'VE DONE IT PREVIOUSLY AND IT HASN'T LED TO ANY ISSUES.

WE'RE ALREADY COLLECTING CERTAIN PARENTS' RECORDS AND WE'RE GOING TO SCREEN THOSE FOR PRIVILEGE AND PRIVACY UNDER OBJECTIONS AND WE'LL PRODUCE THOSE, AND I THINK THAT WAS GOING TO DEMONSTRATE THAT WE'RE JUST MAKING A MOUNTAIN OUT OF A MOLEHILL, THAT THIS IS GOING TO SOMEHOW LEAD TO PROTRACTED LITIGATION AND THIS CASE IS NEVER GOING TO GET TO TRIAL.  THIS IS NOT ACCURATE.

I WOULD ALSO SAY WITHOUT -- I CAN'T TELL YOU THE CASE RIGHT NOW, BUT FIRST PASS REVIEW, YOUR HONOR, IS CONTINUING IN THE MASS TORTS AND EXCHANGE AUTHORIZATIONS.

MR. DAVIS STARTED HERE BY SAYING, LOOK, THEY'RE NOT GOING TO DO THE AUTHORIZATIONS AND THEY'RE GOING TO SUBPOENA US.  THE AUTHORIZATIONS USUALLY COME IN EXCHANGE FOR THE THIRD PARTIES OF THE PLAINTIFF

DURING THE SCREEN.  FULL PRIVILEGE AND PRIVACY BEFORE PRODUCTION.  WE'RE DOING IT IN ZANTAC, WE DID IT IN ROUNDUP.  I DON'T KNOW WHY THE DEFENDANTS ARE TAKING AN APPROACH THAT WE CAN'T FOLLOW THE SAME PROCEDURE.  IF THE DEFENSE WANTS TO BE REASONABLE AND DRAW LINES, WE CAN REACH AN AGREEMENT, I THINK, ON A LOT OF THIS.

THE COURT:  OKAY.

MR. ESFANDIARY:  AND I THINK THAT THE ALL-OR-NOTHING APPROACH IS NOT PRODUCTIVE AND NOT GOING TO GET US ANYWHERE.

THE COURT:  LET ME ASK THE DEFENSE SOMETHING.

WE'RE GOING TO TAKE A BREAK SHORTLY FOR EVERYBODY'S BENEFIT, INCLUDING MINE, BUT BEFORE WE DO, I THINK MR. ESFANDIARY IS CORRECT THAT AT LEAST IN NC, THERE WAS A FIRST PASS PROCESS THAT APPARENTLY YOU ALL ACCEDED TO.

MR. DAVIS:  THAT WAS IN CONNECTION WITH EMPLOYMENT RECORDS ONLY.

MR. ESFANDIARY:  AND EDUCATIONAL.

MR. DAVIS:  I THINK IT WAS -- WELL, IT WAS ONE OR THE OTHER.  EVEN IF IT WAS BOTH, IT WAS NOT THE PSYCHIATRIC AND THE MEDICAL RECORDS.

AND I THINK AS WE TALKED ABOUT LAST TIME, WHAT HAPPENED THERE IS WE WERE ONLY ABLE TO IDENTIFY TWO REDACTIONS OVER TWO CASES WHERE THAT HAPPENED.  AND SO AGAIN, IT SPEAKS TO THE ISSUE ABOUT WHY THE INFORMATION THAT WAS PRODUCED IN THE CASE WAS RELEVANT, WAS

INFORMATION THAT WAS NOT OBJECTED AS BEING IRRELEVANT OR HIGHLY SENSITIVE.

AND I ALSO WOULD KIND OF CIRCLE BACK IF YOUR HONOR COULD CIRCLE BACK TO MR. ESFANDIARY'S EXPLANATION THAT HE JUST OFFERED BECAUSE I THINK IT ENCAPSULATES EXACTLY WHY LINES CAN'T BE DRAWN.

HE SAYS, "WE'RE GOING TO GET PSYCHIATRIC RECORDS. WE'RE GOING TO GET MEDICAL RECORDS." IN OTHER WORDS, THEY ARE SAYING THAT THOSE ARE INFORMATION THAT IS NOT OFF LIMITS. THAT IS NOT SOMETHING THAT IS NOT DISCOVERABLE AND GERMANE TO THE CASE. THEY'RE ACKNOWLEDGING THAT. AND AT THE SAME TIME, THEY'RE ALSO NOT GIVING YOUR HONOR ANY PLACES TO DRAW THE LINES, WHICH IS SUPPORTIVE OF WHY WE THINK WE HAVE TO HAVE THE INFORMATION IN TOTAL TO BE ABLE TO PUT THE CONTEXT OF THE SYMPTOMS, THE ASSESSMENTS, IN THE CONTEXT OF THE BROADER PICTURE OF ALL THE RECORDS FOR THE PARENTS TO BE ABLE TO PIECE TOGETHER WHAT THEIR MEDICAL, PSYCHIATRIC, AND SOCIAL HISTORIES ARE AND HOW THAT PLAYS OUT AS DR. FOMBONNE GOES INTO EXCRUCIATING DETAIL IN HIS DECLARATION.

THE COURT: OKAY.

MR. ESFANDIARY: ONE POINT -- LAST FINAL POINT ON THE PRIVILEGE. THIS IS REALLY IMPORTANT FOR APPELLATE PURPOSES. THE RECORD IS SAFER, YOUR HONOR, FOR YOU TO ALLOW A THIRD PARTY UNDER 1987 STATUTE TO DO A FIRST PASS REVIEW FOR PRIVILEGE THAN IT IS IF YOU DON'T ALLOW THEM TO DO THAT AS A MATTER OF ABUSE OF

DISCRETION.

YOU'RE NOT GOING TO GET REVERSED IF A THIRD PARTY IS ALLOWED TO DO A SCREENING FOR PRIVILEGE, OBJECTS TO SOMETHING THAT'S PRIVILEGED AND IF YOU RULE THAT PRIVILEGE, I THINK THE CHANCE OF REVERSAL ARE WAY HIGHER FOR NOT ALLOWING A THIRD PARTY TO DO A SCREENING FOR PRIVILEGE AND THAT PRIVILEGE IS, OVER YOUR OBJECTION, WAIVED BEFORE IT HAD A CHANCE TO SCREEN FOR IT AND WITHHOLD INFORMATION.

THE COURT:  GIVE ME A MINUTE, PLEASE.

DO YOU ATTACH, PLAINTIFF'S SIDE, YOUR OBJECTIONS TO ANY OF THESE DEPOSITION SUBPOENAS TO ANY OF THE PAPERS HERE?

MR. ESFANDIARY:  SO WHEN WE FILED THIS MOTION, WE HADN'T YET SUBMITTED THE OBJECTION.  THE DEADLINE FOR THAT HADN'T COME UP.  WE HAVE NOW.  I'M HAPPY TO SUPPLEMENT THE RECORD WITH THOSE OBJECTIONS.

BECAUSE IN THE STATUTE THE PARTIES -- THIRD PARTIES GET AN OPTION OR RIGHT OF OBJECTING AND WILL MOVE TO QUASH AND WE MOVE TO QUASH -- LITERALLY THREE DAYS WITHIN GETTING THE SUBPOENAS, AND WE'VE OBJECTED SINCE THEY WERE SUBMITTED FOR OBJECTIONS AND WE'RE HAPPY TO PROVIDE THE COURT WITH THOSE OBJECTIONS.

THE COURT:  ONE MOMENT, PLEASE.

WELL, IN YOUR REPLY, I'D LIKE TO KNOW MORE ABOUT YOUR POSITION ON PRIVILEGE, BECAUSE I'M STRUGGLING.

HOW LONG DO YOU NEED TO GET A DECLARATION

AND YOUR REPLY ON FILE?

MR. ESFANDIARY:  YOUR HONOR, I HATE TO BE AMBIGUOUS, ESPECIALLY WHEN IT COMES TO SCHEDULING THINGS LIKE THAT, AND I'LL GET RIGHT TO THE POINT, BUT IF I HAVE TO CONSULT MY EXPERT AND GET A DECLARATION FROM THEM, THAT COULD TAKE -- I'M NOT SURE WHAT THE AVAILABILITY IS.  DR. SHAPIRO IS VERY -- HE'S A TRAINED PHYSICIAN.  HE'S VERY BUSY DAY IN AND DAY OUT.  BUT I CAN -- A WEEKEND WOULDN'T BE A PROBLEM.  IT'S JUST TO GET A DECLARATION.  IF -- ONE SECOND.

THE COURT:  TELL YOU WHAT, LET'S TAKE A BREAK AND YOU CAN TAKE COUNSEL WITH THE WISE, MEANING MS. ALARCON.  AND YOU CAN TELL ME WHAT YOU WANT TO DO.

LET ME JUST BE CLEAR ON THIS.  I AM OFFERING THE PLAINTIFF AN OPPORTUNITY TO PUT IN A REPLY AFTER ALL, EVEN THOUGH, AS COUNSEL HAS POINTED OUT FOR THE DEFENSE, I ACCEDED TO THE REQUEST TO ADVANCE THIS HEARING, AND PLAINTIFF'S OFFER TO WAIVE A REPLY.  BUT I, THE COURT, I WANT A REPLY AT THIS POINT.

SO I WILL SAY, PLAINTIFF'S SIDE, IF ON REFLECTION YOU DECIDE, YOU KNOW WHAT, WE DON'T WANT A REPLY, WE LIKE THE RECORD AS IT IS, OKAY.  I WON'T INSIST.  BUT IF YOU DO WANT A REPLY, WELL, THEN I'LL SET A DATE.

MR. DAVIS:  YOUR HONOR, MAY I ASK A QUESTION OF THE COURT THAT RELATES TO THAT ISSUE?

USUALLY HOW THIS IS -- WE WOULD TYPICALLY GET THIS STRUCTURED IS THAT THERE WOULD BE -- THE

OPPOSITION WOULD KIND OF SET OUT THE GROUNDS FOR THE BASES OF WHATEVER THE LINES ARE GOING TO BE DRAWN, AND WE WOULD RESPOND TO THAT THROUGH OUR OPPOSITION. BECAUSE THEY ARE FILING A REPLY THAT NOW DOES THAT.  WE WOULD ASK THAT WE BE ALLOWED TIME TO SUBMIT A RESPONSE.

THE COURT:  I'LL GIVE YOU AN ORAL SURREPLY.

MR. DAVIS:  WELL, WE MAY HAVE TO DO A DECLARATION, TOO.  THAT'S MY -- DEPENDING ON WHAT DR. SHAPIRO PUTS IN.

THE COURT:  WELL, MAYBE.

LOOK, I DO WANT TO FOLLOW THE GENERAL RULE. THIS IS THEIR MOTION.  YOU FILE AN OPPOSITION AND I'M GOING TO GIVE THEM A REPLY.  AND THEN WE'LL SEE.

MR. DAVIS:  IT'S --

THE COURT:  WE'LL SEE.

MR. DAVIS:  I UNDERSTAND, YOUR HONOR.  WE CAN TAKE THIS UP, BECAUSE I KNOW YOU HAVE SOMEBODY BEHIND US, BUT I WOULD WANT TO ADD SOMETHING TO THAT DISCUSSION WHEN WE COME BACK.

THE COURT:  ALL RIGHT.  I'LL SEE YOU IN TEN MINUTES.  ABOUT 10:50.  THANK YOU.

(RECESS FROM 10:39 A.M. TO 11:04 A.M.)

THE COURT:  HAIN BABY FOOD CASE.  HOPE EVERYBODY'S BACK.

MR. DAVIS, YOU HAD SOMETHING YOU WANTED TO SAY?

MR. DAVIS: YES, YOUR HONOR. THANK YOU. TODD DAVIS FOR BEECH-NUT AND WALMART.

YOUR HONOR, IN LIGHT OF THE FACT IF PLAINTIFFS ARE GOING TO SUBMIT NEW EVIDENCE, WE WOULD LIKE THE OPPORTUNITY TO -- WE REQUEST THE OPPORTUNITY TO RESPOND TO IT BECAUSE WE HAVEN'T HAD THE OPPORTUNITY TO DO THAT. BECAUSE IF THEY'RE -- THEY HAVEN'T DRAWN THE LINES YET IN TERMS OF THEIR ORIGINAL MOTION, AND IF THEY'RE GOING TO NOW DRAW LINES ABOUT WHERE THE PARAMETERS AND THE SCOPE OF THE SUBPOENA SHOULD BE, WE WANT THE OPPORTUNITY TO BE ABLE TO HAVE A WRITTEN SUBMISSION TO RESPOND TO THAT AS WELL AS PUT IN A DECLARATION POTENTIALLY FROM OUR OWN EXPERT.

THE COURT: OKAY. SO LET ME JUST FIND OUT FROM THE PLAINTIFF'S SIDE.

ARE YOU STILL OF A MIND THAT YOU WOULD LIKE THE REPLY AND DECLARATION OPPORTUNITY?

MR. ESFANDIARY: DEFINITELY THE REPLY, YOUR HONOR. AND I WOULD JUST SAY WE DID LAY OUT LINES IN OUR EIGHT-PAGE NOTICE OF MOTION. WE DID DRAW THE LINES.

NOW, IT'S A MATTER OF YOUR HONOR ASKED FOR -- I ALSO SUBMIT A POTENTIAL EXPERT DECLARATION AND CITE SOME LAW HAVING TO DO THAT, BUT IN THE ORDINARY COURSE, THAT'S WHERE THE TRAIN STOPS, RIGHT?

WE GET A REPLY AND THE DEFENDANTS DON'T GET A SURREPLY BY CODE. SINCE YOU'RE NOT GIVING US THE OPPORTUNITY TO FILE A REPLY WE SHOULD FOLLOW THE SAME PROCEDURE WE WOULD AS IF WE HAD FILED A REPLY TO BEGIN

WITH.

THE COURT:  HOW LONG DO YOU NEED TO GET THESE PAPERS ON FILE?

MR. ESFANDIARY:  I REQUEST BY APRIL 1ST, YOUR HONOR.  AND WE HAVE A HEARING ON APRIL 3RD.

MS. FREIWALD:  YEAH, YOUR HONOR, THAT'S -- APRIL 3RD IS NOT A DATE THAT I THINK IS REALLY WORKABLE.

THE COURT:  OKAY.  WE'LL WORRY ABOUT THE HEARING IN A MINUTE.

OKAY.  PLAINTIFFS, YOU CAN HAVE TO APRIL 1, 2026, TO FILE A REPLY, WHICH MAY INCLUDE A DECLARATION, ONE OR MORE DECLARATIONS, I SUPPOSE.  AND AT PRESENT, I'M NOT GOING TO PERMIT A SURREPLY.  NOT YET.  IF I NEED TO, I'LL KEEP AN OPEN MIND.  BUT I AGREE WITH MR. ESFANDIARY, WE'LL -- THEY DID -- THEY DID SET SOME GOALPOSTS IN THEIR ORIGINAL MOTION AND -- ANYWAY, I DON'T WANT TO GIVE YOU A SURREPLY RIGHT NOW.

MR. DAVIS:  WE APPRECIATE IT.

YOUR HONOR, I UNDERSTAND WE MAY BE COMING BACK TO YOU AND ASKING FOR ONE SIMPLY BECAUSE THE REASON OF, HERE, WE'RE GOING TO HAVE A DECLARATION PUT IN BY AN EXPERT THAT IS SUPPOSEDLY GOING TO PROVIDE EVIDENCE, NEW EVIDENCE THAT HASN'T BEEN CONSIDERED YET BY US, HAVEN'T HAD AN OPPORTUNITY TO REVIEW, ASSESS IT, AND WE THINK IT'S IMPORTANT ENOUGH IF THE PLAINTIFFS GET THE OPPORTUNITY TO PUT SOMETHING IN WHICH WE SUBMIT THEY SHOULD HAVE PUT IN ORIGINALLY TO SUPPORT THE MOTION BECAUSE IT WAS THEIR EFFORT TO PROVIDE THE EVIDENCE

Case 3:24-md-03101-JSC    Document 728-2    Filed 05/01/26    Page 60 of 120    Page 58
CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

ABOUT WHY THE MOTION TO QUASH SHOULD BE GRANTED BY THE SUBPOENA, SHOULD BE EITHER QUASHED OR MODIFIED.  AND HERE, THEY'RE NOW HAVING THE OPPORTUNITY TO PUT IN NEW EVIDENCE IN A REPLY.  THAT'S NOT HOW THE PROCESS TYPICALLY WORKS.

THE COURT:  LET ME ASK YOU A HYPOTHETICAL. IF THE COURT WERE TO GRANT YOU A SURREPLY, HOW MUCH TIME WOULD YOU WANT FOR THAT?

MR. DAVIS:  I THINK WE COULD DO IT IN TEN DAYS BECAUSE WE HAVE TO DO A DECLARATION.

THE COURT:  ALL RIGHT.  NO SURREPLY YET. THAT'S MY VIEW.

OKAY.  AND SO NOW LET US -- LET US GO OFF THE RECORD ON SCHEDULING.

(DISCUSSION OFF THE RECORD.)

THE COURT:  LET'S GO BACK ON THE RECORD. WHAT WE JUST DID OFF THE RECORD IS I NOTED THAT THE APRIL 14 STATUS CONFERENCE HAS BEEN ADVANCED TO TODAY. THERE'S NOTHING ON APRIL 14.  AND TODAY'S HEARINGS ON THE MOTION TO QUASH IN CALEB R. AND SAMUEL R. ARE CONTINUED TO APRIL 17, 9:00 A.M.

OKAY.  OFF THE RECORD.

(DISCUSSION OFF THE RECORD.)

THE COURT:  BACK ON THE RECORD, PLEASE, IN

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

THE BABY FOOD CASES.

ALL RIGHT.  WE ARE NOW GOING TO OUR STATUS CONFERENCE.  WITHOUT TRYING TO GET TOO BOGGED DOWN IN THINGS THAT REALLY DON'T CONCERN ME, I AM INTERESTED, DID JUDGE CORLEY RULE?

MR. ESFANDIARY:  YES, YOUR HONOR.

THE COURT:  LET ME FIND OUT IN A SENTENCE, PLAINTIFF, WHAT WAS THE OUTCOME OF THAT RULING?

MR. ESFANDIARY:  JUDGE CORLEY GRANTED THE DEFENDANTS' DAUBERT MOTIONS WITH RESPECT TO ALL THE PLAINTIFF'S EXPERTS WITH RESPECT TO DR. SHAPIRO.  BUT SINCE DR. SHAPIRO WAS NOT DIRECTLY OPINING ON GENERAL CAUSE, THAT'S IT WITH THAT CASE.

THE COURT:  OKAY.  SO THE -- SHE TOOK UP A GENERAL CAUSATION DAUBERT PROCEEDING?

MR. ESFANDIARY:  CORRECT.

THE COURT:  OKAY.  I UNDERSTAND.  AND DEFENSE, IN A WORD OR TWO, IS THAT ACCURATE?

MR. DAVIS:  YES, YOUR HONOR.  THE COURT ASSESSED THE PLAINTIFF'S CAUSATION EVIDENCE AND EXCLUDED IT, AND WE SUBMITTED THAT RULING BY WAY OF A NOTICE OF RULING, I BELIEVE, IN THE JCCP.

THE COURT:  OH, YOU DID?

MS. GATELY:  YEAH, RIGHT AFTER IT CAME OUT.

MR. MERRYMAN:  I THINK THE ORDER CAME OUT ON A FRIDAY AND WE FILED IT IN THE JCCP IN ALL CASES THE FOLLOWING MONDAY.  IT'S A 46-PAGE OPINION JUST SIMPLY ATTACHED TO A NOTICE OF MDL ORDER.

THE COURT:  I DO SEE THAT.  NOTICE OF RULING IN MARCH 11, 2020 -- NO, THAT'S NOT IT.  OKAY. WELL, I'LL FIND IT.

SO HERE'S MY IDEA.  GIVE ME A MOMENT.

(PAUSE IN PROCEEDINGS.)

THE COURT:  LET ME ASK THE PLAINTIFF.  I'M NOT SURE I UNDERSTAND YOUR PROPOSAL.  THE PARTIES WOULD FIRST LITIGATE SPECIFIC CAUSATION AND SHOULD PLAINTIFFS OVERCOME DEFENDANTS' CHALLENGES TO SPECIFIC CAUSATION, PROCEED TO GENERAL CAUSATION.

I DON'T GET THAT.  IF PLAINTIFFS OVERCOME SPECIFIC CAUSATION, DOESN'T THAT IMPLY THAT GENERAL CAUSATION HAS BEEN SATISFIED?

MR. ESFANDIARY:  WELL, YOUR HONOR, THAT IDEA STEMS FROM THE FACT THAT LAST TIME LANDON, AND ALSO IN NC, THE CASES WERE DISMISSED BASED ON THE COURT'S ADJUDICATION OF CASE-SPECIFIC EXPOSURE, AND THOSE CALCULATIONS WAS MADE IN THOSE TWO CASES.

SO WE THOUGHT THAT IT MADE MORE SENSE TO LITIGATE AND GET RULINGS FROM THE COURT ON THOSE CASE DISPOSITIVE ISSUES PERTAINING TO THOSE SPECIFIC CAUSATION FIRST, BEFORE WE WORK UP EXPERTS AND DO FULL BRIEFING, DEPOSITIONS ON GENERAL CAUSE IF THAT FIRST ISSUE IS IN FACT GOING TO BE CASE DISPOSITIVE, WHICH IT WASN'T IN LANDON IF YOU RECALL.  WE DID ALL THE WORKUP ACROSS, YOU KNOW, GENERAL AND SPECIFIC, BUT THE COURT

ONLY ADJUDICATED SPECIFIC CAUSATION, AND THE COURT DID NOT WISH TO OBTAIN -- TAKE ON THE CHALLENGES OF GENERAL CAUSATION AFTER YOU GRANTED THEIR MOTION WITH RESPECT TO MR. JOHNSON.

SO WE THOUGHT IT MAKES MORE SENSE RESOURCEWISE, EXPENDITUREWISE, TO SIMPLY HAVE THE COURT ADJUDICATE CASE-SPECIFIC -- SPECIFIC CAUSATION FIRST BEFORE WE DEVOTE PRECIOUS TIME AND RESOURCES WORKING UP THE GENERAL CAUSATION.

THE COURT: OKAY. YOUR IDEA AND MY IDEA IS THE SAME IDEA. I JUST WOULD USE DIFFERENT LANGUAGE. MY --

MR. ESFANDIARY: OH, SURE.

THE COURT: -- MY IDEA IS WHY DON'T WE SEE IF THE PLAINTIFFS CAN PRESENT A SARGON-COMPLIANT EXPOSURE ASSESSMENT.

MR. ESFANDIARY: THAT'S RIGHT.

THE COURT: AND BECAUSE THAT IS WHERE, YOU KNOW, PRIOR CASES HAVE RESOLVED ON THAT QUESTION. AND IF THEY CAN, WELL, THEN OBVIOUSLY THE CASE PROCEEDS.

LET'S JUST STOP THE MUSIC THERE AND LET ME FIND OUT, PLAINTIFF, IS THAT WHAT YOU HAVE IN MIND?

MR. ESFANDIARY: YES, YOUR HONOR, THAT'S A MORE ARTICULATE WAY OF SAYING WHAT I JUST SAID.

THE COURT: AND WHAT DO YOU ALL THINK ABOUT THAT?

MR. DAVIS: YOUR HONOR, YEAH, WE DON'T AGREE TO THAT PROCESS.

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

THE COURT:  WHY?

MR. DAVIS:  WELL, THE EXPERTS THAT HAVE BEEN INVOLVED ON THE GENERAL CAUSATION ISSUE HAVE TAKEN INTO ACCOUNT EXPOSURE ASSESSMENTS TO REACH THEIR OPINIONS.

SO THE IDEA THAT THIS IS GOING TO SAVE US TIME IN SOME WAY, SHAPE, OR FORM WITHOUT HAVING TO DO GENERAL CAUSATION AS WE'VE DONE IT IN THE PAST, AND CONDUCT THAT TYPE OF DISCOVERY, WE DON'T SEE HOW WE SAVE TIME, EFFORT, OR MONEY BECAUSE IT WILL ALL HAVE TO BE DONE AND WE'RE KIND OF FLIPPING THE PROCESS WHERE WE DON'T HAVE THE BENEFIT OF SEEING WHAT THE SUPPOSED SARGON-COMPLIANT EXPOSURE ASSESSMENT IS COMPARED TO WHAT THE GENERAL CAUSATION EXPERTS WILL SAY.

THE COURT:  I DON'T GET THAT.  I DON'T FOLLOW YOU.

SO IN LANDON R. AND IN NC, ULTIMATELY THE DEFENSE PREVAILED BECAUSE I FOUND PLAINTIFF'S EXPOSURE ASSESSMENT WAS NOT SARGON-COMPLIANT.  AGREED?

MR. DAVIS:  THAT WAS ONE OF THE REASONS, YES.

THE COURT:  OKAY.  WELL, THAT'S THE ONE I WANT TO FOCUS ON.

IN -- I'M DOING THIS FROM MEMORY.  BUT IN NC, AT LEAST A PROBLEM THAT I PERCEIVED WAS THAT THE EXPOSURE ASSESSOR USED -- I CAN'T REMEMBER WHETHER IT WAS MAXIMUM CONCENTRATIONS OR MAXIMUM DURATION OF EXPOSURE AS A DEFAULT WITHOUT EXPLAINING TO ME WHY THAT

WAS SCIENTIFICALLY VALID.  AND IN LANDON, THE PROBLEM WAS THAT THE EXPOSURE ASSESSOR IN MY VIEW, AMALGAMATED, I THINK IS THE TERM THAT WE EVENTUALLY LANDED ON, THE EXPOSURES ACROSS MULTIPLE DEFENDANTS.  AND THAT WAS A SARGON-COMPLIANCE PROBLEM THAT I KNOW THE PLAINTIFFS ARE SEEKING TO HAVE REVIEWED ON APPEAL.

SO MY IDEA IS I ADVANCE EXPERT DISCOVERY ON -- IN EXPOSURE ASSESSMENT FOR CALEB R. AND SAMUEL R. AND DEFENSE, IF YOU WISH TO CHALLENGE IT AS NOT BEING SARGON-COMPLIANT IN SOME PARTICULAR, WELL, WE'LL LITIGATE THAT.

NOW, I TAKE YOUR POINT THAT MAYBE YOUR EXPERT ON GENERAL CAUSATION WOULD DO MORE THAN THAT, BUT FOR AN EXPOSURE ASSESSMENT, I WOULDN'T BE HAVING TO CONSIDER SUCH THINGS AS WHETHER THERE IS OR IS NOT EPIDEMIOLOGY STUDIES ON BABY FOOD AND THE LIKE.  IT WOULD JUST BE A -- IT WOULD BE AN EVALUATION OF THE LOGICAL -- THE LOGIC BEHIND THE EXPOSURE ASSESSMENT.

MR. DAVIS:  YOUR HONOR, NC ALSO MADE THE DETERMINATION THAT NOBODY FOR THE PLAINTIFF HAD DONE AN ASSESSMENT TO DETERMINE WHETHER THE HEAVY METALS THAT EXPOSURE CONNECTED UP TO THE DEFENDANTS' PRODUCTS.

YOU MADE THE ASSESSMENT THAT NO ONE HAD DONE -- WE HAD THIS WHOLE DISCUSSION ABOUT THE PICKLE, YOU KNOW, AND THE -- YEAH, THE FIRST DECISION; RIGHT? AND WE HAD THE WHOLE CONVERSATION ABOUT WHETHER OR NOT THAT ANALYSIS HAD BEEN DONE.  AND THAT WAS ONE OF THE REASONS WHY YOU RULED THAT THE NC PLAINTIFF'S EXPERTS

DIDN'T -- DID NOT SATISFY SARGON.

THE COURT: OKAY. I UNDERSTAND. BUT I UNDERSTAND THE PLAINTIFF THEORY OF THE CASE.

THE PLAINTIFF'S THEORY OF THE CASE IS THERE ARE HEAVY METALS IN THIS BABY FOOD. THE HEAVY METALS ARE THE CAUSATIVE TOXIC AGENT AND THAT IS WHAT MAKES THE PRODUCT DEFECTIVE. AND THEIR -- THAT IS TO SAY THE PLAINTIFF'S EXPOSURE ASSESSMENT TO DATE HAVE TALKED TO ME ABOUT, YOU KNOW, MICROGRAMS OF LEAD PER KILOGRAM BODY WEIGHT OF CHILDREN AND THINGS LIKE THAT.

AND I KNOW THAT DEFENSE SAYS, "WELL, THEY'RE TALKING ABOUT THE WRONG THING. I DON'T KNOW WHY THEY'RE TALKING ABOUT HEAVY METALS. THEY SHOULD BE TALKING ABOUT BABY FOOD." OKAY. I AGREE WITH YOU THAT IS A DISPUTE TO BE HAD.

I'LL BE INTERESTED TO SEE WHAT JUDGE CORLEY THOUGHT ABOUT THAT, ALTHOUGH WHAT ANOTHER JUDGE THINKS ABOUT SOMETHING IS ONLY A PASSING RELEVANCE, PROBABLY NO RELEVANCE. BUT MY POINT IS, WHY NOT LET THE PLAINTIFFS PUT UP THEIR EXPOSURE ASSESSMENT AS THEY DEEM IT SHOULD BE AND THEN SEE IF IT'S SARGON-COMPLIANT OR NOT? AS PRESENTED. AND YOU WOULD RESERVE YOUR ARGUMENT THAT, YOU KNOW, THEY'RE LOOKING AT THE WRONG -- THEY'RE ASKING THE WRONG QUESTION.

MR. DAVIS: WELL, ALL THE PLAINTIFF'S GENERAL CAUSATION EXPERTS SAY THAT IT'S A DOSE -- THEY HAVE TO ASSESS A DOSE; RIGHT? AND THEY'RE GETTING THAT INFORMATION FROM THE EXPOSURE ASSESSMENT THAT'S BEEN

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

DONE.  THAT'S WHAT HAPPENED IN THE MDL, THAT'S WHAT HAPPENED PREVIOUSLY.  AND SO WE THINK DIVORCING THOSE TWO ASPECTS INTO PUTTING A FOCUS ONLY ON DOSE, BUT ALSO NOT ALSO ALLOWING US DISCOVERY ABOUT THE GENERAL CAUSATION OPINIONS OF THE OTHER EXPERTS INVOLVED USING THAT INFORMATION.

THE COURT:  OKAY, SO I'M NOT TALKING ABOUT LIMITING DISCOVERY AT THIS POINT.  I'M TALKING ABOUT WHAT WE SHOULD TEE UP FIRST AS -- TO LITIGATE.  AND IF THE PARTIES WANT TO DO EXPERT DISCOVERY ON SPECIFIC AND GENERAL CAUSATION OR ANYTHING ELSE, AT LEAST RIGHT NOW, IT'S FINE WITH ME.  BUT, YOU KNOW, I DON'T, AGAIN, WANT TO BE PRESENTED WITH NINE OR TEN MOTIONS RELATIVE TO GENERAL AND SPECIFIC CAUSATION UNTIL I KNOW THAT THE PLAINTIFFS HAVE A SARGON-COMPLIANT DOSE ASSESSMENT.

MS. FREIWALD:  YOUR HONOR, HOPE FREIWALD.

I THINK THAT MAY BE ANOTHER ISSUE FOR ANOTHER DAY THAT WE COULD DISCUSS WHEN THE TIME COMES. I THINK OUR ISSUE IS -- AND IT'S HELPFUL TO HEAR THAT YOU'RE NOT TALKING ABOUT DISCOVERY.  OUR ISSUE IS THAT WE CAN'T -- WE SHOULDN'T BE DISAGGREGATING THE DOSE EXPERT AND THE DOSE PART OF THE CASE FROM EVERYTHING ELSE.

WE NEED TO HAVE THE CASE-SPECIFIC EXPERTS TALK ABOUT WHAT THE DOSE IS THAT THEY SAY IS CAUSATIVE. WE NEED TO SEE THE FULL PICTURE OF HOW THAT MARRIES UP WITH THE DOSE EXPOSURE ANALYSIS.  WE NEED TO SEE HOW THAT FITS WITH WHATEVER THEY DO ON GENERAL CAUSATION,

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

INCLUDING POTENTIALLY TWEAKING THEIR GENERAL CAUSATION OPINIONS IN LIGHT OF JUDGE CORLEY'S DECISION.

IT MAY NOT BE RELEVANT TO YOU, BUT IT IS WELL WITHIN THE REALM OF POSSIBILITY THAT THEIR GENERAL CAUSATION EXPERT START TO SOUND A LITTLE DIFFERENTLY BECAUSE JUDGE CORLEY FOUND THAT ANALYZING FOOD DID MATTER AND THAT THERE ARE NO EPI -- YOU KNOW, THERE'S NO EPI ANYWHERE IN BABY FOOD, IN FOOD, OR IN ANYTHING AT A DOSE TIME PERIOD, DURATION, ET CETERA, THAT FITS THIS CASE.

SO WE NEED TO DO ALL THAT WORK.  WE NEED TO DO THAT EXPERT WORK IN TOTALITY.  THE QUESTION OF WHEN WE GET THROUGH THAT WITH EXPERT REPORTS AND EVERYTHING ELSE, WHAT IS THE ORDER FOR THE SARGON CHALLENGES, OR IF YOU WANT TO TAKE ONE FIRST, I WOULD SUBMIT THAT IT WAS -- THAT IT IS HELPFUL TO LOOK AT THEIR CASE-SPECIFIC EXPERT AT LEAST TOGETHER WITH THEIR DOSE EXPERT BECAUSE THOSE TWO ARE PART -- WERE PART OF YOUR ORDERS THE LAST TIME.

BUT I THINK THAT'S AN ISSUE WE COULD DISCUSS IN ANOTHER DAY.  IT DOESN'T -- IT SHOULDN'T AFFECT THE DISCOVERY SCHEDULE THOUGH, BECAUSE WE NEED -- WE'RE NOT GOING TO SAVE ANY TIME IF WE DON'T LOOK AT THE TOTALITY OF THE OPINIONS THAT THEY HAVE AND HOW IT FITS WITH THE EXPOSURE IN THIS CASE.

THE COURT:  OKAY.

MR. ESFANDIARY:  YOUR HONOR, TO BE CLEAR, WE WOULD DISCLOSE THE SPECIFIC AND GENERAL EXPERTS AT

THE SAME TIME.  IT'S NOT BEING IN THE DARK ABOUT WHO THE GENERAL CAUSATION EXPERTS ARE AND WHAT THEY HAVE TO SAY. THEY ARE DISCLOSED AT THE SAME TIME.  IT'S JUST --

MS. FREIWALD:  YEAH, AND THEN WE WOULD NEED TO TAKE DEPOSITIONS OF THOSE CASE-SPECIFIC AND GENERAL CAUSE EXPERTS INCLUDING THE DOSE EXPERTS, AND THEN AT SOME POINT DOWN THE ROAD, WE CAN HAVE A CONVERSATION ABOUT WHAT THE ORDER IS FOR THE SARGON CHALLENGES.  BUT THAT'S -- THAT DOESN'T MEANINGFULLY IMPACT THE OVERARCHING SCHEDULING ISSUES AT THIS POINT.

THE COURT:  ALL RIGHT.  HOLD ON.  LET ME GO OFF THE RECORD.

(DISCUSSION OFF THE RECORD.)

THE COURT:  BACK ON THE RECORD IN HAIN.

SO MAYBE I HAVE JUMPED THE GUN.  THE PLAINTIFFS ARE HERE TO TALK ABOUT SCHEDULING ABOUT CASE MANAGEMENT ORDERS AND SCHEDULING MEETINGS WITH TRIAL DATES.

WHAT DO YOU WANT TO TALK ABOUT INSTEAD?  I HAVE READ THE JOINT REPORT A COUPLE TIMES.  BUT ARTICULATE, DEFENSE, WHAT SHOULD WE DO TODAY IN THE STATUS CONFERENCE?

MR. DAVIS:  YOUR HONOR, GIVEN WHERE WE ARE AND HOW THE IMPACT OF WHAT'S GOING TO BE ALLOWED OR NOT WITH RESPECT TO THE DEFENDANTS' SUBPOENAS AND THE SCOPE OF DISCOVERY, WE ASK THAT WE JUST CONTINUE THIS

DISCUSSION TO THE NEXT STATUS CONFERENCE TO MAKE AN ASSESSMENT OF -- AND I'M NOT SURE -- AND TO MAKE AN ASSESSMENT OF AFTER THE COURT RULES ON THE PENDING MOTION TO DISCUSS WHAT THE SCHEDULE IS GOING TO BE BECAUSE RIGHT NOW WE CAN'T GET ACCESS AT ALL TO THE THIRD-PARTY RECORDS UNTIL THAT ISSUE IS DISPUTED.  AND THAT'S GOING TO HAVE AN IMPACT OF WHAT IS A REALISTIC SCHEDULE BASED UPON WHAT'S LEFT TO BE DONE.

THE COURT:  WHAT ABOUT THE RETAILER RECORDS?  ARE YOU ACQUIRING THOSE?

MR. DAVIS:  YES.  THE SUBPOENAS HAVE BEEN, YES, ISSUED.

THE COURT:  AND YOU DON'T WANT TO TAKE THE DEPOSITIONS OF THE PARENTS UNTIL YOU HAVE EMPLOYMENT, MEDICAL -- AND MEDICAL RECORDS?

MR. DAVIS:  YES.

MS. GATELY:  MARY GATELY FROM DLA PIPER FOR NURTURE, LLC.

WE'VE BEEN DOWN THIS ROAD MULTIPLE TIMES AND HAVE EXPERIENCED JUST WHAT THE COURT SAID, WE SHOULD APPLY OUR EXPERIENCE IN THIS.  SO GETTING THESE OTHER RECORDS IS ABSOLUTELY CRITICAL TO BE ABLE TO TAKE THESE AS EFFICIENTLY AS WE CAN.

MS. FREIWALD:  BUT THE IMPORTANT THING, YOUR HONOR -- HOPE FREIWALD -- MR. MERRYMAN SAID, IT'S NOT JUST THE THIRD-PARTY RECORDS, IT'S JUST THAT WE DON'T EVEN HAVE THE PLAINTIFF'S INITIALLY DISCOVERY RESPONSES.

SO WE DON'T HAVE WHAT THEY ARE SAYING LANDON ATE OR WHEN HE ATE THEM.  THEY ASKED US FOR AN EXTENSION UNTIL MAY 16TH.  WE TOLD THEM THAT THAT WOULD IMPACT OUR ABILITY TO HAVE A CONVERSATION WITH THEM ABOUT ANY KIND OF A TRIAL DATE.  WE SAY THIS IN OUR JOINT STATEMENT.  AND SO IT'S NOT JUST THE THIRD-PARTY RECORDS, IT'S ALSO THAT WE DON'T HAVE THE BASIC INFORMATION FROM THE PARENTS, AND WE WERE TOLD THAT COUNSEL COULDN'T GET IT BECAUSE THEIR TRIAL DATE, ABOUT FOODS EATEN, WHERE THEY LIVED, ALL KINDS OF REALLY BASIC STUFF THAT WE NEED TO ASK QUESTIONS.

AND IT'S NOT JUST IN ORDER TO TAKE DEPOSITIONS OF THE PARENTS, IT'S IN ORDER TO TAKE DEPOSITIONS OF THE TREATERS AS WELL.  BECAUSE IF THERE'S INFORMATION IN, LET'S SAY, A PEDIATRICIAN'S RECORD ABOUT THE CHILD EATING TABLE FOOD, AND WE'VE HAD THINGS LIKE THIS BEFORE, AND THEN SOMETIMES WE GET INTO A DISPUTE ABOUT DOES THAT JUST TABLE FOOD REALLY MEAN TABLE FOOD OR COULD TABLE FOOD ALSO MEAN JARRED BABY FOOD.  WHAT WAS THE CHILD EATING AT A PARTICULAR TIME.

HAVING NOT JUST THE MEDICAL RECORDS, BUT ALSO HAVING THE PARENTS' STATEMENTS OF WHAT THE CHILD WAS EATING AT THE TIME INFORMS HOW WE THEN QUESTION THE DOCTOR ABOUT THAT.  SAME THING ABOUT QUESTIONS ABOUT BREASTFEEDING OR USING FORMULA.  SAME THINGS ABOUT QUESTIONS ABOUT WHETHER THE CHILD MET CERTAIN DEVELOPMENTAL MILESTONES.

AND THIS GOES TO ALSO SEEING THE PHOTOS AND

VIDEOS WHICH WE ALSO DON'T HAVE AND THEY'RE ALSO OBJECTING TO PRODUCING.  SO WE ARE -- WE HAVE FRANKLY, TO DEFENDANT'S CHAGRIN, KIND OF GROUND TO A HALT ON OUR ABILITY TO GET THE BASIC FACTUAL INFORMATION WE NEED.

THE COURT:  WHEN DID YOU SERVE YOUR WRITTEN DISCOVERY ON PLAINTIFFS RELATIVE TO SEEKING WHAT YOU'RE CALLING BASIC INFORMATION ABOUT PLAINTIFF'S BACKGROUND, PRODUCT USAGE, FOOD CONSUMPTION AND THE LIKE?

MS. FREIWALD:  FEBRUARY, YOUR HONOR.

MR. DAVIS:  MIDDLE.

MS. FREIWALD:  IT WOULD HAVE BEEN DUE MID-MARCH AND THEN WE GAVE THEM A 60-DAY EXTENSION.

MR. ESFANDIARY:  YOUR HONOR, THE HISTORY OF THIS IS PRETTY IMPORTANT.

DEFENDANTS, DURING THE LANDON HEARINGS, SPECIFICALLY REACHED OUT TO MYSELF, MS. ALARCON, AND MR. WISNER ASKED THAT WE HOLD OFF CROSS-PARTY DISCOVERY IN BELLWETHER CASES UNTIL THE NEW YEAR.  AND WE AGREED. OUT OF COURTESY TO THEIR CLIENTS NOT TO KEEP SPENDING MONEY RIGHT NOW, WE AGREED TO DO THAT.

NOTWITHSTANDING THAT AGREEMENT, THEY STILL WAITED UNTIL FEBRUARY TO SERVE DISCOVERY.  I ASKED FOR A COURTESY EXTENSION TO RESPOND.  I GRANTED THEM THE SAME COURTESY EXTENSION OF 60 DAYS, AND NOW THEY WANT TO USE THAT CONSOLATION FACT TO HOLD SETTING A TRIAL DATE IN ABEYANCE WHEN THE CODE SAYS YOU DO LITERALLY THE OPPOSITE.

THE CODE SAID -- THE CODES THAT CITED SAYS

YOU HOLD SETTING TRIAL IN ABEYANCE UNTIL YOU KNOW WHAT THE DISCOVERY DISPUTE IS GOING TO LOOK LIKE AND HOW IT WILL BE RESOLVED.  IT SAYS YOU SET A TRIAL DATE BEARING IN MIND THE MAGNITUDE OF DISCOVERY.

YOU CONSIDER A TRIAL DATE BEARING ALL THAT IN MIND THAT THE TRIAL DATE WILL BE WHAT IT IS.  WHAT YOU DON'T DO IS YOU DON'T KEEP THE TRIAL DATE OR SET A TRIAL DATE IN ABEYANCE UNTIL YOU KNOW WHAT THE DISCOVERY LANDSCAPE LOOKS LIKE.  THAT'S NOT CONSISTENT WITH THE CODE.

WE'RE ASKING THE COURT TO EITHER SET A TRIAL DATE FOR FEBRUARY CONSISTENT WITH COURT-IMPOSED DEADLINES, OR IF WE'RE GOING TO DO THE APPROACH THAT YOUR HONOR IS ENTERTAINING AND THAT WE ARE ENTERTAINING ON LITIGATING THE MERITS OF THE SPECIFIC CAUSATION FIRST, A TRIAL DATE IN APRIL.

WHATEVER THE TRIAL DATE IS, FEBRUARY OR APRIL THEREAFTER, ONE SHOULD BE SET.  AND WE'LL WORK WITHIN THE CONFINES OF THAT TRIAL DATE.

MR. MERRYMAN:  YOUR HONOR, I HAVE A BRIEF RESPONSE WHEN READY.

THE COURT:  HOLD ON.

MR. MERRYMAN:  I FIGURED.  THANK YOU.

MR. ESFANDIARY:  YOUR HONOR, JUST TO LET THE COURT KNOW, I HAVE TO LEAVE IN ABOUT 15 MINUTES TO CATCH A CROSS-COUNTRY FLIGHT.  I APOLOGIZE.  MS. ALARCON IS GOING TO TAKE OVER FOR ME IF WE'RE STILL IN THE HEARING AT THAT POINT.  MY APOLOGIES.

THE COURT: NO PROBLEM.

SO I'M ASKING AN INNOCENT QUESTION OF BOTH SIDES. LET'S START WITH THE DEFENSE.

WHAT IS YOUR VERSION OF HOW IT CAME TO PASS THAT YOU ALL AGREED YOU'D HOLD OFF ON DISCOVERY UNTIL THE NEW YEAR?

MR. MERRYMAN: I'M GOING TO HAND IT BACK. I WAS GOING TO ADDRESS A DIFFERENT ISSUE BECAUSE THAT WAS DECIDED BY THE LANDON R. PARTIES.

MS. FREIWALD: YOUR HONOR, HOPE FREIWALD.

SO WHAT HAPPENED, AND MS. GATELY WILL SUPPLEMENT, IS THAT WE AGREED WE WOULD DO THIRD-PARTY DISCOVERY STARTING IN OCTOBER, MEANING WE WOULD START COLLECTING RETAILER RECORDS, WE WOULD START COLLECTING PLAINTIFF MEDICAL RECORDS. WE DID THAT. BUT BECAUSE OF THE -- BECAUSE OF THE TRIAL DATE AS WELL, SOME TRIAL CONFLICTS THAT PLAINTIFFS HAD, WE DID NOT SERVE -- NEITHER SIDE SERVED INTERROGATORIES OR DOCUMENT REQUESTS.

DO YOU WANT TO ADD SOMETHING TO THAT?

MS. GATELY: YOUR HONOR, THE CONTEXT -- MARY GATELY AGAIN, WAS -- IN THE CONTEXT OF THE LANDON CASE, THE PLAINTIFFS, IF YOU RECALL, ASKED FOR AN EXTENSION OF THE TRIAL DATE AND THAT WAS BEFORE THE MOTIONS HEARINGS IN LANDON. AND SO KNOWING THAT WE WERE GOING TO HAVE A REVISED TRIAL DATE, I BELIEVE IT WAS GOING TO BE FEBRUARY OR MARCH, WHATEVER THE DATE WAS GOING TO BE IN LANDON, THAT WAS SOMETHING THAT THE

PARTIES AGREED TO THAT YOU WOULDN'T HAVE ACTIVE

DISCOVERY IN THE OTHER JCCP CASES UNTIL LANDON WAS DEALT

WITH.

THE COURT:  OKAY.

MS. GATELY:  SO THAT'S THE CONTEXT THAT I

THINK IS MISSING.

THE COURT:  LET ME JUST ASK THE NEXT

QUESTION, WHICH IS WHY DID YOU WAIT UNTIL FEBRUARY TO

SERVE THE WRITTEN DISCOVERY?

MS. FREIWALD:  I DON'T KNOW EXACTLY WHY IT

WAS FEBRUARY VERSUS JANUARY, BUT WE SERVED -- I DO WANT

TO SAY WE SERVED THE EXACT SAME DISCOVERY THAT WE SERVED

IN EVERY CASE.  AND THE PLAINTIFFS HAVE KNOWN SINCE THEY

FILED THESE CASES WHAT QUESTIONS WE'RE GOING TO ASK

ABOUT WHAT THE PLAINTIFFS ATE AND WHEN, AND WHAT THE

DIFFERENT PHASES OF DEVELOPMENT WERE AND WHERE THEY

LIVED AND WHERE THEY WENT TO SCHOOL.  THOSE KINDS OF

QUESTIONS.  THEY KNEW WE WERE GOING TO ASK THOSE

QUESTIONS.  AND THEY CAME TO US AND SAID THEY COULDN'T

ANSWER THOSE QUESTIONS BECAUSE THEY WEREN'T GOING TO BE

ABLE TO TALK TO THEIR CLIENTS WITHIN 30 DAYS.

SO THE DIFFERENCE MAKER HERE IS THAT THE

PLAINTIFFS ASKED US TO HAVE ESSENTIALLY 90 DAYS TO GIVE

US THIS INFORMATION.  IT'S NOT THAT WE HAVE DELAYED

THIS.  AND WE TOLD THEM AT THE TIME, YOU KNOW, WE'LL

EXTEND THE PROFESSIONAL COURTESY, BUT THERE'S GOING TO

BE RAMIFICATIONS ON WHEN WE CAN START OTHER THINGS IF WE

DON'T EVEN HAVE BASIC CONSUMPTION INFORMATION FROM THE

PARENTS.

AND THE ONLY THING I WOULD LIKE TO SAY BEFORE HANDING THE MIC OFF, YOUR HONOR, IS THAT YOU'LL REMEMBER LAST TIME THE PARENTS MODIFIED THEIR RESPONSES SEVEN TIMES AS THEY WENT.  AND SO WE NOW ARE GETTING IN RETAILER RECORDS.  HOPEFULLY THE PARENTS WILL HAVE ONE SET OF ANSWERS.  BUT WE ARE ALSO MINDFUL OF THAT HISTORY.

MR. DAVIS:  I WOULD ALSO ADD, YOUR HONOR, YOU MAY RECALL THAT WE HAD TO FILE A MOTION TO COMPEL IN JANUARY OVER THE DISPUTE ABOUT THE PARENTS' RECORDS.

WE KNEW WE WEREN'T GOING TO GET ACCESS TO THOSE UNTIL THE COURT RULED.  THE HEARING DATE ON THAT WAS FEBRUARY 26.  WE SERVED THE DISCOVERY IN MID-FEBRUARY WITH THE ANTICIPATION THAT THAT ISSUE WOULD BE RESOLVED AND WE'D GET ACCESS SHORTLY THEREAFTER TO THE DISCOVERY RESPONSES FROM THE PLAINTIFF AFTER THE COURT RESOLVED THE ISSUE ABOUT OUR MOTION TO COMPEL.

THAT DIDN'T HAPPEN.  AND AS A RESULT, THEY ALSO -- BECAUSE OF THE TRIAL CONFLICTS THAT PLAINTIFF HAD, THEY ASKED FOR THIS EXTENSION AND SAID THAT THEY COULD NOT EVEN BE ABLE TO GET ACCESS TO THEIR CLIENTS UNTIL AFTER THE 60 DAYS.

SO THAT'S WHY THEY ASKED FOR THE EXTENSION.  THAT'S HOW WE GOT TO SERVING THE DISCOVERY IN FEBRUARY.

THE COURT:  OKAY.  AND PLAINTIFF, ARE YOU STILL CONTEMPLATING PRODUCING THE RESPONSES IN MAY?

MR. ESFANDIARY:  YES, YOUR HONOR, FOR THE

60-DAY EXTENSION.  WE HAVE -- I WOULD JUST SET THE STAGE A LITTLE BIT, YOUR HONOR.  THE DEFENDANTS HAVE INITIAL DISCLOSURES FROM THE PLAINTIFF CONSISTENT WITH WHAT YOUR HONOR RULED AT THE START OF THE JCCP, WHERE WE STARTED WITH THE BELLWETHER SELECTION PROCESS.

WE DID THE FACT SHEET THAT IDENTIFIES THE BABY FOOD THAT THEY CONSUMED AS WELL AS ANY RECORDS PERTAINING TO UNDERLYING RISK FACTORS AND SO ON.

ALL THAT STUFF HAS BEEN DISCLOSED.  THIS IS THE FORMAL DISCOVERY WE'RE TALKING ABOUT SERVED BY THE DEFENDANTS, HUNDREDS OF INTERROGATORIES.  IN TERMS OF PRODUCTION, A LONG PERIOD OF PRODUCT USE WHERE WE NEEDED THE 60 DAYS TO RESPOND -- BUT, YOUR HONOR, THE POINT HERE IS THAT MIGHT IMPACT WHAT THE DATE FOR TRIAL MIGHT BE.  IT DOESN'T JUSTIFY HOLD -- HOLD OFF SETTING A TRIAL DATE INDEFINITELY UNTIL WHATEVER DISCOVERY DISPUTES ARE RESOLVED TO DEFENDANTS' SATISFACTION.

THE COURT:  GIVE ME A MINUTE.

(PAUSE IN PROCEEDINGS.)

THE COURT:  ALL RIGHT.  MR. ESFANDIARY AND MS. ALARCON, I'M JUST AFRAID I'D BE SHOOTING IN THE DARK IF I SET A DATE, A TRIAL DATE.

NOW, I'M NOT GOING TO INSIST ON THIS TODAY, BUT I AM TELLING YOU THAT I THINK I WOULD LIKE TO MOVE TO THE HEAD OF THE LINE THE QUESTION OF PLAINTIFF'S -- WHETHER PLAINTIFF'S DOSE ASSESSMENT, EXPOSURE ASSESSMENT

IS OR IS NOT SARGON-COMPLIANT.

AT LEAST ON THE RECORD PRESENTED TO ME IN LANDON R., I FOUND THAT DR. SHAPIRO'S DIFFERENTIAL ETIOLOGY METHODOLOGY WAS SARGON-COMPLIANT, WHICH I GUESS IMPLIES, WHETHER OR NOT I SAID IT EXPLICITLY, THAT HE'S LOOKING AT THE CORRECT MATERIAL IN THE CASE.  AND I REJECTED, I THINK, IN LANDON R., ON THE RECORD PRESENTED THERE, THE DEFENSE PROPOSITION THAT THE CASE FALLS AS A GENERAL -- A GENERAL CAUSATION PROPOSITION BECAUSE THE DEFENSE EXPERTS DID NOT ANALYZE BABY FOOD QUA BABY FOOD, BUT INSTEAD LEAD AND ARSENIC CONTAINED IN BABY FOOD.

MS. FREIWALD, I HEAR YOU BASICALLY SAYING I SHOULDN'T CONFRONT A DOSE ASSESSMENT SARGON-COMPLIANCE ISSUE WITHOUT TAKING UP THAT QUESTION AGAIN, WHETHER -- PUT ANOTHER WAY, EXPOSURE TO WHAT -- RIGHT? -- WOULD BE YOUR QUESTION.  IS IT EXPOSURE TO LEAD OR ARSENIC OR EXPOSURE TO BABY FOOD AND EXPOSURE TO ALL THE OTHER THINGS IN BABY FOOD?

I AM TELLING YOU ALL, AND I WANT YOU TO THINK ABOUT THIS, THAT I WANT TO FIGURE OUT HOW TO ADVANCE THE QUESTION OF SARGON COMPLIANCE WITH THE PLAINTIFF'S DOSE ASSESSMENT.

NOW, THAT -- I DON'T KNOW WHAT THE PLAINTIFFS NEED FOR PURPOSES OF THEIR DOSE ASSESSORS.  I KNOW, DEFENSE, WHAT YOU CONTEND YOU NEED FOR YOUR DOSE ASSESSORS.

I AM OPEN TO THE PROPOSITION OF THE PARENTS SITTING FOR A DEPOSITION ON BASICALLY FOOD CONSUMPTION

ONLY --

SOMEBODY OUT THERE NEEDS TO MUTE, PLEASE. THANK YOU.

-- UNDERSTANDING THAT THERE WOULD BE FURTHER THINGS TO BE -- NEED FOR THESE PARENTS TO BE DEPOSED UPON ONCE MEDICAL RECORDS AND EMPLOYMENT RECORDS ARE PRODUCED.

SO I'M OPEN TO THAT AS A PROPOSITION. I WANT THE DEFENSE TO USE ALL BEST EFFORTS TO GET THESE THIRD-PARTY RETAILER RECORDS. APPARENTLY YOU'RE DOING THAT. I GUESS MAYBE THE WRITTEN DISCOVERY RESPONSES YOU'LL GET IN MAY WILL IDENTIFY FURTHER RETAILERS. IF THAT'S GOING TO HAPPEN, WELL, THAT WILL SLOW THINGS DOWN A BIT.

THAT'S AS FAR AS I CAN GO IN MY THINKING TODAY IS HOW I'M THINKING ABOUT STRUCTURING YOUR CASE. BUT GIVING YOU A TRIAL DATE IN 2027, WHETHER IT'S FEBRUARY OR APRIL OR NOVEMBER, I HAVE NO BASIS TO DO THAT TODAY. I DON'T KNOW WHERE WE ARE.

YOU KNOW, BASIC WRITTEN DISCOVERY ISN'T GOING TO BE PRODUCED FOR ANOTHER TWO MONTHS. WE'RE IN THE MIDDLE OF LITIGATING THE METES AND BOUNDS OF BASIC DEPOSITION SUBPOENAS TO THIRD PARTIES. I'M TOLD THERE MAY BE WRIT PROCEEDINGS FOLLOWING THAT. SO I THINK IT WOULD BE FOOLISH FOR ME TO PICK A DATE AND SAY WELL, HERE'S YOUR TRIAL DATE. NOW WORK BACKWARDS FROM THERE.

AS YOU KNOW, THE ONLY TIME I'VE EVER HAD A DARK CLOUD CROSS MY OTHERWISE SUNNY COUNTENANCE WITH YOU

ALL IS WHEN YOU CAME TO ME AND ASKED ME TO CONTINUE A TRIAL DATE. I DON'T LIKE CONTINUING TRIAL DATES. I LIKE HAVING REAL TRIAL DATES AND PEOPLE ADHERING TO THEM.

SO I GUESS WHAT I'M GOING TO ASK YOU TO DO IS MEET AND CONFER ON THE PROPOSITION I JUST LAID OUT. WHAT WOULD GET US AS SOON AS REASONABLY POSSIBLE TO, I GUESS, A MOTION IN LIMINE/402 HEARING PROCEEDING TO TEST THE SARGON COMPLIANCE OF PLAINTIFF'S DOSE ASSESSMENT. WHAT WOULD NEED TO HAPPEN FOR THAT TO OCCUR?

BUT IN THE MEANTIME, I WOULD NOT STOP ANY OTHER DISCOVERY. I MEAN DISCOVERY IS WIDE OPEN. YOU CAN ALL DO WHATEVER YOU WANT BY WAY OF DISCOVERY.

SO WHY DON'T YOU MEET AND CONFER ON THAT. I'LL SEE YOU ON APRIL -- WHATEVER DATE THAT WAS, APRIL 17, AND GIVE ME A JOINT REPORT ON WHAT YOU THINK, EITHER JOINTLY OR SEVERALLY, SAY BY APRIL 14 ON THAT PROPOSITION.

ONCE I RULE ON THE DISCOVERY LITIGATION, LITIGATED ISSUES, AND MY THINKING IS BETTER CONCERNING A SARGON COMPLIANCE HEARING ON DOSE ASSESSMENT, I THINK I CAN INTELLIGENTLY THINK THROUGH WITH YOU ALL A PRETRIAL SCHEDULE LEADING TO A TRIAL IN 2027.

I THINK A TRIAL IN 2027 IS WELL WITHIN THE REALM OF POSSIBILITY. I'D BE SURPRISED VERY MUCH IF IT GOES LATER THAN THAT.

NOW, THE QUESTION IS, IS IT GOING TO BE A QUARTER TWO, QUARTER THREE, OR QUARTER FOUR TRIAL DATE.

AND DEFENSE, I KNOW YOU ARE OPPOSED TO THE PROPOSITION OF THESE TWO CASES BEING TRIED TOGETHER, A POSITION YOU CERTAINLY CAN ARGUE AND TALK TO ME ABOUT WHEN THE TIME IS RIGHT.

BUT THAT'S WHAT I PROPOSE TO DO.  I PROPOSE TO SEND YOU OUT THE BACK DOOR RIGHT NOW WITH WHAT I JUST SAID AS THE COURT'S ORDERS.  IF YOU WANT TO TALK MORE ABOUT IT I CAN ORDER YOU ALL BACK AT 1:30 OR I CAN CUT YOU LOOSE.

PLAINTIFF, WHAT DO YOU WANT TO DO?

MR. ESFANDIARY:  YOUR HONOR, SENDING US BACK TO CHAT THAT'S FINE WITH US.  I GOT TO TALK TO MS. ALARCON TO THINK THROUGH THE ISSUES.

I WILL SAY THERE'S ONE ISSUE I WOULD LIKE GUIDANCE FROM YOUR HONOR.  GIVEN THAT WE ARE GOING TO REASSEMBLE ON THE HEARING ON THE MOTION TO QUASH APRIL 17, THE DEADLINE FOR THE THIRD PARTIES TO COMPLY WITH THE SUBPOENAS IS APRIL 2ND.  THAT'S WHY WE SOUGHT TO HAVE THIS EXPEDITED TO TODAY.  AND GIVEN THAT THE DISPUTE IS STILL PENDING, COULD WE GET SOME KIND OF ONE-SENTENCE WRITTEN ORDER FROM YOU -- FROM YOUR HONOR DIRECTING THE THIRD PARTIES TO NOT DISCLOSE ANYTHING UNTIL THIS DISPUTE IS RESOLVED SO THAT THE DEFENDANTS CAN, YOU KNOW, SUBMIT THAT TO THE VARIOUS THIRD PARTIES WE'RE SEEKING RECORDS FROM.

THE COURT:  I THINK YOUR MOTION FOR PROTECTIVE ORDER OR MOTION TO QUASH STAYS PERFORMANCE ON THE CUSTODIANS OF RECORD.  SO I DON'T THINK I NEED TO

MAKE SUCH AN ORDER.

MR. ESFANDIARY: OKAY. UNDERSTOOD. THEN ON THE SCHEDULING, YOUR HONOR, I THINK THAT THAT MAKES SENSE.

WE'RE HAPPY TO MEET AND CONFER. I DO ASK THE DEFENDANTS COME WITH SOME DATES IN MIND ON, YOU KNOW, WHEN THE SPECIFIC CAUSE ADJUDICATION SHOULD OCCUR OR WHEN THE TRIAL DATE SHOULD BE. BECAUSE LAST TIME ALL WE GOT WAS NO TRIAL DATE SHOULD BE SET, YOU KNOW, INDEFINITELY UNTIL WE'RE READY TO SET IT. SO I WOULD LIKE TO WORK WITH SOME DATES AND I'M HAPPY TO MEET AND CONFER.

THE COURT: I THINK THAT'S LEGITIMATE. DON'T COME BACK AND JUST SAY WE CAN'T POSSIBLY THINK ABOUT THE POSSIBILITY OF EVEN CONTEMPLATING A TRIAL DATE.

MS. FREIWALD: YEAH, I THINK WE WOULD JUST SAY WE RESPECTFULLY DISAGREE WITH MR. ESFANDIARY'S CHARACTERIZATION OF PRIOR CONVERSATIONS, BUT CERTAINLY WE'RE GOING TO APPROACH THIS IN GOOD FAITH, YOUR HONOR.

THE COURT: ANYTHING ELSE AT YOUR END?

MR. MERRYMAN: NO, YOUR HONOR.

THE COURT: OKAY. SO THE ORDER IS I'LL SEE YOU ON APRIL 17. GIVE ME A JOINT REPORT ON APRIL 14. MEET AND CONFER ON A DOSE EVALUATION SARGON COMPLIANCE PROCESS. AND PLAINTIFF GIVE NOTICE. GOOD-BYE.

MR. KLATT: MIKE KLATT FOR SPROUT FOODS, INC. WE'RE NOT INVOLVED IN THE SAMUEL R. OR THE

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

CALEB R. CASES, BUT I DO HAVE PENDING APPLICATIONS FOR PRO HAC VICE ADMISSIONS IN THE JOSUE G. AND THE PAUL L. CASES THAT HAVE BEEN SITTING THERE AND IF I -- IF WE CAN GET A RULING ON THOSE SOMETIME.

THE COURT:  YEAH, I -- YOU KNOW, I ACT ON THOSE AS SOON AS THEY HIT MY QUEUE, SO, YOU KNOW, LATER TODAY AFTER THE LUNCH BREAK WHY DON'T YOU CHECK WITH THE COURT TO -- THE CLERK AND COURT ATTENDANT TO FIND OUT WHERE THOSE APPS ARE BECAUSE I'M NOT SITTING ON THEM.  I GUARANTEE IT.

MR. MERRYMAN:  YOUR HONOR.

THE COURT:  WE'LL GO OFF THE RECORD.


(PROCEEDINGS CONCLUDE AT 12:06 P.M.)

--OOO--

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT 1                          HON. LAWRENCE P. RIFF, JUDGE

-OOO-

COORDINATION PROCEEDING SPECIAL     )
TITLE (RULE 3.550)                  )
                                    )
HAIN CELESTIAL BABY FOOD CASES      )    CASE NUMBER
_____)    23STCV24844
                                    )
LANDON R,  A MINOR,                 )    REPORTER'S
                                    )    CERTIFICATE
                    PLAINTIFF,      )
                                    )
   VS.                              )
                                    )
HAIN CELESTIAL GROUP, INC.,         )
NURTURE, INC., PLUM PBC, D.B.A.     )
PLUM ORGANICS; BEECH-NUT            )
NUTRITION COMPANY; GERGER           )
PRODUCTS COMPANY, SPROUT FOODS,     )
INC.; RALPHS GROCERY COMPANY;       )
AND DOES 1 THROUGH 100,             )
INCLUSIVE,                          )
                                    )
                    DEFENDANTS.     )
_____)

I, DEBBIE HINO-SPAAN, OFFICIAL REPORTER PRO

TEMPORE OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA,

FOR THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE

FOREGOING PAGES, 1 THROUGH 81, INCLUSIVE, COMPRISE A FULL,

TRUE, AND CORRECT TRANSCRIPT OF THE PROCEEDINGS HELD IN

DEPARTMENT 1 ON MARCH 26, 2026, IN THE MATTER OF THE

ABOVE-ENTITLED CAUSE.

DATED THIS 26TH DAY OF MARCH, 2026.


_____
DEBBIE HINO-SPAAN, CSR NO. 7953
 OFFICIAL REPORTER PRO TEMPORE
 LOS ANGELES SUPERIOR COURT

| WORD INDEX | 202.662.5694 2:25 | 404.572.3589 2:21 | 9:17 4:2 |
|---|---|---|---|

**WORD INDEX**

**< 1 >**
**1** 1:3, *14*
4:2 17:*9*
57:*10* 82:*3,*
*14, 20, 22*
**1:30** 79:*8*
**10:39** 55:*23*
**10:50** 55:*21*
**100** 1:*14*
82:*14*
**11** 60:*2*
**11:04** 55:*23*
**11111** 2:*5*
**1180** 2:*20*
**12:06** 81:*14*
**13** 41:*25*
42:*1*
**14** 58:*20,*
*21* 78:*17*
80:*24*
**15** 71:*25*
**16TH** 69:*3*
**17** 58:*23*
78:*16*
79:*17* 80:*24*
**1750** 2:*6*
**19104** 3:*6*
**1987** 52:*26*
**1987.1** 38:*21*
**1ST** 57:*4*

**< 2 >**
**2** 4:*19*
32:*3* 33:*13*
46:*6*
**20** 45:*23*
**20001** 2:*25*
**20004** 2:*11*

**202.662.5694**
2:*25*
**2020** 60:*2*
**2022** 42:*8*
**2026** 1:*16*
4:*2* 57:*11*
82:*22, 24*
**2027** 77:*17*
78:*23, 24*
**213.620.7802**
2:*16*
**215.994.2514**
3:*7*
**220** 3:*10*
**23** 1:*16*
4:*2*
**23STCV24844**
1:*7* 4:*1*
82:*7*
**26** 9:*3*
74:*14* 82:*22*
**26TH** 82:*24*
**2700** 2:*15*
**2705** 3:*10*
**2929** 3:*6*
**2ND** 25:*15*
49:*1, 2*
79:*18*

**< 3 >**
**3.550** 1:*5*
82:*5*
**30** 20:*2*
73:*21*
**30309** 2:*20*
**310.207.3233**
2:*7*
**3RD** 57:*5, 7*

**< 4 >**

**404.572.3589**
2:*21*
**44** 29:*5*
**46-PAGE**
59:*27*
**48-YEAR-OLD**
41:*28*

**< 5 >**
**500** 2:*10*
**51** 10:*19*
**512.582.6485**
3:*11*
**52** 10:*19*
40:*5*
**53** 41:*10*
**555** 2:*14*

**< 6 >**
**60** 45:*5*
70:*24*
74:*23* 75:*13*
**60-DAY**
70:*12* 75:*1*

**< 7 >**
**703.772.0190**
2:*11*
**78746** 3:*11*
**7953** 1:*26*
4:*2, 21*
82:*26*

**< 8 >**
**81** 82:*20*
**850** 2:*24*

**< 9 >**
**9:00** 58:*23*

**9:17** 4:*2*
**90** 73:*23*
**90025** 2:*6*
**90071** 2:*15*

**< A >**
**A.M** 4:*2*
55:*23* 58:*23*
**ABEYANCE**
70:*26* 71:*1,*
*8*
**ABILITY**
15:*28*
22:*28*
48:*22* 69:*4*
70:*4*
**ABLE** 16:*27*
19:*2* 40:*21*
49:*28*
51:*25*
52:*15, 18*
56:*11*
68:*22*
73:*21* 74:*22*
**ABOVE-**
**ENTITLED**
82:*23*
**ABSOLUTELY**
10:*22* 29:*2*
30:*22* 31:*1,*
*15, 19*
36:*21* 68:*22*
**ABUNDANCE**
21:*23*
**ABUSE** 13:*17*
36:*24*
37:*12*
38:*13* 52:*28*
**ACADEMIC**
10:*1*

ACCEDED
 51:*17*    54:*17*
ACCEDING
 5:*21*
ACCESS    8:*14*,
*17*    9:*10*, *16*,
*18*    10:*14*
 12:*4*    42:*12*
 68:*5*    74:*12*,
*16*, *22*
ACCOUNT    62:*4*
ACCURATE
 27:*21*
 29:*21*
 38:*20*
 50:*20*    59:*18*
ACKNOWLEDGING
 52:*12*
ACQUIESCED
 43:*12*
ACQUIRING
 68:*10*
ACT    5:*15*
 34:*14*    81:*5*
ACTIVE    73:*1*
AD    30:*3*
 31:*4*
ADD    39:*14*
 55:*18*
 72:*20*    74:*9*
ADDRESS    7:*8*
 20:*11*    38:*5*
 39:*18*    47:*3*
 72:*8*
ADDRESSED
 8:*28*    25:*15*
 40:*2*    42:*25*
ADHD    8:*7*,
*13*    15:*27*

40:*14*
ADHERE    16:*23*
ADHERING
 78:*3*
ADJUDICATE
 61:*7*
ADJUDICATED
 61:*1*
ADJUDICATION
 60:*19*    80:*7*
ADMISSIBILITY
 13:*1*
ADMISSIBLE
 22:*5*
ADMISSION
 48:*7*
ADMISSIONS
 81:*2*
ADVANCE
 26:*25*
 54:*17*    63:*7*
 76:*21*
ADVANCED
 58:*20*
ADVANCING
 32:*2*
ADVICE    24:*10*
AFFECT    5:*2*
 66:*22*
AFRAID    75:*23*
AFRESH    33:*17*
AGENT    64:*6*
AGHAST    45:*2*
AGO    20:*2*
AGREE    6:*24*
 11:*8*, *27*
 16:*7*, *11*
 19:*4*    34:*23*
 35:*28*
 36:*11*    41:*4*

42:*4*    47:*11*
 57:*14*
 61:*28*    64:*14*
AGREED    6:*18*,
*19*    11:*17*
 12:*4*    62:*19*
 70:*18*, *20*
 72:*5*, *12*
 73:*1*
AGREEING
 32:*2*
AGREEMENT
 51:*6*    70:*21*
AGREES    30:*5*
AHEAD    17:*6*
AKERBLOM
 3:*14*
AL    4:*2*
ALARCON    2:*4*
 16:*5*    39:*12*,
*16*    49:*12*
 54:*13*
 70:*16*
 71:*26*
 75:*23*    79:*13*
ALL-
ENCOMPASSING
 17:*12*
ALLISON    3:*5*
ALL-OR-
NOTHING
 31:*21*
 38:*27*    51:*9*
ALLOW    7:*4*
 22:*14*, *18*
 23:*7*    34:*4*
 36:*23*
 52:*26*, *28*
ALLOWANCE
 38:*8*

ALLOWED
 14:*16*
 17:*28*    18:*6*
 20:*15*, *26*
 35:*1*, *3*
 49:*16*    53:*3*
 55:*5*    67:*26*
ALLOWING
 6:*8*    53:*6*
 65:*4*
ALLOWS
 22:*17*
 37:*20*    40:*9*
ALLUDED
 50:*11*
ALTERNATIVE
 5:*23*    8:*3*
 15:*24*
 40:*24*    42:*14*
AMALGAMATED
 63:*2*
AMBIGUOUS
 54:*3*
AMENABLE
 7:*22*    8:*1*,
*27*
AMEND    38:*22*
ANALYSIS
 49:*2*    63:*27*
 65:*27*
ANALYZE
 76:*10*
ANALYZING
 66:*6*
AND/OR    49:*12*
ANGELES    1:*2*
 2:*6*, *15*
 4:*2*    82:*2*,
*19*, *27*

| | | | |
|---|---|---|---|
| **ANIMATED** 16:5 | **APPLICABLE** 25:20 27:12, 17 | 79:3 **ARGUED** 44:10 | 71:11  72:2 **ASKS** 46:14 |
| **ANSWER** 8:21, 26  23:17 38:12  73:20 | **APPLICATIONS** 81:1 | **ARGUING** 34:9 **ARGUMENT** 20:18 | **ASPECTS** 65:3 **ASSERTED** 24:2  35:2 |
| **ANSWERS** 30:21  74:7 | **APPLIES** 30:18, 19 40:16 | 42:19  43:6 64:22 | **ASSERTION** 43:24 |
| **ANTICIPATION** 74:15 | **APPLY** 45:14 68:21 | **ARGUMENTS** 42:10  49:4 | **ASSERTS** 26:5 **ASSESS** 40:9 |
| **ANYBODY** 5:16, 27 10:27 | **APPLYING** 44:20 | **ARM** 20:2 41:24, 28 45:20 | 57:24  64:27 **ASSESSED** 25:21  59:20 |
| **ANYWAY** 6:28 30:3  38:13 41:14  57:16 | **APPOSITIVE** 34:19 **APPRECIATE** 57:18 | **AROSE** 8:20 **ARSENIC** 76:11, 16 | **ASSESSING** 42:9 **ASSESSMENT** 9:2  10:13 |
| **APOLOGIES** 71:28 | **APPROACH** 31:22 38:27  51:4, 9  71:13 | **ARTICULATE** 14:23 61:24  67:23 | 61:16 62:13, 19 63:8, 14, 18, |
| **APOLOGIZE** 71:26 | 80:20 | **ASD** 40:14 **ASIDE** 6:11 | 21, 23  64:8, 20, 28 |
| **APPARENTLY** 43:12 51:16  77:10 | **APPROACHED** 14:17 **APPROPRIATE** | 18:5  40:4 42:19  46:19 **ASKED** 24:15, | 65:15  68:2, 3  75:28 76:13, 22 |
| **APPEAL** 17:16 32:22 | 11:24  13:2, 4 **APPS** 81:9 | 16  35:8 56:21  69:2 70:17, 22 | 78:9, 21 **ASSESSMENTS** 19:9  52:16 |
| 34:12 35:13 43:22  44:6 | **APRIL** 32:3 57:4, 5, 7, 10  58:20, | 72:23 73:23 74:21, 24 | 62:4 **ASSESSOR** 62:26  63:2 |
| 63:6 **APPEALS** 20:22, 27 | 21, 23 71:16, 18 77:18 | 78:1 **ASKING** 19:20 | **ASSESSORS** 76:24, 26 |
| 31:3, 20 34:25 | 78:15, 16, 17  79:17, | 24:10, 18 25:26 | **ASSUME** 24:18, 20 |
| **APPEARANCES** 1:16  2:1 3:1  4:2, 23 | 18  80:24 **ARCH** 3:6 **AREA** 14:28 | 34:11 36:26 47:17 57:20 | **ASSUMING** 7:13 **ATE** 69:2 73:15 |
| **APPELLATE** 52:25 **APPLE** 49:7 | **ARGUE** 22:22 | 64:23 | **ATLANTA** 2:20 **ATTACH** 53:11 |

ATTACHED
59:*28*
ATTENDANT
81:*8*
ATTENUATED
31:*16*
ATTORNEY-
CLIENT
17:*15*
23:*25*
27:*11*
29:*17* 42:*20*
AUGMENTED
31:*25*
AUGUST 42:*8*
AUSTIN 3:*11*
AUTHORITY
37:*4* 39:*19*
AUTHORIZATION
49:*3*

AUTHORIZATIONS
5:*17, 23*
6:*3, 4, 9,*
*19* 14:*1*
32:*28*
50:*24, 26, 27*
AUTISM 8:*7,*
*13, 24*
12:*17*
15:*27*
16:*21* 20:*9*
28:*7, 9*
29:*15*
AUTISTIC
45:*21*
AVAILABILITY
54:*7*

< B >

BABY 1:*6*
15:*25*
29:*15*
55:*25* 59:*1*
63:*16* 64:*5,*
*14* 66:*8*
69:*19* 75:*7*
76:*10, 11,*
*17, 18* 82:*6*
BACK 9:*3*
17:*20*
25:*15* 27:*4*
37:*7, 18*
39:*24* 42:*8*
52:*3, 4*
55:*19, 26*
57:*20*
58:*18, 28*
67:*16* 72:*7*
79:*6, 8, 12*
80:*14*
BACKGROUND
70:*7*
BACKWARDS
77:*26*
BALANCE
42:*13*
BALANCING
23:*8*
BAR 45:*1*
BASED 14:*19*
44:*13*
46:*21*
60:*18* 68:*8*
BASES 55:*2*
BASIC 6:*8*
69:*7, 10*
70:*4, 7*
73:*28*
77:*20, 22*

BASICALLY
11:*21* 15:*7*
32:*19*
33:*11*
76:*12, 28*
BASIS 77:*18*
BAUM 2:*3*
BEARING
71:*3, 5*
BEE 3:*10*
BEECH-NUT
1:*12* 2:*16*
7:*27* 23:*16*
45:*18* 56:*2*
82:*12*
BEGAN 8:*6*
BEHALF 5:*21*
7:*24, 27*
45:*18*
BEHAVIOR
13:*17*
BEHAVIORAL
13:*19*
BEHAVIORS
13:*22, 23*
48:*8*
BELIEVE
7:*20* 10:*18*
19:*15*
29:*15*
41:*12*
48:*17*
59:*22* 72:*26*
BELLWETHER
70:*18* 75:*5*
BELONG
35:*16, 23*
BELONGING
35:*27*
BENCIE 3:*11*

BENEFIT
51:*14* 62:*12*
BEST 77:*9*
BESTIALITY
20:*8*
BETTER 78:*20*
BIG 44:*4*
BINDING 37:*4*
BIRTH 8:*6*
BISHOP 2:*5*
BIT 24:*26*
44:*12, 13*
75:*2* 77:*14*
BITE 49:*7*
BLACK 48:*4*
BLOOM 3:*15*
BODY 64:*9*
BOG 14:*4*
BOGGED 59:*3*
BONO 45:*21*
BORN 8:*12*
BOULEVARD
2:*5*
BOUNDS 77:*22*
BREADTH
6:*23* 9:*7*
BREAK 51:*13*
54:*12* 81:*7*
BREASTFEEDING
69:*25*
BREATH 5:*25*
BRIEF 31:*7*
71:*20*
BRIEFING
60:*25*
BRIEFS 12:*27*
BRING 10:*26*
12:*12* 22:*17*
BROAD 22:*20*
23:*6, 13*

24:*13*  44:*3,
16*  50:*7*
**BROADER**
52:*17*
**BROKE**  41:*24*
**BROKEN**  20:*2*
41:*28*  45:*20*
**BROOKE**  2:*10*
**BRYAN**  2:*14*
37:*24*  46:*3*
**BURLING**  2:*23*
**BUSINESS**  5:*8*
**BUSY**  54:*8*

**< C >**
**CALCULATIONS**
60:*20*
**CALEB**  7:*13,
28*  58:*22*
63:*8*  81:*1*
**CALIFORNIA**
1:*1*  2:*6,
15*  4:*2*
20:*21*
21:*11*
27:*27*  29:*2*
37:*4*  44:*18,
26*  82:*1, 18*
**CALL**  43:*28*
**CALLBACK**
24:*21*
**CALLING**
36:*13*  70:*7*
**CAPTURE**  8:*3*
23:*14*
**CARE**  28:*26*
**CASE**  1:*7*
2:*11*  4:*1,
2*  7:*28*
8:*22*  11:*28*

13:*16*  14:*4*
19:*28*
20:*25*
21:*11, 16,
23*  22:*26*
28:*3*  31:*6,
25*  35:*8*
36:*22*
37:*19, 23*
39:*23*
42:*15, 16*
44:*20*  47:*8*
49:*18*
50:*19, 22*
51:*28*
52:*11*
55:*25*
59:*13*
60:*22, 26*
61:*20*  64:*3,
4*  65:*22*
66:*10, 25*
67:*18*
72:*23*
73:*13*  76:*6,
8*  77:*16*
82:*6*
**CASES**  1:*6*
4:*20*  9:*13*
12:*27*  16:*3*
31:*10*
37:*14*
42:*17, 28*
44:*21*  48:*2,
22, 26*
49:*17*
51:*26*  59:*1,
26*  60:*18,
20*  61:*19*
70:*18*  73:*2,

14  79:*2*
81:*1, 3*
82:*6*
**CASE-SPECIFIC**
60:*19*  61:*7*
65:*24*
66:*16*  67:*5*
**CATCH**  71:*26*
**CATEGORICAL**
41:*6*
**CATEGORICALLY**
6:*2*
**CAUGHT**  15:*9*
**CAUSATION**
8:*4*  40:*24*
42:*14, 27*
59:*15, 20*
60:*10, 11,
12, 14, 15,
24*  61:*1, 3,
7, 9*  62:*3,
8, 14*  63:*13*
64:*26*  65:*5,
11, 14, 28*
66:*1, 5*
67:*2*  71:*15*
76:*9*
**CAUSATIVE**
64:*6*  65:*25*
**CAUSE**  59:*13*
60:*25*  67:*6*
80:*7*  82:*23*
**CAUSED**
15:*26*  28:*9*
**CAUSES**
15:*25*  29:*15*
**CAVES**  3:*10*
**CCP**  37:*26*
38:*6, 9, 16,
21*

**CELESTIAL**
1:*6, 11*
2:*22*  4:*2,
20*  82:*6, 11*
**CERTAIN**
50:*13*  69:*26*
**CERTAINLY**
40:*1*  79:*3*
80:*19*
**CERTIFICATE**
82:*8*
**CERTIFY**
82:*19*
**CETERA**  66:*9*
**CHAGRIN**  70:*3*
**CHALLENGE**
13:*1*  63:*9*
**CHALLENGES**
60:*11*  61:*2*
66:*14*  67:*8*
**CHANCE**  39:*7*
43:*19*  44:*7*
53:*5, 8*
**CHANGED**
43:*6, 7*
**CHARACTERIZATI
ON**  80:*19*
**CHAT**  79:*12*
**CHECK**  81:*7*
**CHECKED**  4:*22*
**CHILD**  8:*12,
22, 23*  20:*9*
31:*4*  45:*23*
69:*16, 20,
22, 26*
**CHILDHOOD**
8:*20*
**CHILDREN**
16:*20*
45:*24*  64:*10*

CHOOSE    14:3
43:28
CHOSEN    6:20
CIRCLE
39:24    52:3,
4
CIRCUMSTANCE
37:6    43:23
CIRCUMSTANCES
25:11
CITE    37:26
39:22
44:13    56:23
CITED    31:6,
10    37:27,
28    70:28
CITYCENTER
2:24
CIVIL    44:26
45:7
CLAIM    25:21
44:23
CLAIMING
34:27
CLAIMS    27:10
CLAUSE    34:19
CLAWBACK
25:2    26:9
CLEAR    17:16
20:22, 27
28:3    31:4,
6    34:1, 25
35:7, 9
36:26    41:1,
2    44:14
48:6, 7
54:14    66:27
CLEARLY
14:26    15:4

CLERK    81:8
CLIENT    29:16
CLIENTS
5:22    70:19
73:21    74:22
CLIMB    49:17
CLOSED    10:25
CLOUD    77:28
CODE    19:14
22:16    38:9
39:1    56:26
70:26, 28
71:10
CODES    70:28
COLLECT
48:21
COLLECTING
50:13    72:14
COLLECTIVELY
4:16
COMBINATION
13:14
COMBINED
13:17, 18
COME    19:9
25:10    28:9
41:26
46:11
49:21
50:27
53:16
55:19    80:6,
14
COMES    11:22
13:9    17:21
18:1    20:20,
27    21:23
31:28
33:23, 25,
27, 28

34:24    36:7
41:3    54:3
65:18
COMING
37:18    57:19
COMMA    34:19,
20
COMMENT
20:11
COMMUNICATION
17:23
18:15
23:26    24:7
25:7, 28
26:7

COMMUNICATIONS
17:14, 15
29:17
COMP    27:10
45:8
COMPANIES
29:13
COMPANY
1:12, 13
2:11    82:12,
13
COMPARED
42:3    62:13
COMPEL
19:14
74:10, 18
COMPLETELY
38:24
COMPLIANCE
76:21    78:9,
21    80:25
COMPLY    79:17
COMPRISE
82:20

CONCEIVE
9:23

CONCENTRATIONS
62:27
CONCEPT
45:20
CONCERN    59:4
CONCERNED
46:18
CONCERNING
78:20
CONCLUDE
81:14
CONCLUDING
47:19, 22, 23
CONDITION
8:25    12:9
22:18, 21,
22    23:6
28:4, 20
30:16
36:16    38:22
CONDITIONED
7:4
CONDITIONS
11:28    12:6
15:1, 23
28:5
CONDUCT    62:9
CONFER
22:23
39:11    78:6,
14    80:5, 12,
25
CONFERENCE
4:28    5:3
58:20    59:3
67:24    68:1

CONFIDENCE
30:*12*
CONFIDENTIAL
14:*17*   26:*7*
CONFINED
38:*27*
CONFINES
71:*19*
CONFIRM   34:*3*
CONFLICTS
72:*17*   74:*20*
CONFRONT
76:*13*
CONNECTED
63:*22*
CONNECTION
51:*18*
CONSENT
29:*26*
CONSEQUENCE
14:*8, 10*
CONSIDER
63:*15*   71:*5*
CONSIDERATION
9:*5, 6*
CONSIDERED
13:*14*   57:*23*
CONSISTENT
71:*9, 12*
75:*3*
CONSOLATION
70:*25*
CONSTITUTION
44:*18*
CONSULT   54:*5*
CONSUMED
75:*7*
CONSUMER
36:*1, 2, 11*

CONSUMPTION
70:*8*   73:*28*
76:*28*
CONTAINED
76:*11*
CONTEMPLATES
18:*18*
CONTEMPLATING
74:*27*   80:*15*
CONTEND   8:*6*
37:*8*   76:*25*
CONTENDING
34:*16*
CONTENT
22:*14*
CONTEST
11:*18, 19*
26:*9*
CONTEXT
14:*1*   25:*23*
27:*1*   35:*18*
45:*22, 28*
52:*15, 16*
72:*21, 22*
73:*5*
CONTINUE
67:*28*   78:*1*
CONTINUED
3:*1*   58:*23*
CONTINUING
50:*23*   78:*2*
CONTRADICTING
38:*16*
CONVERSATION
17:*8*   35:*25*
63:*26*   67:*7*
69:*4*
CONVERSATIONS
80:*19*

COORDINATION
1:*5*   82:*5*
CORLEY   59:*5,
9*   64:*16*
66:*6*
CORLEY'S
66:*2*
CORRECT
6:*28*   7:*24*
48:*20*
51:*15*
59:*16*   76:*6*
82:*21*
COUNSEL
9:*11*   14:*25*
19:*2, 3*
37:*7*   39:*20*
41:*16*
54:*12, 16*
69:*9*
COUNSELING
24:*9*
COUNTENANCE
77:*28*
COUNTY   1:*2*
82:*2, 19*
COUPLE   10:*9*
21:*9*   67:*22*
COURSE   50:*2,
3*   56:*24*
COURT   1:*1*
4:*12, 14, 19*
5:*10, 12*
6:*22, 26*
7:*7, 11*
8:*28*   9:*2,
14, 21, 28*
10:*8, 20, 25,
28*   11:*7, 20*
12:*5, 11, 20,*

*23, 26*
13:*10*   14:*5,
11, 18, 21*
15:*13, 18*
16:*4, 11*
17:*3, 6, 15*
18:*9, 12, 22*
20:*13, 19,
21, 27*   21:*9,
17, 18, 20,
24*   22:*1, 19,
23*   23:*5, 11,
23*   24:*5, 17,
24, 27*
25:*23*
26:*15, 19,
21*   28:*15,
17, 25*   29:*4,
10, 18*   30:*6,
27*   31:*3, 8,
20, 22*   32:*1,
22, 23*   34:*3,
7, 12, 25*
35:*4, 7, 13,
28*   36:*7, 15,
16, 18, 27*
37:*1, 15, 20,
22*   38:*12,
18, 21, 24,
27*   39:*3, 22*
40:*5, 15, 18,
25, 26, 27*
43:*7, 11, 19,
22*   46:*2, 16,
25*   47:*2, 7,
17, 21*
48:*13, 15,
18*   49:*11*
50:*10*   51:*7,
11*   52:*22*

53:10, 23, 24 54:11, 19, 26 55:6, 10, 15, 20, 25 56:14 57:2, 8 58:6, 7, 11, 18, 28 59:7, 14, 17, 19, 23 60:1, 8, 22, 28 61:1, 6, 10, 14, 18, 25 62:1, 15, 22 64:2 65:7 66:26 67:11, 16 68:3, 9, 13, 20 70:5 71:11, 22, 25 72:1 73:4, 7 74:13, 18, 26 75:18, 22 79:26 80:13, 21, 23 81:5, 8, 12 82:1, 18, 27

**COURTESY** 70:19, 23, 24 73:26

**COURT-IMPOSED** 71:12

**COURTS** 21:3 31:20 41:2 44:6

**COURT'S** 5:14 6:13 60:18 79:7

**COVINGTON** 2:23

**CRAFTED** 18:19

**CRC** 1:26

**CREATE** 34:13 35:13 45:19 48:10

**CRIMINAL** 13:17

**CRITICAL** 8:18 68:22

**CROSS** 77:28

**CROSS-COUNTRY** 71:26

**CROSS-PARTY** 70:17

**CRR** 1:26

**CRUMMY** 32:28

**CSR** 1:26 4:2, 21 82:26

**CULLED** 6:9

**CULTURE** 41:2

**CURRENT** 30:27

**CUSTODIAL** 25:28

**CUSTODIAN** 7:1 18:23 21:13 22:2, 7 36:5 41:27

**CUSTODIANS** 79:28

**CUSTOMARILY** 45:9

**CUT** 8:14

79:8

**CUTTING** 8:16

**< D >**

**D.B.A** 1:11 82:11

**D.C** 2:11 5:7

**DARK** 67:1 75:23 77:28

**DART** 3:16

**DATE** 5:26 7:9 32:3 54:24 57:7 64:8 69:5, 9 70:25 71:3, 5, 6, 7, 8, 12, 16, 17, 19 72:16, 24, 26, 27 74:13 75:14, 16, 24 77:17, 25, 26 78:2, 15, 28 80:8, 9, 16

**DATED** 82:24

**DATES** 67:20 78:2, 3 80:6, 11

**DAUBERT** 59:10, 15

**DAVIS** 2:19 5:11 7:23 9:16 10:7, 9 11:15, 25 12:10 15:15, 19 23:15, 24

24:15, 20, 25, 28 25:25 33:20 36:25, 28 37:13, 17, 23 39:14, 24 40:16, 19 42:2, 6 50:25 51:18, 21 54:25 55:7, 14, 16, 27 56:1, 2 57:18 58:9 59:19 61:27 62:2, 20 63:19 64:25 67:25 68:11, 16 70:10 74:9

**DAY** 24:27 27:4 54:8 65:18 66:21 82:24

**DAYS** 45:5 53:21 58:10 70:24 73:21, 23 74:23 75:13

**DAY-TO-DAY** 23:26

**DC** 2:25

**DEADLINE** 53:16 79:17

**DEADLINES** 71:13

DEAL 16:*19,* *26* 17:*20* 18:*24*

DEALT 20:*12* 73:*2*

DEBBIE 1:*26* 4:*2, 20* 82:*17, 26*

DECHERT 3:*1*

DECIDE 10:*5* 54:*21*

DECIDED 9:*3* 42:*12* 72:*9*

DECISION 63:*25* 66:*2*

DECISIONS 14:*18*

DECLARATION 7:*19* 8:*9* 10:*14, 18* 19:*25* 20:*6* 29:*6* 32:*8* 33:*22* 39:*8, 25* 40:*1, 5* 41:*11* 43:*2* 52:*21* 53:*28* 54:*5, 10* 55:*8* 56:*13, 17, 22* 57:*11, 21* 58:*10*

DECLARATIONS 57:*12*

DEEM 64:*20*

DEEPER 44:*6*

DEFAULT 62:*28*

DEFECTIVE 64:*7*

DEFENDANT 2:*8, 11, 22* 3:*1, 8* 12:*25* 22:*1, 4*

DEFENDANTS 1:*15* 2:*16* 6:*4, 7, 18, 23* 7:*6, 24* 13:*5* 17:*11, 19, 22* 18:*19* 19:*12, 17* 20:*4* 21:*7* 27:*1, 18* 31:*21* 33:*10* 34:*18* 49:*20* 50:*2, 10* 51:*3* 56:*25* 59:*10* 60:*11* 63:*4, 22* 67:*27* 70:*15* 75:*2, 11, 17* 79:*23* 80:*6* 82:*15*

DEFENDANT'S 70:*3*

DEFENSE 5:*10* 7:*11* 10:*26* 14:*24* 15:*3, 7, 11* 21:*10* 23:*11* 33:*3* 36:*19* 39:*17* 41:*8* 45:*15, 26* 47:*22* 51:*5,*

*11* 54:*17* 59:*18* 62:*18* 63:*9* 64:*11* 67:*23* 72:*3* 76:*8, 10, 25* 77:*9* 79:*1*

DEFINITELY 56:*18*

DEFINITION 17:*12* 28:*6* 29:*2*

DEGREE 49:*7*

DELAYED 73:*24*

DEMONSTRATE 50:*16*

DENIED 48:*13*

DEPARTMENT 1:*3* 4:*2* 18:*28* 82:*3, 22*

DEPENDING 55:*8*

DEPOSED 77:*6*

DEPOSITION 22:*2* 33:*18* 35:*9* 53:*12* 76:*28* 77:*23*

DEPOSITIONS 60:*25* 67:*5* 68:*14* 69:*13, 14*

DEPRIVE 17:*16*

DERMATOLOGIC 28:*23*

DERMATOLOGICAL 28:*20*

DERMATOLOGIST 28:*19*

DERMATOLOGY 49:*24*

DESCRIBE 29:*21*

DESCRIBED 44:*27*

DESTROYS 26:*7*

DETAIL 52:*20*

DETERMINATION 63:*20*

DETERMINE 25:*19* 35:*5* 63:*21*

DEVELOP 13:*20*

DEVELOPMENT 73:*16*

DEVELOPMENTAL 8:*5, 17, 19* 69:*27*

DEVIATE 38:*9*

DEVOTE 61:*8*

DIAGNOSIS 13:*22* 48:*6*

DIFFERENCE 30:*23* 35:*17* 73:*22*

DIFFERENCES 6:*12*

DIFFERENT 10:*16* 11:*26* 12:*3* 15:*22, 23* 20:*18* 42:*21* 43:*14* 45:*7, 13* 48:*25*

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

61:*11*    72:*8*
73:*16*

**DIFFERENTIAL**
76:*3*

**DIFFERENTLY**
29:*20*    66:*5*

**DIG**    44:*6*

**DIRECT**    36:*4*

**DIRECTED**
23:*18*
28:*18*    45:*11*

**DIRECTING**
79:*22*

**DIRECTLY**
59:*12*

**DISAGGREGATING**
65:*21*

**DISAGREE**
10:*16*
41:*22*    80:*18*

**DISAGREEMENT**
40:*20*

**DISAGREEMENTS**
40:*12*

**DISCLOSE**
66:*28*    79:*22*

**DISCLOSED**
11:*4*    67:*3*
75:*9*

**DISCLOSURE**
19:*14*    26:*6*

**DISCLOSURES**
75:*3*

**DISCOVERABLE**
46:*18, 20*
52:*11*

**DISCOVERY**
4:*27*    5:*1,
15*    11:*24*

12:*28*    13:*7*
15:*3, 14*
20:*16, 24*
22:*5*    23:*1,
9*    30:*15*
31:*26*
34:*14*
37:*10*    41:*2*
44:*16, 26*
62:*9*    63:*7*
65:*4, 8, 10,
20*    66:*22*
67:*28*
68:*27*    70:*6,
17, 22*    71:*2,
4, 8*    72:*5,
13*    73:*2, 9,
12*    74:*14,
17, 25*
75:*10, 16*
77:*11, 20*
78:*12, 13, 19*

**DISCRETION**
22:*20, 23*
23:*6*    31:*23*
34:*3*    36:*15,
20, 24*
37:*12*
38:*14, 23,
28*    53:*1*

**DISCRETIONAL**
21:*3*

**DISCUSS**
65:*18*
66:*21*    68:*4*

**DISCUSSION**
55:*19*
58:*16, 26*
63:*24*
67:*14*    68:*1*

**DISCUSSIONS**
10:*11*

**DISMISSED**
60:*18*

**DISORDER**
8:*13, 23*

**DISORDERS**
8:*5, 6, 10*
15:*20, 24*

**DISPOSITIVE**
60:*23, 26*

**DISPOSITIVELY**
40:*21*

**DISPUTE**
18:*5*    30:*27*
31:*16*    33:*4,
6*    64:*15*
69:*17*    71:*2*
74:*11*
79:*20, 23*

**DISPUTED**
68:*6*

**DISPUTES**
5:*2*    49:*18*
75:*16*

**DISSOLUTION**
45:*6*

**DISTINCTION**
19:*2, 6*
31:*1*

**DIVERGE**
44:*12*

**DIVERT**    44:*12*

**DIVORCING**
65:*2*

**DLA**    2:*9*
68:*17*

**DOCTOR**
30:*11*
35:*10*    69:*24*

**DOCTORS**
13:*25*

**DOCUMENT**
16:*1*    17:*21*
24:*1*    25:*12*
35:*3*    38:*3*
44:*5*    72:*18*

**DOCUMENTS**
6:*9*    7:*5*
13:*7*    17:*17*
22:*7*    26:*27*
34:*5, 26*
35:*5, 27*
38:*6*    46:*7*

**DOING**    7:*4*
8:*16*    10:*1*
17:*26*
48:*25*    49:*3*
51:*2*    62:*24*
77:*10*

**DOOMSDAY**
50:*10*

**DOOR**    79:*6*

**DOSE**    64:*26,
27*    65:*3, 15,
21, 22, 25,
27*    66:*9, 17*
67:*6*    75:*28*
76:*13, 22,
24, 25*    78:*9,
21*    80:*25*

**DR**    7:*19*
8:*9, 21*
10:*13, 26*
11:*7*    12:*12*
13:*11*
18:*24*
19:*25*
20:*10*    29:*5*
40:*5*    41:*12,*

17    43:*2*
52:*20*    54:*7*
55:*9*    59:*11,*
*12*    76:*3*
**DRAGGED**
31:*17*
**DRAGNET**
15:*10*    20:*4*
24:*13*
**DRAW**    20:*20*
21:*4*    31:*21,*
*23*    32:*11,*
*12, 16*
40:*28*    41:*2,*
*8, 14, 15*
45:*27*    51:*5*
52:*13*    56:*9,*
*20*
**DRAWING**
39:*9*    41:*20*
**DRAWN**    15:*8,*
*12*    21:*6*
32:*10*    41:*5,*
*9*    44:*9, 11*
48:*6*    52:*6*
55:*2*    56:*7*
**DRESSING**
49:*8*
**DREW**    3:*11*
**DUE**    70:*11*
**DURATION**
62:*27*    66:*9*

**< E >**
**EARLIER**
5:*14*    28:*8*
**EASIER**    21:*27*
**EATEN**    69:*10*
**EATING**
69:*16, 20, 23*

**EDUCATIONAL**
8:*16*    9:*17*
23:*19*    27:*3*
49:*16*    51:*20*
**EFFECT**    11:*10*
**EFFICIENTLY**
68:*23*
**EFFORT**
57:*28*    62:*10*
**EFFORTS**    77:*9*
**EIGHTH**    2:*10*
**EIGHT-PAGE**
56:*20*
**EITHER**
29:*22*    33:*2*
41:*6*    58:*2*
71:*11*    78:*17*
**ELECTRONIC**
39:*12*
**ELIZABETH**
2:*9*    3:*15*
**ELUCIDATE**
33:*25*
**EMERGING**
13:*7*
**EMPLOYEE**
24:*15*
**EMPLOYEE'S**
24:*19*
**EMPLOYER**
18:*28*
46:*12, 22*
**EMPLOYERS**
23:*21*
**EMPLOYER'S**
24:*12*
**EMPLOYMENT**
5:*18*    8:*16*
9:*18*    17:*14*
18:*2, 28*

22:*3*    23:*19*
24:*16*    27:*2,*
*9*    49:*17*
51:*19*
68:*14*    77:*6*
**ENACT**    35:*13*
**ENCAPSULATES**
52:*6*
**ENCOMPASSED**
9:*4*
**ENGAGE**    23:*1*
**ENGRAFT**
34:*13*
**ENJOYING**
20:*8*
**ENSURING**
23:*9*
**ENTERTAINING**
71:*14*
**ENTIRE**    27:*9,*
*14*
**ENTIRELY**
16:*14*
**ENTITIES**
23:*25*    26:*2,*
*17*
**ENTITLED**
49:*28*
**EPI**    66:7, *8*
**EPIDEMIOLOGY**
63:*16*
**ESFANDIARY**
2:*3*    5:*6, 7,*
*28*    6:*1*
7:*2, 8*
15:*16*    17:*3,*
*5, 7*    18:*11,*
*16, 26*
21:*15, 19,*
*21, 28*

22:*10*
26:*20, 22,*
*28*    28:*16,*
*22, 27*    29:*8,*
*12*    30:*20*
31:*19*
33:*21*    34:*8,*
*17, 23*
35:*15*
36:*14*
38:*19*
39:*10*    41:*4*
43:*10*
47:*19*
49:*11, 13*
51:*8, 15, 20*
52:*23*
53:*14*    54:*2*
56:*18*    57:*4,*
*15*    59:*6, 9,*
*16*    60:*16*
61:*13, 17,*
*23*    66:*27*
70:*13*
71:*24*
74:*28*
75:*22*
79:*11*    80:*2*
**ESFANDIARY'S**
52:*4*    80:*18*
**ESPECIALLY**
6:*15*    18:*1*
54:*3*
**ESQ**    2:*3, 4,*
*5, 9, 10, 14,*
*19, 23*    3:*5,*
*9, 11, 14, 15,*
*16*
**ESSENTIALLY**
73:*23*

ET   4:2
66:9
ETIOLOGY
12:17
13:13
14:28   76:4
EVALUATION
63:17   80:25
EVENTUALLY
63:3
EVERYBODY
4:14   30:5
36:6
EVERYBODY'S
14:9   51:14
55:26
EVIDENCE
8:4   13:1
22:5   56:4
57:22, 23,
28   58:4
59:20
EXACT   9:12
73:12
EXACTLY
25:25
31:20
46:17
48:28   52:6
73:10
EXAMPLE
16:17
18:27   20:7
23:7   28:8
39:21   48:6
49:24
EXAMPLES
16:14

EXCEPTION
27:8, 12, 17,
20, 22   28:12
EXCEPTIONS
47:12
EXCHANGE
50:23, 28
EXCLUDED
59:20
EXCLUDES
18:21   22:13
EXCLUDING
34:19
EXCRUCIATING
52:20
EXECUTE   6:20
EXECUTING
5:22   6:3
EXERCISE
10:1   11:22
EXIST   25:13,
28   35:6
44:2
EXISTING
32:23
EXISTS
25:12   35:6
EXPANDED
39:5
EXPECT
43:22   44:6
EXPECTATION
7:21
EXPEDITED
79:19
EXPEDITIONS
20:25
EXPENDITUREWIS
E   61:6

EXPENSIVE
11:14, 15
EXPERIENCE
47:28   68:21
EXPERIENCED
68:20
EXPERT   13:2
14:28   15:3
32:8, 11, 15
33:22   39:8
41:10, 18,
19   43:2
44:8   54:5
56:13, 22
57:22   63:7,
13   65:10,
22   66:5, 12,
13, 17
EXPERTS
10:15   13:6,
25   14:13,
19   39:9
40:20
41:21
44:13
48:10
59:11
60:24   62:2,
14   63:28
64:26   65:5,
24   66:28
67:2, 6
76:10
EXPERT'S
20:5   39:25
EXPLAINING
62:28
EXPLAINS
41:10

EXPLANATION
52:5
EXPLICIT
28:8
EXPLICITLY
18:20
20:14
22:13   76:5
EXPOSURE
15:26
60:19
61:16   62:4,
13, 18, 26,
28   63:2, 8,
14, 18, 22
64:8, 20, 28
65:27
66:25
75:28
76:15, 16, 17
EXPOSURES
63:4
EXTEND   73:26
EXTENDS
35:27
EXTENSION
34:9   69:3
70:12, 23,
24   72:24
74:21, 24
75:1
EXTENT
20:26   26:4
28:1, 12, 27
42:24

< F >
FACT   11:14
15:21
23:28   45:4

48:*2*    56:*3*
60:*17*, *26*
70:*25*    75:*6*
**FACTORS**
 40:*13*    75:*8*
**FACTS**    31:*24*
**FACTUAL**    70:*4*
**FAITH**    34:*9*
 80:*20*
**FALLS**    76:*8*
**FAMILY**    17:*1*
 45:*1*    48:*23*,
*24*
**FAN**    44:*4*
**FAR**    77:*15*
**FASHION**    14:*6*
**FAVOR**    13:*28*
**FEASIBLE**
 19:*4*
**FEBRUARY**
 9:*3*    70:*9*,
*22*    71:*12*,
*17*    72:*27*
 73:*8*, *11*
 74:*14*, *25*
 77:*18*
**FEDERAL**
 21:*18*    37:*3*
**FEET**    45:*23*
**FIELD**    10:*16*
**FIELDS**    23:*27*
**FIGURE**    76:*20*
**FIGURED**
 71:*23*
**FILE**    24:*12*,
*19*    27:*9*
 48:*12*    54:*1*
 55:*12*
 56:*27*    57:*3*,
*11*    74:*10*

**FILED**    53:*14*
 56:*28*
 59:*26*    73:*14*
**FILES**    26:*1*
**FILING**    28:*3*
 45:*6*    55:*4*
**FINAL**    52:*23*
**FIND**    11:*6*
 37:*2*, *5*
 56:*14*    59:*7*
 60:*3*    61:*22*
 81:*8*
**FINE**    5:*9*
 39:*13*
 65:*12*    79:*12*
**FINISH**
 43:*20*    48:*1*
**FIRST**    9:*4*,
*25*    10:*2*
 18:*6*    21:*10*,
*12*    23:*7*
 25:*2*, *17*
 33:*5*, *6*, *7*
 36:*27*, *28*
 37:*7*, *21*, *22*
 38:*25*    42:*9*
 47:*3*    49:*16*,
*21*    50:*22*
 51:*16*
 52:*27*
 60:*10*, *24*,
*25*    61:*7*
 63:*25*    65:*9*
 66:*15*    71:*16*
**FIRST-LOOK**
 36:*10*
**FIRST-PASS**
 9:*2*    25:*23*
**FITS**    65:*28*

66:*9*, *24*
**FLIGHT**    71:*26*
**FLIP**    14:*6*
**FLIPPING**
 62:*11*
**FLOOR**    24:*24*
**FLOWER**    2:*14*
**FOCUS**    7:*14*
 62:*23*    65:*3*
**FOCUSED**
 7:*12*, *15*
 33:*19*
**FOCUSING**
 7:*25*
**FOLLOW**    18:*8*
 19:*10*    51:*4*
 55:*11*
 56:*27*    62:*16*
**FOLLOWED**
 19:*19*
**FOLLOWING**
 4:*11*    6:*28*
 11:*8*    18:*14*
 34:*19*
 59:*27*    77:*24*
**FOMBONNE**
 7:*19*    8:*9*,
*21*    10:*13*,
*26*    11:*7*
 12:*12*
 13:*11*
 20:*10*    29:*5*
 32:*9*, *15*
 41:*12*, *17*
 52:*20*
**F-O-M-B-O-N-N-**
**E**    7:*20*
**FOMBONNE'S**
 19:*25*    40:*5*
 43:*2*

**FOOD**    1:*6*
 15:*26*
 55:*25*    59:*1*
 63:*16*    64:*5*,
*14*    66:*6*, *8*
 69:*16*, *18*,
*19*    70:*8*
 75:*7*    76:*10*,
*11*, *17*, *18*,
*28*    82:*6*
**FOODS**    1:*13*
 3:*8*    69:*10*
 80:*27*    82:*13*
**FOOLISH**
 77:*25*
**FORCE**    29:*26*
 34:*26*
**FORCES**    14:*13*
**FOREGOING**
 82:*20*
**FOREVER**    14:*4*
**FORGET**    22:*16*
**FORM**    30:*24*
 62:*7*
**FORMAL**    4:*23*
 13:*22*    75:*10*
**FORMER**    45:*1*
**FORMULA**
 69:*25*
**FORMULATE**
 13:*6*
**FORWARD**
 14:*9*    25:*10*
**FOUHEY**    3:*15*
**FOUND**    62:*18*
 66:*6*    76:*3*
**FOUR**    78:*28*
**FOURTH**    9:*1*
 25:*14*    49:*7*

**FRANKLY**
16:*18*
32:*27*    70:*2*
**FREIWALD**
3:*5*    12:*19,*
*22, 24*
13:*15*
14:*12*    16:*9,*
*12*    24:*22*
42:*5*    43:*18,*
*20*    47:*24*
48:*16, 19*
57:*6*    65:*16*
67:*4*    68:*24,*
*25*    70:*9, 11*
72:*10*
73:*10*
76:*12*    80:*17*
**FREIWALD'S**
20:*11*
**FRIDAY**    59:*26*
**FRONT**    13:*26*
17:*9*    32:*10*
**FULL**    10:*14*
40:*10*    51:*1*
60:*24*
65:*26*    82:*20*
**FULLY**    43:*1*
**FUNCTIONALLY**
49:*5*
**FUNDAMENTAL**
30:*5*
**FUNDAMENTALLY**
35:*23*
**FURROW**    10:*23*
**FURTHER**
33:*24*    77:*5,*
*12*

**< G >**

**GATELY**    2:*9*
59:*24*
68:*17*
72:*11, 21,*
*22*    73:*5*
**GENERAL**
18:*23*
55:*11*
59:*12, 15*
60:*12, 14,*
*25, 28*    61:*2,*
*9*    62:*3, 8,*
*14*    63:*13*
64:*26*    65:*4,*
*11, 14, 28*
66:*1, 4, 28*
67:*2, 5*
76:*9*
**GENERALLY**
44:*4*    47:*5,*
*7*
**GENETIC**
8:*23*    48:*23*
**GENETICS**
30:*5*
**GENOMES**
31:*11*
**GENTLEMAN**
42:*1*
**GEORGIA**    2:*20*
**GERBER**    2:*11*
37:*25*    46:*4*
**GERGER**    1:*12*
82:*12*
**GERMANE**
11:*18*
31:*24*    52:*11*
**GETTING**
33:*22*
35:*25*

37:*17*
53:*21*
64:*27*
68:*21*    74:*5*
**GIVE**    9:*24*
24:*26*    32:*5*
39:*7*    43:*15,*
*19*    44:*7*
53:*10*    55:*6,*
*13*    57:*17*
60:*4*    73:*23*
75:*18*
78:*16*
80:*24, 26*
**GIVEN**    6:*23*
11:*26*
17:*22*    25:*8*
36:*15*
38:*23, 28*
49:*26*    50:*7*
67:*25*
79:*15, 19*
**GIVING**
14:*14*    24:*9*
52:*13*
56:*26*    77:*17*
**GO**    11:*22*
17:*6*    24:*11*
32:*26*
58:*13, 18*
67:*11*
77:*15*    81:*12*
**GOALPOSTS**
57:*16*
**GOES**    30:*12*
36:*2*    52:*20*
69:*28*    78:*26*
**GOING**    5:*24*
11:*9*    13:*8*
14:*3, 4*

17:*9*    18:*26*
21:*1*    23:*2,*
*25*    27:*3*
28:*9*    30:*24*
32:*19*
34:*21*    35:*9,*
*21*    36:*23*
41:*22*
42:*19*
43:*19, 26*
44:*14*
49:*21, 23*
50:*2, 3, 9,*
*14, 16, 18,*
*19, 26, 27*
51:*9, 13*
52:*7, 8*
53:*2*    55:*2,*
*13*    56:*4, 9*
57:*13, 21,*
*22*    59:*2*
60:*26*    62:*6*
66:*23*
67:*26*    68:*4,*
*7*    71:*2, 13,*
*27*    72:*7, 8,*
*26, 27, 28*
73:*14, 18,*
*20, 26*
74:*12*
75:*25*
77:*13, 21*
78:*5, 27*
79:*15*    80:*20*
**GOOD**    4:*14,*
*17*    5:*6*
6:*1*    10:*21*
14:*27*    20:*6,*
*23*    21:*3*
34:*9*    36:*22*

37:*6* 41:*11* 80:*20*

**GOOD-BYE** 80:*26*

**GORDON** 3:*9*

**GOSH** 36:*2*

**GRANT** 32:*19* 58:*7*

**GRANTED** 58:*1* 59:*9* 61:*3* 70:*23*

**GRANTS** 22:*19, 23*

**GRAPPLE** 20:*19* 30:*7* 31:*23*

**GREAT** 15:*6* 16:*19, 26* 32:*21* 35:*12*

**GREYHOUND** 20:*25*

**GROCERY** 1:*13* 82:*13*

**GROUND** 19:*13* 70:*3*

**GROUNDS** 23:*3* 26:*11* 55:*1*

**GROUP** 1:*11* 2:*22* 4:*2, 20* 82:*11*

**GUARANTEE** 81:*10*

**GUARDIAN** 30:*2* 31:*4*

**GUESS** 33:*14* 76:*4* 77:*11* 78:*5, 8*

**GUIDANCE** 32:*22, 23* 44:*14* 79:*15*

**GUN** 67:*17*

**< H >**

**HAC** 81:*2*

**HAIN** 1:*6, 11* 2:*22* 4:*2, 20* 55:*25* 67:*16* 82:*6, 11*

**HALT** 70:*3*

**HAND** 72:*7*

**HANDING** 74:*3*

**HANDLED** 9:*13*

**HAPPEN** 22:*8, 9* 30:*13* 38:*10, 11* 74:*19* 77:*13* 78:*10*

**HAPPENED** 51:*25, 26* 65:*1, 2* 72:*11*

**HAPPENING** 14:*22*

**HAPPENS** 5:*2* 6:*28*

**HAPPY** 34:*21* 53:*17, 22* 80:*5, 11*

**HARD** 16:*4*

**HATE** 54:*2*

**HEAD** 75:*27*

**HEADER** 49:*9*

**HEALTHCARE** 23:*21*

**HEAR** 7:*10* 10:*20* 11:*8* 32:*14* 39:*3* 40:*25* 44:*25* 45:*2* 65:*19* 76:*12*

**HEARD** 15:*17* 17:*27* 26:*14* 42:*10, 11, 16* 46:*7*

**HEARING** 10:*25* 46:*8* 54:*18* 57:*5, 9* 71:*28* 74:*13* 78:*8, 21* 79:*16*

**HEARINGS** 58:*21* 70:*15* 72:*25*

**HEATHER** 2:*5*

**HEAVY** 15:*26* 29:*15* 63:*21* 64:*5, 13*

**HECK** 29:*16*

**HELD** 4:*11* 82:*21*

**HELP** 32:*14* 37:*15, 17* 44:*20*

**HELPFUL** 65:*19* 66:*16*

**HELPING** 8:*21*

**HERETOFORE** 4:*2*

**HEY** 28:*19*

**HIGH** 31:*26*

**HIGHER** 53:*6*

**HIGHLY** 18:*1* 42:*2* 52:*2*

**HIGHLY- QUALIFIED** 41:*10*

**HILL** 15:*13* 20:*13* 44:*19*

**HINO-SPAAN** 1:*26* 4:*2, 20* 82:*17, 26*

**HISTORIES** 8:*18, 19, 24* 42:*23* 52:*19*

**HISTORY** 13:*16* 17:*2* 27:*15* 42:*28* 48:*9, 23, 24* 49:*14* 70:*13* 74:*8*

**HIT** 11:*25* 81:*6*

**HOLD** 26:*21* 28:*17* 34:*7, 16* 37:*7* 43:*11* 47:*21* 67:*11* 70:*17, 25* 71:*1, 22* 72:*5* 75:*15*

**HOLDS** 10:*25*

**HON** 1:*3* 4:*2* 82:*3*

**HONEST** 7:*12* 26:*14* 29:*24* 44:*23*

**HONOR** 5:*6, 11, 28* 6:*10* 7:*9, 23*

9:5, 27
10:7, 10
12:19
13:27
15:16, 19
16:10, 18, 28   17:26
18:11
19:22
21:16
23:15
24:28
25:14, 21
26:20
27:20
30:20
33:20, 25
34:1, 24
35:15
36:26
37:19, 24
38:15, 19
39:13, 14, 17, 24   42:6, 10, 18, 25
43:10
45:17   46:3, 5, 8, 19
47:1, 12, 19, 25   49:1, 13, 15   50:23
52:4, 13, 25
54:2, 25
55:16   56:1, 3, 19, 21
57:5, 6, 19
59:6, 19
60:16
61:23, 27
63:19

65:16
66:27
67:25
68:25   70:9, 13   71:14, 20, 24
72:10, 21
74:3, 9, 28
75:2, 4, 13
79:11, 15, 21   80:3, 20, 22   81:11
**HONOR'S**
39:19
**HOPE**   3:5
12:24
32:20
33:12, 13
47:24
55:25
65:16
68:25   72:10
**HOPEFULLY**
74:6
**HOST**   8:10
**HOUSE**   19:2
**HUNDREDS**
75:11
**HUNKY-DORY**
16:8
**HYPO**   24:18
**HYPOTHETICAL**
10:24   37:1
58:6

**HYPOTHETICALLY**
12:13   24:7, 10

**< I >**

**IDC**   42:10
43:9, 12
**IDCS**   9:2
47:26
**IDEA**   7:2
10:22
25:27
36:22   37:6
45:27   60:4, 17   61:10, 11, 14   62:6
63:7
**IDENTICAL**
7:26
**IDENTIFIED**
11:23   24:1
38:5
**IDENTIFIES**
75:6
**IDENTIFY**
4:23   14:25
19:11
51:25   77:12
**IDENTIFYING**
26:27
**IMAGE**   14:22
15:2, 6
**IMAGINE**
12:15
**IMBROSCIO**
2:23
**IMMEDIATE**
39:10
**IMMUNITY**
25:20, 22
**IMPACT**   67:9, 26   68:7
69:4   75:14
**IMPLICATED**
31:27

**IMPLICATES**
27:7, 11, 15
**IMPLIES**   76:5
**IMPLY**   60:14
**IMPORTANT**
9:9   10:15, 28   47:25
48:22
52:24
57:25
68:24   70:14
**IMPOSE**   38:25
**IMPULSIVITY**
45:24
**IN-CAMERA**
34:28   35:5
**INCLUDE**
57:11
**INCLUDING**
8:13   16:20
27:10
34:10
51:14   66:1
67:6
**INCLUSIVE**
1:14   82:14, 20
**INCOME**   46:14
**INCREASING**
8:12
**INDEFINITELY**
75:16   80:10
**INEVITABLY**
23:2
**INFORMATION**
5:18   6:16
8:17   10:15
11:17
19:12
23:14, 26

26:*6, 18*
28:*13*
31:*12*    40:*9,*
*12, 22*    42:*3*
47:*5*    48:*2*
51:*27*    52:*1,*
*9, 15*    53:*9*
64:*28*    65:*6*
69:*8, 15*
70:*4, 7*
73:*24, 28*
**INFORMATIVE**
33:*27*
40:*13, 23*
49:*15*
**INFORMS**
69:*23*
**IN-HOUSE**
19:*3*
**INITIAL**    75:*2*
**INITIALLY**
68:*27*
**INJURE**    45:*25*
**INJURY**    30:*13*
**INNOCENT**
72:*2*
**INQUIRY**
20:*19*
**INSANE**    20:*6*
**INSIST**
54:*23*    75:*25*
**INSTITUTION**
18:*27*    19:*5*
**INSTITUTIONS**
19:*3*
**INSTRUCTS**
31:*20*
**INSURANCE**
26:*1, 13*

**INTELLECTUAL**
10:*1*
**INTELLIGENTLY**
78:*22*
**INTERESTED**
41:*19*    59:*4*
64:*16*
**INTERESTING**
29:*18*    44:*28*
**INTERESTS**
20:*28*
**INTERNAL**
29:*14*
**INTERROGATORIE**
**S**    72:*18*
75:*11*
**INTRUDE**
20:*15*
**INVITE**    32:*20*
**INVOLVED**
26:*4*    33:*1*
40:*11*    62:*3*
65:*5*    80:*28*
**INVOLVING**
43:*27*
**IRRELEVANT**
52:*1*
**IRRESPECTIVE**
6:*6*
**ISSUE**    6:*3*
8:*22*    9:*3,*
*4, 8*    17:*2*
18:*5*    20:*13*
26:*10*
30:*16*
33:*25*    34:*2*
38:*2*    40:*3,*
*23*    42:*7, 21*
47:*2*    51:*27*
54:*26*

60:*26*    62:*3*
65:*17, 19,*
*20*    66:*20*
68:*6*    72:*8*
74:*15, 18*
76:*14*    79:*14*
**ISSUED**    68:*12*
**ISSUES**    8:*19*
9:*5, 9*
13:*18, 19,*
*20*    16:*6*
17:*8*    40:*8*
42:*16, 27*
43:*3*    50:*12*
60:*23*
67:*10*
78:*20*    79:*13*
**ITERATIVE**
14:*14*
**ITS**    31:*17,*
*22*    32:*3*
44:*19*

**< J >**
**JANUARY**
73:*11*    74:*11*
**JARRED**    69:*19*
**JCCP**    59:*22,*
*26*    73:*2*
75:*4*
**JCCP5317**
4:*20*
**JOHNSON**    61:*4*
**JOINT**    67:*22*
69:*6*    78:*16*
80:*24*
**JOINTLY**
78:*17*
**JOSUE**    81:*2*

**JUDGE**    1:*3*
4:*2*    43:*23*
45:*1*    59:*5,*
*9*    64:*16, 17*
66:*2, 6*
82:*3*
**JUDGE-MADE**
35:*13*
**JUDGMENTS**
30:*26*
**JUMPED**
45:*23*    67:*17*
**JURY**    30:*6*
**JUSTIFY**
75:*15*

**< K >**
**KEEN**    14:*7*
**KEEP**    57:*14*
70:*19*    71:*7*
**KEPT**    14:*16*
**KIDS**    45:*21*
**KILOGRAM**
64:*9*
**KIM**    2:*10*
**KIND**    11:*5*
14:*6*    26:*15,*
*17, 26*    28:*1,*
*10*    35:*24*
37:*21*    41:*6*
42:*7, 20*
48:*10*    49:*6*
52:*3*    55:*1*
62:*11*    69:*5*
70:*3*    79:*20*
**KINDS**    18:*14*
69:*10*    73:*17*
**KING**    2:*16*

| | | | |
|---|---|---|---|
| **KISER** 2:*19* | 8, 25 73:*10*, | 24 35:*12*, | **LIGHT** 37:*10* |
| 9:*27* 45:*17*, | 25 76:*23*, | 13, 14 | 56:*3* 66:*2* |
| *18* | 25 77:*19*, | 36:*21* 37:*2*, | **LIMINE** |
| **KITCHEN** 21:*2* | 20, 27 79:*1*, | 19, 23 41:*1* | 12:*28* |
| **KLATT** 3:*9* | 24 80:*7*, *9* | 44:*26* 45:*1* | 48:*13*, *14* |
| 80:*27* | 81:*5*, *6* | 46:*21* 56:*23* | **LIMINE/402** |
| **KNEW** 73:*18* | **KNOWING** | **LAWRENCE** | 78:*8* |
| 74:*12* | 11:*7* 72:*25* | 1:*3* 4:*2* | **LIMIT** 8:*3* |
| **KNOW** 4:*22* | **KNOWN** 73:*13* | 82:*3* | 9:*19* |
| 6:*12*, *13* | | **LAWSUIT** | **LIMITATIONS** |
| 8:*2*, *4*, *8* | **< L >** | 16:*22* 29:*22* | 7:*18*, *22* |
| 9:*9* 11:*9*, | | **LAWYERS** | **LIMITED** |
| *10* 12:*13* | **LACOURTCONNECT** | 14:*27* 19:*6*, | 27:*22* |
| 13:*12* | 2:*4* 3:*11* | *8* 26:*3* | **LIMITING** |
| 14:*21*, *27* | **LAID** 78:*6* | 32:*12* 41:*13* | 65:*8* |
| 16:*4* 18:*23*, | **LANDED** 63:*3* | **LAWYER'S** | **LIMITS** 52:*10* |
| *25* 19:*3*, *12* | **LANDON** 1:*8* | 29:*14* | **LINE** 15:*8*, |
| 20:*22*, *26*, | 4:*2* 16:*6* | **LAY** 50:*8* | *11* 32:*9* |
| *28* 21:*19* | 42:*16* | 56:*19* | 39:*9* 41:*5*, |
| 24:*6*, *8*, *9* | 48:*16*, *20* | **LAYS** 20:*14* | *20* 44:*8*, *11* |
| 28:*6*, *26* | 49:*15* | **LEAD** 21:*1* | 49:*8* 75:*27* |
| 29:*7*, *19*, *28* | 60:*17*, *27* | 22:*5* 49:*18* | **LINES** 20:*20* |
| 30:*2* 32:*18* | 62:*17* 63:*1* | 50:*18* 64:*9* | 21:*4*, *5* |
| 33:*3*, *14* | 69:*2* 70:*15* | 76:*11*, *16* | 31:*21*, *24* |
| 36:*21* 37:*4*, | 72:*9*, *22*, *25*, | **LEADER** 24:*8* | 32:*11*, *13*, |
| *5*, *13* 41:*11*, | *28* 73:*2* | **LEADING** | *16* 40:*28* |
| *22*, *23*, *24* | 76:*3*, *7* | 78:*23* | 41:*3*, *8*, *9*, |
| 43:*5*, *28* | 82:*8* | **LEAVE** 71:*25* | *14*, *15* |
| 44:*17*, *22* | **LANDSCAPE** | **LED** 50:*12* | 45:*28* 48:*5* |
| 47:*7*, *8* | 71:*9* | **LEFT** 12:*1* | 51:*5* 52:*6*, |
| 49:*7* 51:*3* | **LANGUAGE** | 68:*8* | *13* 55:*2* |
| 53:*25* | 22:*20*, *22* | **LEGAL** 18:*27* | 56:*8*, *9*, *19*, |
| 54:*21* | 61:*11* | 41:*2* | *20* |
| 55:*17* | **LAW** 19:*16* | **LEGISLATURE** | **LINK** 8:*8*, *11* |
| 60:*28* | 20:*26* | 22:*28* 35:*12* | **LITEM** 30:*3* |
| 61:*19* 63:*5*, | 21:*23* | **LEGITIMATE** | 31:*4* |
| *25* 64:*9*, *11*, | 27:*27*, *28* | 80:*13* | **LITERALLY** |
| *12*, *23* | 29:*2* 31:*6* | **LENGTHY** | 9:*25* 53:*20* |
| 65:*12*, *14* | 32:*23* | 19:*25* | 70:*26* |
| 66:*7* 71:*1*, | 34:*10*, *11*, | | |

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

**LITERATURE**
  8:*11*    15:*22*
**LITIGANT**
  27:*20*, *22*
  28:*2*, *12*
**LITIGANTS**
  27:*23*, *24*
  29:*23*
**LITIGATE**
  60:*10*, *22*
  63:*11*    65:*9*
**LITIGATED**
  28:*4*    48:*28*
  78:*20*
**LITIGATING**
  34:*3*    71:*15*
  77:*22*
**LITIGATION**
  16:*28*
  17:*26*    18:*3*
  19:*1*, *6*
  23:*3*    27:*10*
  29:*25*, *27*
  30:*14*, *25*
  31:*3*, *5*, *6*
  38:*4*    47:*27*
  50:*18*    78:*19*
**LITIGATIONS**
  48:*1*
**LITTLE**
  21:*26*
  24:*26*
  44:*12*, *13*
  45:*7*    66:*5*
  75:*2*
**LIV**    45:*18*
**LIVED**    69:*10*
  73:*17*
**LIVES**    16:*20*

  31:*11*
**LIVIA**    2:*19*
**LLC**    2:*8*
  68:*18*
**LLP**    2:*3*, *11*,
*23*    3:*1*, *9*
**LOG**    19:*11*
**LOGIC**    63:*18*
**LOGICAL**
  63:*18*
**LOGS**    19:*18*
**LONG**    17:*27*
  53:*28*    57:*2*
  75:*12*
**LONGER**    25:*9*
  30:*18*
**LOOK**    9:*25*
  10:*2*, *27*
  34:*8*    36:*27*,
*28*    37:*7*
  43:*15*    44:*9*
  47:*17*
  50:*25*
  55:*11*
  66:*16*, *23*
  71:*2*
**LOOK/FIRST**
  21:*12*
**LOOKED**    37:*3*
  46:*10*, *12*
**LOOKING**
  9:*25*    37:*4*
  44:*9*    64:*23*
  76:*6*
**LOOKS**    71:*9*
**LOOSE**    79:*9*
**LOS**    1:*2*
  2:*6*, *15*
  4:*2*    82:*2*,
*19*, *27*

**LOST**    17:*8*
  35:*25*
**LOT**    17:*7*
  37:*15*, *17*
  45:*20*    46:*7*,
*14*    51:*6*
**LOVE**    32:*7*
  33:*12*    39:*22*
**LUNCH**    81:*7*

**< M >**
**MAGNITUDE**
  71:*4*
**MAJOR**    17:*8*
  34:*9*
**MAKER**    73:*22*
**MAKING**
  10:*13*
  33:*28*
  35:*17*, *18*,
*19*    50:*17*
**MANAGEMENT**
  67:*19*
**MANDATES**
  21:*4*
**MANSUKHANI**
  3:*9*
**MARCH**    1:*16*
  4:*2*    25:*15*
  33:*13*    46:*6*
  49:*1*, *2*
  60:*2*    72:*27*
  82:*22*, *24*
**MARITAL**
  17:*14*    47:*9*
**MARRIES**
  65:*26*
**MARY**    2:*9*
  68:*17*    72:*22*

**MASS**    26:*15*
  50:*23*
**MATERIAL**
  17:*24*
  18:*21*
  34:*20*    76:*6*
**MATERIALITY**
  25:*19*
**MATERIALS**
  17:*13*    26:*24*
**MATT**    3:*16*
**MATTER**    4:*19*
  11:*13*
  20:*14*, *16*
  52:*28*
  56:*21*    66:*7*
  82:*22*
**MATTERS**
  15:*14*
**MAXIMUM**
  62:*27*
**MDL**    59:*28*
  65:*1*
**MEAN**    14:*5*
  15:*10*    16:*4*,
*12*, *15*
  17:*26*
  19:*17*    20:*9*
  21:*24*, *25*
  28:*7*    31:*13*
  34:*14*
  36:*25*
  41:*23*
  43:*15*
  44:*10*
  69:*18*, *19*
  78:*12*
**MEANING**
  54:*12*    72:*13*

MEANINGFULLY
 67:*9*
MEANS   34:*27*
 39:*12*
MECHANISM
 6:*22*   26:*9*
MEDIA   16:*22*
MEDICAL
 5:*17*   6:*16*
 8:*10*, *15*, *25*
 9:*17*   11:*19*,
*27*   13:*24*
 15:*23*
 16:*27*   17:*1*
 18:*2*   20:*2*,
*8*   23:*19*
 26:*1*, *13*
 27:*3*   30:*12*,
*16*   35:*16*
 40:*9*, *10*
 42:*22*, *23*
 43:*26*   45:*8*
 50:*4*   51:*23*
 52:*8*, *18*
 68:*15*
 69:*21*
 72:*15*   77:*6*
MEET   78:*6*,
*14*   80:*5*, *11*,
*25*
MEETINGS
 67:*19*
MEMORY   62:*24*
MEMOS   29:*14*
MENTIONED
 4:*2*   46:*9*
MERE   36:*9*,
*11*
MERITS   71:*15*

MERRYMAN
 2:*14*   37:*24*
 38:*15*   46:*3*,
*17*   47:*1*, *11*
 59:*25*
 68:*25*
 71:*20*, *23*
 72:*7*   80:*22*
 81:*11*
MET   69:*26*
METAL   15:*26*
METALS
 29:*15*
 63:*21*   64:*5*,
*13*
METES   77:*22*
METHODOLOGY
 76:*4*
MIC   12:*20*,
*21*   74:*3*
MICHAEL
 2:*23*   3:*9*
MICHELLE
 3:*14*
MICROGRAMS
 64:*9*
MIDDLE
 70:*10*   77:*22*
MID-FEBRUARY
 74:*15*
MID-MARCH
 70:*12*
MIKE   80:*27*
MIL   20:*12*,
*17*
MILESTONES
 69:*27*
MIND   26:*27*
 56:*16*
 57:*14*

 61:*22*   71:*4*,
*6*   80:*6*
MINDFUL   74:*7*
MINE   51:*14*
MINOR   1:*8*
 34:*15*   82:*8*
MINUTE
 15:*18*
 24:*22*, *23*
 53:*10*   57:*9*
 75:*18*
MINUTES
 55:*21*   71:*25*
MIRROR
 14:*21*   15:*2*,
*6*
MISSING   73:*6*
MISTAKE   32:*2*
MODIFIED
 7:*3*   22:*21*
 58:*2*   74:*4*
MODIFY
 22:*18*, *21*,
*22*   36:*16*
MOLEHILL
 50:*17*
MOMENT   5:*12*
 53:*24*   60:*4*
MONDAY   1:*16*
 4:*2*   59:*27*
MONEY   62:*10*
 70:*20*
MONICA   2:*5*
MONIQUE   2:*4*
MONTHS   77:*21*
MOOT   17:*20*
MORNING
 4:*14*, *17*
 5:*6*   6:*1*

MOTION
 18:*17*, *18*
 21:*5*   22:*16*,
*17*   25:*11*
 32:*2*, *19*, *27*
 33:*2*   37:*27*,
*28*   43:*13*
 44:*10*
 53:*15*
 55:*12*   56:*8*,
*20*   57:*16*,
*27*   58:*1*, *22*
 61:*3*   68:*4*
 74:*10*, *18*
 78:*8*   79:*16*,
*26*, *27*
MOTIONS
 7:*13*, *25*
 48:*12*, *13*
 59:*10*
 65:*13*   72:*25*
MOTION'S
 33:*8*
MOUNTAIN
 50:*17*
MOVE   19:*14*
 39:*16*
 53:*20*   75:*26*
MULTIPLE
 40:*3*   63:*4*
 68:*19*
MUSIC   61:*21*
MUTE   77:*2*
MYRIAD   40:*8*

< N >
N.E   2:*20*
NAME   4:*2*
 16:*10*
NAMES   27:*22*

**NATURE** 12:*2* 15:*20* 16:*28*

**NAVIGATE** 49:*9*

**NC** 9:*13* 42:*10* 48:*15, 16, 21* 49:*15* 51:*15* 60:*18* 62:*17, 25* 63:*19, 28*

**NECESSARILY** 13:*22, 24* 33:*26* 47:*10*

**NECESSARY** 14:*8* 43:*24*

**NEED** 13:*8* 15:*9* 16:*26, 27* 19:*27* 20:*20* 26:*12, 24* 41:*7, 25* 44:*14, 16, 20* 46:*6* 53:*28* 57:*2, 13* 65:*24, 26, 27* 66:*11, 22* 67:*4* 69:*11* 70:*4* 76:*24, 25* 77:*5* 78:*10* 79:*28*

**NEEDED** 19:*27* 20:*1, 3* 75:*12*

**NEEDS** 20:*19* 29:*7* 45:*13* 77:*2*

**NEITHER** 29:*19* 72:*18*

**NEUTRAL** 10:*5*

**NEVER** 17:*27* 20:*10* 23:*28* 26:*14* 30:*9* 50:*19*

**NEW** 34:*13* 36:*12* 56:*4* 57:*22* 58:*3* 70:*18* 72:*6*

**NIGHT** 19:*26*

**NINE** 65:*13*

**NONPARTIES** 31:*3*

**NONPARTY** 34:*4*

**NONTHIRD- PARTY** 44:*1*

**NORTHWEST** 2:*10*

**NOTE** 47:*26*

**NOTED** 58:*19*

**NOTICE** 18:*17* 21:*4* 36:*1* 56:*20* 59:*21, 28* 60:*1* 80:*26*

**NOTION** 17:*19* 27:*25*

**NOTWITHSTANDING** 70:*21*

**NOVEMBER** 77:*18*

**NUANCE** 33:*23* 35:*24, 28* 36:*10, 12*

**NUMBER** 1:*7* 4:*1* 8:*27* 17:*9* 22:*11* 30:*22* 82:*6*

**NURTURE** 1:*11* 68:*18* 82:*11*

**NUTRITION** 1:*12* 82:*12*

**NUTURE** 2:*8*

**NW** 2:*24*

**< O >**

**O0O** 1:*4* 4:*9* 82:*4*

**OBJECT** 17:*11* 36:*4, 6* 46:*23*

**OBJECTED** 23:*3* 47:*14* 52:*1* 53:*21*

**OBJECTING** 6:*7* 47:*14* 53:*19* 70:*2*

**OBJECTION** 17:*25* 25:*22* 34:*1* 35:*3, 17, 18, 20, 22* 46:*21* 47:*16* 49:*25* 53:*8, 15*

**OBJECTIONS** 9:*6, 8* 25:*15, 16* 32:*27* 33:*9* 39:*2* 46:*5, 26* 47:*17* 50:*6, 7, 15*

**OBJECTS** 53:*12, 17, 22, 23* 53:*4*

**OBSERVATION** 5:*15*

**OBSERVED** 48:*8*

**OBTAIN** 61:*2*

**OBTAINED** 30:*14*

**OBVIOUS** 26:*17*

**OBVIOUSLY** 11:*3* 19:*1* 61:*20*

**OCCASIONS** 40:*3* 43:*8*

**OCCUR** 11:*2* 78:*10* 80:*7*

**OCCURRED** 28:*2* 45:*22*

**OCCURS** 5:*1*

**OCTOBER** 72:*13*

**OFFER** 54:*18*

**OFFERED** 52:*5*

**OFFERING** 39:*5* 54:*15*

**OFFHAND** 28:*5*

**OFFICE** 18:*24*

**OFFICIAL** 1:*27* 20:*25* 82:*17, 26*

**OH** 22:*4* 33:*8* 36:*2* 59:*23* 61:*13*

**OKAY** 5:*4, 10* 7:*7* 9:*21* 10:*20* 17:*19*

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

21:*20*
23:*20*
24:*10*
26:*23*
28:*21*
29:*10*
31:*23*
38:*18*    39:*3*
40:*15*
44:*17*    46:*2*
51:*7*    52:*22*
54:*22*
56:*14*    57:*8*,
*10*    58:*13*,
*24*    59:*14*,
*17*    60:*2*
61:*10*
62:*22*    64:*2*,
*14*    65:*7*
66:*26*    73:*4*
74:*26*    80:*2*,
*23*
**OLD**    41:*25*
42:*1*
**OMITTED**
40:*10*
**ONCE**    77:*6*
78:*19*
**ONE-SENTENCE**
79:*21*
**OOO**    81:*15*
**OPEN**    4:*12*
11:*11*
32:*17*
57:*14*
76:*27*    77:*8*
78:*12*
**OPERATE**    26:*3*
**OPINING**
59:*12*

**OPINION**
13:*13*    59:*27*
**OPINIONS**
6:*13*    13:*6*
14:*14*    62:*5*
65:*5*    66:*2*,
*24*
**OPPORTUNITIES**
40:*2*
**OPPORTUNITY**
19:*21*
25:*18*    39:*5*,
*18*    40:*1*
48:*11*
49:*26*
54:*15*    56:*5*,
*6, 11, 17, 27*
57:*24, 26*
58:*3*
**OPPOSED**
5:*20, 21*
6:*2*    31:*2*
79:*1*
**OPPOSITE**
70:*27*
**OPPOSITION**
33:*11*
37:*27*    55:*1*,
*3, 12*
**OPPOSITIONS**
7:*26*
**OPTION**    53:*19*
**ORAL**    32:*6*
55:*6*
**ORDER**    5:*14*
14:*2*    24:*21*
25:*4, 16*
26:*10*
33:*14*
38:*13, 22*

39:*20*    46:*6*
48:*27*
59:*25, 28*
66:*14*    67:*8*
69:*12, 13*
79:*8, 21, 27*
80:*1, 23*
**ORDERS**
16:*24*
30:*26*
66:*18*
67:*19*    79:*7*
**ORDINARY**
56:*23*
**ORGANICS**
1:*12*    82:*12*
**ORIGINAL**
32:*3*    56:*8*
57:*16*
**ORIGINALLY**
57:*27*
**OUGHT**    37:*9*
**OUTCOME**    59:*8*
**OUTLINES**
8:*21*    43:*2*
**OUTSET**    21:*6*
**OUTSIDE**
11:*24*    30:*27*
**OVERARCHING**
67:*10*
**OVERBROAD**
36:*3*
**OVERCOME**
29:*9, 11*
60:*11, 13*
**OVERCOMES**
30:*9*
**OVERRULE**
32:*27*

**OVERRULED**
9:*8*    25:*22*
**OZUROVICH**
3:*5*

**< P >**
**P.M**    81:*14*
**PAGE**    1:*16*
15:*28*    16:*1*
**PAGES**    82:*20*
**PAPERS**
16:*19*
27:*21*
48:*14*
53:*13*    57:*3*
**PARAGRAPH**
10:*19*    29:*5*
40:*5*
**PARAGRAPHS**
10:*18*    41:*10*
**PARALLEL**
42:*11*
**PARAMETERS**
6:*19*    56:*10*
**PARENTAL**
8:*14, 24*
42:*12*
**PARENTS**
5:*22*    8:*18*,
*24*    9:*6, 17*
11:*18*
16:*18, 25*
24:*9*    27:*24*
28:*18, 28*
29:*19, 22*
30:*23, 24*
31:*2, 11*
40:*13*
43:*12, 27*
45:*12*

47:*13*    48:*3*
50:*3, 13*
52:*17*
68:*14*    69:*8,*
*13, 22*    74:*1,*
*4, 6, 11*
76:*27*    77:*5*
**PARSE**    10:*12*
15:*28*
**PART**    16:*13*
18:*16*
23:*26*    30:*2*
65:*22*    66:*18*
**PARTICIPATE**
29:*27*
**PARTICIPATING**
29:*25*
**PARTICIPATION**
29:*22*
**PARTICULAR**
13:*7*    23:*27*
63:*10*    69:*20*
**PARTICULARLY**
39:*1*
**PARTIES**
4:*16*    5:*16*
6:*5, 14*
18:*3*    19:*21*
20:*14, 16,*
*21*    21:*14*
22:*17, 24*
23:*1, 3, 8*
26:*6*    27:*6,*
*14, 25*
29:*23*    30:*6,*
*23, 25*    31:*2,*
*25*    38:*1*
43:*28*
49:*26*    50:*5,*
*28*    53:*18,*

*19*    60:*9*
65:*10*    72:*9*
73:*1*    77:*23*
79:*17, 22, 24*
**PARTY**    17:*16,*
*25, 28*
20:*24*
21:*26*    23:*2*
27:*20, 21,*
*23, 24*    28:*2,*
*12*    29:*23*
30:*15*    31:*5,*
*15*    33:*4*
34:*26*    35:*1,*
*16, 18, 19,*
*24, 27*    38:*1,*
*3*    47:*6, 10*
49:*27*
52:*26*    53:*3,*
*6*
**PARTY'S**    28:*5*
**PASS**    9:*4*
18:*6*    21:*12*
23:*7*    25:*18*
33:*5, 7*
37:*21*
38:*26*
49:*16, 21*
50:*22*
51:*16*
52:*27*    72:*4*
**PASSING**
64:*18*
**PATIENCE**
25:*1*
**PATIENT**
13:*26*    30:*11*
**PAUL**    81:*2*
**PAUSE**    60:*6*
75:*20*

**PBC**    1:*11*
3:*1*    82:*11*
**PEACHTREE**
2:*20*

**PEDIATRICIAN'S**
69:*15*
**PEDRAM**    2:*3*
5:*7, 28*
**PENDING**
68:*3*    79:*20*
81:*1*
**PENNSYLVANIA**
3:*6*
**PEOPLE**
13:*24*    78:*3*
**PERCEIVED**
62:*25*
**PERFORMANCE**
79:*27*
**PERFORMED**
8:*19*
**PERIOD**    66:*9*
75:*12*
**PERMIT**    57:*13*
**PERMITTED**
6:*14*
**PERSON**    4:*21*
25:*9*    40:*7*
**PERSONAL**
12:*2*    30:*13*
**PERSONNEL**
24:*19*
**PERTAINING**
6:*5*    60:*23*
75:*8*
**PETER**    3:*16*
**PETITION**
45:*6*

**PHARMACY**
26:*1, 13*
**PHASES**    73:*16*
**PHILADELPHIA**
3:*6*
**PHOTOS**    69:*28*
**PHYSICIAN**
40:*7, 11*
54:*8*
**PHYSICIAN-**
**PATIENT**
27:*27*    29:*1*
**PICK**    14:*3*
29:*4*    77:*25*
**PICKLE**    63:*24*
**PICTURE**
40:*10*
48:*10*
52:*17*    65:*26*
**PIECE**    28:*13*
52:*18*
**PIPER**    2:*9*
68:*17*
**PLACE**    22:*15*
**PLACES**
15:*22*
23:*24*    52:*13*
**PLAINTIFF**
1:*9*    2:*2*
5:*4, 7, 9*
6:*1*    11:*1,*
*24*    14:*2*
15:*3*    16:*3,*
*10*    23:*28*
26:*5*    32:*18*
33:*8*    41:*7,*
*14*    42:*23*
44:*7*    45:*10,*
*11, 12*
47:*23*    48:*3*

50:*28*
54:*15*   59:*8*
60:*8*   61:*22*
63:*20*   64:*3*
72:*15*
74:*17, 20, 26*   75:*3*
79:*10*
80:*26*   82:*9*

**PLAINTIFFS**
9:*24*   10:*2*
11:*5, 27*
12:*7, 28*
13:*27*   15:*9, 25*   25:*8*
32:*6*   33:*6, 17*   34:*15*
39:*27*
42:*24*
46:*18*
47:*13*   48:*5, 12*   49:*8*
56:*4*   57:*10, 25*   60:*10, 13*   61:*15*
63:*5*   64:*19*
65:*15*
67:*18*   70:*6*
72:*17, 23*
73:*13, 15, 23*   76:*24*

**PLAINTIFF'S**
5:*13, 20*
9:*11*   14:*24*
32:*8, 15*
37:*7*   39:*4, 20*   41:*16*
44:*10*
45:*10*   49:*4*
53:*11*

54:*18, 20*
56:*15*
59:*11, 20*
62:*18*
63:*28*   64:*4, 8, 25*   68:*27*
70:*7*   75:*27, 28*   76:*22*
78:*9*

**PLATFORMS**
16:*22*

**PLATITUDES**
44:*15*

**PLAY**   15:*21*
40:*8*   42:*27*

**PLAYS**   25:*6*
52:*19*

**PLEASE**
53:*10, 24*
58:*28*   77:*2*

**PLOW**   10:*23*

**PLOWED**   10:*22*

**PLUM**   1:*11, 12*   3:*1*
82:*11, 12*

**PO**   18:*8*

**POINT**   7:*8*
11:*3, 26*
12:*7*   15:*7, 12*   21:*10, 22*   31:*8*
33:*21*
34:*15*
37:*18*
38:*16*
39:*25*   40:*4, 18, 19*
41:*21, 26*
42:*6*   45:*10*
46:*2, 25*

47:*12*
49:*25*
52:*23, 24*
54:*4, 19*
63:*12*
64:*19*   65:*8*
67:*7, 10*
71:*28*   75:*13*

**POINTED**
54:*16*

**POLICY**   44:*17*

**POSITION**
14:*13, 25*
15:*11*
53:*26*   79:*2*

**POSSESSION**
23:*20*   35:*20*

**POSSIBILITY**
26:*23*   66:*4*
78:*25*   80:*15*

**POSSIBLE**
46:*15*   78:*7*

**POSSIBLY**
80:*14*

**POTENTIAL**
8:*3*   15:*24*
34:*5*   40:*8, 13*   50:*6*
56:*22*

**POTENTIALLY**
13:*11*   15:*5*
18:*14*   25:*3*
33:*24*
40:*22*
56:*13*   66:*1*

**PRACTICAL**
19:*5*

**PRACTICALITY**
25:*6*

**PRACTICALLY**
49:*20, 23*
50:*9*

**PRACTICE**
43:*13*   45:*21*

**PRACTITIONER**
18:*23*

**PRECIOUS**
61:*8*

**PRECISELY**
28:*10*

**PREPARED**
14:*19*

**PREPOSTEROUS**
20:*10*

**PREPRODUCTION**
6:*27*

**PRESENT**
3:*11*   40:*1*
57:*12*   61:*15*

**PRESENTED**
64:*22*
65:*13*   76:*2, 7*

**PRESERVE**
34:*5*

**PRESS**   43:*23*

**PRESUMABLY**
29:*25*

**PRETRIAL**
78:*22*

**PRETTY**   7:*13*
11:*4*   16:*5*
28:*8*   44:*2*
70:*14*

**PREVAILED**
62:*18*

**PREVIOUSLY**
50:*11*   65:*2*

**PRIOR**  9:*13*  10:*11*  16:*3, 5*  17:*17*  25:*15*  35:*11*  36:*7*  43:*8*  47:*26*  48:*12*  49:*14*  61:*19*  80:*19*

**PRIVACIES**  23:*9*

**PRIVACY**  6:*12, 24*  9:*5*  15:*13*  16:*6*  18:*5*  19:*24*  20:*15, 28*  21:*6, 7, 22*  23:*4*  30:*18*  31:*14*  33:*25*  41:*3*  44:*18*  49:*8*  50:*15*  51:*1*

**PRIVATE**  37:*9*

**PRIVILEGE**  6:*8, 15, 24, 27*  7:*5*  16:*17*  17:*9, 17, 21, 28*  18:*7*  19:*9, 11, 13, 15, 18, 20, 22, 23*  21:*6, 8, 23*  22:*6, 25*  23:*4, 8*  24:*2*  25:*9, 20, 21*  26:*8, 22*  27:*5, 8, 14, 16, 19, 26, 27*

28:*11, 14*  29:*1, 9, 11*  30:*10, 17*  31:*14*  33:*28*  34:*4, 6, 24, 27*  35:*2, 4, 6, 10, 22, 26*  38:*26*  41:*5*  42:*19, 20, 22, 24*  44:*23, 27*  46:*5, 22, 28*  47:*6, 9, 14*  49:*10, 25, 27*  50:*1, 6, 14*  51:*1*  52:*24, 27*  53:*3, 5, 7, 26*

**PRIVILEGED**  17:*13, 14, 23*  18:*7, 14, 21, 25*  19:*10*  23:*14*  25:*4, 7, 27*  26:*12, 23, 27*  29:*13*  34:*20*  36:*3*  37:*8*  46:*7*  53:*4*

**PRIVILEGES**  22:*13*  23:*9*  27:*12*  31:*27*

**PRO**  1:*27*  45:*21*  81:*2*  82:*17, 26*

**PROBABLY**  5:*25*  41:*18, 22*  64:*18*

**PROBE**  43:*24*

**PROBLEM**  10:*8*  15:*19*  16:*13*  18:*12*  32:*7*  54:*9*  62:*25*  63:*1, 5*  72:*1*

**PROBLEMS**  10:*9*

**PROCEDURAL**  6:*21*  35:*24*

**PROCEDURE**  22:*15*  36:*12, 14*  51:*4*  56:*28*

**PROCEED**  5:*23*  6:*20, 26*  60:*12*

**PROCEEDING**  1:*5*  30:*3*  33:*19*  59:*15*  78:*8*  82:*5*

**PROCEEDINGS**  1:*16*  4:*11*  16:*5*  60:*6*  75:*20*  77:*24*  81:*14*  82:*21*

**PROCEEDS**  61:*20*

**PROCESS**  7:*4*  9:*23*  12:*28*  14:*3, 8, 12, 15*  16:*1*  21:*12*

22:*14, 19*  34:*13*  38:*26*  39:*27*  50:*4*  51:*16*  58:*4*  61:*28*  62:*11*  75:*5*  80:*26*

**PROCLIVITIES**  12:*8, 15*  13:*13*

**PRODUCE**  19:*11*  34:*26*  36:*5, 6*  50:*15*

**PRODUCED**  10:*3, 6*  11:*10*  19:*18*  22:*7*  34:*5*  37:*10*  39:*20*  42:*14*  45:*9*  51:*28*  77:*7, 21*

**PRODUCING**  50:*1*  70:*2*  74:*27*

**PRODUCT**  27:*11*  64:*7*  70:*8*  75:*12*

**PRODUCTION**  6:*10, 25*  7:*1*  14:*16*  17:*17*  25:*20*  35:*11, 21*  36:*7*  38:*3*  45:*3, 5*  46:*23*  51:*2*  75:*12*

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

PRODUCTIVE
 51:9
PRODUCTS
 1:13   2:11
 63:22   82:13
PROFESSIONAL
 73:26
PROGENY
 44:19
PROGRESS
 14:10
PROHIBITION
 45:2
PRONOUNCE
 28:24
PROPOSAL
 60:9
PROPOSE
 4:27   9:28
 79:5
PROPOSED
 7:18
PROPOSES
 21:5
PROPOSITION
 40:27   41:1,
20   76:8, 9,
27   77:8
 78:6, 18
 79:1
PROTECT
 14:8   29:1
PROTECTED
 23:10   28:13
PROTECTION
 31:26
PROTECTIVE
 11:5   14:2
 16:24
 24:21   25:4

26:10
48:26   79:27
PROTECTS
 21:6
PROTOCOL
 19:10, 19
PROTRACTED
 50:18
PROVED   9:19
PROVEN   42:28
PROVIDE
 53:23
 57:22, 28
PROVIDER
 17:22
PROVIDERS
 23:21
PROVIDES
 22:27   25:4
 32:23
PROVIDING
 34:11
PROVISION
 24:21   25:3
 37:20   38:8
PSORIASIS
 29:6, 7
PSYCHIATRIC
 8:6, 10, 13,
25   11:17,
27   12:6, 9,
14   15:20,
23   18:1
 23:20
 27:15
 40:10
 42:22
 43:27   45:9
 50:3   51:23
 52:7, 18

PSYCHIATRY
 8:15
PSYCHOSOCIAL
 48:24
PSYCHOTHERAPIS
T   28:11
PSYCHOTHERAPIS
T-PATIENT
 27:13, 16, 26
PUBLIC
 16:21, 22
PUBLICLY
 16:25
PUBLISHED
 21:11
PURPOSES
 52:25   76:24
PUSH   11:22
PUT   16:19,
25   17:12
 30:15
 33:10, 16
 34:19   39:7
 40:27
 52:15
 54:15
 56:12
 57:21, 26,
27   58:3
 64:20   76:15
PUTS   17:1
 55:9
PUTTING
 6:11   18:5
 46:19   65:3

< Q >
QUA   76:10
QUALIFIES
 42:2

QUARTER
 78:28
QUASH   18:18
 22:16, 21
 25:11
 36:17
 37:27
 38:22
 53:20   58:1,
22   79:16, 27
QUASHED   58:2
QUASI-
NONPARTY
 44:1
QUESTION
 5:13, 19
 6:22   7:19
 8:21   11:28
 12:11   18:9
 23:12, 17
 30:6, 21
 38:13
 39:19
 54:26
 61:19
 64:24
 66:12
 69:23   72:2
 73:8   75:27
 76:14, 16,
21   78:27
QUESTIONS
 21:9   69:11,
24, 26
 73:14, 18,
19, 20
QUEUE   81:6
QUICKLY
 14:7   39:11

< R >

R.'S 28:18 30:1

RALPHS 1:13 82:13

RAMIFICATIONS 73:27

RANDOM 28:5

RATIONAL 21:5

REACH 51:6 62:4

REACHED 49:19 70:16

READ 7:19 19:25 20:25 25:17 44:19 67:22

READY 71:21 80:10

REAL 13:27 78:3

REALISTIC 68:7

REALLY 7:12 13:5 14:25 15:12 26:2 36:22 37:6 41:25, 27 43:6, 23 44:22, 24 52:24 57:7 59:4 69:10, 18

REALM 66:4 78:25

REAL-TIME 13:6

REASON 8:1 16:15 20:6 22:3 24:11 26:16 29:4 34:25 57:20

REASONABLE 21:5 40:12 51:5

REASONABLY 78:7

REASONS 42:13 62:20 63:28

REASSEMBLE 79:16

RECALL 60:27 72:23 74:10

RECESS 55:23

RECOGNIZE 31:18

RECOGNIZED 17:1 28:12 49:2

RECOGNIZES 21:12 22:28

RECOGNIZING 31:25, 26

RECORD 4:24 6:5, 16 19:27 20:8 27:8 30:12, 14 32:25, 27, 28 33:12 39:6 43:9, 14 45:19 47:25 52:25 53:17

54:22 58:14, 16, 18, 19, 24, 26, 28 67:12, 14, 16 69:15 76:2, 7 79:28 81:12

RECORDS 7:1 8:15 9:10, 17, 18 11:3, 8, 11, 23 12:14 14:16, 17 15:9 16:27 17:13, 14 18:2, 3, 13, 23 19:1 20:1, 2, 21 21:7, 13 22:2, 3, 8 23:19, 20 24:16 26:1, 13, 24 27:3, 5, 7, 15 28:20, 22, 25, 28 30:28 35:11, 15, 16, 20, 23 36:5 40:7, 17 41:26, 27 42:12, 22 43:24, 25, 26, 27 44:25, 26 45:3, 5, 8, 9, 11 46:9, 13 48:11, 21 49:17,

24 50:3, 4, 14 51:19, 23 52:8, 17 68:6, 10, 15, 22, 26 69:7, 21 72:14, 15 74:6, 11 75:7 77:6, 10 79:25

RECYCLE 39:26

REDACTED 40:22

REDACTIONS 40:6 49:19 51:26

REES 3:9

REFER 12:14

REFERENCE 20:7

REFERENCES 28:5

REFLECTION 54:21

REGARDING 28:20 39:19

REISSUE 34:18

REITERATION 42:18

REJECTED 76:7

RELATED 27:10 28:4, 7, 23

RELATES 39:1 54:26

RELATING 20:1 28:25

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

RELATION
 16:*20*
RELATIVE
 5:*1*    21:*12,*
*13*    45:*9*
 46:*27*
 65:*13*    70:*6*
RELEASE    5:*17*
RELEVANCE
 25:*19*    29:*8,*
*11*    30:*9*
 64:*18, 19*
RELEVANT
 8:*20*    11:*28*
 13:*13*
 14:*26*    15:*4,*
*5*    20:*9, 23*
 29:*6, 16*
 31:*12*
 40:*21*
 45:*23, 26*
 51:*28*    66:*3*
RELIEF    22:*24*
REMARKABLE
 40:*28*
REMARKS
 47:*20, 22, 23*
REMEMBER
 21:*21*
 62:*26*    74:*4*
REMIND
 12:*22, 26*
REMOTE    31:*16*
REMOTELY    5:*8*
RENATO    3:*15*
REPLY    32:*6*
 39:*8, 18, 28*
 53:*25*    54:*1,*
*15, 18, 19,*
*22, 23*    55:*4,*

*13*    56:*17,*
*18, 25, 27,*
*28*    57:*11*
 58:*4*
REPORT    18:*8*
 67:*22*
 78:*16*    80:*24*
REPORTED
 13:*24*
REPORTER
 1:*27*    4:*2*
 82:*17, 26*
REPORTER'S
 1:*16*    82:*8*
REPORTING
 4:*21*
REPORTS
 13:*3*    66:*13*
REPRESENT
 45:*20*
REQUEST    9:*1*
 18:*17, 20*
 23:*2*    25:*24*
 27:*1, 2*
 35:*21*
 46:*13, 14*
 54:*17*    56:*5*
 57:*4*
REQUESTED
 6:*4, 15*
REQUESTING
 20:*5*    27:*6,*
*9, 14*
REQUESTS
 9:*7*    17:*11*
 44:*5*    72:*19*
REQUIRE    5:*16*
REQUIRED
 47:*13*

REQUIRES
 37:*28*    38:*2,*
*6*    46:*21*
REQUIRING
 45:*4*
RESERVE
 64:*22*
RESOLVED
 61:*19*    71:*3*
 74:*16, 18*
 75:*17*    79:*23*
RESOURCES
 61:*8*
RESOURCEWISE
 61:*6*
RESPECT    5:*2*
 16:*6*    19:*23,*
*24*    20:*24*
 21:*25*
 33:*18*
 41:*16*
 59:*10, 11*
 61:*3*    67:*27*
RESPECTFULLY
 13:*5*    32:*28*
 80:*18*
RESPECTIVE
 31:*24*
RESPOND
 33:*20*    55:*3*
 56:*6, 12*
 70:*23*    75:*13*
RESPONDED
 4:*16*
RESPONSE
 32:*9*    33:*21*
 39:*11*
 41:*13*    55:*5*
 71:*21*

RESPONSES
 68:*28*    74:*4,*
*17, 27*    77:*11*
RESTRICTIONS
 8:*2*    38:*25*
RESULT    43:*1*
 74:*19*
RESULTS
 50:*10*
RETAILER
 68:*9*    72:*14*
 74:*6*    77:*10*
RETAILERS
 77:*12*
RETURN
 46:*19, 24*
RETURNS
 46:*23*
REVERSAL
 53:*5*
REVERSED
 53:*2*
REVIEW    6:*12,*
*24, 27*    7:*5*
 9:*12, 13, 14*
 17:*17, 28*
 18:*6*    22:*6,*
*25*    23:*7*
 25:*18, 19*
 26:*12, 16*
 32:*20, 26*
 34:*4, 28*
 35:*2, 4, 5,*
*11*    36:*10*
 37:*21*
 38:*26*    39:*6*
 49:*16*
 50:*22*
 52:*27*    57:*24*

REVIEWED
17:*23*    63:*6*
REVIEWER
40:*9*
REVIEWS    6:*8,*
*15*    19:*20, 22*
REVISED
18:*19*    72:*26*
REWRITE
38:*24*
RIFF    1:*3*
4:*2*    82:*3*
RIGHT    5:*12*
7:*2*    10:*4,*
*22*    11:*6*
13:*10, 11,*
*15*    18:*22*
22:*12*    23:*8,*
*22, 23*
24:*17, 24*
26:*19*
27:*18*
28:*11*    30:*8,*
*9*    31:*9*
32:*10*
35:*26*
36:*18, 20*
39:*25*
44:*18*    47:*8*
49:*11*
50:*22*
53:*19*    54:*4*
55:*20*
56:*24*
57:*17*
58:*11*    59:*2,*
*24*    61:*17*
63:*25*
64:*27*
65:*11*

67:*11*    68:*5*
70:*20*
75:*22*
76:*15*    79:*4,*
*6*
RIGHTS    14:*9*
20:*15*    21:*8*
30:*26*    31:*14*
RISK    8:*12,*
*23*    40:*13*
75:*8*
RMR    1:*26*
ROAD    3:*10*
67:*7*    68:*19*
ROUNDUP    51:*3*
RPR    1:*26*
RULE    1:*5*
21:*3*    33:*10,*
*15*    45:*13*
53:*4*    55:*11*
59:*5*    78:*19*
82:*5*
RULED    13:*28*
49:*1*    63:*28*
74:*13*    75:*4*
RULES    68:*3*
RULING    9:*4*
47:*16*    59:*8,*
*21, 22*    60:*2*
81:*4*
RULINGS
60:*22*
RYAN    3:*16*

< S >
SAFER    52:*25*
SAMUEL    7:*13,*
*16*    28:*18*
58:*22*    63:*8*

80:*28*
SANTA    2:*5*
SARGON    64:*1*
66:*14*    67:*8*
76:*21*    78:*9,*
*21*    80:*25*
SARGON-
COMPLIANCE
63:*5*    76:*13*
SARGON-
COMPLIANT
61:*15*
62:*13, 19*
63:*10*
64:*21*
65:*15*    76:*1,*
*4*
SATISFACTION
75:*17*
SATISFIED
60:*15*
SATISFY
9:*24*    11:*1*
34:*17*    64:*1*
SAVE    62:*6,*
*9*    66:*23*
SAW    13:*15,*
*16*
SAYING    12:*5*
24:*6*    29:*14*
30:*1*    32:*15*
34:*12*    41:*7,*
*8, 14*    50:*25*
52:*9*    61:*24*
69:*1*    76:*12*
SAYS    9:*11*
11:*7*    18:*13*
21:*24*    22:*4,*
*26*    25:*17*
28:*19*

32:*18*    33:*8*
34:*26*    35:*9*
36:*2, 16*
38:*21*
39:*23*    40:*6*
52:*7*    64:*11*
70:*26, 28*
71:*3*
SAY-SO    49:*9*
SCENARIO
10:*25*
SCHEDULE
66:*22*    68:*4,*
*8*    78:*23*
SCHEDULING
54:*3*    58:*14*
67:*10, 18,*
*19*    80:*3*
SCHOOL
13:*18, 19*
73:*17*
SCHOOLS
23:*21*
SCIENCE    43:*2*
SCIENTIFIC
8:*11*    15:*22*

SCIENTIFICALLY
63:*1*
SCOPE    6:*6*
7:*18*    8:*2*
9:*7, 19*
11:*24*    36:*8*
37:*10*
56:*10*    67:*27*
SCREEN    18:*6*
49:*26, 28*
50:*14*    51:*1*
53:*8*

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

SCREENED
 26:*24*
SCREENING
 53:*3*, *6*
SCULLY    3:*9*
SECOND    24:*3,*
*4*    25:*5*, *6*
 54:*10*
SECTION
 37:*26*    38:*6,*
*9*, *16*, *28*
SEE    13:*8*
 14:*22*    21:*2,*
*7*    29:*16*
 30:*10*    32:*7*
 35:*14*
 40:*25*
 41:*19*
 43:*20*
 44:*24*
 55:*13*, *15,*
*20*    60:*1*
 61:*14*    62:*9*
 64:*16*, *21*
 65:*26*, *27*
 78:*15*    80:*23*
SEEING
 62:*12*    69:*28*
SEEK    6:*4*
 32:*19*
SEEKING
 22:*24*
 28:*28*
 29:*26*    63:*6*
 70:*6*    79:*25*
SEEN    7:*17*
 13:*20*, *21*
 30:*3*
SELECTION
 75:*5*

SELF-REPORTED
 13:*23*
SEND    38:*3*
 79:*6*
SENDING
 79:*11*
SENSE    11:*2*
 34:*2*    60:*21*
 61:*5*    80:*4*
SENSITIVE
 12:*1*    18:*1*
 42:*3*    48:*3*
 52:*2*
SENT    38:*7*
SENTENCE
 59:*7*
SEQUESTERED
 10:*4*
SERVE    70:*5,*
*22*    72:*17*
 73:*9*
SERVED
 21:*13*
 22:*12*
 72:*18*
 73:*11*, *12*
 74:*14*    75:*10*
SERVES    22:*1*
SERVING
 31:*4*    74:*25*
SESSION
 10:*26*
SET    42:*8,*
*19*    54:*23*
 55:*1*    57:*15*
 71:*3*, *7*, *11,*
*18*    74:*7*
 75:*1*, *24*
 80:*9*, *10*

SETS    8:*9*
 10:*13*
SETTING
 11:*5*, *11*
 40:*4*    70:*25*
 71:*1*    75:*15*
SEVEN    74:*5*
SEVERALLY
 78:*17*
SEVERITY
 12:*3*
SEXUAL    12:*8,*
*15*    13:*12*
SHAPE    62:*7*
SHAPIRO
 54:*7*    55:*9*
 59:*11*, *12*
SHAPIRO'S
 76:*3*
SHARED    47:*5,*
*9*
SHEET    75:*6*
SHOOTING
 75:*23*
SHORT    8:*26*
SHORTLY
 51:*13*    74:*16*
SHOVE    11:*22*
SHOW    35:*8*
SHOWING    8:*9*
SHOWN    8:*11*
 16:*2*
SIBLING
 40:*16*
SIDE    5:*13,*
*20*    15:*3*
 16:*17*    33:*2*
 39:*4*    44:*10*
 53:*11*

 54:*20*
 56:*15*    72:*18*
SIDES    32:*21*
 72:*3*
SIDE'S    32:*8*
SIGN    5:*17*
SIGNIFICANCE
 10:*16*
SIGNIFICANT
 9:*20*
SIMILAR
 10:*10*
SIMPLY
 11:*26*
 19:*20*
 34:*18*
 57:*20*
 59:*27*    61:*6*
SINGLE    6:*5,*
*16*    17:*25*
 19:*26*, *27*
 27:*2*
SINK    21:*2*
SITTING
 21:*15*
 76:*28*    81:*3,*
*9*
SITUATION
 28:*10*    30:*4*
 31:*15*
 32:*24*    40:*26*
SLOW    5:*24*
 77:*13*
SLOWING    14:*9*
SO-AND-SO'S
 18:*24*
SOCIAL
 16:*22*    17:*2*
 52:*19*
SOLVE    18:*12*

SOMEBODY
55:17    77:2
SOMEBODY'S
37:22
SOMETHING'S
43:7
SOON    78:7
81:6
SOONER    5:26
SORRY    9:14
33:4    48:20
SORT    15:10
SOUGHT    79:18
SOUND    66:5
SOURCE    31:12
SOUTH    2:14
SPADES    43:3
SPALDING
2:16
SPEAK    6:27
SPEAKING
4:24    5:8
7:27    42:13
44:4    49:21,
23    50:9
SPEAKS
40:23    51:27
SPECIAL    1:5
82:5
SPECIFIC
16:13
22:13
25:11
46:21, 27
60:10, 11,
14, 23, 28
61:1, 7
65:10, 14
66:28
71:15    80:7

SPECIFICALLY
18:19
23:18
37:28
38:21
44:20    70:16
SPECIFICITY
46:6    47:15,
18
SPECIFICS
44:9
SPECIFY
28:23
SPECULATING
16:16
SPENDING
70:19
SPIRITUAL
24:8, 9
SPOKEN    42:21
SPOT    13:28
SPROUT    1:13
3:8    80:27
82:13
STAGE    15:4
20:17    75:1
STAND    14:19
STANDARD
20:19
START    13:6
14:2    17:10
48:1    66:5
72:3, 13, 14
73:27    75:4
STARTED
50:25    75:5
STARTING
72:13

STATE    1:1
37:2    82:1,
18
STATED    46:5
STATEMENT
69:6
STATEMENTS
44:16    69:22
STATES    37:3
STATUE    28:3
STATUS    4:28
5:3    44:1
58:20    59:2
67:24    68:1
STATUTE
22:27
27:28    34:2
35:8    36:16
37:20    45:4
52:26    53:18
STATUTORY
22:16, 19
23:6
STAYS    79:27
STEMS    60:17
STICKS    21:2
STOP    10:20
11:20
61:21    78:11
STOPS    56:24
STREET    2:10,
14, 20, 24
3:6
STRONG    8:8
STRUCTURED
54:28
STRUCTURING
77:16
STRUGGLING
45:27    53:27

STUDIES
63:16
STUFF    10:27
16:25    36:3
47:9    49:19
69:11    75:9
SUBJECT
11:12    24:1
48:26
SUBMISSION
56:12
SUBMIT
27:20
39:18    55:5
56:4, 22
57:26
66:15    79:24
SUBMITTED
10:5    27:21
53:15, 22
59:21
SUBPOENA
6:21, 26
18:13, 20
21:13    22:2,
12, 18
24:13
28:18, 23
34:18    35:9,
19    36:8, 17
38:4, 6, 23,
24    46:10
49:4    50:27
56:10    58:2
SUBPOENAED
18:28
SUBPOENAS
5:24    7:3,
18    22:21
23:6, 13, 18

24:*16*
33:*18*    39:*2*
46:*12, 27*
47:*4*    50:*7*
53:*12, 21*
67:*27*
68:*11*
77:*23*    79:*18*
**SUBSTANCE**
13:*17*
**SUBSTANTIVE**
35:*26*    49:*2*
**SUCCESSFULLY**
48:*25*
**SUCCOR**    11:*6*
**S-U-C-C-O-R**
11:*6*
**SUFFICIENT**
19:*11*    47:*18*
**SUFFICIENTLY**
37:*9*
**SUGGEST**
20:*7*    48:*5*
**SUGGESTED**
44:*2*
**SUITE**    2:*6,*
*15*    3:*10*
**SUN**    6:*17*
**SUNNY**    77:*28*
**SUPERIOR**
1:*1*    82:*1,*
*18, 27*
**SUPPLEMENT**
53:*17*    72:*12*
**SUPPORT**
39:*9*    57:*27*
**SUPPORTED**
19:*16*    20:*5*
27:*28*
36:*15*    43:*1*

**SUPPORTIVE**
52:*14*
**SUPPOSE**
10:*4*    57:*12*
**SUPPOSED**
18:*24*
38:*10*    62:*12*
**SUPPOSEDLY**
57:*22*
**SURE**    10:*21*
16:*6*    21:*28*
26:*28*
29:*16*    30:*8*
32:*7*    48:*18*
54:*6*    60:*9*
61:*13*    68:*2*
**SURPRISED**
78:*25*
**SURREPLY**
55:*6*    56:*26*
57:*13, 17*
58:*7, 11*
**SUSPICION**
25:*13*
**SUSTAINABLE**
26:*2*
**SYMPTOMS**
10:*17*    52:*16*
**SYSTEM**    37:*3*

**< T >**
**TABLE**    69:*16,*
*18, 19*
**TAILORING**
36:*8*
**TAKE**    4:*23*
13:*25*    31:*8*
39:*17*
41:*21, 27*
45:*10*

51:*13*    54:*6,*
*11, 12*
55:*17*    61:*2*
63:*12*
66:*15*    67:*5*
68:*13, 22*
69:*12, 13*
71:*27*
**TAKEN**    62:*3*
**TALK**    4:*27*
5:*27*    7:*15*
26:*22*
43:*26*
65:*25*
67:*18, 21*
73:*21*    79:*3,*
*7, 12*
**TALKED**    6:*13*
51:*24*    64:*8*
**TALKING**
4:*28*    8:*5*
11:*16*
12:*16*
21:*25*
23:*24, 28*
26:*26*    27:*5*
38:*1*    42:*24*
64:*12, 13,*
*14*    65:*7, 8,*
*20*    75:*10*
**TAUGHT**    15:*13*
**TAX**    20:*1*
27:*5, 6, 7*
44:*25, 26*
45:*3, 5*
46:*9, 13, 19,*
*22, 23, 24*
**TAYLOR**    3:*14*
**TECHNICALLY**

22:*12*
**TEE**    65:*9*
**TEEING**    33:*17*
**TELL**    4:*25*
7:*28*    10:*27*
23:*17*
43:*16*    44:*8,*
*28*    50:*21*
54:*11, 13*
**TELLING**
9:*22*    11:*21*
15:*8*    32:*9,*
*11, 12*
75:*26*    76:*19*
**TELLS**    29:*5*
30:*11*    38:*10*
**TEMPORE**
1:*27*    82:*18,*
*26*
**TEN**    17:*27*
55:*20*    58:*9*
65:*13*
**TENTH**    2:*24*
**TERM**    63:*3*
**TERMS**    7:*24*
10:*12*    25:*6*
36:*25*    56:*8*
75:*11*
**TEST**    78:*8*
**TEXAS**    3:*11*
**TEXT**    17:*13*
**THANK**    24:*28*
25:*1*    45:*17*
47:*18*
55:*21*    56:*1*
71:*23*    77:*3*
**THEORETICAL**
16:*15*
**THEORY**    64:*3,*
*4*

**THING**  7:*14*
 11:*16*
 14:*22*
 21:*17*  29:*6*
 32:*17*
 34:*15, 24*
 41:*6*  44:*22*
 45:*26*
 64:*12*
 68:*24*
 69:*24*  74:*2*
**THINGS**  12:*6,*
7  13:*8*
 16:*16*  17:*7*
 22:*11*  37:*8*
 41:*3*  45:*25*
 46:*14*  54:*3*
 59:*4*  63:*15*
 64:*10*
 69:*16, 25*
 73:*27*
 76:*18*  77:*5,*
13
**THINK**  5:*14,*
*16*  10:*10*
 12:*13, 16*
 14:*22*
 15:*19*
 16:*15*
 21:*10, 16,*
*22*  22:*10,*
*11*  24:*3*
 25:*5*  29:*19,*
*21*  30:*5*
 31:*17*  32:*3,*
*22*  33:*1, 18,*
*22, 26*  34:*1,*
*17*  35:*24*
 36:*22*  37:*6*
 41:*1*  42:*18*

43:*15, 22*
 44:*5, 27*
 45:*26*
 46:*11, 26*
 47:*25*
 50:*16*  51:*6,*
*8, 15, 21, 24*
 52:*5, 14*
 53:*5*  57:*7,*
*24*  58:*9*
 59:*25*
 61:*25*  63:*3*
 65:*2, 17, 19*
 66:*20*  73:*6*
 75:*26*  76:*7,*
*20*  77:*24*
 78:*16, 21,*
*22, 24*
 79:*13, 26,*
*28*  80:*3, 13,*
*14, 17*
**THINKING**
 77:*15, 16*
 78:*20*
**THINKS**  64:*17*
**THIRD**  5:*16*
 6:*5*  18:*3*
 19:*21*
 20:*16, 21*
 21:*14*
 22:*17, 24*
 23:*3*  25:*8,*
*10*  26:*6*
 27:*6, 14, 25*
 29:*23*
 31:*15, 25*
 33:*4*  38:*1,*
*3*  43:*28*
 47:*6, 9*
 49:*25*  50:*5,*

28  52:*26*
 53:*2, 6, 18*
 77:*23*
 79:*17, 22, 24*
**THIRD-PARTY**
 17:*22*
 20:*28*  23:*1*
 30:*28*
 35:*10, 19*
 36:*4*  39:*1*
 47:*4*  68:*6,*
*26*  69:*6*
 72:*12*  77:*10*
**THOUGHT**
 10:*10*  24:*5*
 30:*15*  33:*3*
 43:*21*  48:*3*
 60:*21*  61:*5*
 64:*17*
**THREE**  53:*20*
 78:*28*
**THRESHOLD**
 18:*4*
**THROW**  21:*2*
**THROWN**  46:*8*
**TIME**  4:*2*
 6:*6*  8:*1, 2,*
*3*  9:*1, 19*
 14:*15*
 24:*26*  27:*3*
 30:*13*
 38:*25*  42:*9,*
*26*  51:*24*
 52:*12*  55:*5*
 58:*7*  60:*17*
 61:*8*  62:*7,*
*10*  65:*18*
 66:*9, 19, 23*
 67:*1, 3*
 69:*20, 23*

73:*25*  74:*4*
 77:*27*  79:*3*
 80:*8*
**TIMES**  67:*22*
 68:*19*  74:*5*
**TITLE**  1:*5*
 82:*5*
**TODAY**  5:*8*
 10:*23*
 42:*11*
 58:*20*
 67:*23*
 75:*25*
 77:*16, 19*
 79:*19*  81:*7*
**TODAY'S**
 58:*21*
**TODD**  2:*19*
 7:*23*  23:*15*
 56:*2*
**TOLD**  34:*10*
 69:*3, 8*
 73:*25*  77:*23*
**TOP**  45:*23*
**TORTS**  50:*23*
**TOTAL**  47:*3*
 52:*15*
**TOTALITY**
 13:*8, 21, 25*
 66:*12, 24*
**TOXIC**  64:*6*
**TRAIN**  56:*24*
**TRAINED**  54:*7*
**TRANSCRIPT**
 1:*16*  82:*21*
**TREATERS**
 69:*14*
**TREATMENT**
 28:*26*
**TREE**  45:*24*

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

**TREMENDOUSLY**
32:*14*
**TRIAL** 5:*25*
7:*9* 11:*11,*
*12* 14:7, *17*
30:*25*
31:*20*
32:*23*
38:*23*
43:*23*
48:*12*
50:*19*
67:*19* 69:*5,*
*9* 70:*25*
71:*1, 3, 5,*
*6, 7, 8, 12,*
*16, 17, 19*
72:*16, 24,*
*26* 74:*20*
75:*14, 15,*
*24* 77:*17,*
*26* 78:*2, 3,*
*23, 24, 28*
80:*8, 9, 15*
**TRIED** 79:*2*
**TRIGGERED**
28:*11*
**TROUBLE**
13:*18* 48:*9*
**TRUE** 29:*23*
82:*21*
**TRUST** 19:*6*
**TRY** 15:*28*
**TRYING**
11:*25* 48:*5*
59:*3*
**TURN** 7:*5*
**TURNING**
35:*22*
**TURNS** 12:*13*

**TWEAKING**
66:*1*
**TWO** 7:*25*
9:*2, 13*
12:*27* 16:*3*
17:*8* 22:*11*
30:*20*
42:*17*
44:*21* 45:*5*
47:*26*
49:*17*
51:*25, 26*
59:*18*
60:*20* 65:*3*
66:*18*
77:*21*
78:*28* 79:*2*
**TWO-TIER**
14:*2* 48:*26*
**TYPE** 9:*12*
26:*6* 62:*9*
**TYPES** 46:7
**TYPICALLY**
54:*27* 58:*5*

**< U >**
**ULTIMATELY**
62:*17*
**UNDERLYING**
31:*16* 75:*8*
**UNDERSTAND**
9:*21* 44:*19*
45:7, *12, 13*
46:*2* 48:*23*
55:*16*
57:*19*
59:*17* 60:*9*
64:*2, 3*
**UNDERSTANDING**
42:*27* 77:4

**UNDERSTOOD**
80:*2*
**UNFAIR** 16:*2*
**UNFAMILIAR**
40:*8*
**UNHAPPY**
33:*16*
**UNHEARD**
6:*10, 14*
**UNIQUE** 31:*9*
**UNPRECEDENTED**
9:*11*
**UNREDACTED**
10:*14*
**UNWORKABLE**
14:*3* 16:*2*
**USAGE** 70:*8*
**USE** 61:*11*
70:*24*
75:*12* 77:*9*
**USUALLY**
50:*27* 54:*27*

**< V >**
**VALID** 63:*1*
**VARIES** 18:*27*
**VARIOUS**
48:*9* 79:*24*
**VERDICT**
30:*24*
**VERSION**
18:*19* 72:*4*
**VERSUS** 73:*11*
**VICE** 81:*2*
**VIDEOS** 70:*1*
**VIEW** 14:*15*
58:*12* 63:*2*
**VIOLATED**
21:*8*

**VIOLATES**
27:*16*
**VIRTUALLY**
7:*26*
**VIRTUE** 28:*2*
**VS** 1:*10*
4:*2* 82:*10*

**< W >**
**W-9** 46:*16*
**WAIT** 73:*8*
**WAITED** 70:*22*
**WAIVE** 39:*28*
50:*5* 54:*18*
**WAIVED**
17:*18, 24*
27:*19, 26*
34:*6* 47:*6,*
*10* 53:*8*
**WAIVER** 28:*2*
38:*2* 47:*2*
**WALMART**
2:*16* 7:*27*
23:*16*
45:*18* 56:*2*
**WANT** 5:*25*
10:*23*
12:*22, 26*
17:*3* 28:*19*
30:*2* 32:*5,*
*26* 33:*6, 9*
39:*6, 7*
41:*27* 44:*7,*
*12, 22*
45:*19* 49:*8*
50:*8* 54:*13,*
*19, 21, 23*
55:*11, 18*
56:*11*
57:*17* 58:*8*

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

62:*23*
65:*10, 12*
66:*15*
67:*21*
68:*13*
70:*24*
72:*20*
73:*11*
76:*19, 20*
77:*9*  78:*13*
79:*7, 10*
**WANTED**  7:*14*
25:*17, 18*
39:*27, 28*
55:*27*
**WANTS**  7:*9*
45:*15*  51:*5*
**WARRANTED**
19:*15*
**WASHINGTON**
2:*11, 25*
**WAY**  5:*5*
6:*20*  10:*12*
16:*8*  33:*16,*
*27*  42:*8*
48:*4*  53:*5*
59:*21*
61:*24*  62:*7*
76:*15*  78:*13*
**WEEK**  5:*14*
**WEEKEND**  54:*9*
**WEIGHT**  64:*10*
**WELL**  5:*2*
7:*2, 9*
10:*9*  11:*3,*
*7, 15*  13:*10,*
*12*  14:*5, 10,*
*24*  15:*15*
16:*9*  18:*2,*
*26*  22:*10*

24:*5*  29:*10,*
*18*  30:*8*
32:*18*  33:*6,*
*14*  36:*9*
37:*23*
39:*10, 22*
43:*7*  51:*21*
53:*25*
54:*23*  55:*7,*
*10*  56:*12*
60:*3, 16*
61:*20*  62:*2,*
*22*  63:*10*
64:*11, 25*
66:*4*  69:*14*
72:*16*  75:*7*
77:*13, 25*
78:*24*
**WELL-**
**CREDENTIALED**
41:*12*
**WELL-**
**QUALIFIED**
41:*17*
**WELL-THOUGHT-**
**OUT**  33:*2*
**WENT**  12:*27*
48:*1*  73:*17*
74:*5*
**WE'RE**  6:*2*
7:*28*  8:*1,*
*4, 16, 26, 28*
11:*16*
16:*23*
19:*20*
20:*17*  21:*1,*
*25*  23:*27*
27:*5*  29:*10*
30:*27*
32:*19*  34:*2*

38:*1*  39:*13*
48:*24*
49:*23*
50:*13, 14,*
*16*  51:*2, 13*
52:*7, 8*
53:*22*
57:*21*
62:*11*
66:*23*
71:*11, 13,*
*27*  73:*14*
75:*10*
77:*21*
79:*25*  80:*5,*
*10, 20, 28*
**WE'VE**  10:*11*
13:*20, 21*
24:*27*  40:*2*
42:*16, 21*
46:*7*  50:*11*
53:*21*  62:*8*
68:*19*  69:*16*
**WHITE**  2:*11*
48:*4*
**WIDE**  78:*12*
**WILLING**
16:*23*
**WISE**  54:*12*
**WISH**  61:*2*
63:*9*
**WISNER**  2:*3*
70:*17*
**WITHDRAWN**
43:*16, 17*
**WITHHELD**
19:*13*  49:*19*
**WITHHOLD**
49:*24*  53:*9*

**WITNESSES**
14:*28*
**WONDER**  15:*12*
**WONDERING**
30:*17*
**WONDERS**
44:*25*
**WORD**  10:*4*
12:*6*  19:*26*
28:*24*
44:*15*  59:*18*
**WORDS**  11:*10*
52:*9*
**WORK**  23:*26*
26:*15*
27:*11*
31:*22*
60:*24*
66:*11, 12*
71:*18*
77:*26*  80:*11*
**WORKABLE**
13:*5*  57:*7*
**WORKED**  49:*20*
**WORKERS**
27:*10*  45:*8*
**WORKING**  61:*8*
**WORKS**  58:*5*
**WORKUP**  60:*27*
**WORLD**  13:*27*
22:*27*
**WORRY**  57:*8*
**WRESTLING**
43:*5*
**WRIT**  32:*20,*
*26*  39:*6*
77:*24*
**WRITTEN**
56:*11*  70:*5*

Case 3:24-md-03101-JSC CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER Document 728-2 Filed 05/01/26 Page 120 of 120

73:*9* 77:*11, 20* 79:*21*
**WRONG** 29:*28*
 32:*16*
 44:*15*
 64:*12, 23, 24*

**< Y >**
**YEAH** 4:*24*
 24:*28*
 28:*27* 30:*8*
 32:*4* 57:*6*
 59:*24*
 61:*27*
 63:*25* 67:*4*
 80:*17* 81:*5*
**YEAR** 70:*18*
 72:*6*
**YEARS** 17:*27*
 20:*2* 41:*25*
 42:*1* 43:*4*
 45:*5*
**YEARY** 3:*14*

**< Z >**
**ZANTAC** 51:*2*