**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**IN RE:** Baby Food Products Liability Litigation                MDL No. 3101

**NOTICE OF POTENTIAL TAG-ALONG ACTIONS**

In accordance with Rule 7.1(a) of the Rules of Procedure for the United States Judicial

Panel on Multidistrict Litigation, Plaintiff Daniella LiDonni on behalf of her minor child, J.B., and

Plaintiff Janice Patterson, on behalf of her child, J.P, through counsel, write to notify you of the

potential tag along action listed on the attached Schedule of Action.

A docket sheet and complaint are attached.


Sincerely,

*/s/ Timothy E. Jackson*
Timothy E. Jackson (IL Bar No. 6325380)
tej@wallacemiller.com
**WALLACE MILLER**
200 W. Madison Street, Suite 3400
Chicago, IL 60606
Telephone: (312) 261-6193

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**IN RE:** Baby Food Products Liability Litigation                    MDL No. 3101

**NOTICE OF POTENTIAL TAG-ALONG ACTIONS**

|    | Plaintiff | Defendants | District | Civil Action No. | Judge |
|----|-----------|-----------|----------|------------------|-------|
| 1. | Daniella LiDonni on behalf of her minor child, J.B. | Gerber Products Company, Hain Celestial Group, Inc., Beech-Nut Nutrition Company | S.D. Fla. | No. 2:26-cv-14191-XXXX | Hon. Judge David S. Leibowitz |
| 2. | Janice Patterson, on behalf of her child, J.P. | Gerber Products Company, Beech-Nut Nutrition Company, Walmart, Inc. | W.D. Ky. | 1:26-cv-00075-GNS | Hon. Judge Greg. N. Stivers |

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**IN RE:** Baby Food Products Liability Litigation                    MDL No. 3101

**PROOF OF SERVICE**

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that a copy of the foregoing Notice of Related Actions, Schedule of Actions, and this Proof of Service was served by First Class U.S. Mail or electronic mail on May 28, 2026, to the following:

**Daniella LiDonni on behalf of her minor child, J.B.**

Bryan Alexander Merryman
White & Case LLP
555 South Flower Street
Suite 2700
Los Angeles, CA 90071-2433
(213)620-7700
Fax: 213-687-0758
Email: bmerryman@whitecase.com
*Counsel for Gerber Products Company*

Michael Xavier Imbroscio
Covington and Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-5694
Fax: (202) 278-5868
Email: mimbroscio@cov.com
*Counsel for Hain Celestial Group, Inc.*

Livia M. Kiser
King & Spalding LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071

213-443-4310
Email: lkiser@kslaw.com
*Counsel for Beech-Nut Nutrition Company*


**<u>Janice Patterson, on behalf of her child, J.P,</u>**

Bryan Alexander Merryman
White & Case LLP
555 South Flower Street
Suite 2700
Los Angeles, CA 90071-2433
(213)620-7700
Fax: 213-687-0758
Email: bmerryman@whitecase.com
*Counsel for Gerber Products Company*

Livia M. Kiser
King & Spalding LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
213-443-4310
Email: lkiser@kslaw.com
*Counsel for Beech-Nut Nutrition Company*

Michael Anthony Lombardo
King & Spalding LLP
110 N Wacker Drive
Ste 3800
Chicago, IL 60606
630-774-1314
Email: mlombardo@kslaw.com
*Counsel for Walmart, Inc.*

**U.S. District Court**
**California Northern District (San Francisco)**
**CIVIL DOCKET FOR CASE #: 3:24-md-03101-JSC**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/15/2024 | 1 | Transfer Order by MDL Panel on April 15, 2024. (as, COURT STAFF) (Filed on 4/15/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) Modified on 4/18/2024 (ahm, COURT STAFF). (Entered: 04/15/2024) |
| 04/15/2024 | 2 | PRETRIAL ORDER NO. 1. Signed by Judge Jacqueline Scott Corley on 4/15/2024. Case Management Statement is due by 5/10/2024. Initial Case Management Conference is set for 5/16/2024 at 11:00 a.m. in San Francisco, Courtroom 08, 19th Floor. (ahm, COURT STAFF) (Filed on 4/15/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) Modified on 4/17/2024 (ahm, COURT STAFF). (Entered: 04/15/2024) |
| 04/18/2024 | 3 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19331556.) Filing fee previously paid on 04/18/2024 filed by Hain Celestial Group, Inc.. (Attachments: # 1 Exhibit Certificate of Good Standing)(Imbroscio, Michael) (Filed on 4/18/2024) (Entered: 04/18/2024) |
| 04/18/2024 | 4 | ORDER by Judge Jacqueline Scott Corley granting 3 Motion for Pro Hac Vice as to Michael Imbroscio. (ahm, COURT STAFF) (Filed on 4/18/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 04/18/2024) |
| 04/18/2024 | 5 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19334202.) Filing fee previously paid on April 18, 2024 filed by VZ. (Attachments: # 1 Exhibit Certificate of. Good Standing)(Walsh, Alexandra) (Filed on 4/18/2024) (Entered: 04/18/2024) |
| 04/18/2024 | 6 | NOTICE by VZ *of Withdrawal of Counsel* (Channick, Kimberly) (Filed on 4/18/2024) (Entered: 04/18/2024) |

| 04/19/2024 | 7 | ORDER by Judge Jacqueline Scott Corley granting 5 Motion for Pro Hac Vice as to Alexandra Walsh. (ahm, COURT STAFF) (Filed on 4/19/2024) (Entered: 04/19/2024) |
|---|---|---|
| 04/23/2024 | 9 | MOTION for leave to appear in Pro Hac Vice *for Phyllis A. Jones* ( Filing fee $ 328, receipt number ACANDC-19346953.) filed by Hain Celestial Group, Inc.. (Attachments: # 1 Certificate of Good Standing)(Jones, Phyllis) (Filed on 4/23/2024) (Entered: 04/23/2024) |
| 04/23/2024 | 10 | CONDITIONAL TRANSFER ORDER (CTO-1) MDL Panel on 4/23/24. (as, COURT STAFF) (Filed on 4/23/2024) (Entered: 04/23/2024) |
| 04/25/2024 | 11 | ORDER by Judge Jacqueline Scott Corley granting 9 Motion for Pro Hac Vice as to Phyllis A. Jones. (ahm, COURT STAFF) (Filed on 4/25/2024) (Entered: 04/25/2024) |
| 04/25/2024 | 12 | MOTION for leave to appear in Pro Hac Vice *for David N. Sneed* ( Filing fee $ 328, receipt number ACANDC-19355231.) filed by Hain Celestial Group, Inc.. (Attachments: # 1 Certificate of Good Standing)(Sneed, David) (Filed on 4/25/2024) (Entered: 04/25/2024) |
| 04/25/2024 | 13 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19354263.) Filing fee previously paid on 4/25/2024 filed by Shawntilea Clark. (Attachments: # 1 Certificate of Good Standing)(Raybon, Mary) (Filed on 4/25/2024) (Entered: 04/25/2024) |
| 04/25/2024 | 14 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19357518.) filed by Z.W.. (Jackson, Timothy) (Filed on 4/25/2024) (Entered: 04/25/2024) |
| 04/25/2024 | 15 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19358122.) filed by N.C., Garcia. (Attachments: # 1 Certificate of Good Standing)(Reynolds, Jessica) (Filed on 4/25/2024) (Entered: 04/25/2024) |
| 04/26/2024 | 16 | First MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number 5430944.) Filing fee previously paid on 4/26/2024 filed by P.A.. (Attachments: # 1 Appendix Certificate of Good Standing)(Mckie, Kevin) (Filed on 4/26/2024) (Entered: 04/26/2024) |
| 04/26/2024 | 17 | First MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number 5432062.) Filing fee previously paid on 4/26/2024 filed by P.A.. (Attachments: # 1 Appendix Certificate of Good Standing)(Cade, Gregory) (Filed on 4/26/2024) (Entered: 04/26/2024) |
| 04/26/2024 | 18 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19359730.) Filing fee previously paid on 4/26/2024 filed by A.T.. (Attachments: # 1 Exhibit Certificate of Good Standing)(Russo, Anthony) (Filed on 4/26/2024) (Entered: 04/26/2024) |

| 04/26/2024 | 19 | First MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number 6634431.) Filing fee previously paid on 4/26/2024 filed by P.A.. (Attachments: # 1 Appendix Certificate of Good Standing)(Anderson, Gary) (Filed on 4/26/2024) (Entered: 04/26/2024) |
|---|---|---|
| 04/26/2024 | 20 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19360279.) filed by D.J.. (Attachments: # 1 Exhibit Certificate of Good Standing)(Ellis, Tiffany) (Filed on 4/26/2024) (Entered: 04/26/2024) |
| 04/26/2024 | 21 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19360421.) Filing fee previously paid on 04/26/2024 filed by VZ. (Attachments: # 1 Exhibit - Certificate of Good Standing)(Masterman, Joseph) (Filed on 4/26/2024) (Entered: 04/26/2024) |
| 04/26/2024 | 22 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19360688.) filed by B.B.. (Attachments: # 1 Exhibit Certificate of Good Standing)(Debrosse Zimmermann, Diandra) (Filed on 4/26/2024) (Entered: 04/26/2024) |
| 04/26/2024 | 23 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19360607.) Filing fee previously paid on 04/26/2024 filed by VZ. (Attachments: # 1 Exhibit - Certificate of Good Standing)(Cooper, Davis) (Filed on 4/26/2024) (Entered: 04/26/2024) |
| 04/26/2024 | 24 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19360836.) Filing fee previously paid on 04/26/2024 filed by B.B.. (Attachments: # 1 Exhibit Certificate of Good Standing)(Clavier, Madeleine) (Filed on 4/26/2024) (Entered: 04/26/2024) |
| 04/26/2024 | 25 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19361213.) filed by Ashely Garcia, N.C.. (Attachments: # 1 Certificate of Good Standing)(Turner, Tracy) (Filed on 4/26/2024) (Entered: 04/26/2024) |
| 04/26/2024 | 26 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19361533.) Filing fee previously paid on 4/26/2024 filed by L.C.N.. (Attachments: # 1 Certificate of Good Standing)(Stemkowski, Laura) (Filed on 4/26/2024) (Entered: 04/26/2024) |
| 04/26/2024 | 27 | ORDER by Judge Jacqueline Scott Corley granting 12 Motion for Pro Hac Vice as to David N. Sneed. (ahm, COURT STAFF) (Filed on 4/26/2024) |

| | | |
|---|---|---|
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 04/26/2024) |
| 04/26/2024 | 28 | ORDER by Judge Jacqueline Scott Corley granting 17 Motion for Pro Hac Vice as to Gregory Cade. (ahm, COURT STAFF) (Filed on 4/26/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 04/26/2024) |
| 04/26/2024 | 29 | ORDER by Judge Jacqueline Scott Corley granting 13 Motion for Pro Hac Vice as to Mary C. Raybon. (ahm, COURT STAFF) (Filed on 4/26/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 04/26/2024) |
| 04/26/2024 | 30 | ORDER by Judge Jacqueline Scott Corley granting 14 Motion for Pro Hac Vice as to Timothy E. Jackson. (ahm, COURT STAFF) (Filed on 4/26/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 04/26/2024) |
| 04/26/2024 | 31 | ORDER by Judge Jacqueline Scott Corley granting 15 Motion for Pro Hac Vice as to Jessica A. Reynolds. (ahm, COURT STAFF) (Filed on 4/26/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 04/26/2024) |
| 04/26/2024 | 32 | ORDER by Judge Jacqueline Scott Corley granting 16 Motion for Pro Hac Vice as to Kevin McKie. (ahm, COURT STAFF) (Filed on 4/26/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 04/26/2024) |
| 04/26/2024 | 33 | ORDER by Judge Jacqueline Scott Corley granting 18 Motion for Pro Hac Vice as to Anthony J. Russo Jr.. (ahm, COURT STAFF) (Filed on 4/26/2024) |

| | | |
|---|---|---|
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 04/26/2024) |
| 04/26/2024 | 34 | ORDER by Judge Jacqueline Scott Corley granting 19 Motion for Pro Hac Vice as to Gary Anderson. (ahm, COURT STAFF) (Filed on 4/26/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 04/26/2024) |
| 04/26/2024 | 35 | ORDER by Judge Jacqueline Scott Corley granting 20 Motion for Pro Hac Vice as to Tiffany Ellis. (ahm, COURT STAFF) (Filed on 4/26/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 04/26/2024) |
| 04/26/2024 | 36 | NOTICE of Appearance by Robert Brent Wisner *Plaintiffs A.A., and M.A., minors represented by their Guardian ad Litem Vanity Vale-Ayala; Plaintiffs L.C.N., a Minor, by and through Guardian ad Litem Sabra N. Coulter;L.D.C., a Minor, by and through Guardian ad Litem Madiera A. Stribling; N.N.M., a Minor, andB.D.M. a Minor, by and through Guardian ad Litem Sterlin Martin; C.E.C., a Minor, by and throughGuardian ad Litem Karen D. Velez; A.S.H., a Minor, and N.G.H., a Minor, by and through Guardian ad Litem, Miranda N. Hernandez; P.G., a Minor, by and through Guardian ad Litem Chelsea Petersen; Z.D.D., a Minor, by and through Guardian ad Litem Chelsie R. Davis; A.L.R.H., a Minor, by andthrough Guardian ad Litem Sarah E. Harlow; B.K.L., a Minor, by and through Guardian ad Litem Tina Long; R.D.I., a Minor, by and through Guardian ad Litem Casandra M. Isza; B.D., a Minor, by and through Guardian ad Litem Laura Gellinger; L.L., a Minor, by and through Guardian ad Litem Crystal G. Lyles; R.S.B., a Minor, by and through Guardian ad Litem Ieisha Banks; B.M.C., a Minor, by and through Guardian ad Litem Astacia B. Croom; R.M., a Minor, by and through Guardian ad Litem Puja Mavani; M.M, a Minor, by and through Guardian ad Litem April Mallory; Plaintiffs C.L., a Minor, and H.L., a Minor, by and through Guardian ad litem Christina Butcher; K.E., a Minor, by and through Guardian ad litem Kristin Echols; C.R., a Minor, by and through Guardian ad litem Erika Reynolds; A.K., a Minor, by and through Guardian ad litem Lindsey Keesling; B.L.J., a Minor, and J.R.L., a Minor, by and through Guardian ad litem Nilmarly Lopez; and A.N.R., by and through Guardian ad litem Holly Norton* (Wisner, Robert) (Filed on 4/26/2024) (Entered: 04/26/2024) |

| 04/27/2024 | 37 | NOTICE of Appearance by Pedram Esfandiary *on behalf of Plaintiffs A.A., and M.A., minors represented by their Guardian ad Litem Vanity Vale-Ayala; Plaintiffs L.C.N., a Minor, by and through Guardian ad Litem Sabra N. Coulter; L.D.C., a Minor, by and through Guardian ad Litem Madiera A. Stribling; N.N.M., a Minor, and B.D.M. a Minor, by and through Guardian ad Litem Sterlin Martin; C.E.C., a Minor, by and through Guardian ad Litem Karen D. Velez; A.S.H., a Minor, and N.G.H., a Minor, by and through Guardian ad Litem, Miranda N. Hernandez; P.G., a Minor, by and through Guardian ad Litem Chelsea Petersen; Z.D.D., a Minor, by and through Guardian ad Litem Chelsie R. Davis; A.L.R.H., a Minor, by and through Guardian ad Litem Sarah E. Harlow; B.K.L., a Minor, by and through Guardian ad Litem Tina Long; R.D.I., a Minor, by and through Guardian ad Litem Casandra M. Isza; B.D., a Minor, by and through Guardian ad Litem Laura Gellinger; L.L., a Minor, by and through Guardian ad Litem Crystal G. Lyles; R.S.B., a Minor, by and through Guardian ad Litem Ieisha Banks; B.M.C., a Minor, by and through Guardian ad Litem Astacia B. Croom; R.M., a Minor, by and through Guardian ad Litem Puja Mavani; M.M., a Minor, by and through Guardian ad Litem April Mallory; Plaintiffs C.L., a Minor, and H.L., a Minor, by and through Guardian ad litem Christina Butcher; K.E., a Minor, by and through Guardian ad litem Kristin Echols; C.R., a Minor, by and through Guardian ad litem Erika Reynolds; A.K., a Minor, by and through Guardian ad litem Lindsey Keesling; B.L.J., a Minor, and J.R.L., a Minor, by and through Guardian ad litem Nilmarly Lopez; and A.N.R., by and through Guardian ad litem Holly Norton* (Esfandiary, Pedram) (Filed on 4/27/2024) (Entered: 04/27/2024) |
| 04/27/2024 | 38 | NOTICE of Appearance by Stephanie Sherman *on behalf of Plaintiffs A.A., and M.A., minors represented by their Guardian ad Litem Vanity Vale-Ayala; Plaintiffs L.C.N., a Minor, by and through Guardian ad Litem Sabra N. Coulter; L.D.C., a Minor, by and through Guardian ad Litem Madiera A. Stribling; N.N.M., a Minor, and B.D.M. a Minor, by and through Guardian ad Litem Sterlin Martin; C.E.C., a Minor, by and through Guardian ad Litem Karen D. Velez; A.S.H., a Minor, and N.G.H., a Minor, by and through Guardian ad Litem, Miranda N. Hernandez; P.G., a Minor, by and through Guardian ad Litem Chelsea Petersen; Z.D.D., a Minor, by and through Guardian ad Litem Chelsie R. Davis; A.L.R.H., a Minor, by and through Guardian ad Litem Sarah E. Harlow; B.K.L., a Minor, by and through Guardian ad Litem Tina Long; R.D.I., a Minor, by and through Guardian ad Litem Casandra M. Isza; B.D., a Minor, by and through Guardian ad Litem Laura Gellinger; L.L., a Minor, by and through Guardian ad Litem Crystal G. Lyles; R.S.B., a Minor, by and through Guardian ad Litem Ieisha Banks; B.M.C., a Minor, by and through Guardian ad Litem Astacia B. Croom; R.M., a Minor, by and through Guardian ad Litem Puja Mavani; M.M., a Minor, by and through Guardian ad Litem April Mallory; Plaintiffs C.L., a Minor, and H.L., a* |

| | | |
|---|---|---|
| | | *Minor, by and through Guardian ad litem Christina Butcher; K.E., a Minor, by and through Guardian ad litem Kristin Echols; C.R., a Minor, by and through Guardian ad litem Erika Reynolds; A.K., a Minor, by and through Guardian ad litem Lindsey Keesling; B.L.J., a Minor, and J.R.L., a Minor, by and through Guardian ad litem Nilmarly Lopez; and A.N.R., by and through Guardian ad litem Holly Norton* (Sherman, Stephanie) (Filed on 4/27/2024) (Entered: 04/27/2024) |
| 04/28/2024 | 39 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19362647.) Filing fee previously paid on 04/28/2024 filed by VZ. (Sykes, William) (Filed on 4/28/2024) (Entered: 04/28/2024) |
| 04/29/2024 | 40 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19363404.) Filing fee previously paid on 04/29/2024 filed by VZ. (Graham, Donald) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 41 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19363588.) filed by B.B.. (Attachments: # 1 Exhibit Certificate of Good Standing)(DiCello, Mark) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 42 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19363718.) filed by B.B.. (Attachments: # 1 Exhibit Certificate of Good Standing)(Abramowitz, Mark) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 43 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19363956.) Filing fee previously paid on 4/29/2024 filed by C.L.. (Attachments: # 1 Certificate of Good Standing)(DeVuono, Emily) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 44 | ORDER by Judge Jacqueline Scott Corley granting 21 Motion for Pro Hac Vice as to Joseph Masterman. (ahm, COURT STAFF) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 45 | ORDER by Judge Jacqueline Scott Corley granting 22 Motion for Pro Hac Vice as to Diandra Debrosse Zimmermann. (ahm, COURT STAFF) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 46 | ORDER by Judge Jacqueline Scott Corley granting 23 Motion for Pro Hac Vice as to Davis Cooper. (ahm, COURT STAFF) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 47 | ORDER by Judge Jacqueline Scott Corley granting 24 Motion for Pro Hac Vice as to Madeleine Clavier. (ahm, COURT STAFF) (Filed on 4/29/2024) (Entered: 04/29/2024) |

| 04/29/2024 | 48 | ORDER by Judge Jacqueline Scott Corley granting 25 Motion for Pro Hac Vice as to Tracy Turner. (ahm, COURT STAFF) (Filed on 4/29/2024) (Entered: 04/29/2024) |
|---|---|---|
| 04/29/2024 | 49 | ORDER by Judge Jacqueline Scott Corley granting 26 Motion for Pro Hac Vice as to Laura Stemkowski. (ahm, COURT STAFF) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 50 | ORDER by Judge Jacqueline Scott Corley granting 39 Motion for Pro Hac Vice as to William Sykes. (ahm, COURT STAFF) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 51 | ORDER by Judge Jacqueline Scott Corley granting 40 Motion for Pro Hac Vice as to Donald Graham. (ahm, COURT STAFF) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 52 | ORDER by Judge Jacqueline Scott Corley granting 41 Motion for Pro Hac Vice as to Mark DiCello. (ahm, COURT STAFF) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 53 | ORDER by Judge Jacqueline Scott Corley granting 42 Motion for Pro Hac Vice as to Mark Abramowitz. (ahm, COURT STAFF) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 54 | ORDER by Judge Jacqueline Scott Corley granting 43 Motion for Pro Hac Vice as to Emily DeVuono. (ahm, COURT STAFF) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 55 | Letter from Timothy Jackson Re: Plaintiffs' Steering Committee Application. (Jackson, Timothy) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 56 | NOTICE of Appearance by Mayra A. Maturana on behalf of Plaintiffs A.A., and M.A., minors represented by their Guardian ad Litem Vanity Vale-Ayala; Plaintiffs L.C.N., a Minor, by and through Guardian ad Litem Sabra N. Coulter; L.D.C., a Minor, by and through Guardian ad Litem Madiera A. Stribling; N.N.M., a Minor, and B.D.M. a Minor, by and through Guardian ad Litem Sterlin Martin; C.E.C., a Minor, by and through Guardian ad Litem Karen D. Velez; A.S.H., a Minor, and N.G.H., a Minor, by and through Guardian ad Litem, Miranda N. Hernandez; P.G., a Minor, by and through Guardian ad Litem Chelsea Petersen; Z.D.D., a Minor, by and through Guardian ad Litem Chelsie R. Davis; A.L.R.H., a Minor, by and through Guardian ad Litem Sarah E. Harlow; B.K.L., a Minor, by and through Guardian ad Litem Tina Long; R.D.I., a Minor, by and through Guardian ad Litem Casandra M. Isza; B.D., a Minor, by and through Guardian ad Litem Laura Gellinger; L.L., a Minor, by and through Guardian ad Litem Crystal G. Lyles; R.S.B., a Minor, by and through Guardian ad Litem Ieisha Banks; B.M.C., a Minor, by and |

| | | |
|---|---|---|
| | | *through Guardian ad Litem Astacia B. Croom; R.M., a Minor, by and through Guardian ad Litem Puja Mavani; M.M., a Minor, by and through Guardian ad Litem April Mallory; and Plaintiffs C.L., a Minor, and H.L., a Minor, by and through Guardian ad litem Christina Butcher; K.E., a Minor, by and through Guardian ad litem Kristin Echols; C.R., a Minor, by and through Guardian ad litem Erika Reynolds; A.K., a Minor, by and through Guardian ad litem Lindsey Keesling; B.L.J., a Minor, and J.R.L., a Minor, by and through Guardian ad litem Nilmarly Lopez; and A.N.R., by and through Guardian ad litem Holly Norton* (Maturana, Mayra) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 57 | NOTICE of Appearance by Laura Kessler Stemkowski (Stemkowski, Laura) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 58 | Letter from Laura Stemkowski *regarding Plaintiff Steering Committee position*. (Stemkowski, Laura) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 59 | Letter from Anthony Russo *Regarding Plaintiff Steering Committee Position*. (Russo, Anthony) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 60 | Letter from William T. Sykes *Re: Plaintiffs' Steering Committee Application*. (Sykes, William) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 61 | Letter from Mary C. Raybon *Re: Plaintiffs' Steering Committee Application*. (Raybon, Mary) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 62 | Letter from Aimee H. Wagstaff *Re: Plaintiffs' Leadership Application*. (Wagstaff, Aimee) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 63 | Letter from Mark A. DiCello *Re: Plaintiffs' Steering Committee Application*. (DiCello, Mark) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 64 | Letter from William Smith *Regarding Plaintiffs' Steering Committee Application*. (Smith, William) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 65 | Letter from Madeleine B. Clavier *Re: Plaintiffs' Steering Committee Application*. (Clavier, Madeleine) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 66 | NOTICE of Appearance by Emily A. DeVuono (DeVuono, Emily) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 67 | Letter from Diane K. Watkins *Regarding Plaintiff Steering Committee*. (Attachments: # 1 Exhibit Resume, # 2 Exhibit Leadership Support List)(Watkins, Diane) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 68 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19366291.) Filing fee previously paid on 04/29/2024 |

| | | |
|---|---|---|
| | | filed by VZ. (Askeroth, Thomas) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 69 | Letter from Emily A. DeVuono *Regarding Application for Plaintiffs' Steering Committee*. (DeVuono, Emily) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 70 | Letter from Joseph O. Masterman *Re: Plaintiffs' Steering Committee Application*. (Masterman, Joseph) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 71 | NOTICE by VZ re 62 Letter *Supplement to Aimee H. Wagstaff's Plaintiffs' Leadership Application* (Wagstaff, Aimee) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 72 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19367033.) Filing fee previously paid on 04/29/2024 filed by VZ. (Murphy, James) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 73 | Letter from Steven J. Brady . (Brady, Steven) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 74 | Letter from Tracy L. Turner *regarding Plaintiffs' Steering Committee Application*. (Turner, Tracy) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 75 | Letter from Tiffany R. Ellis *re Plaintiffs' Steering Committee Application*. (Ellis, Tiffany) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 76 | Letter from Alexandra Walsh *Regarding Plaintiffs' Leadership Application*. (Walsh, Alexandra) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 77 | NOTICE of Appearance by Monique Amanda Alarcon *on behalf of Plaintiffs A.A., and M.A., minors represented by their Guardian ad Litem Vanity Vale-Ayala; Plaintiffs L.C.N., a Minor, by and through Guardian ad Litem Sabra N. Coulter;L.D.C., a Minor, by and through Guardian ad Litem Madiera A. Stribling; N.N.M., a Minor, andB.D.M. a Minor, by and through Guardian ad Litem Sterlin Martin; C.E.C., a Minor, by and throughGuardian ad Litem Karen D. Velez; A.S.H., a Minor, and N.G.H., a Minor, by and through Guardian ad Litem, Miranda N. Hernandez; P.G., a Minor, by and through Guardian ad Litem Chelsea Petersen; Z.D.D., a Minor, by and through Guardian ad Litem Chelsie R. Davis; A.L.R.H., a Minor, by andthrough Guardian ad Litem Sarah E. Harlow; B.K.L., a Minor, by and through Guardian ad Litem Tina Long; R.D.I., a Minor, by and through Guardian ad Litem Casandra M. Isza; B.D., a Minor, by and through Guardian ad Litem Laura Gellinger; L.L., a Minor, by and through Guardian ad Litem Crystal G. Lyles; R.S.B., a Minor, by and through Guardian ad Litem Ieisha Banks; B.M.C., a Minor, by and through Guardian ad Litem Astacia B. Croom; R.M., a Minor, by and* |

| | | |
|---|---|---|
| | | *through Guardian ad Litem Puja Mavani; M.M, a Minor, by and through Guardian ad Litem April Mallory; and Plaintiffs C.L., a Minor, and H.L., a Minor, by and through Guardian ad litem ChristinaButcher; K.E., a Minor, by and through Guardian ad litem Kristin Echols; C.R., a Minor, by and through Guardian ad litem Erika Reynolds; A.K., a Minor, by and through Guardian ad litem Lindsey Keesling; B.L.J., a Minor, and J.R.L., a Minor, by and through Guardian ad litem Nilmarly Lopez; and A.N.R., by and through Guardian ad litem Holly Norton* (Alarcon, Monique) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 78 | ORDER by Judge Jacqueline Scott Corley granting 68 Motion for Pro Hac Vice as to Thomas Askeroth. (ahm, COURT STAFF) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 79 | ORDER by Judge Jacqueline Scott Corley granting 72 Motion for Pro Hac Vice as to James Murphy. (ahm, COURT STAFF) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 80 | Letter from R. Brent Wisner *Re: Plaintiffs' Leadership Application*. (Wisner, Robert) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/29/2024 | 81 | Letter from Pedram Esfandiary *Re: Plaintiffs Steering Committee Application*. (Esfandiary, Pedram) (Filed on 4/29/2024) (Entered: 04/29/2024) |
| 04/30/2024 | 82 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19367899.) filed by H.N., a minor, by and through his mother and Next Friend, Geraldine Nji. (Attachments: # 1 Exhibit Certificate of Good Standing)(Watkins, Diane) (Filed on 4/30/2024) (Entered: 04/30/2024) |
| 04/30/2024 | 83 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19367903.) filed by T.F.. (Attachments: # 1 Exhibit Certificate of Good Standing)(Watkins, Diane) (Filed on 4/30/2024) Modified on 4/30/2024 (ahm, COURT STAFF). (Entered: 04/30/2024) |
| 04/30/2024 | 84 | ORDER by Judge Jacqueline Scott Corley granting 82 Motion for Pro Hac Vice as to Diane Watkins. (ahm, COURT STAFF) (Filed on 4/30/2024) (Entered: 04/30/2024) |
| 04/30/2024 | 85 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19368155.) filed by K. M.. (Attachments: # 1 Exhibit Certificate of Good Standing)(Luhana, Roopal) (Filed on 4/30/2024) (Entered: 04/30/2024) |
| 04/30/2024 | 86 | NOTICE of Appearance by Ethan Price Davis *for Defendants Beech-Nut Nutrition Company and Walmart Inc.* (Davis, Ethan) (Filed on 4/30/2024) (Entered: 04/30/2024) |

| 05/01/2024 | 87 | NOTICE of Appearance by Michael Anthony Lombardo *for Defendants Beech-Nut Nutrition Company and Walmart Inc.* (Lombardo, Michael) (Filed on 5/1/2024) (Entered: 05/01/2024) |
|---|---|---|
| 05/01/2024 | 88 | NOTICE of Appearance by Livia M. Kiser *for Defendants Beech-Nut Nutrition Company and Walmart Inc.* (Kiser, Livia) (Filed on 5/1/2024) (Entered: 05/01/2024) |
| 05/01/2024 | 89 | ORDER by Judge Jacqueline Scott Corley granting 85 Motion for Pro Hac Vice as to Roopal Luhana. (ahm, COURT STAFF) (Filed on 5/1/2024) (Entered: 05/01/2024) |
| 05/01/2024 | 90 | NOTICE of Appearance by Michael Langer Resch *for Defendants Beech-Nut Nutrition Company and Walmart Inc.* (Resch, Michael) (Filed on 5/1/2024) (Entered: 05/01/2024) |
| 05/01/2024 | 91 | MOTION for leave to appear in Pro Hac Vice *by Todd P. Davis for Beech-Nut Nutrition Company and Walmart Inc.* ( Filing fee $ 328, receipt number ACANDC-19373752.) filed by Beech-Nut Nutrition Company, WALMART INC.. (Attachments: # 1 Certificate of Good Standing (GA))(Davis, Todd) (Filed on 5/1/2024) (Entered: 05/01/2024) |
| 05/01/2024 | 92 | ORDER by Judge Jacqueline Scott Corley granting 91 Motion for Pro Hac Vice as to Todd P. Davis. (ahm, COURT STAFF) (Filed on 5/1/2024) (Entered: 05/01/2024) |
| 05/02/2024 | 93 | MOTION for leave to appear in Pro Hac Vice *by Rose J. Hunter Jones for Beech-Nut Nutrition Company and Walmart Inc.* ( Filing fee $ 328, receipt number ACANDC-19376931.) filed by Beech-Nut Nutrition Company, WALMART INC.. (Attachments: # 1 Certificate of Good Standing (GA))(Jones, Rose) (Filed on 5/2/2024) (Entered: 05/02/2024) |
| 05/02/2024 | 94 | MOTION for leave to appear in Pro Hac Vice *Application of Peter M. Ryan for Admission of Attorney Pro Hac Vice* ( Filing fee $ 328, receipt number ACANDC-19377357.) filed by Campbell Soup Company. (Ryan, Peter) (Filed on 5/2/2024) (Entered: 05/02/2024) |
| 05/02/2024 | 95 | MOTION for leave to appear in Pro Hac Vice *Application of Joan M. Taylor for Admission of Attorney Pro Hac Vice* ( Filing fee $ 328, receipt number ACANDC-19377525.) filed by Campbell Soup Company. (Taylor, Joan) (Filed on 5/2/2024) (Entered: 05/02/2024) |
| 05/02/2024 | 96 | ORDER by Judge Jacqueline Scott Corley granting 93 Motion for Pro Hac Vice as to Rose J. Hunter Jones. (ahm, COURT STAFF) (Filed on 5/2/2024) (Entered: 05/02/2024) |
| 05/02/2024 | 97 | ORDER by Judge Jacqueline Scott Corley granting 94 Motion for Pro Hac Vice as to Peter M. Ryan. (ahm, COURT STAFF) (Filed on 5/2/2024) (Entered: 05/02/2024) |

| 05/02/2024 | 98 | ORDER by Judge Jacqueline Scott Corley granting 95 Motion for Pro Hac Vice as to Joan M. Taylor. (ahm, COURT STAFF) (Filed on 5/2/2024) (Entered: 05/02/2024) |
| --- | --- | --- |
| 05/02/2024 | 99 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19377898.) filed by Plum, PBC. (Attachments: # 1 Supplement Certificate of Good Standing)(Unger Davis, Katherine) (Filed on 5/2/2024) (Entered: 05/02/2024) |
| 05/02/2024 | 100 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19378006.) filed by Plum, PBC. (Attachments: # 1 Supplement Certificate of Good Standing)(Yeary, Michelle) (Filed on 5/2/2024) (Entered: 05/02/2024) |
| 05/02/2024 | 101 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19378296.) filed by Plum, PBC. (Attachments: # 1 Supplement Certificates of Good Service)(Freiwald, Hope) (Filed on 5/2/2024) (Entered: 05/02/2024) |
| 05/02/2024 | 102 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19378360.) filed by Plum, PBC. (Attachments: # 1 Supplement Certificate of Good Standing)(Carpenter, Jordan) (Filed on 5/2/2024) (Entered: 05/02/2024) |
| 05/03/2024 | 103 | MOTION for leave to appear in Pro Hac Vice *Nancy Erfle* ( Filing fee $ 328, receipt number ACANDC-19381772.) filed by Sprout Foods Inc.. (Erfle, Nancy) (Filed on 5/3/2024) (Entered: 05/03/2024) |
| 05/03/2024 | 104 | MOTION for leave to appear in Pro Hac Vice *Mike Klatt* ( Filing fee $ 328, receipt number ACANDC-19383378.) filed by Sprout Foods Inc.. (Klatt, Michael) (Filed on 5/3/2024) (Entered: 05/03/2024) |
| 05/03/2024 | 105 | ORDER by Judge Jacqueline Scott Corley granting 99 Motion for Pro Hac Vice as to Katherine Unger Davis. (ahm, COURT STAFF) (Filed on 5/3/2024) (Entered: 05/03/2024) |
| 05/03/2024 | 106 | ORDER by Judge Jacqueline Scott Corley granting 100 Motion for Pro Hac Vice as to Michelle Hart Yeary. (ahm, COURT STAFF) (Filed on 5/3/2024) (Entered: 05/03/2024) |
| 05/03/2024 | 107 | ORDER by Judge Jacqueline Scott Corley granting 101 Motion for Pro Hac Vice as to Hope Freiwald. (ahm, COURT STAFF) (Filed on 5/3/2024) (Entered: 05/03/2024) |
| 05/03/2024 | 108 | ORDER by Judge Jacqueline Scott Corley granting 102 Motion for Pro Hac Vice as to Jordan Carpenter. (ahm, COURT STAFF) (Filed on 5/3/2024) (Entered: 05/03/2024) |

| 05/03/2024 | 109 | ORDER by Judge Jacqueline Scott Corley granting 103 Motion for Pro Hac Vice as to Nancy Erfle. (ahm, COURT STAFF) (Filed on 5/3/2024) (Entered: 05/03/2024) |
|---|---|---|
| 05/03/2024 | 110 | ORDER by Judge Jacqueline Scott Corley granting 104 Motion for Pro Hac Vice as to Mike Klatt. (ahm, COURT STAFF) (Filed on 5/3/2024) (Entered: 05/03/2024) |
| 05/06/2024 | 111 | NOTICE of Appearance by Quyen Le Ta *for Defendants Beech-Nut Nutrition Company and Walmart Inc.* (Ta, Quyen) (Filed on 5/6/2024) (Entered: 05/06/2024) |
| 05/06/2024 | 112 | NOTICE of Appearance by Brooke Killian Kim (Kim, Brooke) (Filed on 5/6/2024) (Entered: 05/06/2024) |
| 05/07/2024 | 113 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19391075.) filed by Nurture, LLC. (Attachments: # 1 Exhibit 1 - Certificate of Good Standing)(Gately, Mary) (Filed on 5/7/2024) (Entered: 05/07/2024) |
| 05/07/2024 | 114 | ORDER by Judge Jacqueline Scott Corley granting 113 Motion for Pro Hac Vice as to Mary Gately. (ahm, COURT STAFF) (Filed on 5/7/2024) (Entered: 05/07/2024) |
| 05/08/2024 | 115 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19397536.) filed by Nurture, LLC. (Attachments: # 1 Exhibit 1 - Certificate of Good Standing)(Brown, Loren) (Filed on 5/8/2024) (Entered: 05/08/2024) |
| 05/09/2024 | 116 | ORDER by Judge Jacqueline Scott Corley granting 115 Motion for Pro Hac Vice as to Loren Brown. (ahm, COURT STAFF) (Filed on 5/9/2024) (Entered: 05/09/2024) |
| 05/09/2024 | 117 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19399024.) filed by Nurture, LLC. (Attachments: # 1 Exhibit 1 - Certificate of Good Standing)(Schmitt, Paul) (Filed on 5/9/2024) (Entered: 05/09/2024) |
| 05/09/2024 | 118 | NOTICE of Appearance by Carmine R. Zarlenga, III (Zarlenga, Carmine) (Filed on 5/9/2024) (Entered: 05/09/2024) |
| 05/09/2024 | 119 | MOTION for leave to appear in Pro Hac Vice *Katherine Bleicher* ( Filing fee $ 328, receipt number ACANDC-19400913.) filed by Nestle S.A.. (Attachments: # 1 DC Certificate of Good Standing, # 2 MD Certificate of Good Standing)(Bleicher, Katherine) (Filed on 5/9/2024) (Entered: 05/09/2024) |
| 05/09/2024 | 120 | MOTION for leave to appear in Pro Hac Vice *Oral Pottinger* ( Filing fee $ 328, receipt number ACANDC-19401152.) filed by Nestle S.A.. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Certificate of Good Standing)(Pottinger, Oral) (Filed on 5/9/2024) (Entered: 05/09/2024) |
| 05/09/2024 | 121 | MOTION to Appear by Telephone filed by L.C.N.. (Attachments: # 1 Proposed Order)(Stemkowski, Laura) (Filed on 5/9/2024) Modified on 5/13/2024 (ahm, COURT STAFF). (Entered: 05/09/2024) |
| 05/10/2024 | 122 | NOTICE of Appearance by Bryan Alexander Merryman *on behalf of Defendant Gerber Products Co.* (Merryman, Bryan) (Filed on 5/10/2024) (Entered: 05/10/2024) |
| 05/10/2024 | 123 | ORDER by Judge Jacqueline Scott Corley granting 117 Motion for Pro Hac Vice as to Paul Schmitt. (ahm, COURT STAFF) (Filed on 5/10/2024) (Entered: 05/10/2024) |
| 05/10/2024 | 124 | ORDER by Judge Jacqueline Scott Corley granting 119 Motion for Pro Hac Vice as to Katherine Bleicher. (ahm, COURT STAFF) (Filed on 5/10/2024) (Entered: 05/10/2024) |
| 05/10/2024 | 125 | ORDER by Judge Jacqueline Scott Corley granting 120 Motion for Pro Hac Vice as to Oral Pottinger. (ahm, COURT STAFF) (Filed on 5/10/2024) (Entered: 05/10/2024) |
| 05/10/2024 | 126 | ORDER GRANTING UNOPPOSED MOTION TO TRANSFER. Signed by MDL Panel. (ecg, COURT STAFF) (Filed on 5/10/2024) (Entered: 05/10/2024) |
| 05/10/2024 | 127 | MOTION for leave to appear in Pro Hac Vice *for Adam L. Goodman* ( Filing fee $ 328, receipt number ACANDC-19405679.) filed by Danone S.A.. (Attachments: # 1 Exhibit Certificate of Good Standing)(Goodman, Adam) (Filed on 5/10/2024) (Entered: 05/10/2024) |
| 05/10/2024 | 128 | JOINT CASE MANAGEMENT STATEMENT *PURSUANT TO PRETRIAL ORDER NO. 1* filed by A.K., A.L.R.H., A.N.R., A.S.H., A.T., B.B., B.D., B.D.M., B.K.L., B.L.J., B.M.C., C.E.C., C.G., C.L., C.R., Shawntilea Clark, D.J., Garcia, Ashely Garcia, H.L., H.N., a minor, by and through his mother and Next Friend, Geraldine Nji, J.R.L., J.S., J.Z., K.E., L.C.N., L.D.C., L.L., K. M., M.M., N.C., N.G.H., N.N.M., P.A., P.G., R.D.I., R.M., R.S.B., T.F., VZ, Z.W.. (Wisner, Robert) (Filed on 5/10/2024) (Entered: 05/10/2024) |
| 05/10/2024 | 129 | Statement *PLAINTIFFS PROPOSED LIAISON COUNSEL PURSUANT TO PRETRIAL ORDER NO. 1* by A.K., A.L.R.H., A.N.R., A.S.H., A.T., B.B., B.D., B.D.M., B.K.L., B.L.J., B.M.C., C.E.C., C.G., C.L., C.R., Shawntilea Clark, D.J., Garcia, Ashely Garcia, H.L., H.N., a minor, by and through his mother and Next Friend, Geraldine Nji, J.R.L., J.S., J.Z., K.E., L.C.N., L.D.C., L.L., K. M., M.M., N.C., N.G.H., N.N.M., P.A., P.G., R.D.I., R.M., R.S.B., T.F., VZ, Z.W.. (Attachments: # 1 Attachment A)(Wisner, Robert) (Filed on 5/10/2024) (Entered: 05/10/2024) |

| 05/13/2024 | 130 | ORDER by Judge Jacqueline Scott Corley granting 127 Motion for Pro Hac Vice as to Adam L. Goodman. (ahm, COURT STAFF) (Filed on 5/13/2024) (Entered: 05/13/2024) |
|---|---|---|
| 05/14/2024 | 131 | CLERK'S NOTICE REGARDING APPEARANCES AT THE MAY 16, 2024 CASE MANAGEMENT CONFERENCE. Counsel who will attend the case management conference on May 16, 2024 shall notify the Court by noon on May 15, 2024 of their appearances by emailing the deputy clerk their name and the parties they represent at JSCcrd@cand.uscourts.gov. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ahm, COURT STAFF) (Filed on 5/14/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/14/2024) |
| 05/14/2024 | 132 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19411525.) Filing fee previously paid on 5/14/2024 filed by Z.W.. (Jackson, Timothy) (Filed on 5/14/2024) (Entered: 05/14/2024) |
| 05/14/2024 | 133 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19411979.) Filing fee previously paid on 5/14/2024 filed by J.Z.. (Jackson, Timothy) (Filed on 5/14/2024) Modified on 5/14/2024 (ahm, COURT STAFF). (Entered: 05/14/2024) |
| 05/14/2024 | 134 | MOTION for leave to appear in Pro Hac Vice *for Brian M. Ballay* ( Filing fee $ 328, receipt number ACANDC-19414083.) filed by Whole Foods Market Services, Inc.. (Attachments: # 1 Ballay Cert. of Good Standing)(Ballay, Brian) (Filed on 5/14/2024) (Entered: 05/14/2024) |
| 05/14/2024 | 135 | ORDER by Judge Jacqueline Scott Corley granting 132 Motion for Pro Hac Vice as to Timothy Jackson. (ahm, COURT STAFF) (Filed on 5/14/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/14/2024) |
| 05/14/2024 | 136 | ORDER by Judge Jacqueline Scott Corley granting 134 Motion for Pro Hac Vice as to Brian M. Ballay. (ahm, COURT STAFF) (Filed on 5/14/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/14/2024) |

| 05/14/2024 | 137 | MOTION for leave to appear in Pro Hac Vice *for N. Kordell Caldwell* ( Filing fee $ 328, receipt number ACANDC-19414558.) filed by Whole Foods Market Services, Inc.. (Attachments: # 1 Caldwell Cert. of Good Standing)(Caldwell, Nicolas) (Filed on 5/14/2024) (Entered: 05/14/2024) |
|---|---|---|
| 05/15/2024 | 138 | ORDER by Judge Jacqueline Scott Corley granting 137 Motion for Pro Hac Vice as to N. Kordell Caldwell. (ahm, COURT STAFF) (Filed on 5/15/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/15/2024) |
| 05/15/2024 | 139 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19417157.) filed by Amazon.com Services LLC. (Vulin, Ashley) (Filed on 5/15/2024) (Entered: 05/15/2024) |
| 05/15/2024 | 140 | NOTICE by Nurture, LLC re 2 Order,,, Set Deadlines/Hearings,, *DEFENDANTS' NOTICE REGARDING LIAISON COUNSEL* (Kim, Brooke) (Filed on 5/15/2024) (Entered: 05/15/2024) |
| 05/15/2024 | 141 | NOTICE of Appearance by Monique Amanda Alarcon *on behalf of Plaintiffs D.S., a minor, represented by his mother and Guardian ad Litem Tamera Wilson, M.H., a minor, represented by his mother and Guardian ad Litem Marwa Amer, and Jewel Mosley, individually and as Legal Guardian for her minor child, T.E.* (Alarcon, Monique) (Filed on 5/15/2024) (Entered: 05/15/2024) |
| 05/15/2024 | 142 | ORDER by Judge Jacqueline Scott Corley granting 139 Motion for Pro Hac Vice as to Ashley Vulin. (ahm, COURT STAFF) (Filed on 5/15/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/15/2024) |
| 05/15/2024 | 143 | NOTICE of Appearance by Stephanie Sherman *on behalf of Plaintiffs D.S., a minor, represented by his mother and Guardian ad Litem Tamera Wilson, M.H., a minor, represented by his mother and Guardian ad Litem Marwa Amer, and Jewel Mosley, individually and as Legal Guardian for her minor child, T.E.* (Sherman, Stephanie) (Filed on 5/15/2024) (Entered: 05/15/2024) |
| 05/16/2024 | 144 | MOTION for leave to appear in Pro Hac Vice *Steven Griffith, Jr.* ( Filing fee $ 328, receipt number CCANDC-19421734.) filed by Whole Foods Market Services, Inc.. (Griffith, Steven) (Filed on 5/16/2024) (Entered: 05/16/2024) |

| 05/16/2024 | 145 | ORDER by Judge Jacqueline Scott Corley granting 144 Motion for Pro Hac Vice as to Steven Griffith, Jr. (ahm, COURT STAFF) (Filed on 5/16/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/16/2024) |
| 05/16/2024 | 146 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Initial Case Management Conference held on 5/16/2024. (Court Reporter: Summer Fisher/Time 00:43)<br>Further Case Management Conference is set for 6/20/2024 at 11:00 a.m. in San Francisco, Courtroom 08, 19th Floor. Updated statement is due by 6/18/2024.<br>(ahm, COURT STAFF) (Date Filed: 5/16/2024) (ahm, COURT STAFF). (Entered: 05/16/2024) |
| 05/16/2024 | 147 | PRETRIAL ORDER NO. 2: ORDER APPOINTING LEADERSHIP AND STEERING COMMITTEE MEMBERS. Signed by Judge Jacqueline Scott Corley on 5/16/2024. (ahm, COURT STAFF) (Filed on 5/16/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/16/2024) |
| 05/16/2024 | 148 | PRETRIAL ORDER NO. 3: ORDER FOLLOWING MAY 16, 2024 CASE MANAGEMENT CONFERENCE. Signed by Judge Jacqueline Scott Corley on 5/16/2024. (ahm, COURT STAFF) (Filed on 5/16/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/16/2024) |
| 05/16/2024 | 149 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19424278.) filed by Amazon.com Services LLC. (Muriel Carrioni, Veronica) (Filed on 5/16/2024) (Entered: 05/16/2024) |
| 05/17/2024 | 150 | ORDER by Judge Jacqueline Scott Corley granting 149 Motion for Pro Hac Vice as to Veronica Muriel Carrioni (ahm, COURT STAFF) (Filed on 5/17/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/17/2024) |
| 05/20/2024 | 151 | MOTION for leave to appear in Pro Hac Vice *of Samuel L. Felker* ( Filing fee $ 328, receipt number ACANDC-19432334.) filed by Whole Foods |

| | | Market Services, Inc.. (Attachments: # 1 Felker Cert. of Good Standing)(Felker, Samuel) (Filed on 5/20/2024) (Entered: 05/20/2024) |
|---|---|---|
| 05/20/2024 | 152 | TRANSCRIPT ORDER for proceedings held on 05/16/2024 before Judge Jacqueline Scott Corley by Nestle S.A., for Court Reporter Summer Fisher. (Bleicher, Katherine) (Filed on 5/20/2024) (Entered: 05/20/2024) |
| 05/20/2024 | 153 | ORDER by Judge Jacqueline Scott Corley granting 151 Motion for Pro Hac Vice as to Samuel L. Felker. (ahm, COURT STAFF) (Filed on 5/20/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/20/2024) |
| 05/22/2024 | 154 | TRANSCRIPT ORDER for proceedings held on 05/16/2024 before Judge Jacqueline Scott Corley by Beech-Nut Nutrition Company, for Court Reporter Summer Fisher. (Kiser, Livia) (Filed on 5/22/2024) (Entered: 05/22/2024) |
| 05/22/2024 | 155 | Transcript of Proceedings held on 05/16/2024, before Judge Jacqueline Scott Corley. Court Reporter/Transcriber Summer Fisher, telephone number summer_fisher@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 152 Transcript Order ) Redaction Request due 6/12/2024. Redacted Transcript Deadline set for 6/24/2024. Release of Transcript Restriction set for 8/20/2024. (Related documents(s) 152 ) (Fisher, Summer) (Filed on 5/22/2024) (Entered: 05/22/2024) |
| 05/23/2024 | 156 | TRANSCRIPT ORDER for proceedings held on 5/16/2024 before Judge Jacqueline Scott Corley by Hain Celestial Group, Inc., for Court Reporter Summer Fisher. (Imbroscio, Michael) (Filed on 5/23/2024) (Entered: 05/23/2024) |
| 05/23/2024 | 157 | TRANSCRIPT ORDER for proceedings held on 05/16/2024 before Judge Jacqueline Scott Corley by Gerber Products Company, for Court Reporter Summer Fisher. (Merryman, Bryan) (Filed on 5/23/2024) (Entered: 05/23/2024) |
| 05/24/2024 | 158 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19450383.) filed by Whole Foods Market Services, Inc.. (Attachments: # 1 Certificate/Proof of Service)(Rychlak, Alexandra) (Filed on 5/24/2024) (Entered: 05/24/2024) |

| | | |
|---|---|---|
| 05/24/2024 | 159 | TRANSCRIPT ORDER for proceedings held on May 16, 2024 before Judge Jacqueline Scott Corley by D.S., for Court Reporter Summer Fisher. (Wisner, Robert) (Filed on 5/24/2024) (Entered: 05/24/2024) |
| 05/28/2024 | 160 | NOTICE by VZ *Motion* (Attachments: # 1 Exhibit 1)(Wagstaff, Aimee) (Filed on 5/28/2024) (Entered: 05/28/2024) |
| 05/29/2024 | 161 | MOTION to Relate Case filed by VZ. (Attachments: # 1 Proposed Order)(Wagstaff, Aimee) (Filed on 5/29/2024) (Entered: 05/29/2024) |
| 05/29/2024 | 162 | ORDER by Judge Jacqueline Scott Corley granting 158 Motion for Pro Hac Vice as to Alexandra Rychlak. (ahm, COURT STAFF) (Filed on 5/29/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/29/2024) |
| 05/29/2024 | 163 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19463138.) filed by Amazon.com Services LLC. (McStay, P.) (Filed on 5/29/2024) (Entered: 05/29/2024) |
| 05/29/2024 | 164 | ORDER by Judge Jacqueline Scott Corley granting 163 Motion for Pro Hac Vice as to P. Andrew McStay, Jr. (ahm, COURT STAFF) (Filed on 5/29/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/29/2024) |
| 05/31/2024 | 165 | MOTION for leave to appear in Pro Hac Vice *of Joseph G. Petrosinelli* ( Filing fee $ 328, receipt number BCANDC-19469421.) filed by Gerber Products Company. (Attachments: # 1 Exhibit Certificate of Good Standing)(Petrosinelli, Joseph) (Filed on 5/31/2024) (Entered: 05/31/2024) |
| 05/31/2024 | 166 | ORDER by Judge Jacqueline Scott Corley granting 165 Motion for Pro Hac Vice as to Joseph G. Petrosinelli. (ahm, COURT STAFF) (Filed on 5/31/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/31/2024) |
| 06/03/2024 | 167 | ORDER RELATING CASE. Signed by Judge Jacqueline Scott Corley on June 3, 2024.<br>24-cv-01780 is related to 24-md-03101.<br>(ahm, COURT STAFF) (Filed on 6/3/2024) |

| | | |
|---|---|---|
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 06/03/2024) |
| 06/04/2024 | 168 | ADMINISTRATIVE MOTION to Consider Whether Case Should Be Related re 1 Order, filed by D.J.. Responses due by 6/10/2024. (Attachments: # 1 Proposed Order)(Ellis, Tiffany) (Filed on 6/4/2024) (Entered: 06/04/2024) |
| 06/05/2024 | 169 | NOTICE of Appearance by Alexandra M. Walsh *on behalf of Plaintiff C.G., a minor, represented by his mother and Guardian ad Litem Kameisha Garcia; and Plaintiff B.B., a minor, by and through her mother and Guardian ad Litem Dominique Zavala* (Walsh, Alexandra) (Filed on 6/5/2024) (Entered: 06/05/2024) |
| 06/05/2024 | 170 | NOTICE of Appearance by William Louis Smith *on behalf of Plaintiffs A.T., a minor, represented by his mother and Guardian ad Litem Sequoia Tomahn; Plaintiffs D.M.P., a minor child by and through his legal guardian, Annie Pompa Morejon; C.V.P., a minor child by and through his legal guardian, Ruby Perez Chino; C.R.C., a minor child by and through his legal guardian, America Cardona; J.P., a minor child by and through his legal guardian, Jesenia Plascencia; D.P.U., a minor child by and through his legal guardian Margaret Petneaud; E.R., a minor child by and through his legal guardian Fanny Lopez; Plaintiff C.G., a minor, represented by his mother and Guardian ad Litem Kameisha Garcia; and Plaintiff B.B., a minor, by and through her mother and Guardian ad Litem Dominique Zavala* (Smith, William) (Filed on 6/5/2024) (Entered: 06/05/2024) |
| 06/05/2024 | 171 | NOTICE by VZ *of Withdrawal of Counsel* (Walsh, Alexandra) (Filed on 6/5/2024) (Entered: 06/05/2024) |
| 06/13/2024 | 172 | ORDER GRANTING ADMINISTRATIVE MOTION TO RELATE CASES UNDER CIVIL LOCAL RULE 3-12 re 168 Administrative Motion. Signed by Judge Jacqueline Scott Corley on 6/13/2024. (jlg, COURT STAFF) (Filed on 6/13/2024) Modified on 6/13/2024 (jlg, COURT STAFF). (Entered: 06/13/2024) |
| 06/13/2024 | 173 | Proposed Pretrial Order *re Common Benefit Order - Plaintiffs' Counsel Timekeeping and Expenses Protocol* by VZ. (Attachments: # 1 Exhibit A)(Wagstaff, Aimee) (Filed on 6/13/2024) (Entered: 06/13/2024) |
| 06/13/2024 | 174 | Joint MOTION for Extension of Time to File *Proposed ESI Protocol Pursuant to PTO 3* filed by Nurture, LLC. (Kim, Brooke) (Filed on 6/13/2024) (Entered: 06/13/2024) |

| 06/13/2024 | 175 | Statement *from Plaintiffs Regarding Direct Filing Order* by VZ. (Attachments: # 1 Exhibit A - Plaintiff's Proposed Direct Filing Order, # 2 Exhibit B - Redlined Version of Proposed Direct Filing Order, # 3 Exhibit C - Direct Filing Order from In re: Uber Technologies, Inc. Passenger Sexual Assault Litigation)(Wagstaff, Aimee) (Filed on 6/13/2024) (Entered: 06/13/2024) |
|---|---|---|
| 06/13/2024 | 176 | Brief *REGARDING PROPOSED PROTECTIVE ORDER AND PRIVILEGE ORDER* filed byJewel Mosley. (Attachments: # 1 Exhibit A - Redlined Protective Order, # 2 Exhibit B - Protective Order Comparison Chart)(Esfandiary, Pedram) (Filed on 6/13/2024) (Entered: 06/13/2024) |
| 06/13/2024 | 177 | Proposed Order re 176 Brief *Plaintiffs' Proposed Rule 502(d) and Privileged Materials Stipulation and Order* by VZ. (Wagstaff, Aimee) (Filed on 6/13/2024) (Entered: 06/13/2024) |
| 06/13/2024 | 178 | Statement *from Defendants Regarding Proposed Direct Filing Order* by Nurture, LLC. (Attachments: # 1 Exhibit A - Defendants' Proposed Direct Filing Order, # 2 Exhibit B - Redline Version of Defendants' Proposed Direct Filing Order, # 3 Exhibit C - Direct Filing Order in In re Acetaminophen (22md3043), # 4 Exhibit D - Direct Filing Order in In re Zantac Products Liability (20md2924))(Kim, Brooke) (Filed on 6/13/2024) (Entered: 06/13/2024) |
| 06/13/2024 | 179 | Brief *REGARDING DEFENDANTS PROPOSED PROTECTIVE ORDER* filed byWALMART INC.. (Attachments: # 1 Declaration of Michael A. Lombardo, # 2 Exhibit A - Redline Against Model Order, # 3 Exhibit B - Defendants Protective Order, # 4 Exhibit C - Redline Against Plaintiffs Protective Order)(Kiser, Livia) (Filed on 6/13/2024) (Entered: 06/13/2024) |
| 06/18/2024 | 180 | MOTION for leave to appear in Pro Hac Vice *of Thomas A. Rottinghaus* ( Filing fee $ 328, receipt number ACANDC-19531368.) filed by H.N., a minor, by and through his mother and Next Friend, Geraldine Nji. (Attachments: # 1 Exhibit Certificate of Good Standing)(Rottinghaus, Thomas) (Filed on 6/18/2024) (Entered: 06/18/2024) |
| 06/18/2024 | 181 | MOTION for leave to appear in Pro Hac Vice *of Thomas A. Rottinghaus* ( Filing fee $ 328, receipt number ACANDC-19531438.) filed by T.F.. (Attachments: # 1 Exhibit Certificate of Good Standing)(Rottinghaus, Thomas) (Filed on 6/18/2024) (Entered: 06/18/2024) |
| 06/18/2024 | 182 | CASE MANAGEMENT STATEMENT *PURSUANT TO PRETRIAL ORDER NO. 3* filed by Jewel Mosley. (Attachments: # 1 Exhibit 1 - ASD and the Environment (NIH, April 2019), # 2 Exhibit 2 - Sutcliffe (2008), # 3 Exhibit 3 - Zoghbi (2003), # 4 Exhibit 4 - ATSDR Toxicological Profile for Lead (2020), # 5 Exhibit 5 - In re Acetaminophen, Order |

| | | |
|---|---|---|
| | | Plaintiffs Proposed Leadership Appointments)(Wisner, Robert) (Filed on 6/18/2024) (Entered: 06/18/2024) |
| 06/20/2024 | 183 | CONDITIONAL TRANSFER ORDER (CTO-2). Signed by MDL Panel on 6/20/2024. (ecg, COURT STAFF) (Filed on 6/20/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 06/20/2024) |
| 06/20/2024 | 184 | ORDER GRANTING 174 Motion for Extension of Time to File. Signed by Judge Jacqueline Scott Corley on 6/20/2024. (jlg, COURT STAFF) (Filed on 6/20/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 06/20/2024) |
| 06/20/2024 | 185 | ORDER GRANTING 180 Motion for Pro Hac Vice as to Thomas A. Rottinghaus. Signed by Judge Jacqueline Scott Corley on 6/20/2024. (jlg, COURT STAFF) (Filed on 6/20/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 06/20/2024) |
| 06/20/2024 | 186 | ORDER GRANTING 181 Motion for Pro Hac Vice as to Thomas A. Rottinghaus. Signed by Judge Jacqueline Scott Corley on 6/20/2024. (jlg, COURT STAFF) (Filed on 6/20/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 06/20/2024) |
| 06/20/2024 | 187 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley. Further Case Management Conference held on 6/20/2024. Updated Joint Case Management Statement due by 7/23/2024 by noon. Further Case Management Conference set for 7/25/2024 at 11:00 AM in San Francisco, Courtroom 08, 19th Floor. Total Time in Court: 11:29 - 12:33 (1 H, 4 M). Court Reporter: Kelly Shainline. (jlg, COURT STAFF) (Date Filed: 6/20/2024) (Entered: 06/24/2024) |
| 06/21/2024 | 188 | PRETRIAL ORDER NO. 4: ORDER FOLLOWING JUNE 20, 2024 CASE MANAGEMENT CONFERENCE. Signed by Judge Jacqueline Scott Corley on 6/21/2024. (ahm, COURT STAFF) (Filed on 6/21/2024) |

| | | |
|---|---|---|
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 06/24/2024) |
| 06/21/2024 | 189 | PRETRIAL ORDER NO. 5 DIRECT FILING ORDER. Signed by Judge Jacqueline Scott Corley on 6/21/2024. (ahm, COURT STAFF) (Filed on 6/21/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 06/24/2024) |
| 06/21/2024 | 190 | PRETRIAL ORDER NO. 6 COMMON BENEFIT ORDER PLAINTIFFS' COUNSEL TIMEKEEPING AND EXPENSES PROTOCOL. Signed by Judge Jacqueline Scott Corley on 6/21/2024. (ahm, COURT STAFF) (Filed on 6/21/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) Modified on 6/24/2024 (ahm, COURT STAFF). (Entered: 06/24/2024) |
| 06/24/2024 | 191 | TRANSCRIPT ORDER for proceedings held on June 20, 2024 before Judge Jacqueline Scott Corley by Nurture, LLC, for Court Reporter Kelly Shainline. (Kim, Brooke) (Filed on 6/24/2024) (Entered: 06/24/2024) |
| 06/25/2024 | 192 | TRANSCRIPT ORDER for proceedings held on 6/20/2024 before Judge Jacqueline Scott Corley by Nestle S.A., for Court Reporter Kelly Shainline. (Bleicher, Katherine) (Filed on 6/25/2024) (Entered: 06/25/2024) |
| 06/25/2024 | 193 | TRANSCRIPT ORDER for proceedings held on June 20, 2024 before Judge Jacqueline Scott Corley by Jewel Mosley, for Court Reporter Kelly Shainline. (Wisner, Robert) (Filed on 6/25/2024) (Entered: 06/25/2024) |
| 06/25/2024 | 194 | Transcript of Proceedings held on 6/20/2024, before Judge Jacqueline Scott Corley. Court Reporter/Transcriber Kelly Shainilne, Official Court Reporter, telephone number (510)828-9404, kelly_shainline@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 193 Transcript Order, 192 Transcript Order, 191 Transcript Order ) Release of Transcript Restriction set for 9/23/2024. (Related documents(s) 193 , 192 , 191 ) (Shainline, Kelly) (Filed on 6/25/2024) (Entered: 06/25/2024) |

| 06/27/2024 | 195 | STIPULATION *Stipulated Schedule for Filing of Master Complaint and Briefing of Motions to Dismiss and Motions for Alternative Service* filed by Nurture, LLC. (Kim, Brooke) (Filed on 6/27/2024) (Entered: 06/27/2024) |
|---|---|---|
| 07/01/2024 | 196 | NOTICE by Whole Foods Market Services, Inc. re 188 Order, *filing Submission of Retailer Defendants' Rule 12 Motion to Dismiss* (Attachments: # 1 Exhibit Ex. 1 - Pleadings re Whole Food Market Services' Motion to Dismiss, # 2 Exhibit Ex. 2 - Plaintiff Watkins' Amended Petition)(Ballay, Brian) (Filed on 7/1/2024) (Entered: 07/01/2024) |
| 07/15/2024 | 197 | COMPLAINT *MASTER COMPLAINT* against Beech-Nut Nutrition Company, Campbell Soup Company, Danone S.A., Gerber Products Company, Hain Celestial Group, Inc., Nestle S.A., Nurture, LLC, Plum, PBC, Sprout Foods Inc., Walmart Inc. ., Hero A.G., Neptune Wellness Solutions, Nestle Holdings, Inc., Sun-Maid Growers of California ( Filing fee $ 405, receipt number ACANDC-19619865.). Filed by Margaret Petneaud, T.F., B.M.C., C.R., C.L., A.S.H., B.K.L., N.N.M., D.J., L.C.N., Margaret Watkins, David Woodard, Sr., L.D.C., K.E., A.N.R., B.D.M., D.S., P.A., M. H., P.G., L.L., J.S., A.K., B. P., J.Z., Z.W., J. P., Ruby Perez Chino, H.L., N.C., A. M., Adriana Munoz, Annie Pompa Morejon, VZ, R.S.B., E. R., R.D.I., James A Watkins, C. V. P., Jesenia Plascencia, R.M., D. P. U., B.L.J., Ashely Garcia, K.M., B.D., Jewel Mosley, A.T., Robin Maglinti, Garcia, America Cardona, M.M., C. R. C., K. M., N.G.H., C.G., H.N., a minor, by and through his mother and Next Friend, Geraldine Nji, J.R.L., D. M. P., C.E.C., Shawntilea Clark, B.B., A.L.R.H., Fanny Lopez. (Attachments: # 1 Appendix A - Products List)(Wisner, Robert) (Filed on 7/15/2024) (Entered: 07/15/2024) |
| 07/18/2024 | 198 | Proposed Summons. (Wagstaff, Aimee) (Filed on 7/18/2024) (Entered: 07/18/2024) |
| 07/18/2024 | 199 | STIPULATION WITH PROPOSED ORDER re 188 Order, *Stipulation and Proposed Order Extending Deadline to Submit Proposed ESI Protocol and Protective Order Pursuant to Pretrial Order No. 4* filed by Nurture, LLC. (Attachments: # 1 Proposed Order)(Kim, Brooke) (Filed on 7/18/2024) (Entered: 07/18/2024) |
| 07/19/2024 | 200 | ORDER by Judge Jacqueline Scott Corley granting 199 Stipulation Extending Deadline to Submit Proposed ESI Protocol and Protective Order Pursuant to Pretrial Order No. 4. (ahm, COURT STAFF) (Filed on 7/19/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 07/19/2024) |

| 07/22/2024 | 201 | Summons Issued as to Campbell Soup Company, Danone S.A., Hero A.G., Neptune Wellness Solutions, Nestle Holdings, Inc., Nestle S.A., Sun-Maid Growers of California. (slh, COURT STAFF) (Filed on 7/22/2024) (Entered: 07/22/2024) | |
|---|---|---|---|
| 07/23/2024 | 202 | CLERK'S NOTICE SETTING ZOOM HEARING. Please take notice the Further Case Management Conference set for 7/25/2024 at 11:00 a.m. before Judge Corley will be held via a Zoom webinar. Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/jsc Court Appearances: Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. A list of names must be sent to the CRD at jsccrd@cand.uscourts.gov no later than noon on 7/24/2024. General Order 58. Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited. Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ahm, COURT STAFF) (Filed on 7/23/2024) | |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 07/23/2024) | |
| 07/23/2024 | 203 | JOINT CASE MANAGEMENT STATEMENT *FOR JULY 25, 2024 CASE MANAGEMENT CONFERENCE* filed by Jewel Mosley. (Attachments: # 1 Exhibit A - First Set of Interrogatories (General Causation), # 2 Exhibit B - First Set of Requests for Production (General Causation))(Wisner, Robert) (Filed on 7/23/2024) (Entered: 07/23/2024) | |
| 07/23/2024 | 204 | ORDER GRANTING MOTION TO DISMISS. Signed by Judge Jacqueline Scott Corley on 7/23/2024. (ahm, COURT STAFF) (Filed on 7/23/2024) | |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 07/23/2024) | |
| 07/24/2024 | 205 | CLERK'S NOTICE REGARDING JULY 25, 2024 CASE MANAGEMENT CONFERENCE. Counsel may appear in person in Courtroom 8 in San Francisco for the July 25, 2024 case management conference. (This is a text-only entry generated by the court. There is no document associated with this entry.) | |

| | | |
|---|---|---|
| | | (ahm, COURT STAFF) (Filed on 7/24/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 07/24/2024) |
| 07/25/2024 | 206 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Further Case Management Conference held by Zoom videoconference on 7/25/2024. (Court Reporter: Kelly Shainline/Time 00:50)(ahm, COURT STAFF) (Date Filed: 7/25/2024) (Entered: 07/25/2024) |
| 07/25/2024 | 207 | ORDER RE: JULY 25 CASE MANAGEMENT CONFERENCE. Signed by Judge Jacqueline Scott Corley on 7/25/2024. (ahm, COURT STAFF) (Filed on 7/25/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 07/25/2024) |
| 07/26/2024 | 208 | TRANSCRIPT ORDER for proceedings held on July 25, 2024 before Judge Jacqueline Scott Corley by VZ, for Court Reporter Kelly Shainline. (Wagstaff, Aimee) (Filed on 7/26/2024) (Entered: 07/26/2024) |
| 07/29/2024 | 209 | TRANSCRIPT ORDER for proceedings held on 7/25/2024 before Judge Jacqueline Scott Corley by Hain Celestial Group, Inc., for Court Reporter Kelly Shainline. (Imbroscio, Michael) (Filed on 7/29/2024) (Entered: 07/29/2024) |
| 07/29/2024 | 210 | TRANSCRIPT ORDER for proceedings held on 07/25/2024 before Judge Jacqueline Scott Corley by Nestle S.A., for Court Reporter Kelly Shainline. (Bleicher, Katherine) (Filed on 7/29/2024) (Entered: 07/29/2024) |
| 07/29/2024 | 211 | TRANSCRIPT ORDER for proceedings held on July 25, 2024 before Judge Jacqueline Scott Corley by Beech-Nut Nutrition Company, for Court Reporter Kelly Shainline. (Kiser, Livia) (Filed on 7/29/2024) (Entered: 07/29/2024) |
| 07/31/2024 | 212 | Transcript of Proceedings held on 7/25/2024, before Judge Jacqueline Scott Corley. Court Reporter/Transcriber Kelly Shainilne, Official Court Reporter, telephone number (510)828-9404, kelly_shainline@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 210 Transcript Order ) Release |

| | | |
|---|---|---|
| | | of Transcript Restriction set for 10/29/2024. (Related documents(s) 210 ) (Shainline, Kelly) (Filed on 7/31/2024) (Entered: 07/31/2024) |
| 08/14/2024 | 213 | TRANSCRIPT ORDER for proceedings held on 07/25/2024 before Judge Jacqueline Scott Corley by Nurture, LLC, for Court Reporter Kelly Shainline. (Kim, Brooke) (Filed on 8/14/2024) (Entered: 08/14/2024) |
| 08/15/2024 | 214 | SECOND AMENDED PETITION against All Defendants. Filed by Margaret Watkins, James A Watkins. (Walsh, Alexandra) (Filed on 8/15/2024) (Entered: 08/15/2024) |
| 08/16/2024 | 215 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19737113.) filed by B.B.. (Attachments: # 1 Exhibit Certificate of Good Standing)(Wisnoski, Nevin) (Filed on 8/16/2024) (Entered: 08/16/2024) |
| 08/16/2024 | 216 | ORDER by Judge Jacqueline Scott Corley granting 215 Motion for Pro Hac Vice as to Nevin Wisnoski. (ahm, COURT STAFF) (Filed on 8/16/2024)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 08/16/2024) |
| 08/20/2024 | 217 | JOINT CASE MANAGEMENT STATEMENT *FOR AUGUST 22, 2024 CASE MANAGEMENT CONFERENCE* filed by Jewel Mosley. (Attachments: # 1 Exhibit A - ESI Protocol Agenda Email)(Wisner, Robert) (Filed on 8/20/2024) (Entered: 08/20/2024) |
| 08/21/2024 | 218 | NOTICE of Appearance filed by Hope Freiwald on behalf of Sun-Maid Growers of California (Freiwald, Hope) (Filed on 8/21/2024) (Entered: 08/21/2024) |
| 08/21/2024 | 219 | NOTICE of Appearance filed by Michelle Hart Yeary on behalf of Sun-Maid Growers of California (Yeary, Michelle) (Filed on 8/21/2024) (Entered: 08/21/2024) |
| 08/21/2024 | 220 | NOTICE of Appearance filed by Bryan Alexander Merryman on behalf of Nestle Holdings, Inc. (Merryman, Bryan) (Filed on 8/21/2024) (Entered: 08/21/2024) |
| 08/21/2024 | 221 | NOTICE of Appearance filed by John Taylor Akerblom on behalf of Nestle Holdings, Inc. (Akerblom, John) (Filed on 8/21/2024) (Entered: 08/21/2024) |
| 08/22/2024 | 222 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Further Case Management Conference held on 8/22/2024. (Court Reporter: Ruth Ekhaus/Time 1:06) (ahm, COURT STAFF) (Date Filed: 8/22/2024) (Entered: 08/22/2024) |

| 08/22/2024 | 223 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19759845.) Filing fee previously paid on 08/22/2024 filed by VZ. (Joonho Hong, Shunyi) (Filed on 8/22/2024) (Entered: 08/22/2024) |
| 08/22/2024 | 224 | PRETRIAL ORDER NO. 7. Signed by Judge Jacqueline Scott Corley on 8/22/2024. (ahm, COURT STAFF) (Filed on 8/22/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 08/22/2024) |
| 08/23/2024 | 225 | ORDER by Judge Jacqueline Scott Corley granting 223 Motion for Pro Hac Vice as to Shunyi Joonho Hong. (ahm, COURT STAFF) (Filed on 8/23/2024) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 08/23/2024) |
| 08/26/2024 | 226 | TRANSCRIPT ORDER for proceedings held on 08/22/2024 before Judge Jacqueline Scott Corley by Nestle S.A., for Court Reporter Ruth Ekhaus. (Bleicher, Katherine) (Filed on 8/26/2024) (Entered: 08/26/2024) |
| 08/26/2024 | 227 | TRANSCRIPT ORDER for proceedings held on 8/22/2024 before Judge Jacqueline Scott Corley by Hain Celestial Group, Inc., for Court Reporter Ruth Ekhaus. (Imbroscio, Michael) (Filed on 8/26/2024) (Entered: 08/26/2024) |
| 08/29/2024 | 228 | MOTION to Dismiss filed by Whole Foods Market Services, Inc.. Motion to Dismiss Hearing set for 10/3/2024 10:00 AM in San Francisco, Courtroom 08, 19th Floor. Responses due by 9/12/2024. Replies due by 9/19/2024. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A Paige Brady deposition excerpts, # 3 Proposed Order)(Ballay, Brian) (Filed on 8/29/2024) (Entered: 08/29/2024) |
| 08/29/2024 | 229 | TRANSCRIPT ORDER for proceedings held on 08/22/2024 before Judge Jacqueline Scott Corley by VZ, for Court Reporter Ruth Ekhaus. (Wagstaff, Aimee) (Filed on 8/29/2024) (Entered: 08/29/2024) |
| 08/29/2024 | 230 | TRANSCRIPT ORDER for proceedings held on 08/22/2024 before Judge Jacqueline Scott Corley by Nurture, LLC, for Court Reporter Ruth Ekhaus. (Kim, Brooke) (Filed on 8/29/2024) (Entered: 08/29/2024) |
| 09/02/2024 | 231 | Transcript of Proceedings held on 08/22/2024, before Judge Jacqueline Scott Corley. Court Reporter Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219, email/telephone number ruth_ekhaus@cand.uscourts.gov/(415)336-5223. Per General Order No. |

| | | |
|---|---|---|
| | | 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter until the deadline for the Release of Transcript Restriction. After that date, it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 227 Transcript Order, 229 Transcript Order, 230 Transcript Order, 226 Transcript Order ) Release of Transcript Restriction set for 12/2/2024. (Related documents(s) 227 , 229 , 230 , 226 ) (rre, COURT STAFF) (Filed on 9/2/2024) (Entered: 09/02/2024) |
| 09/03/2024 | 232 | TRANSCRIPT ORDER for proceedings held on August 22, 2024 before Judge Jacqueline Scott Corley by Beech-Nut Nutrition Company, Walmart Inc., for Court Reporter Ruth Ekhaus. (Kiser, Livia) (Filed on 9/3/2024) (Entered: 09/03/2024) |
| 09/12/2024 | 233 | OPPOSITION/RESPONSE (re 228 MOTION to Dismiss ) filed byJames A Watkins, Margaret Watkins. (Smith, William) (Filed on 9/12/2024) (Entered: 09/12/2024) |
| 09/12/2024 | 234 | Statement *of Defendants Regarding Preservation Efforts* by Amazon.com Services LLC, Beech-Nut Nutrition Company, Gerber Products Company, Hain Celestial Group, Inc., Nurture, LLC, Plum, PBC, Sprout Foods Inc., Walmart Inc., Whole Foods Market Services, Inc.. (Yeary, Michelle) (Filed on 9/12/2024) (Entered: 09/12/2024) |
| 09/19/2024 | 235 | Statement re 224 Pretrial Order, *Defendants Amazon.com Services LLC and Whole Foods Market Services, Inc.'s Statement regarding ESI Protocol* by Amazon.com Services LLC. (Vulin, Ashley) (Filed on 9/19/2024) (Entered: 09/19/2024) |
| 09/19/2024 | 236 | REPLY in Support (re 228 MOTION to Dismiss) filed by Whole Foods Market Services, Inc.. (Ballay, Brian) (Filed on 9/19/2024) (Entered: 09/19/2024) |
| 09/19/2024 | 237 | JOINT FILING OF DISPUTED ESI PROTOCOL *Governing the Production of Electronically Stored Information and Hard Copy Documents* by Plum, PBC, Sun-Maid Growers of California. (Attachments: # 1 Exhibit A)(Yeary, Michelle) (Filed on 9/19/2024) Modified on 9/20/2024 (slh, COURT STAFF). (Entered: 09/19/2024) |
| 09/19/2024 | 238 | Brief *by Defendants in Support of a Reciprocal ESI Protocol* filed by Plum, PBC, Sun-Maid Growers of California. (Yeary, Michelle) (Filed on 9/19/2024) (Entered: 09/19/2024) |
| 09/19/2024 | 239 | Brief re 237 Proposed *ESI Protocol* by A.K., A.L., A.L.R.H., A.M., A.N.R., A.S.H., A.T., B. P., B.B., B.D., B.D.M., B.K.L., B.L.J., B.M.C., C. R. C., C.E.C., C.G., C.L., C.R., America Cardona, Wendy Cepeda, |

| | | |
|---|---|---|
| | | Ruby Perez Chino, Shawntilea Clark, D.J., D.S., John Fouts, Garcia, Ashely Garcia, M. H., H.L., H.N., a minor, by and through his mother and Next Friend, Geraldine Nji, J.R.L., J.S., J.Z., K.J., K.M., L.C.N., L.D.C., L.L., Fanny Lopez, A. M., K. M., M.M., Robin Maglinti, Annie Pompa Morejon, Jewel Mosley, Adriana Munoz, N.C., N.G.H., N.N.M., C. V. P., D. M. P., J. P., P.A., P.G., Margaret Petneaud, Jesenia Plascencia, E. R., R.D.I., R.M., R.S.B., T.F., D. P. U., VZ, James A Watkins, Margaret Watkins, David Woodard, Sr.. (Ellis, Tiffany) (Filed on 9/19/2024) Modified on 9/20/2024 (slh, COURT STAFF). (Entered: 09/20/2024) |
| 09/20/2024 | 240 | NOTICE of Appearance filed by Brett Nicole Taylor on behalf of Campbell Soup Company (Taylor, Brett) (Filed on 9/20/2024) (Entered: 09/20/2024) |
| 09/23/2024 | 241 | NOTICE of Withdrawal filed by Quyen Le Ta, no longer appearing on behalf of Beech-Nut Nutrition Company, Walmart Inc. in this case (Ta, Quyen) (Filed on 9/23/2024) (Entered: 09/23/2024) |
| 09/24/2024 | 242 | JOINT CASE MANAGEMENT STATEMENT *for September 26, 2024 Case Management Conference* filed by VZ. (Wagstaff, Aimee) (Filed on 9/24/2024) (Entered: 09/24/2024) |
| 09/26/2024 | 243 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Further Case Management Conference held on 9/26/2024.(Court Reporter: Kendra Steppler/Time 00:35)(ahm, COURT STAFF) (Date Filed: 9/26/2024) (Entered: 09/26/2024) |
| 09/26/2024 | 244 | PRETRIAL ORDER NO. 8. Signed by Judge Jacqueline Scott Corley on 9/26/2024. (ahm, COURT STAFF) (Filed on 9/26/2024) (Entered: 09/26/2024) |
| 09/26/2024 | 245 | TRANSCRIPT ORDER for proceedings held on 09/26/2024 before Judge Jacqueline Scott Corley by Nestle S.A., for Court Reporter Kendra Steppler. (Bleicher, Katherine) (Filed on 9/26/2024) (Entered: 09/26/2024) |
| 10/01/2024 | 246 | TRANSCRIPT ORDER for proceedings held on 09/26/2024 before Judge Jacqueline Scott Corley by VZ, for Court Reporter Kendra Steppler. (Wagstaff, Aimee) (Filed on 10/1/2024) (Entered: 10/01/2024) |
| 10/01/2024 | 247 | Proposed Order *Governing the Production of Electronically Stored Information and Hard Copy Documents* by VZ. (Wagstaff, Aimee) (Filed on 10/1/2024) (Entered: 10/01/2024) |
| 10/02/2024 | 248 | Transcript of Proceedings held on September 26, 2024, before Judge Jacqueline Scott Corley. Court Reporter Kendra Steppler, telephone number 406-489-3498, email address kendra_steppler@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the |

| | | |
|---|---|---|
| | | Clerk's Office public terminal or may be purchased through the Court Reporter until the deadline for the Release of Transcript Restriction. After that date, it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 245 Transcript Order ) Release of Transcript Restriction set for 12/31/2024. (Related documents(s) 245 ) (Steppler, Kendra) (Filed on 10/2/2024) (Entered: 10/02/2024) |
| 10/04/2024 | 249 | Order Governing the Production of Electronically Stored Information and Hard Copy Documents. Signed by Judge Jacqueline Scott Corley on 10/4/2024. (ahm, COURT STAFF) (Filed on 10/4/2024) (Entered: 10/04/2024) |
| 10/10/2024 | 250 | Proposed Order *Joint Submission of Protective Order* by Plum, PBC. (Attachments: # 1 Exhibit A (Protective Order))(Yeary, Michelle) (Filed on 10/10/2024) (Entered: 10/10/2024) |
| 10/11/2024 | 251 | Statement *from Plaintiffs Regarding Preservation Efforts* by VZ. (Wagstaff, Aimee) (Filed on 10/11/2024) (Entered: 10/11/2024) |
| 10/11/2024 | 252 | PROTECTIVE ORDER FOR THE DISCLOSURE AND USE OF DISCOVERY MATERIALS. Signed by Judge Jacqueline Scott Corley on 10/11/2024. (ahm, COURT STAFF) (Filed on 10/11/2024) (Entered: 10/11/2024) |
| 10/24/2024 | 253 | MOTION for leave to appear in Pro Hac Vice *for Holly Dolejsi* ( Filing fee $ 328, receipt number ACANDC-19981455.) filed by VZ. (Dolejsi, Holly) (Filed on 10/24/2024) (Entered: 10/24/2024) |
| 10/24/2024 | 254 | ORDER by Judge Jacqueline Scott Corley granting 253 Motion for Pro Hac Vice as to Holly Dolejsi. (ahm, COURT STAFF) (Filed on 10/24/2024) (Entered: 10/24/2024) |
| 10/25/2024 | 255 | ORDER SETTING HEARING ON RETAILER DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED PETITION. Signed by Judge Jacqueline Scott Corley on 10/25/2024. (ahm, COURT STAFF) (Filed on 10/25/2024) (Entered: 10/25/2024) |
| 10/29/2024 | 256 | TRANSCRIPT ORDER for proceedings held on 09/26/2024 before Judge Jacqueline Scott Corley by Nurture, LLC, for Court Reporter Kendra Steppler. (Kim, Brooke) (Filed on 10/29/2024) (Entered: 10/29/2024) |
| 11/05/2024 | 257 | CASE MANAGEMENT STATEMENT *JOINT* filed by Nurture, LLC. (Kim, Brooke) (Filed on 11/5/2024) (Entered: 11/05/2024) |
| 11/07/2024 | 258 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Motion Hearing held on 11/7/2024 re 228 Retailer Defendants' Motion to Dismiss and Further Case Management Conference held on 11/7/2024. (Court Reporter: Ana Dub/Time 11:20-12:20) |

| | | |
|---|---|---|
| | | Further Case Management Conference is set for 12/12/2024 at 9:00 a.m. in San Francisco, Courtroom 08, 19th Floor. (Attachments: # 1 Attendance List)(ahm, COURT STAFF) (Date Filed: 11/7/2024) (Entered: 11/07/2024) |
| 11/08/2024 | 259 | TRANSCRIPT ORDER for proceedings held on 11/07/2024 before Judge Jacqueline Scott Corley by Nestle S.A., for Court Reporter Ana Dub. (Bleicher, Katherine) (Filed on 11/8/2024) (Entered: 11/08/2024) |
| 11/08/2024 | 260 | TRANSCRIPT ORDER for proceedings held on 11/07/2024 before Judge Jacqueline Scott Corley by Nurture, LLC, for Court Reporter Ana Dub. (Kim, Brooke) (Filed on 11/8/2024) (Entered: 11/08/2024) |
| 11/08/2024 | 261 | PRETRIAL ORDER NO. 9. Signed by Judge Jacqueline Scott Corley on 11/8/2024. (ahm, COURT STAFF) (Filed on 11/8/2024) (Entered: 11/08/2024) |
| 11/11/2024 | 262 | NOTICE by D.S. *NOTICE OF COMPLETED SERVICE OF THE MASTER COMPLAINT* (Wisner, Robert) (Filed on 11/11/2024) (Entered: 11/11/2024) |
| 11/11/2024 | 263 | TRANSCRIPT ORDER for proceedings held on 11/07/2024 before Judge Jacqueline Scott Corley by D.S., for Court Reporter Ana Dub. (Wisner, Robert) (Filed on 11/11/2024) (Entered: 11/11/2024) |
| 11/12/2024 | 264 | NOTICE of Change in Counsel: Attorney Kimberly J. Channick no longer representing B.B., P.A. in this case (Smith, William) (Filed on 11/12/2024) (Entered: 11/12/2024) |
| 11/12/2024 | 265 | NOTICE by B.B., P.A. *of Withdrawal of Counsel Kimberly Channick* (Smith, William) (Filed on 11/12/2024) (Entered: 11/12/2024) |
| 11/12/2024 | 266 | STIPULATION *Stipulated Schedule for Filing of Motions to Dismiss* filed by Nurture, LLC. (Kim, Brooke) (Filed on 11/12/2024) (Entered: 11/12/2024) |
| 11/14/2024 | 267 | NOTICE by VZ *to the Court as to the Protective Order Regarding Defendant Nurture, LLC's Product Formulas* (Wagstaff, Aimee) (Filed on 11/14/2024) (Entered: 11/14/2024) |
| 11/15/2024 | 268 | Transcript of Proceedings held on November 7, 2024, before Judge Jacqueline Scott Corley. Court Reporter Ana Dub, RDR, CRR, telephone number 415-290-1651/ana_dub@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter until the deadline for the Release of Transcript Restriction. After that date, it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 259 Transcript Order ) Release of Transcript |

| | | |
|---|---|---|
| | | Restriction set for 2/13/2025. (Related documents(s) 259 ) (amd, COURT STAFF) (Filed on 11/15/2024) (Entered: 11/15/2024) |
| 11/20/2024 | 269 | Letter from Plaintiffs to Defendant Hero A.G. . (Wagstaff, Aimee) (Filed on 11/20/2024) (Entered: 11/20/2024) |
| 11/20/2024 | 270 | Letter from Plaintiffs to Defendant Neptune Wellness Solutions, Inc. . (Wagstaff, Aimee) (Filed on 11/20/2024) (Entered: 11/20/2024) |
| 11/21/2024 | 271 | NOTICE of Change of Address by Rose J Jones *and Firm Affiliation* (Jones, Rose) (Filed on 11/21/2024) (Entered: 11/21/2024) |
| 12/02/2024 | 272 | NOTICE of Appearance filed by Deema Basel Abini on behalf of Nestle Holdings, Inc. (Abini, Deema) (Filed on 12/2/2024) (Entered: 12/02/2024) |
| 12/02/2024 | 273 | NOTICE of Appearance filed by Deema Basel Abini on behalf of Gerber Products Company (Abini, Deema) (Filed on 12/2/2024) (Entered: 12/02/2024) |
| 12/02/2024 | 274 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-20101452.) filed by Nestle Holdings, Inc.. (Attachments: # 1 Certificate of Good Standing)(Mason, Kyle) (Filed on 12/2/2024) (Entered: 12/02/2024) |
| 12/02/2024 | 275 | MOTION to Dismiss *Defendant Campbell Soup Company's Notice of Motion and Motion to Dismiss Plaintiffs' Master Long-Form Complaint* filed by Campbell Soup Company. Motion to Dismiss Hearing set for 2/27/2025 09:00 AM. Responses due by 1/16/2025. Replies due by 2/6/2025. (Attachments: # 1 Declaration of Peter Ryan in Support of Motion to Dismiss, # 2 Exhibit Index; Exhibits A - L, # 3 Defendant Campbell Soup Company's Request for Judicial Notice in Support of Motion Under Fed. R. Civ. P. 12 (b) (1) and 12 (b) (6) to Dismiss Plaintiffs' Master Long-Form Complaint, # 4 Proposed Order Granting Defendant Campbell Soup Company's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (B) (1) and 12 (B) (6))(Ryan, Peter) (Filed on 12/2/2024) (Entered: 12/02/2024) |
| 12/02/2024 | 276 | MOTION to Dismiss filed by Sun-Maid Growers of California. Motion to Dismiss Hearing set for 2/27/2025 09:00 AM. Responses due by 12/16/2024. Replies due by 12/23/2024. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Proposed Order)(Freiwald, Hope) (Filed on 12/2/2024) (Entered: 12/02/2024) |
| 12/02/2024 | 277 | MOTION to Dismiss *Defendant Nestle S.A.'s Notice of Motion and Motion to Dismiss Plaintiff's Master Complaint and Memorandum of Points and Authorities in Support Thereof* filed by Nestle S.A.. Motion to Dismiss Hearing set for 2/27/2025 09:00 AM in San Francisco, Courtroom 08, 19th Floor. Responses due by 1/16/2025. Replies due by |

| | | |
|---|---|---|
| | | 2/6/2025. (Attachments: # 1 Declaration of Silvan Jampen in Support, # 2 Proposed Order)(Zarlenga, Carmine) (Filed on 12/2/2024) (Entered: 12/02/2024) |
| 12/02/2024 | 278 | ORDER by Judge Jacqueline Scott Corley granting 274 Motion for Pro Hac Vice as to Kyle Mason. (ahm, COURT STAFF) (Filed on 12/2/2024) (Entered: 12/02/2024) |
| 12/02/2024 | 279 | MOTION FOR ALTERNATE SERVICE OF PROCESS ON FOREIGN DEFENDANTS filed by D.S.. Motion Hearing set for 2/27/2025 09:00 AM in San Francisco, Courtroom 08, 19th Floor before Judge Jacqueline Scott Corley. Responses due by 1/16/2025. Replies due by 2/6/2025. (Attachments: # 1 Declaration OF R. BRENT WISNER IN SUPPORT OF MOTION FOR ALTERNATE SERVICE OF PROCESS ON FOREIGN DEFENDANTS, # 2 Exhibit 1 - Proof of Service of Master Complaint on Defendant Nestle S A., # 3 Exhibit 2 - Proof of Service of Master Complaint on Defendant Danone S.A., # 4 Exhibit 3 - Proof of Service of Master Complaint on Defendant Hero A.G., # 5 Exhibit 4 - Proof of Service of Master Complaint on Defendant Neptune Wellness Solutions, Inc., # 6 Exhibit 5 - Proof of Service of Mosley Complaint on Defendant Danone S.A., # 7 Exhibit 6 - Proof of Service of Mosley Complaint on Defendant Nestl S.A., # 8 [PROPOSED] ORDER AUTHORIZING ALTERNATIVE SERVICE ON THE FOREIGN DEFENDANTS)(Wisner, Robert) (Filed on 12/2/2024) (Entered: 12/02/2024) |
| 12/02/2024 | 280 | NOTICE of Appearance filed by Quyen Le Ta on behalf of Hero A.G. (Ta, Quyen) (Filed on 12/2/2024) (Entered: 12/02/2024) |
| 12/02/2024 | 281 | MOTION to Dismiss *Master Complaint* filed by Hero A.G.. Motion to Dismiss Hearing set for 2/27/2025 09:00 AM in San Francisco, Courtroom 08, 19th Floor. Responses due by 12/16/2024. Replies due by 12/23/2024. (Attachments: # 1 Declaration of Ricardo Martos in Support of Defendant Hero AG's Motion to Dismiss Master Complaint)(Ta, Quyen) (Filed on 12/2/2024) (Entered: 12/02/2024) |
| 12/02/2024 | 282 | MOTION to Dismiss *and Memorandum of Points and Authorities* filed by Nestle Holdings, Inc.. Motion to Dismiss Hearing set for 2/27/2025 09:00 AM in San Francisco, Courtroom 08, 19th Floor. Responses due by 1/16/2025. Replies due by 2/6/2025. (Attachments: # 1 Declaration of Andrew Glass, # 2 Proposed Order)(Merryman, Bryan) (Filed on 12/2/2024) (Entered: 12/02/2024) |
| 12/02/2024 | 283 | MOTION to Dismiss *and Strike Master Complaint* filed by Nurture, LLC. Motion to Dismiss Hearing set for 2/27/2025 09:00 AM in San Francisco, Courtroom 08, 19th Floor. Responses due by 12/16/2024. Replies due by 12/23/2024. (Attachments: # 1 Declaration of Brooke Kim, # 2 Exhibit A, |

| | | |
|---|---|---|
| | | # 3 Exhibit B, # 4 Proposed Order)(Kim, Brooke) (Filed on 12/2/2024) (Entered: 12/02/2024) |
| 12/02/2024 | 284 | MOTION to Dismiss for Lack of Jurisdiction filed by Danone S.A.. Motion Hearing set for 2/27/2025 09:00 AM in San Francisco, Courtroom 08, 19th Floor before Judge Jacqueline Scott Corley. Responses due by 1/16/2025. Replies due by 2/6/2025. (Attachments: # 1 Declaration of Yves Pellegrino, # 2 Proposed Order)(Goodman, Adam) (Filed on 12/2/2024) (Entered: 12/02/2024) |
| 12/03/2024 | 285 | ORDER RE: RETAILER DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED PETITION. Signed by Judge Jacqueline Scott Corley on 12/3/2024. (ahm, COURT STAFF) (Filed on 12/3/2024) (Entered: 12/03/2024) |
| 12/09/2024 | 286 | Joint Discovery Letter Brief *regarding Plaintiffs Subpoenas to Walmarts Co-Manufacturers* filed by Walmart Inc.. (Attachments: # 1 Declaration of Michael A. Lombardo, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C)(Kiser, Livia) (Filed on 12/9/2024) Modified on 12/17/2024 (ahm, COURT STAFF). (Entered: 12/09/2024) |
| 12/10/2024 | 287 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-20125774.) filed by B.B.. (Attachments: # 1 Exhibit #1 - Certificate of Good Standing)(Hawal, Justin) (Filed on 12/10/2024) (Entered: 12/10/2024) |
| 12/10/2024 | 288 | CASE MANAGEMENT STATEMENT *JOINT* filed by Nurture, LLC. (Kim, Brooke) (Filed on 12/10/2024) (Entered: 12/10/2024) |
| 12/11/2024 | 289 | PROPOSED AGENDA FOR DECEMBER 12, 2024 FURTHER CMC. Signed by Judge Jacqueline Scott Corley on 12/11/2024. (ahm, COURT STAFF) (Filed on 12/11/2024) (Entered: 12/11/2024) |
| 12/11/2024 | 290 | ORDER by Judge Jacqueline Scott Corley granting 287 Motion for Pro Hac Vice as to Justin Hawal. (ahm, COURT STAFF) (Filed on 12/11/2024) (Entered: 12/11/2024) |
| 12/12/2024 | 291 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Further Case Management Conference held on 12/12/2024. The next conference is set for 1/23/2025 at 9:00 a.m. in San Francisco. (Court Reporter: Ruth Ekhaus/Time 1:03) (Attachments: # 1 Attendance List)(ahm, COURT STAFF) (Date Filed: 12/12/2024) (Entered: 12/12/2024) |
| 12/12/2024 | 292 | TRANSCRIPT ORDER for proceedings held on 12/12/2024 before Judge Jacqueline Scott Corley by Nurture, LLC, for Court Reporter Ruth Ekhaus. (Kim, Brooke) (Filed on 12/12/2024) (Entered: 12/12/2024) |

| 12/13/2024 | 293 | TRANSCRIPT ORDER for proceedings held on 12/12/24 before Judge Jacqueline Scott Corley by Nestle S.A., for Court Reporter Ruth Ekhaus. (Bleicher, Katherine) (Filed on 12/13/2024) (Entered: 12/13/2024) |
|---|---|---|
| 12/13/2024 | 294 | TRANSCRIPT ORDER for proceedings held on December 12, 2024 before Judge Jacqueline Scott Corley by VZ, for Court Reporter Ruth Ekhaus. (Wagstaff, Aimee) (Filed on 12/13/2024) (Entered: 12/13/2024) |
| 12/16/2024 | 295 | Transcript of Proceedings held on 12/12/2024, before Judge Jacqueline Scott Corley. Court Reporter Ruth Levine Ekhaus, RMR, RDR, FCRR, CCG, CSR No. 12219, telephone number ruth_ekhaus@cand.uscourts.gov/(415)336-5223. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter until the deadline for the Release of Transcript Restriction. After that date, it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re (292 in 3:24-md-03101-JSC) Transcript Order, (294 in 3:24-md-03101-JSC) Transcript Order, (293 in 3:24-md-03101-JSC) Transcript Order ) Release of Transcript Restriction set for 3/17/2025. (rre, COURT STAFF) (Filed on 12/16/2024) (Entered: 12/16/2024) |
| 12/16/2024 | 296 | NOTICE of Withdrawal filed by Ethan Price Davis, no longer appearing on behalf of Beech-Nut Nutrition Company, Walmart Inc. in this case (Davis, Ethan) (Filed on 12/16/2024) (Entered: 12/16/2024) |
| 12/16/2024 | 297 | PRETRIAL ORDER NO. 10. Signed by Judge Jacqueline Scott Corley on 12/16/2024. (ahm, COURT STAFF) (Filed on 12/16/2024) (Entered: 12/16/2024) |
| 12/17/2024 | 298 | STIPULATION WITH PROPOSED ORDER *to Extend the Deadlines to File and Respond to Third Amended Petition* filed by Amazon.com Services LLC. (Attachments: # 1 Proposed Order)(Vulin, Ashley) (Filed on 12/17/2024) (Entered: 12/17/2024) |
| 12/18/2024 | 299 | ORDER by Judge Jacqueline Scott Corley granting 298 Stipulation to Extend the Deadlines to File and Respond to Third Amended Petition to January 24, 2025. (ahm, COURT STAFF) (Filed on 12/18/2024) (Entered: 12/18/2024) |
| 12/18/2024 | 300 | MOTION to Dismiss *and Strike Master Complaint* filed by Nurture, LLC. Motion to Dismiss Hearing set for 2/27/2025 09:00 AM in San Francisco, Courtroom 08, 19th Floor. Responses due by 1/2/2025. Replies due by 1/9/2025. (Attachments: # 1 Declaration of Brooke Kim, # 2 Exhibit A, # 3 Exhibit B, # 4 Proposed Order)(Kim, Brooke) (Filed on 12/18/2024) (Entered: 12/18/2024) |

| 12/18/2024 | 301 | Notice of Withdrawal of Motion *to Dismiss (ECF 283)* (Kim, Brooke) (Filed on 12/18/2024) (Entered: 12/18/2024) |
|---|---|---|
| 12/19/2024 | 302 | Joint Discovery Letter Brief *regarding Communications with Walmart's Co-Manufacturers* filed by VZ. (Attachments: # 1 Exhibit A)(Wagstaff, Aimee) (Filed on 12/19/2024) (Entered: 12/19/2024) |
| 12/20/2024 | 303 | ORDER RE: WALMART CO-MANUFACTURER DISCOVERY DISPUTE. Signed by Judge Jacqueline Scott Corley on 12/20/2024. (ahm, COURT STAFF) (Filed on 12/20/2024) (Entered: 12/20/2024) |
| 01/06/2025 | 304 | Administrative Motion to File Under Seal filed by Margaret Watkins, James A Watkins. (Attachments: # 1 Declaration, # 2 Proposed Order, # 3 Unredacted Version, # 4 Unredacted Version, # 5 Unredacted Version, # 6 Unredacted Version, # 7 Unredacted Version)(Walsh, Alexandra) (Filed on 1/6/2025) (Entered: 01/06/2025) |
| 01/06/2025 | 305 | AMENDED COMPLAINT *Third* against Amazon.com Services LLC, Hain Celestial Group, Inc., Nurture, LLC, Whole Foods Market Services, Inc.. Filed by James A Watkins, Margaret Watkins. (Walsh, Alexandra) (Filed on 1/6/2025) (Entered: 01/06/2025) |
| 01/06/2025 | 306 | Administrative Motion to Consider Whether Another Party's Material Should Be Sealed filed by VZ. (Attachments: # 1 Declaration of Aimee H. Wagstaff, # 2 Proposed Order, # 3 Unredacted Version of Exhibit E, # 4 Unredacted Version of Exhibit F, # 5 Unredacted Version of Exhibit G, # 6 Unredacted Version of Exhibit H, # 7 Unredacted Version of Exhibit I, # 8 Unredacted Version of Exhibit J, # 9 Unredacted Version of Exhibit K, # 10 Unredacted Version of Exhibit L, # 11 Unredacted Version of Exhibit M, # 12 Unredacted Version of Exhibit N)(Wagstaff, Aimee) (Filed on 1/6/2025) (Entered: 01/06/2025) |
| 01/06/2025 | 307 | Joint Discovery Letter Brief filed by Nurture, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O)(Kim, Brooke) (Filed on 1/6/2025) (Entered: 01/06/2025) |
| 01/06/2025 | 308 | Letter Brief *Joint Letter Brief Regarding Short Form Plaintiff Fact Sheet* filed byNurture, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Kim, Brooke) (Filed on 1/6/2025) (Entered: 01/06/2025) |
| 01/08/2025 | 309 | ORDER RE REDLINE OF PLAINTIFFS' THIRD AMENDED COMPLAINT. Signed by Judge Jacqueline Scott Corley on 1/8/2025. (ahm, COURT STAFF) (Filed on 1/8/2025) (Entered: 01/08/2025) |
| 01/09/2025 | 310 | CLERK'S NOTICE CHANGING TIME OF CASE MANAGEMENT CONFERENCE. Due to the Court's trial schedule, the Further Case |

| | | |
|---|---|---|
| | | Management Conference set for 1/23/2025 will commence at 8:00 a.m. before Judge Jacqueline Scott Corley in San Francisco, Courtroom 08, 19th Floor.<br>(This is a text-only entry generated by the court. There is no document associated with this entry.)<br>(ahm, COURT STAFF) (Filed on 1/9/2025) (Entered: 01/09/2025) |
| 01/09/2025 | 311 | CERTIFICATE OF SERVICE by Margaret Watkins, James A Watkins *Unredacted Third Amended Complaint and Exhibits* (Walsh, Alexandra) (Filed on 1/9/2025) (Entered: 01/09/2025) |
| 01/13/2025 | 312 | PRETRIAL ORDER NO. 11: JANUARY 6, 2025 DISCOVERY DISPUTE JOINT LETTER. Signed by Judge Jacqueline Scott Corley on January 13, 2025. (ahm, COURT STAFF) (Filed on 1/13/2025) (Entered: 01/13/2025) |
| 01/13/2025 | 313 | Administrative Motion to File Under Seal *Redline to Third Amended Petition* filed by Margaret Watkins, James A Watkins. (Attachments: # 1 Declaration, # 2 Proposed Order, # 3 Redline to Third Amended Petition)(Walsh, Alexandra) (Filed on 1/13/2025) (Entered: 01/13/2025) |
| 01/13/2025 | 314 | AMENDED PETITION *Redline to Third Amended Petition* against Amazon.com Services LLC, Hain Celestial Group, Inc., Nurture, LLC, Whole Foods Market Services, Inc.. Filed by James A Watkins, Margaret Watkins. (Walsh, Alexandra) (Filed on 1/13/2025) (Entered: 01/13/2025) |
| 01/14/2025 | 315 | ACKNOWLEDGEMENT OF SERVICE Executed *ACKNOWLEDGEMENT OF SERVICE OF MASTER COMPLAINT UPON DEFENDANT BEECH-NUT NUTRITION COMPANY AND WALMART, INC.* Acknowledgement filed by D.S.. (Wisner, Robert) (Filed on 1/14/2025) (Entered: 01/14/2025) |
| 01/14/2025 | 316 | ACKNOWLEDGEMENT OF SERVICE Executed *ACKNOWLEDGEMENT OF SERVICE OF MASTER COMPLAINT UPON DEFENDANT GERBER PRODUCTS COMPANY* Acknowledgement filed by D.S.. (Wisner, Robert) (Filed on 1/14/2025) (Entered: 01/14/2025) |
| 01/14/2025 | 317 | ACKNOWLEDGEMENT OF SERVICE Executed *ACKNOWLEDGEMENT OF SERVICE OF MASTER COMPLAINT UPON DEFENDANT HAIN CELESTIAL GROUP, INC.* Acknowledgement filed by D.S.. (Wisner, Robert) (Filed on 1/14/2025) (Entered: 01/14/2025) |
| 01/14/2025 | 318 | ACKNOWLEDGEMENT OF SERVICE Executed *ACKNOWLEDGEMENT OF SERVICE OF MASTER COMPLAINT UPON DEFENDANT NURTURE, LLC* Acknowledgement |

| | | |
|---|---|---|
| | | filed by D.S.. (Wisner, Robert) (Filed on 1/14/2025) (Entered: 01/14/2025) |
| 01/14/2025 | 319 | ACKNOWLEDGEMENT OF SERVICE Executed *ACKNOWLEDGEMENT OF SERVICE OF MASTER COMPLAINT UPON DEFENDANT PLUM, PBC* Acknowledgement filed by D.S.. (Wisner, Robert) (Filed on 1/14/2025) (Entered: 01/14/2025) |
| 01/14/2025 | 320 | ACKNOWLEDGEMENT OF SERVICE Executed *ACKNOWLEDGEMENT OF SERVICE OF MASTER COMPLAINT UPON DEFENDANT SPROUT FOODS, INC.* Acknowledgement filed by D.S.. (Wisner, Robert) (Filed on 1/14/2025) (Entered: 01/14/2025) |
| 01/14/2025 | 321 | CERTIFICATE OF SERVICE by D.S. *OF MASTER COMPLAINT UPON DEFENDANT CAMPBELL SOUP COMPANY* (Wisner, Robert) (Filed on 1/14/2025) (Entered: 01/14/2025) |
| 01/14/2025 | 322 | CERTIFICATE OF SERVICE by D.S. *OF MASTER COMPLAINT UPON DEFENDANT NEPTUNE WELLNESS SOLUTIONS* (Wisner, Robert) (Filed on 1/14/2025) (Entered: 01/14/2025) |
| 01/14/2025 | 323 | CERTIFICATE OF SERVICE by D.S. *OF MASTER COMPLAINT UPON DEFENDANT NESTLE HOLDINGS, INC.* (Wisner, Robert) (Filed on 1/14/2025) (Entered: 01/14/2025) |
| 01/14/2025 | 324 | CERTIFICATE OF SERVICE by D.S. *OF MASTER COMPLAINT UPON DEFENDANT SUN-MAID GROWERS OF CALIFORNIA* (Wisner, Robert) (Filed on 1/14/2025) (Entered: 01/14/2025) |
| 01/14/2025 | 325 | CERTIFICATE OF SERVICE by D.S. *OF MASTER COMPLAINT UPON DEFENDANT NESTLE S.A.* (Wisner, Robert) (Filed on 1/14/2025) (Entered: 01/14/2025) |
| 01/14/2025 | 326 | CERTIFICATE OF SERVICE by D.S. *OF MASTER COMPLAINT UPON DEFENDANT DANONE SA* (Wisner, Robert) (Filed on 1/14/2025) (Entered: 01/14/2025) |
| 01/14/2025 | 327 | CERTIFICATE OF SERVICE by D.S. *OF MASTER COMPLAINT UPON DEFENDANT HERO A.G.* (Wisner, Robert) (Filed on 1/14/2025) (Entered: 01/14/2025) |
| 01/15/2025 | 328 | AMENDED PETITION *Third* against Amazon.com Services LLC, Hain Celestial Group, Inc., Nurture, LLC, Whole Foods Market Services, Inc.. Filed by James A Watkins, Margaret Watkins. (Smith, William) (Filed on 1/15/2025) (Entered: 01/15/2025) |
| 01/15/2025 | 329 | AMENDED PETITION *Redline to Third Amended Petition Compared to Second Amended Petition* against Amazon.com Services LLC, Hain |

| | | |
|---|---|---|
| | | Celestial Group, Inc., Nurture, LLC, Whole Foods Market Services, Inc.. Filed by James A Watkins, Margaret Watkins. (Smith, William) (Filed on 1/15/2025) (Entered: 01/15/2025) |
| 01/15/2025 | 330 | AMENDED PETITION *Redline to Replacement Third Amended Petition Compared to Original Third Amended Petition* against Amazon.com Services LLC, Hain Celestial Group, Inc., Nurture, LLC, Whole Foods Market Services, Inc.. Filed by James A Watkins, Margaret Watkins. (Smith, William) (Filed on 1/15/2025) (Entered: 01/15/2025) |
| 01/15/2025 | 331 | MOTION to Strike 304 Administrative Motion to File Under Seal , 314 Amended Petition, 313 Administrative Motion to File Under Seal *Redline to Third Amended Petition*, 305 Amended Complaint filed by Margaret Watkins, James A Watkins. Responses due by 1/29/2025. Replies due by 2/5/2025. (Attachments: # 1 Proposed Order)(Smith, William) (Filed on 1/15/2025) **Locked per filer's request.** Modified on 1/23/2025 (ddk, COURT STAFF). (Entered: 01/15/2025) |
| 01/15/2025 | 332 | Administrative Motion to File Under Seal filed by Margaret Watkins, James A Watkins. (Attachments: # 1 Declaration, # 2 Proposed Order, # 3 Third Amended Petition, # 4 Redline of Third Amended Petition compared to Second Amended Petition, # 5 Redline of Third Amended Petition Compared to Original Third Amended Petition, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F)(Smith, William) (Filed on 1/15/2025) (Entered: 01/15/2025) |
| 01/16/2025 | 333 | NOTICE of Voluntary Dismissal *Without Prejudice of Nestle Holdings, Inc.* by VZ (Wagstaff, Aimee) (Filed on 1/16/2025) (Entered: 01/16/2025) |
| 01/16/2025 | 334 | OPPOSITION/RESPONSE   (re 279 MOTION FOR ALTERNATE SERVICE OF PROCESS ON FOREIGN DEFENDANTS ) filed byNestle S.A., Danone S.A., Hero A.G., Neptune Wellness Solutions. (Ta, Quyen) (Filed on 1/16/2025) (Entered: 01/16/2025) |
| 01/16/2025 | 335 | ADMINISTRATIVE MOTION FOR LEAVE TO SUBMIT DECLARATIONS IN SUPPORT OF CONTINUED SEALING OF DEFENDANTS CONFIDENTIAL OR HIGHLY CONFIDENTIAL MATERIALS  re 304 Administrative Motion to File Under Seal , 306 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed filed by Nurture, LLC. Responses due by 1/21/2025. (Attachments: # 1 Declaration of Brooke Kim, # 2 Exhibit 1 - Declaration of Michael X. Imbroscio, # 3 Exhibit 2 - Declaration of Brooke Kim, # 4 Exhibit 3 - Declaration of P. Andrew McStay, Jr., # 5 Exhibit 4 - Declaration of Bryan A. Merryman, # 6 Exhibit 5 - Declaration of Michelle Hart Yeary, # 7 Exhibit 6 - Declaration of J. Dominic Campodonico, # 8 Exhibit 7 - Declaration of Livia M. Kiser, # 9 Proposed Order)(Kim, Brooke) (Filed on 1/16/2025) (Entered: 01/16/2025) |

| | | |
|---|---|---|
| 01/16/2025 | 336 | Administrative Motion to File Under Seal *PLAINTIFFS OMNIBUS OPPOSITION TO DEFENDANTS MOTIONS TO DISMISS PLAINTIFFS MASTER LONG-FORM COMPLAINT* filed by D.S.. (Attachments: # 1 Declaration, # 2 Proposed Order, # 3 UNREDACTED VERSION OF PLAINTIFFS OMNIBUS OPPOSITION TO DEFENDANTS MOTIONS TO DISMISS PLAINTIFFS MASTER LONG-FORM COMPLAINT, # 4 Unredacted Version of Exhibit 8, # 5 Unredacted Version of Exhibit 10, # 6 Unredacted Version of Exhibit 11, # 7 Unredacted Version of Exhibit 15, # 8 Unredacted Version of Exhibit 16, # 9 Unredacted Version of Exhibit 17, # 10 Unredacted Version of Exhibit 18, # 11 Unredacted Version of Exhibit 19, # 12 Unredacted Version of Exhibit 21, # 13 Unredacted Version of Exhibit 23, # 14 Unredacted Version of Exhibit 24, # 15 Unredacted Version of Exhibit 25, # 16 Unredacted Version of Exhibit 26, # 17 Unredacted Version of Exhibit 27, # 18 Unredacted Version of Exhibit 28, # 19 Unredacted Version of Exhibit 29, # 20 Unredacted Version of Exhibit 30, # 21 Unredacted Version of Exhibit 31, # 22 Unredacted Version of Exhibit 32, # 23 Unredacted Version of Exhibit 33, # 24 Unredacted Version of Exhibit 34, # 25 Unredacted Version of Exhibit 35, # 26 Unredacted Version of Exhibit 36, # 27 Unredacted Version of Exhibit 37, # 28 Unredacted Version of Exhibit 38, # 29 Unredacted Version of Exhibit 39, # 30 Unredacted Version of Exhibit 40, # 31 Unredacted Version of Exhibit 42, # 32 Unredacted Version of Exhibit 44, # 33 Unredacted Version of Exhibit 45, # 34 Unredacted Version of Exhibit 46, # 35 Unredacted Version of Exhibit 47, # 36 Unredacted Version of Exhibit 48, # 37 Unredacted Version of Exhibit 49, # 38 Unredacted Version of Exhibit 50, # 39 Unredacted Version of Exhibit 51, # 40 Unredacted Version of Exhibit 52)(Wisner, Robert) (Filed on 1/16/2025) (Entered: 01/16/2025) |
| 01/16/2025 | 337 | EXHIBITS re 336 Administrative Motion to File Under Seal *PLAINTIFFS OMNIBUS OPPOSITION TO DEFENDANTS MOTIONS TO DISMISS PLAINTIFFS MASTER LONG-FORM COMPLAINT* filed byD.S.. (Attachments: # 1 Unredacted Version of Exhibit 54, # 2 Unredacted Version of Exhibit 55, # 3 Unredacted Version of Exhibit 56, # 4 Unredacted Version of Exhibit 57, # 5 Unredacted Version of Exhibit 58, # 6 Unredacted Version of Exhibit 68, # 7 Unredacted Version of Exhibit 70, # 8 Unredacted Version of Exhibit 71, # 9 Unredacted Version of Exhibit 72, # 10 Unredacted Version of Exhibit 73, # 11 Unredacted Version of Exhibit 74, # 12 Unredacted Version of Exhibit 75, # 13 Unredacted Version of Exhibit 76, # 14 Unredacted Version of Exhibit 77, # 15 Unredacted Version of Exhibit 78, # 16 Unredacted Version of Exhibit 81, # 17 Unredacted Version of Exhibit 83, # 18 Unredacted Version of Exhibit 86, # 19 Unredacted Version of Exhibit 87, # 20 Unredacted Version of Exhibit 88, # 21 Unredacted Version of Exhibit 89, # 22 Unredacted |

| | | |
|---|---|---|
| | | Version of Exhibit 90, # 23 Unredacted Version of Exhibit 91, # 24 Unredacted Version of Exhibit 92, # 25 Unredacted Version of Exhibit 94, # 26 Unredacted Version of Exhibit 95, # 27 Unredacted Version of Exhibit 96, # 28 Unredacted Version of Exhibit 100, # 29 Unredacted Version of Exhibit 101, # 30 Unredacted Version of Exhibit 103)(Related document(s) 336 ) (Wisner, Robert) (Filed on 1/16/2025) (Entered: 01/16/2025) |
| 01/16/2025 | 338 | OPPOSITION/RESPONSE (re 300 MOTION to Dismiss *and Strike Master Complaint*, 276 MOTION to Dismiss , 277 MOTION to Dismiss *Defendant Nestle S.A.'s Notice of Motion and Motion to Dismiss Plaintiff's Master Complaint and Memorandum of Points and Authorities in Support Thereof*, 275 MOTION to Dismiss *Defendant Campbell Soup Company's Notice of Motion and Motion to Dismiss Plaintiffs' Master Long-Form Complaint*, 284 MOTION to Dismiss for Lack of Jurisdiction , 281 MOTION to Dismiss *Master Complaint* ) *PLAINTIFFS OMNIBUS OPPOSITION TO DEFENDANTS MOTIONS TO DISMISS PLAINTIFFS MASTER LONG FORM COMPLAINT* filed byD.S.. (Attachments: # 1 Declaration, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19)(Wisner, Robert) (Filed on 1/16/2025) (Entered: 01/16/2025) |
| 01/16/2025 | 339 | EXHIBITS re 338 Opposition/Response to Motion,,,, *PLAINTIFFS OMNIBUS OPPOSITION TO DEFENDANTS MOTIONS TO DISMISS PLAINTIFFS MASTER LONGFORM COMPLAINT* filed byD.S.. (Attachments: # 1 Exhibit 21, # 2 Exhibit 22, # 3 Exhibit 23, # 4 Exhibit 24, # 5 Exhibit 25, # 6 Exhibit 26, # 7 Exhibit 27, # 8 Exhibit 28, # 9 Exhibit 29, # 10 Exhibit 30, # 11 Removed per 355 Order , # 12 Exhibit 32, # 13 Exhibit 33, # 14 Exhibit 34, # 15 Exhibit 35, # 16 Exhibit 36, # 17 Exhibit 37, # 18 Exhibit 38, # 19 Exhibit 39, # 20 Exhibit 40, # 21 Exhibit 41, # 22 Exhibit 42, # 23 Exhibit 43, # 24 Exhibit 44, # 25 Exhibit 45, # 26 Exhibit 46, # 27 Exhibit 47, # 28 Exhibit 48, # 29 Exhibit 49, # 30 Exhibit 50, # 31 Exhibit 51, # 32 Exhibit 52, # 33 Exhibit 53, # 34 Exhibit 54, # 35 Exhibit 55, # 36 Exhibit 56, # 37 Exhibit 57, # 38 Exhibit 58, # 39 Exhibit 59, # 40 Exhibit 60, # 41 Exhibit 61, # 42 Exhibit 62, # 43 Exhibit 63, # 44 Exhibit 64, # 45 Exhibit 65, # 46 Exhibit 66, # 47 Exhibit 67, # 48 Exhibit 68, # 49 Exhibit 69, # 50 Exhibit 70, # 51 Exhibit 71, # 52 Exhibit 72, # 53 Exhibit 73, # 54 Exhibit 74, # 55 Exhibit 75, # 56 Exhibit 76, # 57 Exhibit 77, # 58 Exhibit 78)(Related document(s) 338 ) (Wisner, Robert) (Filed on 1/16/2025) (Attachment 11 replaced on 1/27/2025) (kkp, COURT STAFF). Modified on 1/27/2025 (kkp, COURT STAFF). (Entered: 01/16/2025) |

| 01/16/2025 | 340 | EXHIBITS re 338 Opposition/Response to Motion,,,, *PLAINTIFFS OMNIBUS OPPOSITION TO DEFENDANTS MOTIONS TO DISMISS PLAINTIFFS MASTER LONG-FORM COMPLAINT* filed byD.S.. (Attachments: # 1 Exhibit 80, # 2 Exhibit 81, # 3 Exhibit 82, # 4 Exhibit 83, # 5 Exhibit 84, # 6 Exhibit 85, # 7 Exhibit 86, # 8 Exhibit 87, # 9 Exhibit 88, # 10 Exhibit 89, # 11 Exhibit 90, # 12 Exhibit 91, # 13 Exhibit 92, # 14 Exhibit 93, # 15 Exhibit 94, # 16 Exhibit 95, # 17 Exhibit 96, # 18 Exhibit 97, # 19 Exhibit 98, # 20 Exhibit 99, # 21 Exhibit 100, # 22 Exhibit 101, # 23 Exhibit 102, # 24 Exhibit 103)(Related document(s) 338 ) (Wisner, Robert) (Filed on 1/16/2025) (Entered: 01/16/2025) |
| 01/17/2025 | 341 | Administrative Motion to Consider Whether Another Party's Material Should Be Sealed *regarding Plaintiffs Discovery Letter Dispute with Gerber and Nestle* filed by VZ. (Attachments: # 1 Declaration of Aimee H. Wagstaff, # 2 Proposed Order, # 3 Unredaction Version of Plaintiffs' Discovery Letter, # 4 Unredacted Version of Exhibit A, # 5 Unredacted Version of Exhibit B, # 6 Unredacted Version of Exhibit C)(Wagstaff, Aimee) (Filed on 1/17/2025) (Entered: 01/17/2025) |
| 01/17/2025 | 342 | Discovery Letter Brief *Regarding Discovery Dispute with Gerber and Nestle* filed by VZ. (Attachments: # 1 Exhibit Exhibit A (filed under seal), # 2 Exhibit Exhibit B (filed under seal), # 3 Exhibit Exhibit C (filed under seal), # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit Exhibit F)(Wagstaff, Aimee) (Filed on 1/17/2025) (Entered: 01/17/2025) |
| 01/17/2025 | 343 | Discovery Letter Brief filed by Nestle S.A., Gerber Products Company. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Merryman, Bryan) (Filed on 1/17/2025) (Entered: 01/17/2025) |
| 01/21/2025 | 344 | Declaration of Michael X. Imbroscio in Support of 332 Administrative Motion to File Under Seal filed byHain Celestial Group, Inc.. (Related document(s) 332 ) (Imbroscio, Michael) (Filed on 1/21/2025) (Entered: 01/21/2025) |
| 01/21/2025 | 345 | JOINT CASE MANAGEMENT STATEMENT filed by VZ. (Wagstaff, Aimee) (Filed on 1/21/2025) (Entered: 01/21/2025) |
| 01/21/2025 | 346 | Declaration of P. Andrew McStay, Jr. in Support of 332 Administrative Motion to File Under Seal filed byAmazon.com Services LLC. (Related document(s) 332 ) (Vulin, Ashley) (Filed on 1/21/2025) (Entered: 01/21/2025) |
| 01/21/2025 | 347 | Declaration of Brooke K. Kim in Support of 313 Administrative Motion to File Under Seal *Redline to Third Amended Petition* filed byNurture, LLC. (Related document(s) 313 ) (Kim, Brooke) (Filed on 1/21/2025) (Entered: 01/21/2025) |

| 01/21/2025 | 348 | ORDER by Judge Jacqueline Scott Corley granting 335 Administrative Motion for Leave to submit declarations in support of maintaining the sealing and redaction of certain Confidential or Highly Confidential materials. <br> (This is a text-only entry generated by the court. There is no document associated with this entry.) <br> (ahm, COURT STAFF) (Filed on 1/21/2025) (Entered: 01/21/2025) |
|---|---|---|
| 01/22/2025 | 349 | PROPOSED AGENDA FOR JANUARY 23, 2025 FURTHER CMC. Signed by Judge Jacqueline Scott Corley on 1/22/2025. (ahm, COURT STAFF) (Filed on 1/22/2025) (Entered: 01/22/2025) |
| 01/22/2025 | 350 | Declaration of Brooke K. Kim in Support of 332 Administrative Motion to File Under Seal filed byNurture, LLC. (Related document(s) 332 ) (Kim, Brooke) (Filed on 1/22/2025) (Entered: 01/22/2025) |
| 01/23/2025 | 351 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Further Case Management Conference held on 1/16/2025. (Court Reporter: Ana Dub/Time 00:45) (Attachments: # 1 Attendance List)(ahm, COURT STAFF) (Date Filed: 1/23/2025) (Entered: 01/23/2025) |
| 01/23/2025 | 352 | TRANSCRIPT ORDER for proceedings held on 01/23/2025 before Judge Jacqueline Scott Corley by Nestle S.A., for Court Reporter Ana Dub. (Bleicher, Katherine) (Filed on 1/23/2025) (Entered: 01/23/2025) |
| 01/23/2025 | 353 | MOTION to Remove Incorrectly Filed Document filed by VZ. (Attachments: # 1 Proposed Order)(Wagstaff, Aimee) (Filed on 1/23/2025) (Entered: 01/23/2025) |
| 01/23/2025 | 354 | EXHIBITS re 339 Exhibits,,,,, *Correction of Docket # [339-11]* filed byVZ. (Related document(s) 339 ) (Wagstaff, Aimee) (Filed on 1/23/2025) (Entered: 01/23/2025) |
| 01/24/2025 | 355 | ORDER by Judge Jacqueline Scott Corley granting 353 Motion to Remove Incorrectly Filed Document. (ahm, COURT STAFF) (Filed on 1/24/2025) (Entered: 01/24/2025) |
| 01/24/2025 | 356 | TRANSCRIPT ORDER for proceedings held on 01/23/2025 before Judge Jacqueline Scott Corley by Nurture, LLC, for Court Reporter Ana Dub. (Kim, Brooke) (Filed on 1/24/2025) (Entered: 01/24/2025) |
| 01/24/2025 | 357 | PRETRIAL ORDER NO. 12. Signed by Judge Jacqueline Scott Corley on 1/24/2025. (ahm, COURT STAFF) (Filed on 1/24/2025) (Entered: 01/24/2025) |
| 01/24/2025 | 358 | Declaration of Bryan A. Merryman in Support of 341 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed *regarding Plaintiffs Discovery Letter Dispute with Gerber and* |

|  |  | *Nestle* filed byGerber Products Company. (Related document(s) 341 ) (Merryman, Bryan) (Filed on 1/24/2025) (Entered: 01/24/2025) |
|---|---|---|
| 01/27/2025 | 359 | TRANSCRIPT ORDER for proceedings held on January 23, 2025 before Judge Jacqueline Scott Corley by VZ, for Court Reporter Ana Dub. (Wagstaff, Aimee) (Filed on 1/27/2025) (Entered: 01/27/2025) |
| 01/29/2025 | 360 | TRANSCRIPT ORDER for proceedings held on 1/23/2025 before Judge Jacqueline Scott Corley by Hain Celestial Group, Inc., for Court Reporter Ana Dub. (Imbroscio, Michael) (Filed on 1/29/2025) (Entered: 01/29/2025) |
| 01/31/2025 | 361 | NOTICE by Z.W. *of Initial Plaintiff Fact Sheet* (Jackson, Timothy) (Filed on 1/31/2025) (Entered: 01/31/2025) |
| 02/03/2025 | 362 | Transcript of Proceedings held on January 23, 2025, before Judge Jacqueline Scott Corley. Court Reporter Ana Dub, RDR, CRR, telephone number 415-290-1651/ana_dub@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter until the deadline for the Release of Transcript Restriction. After that date, it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 359 Transcript Order, 356 Transcript Order, 352 Transcript Order, 360 Transcript Order ) Release of Transcript Restriction set for 4/25/2025. (Related documents(s) 359 , 356 , 352 , 360 ) (amd, COURT STAFF) (Filed on 2/3/2025) (Entered: 02/03/2025) |
| 02/03/2025 | 363 | ORDER REGARDING COURTESY COPIES. Signed by Judge Jacqueline Scott Corley on 2/3/2025. Defendants to submit chambers copies of all briefing on Defendants' motions to dismiss and related exhibits set for hearing on February 27, 2025. Chambers copies shall conform to Section D of the Civil Standing Order and shall be submitted to the Court by February 7, 2025 at 11:00 a.m. PDT. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ahm, COURT STAFF) (Filed on 2/3/2025) (Entered: 02/03/2025) |
| 02/05/2025 | 364 | Administrative Motion to File Under Seal filed by Amazon.com Services LLC. (Attachments: # 1 Declaration in Support of Defendant Amazon's Administrative Motion to File Under Seal, # 2 Proposed Order re Defendant Amazon's Administrative Motion to File Under Seal, # 3 Exhibit Unredacted Version of Defendant Amazon's Motion to Dismiss)(Vulin, Ashley) (Filed on 2/5/2025) (Entered: 02/05/2025) |

| 02/05/2025 | 365 | MOTION to Dismiss *Plaintiffs Redhibition Claim Against a Seller With Knowledge* filed by Whole Foods Market Services, Inc.. Motion to Dismiss Hearing set for 3/27/2026 09:00 AM in San Francisco, Courtroom 08, 19th Floor. Responses due by 2/19/2025. Replies due by 2/26/2025. (Attachments: # 1 Memorandum in Support, # 2 Proposed Order)(Ballay, Brian) (Filed on 2/5/2025) Modified on 6/2/2025 (ahm, COURT STAFF). (Entered: 02/05/2025) |
| --- | --- | --- |
| 02/05/2025 | 366 | MOTION to Dismiss *Plaintiffs' Third Amended Petition* filed by Amazon.com Services LLC. Motion to Dismiss Hearing set for 3/27/2025 09:00 AM in San Francisco, Courtroom 08, 19th Floor. Responses due by 2/19/2025. Replies due by 2/26/2025. (Attachments: # 1 Proposed Order)(Vulin, Ashley) (Filed on 2/5/2025) Modified on 6/2/2025 (ahm, COURT STAFF). (Entered: 02/05/2025) |
| 02/06/2025 | 367 | REPLY (re 279 MOTION FOR ALTERNATE SERVICE OF PROCESS ON FOREIGN DEFENDANTS ) filed byVZ. (Wagstaff, Aimee) (Filed on 2/6/2025) (Entered: 02/06/2025) |
| 02/06/2025 | 368 | STIPULATION WITH PROPOSED ORDER re 338 Opposition/Response to Motion,,,, 266 Stipulation, 340 Exhibits,, 337 Exhibits to an Administrative Motion to File Under Seal,,,,, 363 Order,, 336 Administrative Motion to File Under Seal *PLAINTIFFS OMNIBUS OPPOSITION TO DEFENDANTS MOTIONS TO DISMISS PLAINTIFFS MASTER LONG-FORM COMPLAINT,* 339 Exhibits,,,,, filed by Nurture, LLC. (Kim, Brooke) (Filed on 2/6/2025) (Entered: 02/06/2025) |
| 02/06/2025 | 369 | REPLY (re 275 MOTION to Dismiss *Defendant Campbell Soup Company's Notice of Motion and Motion to Dismiss Plaintiffs' Master Long-Form Complaint* ) filed byCampbell Soup Company. (Ryan, Peter) (Filed on 2/6/2025) (Entered: 02/06/2025) |
| 02/06/2025 | 370 | REPLY (re 300 MOTION to Dismiss *and Strike Master Complaint* ) filed byNurture, LLC. (Kim, Brooke) (Filed on 2/6/2025) (Entered: 02/06/2025) |
| 02/06/2025 | 371 | REPLY (re 276 MOTION to Dismiss ) filed bySun-Maid Growers of California. (Freiwald, Hope) (Filed on 2/6/2025) (Entered: 02/06/2025) |
| 02/06/2025 | 372 | Administrative Motion to File Under Seal *(Nestle S.A.'s Administrative Motion to File Under Partial Seal Portions of its Reply to Motion to Dismiss Plaintiffs' Master Complaint)* filed by Nestle S.A.. (Attachments: # 1 Declaration of Carmine R. Zarlenga in Support, # 2 Proposed Order, # 3 Unredacted Version of Reply Memorandum)(Zarlenga, Carmine) (Filed on 2/6/2025) (Entered: 02/06/2025) |

| 02/06/2025 | 373 | REPLY (re 277 MOTION to Dismiss *Defendant Nestle S.A.'s Notice of Motion and Motion to Dismiss Plaintiff's Master Complaint and Memorandum of Points and Authorities in Support Thereof ) (Redacted Version)* filed byNestle S.A.. (Attachments: # 1 Declaration of Silvan Jampen in Support, # 2 Declaration of Bryan A. Merryman in Support, # 3 Exhibit A, # 4 Exhibit B)(Zarlenga, Carmine) (Filed on 2/6/2025) (Entered: 02/06/2025) |
|---|---|---|
| 02/06/2025 | 374 | ORDER by Judge Jacqueline Scott Corley granting 368 Stipulation Regarding Refiling of Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss Plaintiffs' Master Long-Form Complaint. (ahm, COURT STAFF) (Filed on 2/6/2025) (Entered: 02/06/2025) |
| 02/06/2025 | 375 | REPLY (re 281 MOTION to Dismiss *Master Complaint* ) filed byHero A.G.. (Ta, Quyen) (Filed on 2/6/2025) (Entered: 02/06/2025) |
| 02/06/2025 | 376 | Declaration of Ricardo Martos in Support of 281 MOTION to Dismiss *Master Complaint (Supplemental Declaration of Ricardo Martos in Support of Defendant Hero AG's Motion to Dismiss Master Complaint)* filed byHero A.G.. (Related document(s) 281 ) (Ta, Quyen) (Filed on 2/6/2025) (Entered: 02/06/2025) |
| 02/06/2025 | 377 | Declaration of Jason Jacobs in Support of 281 MOTION to Dismiss *Master Complaint* filed byHero A.G.. (Related document(s) 281 ) (Ta, Quyen) (Filed on 2/6/2025) (Entered: 02/06/2025) |
| 02/06/2025 | 378 | Administrative Motion to Consider Whether Another Party's Material Should Be Sealed filed by Danone S.A.. (Attachments: # 1 Declaration of Adam L. Goodman, # 2 Proposed Order, # 3 Unredacted Reply Brief in Support of Danone S.A.'s Motion to Dismiss)(Goodman, Adam) (Filed on 2/6/2025) (Entered: 02/06/2025) |
| 02/06/2025 | 379 | REPLY (re 284 MOTION to Dismiss for Lack of Jurisdiction ) filed byDanone S.A.. (Attachments: # 1 Declaration of Yves Pellegrino, # 2 Exhibit A)(Goodman, Adam) (Filed on 2/6/2025) (Entered: 02/06/2025) |
| 02/07/2025 | 380 | Administrative Motion to File Under Seal *Plaintiffs Omnibus Opposition To Defendants Motions To Dismiss Plaintiffs Master Long-Form Complaint* filed by D.S.. (Attachments: # 1 Declaration, # 2 Proposed Order, # 3 UNREDACTED VERSION OF PLAINTIFFS OMNIBUS OPPOSITION TO DEFENDANTS MOTIONS TO DISMISS PLAINTIFFS MASTER LONG-FORM COMPLAINT, # 4 Unredacted Version of Exhibit 8, # 5 Unredacted Version of Exhibit 10, # 6 Unredacted Version of Exhibit 11, # 7 Unredacted Version of Exhibit 15, # 8 Unredacted Version of Exhibit 17, # 9 Unredacted Version of Exhibit 18, # 10 Unredacted Version of Exhibit 19, # 11 Unredacted Version of Exhibit 21, # 12 Unredacted Version of Exhibit 23, |

| | | |
|---|---|---|
| | | # 13 Unredacted Version of Exhibit 24, # 14 Unredacted Version of Exhibit 25, # 15 Unredacted Version of Exhibit 26, # 16 Unredacted Version of Exhibit 27, # 17 Unredacted Version of Exhibit 28, # 18 Unredacted Version of Exhibit 29, # 19 Unredacted Version of Exhibit 33, # 20 Unredacted Version of Exhibit 34, # 21 Unredacted Version of Exhibit 35, # 22 Unredacted Version of Exhibit 36, # 23 Unredacted Version of Exhibit 37, # 24 Unredacted Version of Exhibit 38, # 25 Unredacted Version of Exhibit 39, # 26 Unredacted Version of Exhibit 40, # 27 Unredacted Version of Exhibit 42, # 28 Unredacted Version of Exhibit 44, # 29 Unredacted Version of Exhibit 45, # 30 Unredacted Version of Exhibit 47, # 31 Unredacted Version of Exhibit 48, # 32 Unredacted Version of Exhibit 49, # 33 Unredacted Version of Exhibit 50)(Wisner, Robert) (Filed on 2/7/2025) (Entered: 02/07/2025) |
| 02/07/2025 | 381 | EXHIBITS re 380 Administrative Motion to File Under Seal *Plaintiffs Omnibus Opposition To Defendants Motions To Dismiss Plaintiffs Master Long-Form Complaint -- Unredacted Version of Exhibit 51* filed byD.S.. (Attachments: # 1 Unredacted Version of Exhibit 52, # 2 Unredacted Version of Exhibit 53, # 3 Unredacted Version of Exhibit 54, # 4 Unredacted Version of Exhibit 55, # 5 Unredacted Version of Exhibit 56, # 6 Unredacted Version of Exhibit 57, # 7 Unredacted Version of Exhibit 58, # 8 Unredacted Version of Exhibit 73, # 9 Unredacted Version of Exhibit 74, # 10 Unredacted Version of Exhibit 75, # 11 Unredacted Version of Exhibit 76, # 12 Unredacted Version of Exhibit 77, # 13 Unredacted Version of Exhibit 78, # 14 Unredacted Version of Exhibit 81, # 15 Unredacted Version of Exhibit 83, # 16 Unredacted Version of Exhibit 86, # 17 Unredacted Version of Exhibit 87, # 18 Unredacted Version of Exhibit 88, # 19 Unredacted Version of Exhibit 89, # 20 Unredacted Version of Exhibit 90, # 21 Unredacted Version of Exhibit 91, # 22 Unredacted Version of Exhibit 92, # 23 Unredacted Version of Exhibit 94, # 24 Unredacted Version of Exhibit 95, # 25 Unredacted Version of Exhibit 96, # 26 Unredacted Version of Exhibit 100, # 27 Unredacted Version of Exhibit 101, # 28 Unredacted Version of Exhibit 103)(Related document(s) 380 ) (Wisner, Robert) (Filed on 2/7/2025) (Entered: 02/07/2025) |
| 02/07/2025 | 382 | OPPOSITION/RESPONSE  (re 300 MOTION to Dismiss *and Strike Master Complaint*, 277 MOTION to Dismiss *Defendant Nestle S.A.'s Notice of Motion and Motion to Dismiss Plaintiff's Master Complaint and Memorandum of Points and Authorities in Support Thereof*, 284 MOTION to Dismiss for Lack of Jurisdiction , 281 MOTION to Dismiss *Master Complaint*, 276 MOTION to Dismiss , 275 MOTION to Dismiss *Defendant Campbell Soup Company's Notice of Motion and Motion to Dismiss Plaintiffs' Master Long-Form Complaint* ) *Plaintiffs Omnibus Opposition To Defendants* |

| | | |
|---|---|---|
| | | *Motions To Dismiss Plaintiffs Master Long Form Complaint* filed by D.S.. (Attachments: # 1 Declaration of R. Brent Wisner, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8 (SEALED), # 10 Exhibit 9, # 11 Exhibit 10 (SEALED), # 12 Exhibit 11 (SEALED), # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15 (REDACTED), # 17 Exhibit 16, # 18 Exhibit 17 (SEALED), # 19 Exhibit 18 (SEALED), # 20 Exhibit 19 (SEALED), # 21 Exhibit 20, # 22 Exhibit 21 (SEALED), # 23 Exhibit 22, # 24 Exhibit 23 (SEALED), # 25 Exhibit 24 (SEALED), # 26 Exhibit 25 (SEALED), # 27 Exhibit 26 (SEALED), # 28 Exhibit 27 (SEALED), # 29 Exhibit 28 (SEALED), # 30 Exhibit 29 (SEALED), # 31 Exhibit 30, # 32 Exhibit 31, # 33 Exhibit 32, # 34 Exhibit 33 (SEALED), # 35 Exhibit 34 (REDACTED), # 36 Exhibit 35 (SEALED), # 37 Exhibit 36 (SEALED), # 38 Exhibit 37 (SEALED), # 39 Exhibit 38 (SEALED), # 40 Exhibit 39 (SEALED), # 41 Exhibit 40 (SEALED), # 42 Exhibit 41, # 43 Exhibit 42 (SEALED), # 44 Exhibit 43, # 45 Exhibit 44 (REDACTED), # 46 Exhibit 45 (REDACTED), # 47 Exhibit 46, # 48 Exhibit 47 (REDACTED), # 49 Exhibit 48 (REDACTED), # 50 Exhibit 49 (SEALED), # 51 Exhibit 50 (REDACTED), # 52 Exhibit 51 (SEALED), # 53 Exhibit 52 (SEALED), # 54 Exhibit 53 (SEALED), # 55 Exhibit 54 (SEALED), # 56 Exhibit 55 (SEALED), # 57 Exhibit 56 (SEALED), # 58 Exhibit 57 (SEALED), # 59 Exhibit 58 (SEALED), # 60 Exhibit 59, # 61 Exhibit 60)(Wisner, Robert) (Filed on 2/7/2025) (Entered: 02/07/2025) |
| 02/07/2025 | 383 | EXHIBITS re 382 Opposition/Response to Motion, *Plaintiffs Omnibus Opposition To Defendants Motions To Dismiss Plaintiffs Master Long-Form Complaint -- Exhibit 61* filed byD.S.. (Attachments: # 1 Exhibit 62, # 2 Exhibit 63, # 3 Exhibit 64, # 4 Exhibit 65, # 5 Exhibit 66, # 6 Exhibit 67, # 7 Exhibit 68, # 8 Exhibit 69, # 9 Exhibit 70, # 10 Exhibit 71, # 11 Exhibit 72, # 12 Exhibit 73 (SEALED), # 13 Exhibit 74 (REDACTED), # 14 Exhibit 75 (REDACTED), # 15 Exhibit 76 (SEALED), # 16 Exhibit 77 (SEALED), # 17 Exhibit 78 (SEALED), # 18 Exhibit 79, # 19 Exhibit 80, # 20 Exhibit 81 (SEALED), # 21 Exhibit 82, # 22 Exhibit 83 (SEALED), # 23 Exhibit 84, # 24 Exhibit 85, # 25 Exhibit 86 (SEALED), # 26 Exhibit 87 (SEALED), # 27 Exhibit 88 (SEALED), # 28 Exhibit 89 (SEALED), # 29 Exhibit 90 (REDACTED), # 30 Exhibit 91 (SEALED), # 31 Exhibit 92 (SEALED), # 32 Exhibit 93, # 33 Exhibit 94 (SEALED), # 34 Exhibit 95 (SEALED), # 35 Exhibit 96 (SEALED), # 36 Exhibit 97, # 37 Exhibit 98, # 38 Exhibit 99, # 39 Exhibit 100 (REDACTED), # 40 Exhibit 101 (SEALED), # 41 Exhibit 102, # 42 Exhibit 103 (REDACTED))(Related document(s) 382 ) (Wisner, Robert) (Filed on 2/7/2025) (Entered: 02/07/2025) |

| | | |
|---|---|---|
| 02/10/2025 | 384 | Declaration of Brooke Kim in Support of 364 Administrative Motion to File Under Seal filed byNurture, LLC. (Related document(s) 364 ) (Kim, Brooke) (Filed on 2/10/2025) (Entered: 02/10/2025) |
| 02/12/2025 | 385 | Declaration of Michael X. Imbroscio in Support of 364 Administrative Motion to File Under Seal *Hain's Confidential Materials* filed byHain Celestial Group, Inc.. (Related document(s) 364 ) (Imbroscio, Michael) (Filed on 2/12/2025) (Entered: 02/12/2025) |
| 02/13/2025 | 386 | Declaration of Brooke Killian Kim *In Support of Continued Sealing of Defendants Confidential or Highly Confidential Materials* filed byNurture, LLC. (Kim, Brooke) (Filed on 2/13/2025) (Entered: 02/13/2025) |
| 02/14/2025 | 387 | Declaration of Brooke Kim in Support of 380 Administrative Motion to File Under Seal *Plaintiffs Omnibus Opposition To Defendants Motions To Dismiss Plaintiffs Master Long-Form Complaint*, 381 Exhibits to an Administrative Motion to File Under Seal,,,,, filed byNurture, LLC. (Related document(s) 380 , 381 ) (Kim, Brooke) (Filed on 2/14/2025) (Entered: 02/14/2025) |
| 02/17/2025 | 388 | Declaration of Michelle Yeary *in Support of Plaintiff's Administrative Motion to Consider Whether Another Partys Material Should be Filed Under Seal* filed byPlum, PBC. (Yeary, Michelle) (Filed on 2/17/2025) (Entered: 02/17/2025) |
| 02/17/2025 | 389 | Declaration of Livia M. Kiser in Support of 374 Order on Stipulation, filed byBeech-Nut Nutrition Company. (Related document(s) 374 ) (Kiser, Livia) (Filed on 2/17/2025) (Entered: 02/17/2025) |
| 02/17/2025 | 390 | Declaration of Bryan A. Merryman *in Support of Plaintiff's Administrative Motion to Consider Whether Another Partys Material Should be Filed Under Seal* filed byGerber Products Company. (Merryman, Bryan) (Filed on 2/17/2025) (Entered: 02/17/2025) |
| 02/17/2025 | 391 | ***DISREGARD. ERROR IN FILING PER FILER. SEE DOCKET # 392 FOR CORRECTED FILING.*** Declaration of Bryan A. Merryman *in Support of Plaintiff's Administrative Motion to Consider Whether Another Partys Material Should be Filed Under Seal* filed byGerber Products Company. (Merryman, Bryan) (Filed on 2/17/2025) Modified on 2/18/2025 (jml, COURT STAFF). (Entered: 02/17/2025) |
| 02/17/2025 | 392 | Declaration of Bryan A. Merryman in Support of 372 Administrative Motion to File Under Seal *(Nestle S.A.'s Administrative Motion to File Under Partial Seal Portions of its Reply to Motion to Dismiss Plaintiffs' Master Complaint) CORRECTION OF DOCKET # 391* filed byGerber |

| | | |
|---|---|---|
| | | Products Company. (Related document(s) 372 ) (Merryman, Bryan) (Filed on 2/17/2025) (Entered: 02/17/2025) |
| 02/18/2025 | 393 | STIPULATION WITH PROPOSED ORDER *To Extend Deadlins to File Oppositions and Replies to Retailer Defendants Motion to Dismiss* filed by Margaret Watkins, James A Watkins. (Attachments: # 1 Proposed Order)(Smith, William) (Filed on 2/18/2025) (Entered: 02/18/2025) |
| 02/18/2025 | 394 | RESPONSE re 387 Declaration in Support, *PLAINTIFFS RESPONSE TO NURTURE, LLCS DECLARATION TO SEAL EXHIBITS AND STATEMENTS RELATING TO PLAINTIFFS OMNIBUS OPPOSITION TO DEFENDANTS MOTIONS TO DISMISS PLAINTIFFS MASTER LONGFORM COMPLAINT* by D.S.. (Wisner, Robert) (Filed on 2/18/2025) (Entered: 02/18/2025) |
| 02/19/2025 | 395 | ORDER by Judge Jacqueline Scott Corley granting 393 Stipulation to Extend Deadlines to File Oppositions and Replies to Retailer Defendants' Motion to Dismiss. (ahm, COURT STAFF) (Filed on 2/19/2025) (Entered: 02/19/2025) |
| 02/19/2025 | 396 | CLERK'S NOTICE RESCHEDULING MOTIONS HEARING. In light of the extended deadlines, the hearing on 365 Whole Food's Motion to Dismiss Plaintiffs' Redhibition Claim Against a Seller With Knowledge and 366 Amazon's Motion to Dismiss Plaintiffs' Third Amended Petition set for 2/27/2025 is continued to 4/24/2025at 9:00 a.m. in San Francisco, Courtroom 08, 19th Floor before Judge Jacqueline Scott Corley.<br>(This is a text-only entry generated by the court. There is no document associated with this entry.)<br>(ahm, COURT STAFF) (Filed on 2/19/2025) (Entered: 02/19/2025) |
| 02/21/2025 | 397 | CLERK'S NOTICE CHANGING TIME OF CASE MANAGEMENT CONFERENCE AND MOTIONS HEARING. The further case management conference and motions hearing scheduled for February 27, 2025 will commence at 1:30 p.m. in San Francisco, Courtroom 08, 19th Floor.<br>(This is a text-only entry generated by the court. There is no document associated with this entry.)<br>(ahm, COURT STAFF) (Filed on 2/21/2025) (Entered: 02/21/2025) |
| 02/21/2025 | 398 | NOTICE of Appearance filed by James Dominic Campodonico on behalf of Sprout Foods Inc. (Campodonico, James) (Filed on 2/21/2025) (Entered: 02/21/2025) |
| 02/21/2025 | 399 | RESPONSE re 388 Declaration in Support *PLAINTIFFS RESPONSE TO PLUM, PBCS DECLARATION TO SEAL EXHIBITS AND STATEMENTS RELATING TO PLAINTIFFS OMNIBUS OPPOSITION TO DEFENDANTS MOTIONS TO DISMISS PLAINTIFFS MASTER* |

| | | |
|---|---|---|
| | | *LONGFORM COMPLAINT* by VZ. (Wagstaff, Aimee) (Filed on 2/21/2025) (Entered: 02/21/2025) |
| 02/21/2025 | 400 | RESPONSE re 392 Declaration in Support, 390 Declaration in Support *PLAINTIFFS RESPONSE TO GERBER PRODUCT COMPANYS AND NESTLE S.A.S DECLARATIONS TO SEAL EXHIBITS RELATING TO PLAINTIFFS OMNIBUS OPPOSITION TO DEFENDANTS MOTIONS TO DISMISS PLAINTIFFS MASTER LONG FORM COMPLAINT* by VZ. (Wagstaff, Aimee) (Filed on 2/21/2025) (Entered: 02/21/2025) |
| 02/21/2025 | 401 | RESPONSE re 389 Declaration in Support *PLAINTIFFS RESPONSE TO BEECHNUT NUTRITION COMPANYS DECLARATION TO SEAL EXHIBITS AND STATEMENTS RELATING TO PLAINTIFFS OMNIBUS OPPOSITION TO DEFENDANTS MOTIONS TO DISMISS PLAINTIFFS MASTER LONGFORM COMPLAINT* by VZ. (Wagstaff, Aimee) (Filed on 2/21/2025) (Entered: 02/21/2025) |
| 02/21/2025 | 402 | STIPULATION WITH PROPOSED ORDER *TO SET BRIEFING SCHEDULE REGARDING PLAINTIFFS SHORT FORM COMPLAINT* filed by VZ. (Wagstaff, Aimee) (Filed on 2/21/2025) (Entered: 02/21/2025) |
| 02/21/2025 | 403 | NOTICE by VZ *of Filing Plaintiffs' Short Form Complaint* (Attachments: # 1 Exhibit A - Short Form Complaint)(Wagstaff, Aimee) (Filed on 2/21/2025) (Entered: 02/21/2025) |
| 02/24/2025 | 404 | Joint Discovery Letter Brief*re Rule 30(b)(6) Deposition Notices* filed by D.S.. (Attachments: # 1 Exhibit A, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4)(Wisner, Robert) (Filed on 2/24/2025) Modified on 3/10/2025 (ahm, COURT STAFF). (Entered: 02/24/2025) |
| 02/25/2025 | 405 | ORDER by Judge Jacqueline Scott Corley granting 402 Stipulation TO SET BRIEFING SCHEDULE REGARDING PLAINTIFFS' SHORT FORM COMPLAINT. (ahm, COURT STAFF) (Filed on 2/25/2025) (Entered: 02/25/2025) |
| 02/25/2025 | 406 | CASE MANAGEMENT STATEMENT *JOINT STATEMENT FOR FEBRUARY 27, 2025 CASE MANAGEMENT CONFERENCE* filed by Nurture, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Kim, Brooke) (Filed on 2/25/2025) (Entered: 02/25/2025) |
| 02/25/2025 | 407 | Administrative Motion to Consider Whether Another Party's Material Should Be Sealed filed by VZ. (Attachments: # 1 Declaration, # 2 Proposed Order, # 3 Unredacted Version of Exhibit D)(Wagstaff, Aimee) (Filed on 2/25/2025) (Entered: 02/25/2025) |

| 02/27/2025 | 408 | PROPOSED AGENDA FOR FEBRUARY 27, 2025 FURTHER CMC. Signed by Judge Jacqueline Scott Corley on 2/27/2025. (ahm, COURT STAFF) (Filed on 2/27/2025) (Entered: 02/27/2025) |
|---|---|---|
| 02/27/2025 | 409 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Motion hearing re: Campbells Motion to Dismiss (ECF 275 ), Sun-Maid's Motion to Dismiss (ECF 276 ), Nestle's Motions to Dismiss (ECF 277 & 282 ), Plaintiffs' Motion for Alternate Service (ECF 279 ), Hero AG's Motion to Dismiss (ECF 281 ), Danone's Motion to Dismiss (ECF 284 ), Nurture's Motion to Dismiss (ECF 300 ), and further case management conference held on 2/27/2025.<br>Court Reporter: Marla Knox/Time 2:41<br>(Attachments: # 1 Attendance List)(ahm, COURT STAFF) (Date Filed: 2/27/2025) Modified on 2/27/2025 (ahm, COURT STAFF). (Entered: 02/27/2025) |
| 02/28/2025 | 410 | TRANSCRIPT ORDER for proceedings held on 02/27/2025 before Judge Jacqueline Scott Corley by Nurture, LLC, for Court Reporter Marla Knox. (Kim, Brooke) (Filed on 2/28/2025) (Entered: 02/28/2025) |
| 03/04/2025 | 411 | TRANSCRIPT ORDER for proceedings held on February 27, 2025 before Judge Jacqueline Scott Corley by VZ, for Court Reporter Marla Knox. (Wagstaff, Aimee) (Filed on 3/4/2025) (Entered: 03/04/2025) |
| 03/04/2025 | 412 | TRANSCRIPT ORDER for proceedings held on 02/27/2025 before Judge Jacqueline Scott Corley by Nestle S.A., for Court Reporter Marla Knox. (Pottinger, Oral) (Filed on 3/4/2025) (Entered: 03/04/2025) |
| 03/04/2025 | 413 | PRETRIAL ORDER NO. 13. Signed by Judge Jacqueline Scott Corley on 3/4/2025. (ahm, COURT STAFF) (Filed on 3/4/2025) (Entered: 03/04/2025) |
| 03/06/2025 | 414 | Administrative Motion to File Under Seal filed by Margaret Watkins, James A Watkins. (Attachments: # 1 Declaration, # 2 Proposed Order, # 3 Plaintiff's Memorandum in Opposition to Amazon's Motion to Dismiss Plaintiff's Third Amended Petition, # 4 Exhibit Exhibit 1, # 5 Exhibit Exhibit 2, # 6 Exhibit Exhibit 3)(Smith, William) (Filed on 3/6/2025) (Entered: 03/06/2025) |
| 03/06/2025 | 415 | OPPOSITION/RESPONSE (re 366 MOTION to Dismiss *Plaintiffs' Third Amended Petition* ) filed byMargaret Watkins, James A Watkins. (Attachments: # 1 Declaration of William L. Smith in Support of Plaintiff's Memorandum in Opposition to Amazon's Motion to Dismiss Plaintiff's Third Amended Petition)(Smith, William) (Filed on 3/6/2025) (Entered: 03/06/2025) |
| 03/06/2025 | 416 | Administrative Motion to File Under Seal filed by Margaret Watkins, James A Watkins. (Attachments: # 1 Declaration, # 2 Proposed Order, |

| | | |
|---|---|---|
| | | # 3 Plaintiff's Memorandum in Opposition to Whole Foods' Motion to Dismiss Plaintiff's Redhibition Claim Against A Seller with Knowledge, # 4 Exhibit Exhibit 1)(Smith, William) (Filed on 3/6/2025) (Entered: 03/06/2025) |
| 03/06/2025 | 417 | OPPOSITION/RESPONSE (re 365 MOTION to Dismiss *Plaintiffs Redhibition Claim Against a Seller With Knowledge* ) filed byMargaret Watkins, James A Watkins. (Attachments: # 1 Declaration Of William L. Smith in Support of Plaintiff's Memorandum in Opposition to Whole Foods' Motion To Dismiss Plaintiff's Redhibition Claim Against a Seller With Knowledge)(Smith, William) (Filed on 3/6/2025) (Entered: 03/06/2025) |
| 03/07/2025 | 418 | TRANSCRIPT ORDER for proceedings held on 2/27/2025 before Judge Jacqueline Scott Corley by Hain Celestial Group, Inc., for Court Reporter Marla Knox. (Imbroscio, Michael) (Filed on 3/7/2025) (Entered: 03/07/2025) |
| 03/07/2025 | 419 | Proposed Pretrial Order *(Joint)* by Sprout Foods Inc.. (Attachments: # 1 Proposed Order)(Klatt, Michael) (Filed on 3/7/2025) (Entered: 03/07/2025) |
| 03/07/2025 | 420 | MOTION [REGARDING PLAINTIFFS PROPOSED SHORT FORM COMPLAINT] by Beech-Nut Nutrition Company, Walmart Inc.. (Attachments: # 1 Exhibit A)(Kiser, Livia) (Filed on 3/7/2025) Modified on 3/13/2025 (ahm, COURT STAFF). Modified on 6/2/2025 (ahm, COURT STAFF). (Entered: 03/07/2025) |
| 03/10/2025 | 421 | PRETRIAL ORDER NO. 14 REGARDING APPOINTMENTS OF GUARDIANS AD LITEM. Signed by Judge Jacqueline Scott Corley on 3/10/2025. (ahm, COURT STAFF) (Filed on 3/10/2025) (Entered: 03/10/2025) |
| 03/12/2025 | 422 | Declaration of P. Andrew McStay, Jr. in Support of 414 Administrative Motion to File Under Seal filed byAmazon.com Services LLC. (Related document(s) 414 ) (McStay, P.) (Filed on 3/12/2025) (Entered: 03/12/2025) |
| 03/12/2025 | 423 | OPPOSITION/RESPONSE (re 416 Administrative Motion to File Under Seal , 414 Administrative Motion to File Under Seal ) filed byWhole Foods Market Services, Inc.. (Ballay, Brian) (Filed on 3/12/2025) (Entered: 03/12/2025) |
| 03/13/2025 | 424 | Declaration of Brooke Kim in Support of 414 Administrative Motion to File Under Seal filed byNurture, LLC. (Related document(s) 414 ) (Kim, Brooke) (Filed on 3/13/2025) (Entered: 03/13/2025) |
| 03/14/2025 | 425 | OPPOSITION/RESPONSE (re 416 Administrative Motion to File Under Seal , 414 Administrative Motion to File Under Seal ) *To The Declaration* |

| | | |
|---|---|---|
| | | *of Brian M. Ballay in Support of Continued Sealing of Whole Foods' Confidential Materials* filed byMargaret Watkins, James A Watkins. (Smith, William) (Filed on 3/14/2025) (Entered: 03/14/2025) |
| 03/14/2025 | 426 | OPPOSITION/RESPONSE (re 420 MOTION ) filed byVZ. (Attachments: # 1 Declaration of William L. Smith, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G)(Wagstaff, Aimee) (Filed on 3/14/2025) (Entered: 03/14/2025) |
| 03/19/2025 | 428 | REPLY in Support (re 365 MOTION to Dismiss *Plaintiffs Redhibition Claim Against a Seller With Knowledge* ) filed by Whole Foods Market Services, Inc.. (Ballay, Brian) (Filed on 3/19/2025) (Entered: 03/19/2025) |
| 03/20/2025 | 429 | Administrative Motion to File Under Seal filed by Amazon.com Services LLC. (Attachments: # 1 Declaration of P. Andrew McStay, Jr. in support of Amazon.com Services LLC's Administrative Motion to File Documents Under Seal, # 2 Proposed Order, # 3 Defendant Amazon.com Services LLC's Reply in Support of Amazon's Motion to Dismiss Plaintiffs' Third Amended Complaint)(Vulin, Ashley) (Filed on 3/20/2025) (Entered: 03/20/2025) |
| 03/20/2025 | 430 | REPLY in Support (re 366 MOTION to Dismiss *Plaintiffs' Third Amended Petition* ) filed by Amazon.com Services LLC. (Attachments: # 1 Declaration of Veronica Muriel Carrioni in support of Reply to Motion to Dismiss Plaintiffs' Third Amended Complaint, # 2 Declaration of Rebecca Hartley in support of Reply to Motion to Dismiss Plaintiffs' Third Amended Complaint)(Vulin, Ashley) (Filed on 3/20/2025) (Entered: 03/20/2025) |
| 03/21/2025 | 431 | REPLY in Support (re 420 MOTION ) filed by Beech-Nut Nutrition Company, Walmart Inc.. (Kiser, Livia) (Filed on 3/21/2025) (Entered: 03/21/2025) |
| 03/24/2025 | 432 | Transcript of Proceedings held on February 27, 2025, before Judge Jacqueline S. Corley. Court Reporter, Marla F. Knox, RPR, CRR, RMR, telephone number (602) 391-6990/email marla_knox@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 410 Transcript Order ) Release of Transcript Restriction set for 6/23/2025. (Related documents(s) 410 ) (mfk, COURT STAFF) (Filed on 3/24/2025) (Entered: 03/24/2025) |

| 03/24/2025 | 433 | ERRATA re 197 Complaint by Ashely Garcia. (Turner, Tracy) (Filed on 3/24/2025) (Entered: 03/24/2025) |
|---|---|---|
| 03/25/2025 | 434 | ORDER RE SEALING OF THE COURT'S ORDER ON RULE 12 MOTIONS. Signed by Judge Jacqueline Scott Corley on 3/25/2025. (ahm, COURT STAFF) (Filed on 3/25/2025) (Entered: 03/25/2025) |
| 03/25/2025 | 435 | CASE MANAGEMENT STATEMENT *JOINT STATEMENT FOR MARCH 27, 2025 CASE MANAGEMENT CONFERENCE* filed by Nurture, LLC. (Attachments: # 1 Declaration of Rachael M. Jones, Ph.D., # 2 Declaration of Lacey Keller)(Kim, Brooke) (Filed on 3/25/2025) (Entered: 03/25/2025) |
| 03/25/2025 | 436 | ADMINISTRATIVE MOTION Admission Pro Hac Vice , MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-20494317.) filed by Hain Celestial Group, Inc.. Responses due by 3/31/2025. (Attachments: # 1 Supplement Certificate of Good Standing)(Fouhey, Elizabeth) (Filed on 3/25/2025) Modified on 3/27/2025 (ahm, COURT STAFF). (Entered: 03/25/2025) |
| 03/26/2025 | 437 | PROPOSED AGENDA FOR MARCH 27, 2025 FURTHER CMC. Signed by Judge Jacqueline Scott Corley on 3/26/2025. (ahm, COURT STAFF) (Filed on 3/26/2025) (Entered: 03/26/2025) |
| 03/27/2025 | 438 | ORDER by Judge Jacqueline Scott Corley granting 436 Motion for Pro Hac Vice as to Elizabeth Fouhey. (ahm, COURT STAFF) (Filed on 3/27/2025) (Entered: 03/27/2025) |
| 03/27/2025 | 439 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Motion Hearing re 420 Defendants' Motion Regarding Plaintiffs' Short Form Complaint and Further Case Management Conference held on 3/27/2025. (Court Reporter: Stephen Franklin/Time 9:04-10:00) (Attachments: # 1 Attendance List)(ahm, COURT STAFF) (Date Filed: 3/27/2025) Modified on 3/27/2025 (ahm, COURT STAFF). (Entered: 03/27/2025) |
| 03/27/2025 | 440 | PRETRIAL ORDER NO. 15. Signed by Judge Jacqueline Scott Corley on 3/27/2025. (ahm, COURT STAFF) (Filed on 3/27/2025) (Entered: 03/27/2025) |
| 03/27/2025 | 441 | Declaration of Brooke Kim in Support of 429 Administrative Motion to File Under Seal filed byNurture, LLC. (Related document(s) 429 ) (Kim, Brooke) (Filed on 3/27/2025) (Entered: 03/27/2025) |
| 03/27/2025 | 442 | Declaration of Michael X. Imbroscio in Support of 429 Administrative Motion to File Under Seal filed byHain Celestial Group, Inc.. (Related document(s) 429 ) (Imbroscio, Michael) (Filed on 3/27/2025) (Entered: 03/27/2025) |

| 03/27/2025 | 443 | CLERK'S NOTICE REGARDING CASE MANAGEMENT CONFERENCE IN MAY 2025. The Further Case Management Conference is set for 5/22/2025 at 9:00 a.m. in San Francisco, Courtroom 08, 19th Floor. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ahm, COURT STAFF) (Filed on 3/27/2025) (Entered: 03/27/2025) |
|---|---|---|
| 04/01/2025 | 444 | RESPONSE re 434 Order *Request to Keep Certain Portions of Rule 12 Motion Under Seal* by Nurture, LLC. (Kim, Brooke) (Filed on 4/1/2025) (Entered: 04/01/2025) |
| 04/01/2025 | 445 | TRANSCRIPT ORDER for proceedings held on 03/27/2025 before Judge Jacqueline Scott Corley by Nurture, LLC, for Court Reporter Stephen Franklin. (Kim, Brooke) (Filed on 4/1/2025) (Entered: 04/01/2025) |
| 04/02/2025 | 446 | TRANSCRIPT ORDER for proceedings held on 3/27/2025 before Judge Jacqueline Scott Corley by Hain Celestial Group, Inc., for Court Reporter Stephen Franklin. (Imbroscio, Michael) (Filed on 4/2/2025) (Entered: 04/02/2025) |
| 04/02/2025 | 447 | AMENDED ORDER RE DEFENDANTS' MOTIONS TO DISMISS AND MOTION TO STRIKE. Signed by Judge Jacqueline Scott Corley on 4/2/2025. This Order disposes of Docket Nos. 275 , 276 , 277 , 281 , 282 , 284 , and 300 . This amended order modifies potentially sealable information present on ECF page 17 of Docket Number 427 as proposed by Defendant in Docket Number 444 . (ahm, COURT STAFF) (Filed on 4/2/2025) (Entered: 04/02/2025) |
| 04/09/2025 | 448 | Transcript of Proceedings held on 03/27/2025, before Judge Jacqueline Scott Corley. Court Reporter/Transcriber Stephen W. Franklin, telephone number (561)313-8439. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 445 Transcript Order ) Release of Transcript Restriction set for 7/8/2025. (Related documents(s) 445 ) (Franklin, Stephen) (Filed on 4/9/2025) (Entered: 04/09/2025) |
| 04/10/2025 | 449 | TRANSCRIPT ORDER for proceedings held on March 27, 2025 before Judge Jacqueline Scott Corley by VZ, for Court Reporter Stephen Franklin. (Wagstaff, Aimee) (Filed on 4/10/2025) (Entered: 04/10/2025) |

| 04/16/2025 | 450 | Administrative Motion to Consider Whether Another Party's Material Should Be Sealed *regarding Plaintiffs' Amended Master Long Form Complaint* filed by VZ. (Attachments: # 1 Declaration of Aimee H. Wagstaff, # 2 Proposed Order, # 3 Unredacted Version of Plaintiffs' Amended Master Long Form Complaint, # 4 Unredacted Version of Redlined Plaintiffs' Amended Master Long Form Complaint)(Wagstaff, Aimee) (Filed on 4/16/2025) (Entered: 04/16/2025) |
|---|---|---|
| 04/16/2025 | 451 | AMENDED COMPLAINT *Master Long Form Complaint* against Beech-Nut Nutrition Company, Gerber Products Company, Hain Celestial Group, Inc., Neptune Wellness Solutions, Nurture, LLC, Plum, PBC, Sprout Foods Inc., Sun-Maid Growers of California, Walmart Inc., The Campbell's Company, Danone North America, PBC, Danone Nutricia Nederland BV, Nestle USA, Inc., Nestle Enterprises S.A., Societe des Produits Nestle S.A.. Filed by VZ. (Attachments: # 1 Redlined Version of Plaintiffs' Amended Master Long Form Complaint)(Wagstaff, Aimee) (Filed on 4/16/2025) (Entered: 04/16/2025) |
| 04/22/2025 | 452 | NOTICE of Appearance filed by Allison Ozurovich on behalf of Plum, PBC, Sun-Maid Growers of California (Ozurovich, Allison) (Filed on 4/22/2025) (Entered: 04/22/2025) |
| 04/22/2025 | 453 | JOINT CASE MANAGEMENT STATEMENT *for April 24, 2025 Case Management Conference* filed by VZ. (Attachments: # 1 Exhibit A)(Wagstaff, Aimee) (Filed on 4/22/2025) (Entered: 04/22/2025) |
| 04/22/2025 | 454 | NOTICE by VZ *of Filing Short Form Complaint* (Attachments: # 1 Exhibit A)(Wagstaff, Aimee) (Filed on 4/22/2025) (Entered: 04/22/2025) |
| 04/22/2025 | 455 | NOTICE by Beech-Nut Nutrition Company, Walmart Inc. re 440 Pretrial Order *[Defendants Updated Proposed Short Form Complaint]* (Attachments: # 1 Exhibit A - MDL Defendant-By-Defendant Causation Standard Analysis, # 2 Exhibit B - Defendant's Proposed Updated SFC and Jury Demand)(Kiser, Livia) (Filed on 4/22/2025) (Entered: 04/22/2025) |
| 04/23/2025 | 456 | PROPOSED AGENDA FOR APRIL 24, 2025 FURTHER CMC. Signed by Judge Jacqueline Scott Corley on 4/23/2025. (ahm, COURT STAFF) (Filed on 4/23/2025) (Entered: 04/23/2025) |
| 04/23/2025 | 457 | Order. Signed by Judge Jacqueline Scott Corley on 4/23/2025. (ahm, COURT STAFF) (Filed on 4/23/2025) (Entered: 04/23/2025) |
| 04/23/2025 | 458 | Declaration of Michelle Hart Yeary in Support of 450 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed *regarding Plaintiffs' Amended Master Long Form Complaint* filed |

| | | |
|---|---|---|
| | | byPlum, PBC. (Related document(s) 450 ) (Yeary, Michelle) (Filed on 4/23/2025) (Entered: 04/23/2025) |
| 04/23/2025 | 459 | Declaration of Bryan A. Merryman in Support of 450 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed *regarding Plaintiffs' Amended Master Long Form Complaint* filed byGerber Products Company. (Related document(s) 450 ) (Merryman, Bryan) (Filed on 4/23/2025) (Entered: 04/23/2025) |
| 04/24/2025 | 460 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Motion Hearing re 279 Plaintiffs' Motion for Alternate Service of Process on Foreign Defendants and Further Case Management Conference held on 4/24/2025. (Court Reporter: Kendra Steppler/Time 00:59) (Attachments: # 1 Attendance List) (ahm, COURT STAFF) (Date Filed: 4/24/2025) (Entered: 04/24/2025) |
| 04/24/2025 | 461 | TRANSCRIPT ORDER for proceedings held on 04/24/2025 before Judge Jacqueline Scott Corley by Nurture, LLC, for Court Reporter Kendra Steppler. (Kim, Brooke) (Filed on 4/24/2025) (Entered: 04/24/2025) |
| 04/24/2025 | 462 | TRANSCRIPT ORDER for proceedings held on April 24, 2025 before Judge Jacqueline Scott Corley by VZ, for Court Reporter Kendra Steppler. (Wagstaff, Aimee) (Filed on 4/24/2025) (Entered: 04/24/2025) |
| 04/24/2025 | 463 | ORDER RE SEALING OF THE COURT'S ORDER ON RETAILER DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED PETITION. Signed by Judge Jacqueline Scott Corley on 4/24/2025. (ahm, COURT STAFF) (Filed on 4/24/2025) (Entered: 04/24/2025) |
| 04/24/2025 | 464 | Proposed Summons. (Wisner, Robert) (Filed on 4/24/2025) (Entered: 04/24/2025) |
| 04/24/2025 | 465 | ORDER by Judge Jacqueline Scott Corley denying without prejudice 279 Plaintiffs' Motion for Alternate Serivce of Process on Foreign Defendants. (ahm, COURT STAFF) (Filed on 4/24/2025) (Entered: 04/24/2025) |
| 04/26/2025 | 466 | Transcript of Proceedings held on April 24, 2025, before Judge Jacqueline Scott Corley. Court Reporter Kendra Steppler, telephone number 406-489-3498, email address kendra_steppler@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter until the deadline for the Release of Transcript Restriction. After that date, it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 461 Transcript Order ) Release of Transcript Restriction set for 7/25/2025. (Related documents(s) 461 ) (Steppler, Kendra) (Filed on 4/26/2025) (Entered: 04/26/2025) |

| 04/28/2025 | 467 | PRETRIAL ORDER NO. 16. Signed by Judge Jacqueline Scott Corley on 4/28/2025. (ahm, COURT STAFF) (Filed on 4/28/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 04/28/2025) |
| 04/30/2025 | 468 | RESPONSE re 463 Order by Amazon.com Services LLC. (McStay, P.) (Filed on 4/30/2025) (Entered: 04/30/2025) |
| 05/02/2025 | 469 | Summons Issued as to Danone North America, PBC. (slh, COURT STAFF) (Filed on 5/2/2025) (Entered: 05/02/2025) |
| 05/02/2025 | 470 | Response re 463 Order *DEFENDANTS REQUEST TO KEEP UNDER SEAL CERTAIN PORTIONS OF COURTS ORDER ON RETAILER DEFENDANTS MOTION TO DISMISS THE THIRD AMENDED PETITION* by Nurture, LLC. (Kim, Brooke) (Filed on 5/2/2025) (Entered: 05/02/2025) |
| 05/07/2025 | 471 | NOTICE by Beech-Nut Nutrition Company, Walmart Inc. *[Joint Notice of Filing Short Form Complaint]* (Attachments: # 1 Exhibit A)(Kiser, Livia) (Filed on 5/7/2025) (Entered: 05/07/2025) |
| 05/07/2025 | 472 | Proposed Order re 471 Notice (Other) *[Re: Timing of Short Form Complaint Filing]* by Beech-Nut Nutrition Company, Walmart Inc.. (Kiser, Livia) (Filed on 5/7/2025) (Entered: 05/07/2025) |
| 05/08/2025 | 473 | ORDER RE: TIMING OF SHORT FORM COMPLAINT FILING. Signed by Judge Jacqueline Scott Corley on 5/8/2025. (ahm, COURT STAFF) (Filed on 5/8/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/08/2025) |
| 05/09/2025 | 474 | Administrative Motion to File Under Seal filed by Margaret Watkins, James A Watkins. (Attachments: # 1 Declaration, # 2 Proposed Order, # 3 Fourth Amended Petition, # 4 Fourth Amended Petition Redline, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G)(Smith, William) (Filed on 5/9/2025) (Entered: 05/09/2025) |
| 05/09/2025 | 475 | AMENDED PETITION *FOURTH* against Amazon.com Services LLC, Hain Celestial Group, Inc., Nurture, LLC, Whole Foods Market Services, Inc.. Filed by James A Watkins, Margaret Watkins. (Smith, William) (Filed on 5/9/2025) (Entered: 05/09/2025) |
| 05/09/2025 | 476 | AMENDED PETITION *REDLINE TO FOURTH AMENDED PETITION* against Amazon.com Services LLC, Hain Celestial Group, Inc., Nurture, LLC, Whole Foods Market Services, Inc.. Filed by James A |

| | | |
|---|---|---|
| | | Watkins, Margaret Watkins. (Smith, William) (Filed on 5/9/2025) (Entered: 05/09/2025) |
| 05/09/2025 | 477 | Ex Parte Application re 421 Pretrial Order *NO. 14 REGARDING APPOINTMENTS OF GUARDIANS AD LITEM* filed by D.S.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46, # 47 Exhibit 47, # 48 Exhibit 48, # 49 Exhibit 49, # 50 Exhibit 50, # 51 Exhibit 51, # 52 Exhibit 52, # 53 Exhibit 53, # 54 Exhibit 54, # 55 Exhibit 55, # 56 Exhibit 56, # 57 Exhibit 57, # 58 Exhibit 58, # 59 Exhibit 59, # 60 Exhibit 60, # 61 Exhibit 61, # 62 Exhibit 62, # 63 Exhibit 63, # 64 Exhibit 64, # 65 Exhibit 65, # 66 Exhibit 66, # 67 Exhibit 67, # 68 Exhibit 68, # 69 Exhibit 69, # 70 Exhibit 70, # 71 Exhibit 71, # 72 Exhibit 72, # 73 Exhibit 73, # 74 Exhibit 74, # 75 Exhibit 75, # 76 Exhibit 76, # 77 Exhibit 77, # 78 Exhibit 78, # 79 Exhibit 79, # 80 Exhibit 80, # 81 Exhibit 81, # 82 Exhibit 82, # 83 Exhibit 83, # 84 Exhibit 84, # 85 Exhibit 85, # 86 Exhibit 86, # 87 Exhibit 87, # 88 Exhibit 88, # 89 Exhibit 89, # 90 Exhibit 90, # 91 Exhibit 91, # 92 Exhibit 92, # 93 Exhibit 93, # 94 Exhibit 94, # 95 Exhibit 95, # 96 Exhibit 96, # 97 Exhibit 97, # 98 Exhibit 98, # 99 Exhibit 99, # 100 Exhibit 100, # 101 Exhibit 101, # 102 Exhibit 102, # 103 Exhibit 103, # 104 Exhibit 104, # 105 Exhibit 105, # 106 Exhibit 106, # 107 Exhibit 107, # 108 Exhibit 108, # 109 Exhibit 109, # 110 Exhibit 110, # 111 Exhibit 111, # 112 Exhibit 112, # 113 Exhibit 113, # 114 Exhibit A, # 115 Exhibit B, # 116 Exhibit C, # 117 Exhibit D, # 118 Exhibit E, # 119 Exhibit F, # 120 Exhibit G, # 121 Exhibit H, # 122 Exhibit I, # 123 Exhibit J, # 124 Exhibit K, # 125 Exhibit L, # 126 Exhibit M, # 127 Proposed Order)(Alarcon, Monique) (Filed on 5/9/2025) (Entered: 05/09/2025) |
| 05/13/2025 | 478 | Declaration of P. Andrew McStay, Jr. in Support of 474 Administrative Motion to File Under Seal filed byAmazon.com Services LLC. (Related document(s) 474 ) (McStay, P.) (Filed on 5/13/2025) (Entered: 05/13/2025) |
| 05/14/2025 | 479 | CLERK'S NOTICE SETTING ZOOM HEARING. At the request of the parties, the Further Case Management Conference set for 5/22/2025 at 9:00 a.m. will be held via a Zoom webinar. |

| | | |
|---|---|---|
| | | Court Appearances: Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. A list of names must be sent to the CRD at jsccrd@cand.uscourts.gov no later than noon on 5/21/2025. Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/jsc General Order 58. Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited. Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ahm, COURT STAFF) (Filed on 5/14/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/14/2025) |
| 05/16/2025 | 480 | Declaration of Brooke K. Kim in Support of 474 Administrative Motion to File Under Seal filed byNurture, LLC. (Related document(s) 474 ) (Kim, Brooke) (Filed on 5/16/2025) (Entered: 05/16/2025) |
| 05/19/2025 | 481 | ORDER by Judge Jacqueline Scott Corley denying 364 Administrative Motion to File Under Seal; denying 429 Administrative Motion to File Under Seal. (ahm, COURT STAFF) (Filed on 5/19/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/19/2025) |
| 05/19/2025 | 482 | SUMMONS Returned Executed by D.S.. Nestle USA, Inc. served on 5/6/2025, answer due 5/27/2025. (Wisner, Robert) (Filed on 5/19/2025) (Entered: 05/19/2025) |
| 05/19/2025 | 483 | SUMMONS Returned Executed by D.S.. Danone North America, PBC served on 5/5/2025, answer due 5/27/2025. (Wisner, Robert) (Filed on 5/19/2025) (Entered: 05/19/2025) |
| 05/20/2025 | 484 | STIPULATION WITH PROPOSED ORDER *REGARDING SCHEDULE AND PROCESS FOR MOVING TO DISMISS AND ANSWERING THE AMENDED MASTER COMPLAINT AND THE WATKINS FOURTH AMENDED PETITION* filed by Nurture, LLC. (Kim, Brooke) (Filed on 5/20/2025) Modified on 6/2/2025 (ahm, COURT STAFF). (Entered: 05/20/2025) |

| | | |
|---|---|---|
| 05/20/2025 | 485 | CASE MANAGEMENT STATEMENT *JOINT STATEMENT FOR MAY 22, 2025 CASE MANAGEMENT CONFERENCE* filed by Nurture, LLC. (Kim, Brooke) (Filed on 5/20/2025) (Entered: 05/20/2025) |
| 05/22/2025 | 486 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Further Case Management Conference held and recorded by Zoom videoconference on 5/22/2025.(Court Reporter: Marla Knox/Time 00:03) (Attachments: # 1 Attendance List)(ahm, COURT STAFF) (Date Filed: 5/22/2025) (Entered: 05/22/2025) |
| 05/22/2025 | 487 | PRETRIAL ORDER NO. 17. Signed by Judge Jacqueline Scott Corley on 5/22/2025. (ahm, COURT STAFF) (Filed on 5/22/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/22/2025) |
| 06/02/2025 | 488 | ORDER by Judge Jacqueline Scott Corley granting 477 Ex Parte Application REGARDING APPOINTMENTS OF GUARDIANS AD LITEM. (ahm, COURT STAFF) (Filed on 6/2/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 06/02/2025) |
| 06/05/2025 | 489 | ORDER by Judge Jacqueline Scott Corley denying 332 Administrative Motion to File Under Seal. (ahm, COURT STAFF) (Filed on 6/5/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 06/05/2025) |
| 06/06/2025 | 490 | ORDER by Judge Jacqueline Scott Corley denying 306 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed; denying 336 Administrative Motion to File Under Seal; denying 341 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed; denying 372 Administrative Motion to File Under Seal; denying 378 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed; denying 380 Administrative Motion to File Under Seal; denying 407 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed; denying 414 Administrative Motion to File Under Seal; denying 416 Administrative Motion to File Under Seal; denying 450 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed; denying 474 Administrative Motion to File Under Seal. (ahm, COURT STAFF) (Filed on 6/6/2025) |

| | | |
|---|---|---|
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 06/06/2025) |
| 06/06/2025 | 491 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number 8441171.) Filing fee previously paid on 06/06/2025 filed by A. M., D. M. P., Annie Pompa Morejon, C. V. P., Ruby Perez Chino, C. R. C., America Cardona, J. P., Jesenia Plascencia, Fanny Lopez, E. R., Adriana Munoz, Margaret Petneaud, D. P. U.. (Bishop, Heather) (Filed on 6/6/2025) (Entered: 06/06/2025) |
| 06/09/2025 | 492 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number 5757437.) Filing fee previously paid on 06/09/2025 filed by M. A., A. M., D. M. P., Annie Pompa Morejon, C. V. P., Ruby Perez Chino, C. R. C., America Cardona, J. P., Jesenia Plascencia, Fanny Lopez, E. R., Adriana Munoz, Margaret Petneaud, D. P. U.. (Watkins, Brittnie) (Filed on 6/9/2025) (Entered: 06/09/2025) |
| 06/09/2025 | 493 | Ex Parte MOTION to Appoint Guardian ad Litem *SECOND CONSOLIDATED APPLICATION PURSUANT TO PTO #14* filed by D.S.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Proposed Order)(Alarcon, Monique) (Filed on 6/9/2025) (Entered: 06/09/2025) |
| 06/13/2025 | 494 | Ex Parte MOTION to Appoint Guardian ad Litem filed by Matthew Mayfield. (Turner, Tracy) (Filed on 6/13/2025) (Entered: 06/13/2025) |
| 06/13/2025 | 495 | ORDER by Judge Jacqueline Scott Corley granting 491 Motion for Pro Hac Vice as to Heather Bishop. (ahm, COURT STAFF) (Filed on 6/13/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 06/13/2025) |
| 06/13/2025 | 496 | ORDER by Judge Jacqueline Scott Corley granting 492 Motion for Pro Hac Vice as to Brittnie Watkins. (ahm, COURT STAFF) (Filed on 6/13/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 06/13/2025) |
| 06/16/2025 | 497 | Administrative Motion to File Under Seal filed by Beech-Nut Nutrition Company. (Attachments: # 1 Declaration of Livia M. Kiser, # 2 Exhibit A - Exhibit 18 (Redacted), # 3 Exhibit B - Plaintiffs' Opposition (Redacted), # 4 Exhibit C - Exhibit 87 (Redacted), # 5 Declaration of Bryan A. Merryman, # 6 Exhibit A - (Redacted), # 7 Exhibit B - (Redacted), |

| | | |
|---|---|---|
| | | # 8 Exhibit C - (Redacted), # 9 Exhibit D - (Redacted), # 10 Exhibit E - (Redacted), # 11 Exhibit F - (Redacted), # 12 Declaration of Michelle Hart Yeary, # 13 Exhibit A - MTD Opposition (Redacted), # 14 Exhibit B - DeMuri Transcript (Ex 75) (Redacted), # 15 Proposed Order)(Kiser, Livia) (Filed on 6/16/2025) (Entered: 06/16/2025) |
| 06/23/2025 | 498 | Joint Discovery Letter Brief *Regarding Privilege Logs* filed by D.S.. (Attachments: # 1 Declaration OF MICHELLE HART YEARY IN OPPOSITION TO PLAINTIFFS DISCOVERY MOTION DISPUTE REGARDING PRIVILEGE LOGS, # 2 Exhibit A)(Wisner, Robert) (Filed on 6/23/2025) (Entered: 06/23/2025) |
| 06/24/2025 | 499 | JOINT CASE MANAGEMENT STATEMENT *for June 26, 2025 Case Management Conference* filed by VZ. (Wagstaff, Aimee) (Filed on 6/24/2025) (Entered: 06/24/2025) |
| 06/24/2025 | 500 | TRANSCRIPT ORDER for proceedings held on 05/22/2025 before Judge Jacqueline Scott Corley by Nurture, LLC, for Court Reporter Marla Knox. (Kim, Brooke) (Filed on 6/24/2025) (Entered: 06/24/2025) |
| 06/25/2025 | 501 | PROPOSED AGENDA FOR JUNE 26, 2025 FURTHER CMC. Signed by Judge Jacqueline Scott Corley on June 25, 2025. (ahm, COURT STAFF) (Filed on 6/25/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) Modified on 6/25/2025 (ahm, COURT STAFF). (Entered: 06/25/2025) |
| 06/26/2025 | 502 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Further Case Management Conference held on 6/26/2025. (Court Reporter: April Brott/Time 00:19) Further Case Management Conference set for 9/24/2025 is advanced to 9/18/2025 at 9:00 a.m. in San Francisco, Courtroom 08, 19th Floor. (Attachments: # 1 Attendance List) (ahm, COURT STAFF) (Date Filed: 6/26/2025) (Entered: 06/26/2025) |
| 06/26/2025 | 503 | ORDER by Judge Jacqueline Scott Corley granting 493 Motion to Appoint ad Litem. (ahm, COURT STAFF) (Filed on 6/26/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 06/26/2025) |
| 06/26/2025 | 504 | ORDER by Judge Jacqueline Scott Corley granting 494 Motion to Appoint Guardian ad Litem. (ahm, COURT STAFF) (Filed on 6/26/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) |

| | | |
|---|---|---|
| | | (Entered: 06/26/2025) |
| 06/26/2025 | 505 | MOTION to Dismiss *Plaintiffs Redhibition Claim Against a Seller With Knowledge* filed by Whole Foods Market Services, Inc.. Motion to Dismiss Hearing set for 9/18/2025 09:00 AM in San Francisco, Courtroom 08, 19th Floor. Responses due by 7/25/2025. Replies due by 8/14/2025. (Attachments: # 1 Memorandum in Support, # 2 Proposed Order)(Ballay, Brian) (Filed on 6/26/2025) Modified on 10/1/2025 (ahm, COURT STAFF). (Entered: 06/26/2025) |
| 06/26/2025 | 506 | RESPONSE re 487 Pretrial Order, by Amazon.com Services LLC. (McStay, P.) (Filed on 6/26/2025) (Entered: 06/26/2025) |
| 06/27/2025 | 507 | PRETRIAL ORDER NO. 18. Signed by Judge Jacqueline Scott Corley on June 27, 2025. (ahm, COURT STAFF) (Filed on 6/27/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 06/27/2025) |
| 06/27/2025 | 508 | NOTICE of Appearance filed by Brooke Killian Kim on behalf of Danone North America, PBC (Kim, Brooke) (Filed on 6/27/2025) (Entered: 06/27/2025) |
| 06/27/2025 | 509 | NOTICE of Appearance filed by Mary Gately on behalf of Danone North America, PBC (Gately, Mary) (Filed on 6/27/2025) (Entered: 06/27/2025) |
| 06/27/2025 | 510 | NOTICE of Appearance filed by Loren H. Brown on behalf of Danone North America, PBC (Brown, Loren) (Filed on 6/27/2025) (Entered: 06/27/2025) |
| 06/27/2025 | 511 | MOTION to Dismiss *Plaintiffs' First Amended Master Long-Form Complaint* filed by The Campbell's Company. Motion to Dismiss Hearing set for 9/18/2025 09:00 AM in San Francisco, Courtroom 08, 19th Floor. Responses due by 7/11/2025. Replies due by 7/18/2025. (Attachments: # 1 Appendix to Defendant's Motion to Dismiss Plaintiffs' First Amended Master Long-Form Complaint, # 2 Proposed Order Granting Defendant's Motion to Dismiss Plaintiffs' First Amended Master Long-Form Complaint)(Ryan, Peter) (Filed on 6/27/2025) (Entered: 06/27/2025) |
| 06/27/2025 | 512 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-20836384.) filed by Nestle USA, Inc.. (Attachments: # 1 Certificate of Good Standing)(Mason, Kyle) (Filed on 6/27/2025) (Entered: 06/27/2025) |
| 06/27/2025 | 513 | MOTION to Dismiss *for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) or, Alternatively, for Failure to State a Claim Pursuant to Rule 12(b)(6)* filed by Nestle USA, Inc.. Motion to Dismiss Hearing set for 9/18/2025 09:00 AM in San Francisco, Courtroom 08, 19th Floor. |

| | | |
|---|---|---|
| | | Responses due by 7/11/2025. Replies due by 7/18/2025. (Attachments: # 1 Declaration of Douglas J. Keaton, # 2 Proposed Order)(Merryman, Bryan) (Filed on 6/27/2025) (Entered: 06/27/2025) |
| 06/27/2025 | 514 | MOTION to Dismiss filed by Sun-Maid Growers of California. Motion to Dismiss Hearing set for 9/18/2025 09:00 AM. Responses due by 7/11/2025. Replies due by 7/18/2025. (Freiwald, Hope) (Filed on 6/27/2025) (Entered: 06/27/2025) |
| 06/27/2025 | 515 | NOTICE by Beech-Nut Nutrition Company *of Intent Not to Move to Dismiss or Strike Plaintiffs' Amended Master Compaint* (Kiser, Livia) (Filed on 6/27/2025) (Entered: 06/27/2025) |
| 06/27/2025 | 516 | NOTICE by Hain Celestial Group, Inc. *of Intent Not to Move to Dismiss or Strike Plaintiffs' Amended Master Complaint and Fourth Amended Petition in Watkins* (Imbroscio, Michael) (Filed on 6/27/2025) (Entered: 06/27/2025) |
| 06/27/2025 | 517 | NOTICE by Walmart Inc. *of Intent Not to Move to Dismiss or Strike Plaintiffs' Amended Master Compaint* (Kiser, Livia) (Filed on 6/27/2025) (Entered: 06/27/2025) |
| 06/27/2025 | 518 | NOTICE by Plum, PBC *of Intent Not to Move to Dismiss or Strike* (Freiwald, Hope) (Filed on 6/27/2025) (Entered: 06/27/2025) |
| 06/27/2025 | 519 | NOTICE by Gerber Products Company *of Intent Not to Move to Dismiss or Strike Plaintiffs' Amended Master Complaint* (Merryman, Bryan) (Filed on 6/27/2025) (Entered: 06/27/2025) |
| 06/27/2025 | 520 | NOTICE by Nurture, LLC *Defendant Nurture, LLCs Notice Under Pretrial Order No. 17 of Intent Not to Dismiss or Strike First Amended Master Long-Form Complaint, Statement of Affirmative Defenses, and Demand for Jury Trial* (Kim, Brooke) (Filed on 6/27/2025) (Entered: 06/27/2025) |
| 06/27/2025 | 521 | NOTICE by Neptune Wellness Solutions re 487 Pretrial Order, *(Statement Re Amended Master Complaint)* (Yoo, Thomas) (Filed on 6/27/2025) (Entered: 06/27/2025) |
| 06/27/2025 | 522 | NOTICE by Sprout Foods Inc. *of Intent Not to Move to Dismiss or Strike Plaintiffs Amended Master Complaint* (Erfle, Nancy) (Filed on 6/27/2025) (Entered: 06/27/2025) |
| 06/27/2025 | 523 | MOTION to Dismiss *Amended Master Complaint, and Memorandum of Points and Authorities* filed by Danone North America, PBC. Motion to Dismiss Hearing set for 9/18/2025 09:00 AM in San Francisco, Courtroom 08, 19th Floor. Responses due by 7/11/2025. Replies due by 7/18/2025. (Attachments: # 1 Proposed Order)(Kim, Brooke) (Filed on 6/27/2025) (Entered: 06/27/2025) |

| 07/02/2025 | 524 | TRANSCRIPT ORDER for proceedings held on 06/26/2025 before Judge Jacqueline Scott Corley by Nurture, LLC, for Court Reporter April Brott. (Kim, Brooke) (Filed on 7/2/2025) (Entered: 07/02/2025) |
|---|---|---|
| 07/05/2025 | 525 | Transcript of Proceedings held on May 22, 2025, before Judge Jacqueline S. Corley. Court Reporter, Marla F. Knox, RPR, CRR, RMR, telephone number (602) 391-6990/email marla_knox@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 500 Transcript Order ) Release of Transcript Restriction set for 10/3/2025. (Related documents(s) 500 ) (mfk, COURT STAFF) (Filed on 7/5/2025) (Entered: 07/05/2025) |
| 07/07/2025 | 526 | Ex Parte MOTION to Appoint Guardian ad Litem *Plaintiffs Third Consolidated Ex Parte Application For Appointments Of Guardians Ad Litem Pursuant To PTO #14* filed by A.A.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Proposed Order)(Alarcon, Monique) (Filed on 7/7/2025) (Entered: 07/07/2025) |
| 07/09/2025 | 527 | Proposed Order *Joint Proposed Schedule For The Deposition Of All General Cause Proceeding Experts* by Nurture, LLC. (Kim, Brooke) (Filed on 7/9/2025) (Entered: 07/09/2025) |
| 07/11/2025 | 528 | NOTICE of Appearance filed by Neelum Jane Wadhwani on behalf of Gerber Products Company (Wadhwani, Neelum) (Filed on 7/11/2025) (Entered: 07/11/2025) |
| 07/17/2025 | 529 | CLERK'S NOTICE SETTING ZOOM HEARING. The Further Case Management Conference set for 7/24/2025 at 9:00 a.m. before Judge Jacqueline Scott Corley will be held via a Zoom webinar. Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/jsc Civ LR 77-3(d). Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited. Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ahm, COURT STAFF) (Filed on 7/17/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) |

| | | |
|---|---|---|
| | | (Entered: 07/17/2025) |
| 07/17/2025 | 530 | ORDER by Judge Jacqueline Scott Corley granting 512 Motion for Pro Hac Vice as to Kyle Mason. (ahm, COURT STAFF) (Filed on 7/17/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 07/17/2025) |
| 07/18/2025 | 531 | NOTICE of Withdrawal filed by Nevin Wisnoski, no longer appearing on behalf of B.B. in this case (Wisnoski, Nevin) (Filed on 7/18/2025) (Entered: 07/18/2025) |
| 07/18/2025 | 532 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-20911505.) filed by Nurture, LLC. (Attachments: # 1 Exhibit 1)(Kelly, Brenna) (Filed on 7/18/2025) (Entered: 07/18/2025) |
| 07/18/2025 | 533 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-20911585.) filed by Nurture, LLC. (Attachments: # 1 Exhibit 1)(Pruitt, Lyn) (Filed on 7/18/2025) (Entered: 07/18/2025) |
| 07/18/2025 | 534 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-20911687.) filed by Nurture, LLC. (Attachments: # 1 Exhibit 1)(Grinder, Lauren) (Filed on 7/18/2025) (Entered: 07/18/2025) |
| 07/21/2025 | 535 | NOTICE of Appearance filed by Carmine R. Zarlenga, III on behalf of Nestle Enterprises S.A., Societe des Produits Nestle S.A. (Zarlenga, Carmine) (Filed on 7/21/2025) (Entered: 07/21/2025) |
| 07/21/2025 | 536 | NOTICE of Appearance filed by Oral Pottinger on behalf of Nestle Enterprises S.A., Societe des Produits Nestle S.A. (Pottinger, Oral) (Filed on 7/21/2025) (Entered: 07/21/2025) |
| 07/21/2025 | 537 | NOTICE of Appearance filed by Christina Luk on behalf of Nestle Enterprises S.A., Societe des Produits Nestle S.A. (Luk, Christina) (Filed on 7/21/2025) (Entered: 07/21/2025) |
| 07/21/2025 | 538 | Transcript of Proceedings held on June 26, 2025, before Judge Jacqueline S. Corley. Court Reporter/Transcriber April Wood Brott, telephone number 510-225-8350 april_brott@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 524 Transcript Order ) Release of Transcript Restriction set for 10/20/2025. (Related documents(s) 524 ) (Brott, April) (Filed on 7/21/2025) (Entered: 07/21/2025) |

| | | |
|---|---|---|
| 07/21/2025 | 539 | ORDER by Judge Jacqueline Scott Corley granting 532 Motion for Pro Hac Vice as to Brenna Kelly. (ahm, COURT STAFF) (Filed on 7/21/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 07/21/2025) |
| 07/21/2025 | 540 | ORDER by Judge Jacqueline Scott Corley granting 533 Motion for Pro Hac Vice as to Lyn Pruitt. (ahm, COURT STAFF) (Filed on 7/21/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 07/21/2025) |
| 07/21/2025 | 541 | ORDER by Judge Jacqueline Scott Corley granting 534 Motion for Pro Hac Vice as to Lauren Grinder. (ahm, COURT STAFF) (Filed on 7/21/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 07/21/2025) |
| 07/21/2025 | 542 | MOTION to Dismiss *Plaintiffs' First Amended Master Long-Form Complaint)* and Memorandum of Points and Authorities in Support Thereof filed by Societe des Produits Nestle S.A.. Motion to Dismiss Hearing set for 9/18/2025 09:00 AM in San Francisco, Courtroom 08, 19th Floor. Responses due by 8/4/2025. Replies due by 8/11/2025. (Attachments: # 1 Declaration of Silvan Jampen in Support, # 2 Proposed Order)(Zarlenga, Carmine) (Filed on 7/21/2025) Modified on 7/25/2025 (slh, COURT STAFF). (Entered: 07/21/2025) |
| 07/21/2025 | 543 | MOTION to Dismiss *Plaintiffs' First Amended Master Long-Form Complaint* and Memorandum of Points and Authorities in Support Thereof filed by Nestle Enterprises S.A.. Motion to Dismiss Hearing set for 9/18/2025 09:00 AM in San Francisco, Courtroom 08, 19th Floor. Responses due by 8/4/2025. Replies due by 8/11/2025. (Attachments: # 1 Declaration of Silvan Jampen in Support, # 2 Declaration of Colin Servais in Support, # 3 Proposed Order)(Zarlenga, Carmine) (Filed on 7/21/2025) Modified on 7/25/2025 (slh, COURT STAFF). (Entered: 07/21/2025) |
| 07/21/2025 | 544 | MOTION to Dismiss for Lack of Jurisdiction filed by Danone Nutricia Nederland BV. Motion Hearing set for 9/18/2025 09:00 AM in San Francisco, Courtroom 08, 19th Floor before Judge Jacqueline Scott Corley. Responses due by 8/20/2025. Replies due by 9/3/2025. (Attachments: # 1 Declaration of Lieve Degrauwe, # 2 Proposed Order)(Goodman, Adam) (Filed on 7/21/2025) (Entered: 07/21/2025) |

| 07/22/2025 | 545 | Correction of Opposition/Response or Reply Deadlines pertaining to 542 MOTION to Dismiss *Plaintiffs' First Amended Master Long-Form Complaint)*) (Reason: Correcting an error) filed bySociete des Produits Nestle S.A.. Responses due by 8/20/2025. Replies due by 9/3/2025. (Zarlenga, Carmine) (Filed on 7/22/2025) (Entered: 07/22/2025) |
|---|---|---|
| 07/22/2025 | 546 | Correction of Opposition/Response or Reply Deadlines pertaining to 543 MOTION to Dismiss *Plaintiffs' First Amended Master Long-Form Complaint* (Reason: Correcting an error) filed by Nestle Enterprises S.A.. Responses due by 8/20/2025. Replies due by 9/3/2025. (Zarlenga, Carmine) (Filed on 7/22/2025) Modified on 7/25/2025 (slh, COURT STAFF). (Entered: 07/22/2025) |
| 07/22/2025 | 547 | CASE MANAGEMENT STATEMENT *JOINT STATEMENT FOR JULY 24, 2025 CASE MANAGEMENT CONFERENCE* filed by Nurture, LLC. (Kim, Brooke) (Filed on 7/22/2025) (Entered: 07/22/2025) |
| 07/23/2025 | 548 | ORDER by Judge Jacqueline Scott Corley granting 526 Motion to Appoint Guardian ad Litem. (ahm, COURT STAFF) (Filed on 7/23/2025) |
|  |  | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 07/23/2025) |
| 07/24/2025 | 549 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-20930380.) filed by Nurture, LLC. (Attachments: # 1 Exhibit)(Whitney, Melissa) (Filed on 7/24/2025) (Entered: 07/24/2025) |
| 07/24/2025 | 550 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-20932379.) filed by Nurture, LLC. (Attachments: # 1 Exhibit 1)(Przymusinski, Lucas) (Filed on 7/24/2025) (Entered: 07/24/2025) |
| 07/24/2025 | 554 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Further Case Management Conference held by Zoom videoconference on 7/24/2025.(Court Reporter: April Brott) (Attachments: # 1 Attendance List)(ahm, COURT STAFF) (Date Filed: 7/24/2025) (Entered: 07/28/2025) |
| 07/25/2025 | 551 | OPPOSITION/RESPONSE (re 505 MOTION to Dismiss *Plaintiffs Redhibition Claim Against a Seller With Knowledge* ) filed byMargaret Watkins, James A Watkins. (Attachments: # 1 Declaration Of William Smith)(Smith, William) (Filed on 7/25/2025) (Entered: 07/25/2025) |
| 07/25/2025 | 552 | Administrative Motion to Consider Whether Another Party's Material Should Be Sealed filed by A.A.. (Attachments: # 1 Declaration, # 2 Proposed Order, # 3 Unredacted Version of Plaintiffs Omnibus |

| | | |
|---|---|---|
| | | Opposition To Defendants Motions To Dismiss Plaintiffs First Amended Master Long-Form Complaint, # 4 Unredacted Version of Exhibit 4, # 5 Unredacted Version of Exhibit 5, # 6 Unredacted Version of Exhibit 6, # 7 Unredacted Version of Exhibit 7, # 8 Redacted Version of Exhibit 8, # 9 Unredacted Version of Exhibit 9, # 10 Unredacted Version of Exhibit 10) Attachment 8 replaced per the Order at docket entry 598 . (Wisner, Robert) (Filed on 7/25/2025) (Attachment 8 replaced on 10/7/2025) (cjl, COURT STAFF). Modified on 10/7/2025 (cjl, COURT STAFF). (Entered: 07/25/2025) |
| 07/25/2025 | 553 | OPPOSITION/RESPONSE  (re 513 MOTION  to  Dismiss *for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) or, Alternatively, for Failure to State a Claim Pursuant to Rule 12(b)(6)*, 523 MOTION to Dismiss *Amended Master Complaint, and Memorandum of Points and Authorities*, 514 MOTION to Dismiss , 511 MOTION to Dismiss *Plaintiffs' First Amended Master Long-Form Complaint* ) filed by A.A.. (Attachments: # 1 Declaration, # 2 Ex. 1 - Georgia SOS Nestle USA, Inc., # 3 Ex. 2 - NQAC Terms and Conditions, # 4 Ex. 3 - Gerber Letter to Congress GERBER-MDL3101-0000001, # 5 Ex. 4 - Filed Under Seal, # 6 Ex. 5 - Filed Under Seal, # 7 Ex. 6 - Filed Under Seal, # 8 Ex. 7 - Filed Under Seal, # 9 Ex. 8 - Filed Under Seal, # 10 Ex. 9 - Filed Under Seal, # 11 Ex. 10 - Filed Under Seal)(Wisner, Robert) (Filed on 7/25/2025) (Entered: 07/25/2025) |
| 07/28/2025 | 555 | ORDER by Judge Jacqueline Scott Corley granting 549 Motion for Pro Hac Vice as to Melissa J. Whitney. (ahm, COURT STAFF) (Filed on 7/28/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 07/28/2025) |
| 07/28/2025 | 556 | ORDER by Judge Jacqueline Scott Corley granting 550 Motion for Pro Hac Vice as to Lucas Przymusinski. (ahm, COURT STAFF) (Filed on 7/28/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 07/28/2025) |
| 07/29/2025 | 557 | NOTICE of Appearance filed by Nicole M. Antoine on behalf of Hain Celestial Group, Inc. (Antoine, Nicole) (Filed on 7/29/2025) (Entered: 07/29/2025) |
| 07/29/2025 | 558 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number  BCANDC-20948515.) filed by Nurture, LLC. (Attachments: |

| | | |
|---|---|---|
| | | # 1 Exhibit 1)(Gismondi, Christopher) (Filed on 7/29/2025) (Entered: 07/29/2025) |
| 07/31/2025 | 559 | ORDER by Judge Jacqueline Scott Corley granting 558 Motion for Pro Hac Vice as to Christopher Gismondi. (ahm, COURT STAFF) (Filed on 7/31/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 07/31/2025) |
| 07/31/2025 | 560 | Consolidated Ex Parte MOTION for Appointments of Guardians ad Litem filed by A.A.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Proposed Order)(Alarcon, Monique) (Filed on 7/31/2025) Modified on 8/1/2025 (slh, COURT STAFF). (Entered: 07/31/2025) |
| 07/31/2025 | 561 | TRANSCRIPT ORDER for proceedings held on May 22, 2025 before Judge Jacqueline Scott Corley by A.A., for Court Reporter Marla Knox. (Wisner, Robert) (Filed on 7/31/2025) (Entered: 07/31/2025) |
| 07/31/2025 | 562 | TRANSCRIPT ORDER for proceedings held on June 26, 2025 before Judge Jacqueline Scott Corley by A.A., for Court Reporter April Brott. (Wisner, Robert) (Filed on 7/31/2025) (Entered: 07/31/2025) |
| 07/31/2025 | 563 | TRANSCRIPT ORDER for proceedings held on July 25, 2025 before Judge Jacqueline Scott Corley by A.A., for Court Reporter Kelly Shainline. (Wisner, Robert) (Filed on 7/31/2025) (Entered: 07/31/2025) |
| 07/31/2025 | 564 | TRANSCRIPT ORDER for proceedings held on 07/24/2025 before Judge Jacqueline Scott Corley by Nurture, LLC, for Court Reporter April Brott. (Kim, Brooke) (Filed on 7/31/2025) (Entered: 07/31/2025) |
| 08/04/2025 | 565 | Declaration of Bryan A. Merryman in Support of 552 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed filed byGerber Products Company. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Related document(s) 552 ) (Merryman, Bryan) (Filed on 8/4/2025) (Entered: 08/04/2025) |
| 08/07/2025 | 566 | NOTICE of Withdrawal filed by Katherine Unger Davis, no longer appearing on behalf of Plum, PBC in this case (Unger Davis, Katherine) (Filed on 8/7/2025) (Entered: 08/07/2025) |
| 08/12/2025 | 567 | NOTICE of Appearance filed by Ian Worthington Forgie on behalf of VZ (Forgie, Ian) (Filed on 8/12/2025) (Entered: 08/12/2025) |

| 08/14/2025 | 568 | REPLY (re 505 MOTION to Dismiss *Plaintiffs Redhibition Claim Against a Seller With Knowledge* ) filed byWhole Foods Market Services, Inc.. (Ballay, Brian) (Filed on 8/14/2025) (Entered: 08/14/2025) |
|---|---|---|
| 08/14/2025 | 569 | REPLY (re 514 MOTION to Dismiss ) filed bySun-Maid Growers of California. (Freiwald, Hope) (Filed on 8/14/2025) (Entered: 08/14/2025) |
| 08/14/2025 | 570 | Administrative Motion to File Under Seal filed by The Campbell's Company. (Attachments: # 1 Proposed Order Granting Defendant The Campbell's Company's Administrative Motion to File Under Seal, # 2 Unredacted Version of Reply Brief ISO Its MTD Plaintiffs' First Amended Master Long-Form Complaint)(Ryan, Peter) (Filed on 8/14/2025) (Entered: 08/14/2025) |
| 08/14/2025 | 571 | REPLY (re 511 MOTION to Dismiss *Plaintiffs' First Amended Master Long-Form Complaint* ) filed byThe Campbell's Company. (Ryan, Peter) (Filed on 8/14/2025) (Entered: 08/14/2025) |
| 08/14/2025 | 572 | REPLY (re 523 MOTION to Dismiss *Amended Master Complaint, and Memorandum of Points and Authorities* ) filed byDanone North America, PBC. (Kim, Brooke) (Filed on 8/14/2025) (Entered: 08/14/2025) |
| 08/14/2025 | 573 | REPLY (re 513 MOTION to Dismiss *for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) or, Alternatively, for Failure to State a Claim Pursuant to Rule 12(b)(6)* ) filed byNestle USA, Inc.. (Attachments: # 1 Declaration of Douglas J. Keaton)(Merryman, Bryan) (Filed on 8/14/2025) (Entered: 08/14/2025) |
| 08/19/2025 | 574 | ORDER by Judge Jacqueline Scott Corley granting 560 Motion to Appoint Guardian ad Litem. (ahm, COURT STAFF) (Filed on 8/19/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 08/19/2025) |
| 08/19/2025 | 575 | Administrative Motion to File Under Seal filed by A.A.. (Attachments: # 1 Declaration, # 2 Proposed Order, # 3 Exhibit 8)(Watkins, Diane) (Filed on 8/19/2025) (Entered: 08/19/2025) |
| 08/19/2025 | 576 | MOTION to Remove Incorrectly Filed Document *PLAINTIFFS MOTION TO SUBSTITUTE FILED DOCUMENT, DOCKET NO. 552-08* filed by A.A.. (Attachments: # 1 Proposed Order)(Watkins, Diane) (Filed on 8/19/2025) (Entered: 08/19/2025) |
| 08/20/2025 | 577 | NOTICE of Voluntary Dismissal *WITHOUT PREJUDICE OF DANONE NUTRICIA NEDERLAND B.V.* by A.A. (Wisner, Robert) (Filed on 8/20/2025) (Entered: 08/20/2025) |

| 08/20/2025 | 578 | NOTICE of Appearance filed by Brooke Kopel on behalf of Beech-Nut Nutrition Company (Kopel, Brooke) (Filed on 8/20/2025) (Entered: 08/20/2025) |
|---|---|---|
| 08/20/2025 | 579 | NOTICE of Appearance filed by Brooke Kopel on behalf of Walmart Inc. (Kopel, Brooke) (Filed on 8/20/2025) (Entered: 08/20/2025) |
| 08/20/2025 | 580 | Administrative Motion to File Under Seal *ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTYS MATERIAL SHOULD BE FILED UNDER SEAL* filed by A.A.. (Attachments: # 1 Declaration, # 2 Proposed Order, # 3 PLAINTIFFS OPPOSITION TO FOREIGN NESTLE DEFENDANTS MOTIONS TO DISMISS PLAINTIFFS FIRST AMENDED MASTER LONG-FORM COMPLAINT, # 4 Exhibit 1, # 5 Exhibit 2, # 6 Exhibit 3, # 7 Exhibit 4, # 8 Exhibit 5, # 9 Exhibit 6, # 10 Exhibit 7, # 11 Exhibit 8, # 12 Exhibit 9, # 13 Exhibit 10, # 14 Exhibit 11, # 15 Exhibit 12, # 16 Exhibit 13, # 17 Exhibit 14)(Wisner, Robert) (Filed on 8/20/2025) (Entered: 08/20/2025) |
| 08/20/2025 | 581 | OPPOSITION/RESPONSE (re 542 MOTION to Dismiss *Plaintiffs' First Amended Master Long-Form Complaint)*, 543 MOTION to Dismiss *Plaintiffs' First Amended Master Long-Form Complaint* ) *Plaintiffs Opposition To Foreign Nestle Defendants Motions To Dismiss Plaintiffs First Amended Master Longform Complaint: 1) Defendant Societe Des Produits Nestle S.A.S Motion to Dismiss (Dkt. NO. 542) 2) Defendant Nestle Enterprises S.A.S Motion to Dismiss (Dkt. NO. 543) [REDACTED PUBLIC VERSION]* filed by A.A.. (Attachments: # 1 Declaration of R. Brent Wisner In Support Of Plaintiffs Opposition To Foreign Nestle Defendants Motions To Dismiss Plaintiffs First Amended Master Long-Form Complaint, # 2 Exhibit 1 [Public Redacted Version], # 3 Exhibit 2 [Public Redacted Version], # 4 Exhibit 3 [Public Redacted Version], # 5 Exhibit 4 [Public Redacted Version], # 6 Exhibit 5 [Public Redacted Version], # 7 Exhibit 6 [Public Redacted Version], # 8 Exhibit 7 [Public Redacted Version], # 9 Exhibit 8 [Public Redacted Version], # 10 Exhibit 9 [Public Redacted Version], # 11 Exhibit 10 [Public Redacted Version], # 12 Exhibit 11 [Public Redacted Version], # 13 Exhibit 12 [Public Redacted Version], # 14 Exhibit 13 [Public Redacted Version], # 15 Exhibit 14 [Public Redacted Version], # 16 Exhibit 15)(Wisner, Robert) (Filed on 8/20/2025) (Entered: 08/20/2025) |
| 08/21/2025 | 582 | CLERK'S NOTICE SETTING ZOOM HEARING. The Further Case Management Conference set for 8/28/2025 at 9:00 a.m. before Judge Jacqueline Scott Corley will be held via a Zoom webinar.<br>Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/jsc<br>Civ LR 77-3(d). Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, |

| | | |
|---|---|---|
| | | recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited. Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ahm, COURT STAFF) (Filed on 8/21/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 08/21/2025) |
| 08/22/2025 | 583 | Joint Discovery Letter Brief *Re: Discovery Dispute over Two Document Requests Issued to Defense Expert Dr. Stephan Sanders* filed by A.A.. (Wisner, Robert) (Filed on 8/22/2025) Modified on 9/17/2025 (ahm, COURT STAFF). (Entered: 08/22/2025) |
| 08/25/2025 | 584 | Transcript of Proceedings held on July 24, 2025, before Judge Jacqueline S. Corley. Court Reporter/Transcriber April Wood Brott, telephone number 510-225-8350 april_brott@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 564 Transcript Order ) Release of Transcript Restriction set for 11/24/2025. (Related documents(s) 564 ) (Brott, April) (Filed on 8/25/2025) (Entered: 08/25/2025) |
| 08/26/2025 | 585 | JOINT CASE MANAGEMENT STATEMENT *for August 28, 2025 Case Management Conference* filed by VZ. (Wagstaff, Aimee) (Filed on 8/26/2025) (Entered: 08/26/2025) |
| 08/27/2025 | 586 | PROPOSED AGENDA FOR AUGUST 28, 2025 FURTHER CMC. Signed by Judge Jacqueline Scott Corley on 8/27/2025. (ahm, COURT STAFF) (Filed on 8/27/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 08/27/2025) |
| 08/27/2025 | 587 | Declaration of Bryan A. Merryman in Support of 580 Administrative Motion to File Under Seal *ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTYS MATERIAL SHOULD BE FILED UNDER SEAL* filed byGerber Products Company. (Attachments: # 1 Exhibit A)(Related document(s) 580 ) (Merryman, Bryan) (Filed on 8/27/2025) (Entered: 08/27/2025) |

| | | |
|---|---|---|
| 08/28/2025 | 588 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-21063321.) Filing fee previously paid on 8/28/2025 filed by A.T.. (Attachments: # 1 Exhibit Certificate of Good Standing)(Dolman, Matthew) (Filed on 8/28/2025) (Entered: 08/28/2025) |
| 08/28/2025 | 589 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Further Case Management Conference held and recorded by Zoom videoconference on 8/28/2025. (Court Reporter: Hilda Lopez) (ahm, COURT STAFF) (Date Filed: 8/28/2025) (Entered: 08/28/2025) |
| 09/03/2025 | 590 | NOTICE of Appearance filed by Renata Bloom on behalf of Sprout Foods Inc. (Bloom, Renata) (Filed on 9/3/2025) (Entered: 09/03/2025) |
| 09/03/2025 | 591 | TRANSCRIPT ORDER for proceedings held on August 28, 2025 before Judge Jacqueline Scott Corley by VZ, for Court Reporter Hilda Lopez. (Wagstaff, Aimee) (Filed on 9/3/2025) (Entered: 09/03/2025) |
| 09/03/2025 | 592 | TRANSCRIPT ORDER for proceedings held on 08/28/2025 before Judge Jacqueline Scott Corley by Nurture, LLC, for Court Reporter Hilda Lopez. (Kim, Brooke) (Filed on 9/3/2025) (Entered: 09/03/2025) |
| 09/03/2025 | 593 | REPLY in Support (re 542 MOTION to Dismiss *Plaintiffs' First Amended Master Long-Form Complaint)*) filed by Societe des Produits Nestle S.A.. (Zarlenga, Carmine) (Filed on 9/3/2025) Modified on 9/8/2025 (slh, COURT STAFF). (Entered: 09/03/2025) |
| 09/03/2025 | 594 | REPLY in Support (re 543 MOTION to Dismiss *Plaintiffs' First Amended Master Long-Form Complaint*) filed by Nestle Enterprises S.A.. (Zarlenga, Carmine) (Filed on 9/3/2025) Modified on 9/8/2025 (slh, COURT STAFF). (Entered: 09/03/2025) |
| 09/08/2025 | 595 | Transcript of Proceedings held on 08/28/25, before Judge Jacqueline S. Corley. Court Reporter/Transcriber Hilda E. Lopez, telephone number 602-274-3376. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 592 Transcript Order, 591 Transcript Order ) Release of Transcript Restriction set for 12/8/2025. (Related documents(s) 592 , 591 ) (Lopez, Hilda) (Filed on 9/8/2025) (Entered: 09/08/2025) |
| 09/12/2025 | 596 | NOTICE of Withdrawal filed by Melissa Jean Whitney, no longer appearing on behalf of Nurture, LLC in this case (Whitney, Melissa) (Filed on 9/12/2025) (Entered: 09/12/2025) |

| | | |
|---|---|---|
| 09/12/2025 | 597 | ORDER by Judge Jacqueline Scott Corley granting 588 Motion for Pro Hac Vice as to Matthew Dolman. (ahm, COURT STAFF) (Filed on 9/12/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 09/12/2025) |
| 09/16/2025 | 598 | ORDER by Judge Jacqueline Scott Corley granting 576 Motion to Remove Incorrectly Filed Document 552-08. (ahm, COURT STAFF) (Filed on 9/16/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 09/16/2025) |
| 09/16/2025 | 599 | JOINT CASE MANAGEMENT STATEMENT *for September 18, 2025 Case Management Conference* filed by VZ. (Wagstaff, Aimee) (Filed on 9/16/2025) (Entered: 09/16/2025) |
| 09/18/2025 | 600 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Motion Hearing on ECF 505 , 511 , 513 , 514 , 523 , 542 , 543 , and 544 )and Further Case Management Conference held on 9/18/2025. (Court Reporter: Stephen Franklin/Time 1:07) (Attachments: # 1 Attendance List) (ahm, COURT STAFF) (Date Filed: 9/18/2025) (Entered: 09/18/2025) |
| 09/19/2025 | 601 | MOTION to Appoint Guardian ad Litem *Plaintiffs September 19, 2025 Consolidated Ex Parte Application For Appointments Of Guardians Ad Litem* filed by A.A.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit, # 11 Exhibit, # 12 Proposed Order)(Alarcon, Monique) (Filed on 9/19/2025) (Entered: 09/19/2025) |
| 09/19/2025 | 602 | TRANSCRIPT ORDER for proceedings held on 9/18/2025 before Judge Jacqueline Scott Corley by Gerber Products Company, for Court Reporter Stephen Franklin. (Merryman, Bryan) (Filed on 9/19/2025) (Entered: 09/19/2025) |
| 09/22/2025 | 603 | TRANSCRIPT ORDER for proceedings held on 09/18/2025 before Judge Jacqueline Scott Corley by Nurture, LLC, for Court Reporter Stephen Franklin. (Kim, Brooke) (Filed on 9/22/2025) (Entered: 09/22/2025) |
| 09/22/2025 | 604 | TRANSCRIPT ORDER for proceedings held on 09/18/2025 before Judge Jacqueline Scott Corley by Campbell Soup Company, for Court Reporter Stephen Franklin. (Ryan, Peter) (Filed on 9/22/2025) (Entered: 09/22/2025) |

| 09/23/2025 | 605 | Transcript of Proceedings held on 09/18/2025, before Judge Jacqueline Scott Corley. Court Reporter/Transcriber Stephen W. Franklin, telephone number (561)313-8439. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 602 Transcript Order ) Release of Transcript Restriction set for 12/22/2025. (Related documents(s) 602 ) (Franklin, Stephen) (Filed on 9/23/2025) (Entered: 09/23/2025) |
|---|---|---|
| 09/23/2025 | 606 | Declaration of Bryan A. Merryman in Support of 575 Administrative Motion to File Under Seal , 598 Order on Motion to Remove Incorrectly Filed Document, filed byGerber Products Company. (Related document(s) 575 , 598 ) (Merryman, Bryan) (Filed on 9/23/2025) (Entered: 09/23/2025) |
| 09/24/2025 | 607 | TRANSCRIPT ORDER for proceedings held on 9/18/2025 before Judge Jacqueline Scott Corley by A.A., for Court Reporter Stephen Franklin. (Wisner, Robert) (Filed on 9/24/2025) (Entered: 09/24/2025) |
| 09/24/2025 | 608 | TRANSCRIPT ORDER for proceedings held on September 18, 2025 before Judge Jacqueline Scott Corley by Nestle Enterprises S.A., Societe des Produits Nestle S.A., for Court Reporter Stephen Franklin. (Luk, Christina) (Filed on 9/24/2025) (Entered: 09/24/2025) |
| 09/25/2025 | 609 | Supplemental Brief re 513 MOTION to Dismiss *for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) or, Alternatively, for Failure to State a Claim Pursuant to Rule 12(b)(6)* filed byNestle USA, Inc.. (Attachments: # 1 Request for Judicial Notice)(Related document(s) 513 ) (Merryman, Bryan) (Filed on 9/25/2025) (Entered: 09/25/2025) |
| 09/26/2025 | 610 | NOTICE by Beech-Nut Nutrition Company, Walmart Inc. *Notice Of Motion And Motion To Exclude Plaintiffs General Causation Experts* (Kiser, Livia) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 611 | MOTION in Limine *[Background Brief In Support Of Their Motion To Exclude Plaintiffs General Causation Experts]* filed by Beech-Nut Nutrition Company, Walmart Inc.. Motion Hearing set for 12/8/2025 09:00 AM in San Francisco, Courtroom 08, 19th Floor before Judge Jacqueline Scott Corley. Responses due by 10/10/2025. Replies due by 10/17/2025. (Attachments: # 1 Declaration of Liva M. Kiser, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, |

| | | |
|---|---|---|
| | | # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25, # 27 Exhibit 26, # 28 Exhibit 27, # 29 Exhibit 28, # 30 Exhibit 29, # 31 Exhibit 30, # 32 Exhibit 31, # 33 Exhibit 32, # 34 Exhibit 33, # 35 Exhibit 34, # 36 Exhibit 35, # 37 Exhibit 36, # 38 Exhibit 37, # 39 Exhibit 38, # 40 Exhibit 39, # 41 Exhibit 40, # 42 Exhibit 41, # 43 Exhibit 42, # 44 Exhibit 43, # 45 Exhibit 44, # 46 Exhibit 45, # 47 Exhibit 46, # 48 Exhibit 47, # 49 Exhibit 48, **Locked Per Filers Request # 50 Exhibit 49,**Removed Per Order 650 ** # 51 Exhibit 50,**Removed Per Order 650 ** # 52 Exhibit 51, # 53 Exhibit 52, # 54 Exhibit 53, # 55 Exhibit 54, # 56 Exhibit 55, # 57 Exhibit 56, # 58 Exhibit 57, # 59 Exhibit 58, # 60 Exhibit 59, # 61 Exhibit 60, # 62 Exhibit 61, # 63 Exhibit 62, # 64 Exhibit 63, # 65 Exhibit 64, # 66 Exhibit 65, # 67 Exhibit 66, # 68 Exhibit 67, # 69 Exhibit 68, # 70 Exhibit 69, # 71 Exhibit 70, # 72 Exhibit 71, # 73 Exhibit 72, # 74 Exhibit 73, # 75 Exhibit 74, # 76 Exhibit 75, # 77 Exhibit 76, # 78 Exhibit 77, # 79 Exhibit 78, # 80 Exhibit 79, # 81 Exhibit 80, # 82 Exhibit 81, # 83 Exhibit 82, # 84 Exhibit 83, # 85 Exhibit 84, # 86 Exhibit 85, # 87 Exhibit 86, # 88 Exhibit 87, # 89 Exhibit 88, # 90 Exhibit 89, # 91 Exhibit 90, # 92 Exhibit 91, # 93 Exhibit 92, # 94 Exhibit 93, # 95 Exhibit 94, # 96 Exhibit 95, # 97 Exhibit 96, # 98 Exhibit 97, # 99 Proposed Order)(Kiser, Livia) (Filed on 9/26/2025) Modified on 10/31/2025 (kab, COURT STAFF). (Attachment 50 replaced on 11/6/2025) (kab, COURT STAFF). (Attachment 51 replaced on 11/6/2025) (kab, COURT STAFF). Modified on 11/6/2025 (kab, COURT STAFF). (Entered: 09/26/2025) |
| 09/26/2025 | 612 | MOTION in Limine *[BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPOSURE EXPERTS RACHAEL JONES AND PRISCILLA BARR]* filed by Gerber Products Company. Motion Hearing set for 12/8/2025 09:00 AM in San Francisco, Courtroom 08, 19th Floor before Judge Jacqueline Scott Corley. Responses due by 10/24/2025. Replies due by 11/7/2025. (Wadhwani, Neelum) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 613 | Administrative Motion to File Under Seal filed by A.A.. (Attachments: # 1 Declaration, # 2 Proposed Order, # 3 PLAINTIFFS NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN TESTIMONY FROM DEFENDANTS EXPERT WITNESSES UNDER FRCP 26 & 37 AND FRE 702 (UNREDACTED COPY), # 4 Exhibit 1 [UNREDACTED], # 5 Exhibit 3 [UNREDACTED], # 6 Exhibit 5 [UNREDACTED], # 7 Exhibit 7 [UNREDACTED], # 8 Exhibit 9 [UNREDACTED], # 9 Exhibit 10 [UNREDACTED], # 10 Exhibit 12 [UNREDACTED], # 11 Exhibit 14 [UNREDACTED], # 12 Exhibit 16 [UNREDACTED], # 13 Exhibit 17 [UNREDACTED], # 14 Exhibit 35 |

| | | |
|---|---|---|
| | | [UNREDACTED])(Wisner, Robert) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 614 | MOTION in Limine *To Exclude Plaintiffscausation/ Epidemiology Experts (Brief 3)* filed by Nurture, LLC. Motion Hearing set for 12/8/2025 09:00 AM in San Francisco, Courtroom 08, 19th Floor before Judge Jacqueline Scott Corley. Responses due by 10/10/2025. Replies due by 10/17/2025. (Kim, Brooke) (Filed on 9/26/2025) (Entered: 09/26/2025) |
| 09/26/2025 | 615 | PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN TESTIMONY FROM DEFENDANTS EXPERT WITNESSES UNDER FRCP 26 & 37 AND FRE 702 (Attachments: # 1 Declaration, # 2 Proposed Order)(Wisner, Robert) (Filed on 9/26/2025) Modified on 12/11/2025 (ahm, COURT STAFF). (Entered: 09/26/2025) |
| 09/26/2025 | 616 | PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE DR. CAROLYN SCRAFFORD AND DR. ROBERT GIBBONS UNDER FRCP 26 & 37 AND FRE 702 (Attachments: # 1 Declaration, # 2 Proposed Order)(Wisner, Robert) (Filed on 9/26/2025) Modified on 12/11/2025 (ahm, COURT STAFF). (Entered: 09/26/2025) |
| 09/27/2025 | 617 | Administrative Motion to File Under Seal filed by A.A.. (Attachments: # 1 Declaration, # 2 Proposed Order, # 3 PLAINTIFFS NOTICE OF MOTION AND MOTION TO EXCLUDE DR. CAROLYN SCRAFFORD AND DR. ROBERT GIBBONS UNDER FRCP 26 & 37 AND FRE 702 (UNREDACTED COPY), # 4 Exhibit 1 UNREDACTED, # 5 Ex. 2 UNREDACTED, # 6 Ex. 5 UNREDACTED, # 7 Ex. 9 UNREDACTED, # 8 Ex. 11 UNREDACTED, # 9 Ex. 19 UNREDACTED, # 10 Ex. 21 UNREDACTED, # 11 Ex. 28 UNREDACTED, # 12 Ex. 29 UNREDACTED)(Wisner, Robert) (Filed on 9/27/2025) (Entered: 09/27/2025) |
| 09/27/2025 | 618 | EXHIBITS re 616 Notice (Other) *PLAINTIFFS NOTICE OF MOTION AND MOTION TO EXCLUDE DR. CAROLYN SCRAFFORD AND DR. ROBERT GIBBONS UNDER FRCP 26 & 37 AND FRE 702* filed byA.A.. (Attachments: # 1 Exhibit 2, # 2 Exhibit 3, # 3 Exhibit 4, # 4 Exhibit 5, # 5 Exhibit 6, # 6 Exhibit 7, # 7 Exhibit 8, # 8 Exhibit 9, # 9 Exhibit 10, # 10 Exhibit 11, # 11 Exhibit 12, # 12 Exhibit 13, # 13 Exhibit 14, # 14 Exhibit 15, # 15 Exhibit 16, # 16 Exhibit 17, # 17 Exhibit 18, # 18 Exhibit 19, # 19 Exhibit 20, # 20 Exhibit 21, # 21 Exhibit 22, # 22 Exhibit 23, # 23 Exhibit 24, # 24 Exhibit 25, # 25 Exhibit 26, # 26 Exhibit 27, # 27 Exhibit 28, # 28 Exhibit 29, # 29 Exhibit 30)(Related document(s) 616 ) (Wisner, Robert) (Filed on 9/27/2025) (Entered: 09/27/2025) |
| 09/27/2025 | 619 | EXHIBITS re 615 Notice (Other) *PLAINTIFFS NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN TESTIMONY FROM* |

| | | |
|---|---|---|
| | | *DEFENDANTS EXPERT WITNESSES UNDER FRCP 26 & 37 AND FRE 702* filed byA.A.. (Attachments: # 1 Exhibit 2, # 2 Exhibit 3, # 3 Exhibit 4, # 4 Exhibit 5, # 5 Exhibit 6, # 6 Exhibit 7, # 7 Exhibit 8, # 8 Exhibit 9, # 9 Exhibit 10, # 10 Exhibit 11, # 11 Exhibit 12, # 12 Exhibit 13, # 13 Exhibit 14, # 14 Exhibit 15, # 15 Exhibit 16, # 16 Exhibit 17, # 17 Exhibit 18, # 18 Exhibit 19, # 19 Exhibit 20, # 20 Exhibit 21, # 21 Exhibit 22, # 22 Exhibit 23, # 23 Exhibit 24, # 24 Exhibit 25, # 25 Exhibit 26, # 26 Exhibit 27, # 27 Exhibit 28, # 28 Exhibit 29, # 29 Exhibit 30, # 30 Exhibit 31, # 31 Exhibit 32, # 32 Exhibit 33, # 33 Exhibit 34, # 34 Exhibit 35, # 35 Exhibit 36, # 36 Exhibit 37)(Related document(s) 615 ) (Wisner, Robert) (Filed on 9/27/2025) (Entered: 09/27/2025) |
| 09/30/2025 | 620 | ORDER by Judge Jacqueline Scott Corley granting 601 Motion to Appoint Guardian ad Litem. (ahm, COURT STAFF) (Filed on 9/30/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 09/30/2025) |
| 10/01/2025 | 621 | ORDER RE RETAILER DEFENDANTS' MOTIONS TO DISMISS THE THIRD AMENDED PETITION. Signed by Judge Jacqueline Scott Corley on 10/1/2025. This Order is the public redacted version of docket number 457 . (ahm, COURT STAFF) (Filed on 10/1/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 10/01/2025) |
| 10/01/2025 | 622 | ORDER RE DEFENDANTS' MOTIONS TO DISMISS. Signed by Judge Jacqueline Scott Corley on 10/1/2025. (ahm, COURT STAFF) (Filed on 10/1/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 10/01/2025) |
| 10/01/2025 | 623 | ORDER RE DEFENDANT WHOLE FOODS' MOTION TO DISMISS THE FOURTH AMENDED PETITION. Signed by Judge Jacqueline Scott Corley on 10/1/2025. (ahm, COURT STAFF) (Filed on 10/1/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 10/01/2025) |

| | | |
|---|---|---|
| 10/02/2025 | 624 | ORDER RE: SEALING OF THE COURT'S ORDERS ON DEFENDANTS' RULE 12 MOTIONS. Signed by Judge Jacqueline Scott Corley on 10/2/2025. (ahm, COURT STAFF) (Filed on 10/2/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 10/02/2025) |
| 10/02/2025 | 626 | Supplemental Brief re 553 Opposition/Response to Motion,,, filed byVZ. (Related document(s) 553 ) (Wagstaff, Aimee) (Filed on 10/2/2025) (Entered: 10/02/2025) |
| 10/03/2025 | 627 | Declaration of Brooke Kim in Support of 613 Administrative Motion to File Under Seal filed byNurture, LLC. (Related document(s) 613 ) (Kim, Brooke) (Filed on 10/3/2025) (Entered: 10/03/2025) |
| 10/03/2025 | 628 | Declaration in Support of 617 Administrative Motion to File Under Seal filed byNurture, LLC. (Related document(s) 617 ) (Kim, Brooke) (Filed on 10/3/2025) (Entered: 10/03/2025) |
| 10/07/2025 | 629 | CONDITIONAL TRANSFER ORDER (CTO-5). Signed by MDL Panel on 10/07/2025 (kab, COURT STAFF) (Filed on 10/7/2025) (Entered: 10/07/2025) |
| 10/07/2025 | 630 | RESPONSE re 627 Declaration in Support, 628 Declaration in Support *Plaintiffs Opposition to the Declarations of Brooke Killian Kim in Support of Continued Sealing of Defendants Confidential Materials* by VZ. (Wagstaff, Aimee) (Filed on 10/7/2025) (Entered: 10/07/2025) |
| 10/09/2025 | 631 | Supplemental Brief re 609 Supplemental Brief, *Supplemental Reply Brief In Support of Motion to Dismiss* filed byNestle USA, Inc.. (Related document(s) 609 ) (Merryman, Bryan) (Filed on 10/9/2025) (Entered: 10/09/2025) |
| 10/13/2025 | 632 | NOTICE by The Campbell's Company *of General Denial and Statement of Affirmative Defenses under PTO No. 17* (Ryan, Peter) (Filed on 10/13/2025) (Entered: 10/13/2025) |
| 10/13/2025 | 633 | MOTION for Extension of Time to File *Motion for Leave to Amend* filed by A.A.. (Attachments: # 1 Proposed Order)(Wisner, Robert) (Filed on 10/13/2025) (Entered: 10/13/2025) |
| 10/16/2025 | 634 | OPPOSITION/RESPONSE (re 633 MOTION for Extension of Time to File *Motion for Leave to Amend* ) filed byNestle Enterprises S.A., Societe des Produits Nestle S.A.. (Attachments: # 1 Declaration of Carmine R. Zarlenga)(Zarlenga, Carmine) (Filed on 10/16/2025) (Entered: 10/16/2025) |

| 10/16/2025 | 635 | ORDER by Judge Jacqueline Scott Corley denying 633 Plaintiffs' request for a 30-day extension of the deadline to file a motion for leave to amend the Master Complaint is DENIED. However, since Plaintiffs' motion would be due today, the Court extends the deadline to Tuesday, October 21, 2025.<br>(This is a text-only entry generated by the court. There is no document associated with this entry.)<br>(ahm, COURT STAFF) (Filed on 10/16/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>(Entered: 10/16/2025) |
| 10/21/2025 | 636 | MOTION for Leave to File *Second Amended Master Complaint* filed by VZ. (Attachments: # 1 Declaration of William L. Smith, # 2 Exhibit 1 - Proposed Second Amended Complaint, # 3 Exhibit 2 - Proposed Second Amended Complaint (Redline), # 4 Proposed Order)(Wagstaff, Aimee) (Filed on 10/21/2025) (Entered: 10/21/2025) |
| 10/24/2025 | 637 | RESPONSE re 615 Notice (Other) *Plaintiffs' Motion to Exclude Certain Testimony from Defendants' Expert Witnesses Under FRCP 26 and FRE 702* by Gerber Products Company. (Attachments: # 1 Declaration of Neelum J. Wadhwani, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11)(Wadhwani, Neelum) (Filed on 10/24/2025) (Entered: 10/24/2025) |
| 10/24/2025 | 638 | RESPONSE *Response Defendants Opposition to Motion to Exclude Dr. Carolyn Scrafford and Dr. Robert Gibbons Under FRCP 26 & 37 AND FRE 702* by Nurture, LLC. (Attachments: # 1 Declaration of Brooke Killian Kim in Support of Defendants Opposition to Plaintiffs Motion to Exclude Dr. Carolyn Scrafford and Dr. Robert Gibbons, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14)(Kim, Brooke) (Filed on 10/24/2025) Modified on 10/29/2025 (slh, COURT STAFF). (Entered: 10/24/2025) |
| 10/24/2025 | 639 | Administrative Motion to File Under Seal filed by Beech-Nut Nutrition Company. (Attachments: # 1 Declaration of Livia Kiser, # 2 Exhibit A - (BEECH-BF-MDL-0000016277 ) UNREDACTED, # 3 Exhibit B (Carrot tab excerpt from BEECH-BF-MDL-0000049618) UNREDACTED, # 4 Declaration of Bryan A. Merryman, # 5 Exhibit to Bryan A. Merryman Declaration, # 6 Proposed Order)(Kiser, Livia) (Filed on 10/24/2025) (Entered: 10/24/2025) |

| 10/24/2025 | 640 | EXHIBITS re 639 Administrative Motion to File Under Seal filed byNurture, LLC. (Related document(s) 639 ) (Kim, Brooke) (Filed on 10/24/2025) (Entered: 10/24/2025) |
|---|---|---|
| 10/24/2025 | 641 | Administrative Motion to Consider Whether Another Party's Material Should Be Sealed filed by VZ. (Attachments: # 1 Declaration of Aimee H. Wagstaff, # 2 Proposed Order, # 3 Plaintiffs' Omnibus Opposition to Defendants' Motions to Exclude (Unredacted), # 4 Exhibit 94 (Unredacted), # 5 Exhibit 96 (Unredacted))(Wagstaff, Aimee) (Filed on 10/24/2025) (Entered: 10/24/2025) |
| 10/24/2025 | 642 | OPPOSITION/RESPONSE (re 611 Motion In Limine *[Background Brief In Support Of Their Motion To Exclude Plaintiffs General Causation Experts]*, 614 Motion In Limine *Defendants Motion To Exclude Plaintiffscausation/ Epidemiology Experts (Brief 3)*, 612 Motion In Limine *[Brief In Support Of Defendants' Motion To Exclude Plaintiffs' Exposure Experts Rachael Jones And Priscilla Barr]* ) filed byVZ. (Attachments: # 1 Declaration of Aimee H. Wagstaff, # 2 Exhibit 1-10, # 3 Exhibit 11-20, # 4 Exhibit 21-30, # 5 Exhibit 31-40, # 6 Exhibit 41-50, # 7 Exhibit 51-60, # 8 Exhibit 61-70, # 9 Exhibit 71-80, # 10 Exhibit 81-90, # 11 Exhibit 91-100, # 12 Exhibit 101-107)(Wagstaff, Aimee) (Filed on 10/24/2025) **Locked per filer's request. ** Modified on 10/28/2025 (ddk, COURT STAFF). (Entered: 10/24/2025) |
| 10/28/2025 | 643 | OPPOSITION/RESPONSE (re 639 Administrative Motion to File Under Seal ) filed byVZ. (Wagstaff, Aimee) (Filed on 10/28/2025) (Entered: 10/28/2025) |
| 10/29/2025 | 644 | ORDER RE DEFENDANTS' MOTIONS TO DISMISS. Signed by Judge Jacqueline Scott Corley on 10/29/2025.<br>This Order is the public redacted version of Docket Number 622 .<br>(ahm, COURT STAFF) (Filed on 10/29/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 10/29/2025) |
| 10/29/2025 | 645 | ORDER RE DEFENDANT WHOLE FOODS' MOTION TO DISMISS THE FOURTH AMENDED PETITION. Signed by Judge Jacqueline Scott Corley on 10/29/2025.<br>This Order is the public redacted version of Docket Number 623 .<br>(ahm, COURT STAFF) (Filed on 10/29/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 10/29/2025) |

| 10/30/2025 | 646 | OPPOSITION/RESPONSE (re 636 MOTION for Leave to File *Second Amended Master Complaint* ) *(Opposition to Plaintiff's Motion for Leave to Amend)* filed byNestle Enterprises S.A., Societe des Produits Nestle S.A.. (Zarlenga, Carmine) (Filed on 10/30/2025) (Entered: 10/30/2025) |
|---|---|---|
| 10/30/2025 | 647 | Ex Parte MOTION to Appoint Guardian ad Litem *PLAINTIFFS OCTOBER 30, 2025 CONSOLIDATED EX PARTE APPLICATION FOR APPOINTMENTS OF GUARDIANS AD LITEM* filed by A.A.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Proposed Order)(Alarcon, Monique) (Filed on 10/30/2025) (Entered: 10/30/2025) |
| 10/31/2025 | 648 | MOTION to Remove Incorrectly Filed Document *DKT. 611-50 AND 611-51* filed by Beech-Nut Nutrition Company, Walmart Inc.. (Attachments: # 1 Proposed Order)(Lombardo, Michael) (Filed on 10/31/2025) (Entered: 10/31/2025) |
| 10/31/2025 | 649 | Brief re 611 MOTION in Limine *[Background Brief In Support Of Their Motion To Exclude Plaintiffs General Causation Experts] (CORRECTION OF DKT. NOS. 611-50 AND 611-51)* filed byBeech-Nut Nutrition Company, Walmart Inc.. (Attachments: # 1 Exhibit 49, # 2 Exhibit 50)(Related document(s) 611 ) (Lombardo, Michael) (Filed on 10/31/2025) (Entered: 10/31/2025) |
| 10/31/2025 | 650 | ORDER by Judge Jacqueline Scott Corley granting 648 Motion to Remove Incorrectly Filed Document (DKT. NOS. 611-50 AND 611-51). (ahm, COURT STAFF) (Filed on 10/31/2025) |
|  |  | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 10/31/2025) |
| 11/03/2025 | 651 | Ex Parte MOTION to Appoint Guardian ad Litem *PLAINTIFFS NOVEMER 3, 2025 CONSOLIDATED EX PARTE APPLICATION FOR APPOINTMENTS OF GUARDIANS AD LITEM* filed by A.A.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Proposed Order)(Alarcon, Monique) (Filed on 11/3/2025) (Entered: 11/03/2025) |
| 11/03/2025 | 652 | JOINT CASE MANAGEMENT STATEMENT *PURSUANT TO PRETRIAL ORDER NO. 3* filed by Nurture, LLC. (Kim, Brooke) (Filed on 11/3/2025) (Entered: 11/03/2025) |
| 11/04/2025 | 653 | PROPOSED AGENDA FOR NOVEMBER 5, 2025 FURTHER CMC. Signed by Judge Jacqueline Scott Corley on 11/4/2025. (ahm, COURT STAFF) (Filed on 11/4/2025) |

| | | |
|---|---|---|
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 11/04/2025) |
| 11/05/2025 | 654 | ORDER RE: NESTLE USA, INC.'S MOTION TO DISMISS. Signed by Judge Jacqueline Scott Corley on 11/5/2025. (ahm, COURT STAFF) (Filed on 11/5/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 11/05/2025) |
| 11/05/2025 | 655 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Further Case Management Conference held on 11/5/2025. (Court Reporter: Ana Dub/00:28) The Further Case Management Conference set for 11/20/2025 at 9:00 a.m. will be held via a Zoom webinar. Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/jsc Court Appearances: Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. A list of names must be sent to the CRD at jsccrd@cand.uscourts.gov no later than noon on 11/19/2025. Civ LR 77-3(d). Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited. Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/. (Attachments: # 1 Attendance List)(ahm, COURT STAFF) (Date Filed: 11/5/2025) (Entered: 11/05/2025) |
| 11/05/2025 | 656 | MOTION for leave to appear in Pro Hac Vice *as to Eva Canaan* ( Filing fee $ 328, receipt number ACANDC-21318038.) filed by Beech-Nut Nutrition Company, Walmart Inc.. (Attachments: # 1 Exhibit 1 (Certificate of Good Standing))(Canaan, Eva) (Filed on 11/5/2025) (Entered: 11/05/2025) |
| 11/05/2025 | 657 | CLERK'S NOTICE SETTING HEARING. Evidentiary Hearing is set for 12/8/2025 to 12/12/2025 at 9:00 a.m. in San Francisco, Courtroom 08, 19th Floor before Judge Jacqueline Scott Corley. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ahm, COURT STAFF) (Filed on 11/5/2025) |

| | | |
|---|---|---|
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 11/05/2025) |
| 11/06/2025 | 658 | PRETRIAL ORDER NO. 19. Signed by Judge Jacqueline Scott Corley on 11/6/2025. (ahm, COURT STAFF) (Filed on 11/6/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 11/06/2025) |
| 11/07/2025 | 659 | REPLY (re 612 MOTION in Limine *[Brief In Support Of Defendants' Motion To Exclude Plaintiffs' Exposure Experts Rachael Jones And Priscilla Barr]*) filed by Gerber Products Company. (Wadhwani, Neelum) (Filed on 11/7/2025) (Entered: 11/07/2025) |
| 11/07/2025 | 660 | Administrative Motion to Consider Whether Another Party's Material Should Be Sealed filed by A.A. (Attachments: # 1 Declaration, # 2 Proposed Order, # 3 Plaintiffs Reply In Support Of Motion To Exclude Certain Testimony From Defendants Expert Witnesses Under FRCP 26 & 37 And FRE 702 [UNREDACTED])(Wisner, Robert) (Filed on 11/7/2025) Modified on 11/10/2025 (slh, COURT STAFF). (Entered: 11/07/2025) |
| 11/07/2025 | 661 | REPLY (re 613 Administrative Motion to File Under Seal ) *Plaintiffs Reply In Support Of Motion To Exclude Certain Testimony From Defendants Expert Witnesses Under FRCP 26 & 37 And FRE 702* filed by A.A.. (Attachments: # 1 Declaration, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D)(Wisner, Robert) (Filed on 11/7/2025) Modified on 11/10/2025 (slh, COURT STAFF). (Entered: 11/07/2025) |
| 11/07/2025 | 662 | REPLY (re 614 MOTION in Limine *To Exclude Plaintiffs Causation/ Epidemiology Experts (Brief 3)*) filed by Nurture, LLC. (Attachments: # 1 Declaration Of Brooke Killian Kim In Support Of Defendants Reply In Support Of Defendants Motion To Exclude Plaintiffs Causation/ Epidemiology Experts, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15)(Kim, Brooke) (Filed on 11/7/2025) Modified on 11/10/2025 (slh, COURT STAFF). (Entered: 11/07/2025) |
| 11/07/2025 | 663 | REPLY (re 617 Administrative Motion to File Under Seal ) *Reply Brief In Support Of Plaintiffs Motion To Exclude Dr. Carolyn Scrafford And Dr. Robert Gibbons Under FRCP 26 & 37 And FRE 702* filed by A.A.. (Wisner, Robert) (Filed on 11/7/2025) Modified on 11/10/2025 (slh, COURT STAFF). (Entered: 11/07/2025) |

| 11/10/2025 | 664 | ORDER by Judge Jacqueline Scott Corley granting 656 Motion for Pro Hac Vice as to Eva Canaan. (ahm, COURT STAFF) (Filed on 11/10/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 11/10/2025) |
| 11/11/2025 | 665 | ERRATA re 662 Reply to Opposition/Response,, by Nurture, LLC. (Attachments: # 1 Exhibit A - Corrected Reply)(Kim, Brooke) (Filed on 11/11/2025) (Entered: 11/11/2025) |
| 11/14/2025 | 666 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-21350065.) filed by R. E.. (Drago, Jon) (Filed on 11/14/2025) (Entered: 11/14/2025) |
| 11/17/2025 | 667 | ORDER by Judge Jacqueline Scott Corley granting 647 Motion to Appoint Guardian ad Litem. (ahm, COURT STAFF) (Filed on 11/17/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 11/17/2025) |
| 11/17/2025 | 668 | ORDER by Judge Jacqueline Scott Corley granting 666 Motion for Pro Hac Vice as to Jon Drago. (ahm, COURT STAFF) (Filed on 11/17/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 11/17/2025) |
| 11/18/2025 | 669 | CLERK'S NOTICE VACATING HEARING. At the request of the parties, the case management conference scheduled for November 20, 2025 is vacated.<br>(This is a text-only entry generated by the court. There is no document associated with this entry.)<br>(ahm, COURT STAFF) (Filed on 11/18/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 11/18/2025) |
| 11/18/2025 | 670 | TRANSCRIPT ORDER for proceedings held on 11/05/2025 before Judge Jacqueline Scott Corley by Nurture, LLC, for Court Reporter Ana Dub. (Kim, Brooke) (Filed on 11/18/2025) (Entered: 11/18/2025) |
| 11/19/2025 | 671 | Clerk's Notice re Deadline for Ordering Daily Transcript and/or Realtime Reporting for Daubert Hearings: |

| | | |
|---|---|---|
| | | The deadline to request daily transcripts or Realtime reporting for counsel during Daubert Hearings is 11/26/2025.<br>More details regarding daily transcripts or Realtime during trial are available on the Transcripts/Court Reporters webpage (see section III) at https://www.cand.uscourts.gov/about/clerks-office/transcripts-court-reporters/<br>Contact the Court Reporter Supervisor with questions at transcripts@cand.uscourts.gov by the deadline above.<br>(mkl, COURT STAFF) (Filed on 11/19/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 11/19/2025) |
| 11/24/2025 | 672 | Transcript of Proceedings held on November 5, 2025, before Judge Jacqueline Scott Corley. Stenographic Court Reporter Ana Dub, RDR, CRR, telephone number 415-290-1651, ana_dub@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 670 Transcript Order ) Release of Transcript Restriction set for 2/23/2026. (Related documents(s) 670 ) (Dub, Ana) (Filed on 11/24/2025) (Entered: 11/24/2025) |
| 11/25/2025 | 673 | TRANSCRIPT ORDER for Future Trial with Daily Transcripts by Nurture, LLC. (Kim, Brooke) (Filed on 11/25/2025) (Entered: 11/25/2025) |
| 11/25/2025 | 674 | TRANSCRIPT ORDER for Future Trial with Daily Transcripts by A. A.(3:25-cv-10104-JSC). (Wisner, Robert) (Filed on 11/25/2025) (Entered: 11/25/2025) |
| 12/01/2025 | 675 | STIPULATION WITH PROPOSED ORDER *to Allow Electronic Service of Process on The Campbell's Company* filed by VZ. (Wagstaff, Aimee) (Filed on 12/1/2025) (Entered: 12/01/2025) |
| 12/01/2025 | 676 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-21401708.) filed by Gerber Products Company. (Attachments: # 1 Certificate of Good Standing)(Wogoman, Teresa) (Filed on 12/1/2025) (Entered: 12/01/2025) |
| 12/01/2025 | 677 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-21401794.) filed by Gerber Products Company. (Attachments: # 1 Certificate of Good Standing)(Infinger, Tyler) (Filed on 12/1/2025) (Entered: 12/01/2025) |

| | | |
|---|---|---|
| 12/02/2025 | 678 | ORDER by Judge Jacqueline Scott Corley granting 675 Stipulation to Allow Electronic Service of Process on The Campbell's Company. (ahm, COURT STAFF) (Filed on 12/2/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 12/02/2025) |
| 12/02/2025 | 679 | ORDER by Judge Jacqueline Scott Corley granting 676 Motion for Pro Hac Vice as to Teresa Wogoman. (ahm, COURT STAFF) (Filed on 12/2/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 12/02/2025) |
| 12/02/2025 | 680 | ORDER by Judge Jacqueline Scott Corley granting 677 Motion for Pro Hac Vice as to Tyler Infinger. (ahm, COURT STAFF) (Filed on 12/2/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 12/02/2025) |
| 12/02/2025 | 681 | TRANSCRIPT ORDER before Judge Jacqueline Scott Corley by A. A.(3:25-cv-10104-JSC), for Court Reporter Ana Dub. (Alarcon, Monique) (Filed on 12/2/2025) (Entered: 12/02/2025) |
| 12/02/2025 | 682 | MOTION for Leave to File *a Motion for Reconsideration of the Court's Dec. 3, 2024 Order Dismissing Plaintiff's Negligence Claim Against Whole Foods* filed by James A Watkins, Margaret Watkins. (Attachments: # 1 Proposed Order)(Wagstaff, Aimee) (Filed on 12/2/2025) (Entered: 12/02/2025) |
| 12/03/2025 | 683 | Proposed Order *and Request Regarding Courtroom Equipment for Hearing* by Gerber Products Company. (Merryman, Bryan) (Filed on 12/3/2025) (Entered: 12/03/2025) |
| 12/03/2025 | 684 | Ex Parte MOTION to Appoint Guardian ad Litem *Plaintiffs December 3, 2025 Consolidated Ex Parte Application For Appointments Of Guardians Ad Litem* filed by A. A.(3:25-cv-10104-JSC). (Attachments: # 1 Proposed Order, # 2 Exhibit 1-30, # 3 Exhibit 31-60, # 4 Exhibit 61-90, # 5 Exhibit 91-120, # 6 Exhibit 121-154)(Alarcon, Monique) (Filed on 12/3/2025) (Entered: 12/03/2025) |
| 12/03/2025 | 685 | ORDER granting 683 Request Regarding Courtroom Equipment for Hearing. Signed by Judge Jacqueline Scott Corley on 12/3/2025. (ahm, COURT STAFF) (Filed on 12/3/2025) |

| | | |
|---|---|---|
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 12/03/2025) |
| 12/04/2025 | 686 | OPPOSITION/RESPONSE (re 682 MOTION for Leave to File *a Motion for Reconsideration of the Court's Dec. 3, 2024 Order Dismissing Plaintiff's Negligence Claim Against Whole Foods* ) filed byWhole Foods Market Services, Inc.. (Ballay, Brian) (Filed on 12/4/2025) (Entered: 12/04/2025) |
| 12/04/2025 | 687 | Proposed Order *Permitting Plaintiffs to Bring Outside Equipment Into Courthouse for Daubert Hearing* by VZ. (Wagstaff, Aimee) (Filed on 12/4/2025) (Entered: 12/04/2025) |
| 12/04/2025 | 688 | ORDER RE LIST OF TESTIFYING EXPERT WITNESSES. Signed by Judge Jacqueline Scott Corley on 12/4/2025. (ahm, COURT STAFF) (Filed on 12/4/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 12/04/2025) |
| 12/04/2025 | 689 | NOTICE by Nurture, LLC *NOTICE OF WITNESS AVAILABILITY AND ORDER* (Kim, Brooke) (Filed on 12/4/2025) (Entered: 12/04/2025) |
| 12/05/2025 | 690 | ORDER by Judge Jacqueline Scott Corley granting 684 Motion to Appoint Guardian ad Litem. (ahm, COURT STAFF) (Filed on 12/5/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 12/05/2025) |
| 12/05/2025 | 691 | ORDER by Judge Jacqueline Scott Corley granting 651 Motion to Appoint Guardian ad Litem. (ahm, COURT STAFF) (Filed on 12/5/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 12/05/2025) |
| 12/05/2025 | 692 | Order Permitting Plaintiffs to Bring Outside Equipment Into Courthouse for Daubert Hearing. Signed by Judge Jacqueline Scott Corley on 12/5/2025. (ahm, COURT STAFF) (Filed on 12/5/2025) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 12/05/2025) |

| 12/08/2025 | 693 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Evidentiary Hearing (Day 1) held on 12/8/2025. (Court Reporter: April Brott/Time 4:56).<br>(Attachments: # 1 Trial Log, # 2 List of Appearances)<br>(ahm, COURT STAFF) (Date Filed: 12/8/2025) (Entered: 12/09/2025) |
|---|---|---|
| 12/09/2025 | 694 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Evidentiary Hearing (Day 2) held on 12/9/2025. (Court Reporter: April Brott)<br>(Attachments: # 1 Trial Log, # 2 List of Appearances)<br>(ahm, COURT STAFF) (Date Filed: 12/9/2025) (Entered: 12/11/2025) |
| 12/10/2025 | 695 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Evidentiary Hearing (Day 3) held on 12/10/2025. (Court Reporter: April Brott)<br>(Attachments: # 1 Hearing Log, # 2 List of Appearances)<br>(ahm, COURT STAFF) (Date Filed: 12/10/2025) (Entered: 12/11/2025) |
| 12/11/2025 | 696 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Evidentiary Hearing (Day 4) held and concluded on 12/11/2025. (Court Reporter: April Brott)<br>(Attachments: # 1 Hearing Log, # 2 List of Appearances)<br>(ahm, COURT STAFF) (Date Filed: 12/11/2025) (Entered: 12/11/2025) |
| 12/16/2025 | 697 | Day 1 of Trial Transcript of Proceedings held on December 8, 2025, before Judge Jacqueline S. Corley. Court Reporter/Transcriber April Wood Brott, telephone number 510-225-8350 april_brott@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 674 Transcript Order - Future Trial with Daily Transcripts, 673 Transcript Order - Future Trial with Daily Transcripts ) Release of Transcript Restriction set for 3/16/2026. (Related documents(s) 674 , 673 ) (Brott, April) (Filed on 12/16/2025) (Entered: 12/16/2025) |
| 12/16/2025 | 699 | Day 3 of Trial Transcript of Proceedings held on December 10, 2025, before Judge Jacqueline S. Corley. Court Reporter/Transcriber April Wood Brott, telephone number 510-225-8350 april_brott@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any |

| | | |
|---|---|---|
| | | Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 674 Transcript Order - Future Trial with Daily Transcripts, 673 Transcript Order - Future Trial with Daily Transcripts ) Release of Transcript Restriction set for 3/16/2026. (Related documents(s) 674 , 673 ) (Brott, April) (Filed on 12/16/2025) (Entered: 12/16/2025) |
| 12/16/2025 | 700 | Day 4 of Transcript of Proceedings held on December 11, 2025, before Judge Jacqueline S. Corley. Court Reporter/Transcriber April Wood Brott, telephone number 510-225-8350 april_brott@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 674 Transcript Order - Future Trial with Daily Transcripts, 673 Transcript Order - Future Trial with Daily Transcripts ) Release of Transcript Restriction set for 3/16/2026. (Related documents(s) 674 , 673 ) (Brott, April) (Filed on 12/16/2025) (Entered: 12/16/2025) |
| 12/19/2025 | 701 | NOTICE by Beech-Nut Nutrition Company, Walmart Inc. *of Lodging Rule 702 Hearing Slides* (Attachments: # 1 Exhibit A - Slides from Opening, # 2 Exhibit B - Slides from cross-examination of Dr. Beate Ritz, # 3 Exhibit C - Slides from Defs argument re motion to exclude Plaintiffs exposure experts, # 4 Exhibit D - Slides from Defs argument re motion to exclude Plaintiffs epidemiology/causation experts, # 5 Exhibit E - Slides from Defs argument re Plaintiffs motion to exclude certain testimony from Defs expert Dr. Matthew State)(Kiser, Livia) (Filed on 12/19/2025) (Entered: 12/19/2025) |
| 12/24/2025 | 702 | Plaintiffs' December 24, 2025 Consolidated Ex Parte MOTION for Appointments of Guardians ad Litem filed by A.A.. (Attachments: # 1 Proposed Order, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4)(Alarcon, Monique) (Filed on 12/24/2025) Modified on 1/5/2026 (slh, COURT STAFF). (Entered: 12/24/2025) |
| 01/06/2026 | 703 | NOTICE by A. A.(3:25-cv-10104-JSC) *PLAINTIFFS NOTICE OF LODGING RULE 702 HEARING SLIDES* (Attachments: # 1 Exhibit A - slides from Plaintiffs opening statement, # 2 Exhibit B - slides from Plaintiffs direct examination of Dr. Hannah Gardener, # 3 Exhibit C - slides from Plaintiffs direct examination of Dr. Howard Hu, # 4 Exhibit D - slides from Plaintiffs direct examination of Dr. Beate Ritz, # 5 Exhibit E - slides from Plaintiffs direct examination of Dr. Kevin Shapiro, # 6 Exhibit F - slides from Plaintiffs Oral Argument on Defendants Challenge to Dr. Rachael Jones & Priscilla Barr, # 7 Exhibit G - slides |

| | | |
|---|---|---|
| | | from Plaintiffs closing statement)(Wisner, Robert) (Filed on 1/6/2026) (Entered: 01/06/2026) |
| 01/07/2026 | 704 | ORDER by Judge Jacqueline Scott Corley granting 702 Motion to Appoint Guardian ad Litem. (ahm, COURT STAFF) (Filed on 1/7/2026) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 01/07/2026) |
| 01/11/2026 | 705 | Amended transcript of proceedings held on December 9, 2025, before Judge Jacqueline Scott Corley. Court Reporter/Transcriber April Wood Brott, telephone number 510-225-8350, april_brott@uscourts.cand.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 674 Transcript Order - Future Trial with Daily Transcripts, 673 Transcript Order - Future Trial with Daily Transcripts ) Release of Transcript Restriction set for 4/13/2026. (Related documents(s) 674 , 673 ) (Brott, April) (Filed on 1/11/2026) (Entered: 01/11/2026) |
| 01/12/2026 | 706 | NOTICE by Nurture, LLC *Defendants' Notice of Filing Updated Exhibit List* (Attachments: # 1 Exhibit Joint Exhibit List for Rule 702 Hearing)(Kim, Brooke) (Filed on 1/12/2026) (Entered: 01/12/2026) |
| 01/20/2026 | 707 | TRANSCRIPT ORDER for proceedings held on December 11, 2025 before Judge Vince Chhabria for Court Reporter April Brott (Brott, April) (Filed on 1/20/2026) (Entered: 01/20/2026) |
| 02/03/2026 | 708 | Ex Parte MOTION to Appoint Guardian ad Litem *PLAINTIFFS FEBRUARY 3, 2026 CONSOLIDATED EX PARTE APPLICATION FOR APPOINTMENTS OF GUARDIANS AD LITEM* filed by A. A.(3:25-cv-10104-JSC). (Attachments: # 1 Proposed Order, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4)(Alarcon, Monique) (Filed on 2/3/2026) (Entered: 02/03/2026) |
| 02/23/2026 | 709 | ORDER by Judge Jacqueline Scott Corley granting 708 Motion to Appoint Guardian ad Litem. (ahm, COURT STAFF) (Filed on 2/23/2026) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 02/23/2026) |

| 02/27/2026 | 710 | ORDER RE DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES. Signed by Judge Jacqueline Scott Corley on February 27, 2026. (ahm, COURT STAFF) (Filed on 2/27/2026) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 02/27/2026) |
| 03/03/2026 | 711 | CONDITIONAL TRANSFER ORDER (CTO-6) by MDL Panel on 03/03/2026. (kab, COURT STAFF) (Filed on 3/3/2026) (Entered: 03/04/2026) |
| 03/06/2026 | 712 | **Documents removed per order 714 ** COMPLAINT against Beech-Nut Nutrition Company, Gerber Products Company ( Filing fee $ 405, receipt number ACANDC-21725937.). Filed by Patricia Quezaba. (Attachments: # 1 Civil Cover Sheet)(Moll, Ken) (Filed on 3/6/2026) Modified on 3/6/2026 (ahm, COURT STAFF). Modified on 3/10/2026 (kab, COURT STAFF). (Entered: 03/06/2026) |
| 03/06/2026 | 713 | First MOTION to Remove Incorrectly Filed Document filed by Patricia Quezaba. (Moll, Ken) (Filed on 3/6/2026) (Entered: 03/06/2026) |
| 03/09/2026 | 714 | ORDER by Judge Jacqueline Scott Corley granting 713 Motion to Remove Incorrectly Filed Document. (ahm, COURT STAFF) (Filed on 3/9/2026) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 03/09/2026) |
| 03/17/2026 | 715 | CONDITIONAL TRANSFER ORDER (CTO-7) signed by MDL Panel on 03/17/2026. (kab, COURT STAFF) (Filed on 3/17/2026) (Entered: 03/17/2026) |
| 03/26/2026 | 716 | CASE MANAGEMENT STATEMENT *Pursuant To February 27, 2026 Order* filed by Nurture, LLC. (Kim, Brooke) (Filed on 3/26/2026) Modified on 3/30/2026 (slh, COURT STAFF). (Entered: 03/26/2026) |
| 03/26/2026 | 717 | STIPULATION WITH PROPOSED ORDER *STIPULATION REGARDING DISMISSAL OF CERTAIN DEFENDANTS* filed by Nurture, LLC. (Attachments: # 1 Appendix A)(Kim, Brooke) (Filed on 3/26/2026) (Entered: 03/26/2026) |
| 03/27/2026 | 718 | CLERK'S NOTICE SETTING ZOOM HEARING. The Further Case Management Conference set for 4/2/2026 at 9:00 a.m. before Judge Corley will be held via a Zoom webinar. Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/jsc |

| | | |
|---|---|---|
| | | Court Appearances: Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. A list of names must be sent to the CRD at jsccrd@cand.uscourts.gov no later than noon on 4/1/2026. Civ LR 77-3(d). Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited. Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ahm, COURT STAFF) (Filed on 3/27/2026) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 03/27/2026) |
| 03/31/2026 | 719 | ORDER by Judge Jacqueline Scott Corley granting 717 Stipulation Regarding Dismissal as to Certain Defendants. Defendants from the cases identified in Appendix A: Danone S.A., Danone Nutricia Nederland B.V., Danone North America, PBC, Hero A.G., Nestl Holdings, Inc., Nestl USA, Inc., Nestl S.A., Nestl Enterprises S.A., Socit des Produits Nestl S.A, and Sun-Maid Growers of California (the Dismissed Defendants). (ahm, COURT STAFF) (Filed on 3/31/2026) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 03/31/2026) |
| 03/31/2026 | 720 | CONDITIONAL TRANSFER ORDER (CTO-8) by MDL Panel on 03/31/2026 (kab, COURT STAFF) (Filed on 3/31/2026) (Entered: 04/01/2026) |
| 04/01/2026 | 721 | PROPOSED AGENDA FOR APRIL 2, 2026 FURTHER CMC. Signed by Judge Jacqueline Scott Corley on 4/1/2026. (ahm, COURT STAFF) (Filed on 4/1/2026) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 04/01/2026) |
| 04/02/2026 | 722 | Minute Entry for proceedings held before Judge Jacqueline Scott Corley: Further Case Management Conference held and recorded by Zoom videoconference on 4/2/2026. (Court Reporter: Kendra Steppler) (Attachments: # 1 Attendance List) (ahm, COURT STAFF) (Date Filed: 4/2/2026) (Entered: 04/02/2026) |

| 04/02/2026 | 723 | PRETRIAL ORDER NO. 20. Signed by Judge Jacqueline Scott Corley on 4/2/2026. (ahm, COURT STAFF) (Filed on 4/2/2026) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 04/02/2026) |
| 04/02/2026 | 724 | TRANSCRIPT ORDER for proceedings held on 04/02/2026 before Judge Jacqueline Scott Corley by Nurture, LLC, for Court Reporter Kendra Steppler. (Kim, Brooke) (Filed on 4/2/2026) (Entered: 04/02/2026) |
| 04/03/2026 | 725 | Transcript of Proceedings held on April 2, 2026, before Judge Jacqueline Scott Corley. Court Reporter Kendra Steppler, email at kendra_steppler@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter until the deadline for the Release of Transcript Restriction. After that date, it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 724 Transcript Order ) Release of Transcript Restriction set for 7/2/2026. (Related documents(s) 724 ) (Steppler, Kendra) (Filed on 4/3/2026) (Entered: 04/03/2026) |
| 04/08/2026 | 726 | TRANSCRIPT ORDER for proceedings held on April 2, 2026 before Judge Jacqueline Scott Corley by A. A.(through Guardian ad litem Gloria Jubrey; 3:25-cv-09855-JSC), for Court Reporter Kendra Steppler. (Wisner, Robert) (Filed on 4/8/2026) (Entered: 04/08/2026) |
| 04/10/2026 | 727 | NOTICE by Danone North America, PBC *NOTICE OF NAME CHANGE* (Kim, Brooke) (Filed on 4/10/2026) (Entered: 04/10/2026) |
| 05/01/2026 | 728 | MOTION for Summary Judgment filed by Amazon.com Services LLC, Beech-Nut Nutrition Company, Campbell Soup Company, Gerber Products Company, Gerber Products Company, Hain Celestial Group, Inc., Nurture, LLC, Plum, PBC, Sprout Foods Inc., The Campbell Soup Company, Walmart Inc., Whole Foods Market Services, Inc.. Motion for Summary Judgment Hearing set for 7/9/2026 02:30 PM in San Francisco, Courtroom 08, 19th Floor before Judge Jacqueline Scott Corley. Responses due by 5/15/2026. Replies due by 5/22/2026. (Attachments: # 1 Declaration of Livia M. Kiser, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Proposed Order)(Kiser, Livia) (Filed on 5/1/2026) (Entered: 05/01/2026) |
| 05/08/2026 | 729 | CONDITIONAL TRANSFER ORDER (CTO-09) Signed by MDL Panel 05/08/2026. (kab, COURT STAFF) (Filed on 5/8/2026) (Entered: 05/08/2026) |

| 05/18/2026 | 730 | CONDITIONAL TRANSFER ORDER (CTO-10) by MDL Panel on 05/18/2026 (kab, COURT STAFF) (Filed on 5/18/2026) (Entered: 05/18/2026) |
|---|---|---|
| 05/18/2026 | 731 | STIPULATION WITH PROPOSED ORDER *REGARDING PRETRIAL ORDER NO. 20 AND [PROPOSED] PRETRIAL ORDER NO. 21* filed by Nurture, LLC. (Kim, Brooke) (Filed on 5/18/2026) (Entered: 05/18/2026) |
| 05/19/2026 | 732 | PRETRIAL ORDER NO. 21. Signed by Judge Jacqueline Scott Corley on May 19, 2026. (ahm, COURT STAFF) (Filed on 5/19/2026) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/19/2026) |
| 05/22/2026 | 733 | STIPULATION WITH PROPOSED ORDER *JOINT FILING REGARDING SUBJECT MATTER JURISDICTION AND [PROPOSED] ORDER DISMISSING CLAIMS OVER WHICH THE COURT HAS NO SUBJECT MATTER JURISDICTION* filed by Nurture, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Kim, Brooke) (Filed on 5/22/2026) (Entered: 05/22/2026) |
| 05/26/2026 | 734 | ORDER by Judge Jacqueline Scott Corley granting 733 Stipulation DISMISSING CLAIMS OVER WHICH THE COURT HAS NO SUBJECT MATTER JURISDICTION. (ahm, COURT STAFF) (Filed on 5/26/2026) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 05/26/2026) |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

|  |  |
|---|---|
| J.B., A MINOR, by and through their mother, Daniella LiDonni<br><br>     *Plaintiff,*<br><br>v.<br><br>Beech-Nut Nutrition Company, Gerber Products Company, Hain Celestial Group, Inc., and DOES 1 through 10, inclusive,<br><br>     *Defendants*. | **COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1. Defendants *knowingly* sold baby food products contaminated with lead, arsenic, mercury, cadmium, and aluminum (collectively "Toxic Heavy Metals"). They did this knowing that Toxic Heavy Metals, when consumed by babies, are known to cause brain damage and neurodevelopmental harm. Thus, to the extent Defendants sold baby food that contained detectible amounts of Toxic Heavy Metals (collectively "Contaminated Baby Food") those products were defective in their manufacture, design, and labeling. Babies are the most vulnerable segment of the population, and they rely on that food for healthy neurodevelopment. Defendants justify this callous disregard for the welfare of babies because, until recently, there were no regulations governing the presence of Toxic Heavy Metals in baby foods—and, because there were no regulations, they were free to do as they pleased.

2. This lawsuit aims to stop Defendants from poisoning infants with Contaminated Baby Food. Baby food *should* be safe. It should *not* be contaminated with Toxic Heavy Metals. Period. By sourcing ingredients from farms that have non-detectable levels of heavy metal (using sufficiently sensitive testing), avoiding certain ingredients all together, and systematically testing and screening finished products for Toxic Heavy Metals *before* the foods are released for consumption, these Defendants would be able to provide baby food products

- 1 -

free of detectable levels of Toxic Heavy Metals. And, if some levels are truly unavoidable, or if Defendants believe the identified levels are safe, then, at the very least, Defendants must warn parents/guardians/caregivers about the presence of these Toxic Heavy Metals so they can make informed decisions about what they are feeding their baby. Anything short of proper design, manufacture, and warning, is unacceptable—especially for an industry that touts itself as providing the most important sources of neurodevelopment for the most vulnerable population of society.

3. Plaintiff, here, lives with brain injuries and neurodevelopmental harm caused by exposure to the Defendants' Contaminated Baby Food, which has manifested in diagnosis/diagnoses of autism spectrum disorder ("ASD"). Plaintiff's parents were never warned that the Defendants' food contained Toxic Heavy Metals and, thus, were never able to make an informed decision about whether to feed their babies Defendants Contaminated Baby Foods. The consequences are stark—there is an unprecedented epidemic of ASD and ADHD spreading throughout the American population, driven, in part, by the systematic neurodevelopmental poisoning of infants from these Defendants' Contaminated Baby Foods.

4. This case seeks to hold the Defendants accountable for their reprehensible conduct by compensating Plaintiff who was harmed by the Defendants' Contaminated Baby Foods, and ensure each Defendant is punished to deter such conduct in the future.

## PARTIES

### I. Plaintiffs

5. Plaintiff is a child who lives with brain injuries and neurodevelopmental harm caused by exposure to the Defendants' Contaminated Baby Food, which has manifested in a diagnosis of ASD.

6. Plaintiff consumed baby foods manufactured by Beech-Nut Nutrition Company, Gerber Products Company, and Hain Celestial Group, Inc.

7. Plaintiff consumed these baby foods from approximately October 2021-June 2022.

8. Plaintiff alleges that as a direct and proximate result of Plaintiff's exposure to

- 2 -

Toxic Heavy Metals from consumption of Defendants' Contaminated Baby Foods, they suffered significant harm, conscious pain and suffering, physical injury and bodily impairment including, but not limited to, brain injury manifesting as the neurodevelopmental disorder ASD, other permanent physical deficits, permanent bodily impairment, and other *sequelae*. Plaintiff was diagnosed in or about May 2024. Plaintiff's injuries required medical intervention to address the adverse neurological effects and damage caused by exposure to Toxic Heavy Metals in Defendants' Contaminated Baby Foods. Additionally, Plaintiff has suffered severe mental and physical pain, including but not limited to, pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress and has and will sustain such injuries, along with economic loss due to medical expenses and living-related expenses as a result of lifestyle changes, into the future, as determined by the Trier of Fact.

9. The product warnings for the Contaminated Baby Foods in effect during the time period Plaintiff consumed the Contaminated Baby Foods were non-existent, vague, incomplete and/or otherwise inadequate, both substantively and graphically, to alert consumers to the presence of Toxic Heavy Metals in the Contaminated Baby Foods and/or the potentially severe health risks associated with Toxic Heavy Metal exposure in babies. Thus, each Defendant did not provide adequate warnings to consumers including Plaintiff, their parents, and the general public about the presence of Toxic Heavy Metals in the Contaminated Baby Foods consumed by Plaintiffs and the potential risk of the serious adverse events associated with Toxic Heavy Metal exposure in infancy.

10. Had Plaintiff or their parents been adequately warned by the Defendants of the potential for exposure to Toxic Heavy Metals from consumption of Defendants' Baby Foods, and/or the potential for such exposure to result in harm, Plaintiff, or their parents would not have purchased, used and/or consumed Contaminated Baby Foods or would have taken other steps to potentially mitigate the harm caused by exposing a baby to Toxic Heavy Metals.

II. **Defendants**

11. The following are the Defendants listed in this Complaint. In alphabetical order:

- 3 -

1. Beech-Nut Nutrition Company ("Beech-Nut")

2. Gerber Products Company ("Gerber")

3. Hain Celestial Group, Inc. ("Hain")

12. Defendant Beech-Nut Nutrition Company ("Beech-Nut") is a citizen of Delaware and New York with its principal place of business located at 1 Nutritious Pl., Amsterdam, New York 12010. Beech-Nut branded baby foods aim at infants 4+ months up to 12+ months and include a variety of cereals, "jars," and "pouches" for these age groups. At all relevant times, Beech-Nut has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling, and marketing of Baby Foods within this judicial district and throughout the United States.

13. Defendant Gerber Products Company ("Gerber") is a citizen of Michigan and Virginia with its principal place of business located at 1812 N. Moore Street, Arlington, Virginia 22209. Gerber sells Baby Foods under the brand name Gerber. Gerber organizes its products into broad categories of "formula," "baby cereal," "baby food," "snacks," "meals & sides," "beverages," and "organic." At all relevant times, Gerber has conducted business and derived substantial revenue from its manufacturing, labeling, advertising, distributing, selling, and marketing of baby foods.

14. The Hain Celestial Group, Inc. ("Hain") is a citizen of Delaware and New York with its principal place of business located at 1111 Marcus Ave., Lake Success, New York 11042. Hain sells baby foods under the brand name Earth's Best Organics. Hain offers infant and baby formula and foods as well as toddler foods covering products from "organic infant cereal" to "organic snacks for toddlers and kids on the go." At all relevant times, Hain has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling, and marketing of Baby Foods within this judicial district and throughout the United States.

**JURISDICTION AND VENUE**

15. Plaintiff is a resident of Florida, and no other states.

- 4 -

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between the parties. In addition, Plaintiff seeks damages in excess of $75,000, exclusive of interest and costs.

17.     This Court has personal jurisdiction over Defendants insofar as Defendants are authorized and licensed to conduct business in the State of Florida, maintain and carry on systematic and continuous contacts in this judicial district, regularly transact business within this judicial district, and regularly avail themselves of the benefits of this judicial district.

18.     Additionally, Defendants caused tortious injury by acts and omissions in this judicial district and caused tortious injury in this district by acts and omissions outside this district while regularly doing and soliciting business, engaging in a persistent course of conduct, and deriving substantial revenue from goods used or consumed and services rendered in this judicial district.

19.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

20.     Additionally, Defendants caused tortious injury by acts and omissions in this judicial district and caused tortious injury in this district by acts and omissions outside this district while regularly doing and soliciting business, engaging in a persistent course of conduct, and deriving substantial revenue from goods used or consumed and services rendered in this judicial district.

<b>FACTUAL ALLEGATIONS</b>

**I.      Rising Concerns Regarding the Presence of Toxic Heavy Metals in Baby Foods**

21.     In October 2019, an alliance of nonprofit organizations, scientists and donors named "Happy Babies Bright Futures" ("HBBF"), dedicated to designing and implementing "outcomes-based programs to measurably reduce babies' exposures to toxic chemicals,"

- 5 -

published a report investigating the presence of Toxic Heavy Metals in baby foods. The HBBF Report tested 168 different baby foods sold on the U.S. market and concluded that "[n]inety-five percent of baby foods tested were contaminated with one or more of four toxic heavy metals—arsenic, lead, cadmium and mercury. All but nine of 168 baby foods contained at least one metal; most contained more than one." Specifically, the HBBF report identified "puffs and other snacks made with rice flour," "[t]eething biscuits and rice rusks," "infant rice cereal," "apple, pear, grape and other fruit juices," and "carrots and sweet potatoes" manufactured by the Defendants as particularly high in Toxic Heavy Metals.

22. The results of the HBBF report were consistent with that of the U.S. Food and Drug Administration ("FDA") which had, in 2017, detected one or more of the four Toxic Heavy Metals in 33 of 39 types of baby food tested. However, the HBBF reported that "[f]or 88 percent of baby foods tested by HBBF—148 of 168 baby foods—FDA has failed to set enforceable limits or issue guidance on maximum safe amounts." The HBBF's findings were by no means an outlier. Eight months prior to publication of the HBBF report, a study conducted by scientists at the University of Miami and the Clean Label Project "examined lead…concentrations in a large convenience sample of US baby foods." The study detected lead in 37% of samples.

23. Moreover, earlier in 2017, HBBF commissioned a study to evaluate the presence of arsenic in infant rice cereal products sold in the U.S., and the potential risks to children's neurodevelopment posed by contamination levels. The findings were concerning. The authors concluded that "exposures to arsenic from infant rice cereal approach or exceed existing health-based limits for arsenic levels…leaving little room for additional exposures from other dietary sources, such as snacks, apple juice, and drinking water…Our analyses of arsenic exposures from infant rice cereal during the first year of life suggest that these exposures are not insignificant, and may place infants at risk for adverse health effects."

## II. Congressional Investigation Finds Substantial Presence of Heavy Metals in Baby Foods Manufactured and/or Sold by Defendants, Sparking National Outrage

24. On February 4, 2021, and September 29, 2021, respectively, the U.S. House of

- 6 -

Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, published two reports detailing its findings that Toxic Heavy Metals—including lead, arsenic, mercury, and cadmium—were present in "significant levels" in numerous commercial Baby Food Products. Four companies—Hain, Gerber, Nurture, and Beech-Nut—produced internal testing policies, test results for ingredients and finished products, and documentation about what the companies did with ingredients and/or finished products that exceeded their internal testing limits. Three companies—Plum (Campbell), Walmart, and Sprout—initially refused to cooperate.

25. Congress reported that the data submitted by the companies unequivocally revealed that a substantial number of Defendants' finished products and/or ingredients used to manufacture the Baby Foods are tainted with Toxic Heavy Metals, namely lead, arsenic, mercury, and cadmium. And, where the Defendants did set internal limits for the amount of metals they allowed in their foods, Defendants routinely flouted their own limits and sold foods that consistently tested above their limits. Congress found the following:

26. **Beech-Nut.** Beech-Nut used ingredients after they tested as high as 913.4 ppb arsenic. Beech-Nut routinely used high-arsenic additives that tested over 300 ppb arsenic to address product characteristics such as "crumb softness." On June 8, 2021, four months following the Congressional findings, Beech-Nut issued a voluntary recall of its infant single grain rice cereal and exited the rice cereal market completely. In its recall, Beech-Nut confirmed that its products exceed regulatory arsenic limits. And, Beech-Nut used ingredients containing as much as 886.9 ppb lead, as well as 483 products that contained over 5 ppb lead, 89 that contained over 15 ppb lead, and 57 that contained over 20 ppb lead. In its follow up Report in September 2021 Congress specifically focused on Defendants Beech-Nut and Gerber's infant rice cereals. Congress noted that Beech-Nut rice cereal tested up to 125 ppb inorganic arsenic and averaged 85.47 ppb inorganic arsenic. Beech-Nut's practice of testing ingredients, rather than finished products, for toxic heavy metals appears to have contributed to its failure to detect the dangerous inorganic arsenic levels in its recalled products. Lastly, Beech-Nut does not even test for mercury in baby food.

- 7 -

27. **Gerber.** Gerber used high-arsenic ingredients, using 67 batches of rice flour that had tested over 90 ppb inorganic arsenic. Gerber used ingredients that tested as high as 48 ppb lead; and used many ingredients containing over 20 ppb lead. Gerber rarely test for mercury in their baby foods. In the September 2021 follow-up Congressional report, it was revealed that Gerber's rice cereal tested up to 116 ppb inorganic arsenic, and their average rice cereal product contained 87.43 ppb inorganic arsenic, which is even higher than the amount contained in Beech-Nut's average rice cereal product. While Beech-Nut recalled some of its products and completely discontinued sales of its rice cereal, Gerber have taken no such actions to protect children.

28. **Hain (Earth's Best Organic).** Hain sold finished baby food products containing as much as 129 ppb inorganic arsenic. Hain typically only tested its ingredients, not finished products. Documents show that Hain used ingredients testing as high as 309 ppb arsenic. Hain used ingredients containing as much as 352 ppb lead. Hain used many ingredients with high lead content, including 88 that tested over 20 ppb lead and six that tested over 200 ppb lead. And, Hain does not even test for mercury in its baby food. However, independent testing by HBBF of Hain's Baby Foods confirm that Hain's products contain as much as 2.4 ppb of mercury.

29. The metal concentrations discussed above and further below surpass the limits allowed by U.S. regulatory agencies. There are no FDA final regulations governing the presence of Toxic Heavy Metals in the majority of Baby Foods with the exception of 100 ppb inorganic arsenic in infant rice cereal and proposed (not yet final) limits for lead in certain baby food categories. To the extent such regulations exist, the quantities of Toxic Heavy Metals in Defendants' Baby Foods exceed any permissible FDA levels. To be sure, the FDA has set the maximum contaminant levels ("MCL") in bottled water at 10 ppb inorganic arsenic, 5 ppb lead, and the EPA has capped the allowable level of mercury in drinking water at 2 ppb. However, these limits were created in reference to *adult* exposure, not infants. Compared to these thresholds, the test results of the Defendants' baby foods and their ingredients are multiple folds greater than the permitted metal levels. Moreover, compounding these troubling findings, the

- 8 -

Defendants set internal limits for the presence of Toxic Heavy Metals in their foods that were, themselves, dangerously high and then routinely failed to abide by those inadequate standards, as discussed below.

30.     As Congress observed, the Defendants have willfully sold—and continue to sell—contaminated Baby Foods notwithstanding their full awareness of these unacceptably high levels of Toxic Heavy Metals in their products.

### III.     Defendants Engaged in a Pattern and Practice of Selling Contaminated Baby Foods and Failed to Reduce Metal Levels

31.     Several factors drive the Toxic Heavy Metal contamination of Defendants' baby foods, all of which are within Defendants' control.

32.     *First*, at various times, all Defendants sourced ingredients that contained elevated levels of Toxic Heavy Metals.  These ingredients were then used to manufacture the baby foods consumed by Plaintiffs, thereby exposing Plaintiffs to Toxic Heavy Metals that cause brain damage and other neurodevelopmental harm.  One way for Defendants to "deal" with this issue involved relegating any testing of Toxic Heavy Metals to suppliers and co-manufacturers, who were required to certify that Toxic Heavy Metals were below a certain threshold.  Defendants would audit those results, discover that the reported certifications were false or inaccurate, and then take no action to stop the use of those ingredients or finished products.

33.     *Second*, some Defendants implemented dangerously high internal limits ("specifications" or "specs") for the maximum level of Toxic Heavy Metals that Defendants allowed in the baby foods.  Such high limits—untethered to any consideration of the low levels at which metals are capable of damaging babies' brains—allowed Defendants to source and use ingredients that contained elevated Toxic Heavy Metals to manufacture the baby foods consumed by Plaintiffs.  In the highly competitive and lucrative baby food market, using contaminated ingredients allows each Defendant to retain greater market share.

34.     *Third*, some Defendants failed to implement *any* internal specifications for the amount of Toxic Heavy Metals allowed in ingredients or finished baby foods.  By simply not

- 9 -

looking at the issue, certain highly contaminated ingredients and finished products were allowed to be used and sold to consumers. This would happen notwithstanding the Defendants' specific knowledge of the risk of Toxic Heavy Metals and their presence in ingredients and finished products.

35. *Fourth,* Defendants did not routinely adhere to their own internal metal specifications or standards, allowing contaminated ingredients and finished products to be released as "exceptional releases" or other simpler terminology. This resulted in ingredients being used and baby foods manufactured and sold that contained levels of Toxic Heavy Metals far higher than what was internally set by Defendants. In other instances, Defendants would test products that had been put on the market after-the-fact, learn about the products containing extremely high levels of Toxic Heavy Metals, and then take no action to recall the product or warn consumers about the issue.

36. *Fifth*, upon information and belief, Defendants' manufacturing practices also contributed to contamination. For example, the water used at some of the facilities where the baby foods were manufactured contained Toxic Heavy Metals which, in turn, ended up in the finished baby food product sold for consumption by babies.

37. **Beech-Nut**. Beech-Nut did not test their finished baby foods for heavy metals, only ingredients. And, Beech-Nut regularly accepted ingredients testing far higher than its internal limits for Toxic Heavy Metals. They justified such deviations as "exceptional releases." For example, Beech-Nut "exceptionally released" 160,000 pounds of sweet potatoes for their baby food products notwithstanding the ingredient testing twice as high as Beech-Nut's internal heavy metal limit for lead.

38. Moreover, Beech-Nut did not adequately test their ingredients for heavy metals by limiting ingredient lots and ingredient quantities that were subject to metal testing. For example, if a supplier supplied ingredients below a certain amount, they would not test anything and simply use the ingredient in the finished product. Furthermore, in deciding to violate their own internal limits, Beech-Nut took advantage of the fact that the FDA does not routinely test baby foods for Toxic Heavy Metals.

- 10 -

39.     Upon information and belief, Beech-Nut went so far as to manipulate their testing practices by continually re-testing ingredients that tested above their internal specs until they obtained a result that was at or below their internal specs, knowing full well that the ingredient was nonetheless contaminated.

40.     Beech-Nut internal specifications varied wildly by ingredient, with Beech-Nut allowing very high levels of Toxic Heavy Metals for certain ingredients, and insisting on lower levels for others.  Thus, certain products like rice flour, were allowed to have very high levels of metals like arsenic and lead, even in products that were 90% or more rice.  Beech-Nut did this because there were no regulations governing Toxic Heavy Metal in baby food and, therefore, to remain competitive in the baby food marketplace, Beech-Nut used contaminated ingredients because they were readily available.

41.     **Gerber.**     Gerber tested ingredients and, occasionally, finished products. However, while Gerber was the only Defendant to test both ingredients and finished products with any regularity, they set high heavy metal limits that rendered their food unsafe.  For baby foods generally, between 2012 and 2019, Gerber  set a limit of 40 ppb for lead, 20 ppb for arsenic, and 10 ppb for mercury.  For infant rice cereal, between 2012 and 2017, Gerber set a lead limit of 100 ppb, with a "target" of 50 ppb in 2016 and 2017.  Between 2018 and 2019, Gerber set a lead limit for 50 ppb.  For arsenic in rice cereal, between 2012 and 2015, Gerber did not have a limit, merely a target of 100 ppb.  Then, between 2016 and 2018, it set the arsenic limit at 100 ppb.  By 2019, Gerber increased the arsenic limit to 130 ppb for cereals with 90% rice (and kept the limit at 100 ppb for other cereals).  For snack foods, Gerber had a lead limit of 150 ppb between 2012 and 2014. It was reduced to 100 ppb in 2016 and 2017, and then went down to 50 ppb in 2018 and 2019.  There was no limit for arsenic in snack food prior 2016, just a "target" of 100 ppb.  Then a 100-ppb arsenic limit was set starting in 2016.  For both infant cereal and snacks, Gerber imposed a 30-ppb limit for mercury in infant cereal between 2012 and 2016, and reduced it to 10 ppb from 2017 onward.  With these exceptionally high limits, Gerber sold baby foods that were dangerous for infant consumption.  They did this knowingly.

- 11 -

42.     Gerber would also audit and re-test Toxic Heavy Metal results submitted by suppliers, and find that the certification from suppliers were incorrect or false.  Gerber would nonetheless use the certified results and release products despite the ingredients not meeting specifications or being safe for infant consumption.

43.     Gerber often used high-arsenic ingredients, for example, using 67 batches of rice flour that had tested over 90 ppb inorganic arsenic.  Furthermore, Gerber regularly sold baby food products testing over 100 ppb arsenic, at times reaching 116 ppb, and their average rice cereal product contained 87.43 ppb inorganic arsenic.  Indeed, this is why Congress noted that "Gerber's organic rice cereal is dangerous…"  In other instances, Gerber permitted as much as 300 ppb of arsenic in the rice flour ingredient used to manufacture its U.S. baby foods, notwithstanding the fact that Gerber often implemented stricter standards for baby foods sold in other countries.

44.     Gerber's baby foods are also contaminated with elevated levels of lead.  Gerber used ingredients that tested as high as 48 ppb lead and used many ingredients containing over 20 ppb lead.  Furthermore, Gerber sold baby food products testing at and/or above 50 ppb of lead.   Indeed, Gerber have historically permitted as much as 150 ppb lead in their baby food products.  Although Gerber was fully aware that it was very feasible to source lower-lead ingredients, they proceeded to use high-lead ingredients in their baby foods.  Gerber rarely test for mercury in their baby foods.  This is notwithstanding the fact that mercury is known to contaminate ingredients such as rice and poses a severe risk to babies' brain development.

45.     The February 4, 2021 Congressional Report found Gerber carrots tested for cadmium at levels above 5 ppb, with some containing more than 87 ppb of cadmium.  These are exceptionally high levels.

46.     Moreover, compounding these troubling findings, Gerber historically only tested certain ingredients of its baby food products and only occasionally tested the finished products consumed by babies.  It was not until recently that Gerber started to implement finished product testing on a more regular basis.

47.     Gerber has known since at least the 1990s that inorganic arsenic was neurotoxic

- 12 -

and caused developmental issues. Despite this knowledge, in 2012, when Gerber's infant rice cereal was on the front page of a Consumer Report article on arsenic, a Gerber spokesperson told the public that arsenic in baby food posed no health risk.

48.    **Hain.** Hain did not test its baby food products for heavy metals until 2020 (rice cereal) and 2021 (other baby food). Instead, Hain tested some ingredients used in their foods (but not all ingredients). Ingredients were required to meet specific specifications for each specific ingredient. Those specifications, however, would change wildly without explanation. For example, prior to August 2014, Hain's lead specification for Oat Flour was 200 ppb. Then it was reduced to 50 ppb for four months, went back up to 100 ppb for three months, went back up to 200 ppb for a month, came down to 20 ppb for seven months, went to 25 ppb for six months, and then went back to 200 ppb for the next fourteen months. When asked about this seemingly chaotic shifting of specifications, Hain could not explain it.

49.    Hain would routinely accept ingredients that tested above specifications and use them in baby foods anyway. These "exceptional" releases were made because there were no FDA regulations specifically preventing them.

50.    Because Hain only tested ingredients, and not finished products, they would underestimate metal exposure. For example, in August 2019, the FDA did what Hain had refused: it actually tested Hain's baby food products for heavy metals. FDA sampled Hain's rice cereal and found levels in excess of 100 ppb. FDA tested 20 of Hain's rice cereal products (all manufactured by Beech-Nut for Hain) sold between September 2017 and June 2018, and found 9 samples in excess of 100 ppb of inorganic arsenic, and 16 (80%) above 90 ppb. The FDA raised concern about Hain's failure to test finished product, and asked Hain to conduct an investigation. These concerns about Hain's rice cereal were independently confirmed by HBBF, where they found 113 and 107 ppb of inorganic arsenic (138 and 126 ppb of arsenic) in those same products. As a result of the FDA-ordered investigation, Hain learned that its rice cereal exceeded FDA arsenic levels because Hain never accounted for the arsenic added to the product from the vitamin premix. Hain discovered that the vitamin premix specification was 3,000 ppb for arsenic and 4,000 ppb for lead. They realized that their products needed to be tested in

- 13 -

finished form to actually estimate the levels of heavy metals in their foods. Hain also realized that the use of brown rice was contributing to the high levels of arsenic, so, thereafter, they started using white rice (as opposed to brown rice) to reduce arsenic levels and began testing rice cereal regularly.

**IV.    Defendants Abandon Efforts to Reduce Metal Levels in Baby Foods**

51.    In 2019, as concerns grew over contamination of certain baby foods on the U.S. market, a consortium of the Baby Food Manufacturers comprised of Defendant Beech-Nut, Gerber, and Hain, as well as certain interested third party groups such as the Environmental Defense Fund ("EDF") and HBBF, were formed with the intention "of reducing heavy metals in young children's food."

52.    The consortium was named the Baby Food Council ("BFC"). The BFC involved the sharing of common testing data on the levels of metal contamination of Defendants' baby foods, a grant to Cornell University to further study the issue, and a proposed "voluntary Baby Food Standard to limit the amounts of heavy metals in baby food." The BFC specifically recognized the risk of neurodevelopmental harm caused by Toxic Heavy Metals to the developing brain of infants and that there were no safe levels of exposure.

53.    The Baby Food Standard "would have provided companies with a common framework for progressively reducing contaminants by regularly testing products and improving management practices, and for being transparent with consumers about the safety of their products."

54.    After several years of negotiations and discussions, including a proposed system for testing, the EDF and HBBF proposed voluntary limits of 1 ppb for lead. The baby food companies, however, rejected the proposal outright. Participation in the BFC was little more than a façade—they had no intention of self-regulating their products as it related to Toxic Heavy Metals.

55.    This led EDF and HBBF to leave the BFC in protest in 2021. They explained their departure publicly, noting that Defendants "all decided to backpedal on this project—even though the standard was designed to protect babies' brain development" and provide adequate

- 14 -

notice to consumers regarding the presence of Toxic Heavy Metals on Baby Food labeling. EDF explained:

> EDF cofounded the Council because we believed there was a shared commitment to reduce levels of lead, arsenic and cadmium in baby food products to better protect children's developing brains from these toxins … Unfortunately, the companies chose to cease the Council's development of a voluntary Baby Food Standard that it had begun in late 2020. The Standard would have provided companies with a common framework for progressively reducing contaminants by regularly testing products and improving management practices, and for being transparent with consumers about the safety of their products. Negotiations failed to provide an alternative approach that EDF felt was sufficient to drive down levels of lead, arsenic and cadmium in baby food."

56.     HBBF explained:

> Healthy Babies Bright Futures is focused on tangibly reducing neurotoxic exposures to babies.  The baby food companies' refusal to jointly set limits for heavy metals in baby food has shown that the Council will no longer be the powerful mechanism for this important work that the initial plans had promised. The baby food companies' decision to stop progress on a voluntary standard for heavy metals in baby food is a disappointment … What started as dedication has turned into delay and intention has become inaction.  So HBBF has decided to put our effort into other initiatives that will move the needle on this important issue.

57.     In short, the Defendants opted to continue "self-regulating," the same self-regulation which exposed—and continued to expose—Plaintiffs to Toxic Heavy Metals in Defendants' baby foods.

## V.     The Dangers of Toxic Heavy Metals and Metal Exposure Through Consumption of Baby Foods

58.     According to the World Health Organization ("WHO"), Toxic Heavy Metals, specifically lead, arsenic, mercury, and cadmium pose a "major public health concern" for children.  The Occupational Safety and Health Administration ("OSHA") has warned that these metals "may build up in biological systems and become a significant health hazard."  Indeed, the Department of Health and Human Services' Agency for Toxic Substances and Disease Registry ("ATSDR") ranks arsenic as number *one* among substances present in the environment that pose the most significant potential threat to human health, followed by lead (second), mercury (third), and cadmium (seventh).

59.     The threat presented by Toxic Heavy Metals to children's health is widely shared by the global regulatory and scientific community.  For example, the FDA has set an Interim

- 15 -

Reference Level ("IRL") of 2.2 micrograms/day for lead exposure through baby food products. That is the amount of lead exposure at or above which the agency considers associated with adverse neurodevelopmental effects in babies. The FDA, in its guidance documents for inorganic arsenic and lead in baby food products has repeatedly acknowledged the dangers of heavy metals to the neurodevelopment of infants.

> Even low lead exposure can harm children's health and development, specifically the brain and nervous system. Neurological effects of lead exposure during early childhood include learning disabilities, behavior difficulties, and lowered IQ. Lead exposures also may be associated with immunological, cardiovascular, renal, and reproductive and/or developmental effects…Because lead can accumulate in the body, even low-level chronic exposure can be hazardous over time…Even though no safe level of lead exposure has yet been identified for children's health, the IRL serves as a useful benchmark in evaluating the potential for adverse effects of dietary lead. In particular, FDA is focused on the potential for neurodevelopmental effects from lead exposure, as review of the scientific literature indicates that *such adverse effects of lead consistently occur at a blood lead level associated with FDA's IRL for children*. (emphasis added).

60. As one recent study observed, "[t]he implications of heavy metals with regards to children's health have been noted to be more severe compared to adults. The elements' harmful consequences on children health include mental retardation, neurocognitive disorders, behavioral disorders, respiratory problems, cancer and cardiovascular diseases. Much attention should be given to heavy metals because of their high toxicity potential, widespread use, and prevalence." Children and, even more so, babies have higher exposure to metals compared to adults because they consume more food in relation to their body weight and absorb metals more readily than adults by 40 to 90%.

61. The mechanisms needed to metabolize and eliminate heavy metals are comparatively undeveloped in childhood, with babies having weaker detoxifying mechanisms and poorer immune systems than adults. For example, liver pathways that in adulthood metabolize absorbed arsenic do not mature until mid-childhood; un-excreted arsenic thus continues to circulate and is deposited in other organs. According to Linda McCauley, Dean of the Nell Hodgson Woodruff School of Nursing at Emory University, who studies environmental health effects, "[n]o level of exposure to these [heavy] metals has been shown to be safe in vulnerable infants."

62.     Thus, "the major windows of developmental vulnerability occur during infancy and early childhood due to continuing brain development after birth."  In short, even small amounts of exposure to Toxic Heavy Metals can have devastating health outcomes for babies and children.

## VI.     Exposure to Toxic Heavy Metals Has Been Consistently Associated with Neurodevelopmental Harm, i.e., Autism and ADHD in Pediatric Populations

63.     It is well-known that exposure to Toxic Heavy Metals in early life can interfere with neurodevelopment at exceedingly low levels of exposure.  And, one of the ways in which such interference with neurodevelopment can present in a child is in the form of the neurodevelopmental disorders ASD and ADHD.  As the U.S. Centers for Disease Control observed in its 2020 Toxicological Profile for Lead, at just ≤10 µg/dL: "The following neurobehavioral effects in children have been associated with [lead]: "Altered mood and behaviors that may contribute to learning deficits, including *attention deficits, hyperactivity*, *autistic behaviors*, conduct disorders, and delinquency." (emphasis added).  Likewise, the NIH states: "prenatal and early childhood exposure to heavy metals…may be linked to autism spectrum disorder."

64.     Such conclusions have likewise been reached by a consortium of the country's leading epidemiologists, pediatricians, and medical groups, noting that Toxic Heavy Metals such as lead and mercury are "prime examples of toxic chemicals that can contribute to learning, behavioral, or intellectual impairment, as well as specific neurodevelopmental disorders such as ADHD or autism spectrum disorder."

65.     Multiple studies, reviews, and meta-analyses conducted throughout various parts of the world over the last decade have consistently observed that early life exposure to heavy metals can cause brain injury and, specifically, brain injury which manifests as ASD.

66.     For example, four meta-analyses published in 2014, 2017, 2019 and 2020, respectively, observed consistent associations between exposure to arsenic, cadmium, and mercury and ASD in children; with the authors in all three studies recommending—based on the data—that exposure to such metals in children be reduced as much as possible, and one of

- 17 -

the study authors specifically concluding that "Results of the current meta-analysis revealed that mercury is an important causal factor in the etiology of ASD."

67. In a recent 2017 NIH-funded prospective observational study, the authors examined the risk of ASD outcome in twins based on their respective body burden of lead. The study concluded in no uncertain terms that "prenatal and early childhood disruption (excess or deficiency) of multiple metals during critical developmental windows is associated with ASD, and suggests a role for elemental dysregulation in the etiology of ASD."

68. Similarly, a large, prospective study from 2016 in Korean school children observed that low levels of lead exposure in early life are associated with autism, the authors specifically concluding: "even low blood lead concentrations…are associated with more autistic behaviors… underscoring the need for continued efforts to reduce lead exposure."

69. Studies have repeatedly observed strong associations between exposure to cadmium and aluminum and neurodevelopmental disorders such as ASD, as observed by a recent study: "Environmental exposure to…cadmium (Cd)… and aluminum (Al) has been associated with neurodevelopmental disorders including autism spectrum disorder (ASD)." For example, a study from 2014 evaluated the body burden of lead, cadmium, and arsenic in children with autism compared to controls and noted that, in addition to lead and arsenic, "our study demonstrated elevation in the levels of…cadmium…in a child with autism," while an earlier study noted that "autism may be associated with significant alterations of some rare element concentrations, including Cd…" Such results have been confirmed by meta-analyses which "show *significant associations* between ASD and the metals Al [and] Cd." And, such earlier data is further supported by recent research, with a 2023 systematic review and meta-analysis concluding that "compared with the healthy control group, the ASD group had higher concentrations of Cd, Pb, arsenic, and Hg. These 4 heavy metals play different roles in the occurrence and progression of ASD."

70. Repeated associations between early life Toxic Heavy Metal exposure and ASD have also been observed during the pre-natal timeframe, lending further strength to the findings of post-natal studies. For example, in a 2021 study by Skogheim and colleagues, the authors

- 18 -

prospectively assessed the relationship between pre-natal metal exposure in various biomarkers and autism risk.  The study concluded that "[r]esults from the present study show several associations between levels of metals and elements during gestation and ASD and ADHD in children. The most notable ones involved arsenic…mercury…and lead. Our results suggest that even population levels of these compounds may have negative impacts on neurodevelopment."

71.     Similarly, in a study by the research group assessing the New Hampshire Birth Cohort, the authors evaluated the neurotoxic effects of heavy metals during various stages of pregnancy and concluded: "Our results support the hypothesis that exposure to…As in mid to late pregnancy may be neurodevelopmentally harmful."

72.     Such results have been replicated in studies throughout the world, including China, Korea, the U.S., Europe, and Egypt, implicating arsenic, mercury, and lead in pediatric diagnoses of autism and autistic behaviors, with a 2018 Chinese study concluding: "[t]he results of this study are consistent with numerous previous studies, supporting an important role for heavy metal exposure, particularly mercury, in the etiology of ASD."  Indeed, a 2015 Egyptian study noted "[e]nvironmental exposure to these toxic heavy metals, *at key times in development*, may play a ***causal*** role in autism." (emphasis added).

73.     Exposure to Toxic Heavy Metals, specifically lead, has also been repeatedly associated with the development of ADHD in children, as demonstrated by numerous studies.

74.     No fewer than four large meta-analyses, conducted in four different continents (North America, South America, Europe and Asia), and some employing a cross-sectional design, have observed a consistent association between various metals and ADHD in children. Indeed, the authors of the meta-analysis from Spain noted that "the evidence from the studies allowed us to establish that there is an association between lead and ADHD and that even *low levels of lead raise the risk*." (emphasis added).

75.     The findings from the meta-analyses have been replicated in several Chinese studies from 2006, 2014, and 2018, respectively.  Notably, the authors of the 2014 Chinese study observed that "[e]xposure to lead even at low levels correlates with attention-deficit/hyperactivity disorder (ADHD). However, lead-contaminated environments are often

- 19 -

*contaminated with other heavy metals that could exacerbate lead-induced ADHD.*" (emphasis added). This is particularly relevant—and disturbing—as children who consumed Defendants' baby foods were repeatedly exposed to a cocktail of Toxic Heavy Metals that, synergistically, further increased their risk of developing ADHD.

76. Moreover, studies have observed a dose-response relationship between exposure to Toxic Heavy Metals and ADHD, as demonstrated by the 2016 Spanish study Donzelli, *et al*. Another 2016 cross-sectional study from Spain was conducted on 261 children aged 6-9 to examine the association between exposure to arsenic and ADHD. After adjusting for potential confounders, the authors observed a dose-response relationship between urine arsenic levels and inattention and impulsivity scores, concluding that "[urine arsenic] levels were associated with impaired attention/cognitive function, *even at levels considered safe*. These results provide additional evidence that postnatal arsenic exposure impairs neurological function in children." (emphasis added).

77. The fact that such results, and many more, have been observed in multiple studies, conducted by different researchers, at different times, in different parts of the world, in children of multiple ages, utilizing different study methods (prospective, case-control and cross-sectional epidemiological analyses) and measuring a variety of end-points (including hair, blood, and urine), strongly supports a causal relationship between exposure to Toxic Heavy Metals and the development of ASD and ADHD in children.

## VII. Defendants' Baby Foods Contain Toxic Heavy Metals Capable of Interfering with Early Neurodevelopment

78. As illustrated above, Toxic Heavy Metal exposure is capable of inflicting damage to the developing brain at extremely low doses. And, upon information and belief, Defendants manufactured and sold baby foods containing Toxic Heavy Metals that can, under certain circumstances (based upon the genetic susceptibilities, medical history, and other factors of the exposed child) interfere with a baby's neurodevelopment sufficient to cause conditions such as ASD and ADHD.

79. As an initial matter, the study commissioned by HBBF and discussed above

- 20 -

specifically evaluated the propensity for arsenic exposure through consumption of infant rice cereal to impact early life neurodevelopment. Following analyses of the levels of arsenic exposure from consumption of infant rice cereal, the authors concluded "that high consumers of infant rice cereal (i.e., infants eating three servings per day) eating products currently on the U.S. market would have a daily arsenic intake of 0.35-0.67 µg/kg bw/day…per the Tsuji et al. (2015) lower-bound estimate for an RfD for the neurodevelopmental effects of arsenic (0.4 µg/kg bw/day), high consumers of infant rice cereal may also be at risk for this endpoint. Even in average consumers of infant rice cereal (i.e., one serving per day), our estimates of arsenic intakes (0.15 to 0.29 µg/kg bw/day) leave little room for exposures to arsenic from other sources." Thus, consumption of Defendants' baby foods, including but not limited to infant rice cereal and rice-based snack baby food products manufactured and sold by Defendants can expose babies to levels of arsenic above that associated with neurodevelopmental harm in the scientific literature.

80.     Defendants manufactured and sold baby food products that, with just a couple of servings, are capable of exposing a baby to lead levels at or above the 2.2 ug/day considered by the FDA to be associated with neurodevelopmental harm. Each source of lead exposure is cumulative—making any detectable amount of Toxic Heavy Metal in baby food a contributing factor to potential neurodevelopmental harm.

81.     Similarly, upon information and belief, Defendant Hain was aware of the neurotoxic propensities of lead, arsenic, and mercury at low levels, but proceeded to manufacture and sell Baby Foods containing arsenic and lead levels that, upon information and belief, Hain considered as capable of inflicting neurodevelopmental harm.

## VIII.  Defendants Knowingly Sold Baby Foods Containing Toxic Heavy Metals and Knew or Should Have Known of the Risks of Such Exposures in Children and Thus Breeched their Duty of Care in Selling Contaminated Baby Foods

82.     During the time that Defendants manufactured and sold baby foods in the United States, the weight of evidence showed that Defendants' baby foods exposed babies and children to Toxic Heavy Metals. Defendants failed to disclose this risk to consumers through any

- 21 -

means.

83. As discussed above, both independent testing, the Defendants' internal evaluations of their baby foods, and the Defendants' representations and disclosures to Congress and the FDA reveal the presence of Toxic Heavy Metals in Defendants' products. As such, Defendants knew or should have known that their baby foods contain Toxic Heavy Metals with an attendant risk of causing neurodevelopmental harm.

84. Indeed, independent testing performed in early 2019 demonstrated elevated amounts of such Toxic Heavy Metals in Baby Food products on the U.S. market, and the HBBF Report further confirmed such contamination of Defendants' baby foods. And, as the Congressional investigation found, the Defendants continued to sell their baby foods even after testing of both ingredients and finished products revealed the presence of Toxic Heavy Metals.

85. Moreover, the scientific literature on the dangers of Toxic Heavy Metals— particularly as it relates to adverse effects on the neurodevelopment of children—have been well known for decades. Defendants, as manufacturers and sellers of baby foods, are held to the standard of experts and responsible for keeping abreast of the latest scientific developments related are held to the dangers of contaminants in their products. Defendants failed to take action to protect vulnerable children from exposure to the Toxic Heavy Metals in their foods and, thus, subjected them to the risk of brain injury which can manifest as neurodevelopmental disorders such as ASD, ADHD, and related *sequalae*.

86. To be clear, the Defendants are able to manufacture baby foods that do not pose such a dangerous risk to the health of infants and children by using alternative ingredients, not adding certain pre-mix minerals and vitamins high in Toxic Heavy Metals or sampling their ingredients from other sources. At the very least, Defendants were under a duty to warn unsuspecting parents of the presence of Toxic Heavy Metals in their Baby Foods.

IX. **Defendants' Baby Food Products Were Defective Due to Insufficient Warnings, Manufacturing Defects, and/or Design Defects to the Extent the Baby Food Products Contained Detectable Levels of Toxic Heavy Metal**

87. All of Defendants' baby food products that contained detectable levels of Toxic

- 22 -

Heavy Metals (or constituted finished products wherein the ingredients contained detectable levels of Toxic Heavy Metals), assuming state of the art analytical testing, were defective as it relates to warnings because no Defendant has ever warned about the presence of Toxic Heavy Metals in their baby foods. Because discovery is ongoing, a complete list of Defendants' specific baby foods that contained detectable levels of Toxic Heavy Metals is not known at this time. Based on publicly available testing data, including data reported by HBBF and Congress, the vast majority of Defendants' products contain detectable levels of Toxic Heavy Metals in them, rendering them each defective as it relates to warnings.

88. Defendants' baby food products are also defective as manufactured, as they contain detectable Toxic Heavy Metals which are not supposed to be there, by design. Toxic Heavy Metals do not provide any nutritional or therapeutic value to infants or fully-grown humans. They are only poisonous to neurodevelopment. None of these baby food products, by design, should contain Toxic Heavy Metals in them and, thus, to the extent the products contain detectable levels of Toxic Heavy Metals in them, those are manufacturing defects. Based on publicly available data, most of Defendants' baby food products contain some detectable levels of Toxic Heavy Metals in them.

89. If Defendants specifically designed their baby food products to contain Toxic Heavy Metals, meaning their presence was not the product of a manufacturing defect, then the products were defective by design. Toxic Heavy Metals should not be present in foods that are being consumed by infants and products should be designed to not have detectable levels of toxic heavy metal in them. Such designs are easily accomplished, by only using ingredients that contain non-detectable levels of Toxic Heavy Metals and by testing finished products, before release, to ensure they do not contain Toxic Heavy Metals within them. This is possible because there are examples of Defendants' finished products not containing detectable levels of Toxic Heavy Metals—even if, for that same products, there are instances where they did. Thus, Defendants were able to design baby food products to not contain detectable levels of toxic heavy metals, and to the extent that each Defendants' design contemplated there being detectable levels of Toxic Heavy Metals in baby food, the design, itself, was defective.

- 23 -

90. Whether the Defendants' products were defective due to inadequate warnings, manufacturing errors, or by design, the existing publicly available evidence indicates that consumption of Defendants' baby food products exposed Plaintiff to Toxic Heavy Metals, and that Defendants' baby food products contributed to Plaintiff's Toxic Heavy Metal burden during a critical period of infant neurodevelopment. Plaintiff, thus, alleges that this cumulative exposure from Defendants' products to Toxic Heavy Metals, substantially contributed to causing neurodevelopmental harm that manifested as ASD. Moreover, Plaintiff alleges that had these baby food products not been defective—by having sufficient warnings, being correctly manufactured, and/or designed properly—Plaintiff would not have been exposed to levels of Toxic Heavy Metals in Defendants' baby food products that would have contributed to the neurodevelopmental harm that manifested as ASD.

## X. Exemplary / Punitive Damages Allegations

91. Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice. Defendants' conduct is particularly reprehensible given that their toxic foods were directed at vulnerable babies—a population group far more susceptible than adults to the neurotoxic dangers of heavy metals.

92. Defendants were fully aware of the safety risks of Contaminated Baby Foods, particularly the dangerous potential of Toxic Heavy Metals on neurodevelopment in infants and children. Nonetheless, Defendants deliberately crafted their label, marketing, and promotion to mislead consumers. Indeed, Defendants repeatedly market their baby foods as safe for consumption and go so far as claiming that they adhere to "the strictest standards in the world;" and provide "baby's food full of nutrition while meeting standards strict enough for tiny tummies," as well as other statements and representations that hold out their baby foods as safe for consumption by infants. Indeed, each Defendant falsely reassured parents/guardians/caregivers that their baby foods would foster healthy neurodevelopment when consumed even though they knew their baby foods exposed infants' developing brains to potent neurotoxic heavy metals. In actual fact, as discussed above, Defendants routinely sold Contaminated Baby Foods, regularly flouted their own internal limits of Toxic Heavy Metals

- 24 -

and failed to disclose to consumers that their products contained such dangerous contaminants.

93.     This was not done by accident or through some justifiable negligence.  Rather, Defendants knew they could profit by convincing consumers that their baby foods were heathy and safe for infants, and that full disclosure of presence and/or risks of the Toxic Heavy Metals present in the baby foods would limit the amount of money Defendants would make selling the products.  Defendants' object was accomplished not only through a misleading label, but through a comprehensive scheme of selective misleading research and testing, failure to test, false advertising, and deceptive omissions as more fully alleged throughout this Complaint. Parents/guardians/caregivers were denied the right to make an informed decision about whether to purchase Defendants' baby food for their babies without knowing the full risks attendant to that use. Such conduct was done with conscious disregard of Plaintiffs' welfare and rights.

## PLAINTIFF'S USE AND INJURY

94.     Plaintiff was diagnosed with ASD at approximately 3 years of age.

95.     Plaintiff started consuming Baby Food products manufactured and/or sold by the Defendants in approximately 2021 and consumed Defendants' Baby Food products at various times through 2022.

96.     Upon information and belief, the Baby Food products manufactured/marketed by Defendants and consumed by Plaintiff were all contaminated with substantial quantities of Toxic Heavy Metals.

97.      Upon information and belief, as a direct and proximate result of consuming Defendants' Baby Foods, Plaintiff was exposed to substantial quantities of Toxic Heavy Metals.

98.     As a direct and proximate result of consuming Defendants' Baby Foods and the exposure to the Toxic Heavy Metals therein, Plaintiff suffered brain injury which manifested as ASD and related *sequalae*.

99.     Based on prevailing scientific evidence, exposure to the Toxic Heavy Metals at the levels contained in Defendants' Baby Foods can cause brain injury which can manifest as the neurodevelopmental disorders ASD and related *sequalae* in humans.

100.    Had any Defendant warned Plaintiff's parents that Defendants' Baby Foods

- 25 -

could lead to exposure to Toxic Heavy Metals or, in turn, brain injury, Plaintiff would not have consumed the Baby Foods.

101.    Plaintiff alleges that as a direct and proximate result of Plaintiff's consumption of Baby Foods supplied and distributed by Defendants, Plaintiff suffered significant harm, conscious pain and suffering, physical injury and bodily impairment including, but not limited to brain injury which manifested as ASD and related *sequelae*.

## CAUSES OF ACTION

## COUNT I:  STRICT PRODUCTS LIABILITY – FAILURE TO WARN

102.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

103.    At all relevant times, Defendants engaged in the business of researching, testing, developing, designing, manufacturing, labeling, marketing, selling, inspecting, distributing, and promoting baby foods, which are defective and unreasonably dangerous to consumers, including Plaintiff, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of baby foods in the form of the presence of Toxic Heavy Metals. These actions were under the ultimate control and supervision of Defendants.  At all relevant times, Defendants registered, researched, manufactured, distributed, marketed, and sold baby foods and aimed at a consumer market.

104.    Defendants researched, tested, developed, designed, manufactured, labeled, marketed, sold, inspected, distributed, and promoted, and otherwise released into the stream of commerce their Contaminated Baby Foods, and in the course of same, directly advertised or marketed the products to consumers and end users, including Plaintiff, and therefore had a duty to warn about the presence of and risks associated with exposure to Toxic Heavy Metals from the consumption of Contaminated Baby Foods.

105.    At all relevant times, Defendants had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, and distribute, maintain, supply, provide proper warnings, and take such steps as necessary to ensure their Contaminated Baby Foods did not cause users and consumers to suffer from unreasonable and dangerous risks.

- 26 -

Defendants had a continuing duty to warn Plaintiff of dangers associated with exposure to Toxic Heavy Metals from consumption of the Contaminated Baby Foods. Defendants, as a manufacturer, seller, or distributor of food, are held to the knowledge of an expert in the field.

106. At the time of manufacture, Defendants could have provided the warnings or instructions regarding the full and complete risks of exposure to Toxic Heavy Metals in the Contaminated Baby Foods because they knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such toxins.

107. At all relevant times, Defendants failed and deliberately refused to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of their product and to those who would foreseeably use or be harmed by exposure to the Toxic Heavy Metals in Defendants' Baby Foods.

108. Even though Defendants knew or should have known that the presence of Toxic Heavy Metals in Contaminated Baby Foods posed a risk of harm, they failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure to the toxins in the products. The neurotoxic characteristic of Toxic Heavy Metals contained in Defendants' Contaminated Baby Foods, as described above, were known to Defendants, or scientifically knowable to Defendants through appropriate research and testing by known methods, at the time they distributed, supplied, or sold the products, and were not known to end users and consumers, such as Plaintiff. The product warnings for Contaminated Baby Foods in effect during the time period Plaintiff consumed those foods were inadequate, both substantively and graphically, to alert consumers to the presence of and health risks associated with exposure to the Toxic Heavy Metals from Contaminated Baby Food consumption.

109. At all relevant times, Defendants' Contaminated Baby Foods reached the intended consumers, handlers, and users or other persons coming into contact with these products, including Plaintiff, without substantial change in their condition as manufactured, sold, distributed, labeled, and marketed by Defendants.

110. Plaintiff was exposed to the Toxic Heavy Metals in Defendants' Contaminated Baby Foods without knowledge of the potential for such exposure to Toxic Heavy Metals from

- 27 -

consumption of the products and the dangerous characteristics of the toxins.

111. At all relevant times, Plaintiff was exposed to the Toxic Heavy Metals in the Defendants' Contaminated Baby Foods while consuming the foods for their intended or reasonably foreseeable purposes, without knowledge of their dangerous characteristics.

112. Plaintiff could not have reasonably discovered the defects and risks associated with exposure to the Toxic Heavy Metals in the Contaminated Baby Foods prior to or at the time of Plaintiff consuming those foods. Plaintiff relied upon the skill, superior knowledge, and judgment of Defendants to know about and disclose serious health risks associated with exposure to the toxins in Defendants' products.

113. The information that Defendants did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled consumers such as Plaintiffs to avoid consuming the products and, in turn, exposure to the Toxic Heavy Metals. Instead, Defendants disseminated information that was inaccurate, false, and misleading, and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries with use of and/or exposure to the Toxic Heavy Metals in the Contaminated Baby Foods; continued to aggressively promote the safety of their products, even after they knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods.

114. This alleged failure to warn is not limited to the information contained on Contaminated Baby Foods labeling. The Defendants were able, in accord with federal law, to comply with relevant state law by disclosing the known risks associated with exposure to Heavy Metals in Contaminated Baby Foods through other non-labeling mediums, i.e., promotion, advertisements, public service announcements, and/or public information sources. But the Defendants did not disclose these known risks through any medium. The ability to provide such warnings is not prohibited by any federal law.

115. Furthermore, Defendants possess a First Amendment Right to make truthful

- 28 -

statements about the products they sell, and no law could lawfully restrict that constitutional right. This included making statements about the presence of and risks associated with Toxic Heavy Metals in Contaminated Baby Foods.

116. Had Defendants provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with exposure to the toxins in their Contaminated Baby Foods, Plaintiffs could have avoided the risk of developing injuries and could have obtained or used alternative products. However, as a result of Defendants' concealment of the dangers posed by the Toxic Heavy Metals in their Contaminated Baby Foods, Plaintiff could not have averted their exposures.

117. Defendants' conduct, as described above, was reckless. Defendants risked the lives of babies and children, including Plaintiff, with knowledge of the safety problems associated with Contaminated Baby Foods, and suppressed this knowledge from the general public. Defendants made conscious decisions not to warn or inform the unsuspecting public.

118. The Defendants' lack of adequate warnings and instructions accompanying their Contaminated Baby Foods caused Plaintiff's injuries.

119. As a direct and proximate result of the Defendants' failure to provide an adequate warning of the risks of exposure to the Toxic Heavy Metals in their Contaminated Baby Foods, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to past and future medical expenses, lost income, and other damages.

120. **WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

### COUNT II: STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

121. Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

122. At all times herein mentioned, Defendants designed, manufactured, tested, marketed, sold, handled, and distributed the Contaminated Baby Foods consumed by Plaintiff.

- 29 -

123. At all relevant times, the Contaminated Baby Foods consumed by Plaintiff were expected to and did reach Plaintiff without a substantial change in their condition as manufactured, handled, distributed, and sold by Defendants.

124. At all relevant times, the Contaminated Baby Foods consumed by Plaintiff were used in a manner that was foreseeable and intended by Defendants.

125. The Contaminated Baby Foods consumed by Plaintiff were not reasonably safe for their intended use and were defective with respect to their manufacture, as described herein, in that Defendants deviated materially from their design and manufacturing specifications and/or such design and manufacture posed an unreasonable risk of harm to Plaintiffs.[1] Baby food should not, by design, contain any detectable levels of Toxic Heavy Metals in them. Thus, Defendants' Contaminated Baby Foods contain manufacturing defects.

126. The Defendants' Contaminated Baby Foods contained Toxic Heavy Metals because, while in the control and possession of Defendants, they manufactured ingredients and used manufacturing processes that result in the finished product being contaminated with Toxic Heavy Metals. Had Defendants properly manufactured (directly or through co-manufacturers) the baby foods, they would not have contained detectable levels of Toxic Heavy Metals in them and, thus, would not have contained a manufacturing defect.

127. Nothing under federal law limited or restricted Defendants from taking action to reduce or eliminate the Toxic Heavy Metals from being present in their baby foods.

128. This manufacturing defect caused Plaintiff to be exposed to Toxic Heavy Metals through ingestion of the Contaminated Baby Foods which, in turn, caused neurodevelopmental harm that manifested as ASD.

129. The exposure to the Toxic Heavy Metals in the Contaminated Baby Foods creates risks to the health and safety of babies that are far more significant than the risks posed by non- Contaminated Baby Food products, and which far outweigh the utility of the Contaminated Baby Foods products because of Defendants' manufacturing defects.

---

[1] If, through discovery and further litigation, it is discovered that Defendants' baby food products contained detectable levels of Toxic Heavy Metals by design, then Plaintiff will pursue a design defect claim (Count III) in the alternative.

130.     Defendants have intentionally and recklessly manufactured the Contaminated Baby Foods with wanton and willful disregard for the rights and health of Plaintiff, and with malice, placing their economic interests above the health and safety of Plaintiff.

131.     As a direct and proximate result of the Defendants' defective manufacture of the Contaminated Baby Foods, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to medical expenses, lost income, and other damages.

132.     **WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

### COUNT III:  STRICT PRODUCTS LIABILITY – DESIGN DEFECT

133.     Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

134.     At all times herein mentioned, Defendants designed, manufactured, tested, marketed, sold, handled, and distributed the Contaminated Baby Foods consumed by Plaintiff. These actions were under the ultimate control and supervision of Defendants.

135.      At all relevant times, Defendants' Baby Food products were designed and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use or consumption by infants and babies, including Plaintiff.

136.     Defendants' Contaminated Baby Food products as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants were defective in design and formulation in that, when they were placed into the stream of commerce, they were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

137.     Defendants' Contaminated Baby Food products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants were defective in design and formulation in that, when they left the hands of Defendants, the foreseeable risks exceeded the alleged benefits associated with their design and

- 31 -

formulation.

138. At all relevant times, the Contaminated Baby Food products consumed by Plaintiff were expected to and did reach Plaintiff without a substantial change in its condition as designed, manufactured, handled, distributed, and sold by Defendants.

139. At all relevant times, Defendants knew or had reason to know that their Contaminated Baby Food products were defective and were inherently dangerous and unsafe when used in the manner instructed and provided by Defendants.

140. Therefore, at all relevant times, Defendants' Baby Food products, as researched, tested, developed, designed, registered, licensed, manufactured, packaged, labeled, distributed, sold and marketed by Defendants were defective in design and formulation, in one or more of the following ways:

A. When placed in the stream of commerce, Defendants' Contaminated Baby Food products were unreasonably dangerous in that they contained Toxic Heavy Metals that posed a risk of causing interference with neurodevelopment in babies that manifests as the neurodevelopmental disorders ASD, ADHD and related *sequalae* when used in a reasonably anticipated manner;

B. When placed in the stream of commerce, Defendants' designed Contaminated Baby Food products to contain unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner;

C. Defendants, by design, did not sufficiently test, investigate, or study their Contaminated Baby Food products;

D. Exposure to the Toxic Heavy Metals in Defendants' Contaminated Baby Food products present a risk of harmful effects that outweigh any potential utility stemming from their use;

E. Defendants, by design, did not conduct adequate post-marketing surveillance of their Contaminated Baby Food products which would have alerted the public to risks; and

F. Defendants could have employed safer alternative designs and

- 32 -

formulations for Contaminated Baby Foods, such as ensuring the baby food did not have any detectable level of Toxic Heavy Metals.

141. Plaintiff consumed Defendants' Contaminated Baby Food products in an intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

142. Defendants' Contaminated Baby Food products were and are more dangerous than alternative products, and Defendants could have designed their Contaminated Baby Food products to avoid harm to children. Indeed, at the time Defendants designed the Contaminated Baby Food products, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable.

143. At the time the Contaminated Baby Food products left Defendants' control, there was a practical, technically feasible, and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Defendants' Contaminated Baby Foods.

144. Defendants intentionally and recklessly defectively designed the Contaminated Baby Foods with wanton and willful disregard for the rights and health of Plaintiff, and with malice, placing their economic interests above the health and safety of Plaintiff.

145. The design defects in Defendants' Contaminated Baby Foods were substantial factors in causing Plaintiff's injuries.

146. As a direct and proximate result of the Defendants' defective design of the Contaminated Baby Foods, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to medical expenses, lost income, and other damages.

147. **WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT IV: NEGLIGENCE – FAILURE TO WARN

148. Plaintiff incorporates by reference each allegation set forth in preceding

- 33 -

paragraphs as if fully stated herein.

149.    At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting baby foods. Defendants knew, or, by the exercise of reasonable care, should have known that their Contaminated Baby Foods are not accompanied with adequate warnings concerning the dangerous characteristics of exposure to Toxic Heavy Metals from consumption. These actions were under the ultimate control and supervision of Defendants.

150.    Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce their Contaminated Baby Foods, and in the course of same, directly advertised or marketed the products to consumers and end users, including Plaintiff, and therefore had a duty to warn of the risks associated with the presence of and exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods.

151.    At all relevant times, Defendants had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, supply, provide proper warnings, and take such steps as necessary to ensure their Contaminated Baby Foods did not cause users and consumers to suffer from unreasonable and dangerous risks. Defendants had a continuing duty to warn Plaintiff of dangers associated with the presence of and exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods. Defendants, as a manufacturer, seller, or distributor of food products, are held to the knowledge of an expert in the field.

152.    At the time of manufacture, Defendants could have provided warnings regarding the presence of and risks of exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods because they knew or should have known exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods was dangerous, harmful and injurious when the Contaminated Baby Foods were consumed by Plaintiff in a reasonably foreseeable manner.

153.    At all relevant times, Defendants failed and deliberately refused to investigate,

- 34 -

study, test, or promote the safety or to minimize the dangers to users and consumers of their products and to those who would foreseeably use or be harmed by Defendants' Contaminated Baby Foods.

154. Defendants knew or should have known that exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods posed a risk of harm, but failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure to the toxins in the products. The dangerous propensities of exposure to Toxic Heavy Metals from consumption of the Contaminated Baby Foods, as described above, were known to Defendants, or scientifically knowable to Defendants through appropriate research and testing by known methods, at the time they distributed, supplied, or sold the products, and were not known to end users and consumers, such as Plaintiff.

155. At all relevant times, Plaintiff was exposed to Toxic Heavy Metals through consumption of the Contaminated Baby Foods while using the products for their intended or reasonably foreseeable purposes, without knowledge of their dangerous characteristics.

156. Defendants knew or should have known that the non-extant warnings disseminated with their Contaminated Baby Foods were inadequate, failed to communicate adequate information on the presence of and dangers of exposure to toxins contained therein, and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended and reasonably foreseeable uses.

157. The information that Defendants did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled consumers such as Plaintiffs to avoid using the product and, in turn, prevented exposure to the Toxic Heavy Metals contained therein. Instead, Defendants disseminated information that was inaccurate, false, and misleading, and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries with use of and/or exposure to the Toxic Heavy Metals in the Contaminated Baby Foods; continued to aggressively promote the efficacy of their products, even after they knew or should have known of the unreasonable risks from use or exposure to the toxins contained therein; and concealed, downplayed, or otherwise suppressed,

- 35 -

through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Toxic Heavy Metals from consumption of the Contaminated Baby Foods.

158. A reasonable company under the same or similar circumstance would have warned and instructed of the dangers of exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods.

159. This alleged failure to warn is not limited to the information contained on the labeling of Defendants' Contaminated Baby Foods. Defendants were able, in accord with federal law, to comply with relevant state law by disclosing the known risks associated with exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods through other non-labeling mediums, i.e., promotion, advertisements, public service announcements, and/or public information sources. But the Defendants did not disclose these known risks through any medium.

160. Furthermore, Defendants possess a First Amendment Right to make truthful statements about the products they sell, and no law could lawfully restrict that constitutional right.

161. Had Defendants provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with the presence of and exposure to Toxic Heavy Metals in the Contaminated Baby Foods, Plaintiff could have avoided the risk of developing injuries and could have obtained or used alternative products. However, as a result of Defendants' concealment of the dangers posed by their Contaminated Baby Foods, Plaintiff could not have averted their injuries.

162. Defendants' conduct, as described above, was reckless. Defendants risked the lives of consumers and users of their products, including Plaintiff, with knowledge of the safety problems associated with Contaminated Baby Foods, and suppressed this knowledge from the general public. Defendants made conscious decisions not to warn or inform the unsuspecting public.

163. The Defendants' lack of adequate warnings and instructions accompanying their

- 36 -

Contaminated Baby Foods were a substantial factor in causing Plaintiff's injuries.

164. As a direct and proximate result of the Defendants' failure to provide an adequate warning of the risks of exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to past and future medical expenses, lost income, and other damages.

165. **WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

### COUNT V: NEGLIGENCE – MANUFACTURING

166. Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

167. At all relevant times, the Defendants manufactured, tested, marketed, sold, and distributed the Contaminated Baby Foods that Plaintiff consumed.

168. The Defendants had a duty to exercise reasonable care, in the manufacturing, testing, marketing, sale, and distribution of baby foods.

169. The Defendants knew or, by the exercise of reasonable care, should have known, that exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods rendered the foods carelessly manufactured, dangerous, harmful and injurious when used by Plaintiff in a reasonably foreseeable manner.

170. The Defendants knew or, by the exercise of reasonable care, should have known, ordinary consumers such as Plaintiff would not have realized the potential risks and dangers of exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods.

171. Without limitation, examples of the manner in which Defendants breached their duty to exercise reasonable care in manufacturing Contaminated Baby Foods, included:

    A. Failure to adequately inspect/test the Contaminated Baby Foods, and their ingredients, during and after the manufacturing process;

    B. Failure to implement procedures that would reduce or eliminate Toxic

- 37 -

Heavy Metals in baby foods;

C.     Failure to investigate suppliers and ingredient sources to reduce and eliminate the risk of ingredients containing Toxic Heavy Metals; and

D.     Failure to avoid using ingredients free from, or which contain far less, Toxic Heavy Metals to manufacture baby food.

172.     A reasonable manufacturer under the same or similar circumstances would have implemented appropriate manufacturing procedures to better ensure the quality and safety of their product.

173.     Plaintiff was harmed directly and proximately by the Defendants' failure to use reasonable care in the manufacture of their Contaminated Baby Foods. Such harm includes exposure to Toxic Heavy Metals, which can cause or contribute to interference with early neurodevelopment which manifests as ASD, and related *sequalae*.

174.     Defendants' improper manufacturing of Baby Foods was willful, wanton, malicious, and conducted with reckless disregard for the health and safety of users of the Contaminated Baby Foods, including Plaintiff.

175.     The defects in Defendants' Contaminated Baby Foods were substantial factors in causing Plaintiff's injuries.

176.     As a direct and proximate result of the Defendants' improper manufacturing of Contaminated Baby Foods, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to past and future medical expenses, lost income, and other damages.

177.     **WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT VI:  NEGLIGENCE – PRODUCT DESIGN

178.     Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

179.     Defendants knew or, by the exercise of reasonable care, should have known,

- 38 -

ordinary consumers such as Plaintiff would not have realized the potential risks and dangers of Contaminated Baby Foods.

180. The Defendants owed a duty to all reasonably foreseeable users to design a safe product.

181. The Defendants breached their duty by failing to use reasonable care in the design of Contaminated Baby Foods because the products exposed babies to Toxic Heavy Metals.

182. The Defendants breached their duty by failing to use reasonable care in the design of Contaminated Baby Foods by negligently designing the foods with ingredients and/or components contaminated with Toxic Heavy Metals.

183. The Defendants breached their duty by failing to use reasonable care in the design of Contaminated Baby Foods by negligently designing and formulation, in one or more of the following ways:

A. When placed in the stream of commerce, Defendants' Contaminated Baby Foods were defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate;

B. When placed in the stream of commerce, Defendants' Contaminated Baby Foods were unreasonably dangerous in that they were hazardous and posed a risk of neurodevelopmental disorders and other serious illnesses when used in a reasonably anticipated manner;

C. When placed in the stream of commerce, Defendants' Contaminated Baby Foods contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner;

D. Defendants did not sufficiently test, investigate, or study their Contaminated Baby Foods and, specifically, the content of Toxic Heavy Metals in the ingredients used to manufacture the foods and/or the finished products;

E. Defendants did not sufficiently test, investigate, or study their Contaminated Baby Foods and, specifically, the ability for those foods to expose babies to

- 39 -

Toxic Heavy Metals; and

F. Exposure to the Toxic Heavy Metals in Contaminated Baby Foods presents a risk of harmful effects that outweigh any potential utility stemming from the use of the products;

184. Defendants knew or should have known at the time of marketing Contaminated Baby Foods that exposure to Toxic Heavy Metals contained in the Baby Foods could result in interference with early neurodevelopment that that manifests as ASD, ADHD and other severe illnesses and injuries.

185. Defendants, by design, did not conduct adequate post-marketing surveillance of their Contaminated Baby Foods.

186. Defendants could have employed safer alternative designs and formulations. For example, the Defendants could have avoided use of certain ingredients contaminated with Toxic Heavy Metals, avoided using pre-mix vitamins contaminated with Toxic Heavy Metals, and/or sampled their ingredients from other sources.

187. The Defendants breached their duty by failing to use reasonable care by failing to use cost effective, reasonably feasible alternative designs. There was a practical, technically feasible, and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Defendants' Contaminated Baby Foods.

188. A reasonable company under the same or similar circumstances would have designed a safer product.

189. Plaintiff was harmed directly and proximately by the Defendants' failure to use reasonable care in the design of their Contaminated Baby Foods. Such harm includes exposure to Toxic Heavy Metals, which can cause or contribute to interference with neurodevelopment that manifests as ASD and related *sequalae*.

190. Defendants' defective design of Contaminated Baby Foods was willful, wanton, malicious, and conducted with reckless disregard for the health and safety of consumers of the Baby Foods, including Plaintiff.

- 40 -

191. The defects in Defendants' Contaminated Baby Foods were substantial factors in causing Plaintiff's injuries.

192. As a direct and proximate result of the Defendants' negligent design of the Contaminated Baby Foods, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to past and future medical expenses, lost income, and other damages.

193. **WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT VII: GENERAL NEGLIGENCE

194. Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

195. Plaintiff pleads claims for negligence under all theories that may be actionable under any applicable state laws.

196. Defendants owed Plaintiff a duty to act with reasonable care.

A. Defendants owed a duty because they distributed and promoted their products as safe for children to consume.

B. Defendants owed a duty because their conduct created a risk of harm to Plaintiffs and caused Plaintiff actual harm.

C. Defendants owed a duty because the risk of harm to Plaintiff was embedded in, and an inherent component of, their negligent business practices.

D. Defendants owed a duty because they designed, manufactured, controlled, distributed, and sold their products to Plaintiff.

197. Defendants breached their duty to Plaintiff.

198. Defendants' negligence includes, but is not limited to, their marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling and/or distributing Contaminated Baby Foods in one or more of the following respects:

A. Failure to implement procedures that would reduce or eliminate Toxic

- 41 -

Heavy Metals in baby foods;

B. Failure to investigate suppliers and ingredient sources to reduce and eliminate the risk of ingredients containing Toxic Heavy Metals;

C. Failure to avoid using ingredients free from, or which contain far less, Toxic Heavy Metals to manufacture baby food;

D. When placed in the stream of commerce, Defendants' Contaminated Baby Foods were defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate;

E. When placed in the stream of commerce, Defendants' Contaminated Baby Foods were unreasonably dangerous in that they were hazardous and posed a risk of neurodevelopmental disorders and other serious illnesses when used in a reasonably anticipated manner;

F. When placed in the stream of commerce, Defendants' Contaminated Baby Foods contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner;

G. Defendants, by design, did not conduct adequate post-marketing surveillance of their Contaminated Baby Food products which would have alerted the public to risks;

H. Defendants did not sufficiently test, investigate, or study their Contaminated Baby Foods and, specifically, the ability for those foods to expose babies to Toxic Heavy Metals;

I. Defendants could have employed safer alternative designs and formulations for Contaminated Baby Foods, such as ensuring the baby food did not have any detectable level of Toxic Heavy Metal;

J. Defendants did not sufficiently test, investigate, or study their Contaminated Baby Foods and, specifically, the content of Toxic Heavy Metals in the ingredients used to manufacture the foods and/or the finished products; and

K. Exposure to the Toxic Heavy Metals in Contaminated Baby Foods

- 42 -

presents a risk of harmful effects that outweigh any potential utility stemming from the use of the products.

199. Defendants knew or should have known that their products contained detectable levels of heavy metals that created an unreasonable risk of harm to children who consumed their products.

200. At all relevant times, the Defendants knew or should have known that the Products were unreasonably dangerous and defective when put to their reasonably anticipated use.

201. As a proximate result of Defendants' negligence, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss, and damages including, but not limited to past and future medical expenses, lost income, and other damages.

202. **WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

203. Plaintiff demands a trial by jury on all the triable issues within this pleading.

## PRAYER FOR RELIEF

204. WHEREFORE, Plaintiff requests that the Court enter judgment in Plaintiff's favor and against the Defendants for:

a. actual or compensatory damages in such amount to be determined at trial and as provided by applicable law;

b. exemplary and punitive damages sufficient to punish and deter the Defendants and others from future wrongful practices;

c. pre-judgment and post-judgment interest;

d. costs including reasonable attorneys' fees, court costs, and other litigation expenses; and

e. any other relief the Court may deem just and proper.

- 43 -

Dated: May 27, 2026

Respectfully submitted,

*/s/ Joseph O. Masterman*
Joseph O. Masterman (No. 1004179)
**COOPER MASTERMAN PLLC**
1717 Pennsylvania Ave., N.W., Suite 1025
Washington, D.C. 20006
Telephone: (202) 866-0173
joe@coopermasterman.com

Timothy Jackson
**WALLACE MILLER**
200 West Madison Street #3400
Chicago, IL 60606
Telephone: (312) 261-6193
Facsimile: (312) 275-8174
tej@wallacemiller.com


*Counsel for Plaintiff*

- 44 -

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION**

| | |
|---|---|
| This Document Relates To:<br><br>J.P., by and through his mother,<br>Janice Patterson<br><br>  *Plaintiff*,<br><br>v.<br><br>Beech-Nut Nutrition Company, Gerber Products Company, Walmart, Inc. and DOES 1 through 10 inclusive<br><br>  *Defendants*. | **COMPLAINT AND JURY DEMAND**<br><br><br>1:26-cv-75-GNS |

**<u>INTRODUCTION</u>**

1. Defendants *knowingly* sold baby food products contaminated with lead, arsenic, mercury, cadmium, and aluminum (collectively "Toxic Heavy Metals"). They did this knowing that Toxic Heavy Metals, when consumed by babies, are known to cause brain damage and neurodevelopmental harm. Thus, to the extent Defendants sold baby food that contained detectible amounts of Toxic Heavy Metals (collectively "Contaminated Baby Food") those products were defective in their manufacture, design, and labeling. Babies are the most vulnerable segment of the population, and they rely on that food for healthy neurodevelopment. Defendants justify this callous disregard for the welfare of babies because, until recently, there were no regulations governing the presence of Toxic Heavy Metals in baby foods—and, because there were no regulations, they were free to do as they pleased.

2. This lawsuit aims to stop Defendants from poisoning infants with Contaminated Baby Food. Baby food *should* be safe. It should *not* be contaminated with Toxic Heavy Metals. Period. By sourcing ingredients from farms that have non-detectable levels of heavy metal (using sufficiently sensitive testing), avoiding certain ingredients all together, and

- 1 -

systematically testing and screening finished products for Toxic Heavy Metals *before* the foods are released for consumption, these Defendants would be able to provide baby food products free of detectable levels of Toxic Heavy Metals. And, if some levels are truly unavoidable, or if Defendants believe the identified levels are safe, then, at the very least, Defendants must warn parents/guardians/caregivers about the presence of these Toxic Heavy Metals so they can make informed decisions about what they are feeding their baby. Anything short of proper design, manufacture, and warning, is unacceptable—especially for an industry that touts itself as providing the most important sources of neurodevelopment for the most vulnerable population of society.

3. Plaintiff, here, lives with brain injuries and neurodevelopmental harm caused by exposure to the Defendants' Contaminated Baby Food, which has manifested in a diagnosis of autism spectrum disorder ("ASD").

4. Plaintiff's parents were never warned that the Defendants' food contained Toxic Heavy Metals and, thus, were never able to make an informed decision about whether to feed their babies Defendants Contaminated Baby Foods. The consequences are stark—there is an unprecedented epidemic of ASD and ADHD spreading throughout the American population, driven, in part, by the systematic neurodevelopmental poisoning of infants from these Defendants' Contaminated Baby Foods.

5. This case seeks to hold the Defendants accountable for their reprehensible conduct by compensating Plaintiff who was harmed by the Defendants' Contaminated Baby Foods, and ensure each Defendant is punished to deter such conduct in the future.

## PARTIES

### I. Plaintiffs

6. Plaintiff is an adult, who lives with brain injuries and neurodevelopmental harm caused by exposure to the Defendants' Contaminated Baby Food, which has manifested in a diagnosis of ASD. Plaintiff's exposure to Defendants' Contaminated Baby Food products occurred while Plaintiff was a child.

7. Plaintiff's mother is Plaintiff's legal guardian.

- 2 -

8.    Plaintiff consumed baby foods manufactured by Beech-Nut Nutrition Company, Gerber Products Company, Inc., and Walmart, Inc.

9.    Plaintiff consumed these baby foods from approximately August 2007 through August 2008.

10.    Plaintiff alleges that as a direct and proximate result of Plaintiff's exposure to Toxic Heavy Metals from consumption of Defendants' Contaminated Baby Foods, they suffered significant harm, conscious pain and suffering, physical injury and bodily impairment including, but not limited to, brain injury manifesting as the neurodevelopmental disorder ASD, other permanent physical deficits, permanent bodily impairment, and other *sequelae*. Plaintiff was diagnosed in or about 2012. Plaintiff's injuries required medical intervention to address the adverse neurological effects and damage caused by exposure to Toxic Heavy Metals in Defendants' Contaminated Baby Foods.  Additionally, Plaintiff has suffered severe mental and physical pain, including but not limited to, pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress and has and will sustain such injuries, along with economic loss due to medical expenses and living-related expenses as a result of lifestyle changes, into the future, as determined by the Trier of Fact.

11.    The product warnings for the Contaminated Baby Foods in effect during the time period Plaintiff consumed the Contaminated Baby Foods were non-existent, vague, incomplete and/or otherwise inadequate, both substantively and graphically, to alert consumers to the presence of Toxic Heavy Metals in the Contaminated Baby Foods and/or the potentially severe health risks associated with Toxic Heavy Metal exposure in babies.  Thus, each Defendant did not provide adequate warnings to consumers including Plaintiff, his parents, and the general public about the presence of Toxic Heavy Metals in the Contaminated Baby Foods consumed by Plaintiffs and the potential risk of the serious adverse events associated with Toxic Heavy Metal exposure in infancy.

12.    Had Plaintiff or his parents been adequately warned by the Defendants of the potential for exposure to Toxic Heavy Metals from consumption of Defendants' Baby Foods,

- 3 -

COMPLAINT AND JURY DEMAND

and/or the potential for such exposure to result in harm, Plaintiff, or their parents would not have purchased, used and/or consumed Contaminated Baby Foods or would have taken other steps to potentially mitigate the harm caused by exposing a baby to Toxic Heavy Metals.

## II.     Defendants

13.     The following are the Defendants listed in this Complaint.  In alphabetical order:

1.  Beech-Nut Nutrition Company ("Beech-Nut")

2.  Gerber Products Company ("Gerber")

3.  Walmart, Inc. ("Walmart")

14.     Defendant Beech-Nut Nutrition Company ("Beech-Nut") is a citizen of Delaware and New York with its principal place of business located at 1 Nutritious Pl., Amsterdam, New York 12010.  Beech-Nut branded baby foods aim at infants 4+ months up to 12+ months and include a variety of cereals, "jars," and "pouches" for these age groups.  At all relevant times, Beech-Nut has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling, and marketing of Baby Foods within this judicial district and throughout the United States.

15.     Defendant Gerber Products Company ("Gerber") is a citizen of Michigan and Virginia with its principal place of business located at 1812 N. Moore Street, Arlington, Virginia 22209.  Gerber sells Baby Foods under the brand name Gerber.  Gerber organizes its products into broad categories of "formula," "baby cereal," "baby food," "snacks," "meals & sides," "beverages," and "organic."  At all relevant times, Gerber has conducted business and derived substantial revenue from its manufacturing, labeling, advertising, distributing, selling, and marketing of baby foods.

16.     Defendant Walmart, Inc. ("Walmart") is a citizen of Delaware and Arkansas with its principal place of business located at 702 S.W. 8th St. Bentonville, Arkansas 72716.  Walmart sells Baby Foods under the private label brand "Parent's Choice."  The foods are manufactured by co-manufacturers, but are sold under Walmart's private label using Walmart's name.  Walmart's Parent's Choice offers a wide selection of baby foods ranging from "sweet potatoes & corn" to "toddler cookies" and "yogurt bites".  At all relevant times, Walmart has

- 4 -

conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling, and marketing of Baby Foods within this judicial district and throughout the United States.

## JURISDICTION AND VENUE

17.    Plaintiff is a resident of Kentucky, and no other states.

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between the parties. In addition, Plaintiff seeks damages in excess of $75,000, exclusive of interest and costs.

19.    This Court has personal jurisdiction over Defendants insofar as Defendants are authorized and licensed to conduct business in the State of Kentucky, maintain and carry on systematic and continuous contacts in this judicial district, regularly transact business within this judicial district, and regularly avail themselves of the benefits of this judicial district.

20.    Additionally, Defendants caused tortious injury by acts and omissions in this judicial district and caused tortious injury in this district by acts and omissions outside this district while regularly doing and soliciting business, engaging in a persistent course of conduct, and deriving substantial revenue from goods used or consumed and services rendered in this judicial district.

21.    Venue is proper before this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

22.    This Court has personal jurisdiction over Defendants because their significant contacts related to this litigation in each State make personal jurisdiction proper over any of them.

23.    Additionally, Defendants caused tortious injury by acts and omissions in this judicial district and caused tortious injury in this district by acts and omissions outside this

- 5 -

district while regularly doing and soliciting business, engaging in a persistent course of conduct, and deriving substantial revenue from goods used or consumed and services rendered in this judicial district.

## FACTUAL ALLEGATIONS

### I.    Rising Concerns Regarding the Presence of Toxic Heavy Metals in Baby Foods

24.    In October 2019, an alliance of nonprofit organizations, scientists and donors named "Happy Babies Bright Futures" ("HBBF"), dedicated to designing and implementing "outcomes-based programs to measurably reduce babies' exposures to toxic chemicals," published a report investigating the presence of Toxic Heavy Metals in baby foods. The HBBF Report tested 168 different baby foods sold on the U.S. market and concluded that "[n]inety-five percent of baby foods tested were contaminated with one or more of four toxic heavy metals—arsenic, lead, cadmium and mercury. All but nine of 168 baby foods contained at least one metal; most contained more than one." Specifically, the HBBF report identified "puffs and other snacks made with rice flour," "[t]eething biscuits and rice rusks," "infant rice cereal," "apple, pear, grape and other fruit juices," and "carrots and sweet potatoes" manufactured by the Defendants as particularly high in Toxic Heavy Metals.

25.    The results of the HBBF report were consistent with that of the U.S. Food and Drug Administration ("FDA") which had, in 2017, detected one or more of the four Toxic Heavy Metals in 33 of 39 types of baby food tested. However, the HBBF reported that "[f]or 88 percent of baby foods tested by HBBF—148 of 168 baby foods—FDA has failed to set enforceable limits or issue guidance on maximum safe amounts." The HBBF's findings were by no means an outlier. Eight months prior to publication of the HBBF report, a study conducted by scientists at the University of Miami and the Clean Label Project "examined lead…concentrations in a large convenience sample of US baby foods." The study detected lead in 37% of samples.

26.    Moreover, earlier in 2017, HBBF commissioned a study to evaluate the presence of arsenic in infant rice cereal products sold in the U.S., and the potential risks to children's neurodevelopment posed by contamination levels. The findings were concerning. The authors

- 6 -

concluded that "exposures to arsenic from infant rice cereal approach or exceed existing health-based limits for arsenic levels…leaving little room for additional exposures from other dietary sources, such as snacks, apple juice, and drinking water…Our analyses of arsenic exposures from infant rice cereal during the first year of life suggest that these exposures are not insignificant, and may place infants at risk for adverse health effects."

II.     **Congressional Investigation Finds Substantial Presence of Heavy Metals in Baby Foods Manufactured and/or Sold by Defendants, Sparking National Outrage**

27.     On February 4, 2021, and September 29, 2021, respectively, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, published two reports detailing its findings that Toxic Heavy Metals—including lead, arsenic, mercury, and cadmium—were present in "significant levels" in numerous commercial Baby Food Products.  Gerber and Beech-Nut—produced internal testing policies, test results for ingredients and finished products, and documentation about what the companies did with ingredients and/or finished products that exceeded their internal testing limits.

28.     Congress reported that the data submitted by the companies unequivocally revealed that a substantial number of Defendants' finished products and/or ingredients used to manufacture the Baby Foods are tainted with Toxic Heavy Metals, namely lead, arsenic, mercury, and cadmium.  And, where the Defendants did set internal limits for the amount of metals they allowed in their foods, Defendants routinely flouted their own limits and sold foods that consistently tested above their limits.  Congress found the following:

29.     **Beech-Nut.**  Beech-Nut used ingredients after they tested as high as 913.4 ppb arsenic.  Beech-Nut routinely used high-arsenic additives that tested over 300 ppb arsenic to address product characteristics such as "crumb softness."  On June 8, 2021, four months following the Congressional findings, Beech-Nut issued a voluntary recall of its infant single grain rice cereal and exited the rice cereal market completely.  In its recall, Beech-Nut confirmed that its products exceed regulatory arsenic limits.  And, Beech-Nut used ingredients containing as much as 886.9 ppb lead, as well as 483 products that contained over 5 ppb lead, 89 that contained over 15 ppb lead, and 57 that contained over 20 ppb lead.  In its follow up

Report in September 2021 Congress specifically focused on Defendants Beech-Nut and Gerber's infant rice cereals. Congress noted that Beech-Nut rice cereal tested up to 125 ppb inorganic arsenic and averaged 85.47 ppb inorganic arsenic. Beech-Nut's practice of testing ingredients, rather than finished products, for toxic heavy metals appears to have contributed to its failure to detect the dangerous inorganic arsenic levels in its recalled products. Lastly, Beech-Nut does not even test for mercury in baby food.

30.    **Gerber.** Gerber used high-arsenic ingredients, using 67 batches of rice flour that had tested over 90 ppb inorganic arsenic. Gerber used ingredients that tested as high as 48 ppb lead; and used many ingredients containing over 20 ppb lead. Gerber rarely test for mercury in their baby foods. In the September 2021 follow-up Congressional report, it was revealed that Gerber's rice cereal tested up to 116 ppb inorganic arsenic, and their average rice cereal product contained 87.43 ppb inorganic arsenic, which is even higher than the amount contained in Beech-Nut's average rice cereal product. While Beech-Nut recalled some of its products and completely discontinued sales of its rice cereal, Gerber have taken no such actions to protect children.

31.    **Walmart**. Walmart refused to cooperate with the House Subcommittee's investigation into its baby foods products, and as such, the Subcommittee was "greatly concerned" that Walmart "might be obscuring the presence of higher levels of toxic metals in their baby food products." The Subcommittee noted that independent data from the HBBF Report confirmed that Walmart's baby foods are indeed tainted. For example, the HBBF Report observed that one of Walmart's products contained 56.1 ppb total arsenic, and 26.1 ppb cadium. Another product contained 108 ppb total arsenic, 66 ppb inorganic arsenic, 26.9 ppb lead, and 2.05 ppb mercury.

32.    Following the publication of the Subcommittee Report, Walmart provided documents to the Subcommittee. On September 29, 2021, the House Subcommittee released a subsequent report entitled "New Disclosures Show Dangerous Levels of Toxic Heavy Metals in Even More Baby Foods." The Subcommittee report addendum described the documents from Walmart as "revealing a concerning lack of attention to toxic heavy metal levels in baby food

- 8 -

and an abandonment of its previously more protective standards." Walmart does not appear to conduct any testing of its baby food products. Walmart sets maximum arsenic and lead levels and asks the manufacturer of its private label to self-certify, but Walmart does not appear to collect any test data or check the accuracy of those certifications. Walmart does not require any mercury or cadmium testing and does not set any standards for mercury or cadmium levels.

33.    The metal concentrations discussed above and further below surpass the limits allowed by U.S. regulatory agencies. There are no FDA final regulations governing the presence of Toxic Heavy Metals in the majority of Baby Foods with the exception of 100 ppb inorganic arsenic in infant rice cereal and proposed (not yet final) limits for lead in certain baby food categories.  To the extent such regulations exist, the quantities of Toxic Heavy Metals in Defendants' Baby Foods exceed any permissible FDA levels.  To be sure, the FDA has set the maximum contaminant levels ("MCL") in bottled water at 10 ppb inorganic arsenic, 5 ppb lead, and the EPA has capped the allowable level of mercury in drinking water at 2 ppb.  However, these limits were created in reference to *adult* exposure, not infants.  Compared to these thresholds, the test results of the Defendants' baby foods and their ingredients are multiple folds greater than the permitted metal levels.  Moreover, compounding these troubling findings, the Defendants set internal limits for the presence of Toxic Heavy Metals in their foods that were, themselves, dangerously high and then routinely failed to abide by those inadequate standards, as discussed below.

34.    As Congress observed, the Defendants have willfully sold—and continue to sell—contaminated Baby Foods notwithstanding their full awareness of these unacceptably high levels of Toxic Heavy Metals in their products.

**III.    Defendants Engaged in a Pattern and Practice of Selling Contaminated Baby Foods and Failed to Reduce Metal Levels**

35.    Several factors drive the Toxic Heavy Metal contamination of Defendants' baby foods, all of which are within Defendants' control.

36.    *First*, at various times, all Defendants sourced ingredients that contained elevated levels of Toxic Heavy Metals.  These ingredients were then used to manufacture the

- 9 -

COMPLAINT AND JURY DEMAND

baby foods consumed by Plaintiffs, thereby exposing Plaintiffs to Toxic Heavy Metals that cause brain damage and other neurodevelopmental harm. One way for Defendants to "deal" with this issue involved relegating any testing of Toxic Heavy Metals to suppliers and co-manufacturers, who were required to certify that Toxic Heavy Metals were below a certain threshold. Defendants would audit those results, discover that the reported certifications were false or inaccurate, and then take no action to stop the use of those ingredients or finished products.

37. *Second*, some Defendants implemented dangerously high internal limits ("specifications" or "specs") for the maximum level of Toxic Heavy Metals that Defendants allowed in the baby foods. Such high limits—untethered to any consideration of the low levels at which metals are capable of damaging babies' brains—allowed Defendants to source and use ingredients that contained elevated Toxic Heavy Metals to manufacture the baby foods consumed by Plaintiffs. In the highly competitive and lucrative baby food market, using contaminated ingredients allows each Defendant to retain greater market share.

38. *Third*, some Defendants failed to implement *any* internal specifications for the amount of Toxic Heavy Metals allowed in ingredients or finished baby foods. By simply not looking at the issue, certain highly contaminated ingredients and finished products were allowed to be used and sold to consumers. This would happen notwithstanding the Defendants' specific knowledge of the risk of Toxic Heavy Metals and their presence in ingredients and finished products.

39. *Fourth,* Defendants did not routinely adhere to their own internal metal specifications or standards, allowing contaminated ingredients and finished products to be released as "exceptional releases" or other simpler terminology. This resulted in ingredients being used and baby foods manufactured and sold that contained levels of Toxic Heavy Metals far higher than what was internally set by Defendants. In other instances, Defendants would test products that had been put on the market after-the-fact, learn about the products containing extremely high levels of Toxic Heavy Metals, and then take no action to recall the product or warn consumers about the issue.

- 10 -

40.    *Fifth*, upon information and belief, Defendants' manufacturing practices also contributed to contamination.  For example, the water used at some of the facilities where the baby foods were manufactured contained Toxic Heavy Metals which, in turn, ended up in the finished baby food product sold for consumption by babies.

41.    **Beech-Nut**.  Beech-Nut did not test their finished baby foods for heavy metals, only ingredients.  And, Beech-Nut regularly accepted ingredients testing far higher than its internal limits for Toxic Heavy Metals.  They justified such deviations as "exceptional releases."  For example, Beech-Nut "exceptionally released" 160,000 pounds of sweet potatoes for their baby food products notwithstanding the ingredient testing twice as high as Beech-Nut's internal heavy metal limit for lead.

42.    Moreover, Beech-Nut did not adequately test their ingredients for heavy metals by limiting ingredient lots and ingredient quantities that were subject to metal testing.  For example, if a supplier supplied ingredients below a certain amount, they would not test anything and simply use the ingredient in the finished product.  Furthermore, in deciding to violate their own internal limits, Beech-Nut took advantage of the fact that the FDA does not routinely test baby foods for Toxic Heavy Metals.

43.    Upon information and belief, Beech-Nut went so far as to manipulate their testing practices by continually re-testing ingredients that tested above their internal specs until they obtained a result that was at or below their internal specs, knowing full well that the ingredient was nonetheless contaminated.

44.    Beech-Nut internal specifications varied wildly by ingredient, with Beech-Nut allowing very high levels of Toxic Heavy Metals for certain ingredients, and insisting on lower levels for others.  Thus, certain products like rice flour, were allowed to have very high levels of metals like arsenic and lead, even in products that were 90% or more rice.  Beech-Nut did this because there were no regulations governing Toxic Heavy Metal in baby food and, therefore, to remain competitive in the baby food marketplace, Beech-Nut used contaminated ingredients because they were readily available.

45.    **Gerber.**  Gerber tested ingredients and, occasionally, finished products.

- 11 -

However, while Gerber was the only Defendant to test both ingredients and finished products with any regularity, they set high heavy metal limits that rendered their food unsafe. For baby foods generally, between 2012 and 2019, Gerber set a limit of 40 ppb for lead, 20 ppb for arsenic, and 10 ppb for mercury. For infant rice cereal, between 2012 and 2017, Gerber set a lead limit of 100 ppb, with a "target" of 50 ppb in 2016 and 2017. Between 2018 and 2019, Gerber set a lead limit for 50 ppb. For arsenic in rice cereal, between 2012 and 2015, Gerber did not have a limit, merely a target of 100 ppb. Then, between 2016 and 2018, it set the arsenic limit at 100 ppb. By 2019, Gerber increased the arsenic limit to 130 ppb for cereals with 90% rice (and kept the limit at 100 ppb for other cereals). For snack foods, Gerber had a lead limit of 150 ppb between 2012 and 2014. It was reduced to 100 ppb in 2016 and 2017, and then went down to 50 ppb in 2018 and 2019. There was no limit for arsenic in snack food prior 2016, just a "target" of 100 ppb. Then a 100-ppb arsenic limit was set starting in 2016. For both infant cereal and snacks, Gerber imposed a 30-ppb limit for mercury in infant cereal between 2012 and 2016, and reduced it to 10 ppb from 2017 onward. With these exceptionally high limits, Gerber sold baby foods that were dangerous for infant consumption. They did this knowingly.

46.     Gerber would also audit and re-test Toxic Heavy Metal results submitted by suppliers, and find that the certification from suppliers were incorrect or false. Gerber would nonetheless use the certified results and release products despite the ingredients not meeting specifications or being safe for infant consumption.

47.     Gerber often used high-arsenic ingredients, for example, using 67 batches of rice flour that had tested over 90 ppb inorganic arsenic. Furthermore, Gerber regularly sold baby food products testing over 100 ppb arsenic, at times reaching 116 ppb, and their average rice cereal product contained 87.43 ppb inorganic arsenic. Indeed, this is why Congress noted that "Gerber's organic rice cereal is dangerous…" In other instances, Gerber permitted as much as 300 ppb of arsenic in the rice flour ingredient used to manufacture its U.S. baby foods, notwithstanding the fact that Gerber often implemented stricter standards for baby foods sold in other countries.

- 12 -

COMPLAINT AND JURY DEMAND

48. Gerber's baby foods are also contaminated with elevated levels of lead. Gerber used ingredients that tested as high as 48 ppb lead and used many ingredients containing over 20 ppb lead. Furthermore, Gerber sold baby food products testing at and/or above 50 ppb of lead. Indeed, Gerber have historically permitted as much as 150 ppb lead in their baby food products. Although Gerber was fully aware that it was very feasible to source lower-lead ingredients, they proceeded to use high-lead ingredients in their baby foods. Gerber rarely test for mercury in their baby foods. This is notwithstanding the fact that mercury is known to contaminate ingredients such as rice and poses a severe risk to babies' brain development.

49. The February 4, 2021 Congressional Report found Gerber carrots tested for cadmium at levels above 5 ppb, with some containing more than 87 ppb of cadmium. These are exceptionally high levels.

50. Moreover, compounding these troubling findings, Gerber historically only tested certain ingredients of its baby food products and only occasionally tested the finished products consumed by babies. It was not until recently that Gerber started to implement finished product testing on a more regular basis.

51. Gerber has known since at least the 1990s that inorganic arsenic was neurotoxic and caused developmental issues. Despite this knowledge, in 2012, when Gerber's infant rice cereal was on the front page of a Consumer Report article on arsenic, a Gerber spokesperson told the public that arsenic in baby food posed no health risk.

52. **Walmart.** Walmart sold baby food under a "private" brand called "Parent's Choice", which was manufactured by a different supplier but branded, promoted, and sold as a Walmart product. Walmart did not test it for Toxic Heavy Metals whatsoever. Instead, Walmart required certain specifications be met for the products provided by its suppliers, which included some limits of heavy metals. These specifications were not enforced in any way. Walmart did not require the submission of testing from suppliers, nor did it do any of its own testing.

53. The only efforts to police Toxic Heavy Metals in their Parent's Choice baby food involved generic specifications for lead and arsenic—there were no other specifications or limits for other Toxic Heavy Metals—which for most baby food products resulted in there

- 13 -

being no limits. The following chart reflects Walmart's Toxic Heavy Metal specifications prior to December 2018.

| Type of Food | Lead | Arsenic | Mercury | Cadmium | Aluminum |
|---|---|---|---|---|---|
| Dry baby food with no juice or nectar | *None* | *None* | *None* | *None* | *None* |
| Dry baby food with juice or nectar | 50 ppb | 23 ppb | *None* | *None* | *None* |
| Wet baby food with no juice or nectar | *None* | *None* | *None* | *None* | *None* |
| Wet baby food with juice or nectar | 50 ppb | 23 ppb | *None* | *None* | *None* |
| Yogurt baby food products | *None* | *None* | *None* | *None* | *None* |

54.    In December 2018, Walmart changed its specification to 100 ppb of inorganic arsenic for all dry baby foods, making the products even less safe.  Thus, for the vast majority of Walmart's baby food products, there was never a limit for any Toxic Heavy Metals.

**IV.    Defendants Abandon Efforts to Reduce Metal Levels in Baby Foods**

55.    In 2019, as concerns grew over contamination of certain baby foods on the U.S. market, a consortium of the Baby Food Manufacturers comprised of Defendants Beech-Nut and Gerber, as well as certain interested third party groups such as the Environmental Defense Fund ("EDF") and HBBF, were formed with the intention "of reducing heavy metals in young children's food."

56.    The consortium was named the Baby Food Council ("BFC").  The BFC involved the sharing of common testing data on the levels of metal contamination of Defendants' baby foods, a grant to Cornell University to further study the issue, and a proposed "voluntary Baby Food Standard to limit the amounts of heavy metals in baby food."  The BFC specifically recognized the risk of neurodevelopmental harm caused by Toxic Heavy Metals to the developing brain of infants and that there were no safe levels of exposure.

57.    The Baby Food Standard "would have provided companies with a common framework for progressively reducing contaminants by regularly testing products and improving management practices, and for being transparent with consumers about the safety of their products."

58.    After several years of negotiations and discussions, including a proposed system for testing, the EDF and HBBF proposed voluntary limits of 1 ppb for lead.  The baby food

- 14 -

companies, however, rejected the proposal outright. Participation in the BFC was little more than a façade—they had no intention of self-regulating their products as it related to Toxic Heavy Metals.

59. This led EDF and HBBF to leave the BFC in protest in 2021. They explained their departure publicly, noting that Defendants "all decided to backpedal on this project—even though the standard was designed to protect babies' brain development" and provide adequate notice to consumers regarding the presence of Toxic Heavy Metals on Baby Food labeling. EDF explained:

> EDF cofounded the Council because we believed there was a shared commitment to reduce levels of lead, arsenic and cadmium in baby food products to better protect children's developing brains from these toxins … Unfortunately, the companies chose to cease the Council's development of a voluntary Baby Food Standard that it had begun in late 2020. The Standard would have provided companies with a common framework for progressively reducing contaminants by regularly testing products and improving management practices, and for being transparent with consumers about the safety of their products. Negotiations failed to provide an alternative approach that EDF felt was sufficient to drive down levels of lead, arsenic and cadmium in baby food."

60. HBBF explained:

> Healthy Babies Bright Futures is focused on tangibly reducing neurotoxic exposures to babies. The baby food companies' refusal to jointly set limits for heavy metals in baby food has shown that the Council will no longer be the powerful mechanism for this important work that the initial plans had promised. The baby food companies' decision to stop progress on a voluntary standard for heavy metals in baby food is a disappointment … What started as dedication has turned into delay and intention has become inaction. So HBBF has decided to put our effort into other initiatives that will move the needle on this important issue.

61. In short, the Defendants opted to continue "self-regulating," the same self-regulation which exposed—and continued to expose—Plaintiffs to Toxic Heavy Metals in Defendants' baby foods.

V. **The Dangers of Toxic Heavy Metals and Metal Exposure Through Consumption of Baby Foods**

62. According to the World Health Organization ("WHO"), Toxic Heavy Metals, specifically lead, arsenic, mercury, and cadmium pose a "major public health concern" for children. The Occupational Safety and Health Administration ("OSHA") has warned that these metals "may build up in biological systems and become a significant health hazard." Indeed,

the Department of Health and Human Services' Agency for Toxic Substances and Disease Registry ("ATSDR") ranks arsenic as number *one* among substances present in the environment that pose the most significant potential threat to human health, followed by lead (second), mercury (third), and cadmium (seventh).

63.     The threat presented by Toxic Heavy Metals to children's health is widely shared by the global regulatory and scientific community.  For example, the FDA has set an Interim Reference Level ("IRL") of 2.2 micrograms/day for lead exposure through baby food products. That is the amount of lead exposure at or above which the agency considers associated with adverse neurodevelopmental effects in babies.  The FDA, in its guidance documents for inorganic arsenic and lead in baby food products has repeatedly acknowledged the dangers of heavy metals to the neurodevelopment of infants.

> Even low lead exposure can harm children's health and development, specifically the brain and nervous system. Neurological effects of lead exposure during early childhood include learning disabilities, behavior difficulties, and lowered IQ. Lead exposures also may be associated with immunological, cardiovascular, renal, and reproductive and/or developmental effects…Because lead can accumulate in the body, even low-level chronic exposure can be hazardous over time…Even though no safe level of lead exposure has yet been identified for children's health, the IRL serves as a useful benchmark in evaluating the potential for adverse effects of dietary lead. In particular, FDA is focused on the potential for neurodevelopmental effects from lead exposure, as review of the scientific literature indicates that *such adverse effects of lead consistently occur at a blood lead level associated with FDA's IRL for children*. (emphasis added).

64.     As one recent study observed, "[t]he implications of heavy metals with regards to children's health have been noted to be more severe compared to adults. The elements' harmful consequences on children health include mental retardation, neurocognitive disorders, behavioral disorders, respiratory problems, cancer and cardiovascular diseases.  Much attention should be given to heavy metals because of their high toxicity potential, widespread use, and prevalence."  Children and, even more so, babies have higher exposure to metals compared to adults because they consume more food in relation to their body weight and absorb metals more readily than adults by 40 to 90%.

65.     The mechanisms needed to metabolize and eliminate heavy metals are comparatively undeveloped in childhood, with babies having weaker detoxifying mechanisms

- 16 -

and poorer immune systems than adults. For example, liver pathways that in adulthood metabolize absorbed arsenic do not mature until mid-childhood; un-excreted arsenic thus continues to circulate and is deposited in other organs. According to Linda McCauley, Dean of the Nell Hodgson Woodruff School of Nursing at Emory University, who studies environmental health effects, "[n]o level of exposure to these [heavy] metals has been shown to be safe in vulnerable infants."

66.    Thus, "the major windows of developmental vulnerability occur during infancy and early childhood due to continuing brain development after birth." In short, even small amounts of exposure to Toxic Heavy Metals can have devastating health outcomes for babies and children.

**VI.    Exposure to Toxic Heavy Metals Has Been Consistently Associated with Neurodevelopmental Harm, i.e., Autism and ADHD in Pediatric Populations**

67.    It is well-known that exposure to Toxic Heavy Metals in early life can interfere with neurodevelopment at exceedingly low levels of exposure. And, one of the ways in which such interference with neurodevelopment can present in a child is in the form of the neurodevelopmental disorders ASD and ADHD. As the U.S. Centers for Disease Control observed in its 2020 Toxicological Profile for Lead, at just ≤10 μg/dL: "The following neurobehavioral effects in children have been associated with [lead]: "Altered mood and behaviors that may contribute to learning deficits, including *attention deficits, hyperactivity, autistic behaviors*, conduct disorders, and delinquency." (emphasis added). Likewise, the NIH states: "prenatal and early childhood exposure to heavy metals…may be linked to autism spectrum disorder."

68.    Such conclusions have likewise been reached by a consortium of the country's leading epidemiologists, pediatricians, and medical groups, noting that Toxic Heavy Metals such as lead and mercury are "prime examples of toxic chemicals that can contribute to learning, behavioral, or intellectual impairment, as well as specific neurodevelopmental disorders such as ADHD or autism spectrum disorder."

69.    Multiple studies, reviews, and meta-analyses conducted throughout various parts

- 17 -

of the world over the last decade have consistently observed that early life exposure to heavy metals can cause brain injury and, specifically, brain injury which manifests as ASD.

70.     For example, four meta-analyses published in 2014, 2017, 2019 and 2020, respectively, observed consistent associations between exposure to arsenic, cadmium, and mercury and ASD in children; with the authors in all three studies recommending – based on the data – that exposure to such metals in children be reduced as much as possible, and one of the study authors specifically concluding that "Results of the current meta-analysis revealed that mercury is an important causal factor in the etiology of ASD."

71.     In a recent 2017 NIH-funded prospective observational study, the authors examined the risk of ASD outcome in twins based on their respective body burden of lead. The study concluded in no uncertain terms that "prenatal and early childhood disruption (excess or deficiency) of multiple metals during critical developmental windows is associated with ASD, and suggests a role for elemental dysregulation in the etiology of ASD."

72.     Similarly, a large, prospective study from 2016 in Korean school children observed that low levels of lead exposure in early life are associated with autism, the authors specifically concluding: "even low blood lead concentrations…are associated with more autistic behaviors… underscoring the need for continued efforts to reduce lead exposure."

73.     Studies have repeatedly observed strong associations between exposure to cadmium and aluminum and neurodevelopmental disorders such as ASD, as observed by a recent study: "Environmental exposure to…cadmium (Cd)… and aluminum (Al) has been associated with neurodevelopmental disorders including autism spectrum disorder (ASD)."  For example, a study from 2014 evaluated the body burden of lead, cadmium, and arsenic in children with autism compared to controls and noted that, in addition to lead and arsenic, "our study demonstrated elevation in the levels of…cadmium…in a child with autism," while an earlier study noted that "autism may be associated with significant alterations of some rare element concentrations, including Cd…"  Such results have been confirmed by meta-analyses which "show *significant associations* between ASD and the metals Al [and] Cd."  And, such earlier data is further supported by recent research, with a 2023 systematic review and meta-

- 18 -

analysis concluding that "compared with the healthy control group, the ASD group had higher concentrations of Cd, Pb, arsenic, and Hg. These 4 heavy metals play different roles in the occurrence and progression of ASD."

74.    Repeated associations between early life Toxic Heavy Metal exposure and ASD have also been observed during the pre-natal timeframe, lending further strength to the findings of post-natal studies.  For example, in a 2021 study by Skogheim and colleagues, the authors prospectively assessed the relationship between pre-natal metal exposure in various biomarkers and autism risk.  The study concluded that "[r]esults from the present study show several associations between levels of metals and elements during gestation and ASD and ADHD in children. The most notable ones involved arsenic…mercury…and lead. Our results suggest that even population levels of these compounds may have negative impacts on neurodevelopment."

75.    Similarly, in a study by the research group assessing the New Hampshire Birth Cohort, the authors evaluated the neurotoxic effects of heavy metals during various stages of pregnancy and concluded: "Our results support the hypothesis that exposure to…As in mid to late pregnancy may be neurodevelopmentally harmful."

76.    Such results have been replicated in studies throughout the world, including China, Korea, the U.S., Europe, and Egypt, implicating arsenic, mercury, and lead in pediatric diagnoses of autism and autistic behaviors, with a 2018 Chinese study concluding: "[t]he results of this study are consistent with numerous previous studies, supporting an important role for heavy metal exposure, particularly mercury, in the etiology of ASD."  Indeed, a 2015 Egyptian study noted "[e]nvironmental exposure to these toxic heavy metals, *at key times in development*, may play a ***causal*** role in autism." (emphasis added).

77.    Exposure to Toxic Heavy Metals, specifically lead, has also been repeatedly associated with the development of ADHD in children, as demonstrated by numerous studies.

78.    No fewer than four large meta-analyses, conducted in four different continents (North America, South America, Europe and Asia), and some employing a cross-sectional design, have observed a consistent association between various metals and ADHD in children. Indeed, the authors of the meta-analysis from Spain noted that "the evidence from the studies

- 19 -

allowed us to establish that there is an association between lead and ADHD and that even *low levels of lead raise the risk*." (emphasis added).

79. The findings from the meta-analyses have been replicated in several Chinese studies from 2006, 2014, and 2018, respectively. Notably, the authors of the 2014 Chinese study observed that "[e]xposure to lead even at low levels correlates with attention-deficit/hyperactivity disorder (ADHD). However, lead-contaminated environments are often *contaminated with other heavy metals that could exacerbate lead-induced ADHD*." (emphasis added). This is particularly relevant—and disturbing—as children who consumed Defendants' baby foods were repeatedly exposed to a cocktail of Toxic Heavy Metals that, synergistically, further increased their risk of developing ADHD.

80. Moreover, studies have observed a dose-response relationship between exposure to Toxic Heavy Metals and ADHD, as demonstrated by the 2016 Spanish study Donzelli, *et al*. Another 2016 cross-sectional study from Spain was conducted on 261 children aged 6-9 to examine the association between exposure to arsenic and ADHD. After adjusting for potential confounders, the authors observed a dose-response relationship between urine arsenic levels and inattention and impulsivity scores, concluding that "[urine arsenic] levels were associated with impaired attention/cognitive function, *even at levels considered safe*. These results provide additional evidence that postnatal arsenic exposure impairs neurological function in children." (emphasis added).

81. The fact that such results, and many more, have been observed in multiple studies, conducted by different researchers, at different times, in different parts of the world, in children of multiple ages, utilizing different study methods (prospective, case-control and cross-sectional epidemiological analyses) and measuring a variety of end-points (including hair, blood, and urine), strongly supports a causal relationship between exposure to Toxic Heavy Metals and the development of ASD and ADHD in children.

**VII.    Defendants' Baby Foods Contain Toxic Heavy Metals Capable of Interfering with Early Neurodevelopment**

82. As illustrated above, Toxic Heavy Metal exposure is capable of inflicting

- 20 -

damage to the developing brain at extremely low doses. And, upon information and belief, Defendants manufactured and sold baby foods containing Toxic Heavy Metals that can, under certain circumstances (based upon the genetic susceptibilities, medical history, and other factors of the exposed child) interfere with a baby's neurodevelopment sufficient to cause conditions such as ASD and ADHD.

83.     As an initial matter, the study commissioned by HBBF and discussed above specifically evaluated the propensity for arsenic exposure through consumption of infant rice cereal to impact early life neurodevelopment. Following analyses of the levels of arsenic exposure from consumption of infant rice cereal, the authors concluded "that high consumers of infant rice cereal (i.e., infants eating three servings per day) eating products currently on the U.S. market would have a daily arsenic intake of 0.35-0.67 µg/kg bw/day…per the Tsuji et al. (2015) lower-bound estimate for an RfD for the neurodevelopmental effects of arsenic (0.4 µg/kg bw/day), high consumers of infant rice cereal may also be at risk for this endpoint. Even in average consumers of infant rice cereal (i.e., one serving per day), our estimates of arsenic intakes (0.15 to 0.29 µg/kg bw/day) leave little room for exposures to arsenic from other sources." Thus, consumption of Defendants' baby foods, including but not limited to infant rice cereal and rice-based snack baby food products manufactured and sold by Defendants can expose babies to levels of arsenic above that associated with neurodevelopmental harm in the scientific literature.

84.     Defendants manufactured and sold baby food products that, with just a couple of servings, are capable of exposing a baby to lead levels at or above the 2.2 ug/day considered by the FDA to be associated with neurodevelopmental harm. Each source of lead exposure is cumulative—making any detectable amount of Toxic Heavy Metal in baby food a contributing factor to potential neurodevelopmental harm.

**VIII.    Defendants Knowingly Sold Baby Foods Containing Toxic Heavy Metals and Knew or Should Have Known of the Risks of Such Exposures in Children and Thus Breeched their Duty of Care in Selling Contaminated Baby Foods**

85.     During the time that Defendants manufactured and sold baby foods in the United

- 21 -

States, the weight of evidence showed that Defendants' baby foods exposed babies and children to Toxic Heavy Metals. Defendants failed to disclose this risk to consumers through any means.

86. As discussed above, both independent testing, the Defendants' internal evaluations of their baby foods, and the Defendants' representations and disclosures to Congress and the FDA reveal the presence of Toxic Heavy Metals in Defendants' products. As such, Defendants knew or should have known that their baby foods contain Toxic Heavy Metals with an attendant risk of causing neurodevelopmental harm.

87. Indeed, independent testing performed in early 2019 demonstrated elevated amounts of such Toxic Heavy Metals in Baby Food products on the U.S. market, and the HBBF Report further confirmed such contamination of Defendants' baby foods. And, as the Congressional investigation found, the Defendants continued to sell their baby foods even after testing of both ingredients and finished products revealed the presence of Toxic Heavy Metals.

88. Moreover, the scientific literature on the dangers of Toxic Heavy Metals— particularly as it relates to adverse effects on the neurodevelopment of children—have been well known for decades. Defendants, as manufacturers and sellers of baby foods, are held to the standard of experts and responsible for keeping abreast of the latest scientific developments related are held to the dangers of contaminants in their products. Defendants failed to take action to protect vulnerable children from exposure to the Toxic Heavy Metals in their foods and, thus, subjected them to the risk of brain injury which can manifest as neurodevelopmental disorders such as ASD, ADHD, and related *sequalae*.

89. To be clear, the Defendants are able to manufacture baby foods that do not pose such a dangerous risk to the health of infants and children by using alternative ingredients, not adding certain pre-mix minerals and vitamins high in Toxic Heavy Metals or sampling their ingredients from other sources. At the very least, Defendants were under a duty to warn unsuspecting parents of the presence of Toxic Heavy Metals in their Baby Foods.

IX. **Defendants' Baby Food Products Were Defective Due to Insufficient Warnings, Manufacturing Defects, and/or Design Defects to the Extent the Baby Food**

- 22 -

**Products Contained Detectable Levels of Toxic Heavy Metal**

90.    All of Defendants' baby food products that contained detectable levels of Toxic Heavy Metals (or constituted finished products wherein the ingredients contained detectable levels of Toxic Heavy Metals), assuming state of the art analytical testing, were defective as it relates to warnings because no Defendant has ever warned about the presence of Toxic Heavy Metals in their baby foods.  Because discovery is ongoing, a complete list of Defendants' specific baby foods that contained detectable levels of Toxic Heavy Metals is not known at this time.  Based on publicly available testing data, including data reported by HBBF and Congress, the vast majority of Defendants' products contain detectable levels of Toxic Heavy Metals in them, rendering them each defective as it relates to warnings.

91.    Defendants' baby food products are also defective as manufactured, as they contain detectable Toxic Heavy Metals which are not supposed to be there, by design.  Toxic Heavy Metals do not provide any nutritional or therapeutic value to infants or fully-grown humans.  They are only poisonous to neurodevelopment. None of these baby food products, by design, should contain Toxic Heavy Metals in them and, thus, to the extent the products contain detectable levels of Toxic Heavy Metals in them, those are manufacturing defects.  Based on publicly available data, most of Defendants' baby food products contain some detectable levels of Toxic Heavy Metals in them.

92.    If Defendants specifically designed their baby food products to contain Toxic Heavy Metals, meaning their presence was not the product of a manufacturing defect, then the products were defective by design.  Toxic Heavy Metals should not be present in foods that are being consumed by infants and products should be designed to not have detectable levels of toxic heavy metal in them.  Such designs are easily accomplished, by only using ingredients that contain non-detectable levels of Toxic Heavy Metals and by testing finished products, before release, to ensure they do not contain Toxic Heavy Metals within them.  This is possible because there are examples of Defendants' finished products not containing detectable levels of Toxic Heavy Metals—even if, for that same products, there are instances where they did.  Thus, Defendants were able to design baby food products to not contain detectable levels of toxic

- 23 -

heavy metals, and to the extent that each Defendants' design contemplated there being detectable levels of Toxic Heavy Metals in baby food, the design, itself, was defective.

93. Whether the Defendants' products were defective due to inadequate warnings, manufacturing errors, or by design, the existing publicly available evidence indicates that consumption of Defendants' baby food products exposed Plaintiff to Toxic Heavy Metals, and that Defendants' baby food products contributed to Plaintiff's Toxic Heavy Metal burden during a critical period of infant neurodevelopment. Plaintiff, thus, alleges that this cumulative exposure from Defendants' products to Toxic Heavy Metals, substantially contributed to causing neurodevelopmental harm that manifested as ASD. Moreover, Plaintiff alleges that had these baby food products not been defective—by having sufficient warnings, being correctly manufactured, and/or designed properly—Plaintiff would not have been exposed to levels of Toxic Heavy Metals in Defendants' baby food products that would have contributed to the neurodevelopmental harm that manifested as ASD.

## X.   Exemplary / Punitive Damages Allegations

94. Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice. Defendants' conduct is particularly reprehensible given that their toxic foods were directed at vulnerable babies—a population group far more susceptible than adults to the neurotoxic dangers of heavy metals.

95. Defendants were fully aware of the safety risks of Contaminated Baby Foods, particularly the dangerous potential of Toxic Heavy Metals on neurodevelopment in infants and children. Nonetheless, Defendants deliberately crafted their label, marketing, and promotion to mislead consumers. Indeed, Defendants repeatedly market their baby foods as safe for consumption and go so far as claiming that they adhere to "the strictest standards in the world;" and provide "baby's food full of nutrition while meeting standards strict enough for tiny tummies," as well as other statements and representations that hold out their baby foods as safe for consumption by infants. Indeed, each Defendant falsely reassured parents/guardians/caregivers that their baby foods would foster healthy neurodevelopment when consumed even though they knew their baby foods exposed infants' developing brains to potent

- 24 -

neurotoxic heavy metals.    In actual fact, as discussed above, Defendants routinely sold Contaminated Baby Foods, regularly flouted their own internal limits of Toxic Heavy Metals and failed to disclose to consumers that their products contained such dangerous contaminants.

96.    This was not done by accident or through some justifiable negligence.  Rather, Defendants knew they could profit by convincing consumers that their baby foods were heathy and safe for infants, and that full disclosure of presence and/or risks of the Toxic Heavy Metals present in the baby foods would limit the amount of money Defendants would make selling the products.    Defendants' object was accomplished not only through a misleading label, but through a comprehensive scheme of selective misleading research and testing, failure to test, false advertising, and deceptive omissions as more fully alleged throughout this Complaint. Parents/guardians/caregivers were denied the right to make an informed decision about whether to purchase Defendants' baby food for their babies without knowing the full risks attendant to that use. Such conduct was done with conscious disregard of Plaintiffs' welfare and rights.

**PLAINTIFF'S USE AND INJURY**

97.    Plaintiff was diagnosed with ASD at approximately 5 years of age.

98.    Plaintiff started consuming Baby Food products manufactured and/or sold by the Defendants in approximately 2007 and consumed Defendants' Baby Food products at various times through 2008.

99.    Upon information and belief, the Baby Food products manufactured/marketed by Defendants and consumed by Plaintiff were all contaminated with substantial quantities of Toxic Heavy Metals.

100.    Upon information and belief, as a direct and proximate result of consuming Defendants' Baby Foods, Plaintiff was exposed to substantial quantities of Toxic Heavy Metals.

101.    As a direct and proximate result of consuming Defendants' Baby Foods and the exposure to the Toxic Heavy Metals therein – Plaintiff suffered brain injury which manifested as ASD and related *sequalae*.

102.    Based on prevailing scientific evidence, exposure to the Toxic Heavy Metals at the levels contained in Defendants' Baby Foods can cause brain injury which can manifest as

- 25 -

the neurodevelopmental disorders ASD and related *sequalae* in humans.

103.    Had any Defendant warned Plaintiff's parents that Defendants' Baby Foods could lead to exposure to Toxic Heavy Metals or, in turn, brain injury, Plaintiff would not have consumed the Baby Foods.

104.    Plaintiff alleges that as a direct and proximate result of Plaintiff's consumption of Baby Foods supplied and distributed by Defendants, Plaintiff suffered significant harm, conscious pain and suffering, physical injury and bodily impairment including, but not limited to brain injury which manifested as ASD and related *sequelae*.

## CAUSES OF ACTION

## COUNT I:  STRICT PRODUCTS LIABILITY – FAILURE TO WARN

105.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

106.    At all relevant times, Defendants engaged in the business of researching, testing, developing, designing, manufacturing, labeling, marketing, selling, inspecting, distributing, and promoting baby foods, which are defective and unreasonably dangerous to consumers, including Plaintiff, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of baby foods in the form of the presence of Toxic Heavy Metals. These actions were under the ultimate control and supervision of Defendants.  At all relevant times, Defendants registered, researched, manufactured, distributed, marketed, and sold baby foods and aimed at a consumer market.

107.    Defendants researched, tested, developed, designed, manufactured, labeled, marketed, sold, inspected, distributed, and promoted, and otherwise released into the stream of commerce their Contaminated Baby Foods, and in the course of same, directly advertised or marketed the products to consumers and end users, including Plaintiff, and therefore had a duty to warn about the presence of and risks associated with exposure to Toxic Heavy Metals from the consumption of Contaminated Baby Foods.

108.    At all relevant times, Defendants had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, and distribute, maintain, supply,

- 26 -

provide proper warnings, and take such steps as necessary to ensure their Contaminated Baby Foods did not cause users and consumers to suffer from unreasonable and dangerous risks. Defendants had a continuing duty to warn Plaintiff of dangers associated with exposure to Toxic Heavy Metals from consumption of the Contaminated Baby Foods. Defendants, as a manufacturer, seller, or distributor of food, are held to the knowledge of an expert in the field.

109. At the time of manufacture, Defendants could have provided the warnings or instructions regarding the full and complete risks of exposure to Toxic Heavy Metals in the Contaminated Baby Foods because they knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such toxins.

110. At all relevant times, Defendants failed and deliberately refused to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of their product and to those who would foreseeably use or be harmed by exposure to the Toxic Heavy Metals in Defendants' Baby Foods.

111. Even though Defendants knew or should have known that the presence of Toxic Heavy Metals in Contaminated Baby Foods posed a risk of harm, they failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure to the toxins in the products. The neurotoxic characteristic of Toxic Heavy Metals contained in Defendants' Contaminated Baby Foods, as described above, were known to Defendants, or scientifically knowable to Defendants through appropriate research and testing by known methods, at the time they distributed, supplied, or sold the products, and were not known to end users and consumers, such as Plaintiff. The product warnings for Contaminated Baby Foods in effect during the time period Plaintiff consumed those foods were inadequate, both substantively and graphically, to alert consumers to the presence of and health risks associated with exposure to the Toxic Heavy Metals from Contaminated Baby Food consumption.

112. At all relevant times, Defendants' Contaminated Baby Foods reached the intended consumers, handlers, and users or other persons coming into contact with these products, including Plaintiff, without substantial change in their condition as manufactured, sold, distributed, labeled, and marketed by Defendants.

- 27 -

113. Plaintiff was exposed to the Toxic Heavy Metals in Defendants' Contaminated Baby Foods without knowledge of the potential for such exposure to Toxic Heavy Metals from consumption of the products and the dangerous characteristics of the toxins.

114. At all relevant times, Plaintiff was exposed to the Toxic Heavy Metals in the Defendants' Contaminated Baby Foods while consuming the foods for their intended or reasonably foreseeable purposes, without knowledge of their dangerous characteristics.

115. Plaintiff could not have reasonably discovered the defects and risks associated with exposure to the Toxic Heavy Metals in the Contaminated Baby Foods prior to or at the time of Plaintiff consuming those foods. Plaintiff relied upon the skill, superior knowledge, and judgment of Defendants to know about and disclose serious health risks associated with exposure to the toxins in Defendants' products.

116. The information that Defendants did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled consumers such as Plaintiffs to avoid consuming the products and, in turn, exposure to the Toxic Heavy Metals. Instead, Defendants disseminated information that was inaccurate, false, and misleading, and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries with use of and/or exposure to the Toxic Heavy Metals in the Contaminated Baby Foods; continued to aggressively promote the safety of their products, even after they knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods.

117. This alleged failure to warn is not limited to the information contained on Contaminated Baby Foods labeling. The Defendants were able, in accord with federal law, to comply with relevant state law by disclosing the known risks associated with exposure to Heavy Metals in Contaminated Baby Foods through other non-labeling mediums, i.e., promotion, advertisements, public service announcements, and/or public information sources. But the Defendants did not disclose these known risks through any medium. The ability to provide such

- 28 -

warnings is not prohibited by any federal law.

118. Furthermore, Defendants possess a First Amendment Right to make truthful statements about the products they sell, and no law could lawfully restrict that constitutional right. This included making statements about the presence of and risks associated with Toxic Heavy Metals in Contaminated Baby Foods.

119. Had Defendants provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with exposure to the toxins in their Contaminated Baby Foods, Plaintiffs could have avoided the risk of developing injuries and could have obtained or used alternative products. However, as a result of Defendants' concealment of the dangers posed by the Toxic Heavy Metals in their Contaminated Baby Foods, Plaintiff could not have averted their exposures.

120. Defendants' conduct, as described above, was reckless. Defendants risked the lives of babies and children, including Plaintiff, with knowledge of the safety problems associated with Contaminated Baby Foods, and suppressed this knowledge from the general public. Defendants made conscious decisions not to warn or inform the unsuspecting public.

121. The Defendants' lack of adequate warnings and instructions accompanying their Contaminated Baby Foods caused Plaintiff's injuries.

122. As a direct and proximate result of the Defendants' failure to provide an adequate warning of the risks of exposure to the Toxic Heavy Metals in their Contaminated Baby Foods, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to past and future medical expenses, lost income, and other damages.

123. **WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

**COUNT II: STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**

124. Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

- 29 -

COMPLAINT AND JURY DEMAND

125.    At all times herein mentioned, Defendants designed, manufactured, tested, marketed, sold, handled, and distributed the Contaminated Baby Foods consumed by Plaintiff.

126.    At all relevant times, the Contaminated Baby Foods consumed by Plaintiff were expected to and did reach Plaintiff without a substantial change in their condition as manufactured, handled, distributed, and sold by Defendants.

127.    At all relevant times, the Contaminated Baby Foods consumed by Plaintiff were used in a manner that was foreseeable and intended by Defendants.

128.    The Contaminated Baby Foods consumed by Plaintiff were not reasonably safe for their intended use and were defective with respect to their manufacture, as described herein, in that Defendants deviated materially from their design and manufacturing specifications and/or such design and manufacture posed an unreasonable risk of harm to Plaintiffs. [1]  Baby food should not, by design, contain any detectable levels of Toxic Heavy Metals in them.  Thus, Defendants' Contaminated Baby Foods contain manufacturing defects.

129.    The Defendants' Contaminated Baby Foods contained Toxic Heavy Metals because, while in the control and possession of Defendants, they manufactured ingredients and used manufacturing processes that result in the finished product being contaminated with Toxic Heavy Metals.  Had Defendants properly manufactured (directly or through co-manufacturers) the baby foods, they would not have contained detectable levels of Toxic Heavy Metals in them and, thus, would not have contained a manufacturing defect.

130.    Nothing under federal law limited or restricted Defendants from taking action to reduce or eliminate the Toxic Heavy Metals from being present in their baby foods.

131.     This manufacturing defect caused Plaintiff to be exposed to Toxic Heavy Metals through ingestion of the Contaminated Baby Foods which, in turn, caused neurodevelopmental harm that manifested as ASD.

132.    The exposure to the Toxic Heavy Metals in the Contaminated Baby Foods creates risks to the health and safety of babies that are far more significant than the risks posed

---

[1] If, through discovery and further litigation, it is discovered that Defendants' baby food products contained detectable levels of Toxic Heavy Metals by design, then Plaintiff will pursue a design defect claim (Count III) in the alternative.

by non- Contaminated Baby Food products, and which far outweigh the utility of the Contaminated Baby Foods products because of Defendants' manufacturing defects.

133.    Defendants have intentionally and recklessly manufactured the Contaminated Baby Foods with wanton and willful disregard for the rights and health of Plaintiff, and with malice, placing their economic interests above the health and safety of Plaintiff.

134.    As a direct and proximate result of the Defendants' defective manufacture of the Contaminated Baby Foods, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to medical expenses, lost income, and other damages.

135.    **WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT III: STRICT PRODUCTS LIABILITY – DESIGN DEFECT

136.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

137.    At all times herein mentioned, Defendants designed, manufactured, tested, marketed, sold, handled, and distributed the Contaminated Baby Foods consumed by Plaintiff. These actions were under the ultimate control and supervision of Defendants.

138.    At all relevant times, Defendants' Baby Food products were designed and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use or consumption by infants and babies, including Plaintiff.

139.    Defendants' Contaminated Baby Food products as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants were defective in design and formulation in that, when they were placed into the stream of commerce, they were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

140.    Defendants' Contaminated Baby Food products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed

- 31 -

by Defendants were defective in design and formulation in that, when they left the hands of Defendants, the foreseeable risks exceeded the alleged benefits associated with their design and formulation.

141. At all relevant times, the Contaminated Baby Food products consumed by Plaintiff were expected to and did reach Plaintiff without a substantial change in its condition as designed, manufactured, handled, distributed, and sold by Defendants.

142. At all relevant times, Defendants knew or had reason to know that their Contaminated Baby Food products were defective and were inherently dangerous and unsafe when used in the manner instructed and provided by Defendants.

143. Therefore, at all relevant times, Defendants' Baby Food products, as researched, tested, developed, designed, registered, licensed, manufactured, packaged, labeled, distributed, sold and marketed by Defendants were defective in design and formulation, in one or more of the following ways:

A. When placed in the stream of commerce, Defendants' Contaminated Baby Food products were unreasonably dangerous in that they contained Toxic Heavy Metals that posed a risk of causing interference with neurodevelopment in babies that manifests as the neurodevelopmental disorders ASD, ADHD and related *sequalae* when used in a reasonably anticipated manner;

B. When placed in the stream of commerce, Defendants' designed Contaminated Baby Food products to contain unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner;

C. Defendants, by design, did not sufficiently test, investigate, or study their Contaminated Baby Food products;

D. Exposure to the Toxic Heavy Metals in Defendants' Contaminated Baby Food products present a risk of harmful effects that outweigh any potential utility stemming from their use;

E. Defendants, by design, did not conduct adequate post-marketing surveillance of their Contaminated Baby Food products which would have alerted the public to

- 32 -

risks; and

F.    Defendants could have employed safer alternative designs and formulations for Contaminated Baby Foods, such as ensuring the baby food did not have any detectable level of Toxic Heavy Metals.

144.    Plaintiff consumed Defendants' Contaminated Baby Food products in an intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

145.    Defendants' Contaminated Baby Food products were and are more dangerous than alternative products, and Defendants could have designed their Contaminated Baby Food products to avoid harm to children.  Indeed, at the time Defendants designed the Contaminated Baby Food products, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable.

146.    At the time the Contaminated Baby Food products left Defendants' control, there was a practical, technically feasible, and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Defendants' Contaminated Baby Foods.

147.    Defendants intentionally and recklessly defectively designed the Contaminated Baby Foods with wanton and willful disregard for the rights and health of Plaintiff, and with malice, placing their economic interests above the health and safety of Plaintiff.

148.    The design defects in Defendants' Contaminated Baby Foods were substantial factors in causing Plaintiff's injuries.

149.    As a direct and proximate result of the Defendants' defective design of the Contaminated Baby Foods, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to medical expenses, lost income, and other damages.

150.    **WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

- 33 -

**COUNT IV: NEGLIGENCE – FAILURE TO WARN**

151.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

152.    At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting baby foods. Defendants knew, or, by the exercise of reasonable care, should have known that their Contaminated Baby Foods are not accompanied with adequate warnings concerning the dangerous characteristics of exposure to Toxic Heavy Metals from consumption. These actions were under the ultimate control and supervision of Defendants.

153.    Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce their Contaminated Baby Foods, and in the course of same, directly advertised or marketed the products to consumers and end users, including Plaintiff, and therefore had a duty to warn of the risks associated with the presence of and exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods.

154.    At all relevant times, Defendants had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, supply, provide proper warnings, and take such steps as necessary to ensure their Contaminated Baby Foods did not cause users and consumers to suffer from unreasonable and dangerous risks. Defendants had a continuing duty to warn Plaintiff of dangers associated with the presence of and exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods. Defendants, as a manufacturer, seller, or distributor of food products, are held to the knowledge of an expert in the field.

155.    At the time of manufacture, Defendants could have provided warnings regarding the presence of and risks of exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods because they knew or should have known exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods was dangerous, harmful and injurious when the Contaminated Baby Foods were consumed by Plaintiff in a reasonably foreseeable

- 34 -

manner.

156.    At all relevant times, Defendants failed and deliberately refused to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of their products and to those who would foreseeably use or be harmed by Defendants' Contaminated Baby Foods.

157.    Defendants knew or should have known that exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods posed a risk of harm, but failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure to the toxins in the products. The dangerous propensities of exposure to Toxic Heavy Metals from consumption of the Contaminated Baby Foods, as described above, were known to Defendants, or scientifically knowable to Defendants through appropriate research and testing by known methods, at the time they distributed, supplied, or sold the products, and were not known to end users and consumers, such as Plaintiff.

158.    At all relevant times, Plaintiff was exposed to Toxic Heavy Metals through consumption of the Contaminated Baby Foods while using the products for their intended or reasonably foreseeable purposes, without knowledge of their dangerous characteristics.

159.    Defendants knew or should have known that the non-extant warnings disseminated with their Contaminated Baby Foods were inadequate, failed to communicate adequate information on the presence of and dangers of exposure to toxins contained therein, and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended and reasonably foreseeable uses.

160.    The information that Defendants did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled consumers such as Plaintiffs to avoid using the product and, in turn, prevented exposure to the Toxic Heavy Metals contained therein.  Instead, Defendants disseminated information that was inaccurate, false, and misleading, and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries with use of and/or exposure to the Toxic Heavy Metals in the Contaminated Baby Foods; continued to aggressively promote the efficacy of their

- 35 -

COMPLAINT AND JURY DEMAND

products, even after they knew or should have known of the unreasonable risks from use or exposure to the toxins contained therein; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Toxic Heavy Metals from consumption of the Contaminated Baby Foods.

161. A reasonable company under the same or similar circumstance would have warned and instructed of the dangers of exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods.

162. This alleged failure to warn is not limited to the information contained on the labeling of Defendants' Contaminated Baby Foods. Defendants were able, in accord with federal law, to comply with relevant state law by disclosing the known risks associated with exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods through other non-labeling mediums, i.e., promotion, advertisements, public service announcements, and/or public information sources. But the Defendants did not disclose these known risks through any medium.

163. Furthermore, Defendants possess a First Amendment Right to make truthful statements about the products they sell, and no law could lawfully restrict that constitutional right.

164. Had Defendants provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with the presence of and exposure to Toxic Heavy Metals in the Contaminated Baby Foods, Plaintiff could have avoided the risk of developing injuries and could have obtained or used alternative products. However, as a result of Defendants' concealment of the dangers posed by their Contaminated Baby Foods, Plaintiff could not have averted their injuries.

165. Defendants' conduct, as described above, was reckless. Defendants risked the lives of consumers and users of their products, including Plaintiff, with knowledge of the safety problems associated with Contaminated Baby Foods, and suppressed this knowledge from the general public. Defendants made conscious decisions not to warn or inform the unsuspecting

- 36 -

public.

166.    The Defendants' lack of adequate warnings and instructions accompanying their Contaminated Baby Foods were a substantial factor in causing Plaintiff's injuries.

167.    As a direct and proximate result of the Defendants' failure to provide an adequate warning of the risks of exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to past and future medical expenses, lost income, and other damages.

168.    **WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT V:  NEGLIGENCE – MANUFACTURING

169.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

170.    At all relevant times, the Defendants manufactured, tested, marketed, sold, and distributed the Contaminated Baby Foods that Plaintiff consumed.

171.    The Defendants had a duty to exercise reasonable care, in the manufacturing, testing, marketing, sale, and distribution of baby foods.

172.    The Defendants knew or, by the exercise of reasonable care, should have known, that exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods rendered the foods carelessly manufactured, dangerous, harmful and injurious when used by Plaintiff in a reasonably foreseeable manner.

173.    The Defendants knew or, by the exercise of reasonable care, should have known, ordinary consumers such as Plaintiff would not have realized the potential risks and dangers of exposure to Toxic Heavy Metals from consumption of Contaminated Baby Foods.

174.    Without limitation, examples of the manner in which Defendants breached their duty to exercise reasonable care in manufacturing Contaminated Baby Foods, included:

        A.    Failure to adequately inspect/test the Contaminated Baby Foods, and

- 37 -

their ingredients, during and after the manufacturing process;

B.     Failure to implement procedures that would reduce or eliminate Toxic Heavy Metals in baby foods;

C.     Failure to investigate suppliers and ingredient sources to reduce and eliminate the risk of ingredients containing Toxic Heavy Metals; and

D.     Failure to avoid using ingredients free from, or which contain far less, Toxic Heavy Metals to manufacture baby food.

175.   A reasonable manufacturer under the same or similar circumstances would have implemented appropriate manufacturing procedures to better ensure the quality and safety of their product.

176.   Plaintiff was harmed directly and proximately by the Defendants' failure to use reasonable care in the manufacture of their Contaminated Baby Foods.  Such harm includes exposure to Toxic Heavy Metals, which can cause or contribute to interference with early neurodevelopment which manifests as ASD and related *sequalae*.

177.   Defendants' improper manufacturing of Baby Foods was willful, wanton, malicious, and conducted with reckless disregard for the health and safety of users of the Contaminated Baby Foods, including Plaintiff.

178.   The defects in Defendants' Contaminated Baby Foods were substantial factors in causing Plaintiff's injuries.

179.   As a direct and proximate result of the Defendants' improper manufacturing of Contaminated Baby Foods, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to past and future medical expenses, lost income, and other damages.

180.   **WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

### COUNT VI:  NEGLIGENCE – PRODUCT DESIGN

181.   Plaintiff incorporates by reference each allegation set forth in preceding

- 38 -

paragraphs as if fully stated herein.

182.    Defendants knew or, by the exercise of reasonable care, should have known, ordinary consumers such as Plaintiff would not have realized the potential risks and dangers of Contaminated Baby Foods.

183.    The Defendants owed a duty to all reasonably foreseeable users to design a safe product.

184.    The Defendants breached their duty by failing to use reasonable care in the design of Contaminated Baby Foods because the products exposed babies to Toxic Heavy Metals.

185.    The Defendants breached their duty by failing to use reasonable care in the design of Contaminated Baby Foods by negligently designing the foods with ingredients and/or components contaminated with Toxic Heavy Metals.

186.    The Defendants breached their duty by failing to use reasonable care in the design of Contaminated Baby Foods by negligently designing and formulation, in one or more of the following ways:

A.    When placed in the stream of commerce, Defendants' Contaminated Baby Foods were defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate;

B.    When placed in the stream of commerce, Defendants' Contaminated Baby Foods were unreasonably dangerous in that they were hazardous and posed a risk of neurodevelopmental disorders and other serious illnesses when used in a reasonably anticipated manner;

C.    When placed in the stream of commerce, Defendants' Contaminated Baby Foods contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner;

D.    Defendants did not sufficiently test, investigate, or study their Contaminated Baby Foods and, specifically, the content of Toxic Heavy Metals in the ingredients used to manufacture the foods and/or the finished products;

- 39 -

E.    Defendants did not sufficiently test, investigate, or study their Contaminated Baby Foods and, specifically, the ability for those foods to expose babies to Toxic Heavy Metals; and

F.    Exposure to the Toxic Heavy Metals in Contaminated Baby Foods presents a risk of harmful effects that outweigh any potential utility stemming from the use of the products;

187.    Defendants knew or should have known at the time of marketing Contaminated Baby Foods that exposure to Toxic Heavy Metals contained in the Baby Foods could result in interference with early neurodevelopment that that manifests as ASD, ADHD and other severe illnesses and injuries.

188.    Defendants, by design, did not conduct adequate post-marketing surveillance of their Contaminated Baby Foods.

189.    Defendants could have employed safer alternative designs and formulations.  For example, the Defendants could have avoided use of certain ingredients contaminated with Toxic Heavy Metals, avoided using pre-mix vitamins contaminated with Toxic Heavy Metals, and/or sampled their ingredients from other sources.

190.    The Defendants breached their duty by failing to use reasonable care by failing to use cost effective, reasonably feasible alternative designs.  There was a practical, technically feasible, and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Defendants' Contaminated Baby Foods.

191.    A reasonable company under the same or similar circumstances would have designed a safer product.

192.    Plaintiff was harmed directly and proximately by the Defendants' failure to use reasonable care in the design of their Contaminated Baby Foods.  Such harm includes exposure to Toxic Heavy Metals, which can cause or contribute to interference with neurodevelopment that manifests as ASD and related *sequalae*.

193.    Defendants' defective design of Contaminated Baby Foods was willful, wanton,

- 40 -

malicious, and conducted with reckless disregard for the health and safety of consumers of the Baby Foods, including Plaintiff.

194.    The defects in Defendants' Contaminated Baby Foods were substantial factors in causing Plaintiff's injuries.

195.    As a direct and proximate result of the Defendants' negligent design of the Contaminated Baby Foods, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to past and future medical expenses, lost income, and other damages.

196.    **WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT VII:  GENERAL NEGLIGENCE

197.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

198.    Plaintiff pleads claims for negligence under all theories that may be actionable under any applicable state laws.

199.    Defendants owed Plaintiff a duty to act with reasonable care.

A.    Defendants owed a duty because they distributed and promoted their products as safe for children to consume.

B.    Defendants owed a duty because their conduct created a risk of harm to Plaintiffs and caused Plaintiff actual harm.

C.    Defendants owed a duty because the risk of harm to Plaintiff was embedded in, and an inherent component of, their negligent business practices.

D.    Defendants owed a duty because they designed, manufactured, controlled, distributed, and sold their products to Plaintiff.

200.    Defendants breached their duty to Plaintiff.

201.    Defendants' negligence includes, but is not limited to, their marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling and/or distributing

- 41 -

Contaminated Baby Foods in one or more of the following respects:

A. Failure to implement procedures that would reduce or eliminate Toxic Heavy Metals in baby foods;

B. Failure to investigate suppliers and ingredient sources to reduce and eliminate the risk of ingredients containing Toxic Heavy Metals; and

C. Failure to avoid using ingredients free from, or which contain far less, Toxic Heavy Metals to manufacture baby food.

D. When placed in the stream of commerce, Defendants' Contaminated Baby Foods were defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate;

E. When placed in the stream of commerce, Defendants' Contaminated Baby Foods were unreasonably dangerous in that they were hazardous and posed a risk of neurodevelopmental disorders and other serious illnesses when used in a reasonably anticipated manner;

F. When placed in the stream of commerce, Defendants' Contaminated Baby Foods contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner;

G. Defendants, by design, did not conduct adequate post-marketing surveillance of their Contaminated Baby Food products which would have alerted the public to risks; and

H. Defendants did not sufficiently test, investigate, or study their Contaminated Baby Foods and, specifically, the ability for those foods to expose babies to Toxic Heavy Metals;

I. Defendants could have employed safer alternative designs and formulations for Contaminated Baby Foods, such as ensuring the baby food did not have any detectable level of Toxic Heavy Metal.

J. Defendants did not sufficiently test, investigate, or study their Contaminated Baby Foods and, specifically, the content of Toxic Heavy Metals in the

- 42 -

ingredients used to manufacture the foods and/or the finished products; and

K.    Exposure to the Toxic Heavy Metals in Contaminated Baby Foods presents a risk of harmful effects that outweigh any potential utility stemming from the use of the products;

202.    Defendants knew or should have known that their products contained detectable levels of heavy metals that created an unreasonable risk of harm to children who consumed their products.

203.    At all relevant times, the Defendants knew or should have known that the Products were unreasonably dangerous and defective when put to their reasonably anticipated use.

204.    As a proximate result of Defendants' negligence, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss, and damages including, but not limited to past and future medical expenses, lost income, and other damages.

205.    **WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

206.    Plaintiff demands a trial by jury on all the triable issues within this pleading.

## PRAYER FOR RELIEF

207.    WHEREFORE, Plaintiff requests that the Court enter judgment in Plaintiff's favor and against the Defendants for:

    a.  actual or compensatory damages in such amount to be determined at trial and as provided by applicable law;

    b.  exemplary and punitive damages sufficient to punish and deter the Defendants and others from future wrongful practices;

    c.  pre-judgment and post-judgment interest;

    d.  costs including reasonable attorneys' fees, court costs, and other litigation

- 43 -

expenses; and

e.  any other relief the Court may deem just and proper.


Respectfully submitted,

DATED: April 30, 2026


/s/ Noah Eli Noel
Emily A. DeVuono
Noah Eli Noel
Moore Law Group, PLLC
1473 South 4th Street
Louisville, KY  40208
T: (502) 717-4080
F: (502) 717-4086
emily@moorelawgroup.com
noah@moorelawgroup.com

*Attorneys for Plaintiff*

- 44 -

COMPLAINT AND JURY DEMAND