William L. Smith (SBN 324235)
wsmith@anapolweiss.com
**ANAPOL WEISS**
6060 Center Drive 10th Floor,
Los Angeles, CA 90045
Tel: (202) 780-3014
Fax: (215) 875-7707

[additional counsel below]

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION | Case No. 24-MD-03101-JSC<br><br>MDL 3101<br><br>Hon. Jacqueline Scott Corley |
| This document relates to:<br><br>*Watkins v. Nurture, LLC, et al.*<br>Case No. 3:24-cv-02832-JSC | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO REMAND**<br><br>Date: July 9, 2026<br><br>Time: 2:30 p.m.<br><br>Courtroom: 8-19th Floor<br>450 Golden Gate Avenue<br>San Francisco, California |

**TABLE OF CONTENTS**

**INTRODUCTION**......................................................................................................................1

**I.    PROCEDURAL BACKGROUND** ..................................................................................2

    A.    The Watkins Filed Their Case in State Court. ........................................................... 2

    B.    Nurture Inc. converts into an LLC and removes the case in the name of a dead corporation............................ 3

    C.    The pro se Watkins voluntarily dismissed the SWB thirty-one days after removal. .......................................... 3

    D.    The Eastern District ordered jurisdictional discovery, and Plaintiffs moved to remand. ................................. 4

    E.    Nurture untimely moved to amend its original Notice of Removal, but still failed to cure the defective Notice. 4

    F.    The case joined the MDL and the Court allowed briefing on subject-matter jurisdiction. ................................ 5

**II.    ARGUMENT** ................................................................................................................**5**

    A.    The Sewerage and Water Board was a properly joined Louisiana defendant whose presence destroyed complete diversity at removal. ................................................................................................. 6

    B.    Nurture cannot show what the improper-joinder doctrine requires: an "obvious" failure to state a claim under "settled" Louisiana law.. ................................................................................................. 6

    C.    Whether SWB qualifies as a "manufacturer" under the Louisiana Products Liability Act is an open question of Louisiana law. ................................................................................................. 7

    D.    The Petition's allegations were enough to clear the threshold, and fraudulent misjoinder is not the law of this Circuit. ................................................................................................. 8

    E.    The post-removal dismissal of the SWB does not cure the removal-time defect. ............................................. 9

    F.    The Notice of Removal pleaded the citizenship of a dead corporation, and § 1653 does not allow Nurture to add a new jurisdictional basis sixteen months too late. ................................................................... 10

    G.    Corporate citizenship and LLC citizenship are different jurisdictional inquiries governed by different rules. 11

    H.    Section 1653 permits cure of inadequate allegations, not the addition of new jurisdictional bases. ................ 12

    I.    The George Declaration cannot retroactively cure the Notice's silence about the LLC chain at the time of removal. ................................................................................................. 12

    J.    Section 1447(c) requires remand, and the Eastern District's prior denial does not bind this Court. ................ 14

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO REMAND

**III.    CONCLUSION** ...........................................................................................................................**15**

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO REMAND

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Boeing Co.*,
784 F.3d 625 (9th Cir. 2015) ...............................................................................................7

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006)............................................................................................................14

*ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality*,
213 F.3d 1108 (9th Cir. 2000) ...........................................................................2, 12, 13, 14

*Carden v. Arkoma Assocs.*,
494 U.S. 185 (1990).............................................................................................................11

*Florence v. Crescent Res., LLC*,
484 F.3d 1293 (11th Cir. 2007) ............................................................................................8

*Hain Celestial Grp., Inc. v. Palmquist*,
607 U.S. 421 (2026)....................................................................................................1, 5, 7

*Hunter v. Philip Morris USA*,
582 F.3d 1039 (9th Cir. 2009) .....................................................................................1, 6, 7, 8

*Johnson v. Columbia Props. Anchorage, LP*,
437 F.3d 894 (9th Cir. 2006) .......................................................................................11, 14

*Jurin v. Transamerica Life Ins. Co.*,
No. C 14-02882 LB, 2014 U.S. Dist. LX 123569 (N.D. Cal. Sep. 2, 2014) ............................9

*Klintworth v. Valley Forge Ins. Co.*,
No. 17-CV-448-JHP-JFJ, 2018 U.S. Dist. LX 161916 (N.D. Okla. Aug. 15, 2018)...............10

*Morgan v. Tyree*,
No. 2:23-cv-01160-GMN-NJK, 2023 U.S. Dist. LEXIS 158334 (D. Nev. Sep. 6,
2023) ......................................................................................................................................9

*Newman-Green, Inc. v. Alfonzo-Larrain*,
490 U.S. 826 (1989).................................................................................................12, 13, 14

*O'Halloran v. Univ. of Wash.*,
856 F.2d 1375 (9th Cir. 1988) ......................................................................................12, 14

*Polo v. Innoventions Int'l, LLC*,
833 F.3d 1193 (9th Cir. 2016) ...........................................................................................2, 4

*Rudow v. Monsanto Co.*,
   No. C99-4700 TEH, 2001 U.S. Dist. LX 2352 (N.D. Cal. Mar. 1, 2001) ...........................9, 10

*Snell v. Cleveland, Inc.*,
   316 F.3d 822 (9th Cir. 2002) .....................................................................................12, 14

*Strotek Corp. v. Air Transp. Ass'n of Am.*,
   300 F.3d 1129 (9th Cir. 2002) ........................................................................................6, 9

*Tapscott v. MS Dealer Serv. Corp.*,
   77 F.3d 1353 (11th Cir. 1996) ...........................................................................................9

*Vasura v. Acands*,
   84 F. Supp. 2d 531 (S.D.N.Y. 2000)..................................................................................10

*Williams v. Homeland Ins. Co. of N.Y.*,
   18 F.4th 806 (5th Cir. 2021) ...............................................................................................9

**Statutes**

28 U.S.C. § 1332(a) ...............................................................................................................6

28 U.S.C. § 1332(c)(1).........................................................................................................14

28 U.S.C. § 1447(c) ................................................................................................2, 6, 14, 15

28 U.S.C. § 1653................................................................................................................*Passim*

6Del. Code § 18-214(g) .......................................................................................................1, 3

La. Rev. Stat. § 9:2800.53(1).................................................................................................7

Louisiana Products Liability Act ...........................................................................................1, 7

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO REMAND

**INTRODUCTION**

On February 1, 2022, a Louisiana family filed a six-defendant suit in Louisiana state court over harms to a Louisiana child, and one of those defendants was a Louisiana political subdivision: the Sewerage and Water Board of New Orleans ("The SWB"). The SWB still sat on the docket thirty-one days later, when Nurture removed the case to federal court. On the face of the pleading, complete diversity was missing and federal jurisdiction was lacking from the moment of removal.

Nurture's answer was that the SWB had been improperly joined. But to carry that burden, a removing defendant must show that the plaintiff's failure to state a claim is "obvious according to the settled rules of the state." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (9th Cir. 2009). Nurture cannot meet that standard, because whether the SWB, which sells treated municipal water the Petition alleges was contaminated with the gasoline additives MTBE and ETBE, qualifies as a "manufacturer" under the Louisiana Products Liability Act is an unsettled question of Louisiana law that no published Louisiana decision has resolved. An unsettled state-law question cannot anchor a finding of obvious failure, and federal courts are the wrong place to settle it.

Three months ago, the Supreme Court closed the escape route Nurture has long relied on. *Hain Celestial Grp., Inc. v. Palmquist,* 607 U.S. 421, 424-25 (2026), held that a district court's erroneous dismissal of a nondiverse party before final judgment does not cure a jurisdictional defect that existed when the case was removed to federal court. The plaintiffs there sued Hain (a co-defendant in this MDL) and Whole Foods (also a co-defendant here) in Texas state court; Hain removed; the district court dismissed Whole Foods on improper-joinder grounds; the Supreme Court vacated the resulting judgment because diversity was missing at removal and could not be cured. If a federal court's *reasoned* dismissal of the in-state defendant could not cure the removal-time defect, the pro se Watkins' one-page voluntary dismissal of the SWB on April 4, 2022 cannot either. Diversity at the moment of removal is a question of objective fact, not of parties' later conduct.

A second failure on the same record reinforces the result. Nurture removed in the name of "Nurture, Inc.," a corporation that had ceased to exist sixty-three days earlier when it converted into Nurture, LLC under Delaware law, 6 Del. Code § 18-214(g). The Notice of Removal pleaded only the corporate-citizenship allegations of that defunct entity and said nothing about Nurture, LLC, the LLC

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO REMAND

chain it sits in, or the citizenship of its members at the relevant times. Sixteen months later, after the Eastern District ordered jurisdictional discovery on its own motion, Nurture sought leave to amend and trace a four-link LLC chain that the original Notice had never mentioned. Section 1653 allows a removing defendant to fix inadequate allegations of a jurisdictional basis it has already pleaded. It does not allow a defendant to swap in a different jurisdictional framework altogether. *ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality*, 213 F.3d 1108, 1117 (9th Cir. 2000).

Judge Papillion denied the first motion to remand in 2024 without a written opinion, without findings, and without identifying the arguments he rejected or the authority he applied. That silent ruling does not bind this Court, because subject-matter jurisdiction cannot be waived, consented to, or foreclosed by a prior order that does not address it. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1203 (9th Cir. 2016). Section 1447(c) commands remand "at any time before final judgment" when jurisdiction is lacking, and that duty falls on every federal court at every stage. 28 U.S.C. § 1447(c). It falls on this Court now.

The case belongs in state court.

I.      **PROCEDURAL BACKGROUND**

   **A. The Watkins Filed Their Case in State Court.**

The Watkins filed their Petition in the Civil District Court for the Parish of Orleans on February 1, 2022. Exhibit A - ECF No. 1-2. The Petition alleges that JMW, the Watkins' minor son, was diagnosed with autism spectrum disorder in April 2021 after consuming commercial baby food contaminated with lead, mercury, arsenic, and cadmium. *Id.* ¶¶ 51, 53. It also alleges that the family was exposed for years to the gasoline additives MTBE and ETBE through municipal water supplied by the SWB. *Id.* ¶ 59.

The Petition names six defendants: three baby-food manufacturers (Nurture, Plum, and Hain), two retailers (Amazon and Whole Foods), and the SWB. *Id.* ¶ 7. The Watkins are Louisiana citizens, *id.* at 1, and so is the SWB, a Louisiana political subdivision with its principal place of business in New Orleans, Exhibit B - ECF No. 1 ¶ 10. On the face of the pleading, complete diversity was missing.

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO REMAND

**B. Nurture Inc. converts into an LLC and removes the case in the name of a dead corporation.**

One month before the Petition was filed, Nurture, Inc. ceased to exist. On January 1, 2022, the corporation converted into Nurture, LLC under Delaware law. Exhibit C - ECF No. 200-1 ¶¶ 3-6. Both the Certificate of Formation and the Certificate of Conversion are dated December 27, 2021, with an effective date of 12:01 a.m. Eastern on January 1, 2022. *Id.* ¶¶ 4, 6. Under 6 Del. Code § 18-214(g), the conversion ended the corporation's separate legal existence and Nurture, LLC succeeded it.

But Nurture's Notice of Removal did not say so. On March 4, 2022, sixty-three days after the conversion, a Notice of Removal was filed in the Eastern District of Louisiana captioned "Nurture, Inc.'s Notice of Removal." Exhibit B - ECF No. 1. The Notice nowhere mentioned the conversion. Instead, it identified the removing party as "Nurture, Inc.," and alleged that "Nurture, Inc. is . . . a foreign corporation organized under the laws of Delaware with its principal place of business in New York," such that "Nurture is a citizen of Delaware and New York for purposes of determining diversity." *Id.* ¶ 5. The Notice said nothing about Nurture, LLC, nothing about Nurture, LLC's sole member, and nothing about any of the upstream entities Nurture would later identify (Happy Family Holding Company, LLC; Danone US, LLC; and Danone US, Inc.). It acknowledged that the SWB was a Louisiana citizen, *id.* ¶ 10, and argued that the SWB had been improperly joined or fraudulently misjoined with the baby-food claims, *id.* ¶¶ 12–30.

**C. The pro se Watkins voluntarily dismissed the SWB thirty-one days after removal.**

The Watkins were proceeding pro se when Nurture removed; counsel did not appear for them until February 3, 2023, eleven months later. ECF No. 80. On April 4, 2022, thirty-one days after removal, the pro se Watkins filed a one-page voluntary dismissal of the SWB without prejudice. ECF No. 17. No briefing on removal had taken place by then, and no court had found that the SWB was improperly joined.

For the next seven months, Nurture continued to identify itself as "Nurture, Inc." in pleadings filed with the Eastern District. *See, e.g.*, ECF Nos. 12, 13, 23. The first reference to "Nurture, LLC" appears in a May 11, 2022 reply brief on a motion to dismiss, ECF No. 36, and Nurture did not file its Answer under the correct name until October 7, 2022, ECF No. 53. Three days after that Answer,

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO REMAND

Nurture filed a Corporate Disclosure Statement that disclosed for the first time that "as of January 1, 2022, Nurture, Inc. converted to a Delaware limited liability company." Exhibit D - ECF No. 55. By then more than seven months had passed since removal, and the thirty-day window for amending the Notice of Removal as of right had long since closed.

**D. The Eastern District ordered jurisdictional discovery, and Plaintiffs moved to remand.**

The next development came from the Court, not the parties. On April 27, 2023, more than thirteen months after removal, the Eastern District held a status conference and asked counsel whether the case belonged in federal court. When the Watkins' newly retained counsel expressed uncertainty, the court ordered jurisdictional discovery. ECF No. 96.

Then on June 6, 2023 Nurture identified Happy Family Holding Company, LLC as the sole member of Nurture, LLC and went no further. Exhibit E - ECF No. 112-3. Nurture also took the position that "[o]wnership of Nurture, Inc. in the past is not relevant to the presence of subject matter jurisdiction in this action." *Id.* at 2–3.

The Watkins filed their first Motion to Remand on June 30, 2023. Exhibit F - ECF No. 112. The motion argued that the original Notice of Removal had alleged the citizenship of a nonexistent corporation, that the corporation's citizenship was irrelevant by Nurture's own admission, and that Nurture had failed to plead the facts necessary to establish the citizenship of the actual removing party. Exhibit G - ECF No. 112-1.

**E. Nurture untimely moved to amend its original Notice of Removal, but still failed to cure the defective Notice.**

On July 18, 2023, sixteen months after removal, Nurture opposed the Motion to Remand and at the same time moved for leave to file an Amended Notice of Removal. Exhibit H - ECF No. 118; Exhibit I - ECF No. 119. The proposed Amended Notice identified Nurture, LLC for the first time and traced a four-link corporate chain: Nurture, LLC, whose sole member is Happy Family Holding Company, LLC, whose sole member is Danone US, LLC, whose sole member is the corporation Danone US, Inc. Exhibit J - ECF No. 118-2 ¶ 5.

A month later, at the hearing on the Motion to Remand, the Court asked whether Nurture could provide a declaration from someone with personal knowledge of the corporate structure, and invited supplemental briefing on the question. Exhibit K - ECF No. 200 at 1-2.

Then on September 19, 2023, Nurture filed a Supplemental Memorandum in Support of Subject Matter Jurisdiction that attached the Declaration of Charles George, Director of Tax Planning of Danone North America, Public Benefit Corporation, an entity that does not appear anywhere in the asserted four-link chain. Exhibit K - ECF Nos. 200; Exhibit C - 200-1. George swore to personal knowledge of Nurture, LLC's corporate structure but represented in present tense that each entity in the chain "is" organized under Delaware law and "is" a citizen of Delaware and New York. *Id.* ¶¶ 8–14. He made no representation that the chain held on either February 1 (when the Watkins filed their complaint) or March 4, 2022 (when Nurture removed the case), except to confirm that Nurture, Inc. had ceased to exist on January 1, 2022. *Id.* ¶ 7.

The Watkins filed an Additional Reply the same day. Exhibit L - ECF No. 201. The Reply distinguished Nurture's cases, argued that the Notice of Removal's allegations described a nonexistent entity, and argued that § 1653 does not allow a removing defendant to add a new jurisdictional basis sixteen months out of time. *Id.* at 4–10.

Judge Papillion denied the Motion to Remand without a written opinion: no findings appeared on the record, and the order did not identify which arguments the court rejected or on what authority it had relied.

**F. The case joined the MDL and the Court allowed briefing on subject-matter jurisdiction.**

The JPML transferred the *Watkins* case to this MDL in 2024. This Court later entered Pretrial Order No. 20, directing the parties to meet and confer on subject-matter jurisdiction in every member case. On February 24, 2026, three months ago, the Supreme Court decided *Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. 421 (2026); and on May 19, 2026, the parties filed a Joint Statement identifying *Watkins* as one case in which Plaintiffs contend jurisdiction is lacking. This motion now follows that statement.

**II.    ARGUMENT**

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO REMAND

**A. The Sewerage and Water Board was a properly joined Louisiana defendant whose presence destroyed complete diversity at removal.**

Removal jurisdiction is measured at one moment: when the notice of removal is filed. *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002) (diversity "is determined (and must exist) as of the time the complaint is filed and removal is effected"); Until final judgment is entered, events that follow the notice of removal, whether settlements, voluntary dismissals, or supplemental affidavits filed months later, do not retroactively make an improper removal proper.

The removing party bears the burden of proving that the case was fit for federal court when the notice was filed. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). The Ninth Circuit applies a "strong presumption against removal jurisdiction" which means "the defendant always has the burden of establishing that removal is proper." *Id.* (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam)). And the Court must resolve all ambiguity in favor of remand. *Id.*

Diversity jurisdiction under 28 U.S.C. § 1332(a) requires complete diversity: every plaintiff must be a citizen of a different state from every defendant. When diversity is lacking at removal, § 1447(c) makes remand mandatory: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Here, the Watkins named the SWB, a Louisiana political entity, as a defendant in the Petition alongside the Louisiana-citizen Watkins family. Complete diversity was therefore absent on March 4, 2022, and the only way Nurture can carry its removing-party burden is to prove that the SWB had been improperly joined. It cannot meet that burden for several reasons.

**B. Nurture cannot show what the improper-joinder doctrine requires: an "obvious" failure to state a claim under "settled" Louisiana law..**

Improper joinder is a narrow exception to the complete-diversity rule, applied with a presumption against the removing party. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). The Ninth Circuit standard asks whether "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Hunter*, 582 F.3d at 1043. The removing party bears the burden to show this "obvious" failure and ***all*** ambiguity is resolved ***against*** removal. *Id.* at 1042. Even a summary inquiry into the merits is allowed only on

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO REMAND

"discrete and undisputed facts" that would preclude recovery in any event. *Id.* at 1044; *Allen v. Boeing Co.*, 784 F.3d 625, 634 (9th Cir. 2015) (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc)). The need to dig past the pleadings cuts against the removing party, not for it.

The Supreme Court has signaled that the doctrine should not be expanded. In a concurrence in the same *Palmquist* opinion discussed below, Justice Thomas wrote that the doctrine "appears to allow federal courts to enlarge their jurisdiction by assessing the merits of claims over which they lack jurisdiction," and that "[f]ederal courts sitting in diversity likely cannot dismiss nondiverse parties based on their view of the merits of the claims against those parties." *Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. 421, 434, 437 (2026) (Thomas, J., concurring). One Justice's view does not bind this Court, but it counsels strongly against stretching the doctrine to keep a Louisiana family out of a Louisiana court on a question of Louisiana law that the Louisiana courts have not been asked.

### C. Whether SWB qualifies as a "manufacturer" under the Louisiana Products Liability Act is an open question of Louisiana law.

The Louisiana Products Liability Act defines a "manufacturer" as a person or entity "in the business of manufacturing a product for placement into trade or commerce." La. Rev. Stat. § 9:2800.53(1). The Petition alleges that the SWB "sells 'treated' water" that, during the relevant period, was contaminated with finished gasoline additives, Petition ¶ 99, and brings Count IV against the SWB on a manufacturing-defect theory under the LPLA, alleging that exposure to the contaminated water "caused or contributed to Plaintiffs' injuries," *id. at* ¶¶ 98–102. Whether the SWB's sale of treated municipal water makes it a "manufacturer" under the Act is a question the Louisiana courts have not yet answered. Plaintiff is unaware of any published Louisiana appellate decision holding that a municipal water utility cannot be a "manufacturer" under the LPLA, and federal district courts applying Louisiana law have not reached it either.

That gap is decisive. The Ninth Circuit held in *Hunter* that when a removing party's improper-joinder argument depends on an unsettled legal question, the failure to state a claim cannot be "obvious according to the settled rules of the state." 582 F.3d at 1045. The court there rejected the defendant's reliance on a federal preemption defense for precisely that reason. "[W]hen a defendant asserts that the

7

plaintiff's claim is impliedly preempted by federal law, it cannot be said that the plaintiff's failure to state a claim against the resident defendant is 'obvious according to the settled rules of the state.'" *Id.* The same logic governs an unsettled question of state-law statutory scope. A removing defendant cannot satisfy a heavy burden by asking the federal court to answer a state-law question the state courts have not, and the proper forum for that question is the Civil District Court for the Parish of Orleans.

**D. The Petition's allegations were enough to clear the threshold, and fraudulent misjoinder is not the law of this Circuit.**

The Petition does not allege a speculative claim. JMW tested at 2HIB, a metabolite indicating exposure to the gasoline additives MTBE and ETBE, around 27,000 ug/g. That is more than 135 times the normal upper bound of 200 ug/g. Exhibit A - ECF 1-2 ¶ 59. Both Watkins parents and the other Watkins son also tested positive at levels well above the normal range (approximately 4,603, 4,700, and 7,700 ug/g, respectively). *Id.* Exposure to MTBE has been linked to "hepatic, kidney, and central nervous system toxicity, peripheral neurotoxicity, and cancer," and ETBE is "likely to be similarly toxic" because both additives produce the same metabolite. *Id.* ¶¶ 60–61. The Petition alleges that "the SWB water was the ONLY source of contamination possible," *id.* ¶ 59; that the Watkins consumed and bathed in that water for years without notice of the contamination, *id.* ¶ 101; and that exposure to the contaminated water "caused or contributed to Plaintiffs' injuries alleged herein," *id.* ¶ 102.

In its original removal petition, Nurture characterized the "results are pending" language in paragraph 59 as fatal speculation about exposure, Exhibit B - ECF No. 1 ¶ 19, but that label misreads the paragraph: the "results are pending" language refers to confirmatory testing of the water source itself, not to the family's exposure, which is pleaded as documented by laboratory results. The improper-joinder inquiry asks whether there is *any* reasonable basis to predict recovery, not whether a plaintiff will eventually win. *See Hunter*, 582 F.3d at 1044. "[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1299 (11th Cir. 2007). Allegations of confirmed exposure paired with a single identified source clear that bar comfortably.

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO REMAND

Nurture's alternative theory, that the SWB was "fraudulently misjoined" with the baby-food claims under *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), is not the law of this Circuit. The Ninth Circuit "has not adopted, approved, nor applied," the theory of fraudulent misjoinder. *Jurin v. Transamerica Life Ins. Co.*, No. C 14-02882 LB, 2014 U.S. Dist. LX 123569, at *9 (N.D. Cal. Sep. 2, 2014). And even the Fifth Circuit, where the doctrine originally found footing, has since pulled back. In *Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 812 (5th Cir. 2021), the court of appeals confirmed that fraudulent misjoinder is a doctrine it "ha[s] never adopted and do[es] not adopt now." Nurture's own Notice of Removal acknowledged the split. Exhibit B - ECF No. 1 ¶ 23. The doctrine offers no route to federal jurisdiction in this Court.

The SWB was properly joined, and complete diversity therefore did not exist on March 4, 2022.

**E. The post-removal dismissal of the SWB does not cure the removal-time defect.**

District courts applying the time-of-removal rule have rejected the next argument Nurture must make: that a plaintiff's voluntary dismissal of a nondiverse defendant, filed after the notice of removal, somehow cures the absence of complete diversity at the moment of removal. The answer is uniform: it does not.

Most recently, in *Morgan v. Tyree*, the District of Nevada rejected this argument and remanded the case *sua sponte*. The defendants there stipulated to dismiss the nondiverse defendant after removal and asked the court to credit the dismissal as a cure. The court refused, holding that "dismissing [the nondiverse defendant] now does not cure the lack of complete diversity 'at the time of removal.'" *Morgan v. Tyree*, No. 2:23-cv-01160-GMN-NJK, 2023 U.S. Dist. LEXIS 158334, at *4-5 (D. Nev. Sep. 6, 2023) (quoting *Coastal Constr. Co. Inc. v. N. Am. Specialty Ins. Co.*, No. 11-cv-00115, 2011 U.S. Dist. LEXIS 46394, 2011 WL 1637467, at *3 (D. Haw. Apr. 29, 2011)). The court anchored its analysis in this Circuit's "core principle of federal removal jurisdiction on the basis of diversity [is] that it is determined (and must exist) as of the time the complaint is filed and removal is effected." *Id.* (quoting *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002)).

The Northern District of California reached the same conclusion two decades ago in *Rudow v. Monsanto Co.* Judge Henderson explained the limit on *Caterpillar* in plain terms: "to whatever extent *Caterpillar* grants a court discretion to treat as cured a jurisdictional defect existing at the time of

9

removal, that discretion is afforded only to reviewing courts, *after final judgment*, because at that point 'considerations of finality, efficiency, and economy become overwhelming.'" *Rudow v. Monsanto Co.*, No. C99-4700 TEH, 2001 U.S. Dist. LX 2352, at *4 (N.D. Cal. Mar. 1, 2001) (emphasis in original) (quoting *Caterpillar*, 519 U.S. at 75). When the case has not reached judgment, that discretion does not exist, and the proper course is remand.

The Southern District of New York applied the same rule on closely similar facts in *Vasura v. Acands*. The case had been removed without complete diversity, the nondiverse defendant had been dismissed post-removal, and the question was whether *Caterpillar* could rescue the removal. The court held that *Caterpillar* "is not relevant to the motion at hand as this case has not reached the stage of adjudication and the only consideration is whether remand is required at this preliminary stage." *Vasura v. Acands*, 84 F. Supp. 2d 531, 537 (S.D.N.Y. 2000). Writing more broadly, the court explained that "the preferable, if not the required, course of dealing with such a case before it has reached the stage of judgment is to remand the case to the state court from which it was improperly removed." *Id.* at 538. The rule the court derived from *Caterpillar* and its progeny was direct: "developments in the lawsuit . . . subsequent to removal can not serve to confer federal court jurisdiction if none in fact existed as of the time of removal." *Id.* at 538; *see Klintworth v. Valley Forge Ins. Co.*, No. 17-CV-448-JHP-JFJ, 2018 U.S. Dist. LX 161916, at *15 (N.D. Okla. Aug. 15, 2018) ("[i]f one keeps in mind the fundamental precept that removal jurisdiction must be ascertained as of the time of removal, one may fairly derive from these cases the principle that removal on the ground of diversity is not subject to post-hoc justification." (quoting *Vasura*, 84 F. Supp. 2d at 538)).

Thus, because diversity did not exist at the time of removal, this case must be remanded to state court.

**F. The Notice of Removal pleaded the citizenship of a dead corporation, and § 1653 does not allow Nurture to add a new jurisdictional basis sixteen months too late.**

The improper-joinder analysis alone requires remand, but a separate failure on the same record points the same way. The Notice of Removal pleaded only the corporate-citizenship of "Nurture, Inc." But "Nurture, Inc." ceased to exist sixty-three days before the Notice of Removal was filed. Still, Nurture's Notice said nothing about "***Nurture, LLC***" or its citizenship. The Removal Notice thus

10

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO REMAND

described a corporation that did not exist on the day of removal. The citizenship of a nonexistent corporation cannot ground federal diversity jurisdiction.

Nurture conceded the point in its own discovery responses, where it wrote that "[o]wnership of Nurture, Inc. in the past is not relevant to the presence of subject matter jurisdiction in this action." Exhibit E - ECF No. 112-3 at 2-3. By Nurture's own admission, then, the only allegations in the Notice of Removal are jurisdictionally irrelevant, and nothing else in the Notice fills the gap.

Then, sixteen months later, Nurture sought to amend the Notice to add the LLC chain. Exhibit H - ECF 118. Section 1653 does allow a removing defendant to fix inadequate *allegations* of a basis already pleaded. But it does not let the defendant swap in a different jurisdictional *framework* after the removal clock has run.

**G. Corporate citizenship and LLC citizenship are different jurisdictional inquiries governed by different rules.**

A corporation's citizenship is fixed by state of incorporation and principal place of business. 28 U.S.C. § 1332(c)(1). An LLC's citizenship turns on the citizenship of every member, traced through every organizational layer until natural persons or corporations are reached. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990). These are not the same analysis with different labels; they are categorically different inquiries that require categorically different factual records.

The Notice of Removal tendered the corporate analysis: state of incorporation Delaware, principal place of business New York. It made no allegations at all about Nurture, LLC's sole member, that member's sole member, that entity's sole member, or the citizenship of any of them. Substituting the LLC chain for the corporate-citizenship analysis is not curing a defective allegation. It is supplying a different jurisdictional framework altogether, on a different factual record, governed by different rules. Section 1653 allows a removing defendant to fix a flat tire; it does not let the defendant swap the car.

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO REMAND

**H. Section 1653 permits cure of inadequate allegations, not the addition of new jurisdictional bases.**

Section 1653 provides that "[d]efective *allegations* of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653 (emphasis added). The Supreme Court has been explicit about what that statute does and does not allow: § 1653 "allows appellate courts to remedy inadequate jurisdictional allegations, but not defective jurisdictional *facts*." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989). The "primary purpose of § 1653 is to permit correction of incorrect statements about extant jurisdiction." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 (9th Cir. 2002). Where jurisdiction actually existed but was inadequately pleaded, § 1653 cures; where the original notice rests on a fundamentally different jurisdictional basis, it does not.

The Ninth Circuit applies that distinction as a hard rule: a notice of removal "cannot be amended to add a separate basis for removal jurisdiction after the thirty day period." *ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality*, 213 F.3d 1108, 1117 (9th Cir. 2000) (quoting *O'Halloran v. Univ. of Wash.*, 856 F.2d 1375, 1381 (9th Cir. 1988)). The treatises state the rule the same way. Defendants "may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal." 14C Wright & Miller, Federal Practice and Procedure § 3733, at 651–59 (4th ed. 2009); *accord* 16 Moore's Federal Practice § 107.30[2][a][iv] ("Amendment may be permitted after the 30-day period if the amendment corrects defective allegations of jurisdiction, but not to add a new basis for removal jurisdiction.").

The proposed Amended Notice fails that test, because it does not clarify allegations that Nurture had already made about "Nurture, LLC." Indeed, Nurture had made no allegations about "Nurture, LLC" at all. It supplies an entirely new factual record instead: a four-layer LLC chain with each layer's citizenship traced, none of which appears in the original Notice. That is the kind of "missing allegations" Wright & Miller identify as off-limits, sixteen months past the deadline.

**I. The George Declaration cannot retroactively cure the Notice's silence about the LLC chain at the time of removal.**

Nurture's September 2023 Supplemental Memorandum attached the Declaration of Charles George, Director of Tax Planning of *Danone North America, Public Benefit Corporation*, an entity

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO REMAND

that does not appear anywhere in the asserted four-link chain. Exhibit C - ECF No. 200-1. The Declaration speaks in present tense as of August 2023, *id.* ¶¶ 8–14, and George does not represent that the chain held on February 1 (when the complaint was filed) or March 4, 2022 (when the case was removed), except to confirm that Nurture, Inc. ceased to exist on January 1, 2022, *id.* ¶ 7. The LLC Agreements for Nurture, LLC and Happy Family Holding Company, LLC themselves provide that the principal place of business may be changed to "such other location as may be designated by the Sole Member from time to time." *Id.* Ex. A § 2.4; *id.* Ex. D § 2.4. The agreements thus confirm on their face that the addresses they list as of January 1, 2022 do not establish where the nerve centers sat on March 4, 2022.

Nurture has thus never pleaded the citizenship of the upstream chain at the time of removal. The original Notice alleged the citizenship of Nurture, Inc., not Nurture, LLC, and said nothing about Happy Family, Danone US, LLC, or Danone US, Inc. Exhibit B - ECF No. 1 ¶ 5. The proposed Amended Notice pleads only that Nurture, LLC "was not at the time this action was commenced, a citizen of the State of Louisiana," and for every upstream entity uses present-tense "is" without temporal qualification. Exhibit J - ECF No. 118-2 ¶ 5. The George Declaration repeats the same pattern: a single date-specific representation about Nurture, Inc.'s January 1, 2022 dissolution, paired with present-tense representations about every other entity as of August 2023. Exhibit C - ECF No. 200-1 ¶¶ 7-14. On the question whether each upstream member was a Delaware or New York citizen on the day Nurture removed, the record contains no affirmative representation by anyone with personal knowledge.

That evidentiary gap matters because the burden of proving diversity at removal rests with Nurture. The gap also sits on top of a deeper problem the supplemental record cannot solve: the original Notice contained no allegations at all about the LLC chain it now asks the Court to credit. Adding that chain through declarations sixteen months out of time does not cure the original defective allegations.

Nurture will respond that the amended Removal Notice does not add a "separate basis" for removal jurisdiction in the *ARCO* sense, because both the original and amended Notices invoke § 1332 diversity. That response misses the line *Newman-Green* draws. Section 1653 reaches inadequate *allegations* of extant jurisdiction; it does not reach the supply of different

13

jurisdictional *facts* required to establish jurisdiction under a different analytical framework. *Newman-Green*, 490 U.S. at 832. The corporate-citizenship analysis Nurture pleaded in March 2022 and the LLC-chain analysis Nurture wants to rely on now are not the same jurisdictional fact pleaded twice. They are categorically different jurisdictional facts, governed by different rules, requiring different evidence. *Compare* 28 U.S.C. § 1332(c)(1) (corporate citizenship), *with Johnson*, 437 F.3d at 899 (LLC citizenship traced through every member). The original Notice pleaded the citizenship of a defunct corporation under § 1332(c)(1); it did not inadequately allege the citizenship of an LLC chain. It pleaded no LLC-chain allegations at all. There is nothing to cure. To this day Nurture has not identified its members' citizenship ***at the time of removal or when the complaint was filed***.

Nurture's amended Notice thus also does not relate back to the original Notice of Removal. Section 1653 reaches amendments that cure inadequate allegations of extant jurisdiction. It does not reach the supply of different jurisdictional facts under a different analytical framework. *Newman-Green*, 490 U.S. at 832; *Snell*, 316 F.3d at 828 n.6. An amendment beyond § 1653's scope, filed after § 1446's thirty-day removal window, does not relate back to the original Notice. It stands as a new removal. *See ARCO*, 213 F.3d at 1117; *O'Halloran*, 856 F.2d at 1381. And sixteen months after the original Removal Notice is much too late.

### J. Section 1447(c) requires remand, and the Eastern District's prior denial does not bind this Court.

Two final points complete the analysis: Section 1447(c) is mandatory, and Judge Papillion's silent 2024 denial of the first remand motion does not change that mandate or relieve this Court of its independent duty.

Section 1447(c) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c) (emphasis added). The Ninth Circuit reads the statute literally: "No motion, timely or otherwise, is necessary: ultimate responsibility to ensure jurisdiction lies with the district court." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016). Subject-matter jurisdiction "can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO REMAND

Judge Papillion denied the first Motion to Remand without a written opinion, without findings, and with no indication of which arguments the court rejected or on what authority. A silent denial cannot foreclose jurisdictional review by another federal court. Subject-matter jurisdiction is not subject to preclusion, law of the case, or estoppel by acquiescence; the duty to police it falls on every federal court at every stage, and each court must satisfy itself independently.

Section 1447(c) controls a removed case, and § 1447(c) commands remand to the Civil District Court for the Parish of Orleans, where the action was filed and where it was pending when Nurture filed the Notice of Removal.

## III.    CONCLUSION

The motion to remand should be granted, and the case should be returned to the Civil District Court for the Parish of Orleans.

Dated:  May 28, 2026                    **ANAPOL WEISS**

By: /s/ William L. Smith
WILLIAM L. SMITH (SBN 324235)
6060 Center Drive 10th Floor,
Los Angeles, CA 90045
Telephone: (202) 780-3014
Email: wsmith@anapolweiss.com

By: /s/ Alexandra M. Walsh
ALEXANDRA M. WALSH (*pro hac vice*)
14 Ridge Square NW, Suite 342
Washington, DC 20016
Telephone: (202) 780-3014
Email: awalsh@anapolweiss.com

**WAGSTAFF LAW FIRM**

By: /s/ Aimee H. Wagstaff
AIMEE H. WAGSTAFF (SBN 278480)
940 N. Lincoln Street
Denver, Colorado 80203
Telephone: (303) 376-6360
awagstaff@wagstafflawfirm.com

*Attorneys for Plaintiff*

15

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO REMAND

## CERTIFICATE OF SERVICE

I certify that on May 28, 2026, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

*/s/ Aimee H. Wagstaff*

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO REMAND