R. Brent Wisner (SBN 276023)
rbwisner@wisnerbaum.com
**WISNER BAUM, LLP**
11111 Santa Monica Blvd., Suite 1750
Los Angeles, CA 90025
Tel: (310) 207-3233
Fax: (310) 820-7444

Aimee H. Wagstaff (SBN: 278480)
awagstaff@wagstafflawfirm.com
**WAGSTAFF LAW FIRM**
940 N. Lincoln Street
Denver, Colorado 80203
Telephone: 303.376.6360
Facsimile: 303.376.6361

*Co-Lead Counsel for Plaintiffs in MDL 3101*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION | Case No. 24-MD-3101-JSC<br>MDL No. 3101 |
| | Hon. Jacqueline Scott Corley |
| This document relates to: | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| ALL ACTIONS | |
| | Date:      July 9, 2026<br>Time:      2:30 p.m. PT<br>Location: Courtroom 8, 19th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................1

ARGUMENT ...................................................................................................................3

    I.     Summary Judgment Can Only Be Granted in an Individual Case Because the Court Concluded that Plaintiffs' General Causation Experts Cannot Meet the Bradford Hill Requirement of Temporality ...........................................3

    II.    Summary Judgment Should Not Be Entered Against Plaintiffs Who Filed Their Cases After the General Causation Experts' Reports Were Served .............9

    III.   Summary Judgment Must Be Limited to Claims of ASD and ADHD Based on Defendants' Non-Formula Products ...............................................................12

CONCLUSION ..............................................................................................................14

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Geddes v. United Fin. Grp.*,
 559 F.2d 557 (9th Cir. 1977) ................................................................................................ 10

*In re Hanford Nuclear Rsrv. Litig.*,
 292 F.3d 1124 (9th Cir. 2002) ................................................................................................ 6

*In re Korean Air Lines Co., Ltd.*,
 642 F.3d 685 (9th Cir. 2011) ............................................................................................... 10

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,
 460 F.3d 1217 (9th Cir. 2006) ............................................................................................. 10

*In re Roundup Prods. Liab. Litig.*,
 390 F. Supp. 3d 1102 (N.D. Cal. 2018) ................................................................................. 5

*In re: Zantac (Ranitidine) Litig.*,
 2026 WL 1009008 (Del. Super. Ct. Apr. 14, 2026) ........................................................ 11, 12

*Montana v. United States*,
 440 U.S. 147 (1979) ............................................................................................................. 10

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*,
 210 F.3d 1099 (9th Cir. 2000) ............................................................................................... 8

*Richards v. Jefferson County*,
 217 U.S. 793 (1996) ........................................................................................................... 9, 10

*Taylor v. Sturgell*,
 553 U.S. 880 (2008) ........................................................................................................... 9, 10

**Statutes**

28 U.S.C. § 1407 ...................................................................................................................... 10

**Other Authorities**

FED. PRAC. & PROC. EVID. § 6274 .............................................................................................. 8

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

## INTRODUCTION

Plaintiffs will challenge this Court's *Daubert* Order (Dkt. No. 710) on appeal. Before Plaintiffs are able to appeal that Order, however, the Court will need to enter final judgment on an individual case. This raises three issues: (1) how does the Court's *Daubert* Order affect any specific Plaintiff's case; (2) to which Plaintiffs does the Order apply; and (3) to which claims does the Order apply?

*First*, summary judgment is appropriate only insofar as a Plaintiff is unable to present admissible evidence of general causation between the heavy metals in Defendants' baby foods and autism spectrum disorder (ASD) or attention-deficit/hyperactivity disorder (ADHD). However, the only portion of the Court's *Daubert* Order that relates specifically to general causation is the Court's analysis of the Bradford Hill factor of temporality, i.e., that exposure to the toxic heavy metals found in Defendants' baby foods preceded the onset of ASD or ADHD in the relevant scientific literature. *See* Order re Defs.' Mot. To Exclude Pls.' Expert Witnesses, Dkt. No. 710, at 34–42 (Feb. 27, 2026) ("Order"). That was the Court's only basis for excluding Plaintiffs' experts that applies to any individual plaintiff. In other words, the Court may grant summary judgment because it has excluded Plaintiffs' General Causation Experts, namely Plaintiffs' epidemiologists (Drs. Gardener, Hu, and Ritz) and toxicologists (Drs. Aschner and Guilarte). But, the Court excluded all these experts' epidemiological and toxicological opinions because—and only because—their reports purportedly fail to establish temporality. Without these experts, as Defendants argue, Plaintiffs lack the evidence needed to prove general causation and thus to avoid summary judgment.

But the Court cannot grant summary judgment based on its exclusion of Plaintiffs' Exposure Experts, Ms. Barr and Dr. Jones. The Court excluded these experts based on its conclusion that the hypothetical menus of Defendants' baby foods these experts considered did not "represent a realistic consumption pattern for any children." Order at 21. Again, Plaintiffs respectfully disagree with that conclusion. But even assuming the Court's conclusion is correct, it provides no basis for judgment against any actual Plaintiff, since it is based on hypothetical, "[un]realistic" menus that no Plaintiff actually ate. *Id*. Indeed, Plaintiffs have never argued that

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

any of them ate one of these exact menus. Plaintiffs were required to offer these hypothetical menus because the Court simultaneously (and, in Plaintiffs' view, erroneously) ordered Plaintiffs to address general causation separately from specific causation yet also in the context of Plaintiffs' exposures to particular Defendant baby food products.

As a result of how the Court structured these proceedings, there is currently no evidence in the record about how much of Defendants' baby food a given Plaintiff ate, no finding about whether an expert may reliably testify that a given Plaintiffs' exposure to toxic heavy metal through Defendants' baby foods could cause ASD or ADHD, and, thus, no way to grant summary judgment against any given Plaintiff on this ground. The only reason that any given Plaintiff cannot currently establish general causation is the Court's finding that Plaintiffs' General Causation Experts failed to establish temporality. Without that finding, the Court could not grant summary judgment against any given Plaintiff because the Court's Order is not based on the menu of baby food any given Plaintiff actually ate (or even, according to the Court, a menu any Plaintiff could have realistically eaten).

*Second*, summary judgment can extend only to those Plaintiffs whose cases had been filed in or transferred to this MDL by the time Plaintiffs had served their expert reports (May 23, 2025). Summary judgment cannot extend, as Defendants request, to all Plaintiffs who happened to find themselves in the MDL after that date but before the Court-ordered deadline for direct filing (November 21, 2025) or whose cases were transferred to the MDL after the direct-filing deadline. Plaintiffs whose cases were filed in or transferred to the MDL after May 23, 2025 had no ability to consent to the expert reports before that date and no mechanism to consent to them after. Defendants' request violates fundamental due process as to those Plaintiffs.

*Third*, and finally, summary judgment can extend only to claims for the injuries that the Court explicitly addressed in its *Daubert* Order, that is, for ASD and ADHD and for claims related to Defendants' baby foods—which the Court had previously defined not to include Defendants' baby formulas. This means that, for Plaintiffs with claims alleging injuries other than ASD and ADHD or claims alleging injury from baby formula, this Court cannot enter any final judgment against those Plaintiffs, even if the Court were to grant summary judgment on their ASD, ADHD,

or baby food claims. They still have pending and unaddressed claims, which should simply be stayed pending resolution of the Plaintiffs' appeal of this Court's *Daubert* Order.

**ARGUMENT**

I.   **SUMMARY JUDGMENT CAN ONLY BE GRANTED IN AN INDIVIDUAL CASE BECAUSE THE COURT CONCLUDED THAT PLAINTIFFS' GENERAL CAUSATION EXPERTS CANNOT MEET THE BRADFORD HILL REQUIREMENT OF TEMPORALITY**

The Court excluded the various different reports from five of Plaintiffs' General Causation Experts (Drs. Gardener, Hu, Ritz, Aschner, and Guilarte) all for reasons that, as the Court emphasized, ultimately went to the temporality requirement—that "***exposure must precede disease onset***." Order at 8 (emphases in original). That is, after all, the upshot of the Court's assertion that "[t]here are ***no studies*** considering whether consumption of baby food is associated with ASD or ADHD," i.e., no study where a subject first ate commercial baby food and then was diagnosed with ASD or ADHD. *Id*. at 28 (emphases in original). For purposes of the general-causation inquiry, the Court defined "exposure" as exposure *specifically through commercial baby foods* and criticized Plaintiffs' General Causation Experts for the purported absence of such a narrowly defined study. Although Plaintiffs disagree with that analytical framework and framing of the general causation question,[1] and presented expert opinions that are admissible under *Daubert* even under that framework, the Court's analysis is nevertheless grounded in temporality. So, for example, are the Court's criticisms of the General Causation Experts' consideration of prenatal evidence, where study subjects were exposed *in utero* to the same toxic heavy metals found in Defendants' baby foods, albeit not through the specific vehicle of consuming Defendants' baby foods.[2]

---

[1] *See* Joint Stmt. Pursuant to PTO 1, Dkt. 128, at 18–19 (May 10, 2024) (first CMC statement before the Court with Plaintiffs' objection to this framing of the general causation question, which was, ultimately, overruled by the Court in its *Daubert* Order).

[2] *See also* Order at 33 ("For [Plaintiff's] epidemiology experts, this *Joiner* problem is paired with a failure to reliably apply the Bradford Hill Criteria, ***specifically the temporality criterion***.") (emphases added); *id*. at 33–34 ("Plaintiffs' experts agree temporality is essential to a causation conclusion. . . . But, the studies these experts cite to establish temporality do not provide a sufficient basis to reliably draw such a conclusion."); *id*. at 37 ("Perhaps such studies [i.e., the four

3

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Accordingly, when discussing a few of the relevant studies on which Plaintiffs' General Causation Experts relied, the Court identified issues that purportedly prevented those studies from establishing temporality. *See id.* at 34–37 (assessing whether the Kim, Skogheim, Alampi, and Arora studies provided statistically significant evidence of temporality as to lead and ASD); *id.* at 39 (assessing whether the Ji study established temporality as to lead and ADHD after categorically disregarding other studies on temporality grounds). The Court's conclusion as to lead and ASD, therefore, was:

> In sum, the reports of Drs. Ritz, Hu, and Gardener outline a reliable method in the Bradford Hill Criteria, but they do not apply that method reliably to the opinions offered in this MDL. ***They can point to no study satisfying temporality*** that demonstrates a statistically significant association between lead exposure and ASD diagnosis, let alone a study evincing a positive association between consuming baby foods and development of ASD.

*Id.* at 38 (emphases added). As to lead and ADHD, the Court's conclusion followed "the reasons set out in the Court's analysis of lead exposure and the development of ASD," and so was limited to temporality as well. *Id.* at 39. And the Court's analysis of arsenic and ASD likewise focused on the General Causation Experts' use of prenatal evidence. *See id.* at 39–40.

Plaintiffs disagree that they must "*establish* temporality," rather than present expert opinions that reliably consider and address the factor of temporality with scientific evidence, to satisfy *Daubert* and Rule 702 and thus allow the case to proceed to the jury as factfinder. *Id.* at 34 (emphasis added). Indeed, as argued in the underlying *Daubert* briefing—which will be the subject of the appeal—Plaintiffs believe the Court's temporality analysis departs from Bradford-Hill's framework, the Reference Manual on Scientific Evidence, and Ninth Circuit caselaw. Until the Ninth Circuit weighs in, however, the Court's above conclusions mean that Plaintiffs' epidemiologists (Drs. Gardener, Hu, and Ritz) cannot testify, and thus that Plaintiffs cannot

epidemiological studies that the Court's Order considers] could lend support to other factors in the Bradford Hill Criteria, but as to temporality—the only essential factor—the behavior studies with no confirmed ASD diagnosis do not support a reliable conclusion that lead exposure can cause ASD."); *id.* at 41 ("To reliably offer an opinion that Defendants' products can cause ASD and ADHD in the children who consume them, Plaintiffs' experts must show some scientific evidence that satisfies temporality and connects exposure to these metals during the relevant postnatal period to diagnosed ASD or ADHD. They have not done so.").

4

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

present sufficient evidence of general causation—i.e., that exposure to lead and arsenic, including through Defendants' baby foods, can cause neurodevelopmental harms that can manifest in diagnoses of ASD and/or ADHD. Everyone agrees that temporality is "the only non-discretionary Bradford Hill factor" that the expert must consider and address satisfactorily. *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1132 (N.D. Cal. 2018), *aff'd sub nom. Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021).

These conclusions similarly bar testimony from Plaintiffs' toxicologists, Drs. Aschner and Guilarte. Citing the same studies it had already discussed when assessing the epidemiologists' reports (the Skogheim, Doherty, Kim, Arora, and Ji studies), the Court found that, "[f]or the same reasons the epidemiologists' causation opinions have been excluded"—namely, a purported failure to "satisf[y] temporality"—"these toxicology causation opinions are excluded." Order at 41. And to the extent the Court considered any other studies (specifically, the Grandjean & Landrigan, Goel & Aschner, Filon, and Mohamed studies), the Court gave them no weight because the Court held that they "do not contribute any distinct points as to the question of temporality[.]" *Id*. at 42.

The Court did not bar testimony from any of these experts based on *any* consideration *other* than temporality. Other than being listed early on in the Order, *see id*. at 12, none of the other eight Bradford-Hill factors—strength of association, consistency, specificity, dose response, biological plausibility, coherence, experimental evidence, and analogy—appear anywhere in the Court's analysis of these experts. As a result, the temporality factor is the only issue preventing the General Causation Experts from testifying.

Even though the Court has also excluded reports from Plaintiffs' Exposure Experts, Ms. Barr and Dr. Jones, there is no basis in the record to enter summary judgment against any Plaintiff for a purported failure to show sufficient exposure. Whether a given Plaintiff was exposed to enough toxic heavy metal through Defendants' baby foods to result in a diagnosis of ASD or ADHD is a question of specific causation, which comes after general causation. Indeed, if an individual case were to proceed with expert discovery, there would be no need for any hypothetical menu. General causation asks whether a particular toxic agent is *capable* of causing the harm alleged in the human population; specific causation asks whether a specific exposure to

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

that agent *did* cause that harm in a specific case. *See, e.g.*, *In re Hanford Nuclear Rsrv. Litig.*, 292 F.3d 1124, 1133 (9th Cir. 2002). This Court bifurcated the general- and specific-causation stages here, over Plaintiffs' objection. However, when the Court insisted that the general causation question be tied to specific baby food products—again, over Plaintiffs' repeated objections—but refused to allow specific causation, it forced Plaintiffs to create hypothetical exposures from hypothetical menus derived from Appendix A to the Master Complaint. The Court ultimately rejected the approach Plaintiffs' counsel took to create and assess those menus as unreliable. *See* Order at 16–19. But that approach would not have been necessary in a typical case involving a specific child with a specific menu. Thus, the reliability of the hypothetical menus, and what Dr. Jones and Ms. Barr did to assess those menus, has no bearing on any individual case; it was merely a product of the bifurcation process imposed by the Court.

Indeed, the Court's own Order explains why summary judgment cannot be granted on exposure grounds. The Court excluded these experts because their reports related to hypothetical menus of Defendants' baby foods that, the Court found, did *not* reflect levels of heavy metal exposure that any given Plaintiff would realistically have experienced from consuming Defendants' baby foods. Thus, the Court concluded as to Ms. Barr:

> To establish general causation, Plaintiffs' experts needed to show that the toxin can cause the disease at exposure levels people ***realistically*** may have experienced. For the reasons discussed in the Court's analysis of Ms. Barr's opinion, Plaintiffs have not established their counsel-created hypothetical menus represent a realistic consumption pattern for any children.

*Id*. at 21 (emphases in original; otherwise cleaned up). The Court concluded the same as to Dr. Jones. *See id*. at 23–24 (excluding Dr. Jones's report, even though she "employs a reliable exposure assessment method," because her report "is based upon a hypothetical consumption pattern of Defendants' products that the Court has excluded for lacking reliability and relevance" and because her use of purportedly "unrealistic consumption scenarios as the basis for her calculations undermines" those calculations).

Plaintiffs again dispute these conclusions. But if these reports were unreliable because they reflected *unrealistic* exposure assumptions, then these reports—and the Court's rulings on them—necessarily do not say anything about a given Plaintiff's exposures or the neurodevelopmental

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

harms that might result. Logically speaking, then, the Court's exclusion of these reports cannot form a basis for summary judgment against any specific Plaintiff.

Plaintiffs concede, however, that the Court's temporality analysis does apply to general causation as it would be considered in a specific Plaintiff's case. So, to the extent the Court enters summary judgment against Plaintiffs, it must be based on the Court's exclusion of Plaintiffs' General Causation Experts and their purported failure to properly address the Bradford Hill factor of temporality. It cannot and should not be based on the Court's exclusion of Dr. Jones's and Ms. Barr's opinions related to the hypothetical menus—menus this Court has held are not representative of any Plaintiff.

In slightly more technical terms, it is Defendants' burden to show that no genuine dispute exists over this material fact. According to the Court's Order, Defendants have made that showing with regard to the subjects of the General Causation Experts' reports, more specifically with regard to temporality. And that finding applies to all Plaintiffs at the general-causation stage. There is, however, no such finding as to any Plaintiff's level of heavy-metal exposure. Indeed, the Court excluded Plaintiffs' Exposure Experts *because* they purportedly did not provide realistic evidence of Plaintiffs' potential exposures. Plaintiffs proffered the Barr and Jones reports in the first place in an attempt to address general causation within the parameters that the Court articulated early on, i.e., in the context of the various Defendant baby food products that different Plaintiffs consumed.[3] The Court was not satisfied that those reports helped Plaintiffs prove that they could have ingested enough heavy metals through Defendants' baby foods to develop ASD or ADHD. Yet Defendants have presented no evidence to the contrary. The parties have not even started to conduct discovery over that fact in this MDL.

Plaintiffs will need to present such evidence at the specific-causation stage or at trial, once

---

[3] As the Court knows, Plaintiffs objected from the outset to any general-causation process that risked delving too far into specific causation. *See, e.g.*, 5/16/24 CMC at 22:4–9 (Mr. Wisner: . . . "The one issue that I think may need more – some sort of briefing schedule, is the question of general causation. And you said high level, did Defendants' products, could they cause this disease, these outcomes, ASD, or ADHD. The problem with that question is if the products are in the question, then we need to discover all the products.").

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

discovery is permitted. At this stage, however, the absence of such evidence means that this fact remains in dispute, that Defendants have not carried their burden, and that their summary-judgment motion on this ground must therefore be denied. *See, e.g.*, *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (when moving for summary judgment, defendants must either "produce evidence negating an essential element of the [plaintiff's] case, or, after suitable discovery, . . . show that the [plaintiff] does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial").[4]

Defendants' only response to this argument is to mischaracterize it. Plaintiffs do not argue that "no plaintiff is subject to summary judgment." Defs.' Mot. for Summ. J., Dkt. 728, at 6 (May 1, 2026) ("MSJ"). Plaintiffs whose cases were on file in the MDL when the General Causation Experts' reports were served (on May 23, 2025) may be subject to summary judgment because the Court has excluded those reports. No quote from Plaintiffs' counsel, which Defendants take out of context, is to the contrary. *See id*. at 8–9. But no Plaintiff is subject to summary judgment on the ground that the Court has excluded the Exposure Experts. Nothing in the record says, one way or the other, whether any given Plaintiff consumed enough toxic heavy metals through Defendants to cause neurodevelopmental harm. This is therefore not an issue that the Ninth Circuit need consider on appeal. After all, Plaintiffs can still present realistic menus of Defendants' baby foods to ground future exposure assessments: perhaps most obviously, based on the amount of such foods that a given plaintiff can attest to consuming. Experts commonly rely on such evidence. *See, e.g.*, 29 Wright & Miller, Fed. Prac. & Proc. Evid. § 6274 &n.52 (2d ed.). Should the Ninth Circuit reverse this Court's analysis of the Bradford Hill temporality factor, and the Court otherwise finds the general causation opinions admissible, Plaintiffs can present individual exposure evidence before any case proceeds to trial, and a case-specific expert will, at that point, opine about whether

---

[4] The Court similarly cannot enter summary judgment based on the General Causation Experts' consideration of Dr. Jones's report. As the Court notes, the General Causation Experts "engaged only briefly with Dr. Jones' calculations," which the Court has deemed irrelevant anyway. Order at 31. Defendants themselves thus do not even mention Dr. Jones or Ms. Barr when arguing that "Plaintiffs' failure to provide admissible expert testimony on general causation compels entry of summary judgment." MSJ at 4 (capitalization altered).

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

the metal exposure from the specific foods the child consumed were a substantial factor in causing the Plaintiff's ASD and/or ADHD.

## II. SUMMARY JUDGMENT SHOULD NOT BE ENTERED AGAINST PLAINTIFFS WHO FILED THEIR CASES AFTER THE GENERAL CAUSATION EXPERTS' REPORTS WERE SERVED

The November 21, 2025 deadline for direct filing was established for a discrete and simple purpose: to fix the date on which the Court's Direct Filing Order would expire. (Dkt. No. 466 at 24:1-16, Apr. 24, 2025 Status Conf. Hr'g Tr.) The Court explained that it wished to give prospective plaintiffs "some incentive" to decide whether to join the MDL, while making clear that after November 21 they would no longer enjoy a guaranteed right to file directly in this District. (*Id.*; *See also id.* at 27:1-3.) Defendants now propose a reinterpretation of that procedural deadline, asking the Court to apply its *Daubert* findings and enter summary judgment against any Plaintiff who happened to file or have their case transferred to this MDL before that date but after Plaintiffs served their expert reports on May 23, 2025. That argument tramples on the basic due process rights of all those plaintiffs. And in advancing that argument, Defendants take both the Court and their cited caselaw out of context.

As the Court has repeatedly recognized, the doctrine of issue preclusion prevents plaintiffs from being bound by a decision when they did not have a meaningful opportunity to take part in the proceedings. (Dkt. No. 466 at 27:13 – 28:7, Apr. 24, 2025 Status Conf. Hr'g Tr.; *Id.* at 28:16-29:14; Dkt. No. 448 at 48: 9-16, Mar. 27, 2025 Status Conf. Hr'g Tr.) A litigant is bound only by proceedings in which they were a party. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). That is because a person "who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit," and binding them to its outcome offends due process. *Id.* (quoting *Richards v. Jefferson County*, 217 U.S. 793, 798 (1996)). Those Plaintiffs whose cases were not part of the MDL when expert reports were produced cannot be said to have had meaningful opportunity to shape the presentation of those reports. They did not have a case on file before the reports were served. They, therefore, cannot be bound by the Court's *Daubert* Order, especially when there was no process or procedure to require newly filed cases to present their own experts or adopt previously disclosed ones.

9

Defendants' argument reduces to the proposition that later-filed plaintiffs were "virtually represented" by leadership counsel and are therefore bound as if they had been parties. The Supreme Court unanimously rejected that theory in *Taylor*. Virtual representation, the Court held, is "at odds with the constrained approach to nonparty preclusion" that due process requires, and shared counsel alone creates no special representational relationship that can justify preclusion. *Id.* at 901, 897-98. The six recognized exceptions to the rule against nonparty preclusion are narrow and enumerated; none encompasses the circumstance here. *See id.* at 893–95. There was no agreement to be bound—no plaintiff who filed after May 23, 2025 consented, or even had a means to consent, to be bound by a ruling on expert reports they had no part in producing. These later-filed plaintiffs had no pre-existing substantive legal relationship with those who were in the MDL earlier. And the MDL statute, 28 U.S.C. § 1407, is a *procedural*-consolidation device that "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 561 (9th Cir. 1977). Individual cases consolidated for pretrial purposes "remain fundamentally separate actions." *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 700 (9th Cir. 2011). That separateness is not a mere formality: "due process and fundamental fairness may not be sacrificed to provide assembly-line justice" in MDL proceedings. *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1250 (9th Cir. 2006).

Simply put, Plaintiffs who filed or were transferred into this MDL after May 23, 2025— the date general causation expert reports were served for all cases pending at that time—had no role in selecting those experts, shaping their methodologies, or presenting their opinions. The Constitution requires a "full and fair opportunity to litigate." *Montana v. United States*, 440 U.S. 147, 153–54 (1979). These Plaintiffs have not had one yet. And until they do, they cannot be subject to summary judgment.

Apparently realizing as much, Defendants attempt to evade these blackletter principles, arguing that Plaintiffs who filed cases after expert reports were produced were *on notice* that they would be bound by the Court's subsequent rulings and purportedly acquiesced by failing to object to being bound in advance. Yet at the April 24, 2025 conference, when the November 21 direct-

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

filing deadline was set, the Court said the opposite about the effect of its forthcoming general-causation rulings: "I don't think that's how issue preclusion works; right? The plaintiff, even if they're represented by the exact same counsel, because that doesn't matter, is not bound by a decision in a case of which they are not a part. That's my understanding . . . That they would not be bound." (Dkt. No. 466 at 27:13-28:7.) Plaintiffs who filed their cases in the MDL after those statements—or whose cases were transferred to the MDL without their choice—cannot now be told that they were on notice that they would lose their rights to litigate their cases, including general causation. That would be fundamentally unfair. And to whatever extent the Court's comments a month earlier (at the March 27, 2025 conference) could countermand what the Court said at the April conference, they do not. Although the Court said in March, when directing the parties to consider a direct-filing deadline, that plaintiffs needed to enter the MDL "by a certain date" to be "bound one way or the other," the Court immediately clarified that plaintiffs outside the MDL "would always get the benefit from . . . issue preclusion, offensive issue preclusion." (Dkt. No. 448 at 48:9-16). In context, the Court was merely describing the ordinary asymmetry of preclusion doctrine, not announcing that all future filings would be categorically bound by an adverse *Daubert* ruling. That said, even if the Court were to have clearly stated, from the bench, that it intended to bind all cases filed before November 21 to any *Daubert* order—which the Court did not do—Defendants fail to explain how such a statement from the bench, at a CMC, could trump a Plaintiff's due process rights.

Defendants also get little from invoking *In re: Zantac (Ranitidine) Litig.*, 2026 WL 1009008 (Del. Super. Ct. Apr. 14, 2026). That Delaware state court decision is not binding authority and rests heavily on the particular facts of the record of that case, which are inapposite here. According to that decision, "the record [was] clear that both the parties and this Court understood that any rulings on general causation would apply docket-wide." *Id.* at *4. The *Zantac* court further noted that multiple case management orders expressly stated that *Daubert* rulings would have docket-wide effect and that Plaintiffs' leadership counsel had stipulated that all plaintiffs would be bound regardless of filing date. This MDL, by contrast, has no case management order establishing that a *Daubert* ruling on general causation would bind all cases

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

filed after the expert reports being ruled upon had been served. Plaintiffs' leadership never stipulated to any such thing. And as noted above, this Court indicated on the record that later-filed plaintiffs would not be bound. Thus, *Zantac* does not support Defendants on its own terms.

For these reasons, the Court's summary-judgment order should be limited to Plaintiffs whose cases were pending in the MDL on or before May 23, 2025, the date when the General Causation Experts' reports were served. Any other cases in the MDL—i.e., those filed in or transferred to the MDL after May 23, 2025—should be stayed while Plaintiffs appeal the Court's *Daubert* and Summary Judgment Orders.[5] But they are not subject to Defendants' motion for summary judgment.

## III.    SUMMARY JUDGMENT MUST BE LIMITED TO CLAIMS OF ASD AND ADHD BASED ON DEFENDANTS' NON-FORMULA PRODUCTS

Many Plaintiffs in this MDL allege injuries apart from the two diagnoses that the Court analyzed in its *Daubert* order, ASD and ADHD. Those Plaintiffs suffer from IQ loss, language disorders, learning disabilities, and sensory-processing disorders. They allege that those harms trace to the same lead and arsenic that Defendants put in their baby food. The Court's *Daubert* order does not address or even mention those injuries. Nor was that issue even the subject of expert discovery. Yet Defendants ask this Court to enter summary judgment on every claim of every Plaintiff, no matter the injury alleged. Their motion rests on a single theory: that a *Daubert* order limited to ASD and ADHD can carry the entire case to disposition. It cannot.

Plaintiffs' concession that the *Daubert* Order necessitates summary judgment ends where the Order ends. The Court's *Daubert* Order analyzes a single general causation question: whether "a child's consumption of each Defendant's baby food products is capable of causing ASD or ADHD." Order at 5. Every ensuing page addresses that single question, not whether lead or

---

[5] Defendants have indicated that they will seek an order requiring all other cases in the MDL that are not subject to summary judgment to engage in expert discovery through an order-to-show-cause approach. When (and if) Defendants pursue such an order, Plaintiffs will respond. However, any such order would lead to the disclosure of new expert opinions and case-specific exposures and calculations, and flood the Court with dozens of new *Daubert* motions and new briefing—none of it with the guidance of a decision from the Ninth Circuit, which would likely inform the willingness of Plaintiffs and/or Defendants to proceed with such a chaotic and work-intensive process.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

arsenic can separately cause IQ loss, language disorders, learning disabilities, or sensory-processing disorders. An order purporting to resolve one question cannot foreclose claims for injuries that the order never reached. A *Daubert* ruling on liver toxicity could not dispose of kidney-injury claims that no expert examined; a *Daubert* ruling on autism cannot dispose of language-disorder claims that no expert examined.

This limitation follows from how the Court has structured the *Daubert* inquiry here. Although Plaintiffs may plead additional injuries in their Short Form Complaints, the Court ruled in PTO 15 that those "additional injuries will not be considered within MDL proceedings but may be preserved for adjudication in the transferor court." PTO 15, Dkt. 440, at 2 (Mar. 27, 2025). That framing now governs every claim that rests on an injury other than ASD or ADHD. The *Daubert* phase did not reach those injuries. Summary judgment for failure of general causation cannot reach them either. Defendants might respond that Plaintiffs offered no general-causation testimony on these other injuries. That is true, but that was never required by the Court. Plaintiffs cannot default on a question that the Court instructed them not to address. Defendants might also respond that all of Plaintiffs' claims rise or fall together because they share a common theory of toxic exposure. But that confuses proof of exposure with proof of injury. Whether lead and arsenic can cause ASD or ADHD is one causal question; whether they can cause IQ loss, language disorders, or learning disabilities is a different one. The Court has purported to address the first question. It has not purported to address the second.

For similar reasons, the Court cannot grant final judgment against Plaintiffs who claim any injuries arising from their consumption of Defendants' formula products. This Court determined that such products are outside the scope of this MDL and struck the formula-related allegations from the Master Complaint. Yet, in doing so, the Court again made clear that "this ruling does not prevent Plaintiffs from litigating claims related to infant formula in a proper venue or upon remand to the transferor court." PTO 15 at 1. The Court's *Daubert* Order likewise cannot prevent Plaintiffs from litigating claims based on formula products, since, after defining those products out of these proceedings, the Court's *Daubert* Order does not touch on them.

To be clear, Plaintiffs do not intend to press claims based on these other injuries or

13

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

products at this point in the MDL. Nevertheless, Plaintiffs whose claims rest on those other injuries or products deserve their eventual day in court. A *Daubert* order limited to ASD, ADHD, and the products at issue cannot dispose of those other claims. No expert hearing, no motion in limine, and no Rule 702 ruling has ever touched those claims. The Court should therefore deny Defendants' motion to the extent they seek summary judgment on anything beyond what the Court analyzed in its *Daubert* Order—that is, on any claim based on an injury other than ASD or ADHD or on a formula product. Plaintiffs are happy to provide the Court a list of Plaintiffs who are seeking to press claims beyond ASD and ADHD and/or based on Defendants' formulas. Those cases should not have a final judgment granted against them. Instead, those claims should be stayed pending resolution of the appeal or, at the very least, remanded to their transferee courts, which can address the remaining claims of injury.

## CONCLUSION

Although the Court must grant summary judgment to Defendants based on the Court's temporality findings, Defendants' motion should otherwise be denied.

Dated:  May 29, 2026                                   Respectfully Submitted,


WISNER BAUM, LLP

By: */s/ R. Brent Wisner*
R. Brent Wisner (SBN: 279023)
rbwisner@wisnerbaum.com
100 Drakes Landing Rd., Suite 160
Greenbrae, CA 94904
Telephone: (310) 207-3233
Facsimile: (310) 820-7444

WAGSTAFF LAW FIRM

By: */s/ Aimee H. Wagstaff*
Aimee H. Wagstaff (SBN: 278480)
940 N. Lincoln Street
Denver, Colorado 80203
Telephone: 303.376.6360
Facsimile: 303.376.6361
awagstaff@wagstafflawfirm.com

*Co-Lead Counsel for Plaintiffs in MDL 3101*

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on May 29, 2026, I electronically filed the foregoing with the Clerk of the

Court using the ECF system, which sent notification of such filing to all counsel of record.


By: *Aimee H. Wagstaff*
Aimee H. Wagstaff, Esq. (278480)
*Attorney for Plaintiffs*