William L. Smith (SBN 324235)
wsmith@anapolweiss.com
**ANAPOL WEISS**
6060 Center Drive, 10th Floor
Los Angeles, CA 90045
Tel: (202) 780-3014
Fax: (215) 875-7707

[additional counsel below]

*Attorneys for Plaintiff JMW*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION | Case No. 24-MD-3101-JSC |
| | MDL No. 3101 |
| | Hon. Jacqueline Scott Corley |
| This document relates to: | |
| *Watkins v. Nurture, LLC, et al.* Case No. 24-CV-02832-JSC | **PLAINTIFF JMW'S CASE-SPECIFIC RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| | Date:      July 9, 2026 Time:      2:30 p.m. PT Location:  Courtroom 8, 19th Floor, 450 Golden Gate Ave. San Francisco, CA 94102 |

PLAINTIFF JMW'S CASE-SPECIFIC RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

**INTRODUCTION**

Defendants' summary-judgment motion seeks judgment on every claim in every case filed before November 21, 2025, on a single theory: that *Hanford* requires general causation and the Court's Rule 702 exclusions therefore foreclose every claim across the docket. The motion runs more than twenty pages without ever engaging JMW's Louisiana bad-faith-seller redhibition claim against Whole Foods and Amazon. It quotes no Louisiana redhibition statute, cites no Louisiana redhibition decision, identifies no essential element of the cause of action it asks this Court to dispose of, and never explains why *Hanford*'s toxic-tort rule should govern a Louisiana warranty regime that turns on the defect and the seller's knowledge.

That gap matters under Rule 56 and Ninth Circuit law. Rule 56(a) requires the movant to identify "each claim or defense—or the part of each claim or defense—on which summary judgment is sought," and *Nissan Fire & Marine Insurance Co. v. Fritz Companies* requires the movant to carry an initial burden of production by either negating an essential element of the claim or pointing to the nonmoving party's lack of evidence on one. Fed. R. Civ. P. 56(a); 210 F.3d 1099, 1102 (9th Cir. 2000). A movant cannot satisfy that burden by saying that the nonmoving party lacks evidence; "it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id.* at 1105 (quoting *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)). Defendants' motion essentially does precisely that when it claims that "[g]eneral causation is an essential element of all claims consolidated in this MDL[.]" (Dkt. No. 728 at 1.)

But that's not true. General causation is *not* an essential element of Louisiana bad-faith-seller redhibition. Articles 2520 and 2545 enumerate the buyer's burden to establish liability: the existence of the defect, the would-not-have-bought test, and (for bad faith) the seller's knowledge of the defect and failure to declare it. La. Civ. Code arts. 2520, 2545. None of those elements turns on a scientifically validated causal link between contamination and any particular physical injury.

1

*See Young v. Ford Motor Co.*, 595 So. 2d 1123, 1126 (La. 1992). Defendants' motion, therefore, reaches too far when it purports to apply to **all** claims, and the Motion should be denied.

Plaintiff also joins and incorporates by reference the MDL Plaintiffs' Leadership's opposition to Defendants' motion in full, with particular emphasis on Section III's argument that summary judgment must be limited to ASD and ADHD. That argument applies with particular force to JMW, whose Fourth Amended Petition pleads loss of IQ as a distinct injury throughout. (FAP ¶¶ 1, 25, 58, 60-61.) Plaintiff does not separately brief that issue below to avoid duplication and rests on the Leadership's submission.[1]

## BACKGROUND

JMW was born on April 5, 2018. (FAP ¶ 46.) During his first three years, his parents fed him substantial quantities of baby food manufactured by Nurture (HappyBABY) and Hain (Earth's Best Organic) and purchased from Whole Foods and Amazon. (*Id.* ¶¶ 46-58.) Those products contained lead and arsenic. (*Id.* ¶¶ 134-140.) JMW was diagnosed with autism spectrum disorder in early 2021 and has experienced cognitive impairment and a loss of IQ. (*Id.* ¶¶ 25, 46, 61.) The Fourth Amended Petition enumerates JMW's injuries as "including, but not limited to, cognitive impairment, loss of IQ, neurological damage, ASD, and other sequelae." (*Id.* ¶ 61.)

On October 1, 2025, this Court denied Whole Foods' motion to dismiss the bad-faith-seller redhibition claim. The Court held that the FAP's allegations, including the 2019 HBBF Report, the EDF email forwarding it to Whole Foods, and Jody Villeco's internal sharing of it with Paige Brady, supported a plausible inference of actual knowledge. (Dkt. No. 645 at 3.)

---

[1] Plaintiff also notes his pending Second Motion to Remand, filed May 28, 2026, which asks this Court to return *Watkins* to Louisiana state court for lack of subject-matter jurisdiction. *See* Pl.'s Mem. ISO Second Motion to Remand, *Watkins v. Nurture, LLC*, No. 3:24-cv-02832-JSC (filed May 28, 2026). If the Court grants that motion, the issues briefed here become moot as to JMW.

2

On February 27, 2026, the Court issued its Rule 702 order. The Court framed the inquiry: the question for the experts was "whether a child's consumption of each Defendant's baby food products is capable of causing ASD or ADHD," and "it is not enough to say the baby food can cause generalized neurological injury; rather, it must be the specific neurological injury alleged here— namely, ASD and ADHD." (Dkt. No. 710 at 5.) The Bradford-Hill discussion in the order turns on diagnosed ASD or diagnosed ADHD as the endpoint. The order does not analyze any expert testimony on loss of IQ.

On May 1, 2026, Defendants moved for summary judgment on every claim in every case filed before November 21, 2025, resting their motion on a single theory: that *Hanford* requires general causation for "all Plaintiffs' claims" and that the Court's Rule 702 exclusions therefore dispose of every claim across the docket. (MSJ at 4-6.) The motion does not separately analyze redhibition, address loss of IQ, or engage the October 1 order.

## ARGUMENT

**A.    Defendants' motion fails to carry Rule 56's initial burden as to JMW's redhibition claim.**

A summary-judgment movant cannot succeed by sweeping a state-law warranty claim under a federal toxic-tort theory it never explains. Rule 56(a) commands the movant to identify "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). The 2010 amendment that added that sentence made clear "at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." Fed. R. Civ. P. 56 advisory committee's note (2010). A movant who never identifies the elements of a claim cannot ask the Court to enter judgment on it.

Ninth Circuit law enforces the same principle through the burden of production. The movant "must produce either evidence negating an essential element of the nonmoving party's claim or

PLAINTIFF JMW'S CASE-SPECIFIC RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A movant may not satisfy that burden by asserting that the nonmoving party lacks evidence; the *Nissan Fire* court noted that "[i]t is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id.* at 1105 (quoting *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)). When the movant fails to carry the initial burden, "the nonmoving party has no obligation to produce anything," and "may defeat the motion for summary judgment without producing anything." *Id.* at 1103.

Defendants' motion treats redhibition as part of an undifferentiated "all claims" sweep without engaging the cause of action. The motion runs more than twenty pages without quoting Articles 2520 or 2545, without discussing any Louisiana redhibition decision, without identifying a single essential element of bad-faith-seller redhibition, and without explaining why a Louisiana warranty regime should collapse into *Hanford*'s toxic-tort framework. The motion's authority is general-purpose toxic-tort case law. Defendants cite no case that involves a state-law warranty claim, let alone a Louisiana redhibition claim. The motion treats redhibition the way it treats every other claim in this MDL, as though Louisiana warranty law and Ninth Circuit toxic-tort law were interchangeable boxes on a single checklist.

That treatment fails Rule 56 and *Nissan Fire*. Defendants have not identified an essential element of redhibition that JMW lacks evidence to prove. They have asserted that all claims rise and fall together on *Hanford* causation, which is the kind of conclusory sweep *Nissan Fire* forbids. JMW therefore has no obligation to come forward with redhibition-specific evidence to defeat the motion, and the motion should be denied as to redhibition for that reason alone. *Nissan Fire*, 210 F.3d at 1102-03.

4

PLAINTIFF JMW'S CASE-SPECIFIC RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**B.    General causation is not an essential element of Louisiana redhibition.**

Louisiana redhibition operates as an implied warranty in every sale of goods. Article 2520 voids any sale of a thing whose defect "renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect," giving the buyer a right of rescission. La. Civ. Code art. 2520. Article 2545 expands that exposure for the seller who knew of the defect and "omit[ted] to declare it," adding restitution of the price, sale-related expenses, statutory attorney's fees, and damages. La. Civ. Code art. 2545.

The Louisiana Supreme Court has framed the buyer's burden plainly: the buyer must prove "the actual existence of such defects," not "the particular cause of the defects making the [thing] unfit for the intended purposes." *Young v. Ford Motor Co.*, 595 So. 2d 1123, 1126 (La. 1992). Louisiana courts have applied that rule for decades. *See, e.g., Modicue v. Prince of Peace Auto Sale, LLC*, 328 So. 3d 1239, 1244 (La. Ct. App. 2021). Whether the defect later caused physical injury is not part of the buyer's essential burden either.

*Hanford* has no role in that framework. *Hanford* governs a toxic-tort claim for physical injuries, requiring proof that the substance caused the injury at the alleged exposure level. 292 F.3d 1124, 1133 (9th Cir. 2002). *Engilis v. Monsanto Co.* confirmed that scope last year: a toxic-tort plaintiff "must show that [he] was exposed to chemicals that could have caused the physical injuries he complains about (general causation)." 151 F.4th 1040, 1045 (9th Cir. 2025) (citation modified). Whatever *Hanford* requires of toxic-tort plaintiffs, it has nothing to say about a buyer pursuing rescission, restitution, or statutory attorney's fees under a state warranty regime that asks only whether the seller knowingly sold a defective good.

The Civil Code defines what a redhibition plaintiff must prove. For rescission under Article 2520, the buyer must show that the defect would have deterred the purchase: a consumer-expectations question that asks what the buyer reasonably expected of the thing. For a price

5

reduction under the same article, the buyer must show that the defect diminished the value of what she paid for: a value question. For bad-faith liability and statutory attorney's fees under Article 2545, the buyer must show that the seller knew of the defect and failed to declare it: a knowledge question.

None of those questions is whether the defect caused the buyer's physical injury. The reasonable parent expects food free of heavy-metal contamination at the levels documented in the 2019 HBBF Report. (FAP ¶¶ 134-144.) A parent does not need a Daubert-qualified epidemiologist to decide whether to buy infant food laced with lead and arsenic. What a Bradford-Hill analysis can prove about the dose at which lead causes a particular neurodevelopmental disorder bears no relation to what a reasonable consumer expects of a product on the store shelf. Louisiana redhibition asks the consumer-expectations question; it does not ask the *Hanford* question.

Accordingly, summary judgment on JMW's redhibition claims against Whole Foods and Amazon should be denied.

### CONCLUSION

The Court should deny summary judgment on (1) JMW's redhibition claims against Whole Foods and Amazon and (2) the loss-of-IQ injury element of JMW's claims.

Dated:  May 29, 2026

**ANAPOL WEISS**

By: /s/ William L. Smith
WILLIAM L. SMITH (SBN 324235)
6060 Center Drive 10th Floor,
Los Angeles, CA 90045
Telephone: (202) 780-3014
wsmith@anapolweiss.com

By: /s/ Alexandra M. Walsh
ALEXANDRA M. WALSH (*pro hac vice*)
14 Ridge Square NW, Suite 342
Washington, DC 20016
Telephone: (202) 780-3014
awalsh@anapolweiss.com

PLAINTIFF JMW'S CASE-SPECIFIC RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**WAGSTAFF LAW FIRM**

By: /s/ Aimee H. Wagstaff
AIMEE H. WAGSTAFF (SBN 278480)
940 N. Lincoln Street
Denver, Colorado 80203
Telephone: (303) 376-6360
awagstaff@wagstafflawfirm.com

*Attorneys for Plaintiff*

PLAINTIFF JMW'S CASE-SPECIFIC RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

**CERTIFICATE OF SERVICE**

I certify that on May 29, 2026, I electronically filed the foregoing with the Clerk of the

Court using the ECF system, which sent notification of such filing to all counsel of record.

*/s/ Aimee H. Wagstaff*

PLAINTIFF JMW'S CASE-SPECIFIC RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT