Livia M. Kiser (CA Bar No. 285411)
Michael Anthony Lombardo (CA Bar No. 311365)
**KING & SPALDING LLP**
110 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Telephone: (312) 764-6911
Facsimile: (312) 995-6330
E-mail: lkiser@kslaw.com
E-mail: mlombardo@kslaw.com

Todd P. Davis (*pro hac vice*)
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
E-mail: tdavis@kslaw.com

*Attorneys for Defendants Beech-Nut Nutrition Company*
*and Walmart Inc.*

(Additional counsel on signature page)

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION | Case No. 3:24-md-3101-JSC |
| | MDL 3101 |
| | Hon. Jacqueline Scott Corley |
| This Document Relates to: | **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| ALL ACTIONS | |
| | Date:  August 13, 2026 |
| | Time:  10:00 a.m. |
| | Location:  Courtroom 8, 19th Floor |
| | 450 Golden Gate Ave. |
| | San Francisco, CA 94102 |

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................................. 1

II.     ARGUMENT ....................................................................................................................... 3

        A.      The Court's Rule 702 Order Compels Summary Judgment For Multiple, Independent Reasons. ........................................................................................ 3

                1.      The Court identified multiple analytical gaps between the data and opinions offered. .................................................................................... 3

                2.      Realistic level of exposure is a general causation issue. ........................ 5

                3.      Other flaws permeated the reliability of Plaintiffs' experts' opinions. ...... 8

        B.      The Court's November 21, 2025 Deadline—Not May 23, 2025—Is the Proper Cutoff. ................................................................................................... 8

        C.      Summary Judgment Covers All Baby Food Product Injuries Alleged in the MDL. ............................................................................................................... 12

III.    CONCLUSION ................................................................................................................. 15

DEFENDANTS' REPLY IN SUPPORT OF                    CASE NO. 3:24-MD-3101-JSC
MOTION FOR SUMMARY JUDGMENT

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ................................................................................................ 2, 13

*In re Deepwater Horizon BELO Cases,*
119 F.4th 937 (11th Cir. 2024) .................................................................................. 6, 7

*In re Deepwater Horizon BELO Cases,*
2024 WL 3176927 (N.D. Fla. June 25, 2024) ................................................................. 6

*Engilis v. Monsanto Co.,*
151 F.4th 1040 (9th Cir. 2025) ....................................................................................... 7

*Geddes v. United Fin. Grp.,*
559 F.2d 557 (9th Cir. 1977) ......................................................................................... 10

*General Electric Co. v. Joiner,*
522 U.S. 136 (1997) ......................................................................................................... 4

*In re Hanford Nuclear Rsrv. Litig.,*
292 F.3d 1124 (9th Cir. 2002) ........................................................................... 5, 6, 7, 13

*Hardeman v. Monsanto Co.,*
997 F.3d 941 (9th Cir. 2021) ......................................................................................... 6, 7

*Home Depot USA, Inc. v. Lafarge N. Am., Inc.,*
59 F.4th 55 (3d Cir. 2023) ............................................................................................ 9, 12

*In re Korean Air Lines Co.,*
642 F.3d 685 (9th Cir. 2011) ........................................................................................... 11

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.,*
892 F.3d 624 (4th Cir. 2018) ........................................................................................... 11

*Lust By & Through Lust v. Merrell Dow Pharms., Inc.,*
89 F.3d 594 (9th Cir. 1996) ......................................................................................... 7, 13

*Mitchell v. Gencorp Inc.,*
165 F.3d 778 (10th Cir. 1999) ........................................................................................... 7

*Montana v. United States,*
440 U.S. 147 (1979) ......................................................................................................... 10

*Newkirk v. ConAgra Foods, Inc.,*
727 F. Supp. 2d 1006 (E.D. Wash. 2010) ...................................................................... 6, 7

ii

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
    460 F.3d 1217 (9th Cir. 2006) ............................................................................. 9, 11, 15

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ..................................................................................................... 9, 10

*In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prods. Liab. Litig.*,
    No. 3:16-md-02691, Dkt. 1021 (N.D. Cal. Apr. 8, 2020) ......................................... 11

*Wells v. SmithKline Beecham Corp.*,
    601 F.3d 375 (5th Cir. 2010) .......................................................................................... 6

*Wright v. Willamette Indus. Inc.*,
    91 F.3d 1105 (8th Cir. 1996) .......................................................................................... 7

*In re: Zantac (Ranitidine) Litig.*,
    2026 WL 1009008 (Del. Super. Ct. Apr. 14, 2026) .................................................. 11

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
    644 F. Supp. 3d 1075 (S.D. Fla. 2022) .......................................................................... 6

**Other Authorities**

Fed. R. Evid. 702 ...........................................................................................................*passim*

DEFENDANTS' REPLY IN SUPPORT OF                          CASE NO. 3:24-MD-3101-JSC
MOTION FOR SUMMARY JUDGMENT

## I.      INTRODUCTION

Plaintiffs concede that "the Court must grant summary judgment to Defendants." (Pls. Brief ("Br.") at 14.) Unable to escape this inevitable result of the Court's Rule 702 Order (Dkt. 710 ("Op.")), Plaintiffs nevertheless attempt to limit the scope of summary judgment through three arguments. None withstands scrutiny.

First, Plaintiffs seek to re-write the Court's Order by arguing that the only justification for summary judgment is the Court's ruling that Plaintiffs' general causation experts relied on studies lacking temporality. (Br. at 1, 3-9.) The Court's ruling, however, identified a host of independent reasons why Plaintiffs' general causation experts' opinions were inadmissible. In addition to the lack of temporality, the Court identified additional analytical gaps between the underlying data and Plaintiffs' experts' general causation opinions. The Court found, for example, that Plaintiffs' experts unreliably extrapolated from studies that measured different endpoints entirely, such as behavioral scores rather than diagnosed ASD or ADHD (Op. at 36-37, 39, 41); unreliably extrapolated from studies that assessed only prenatal exposure to heavy metals rather than postnatal exposure (*id*. at 34-35); and failed to scientifically justify extrapolating from those studies to opinions about baby food and ASD or ADHD (*id*. at 28). Plaintiffs also acknowledge (Br. at 6) that the Court found that their experts' opinions about general causation were inadmissible because they were not based on consumption of realistic levels of lead and arsenic in Defendants' products (Op. at 21, 24, 29-30).

Plaintiffs further attempt to sidestep the Ninth Circuit's requirement to prove general causation based on a realistic dose by arguing (Br. at 5-6) that the Court should have skipped to the specific causation question of each individual plaintiff's exposure. This argument, which Plaintiffs have raised and re-raised from the beginning, is an argument against the requirement to prove general causation independent of specific causation and against binding precedent. Were that not enough, the Court also found Plaintiffs' general causation experts' opinions inadmissible because their methodology for assessing a causal exposure dose was unreliable and lacked the hallmarks of a reasoned analysis. (Op. at 32.) Plaintiffs do not even mention, much less address, this separate reason for exclusion and summary judgment.

1

Whatever Plaintiffs' motivation for this revisionist strategy, it ignores most of the Court's holdings. All of these reasons independently support the Court's Rule 702 Order and support summary judgment.

Second, Plaintiffs argue that this Court's November 21, 2025 deadline for direct filing that governs who would be "bound one way or the other" by the ruling on Rule 702 motions (Dkt. 448 at 48:9-12, Mar. 27, 2025 Status Conf. Hr'g Tr.) should be ignored in favor of a much earlier deadline that would severely limit the ruling's effect. (Br. at 9-12.) But Plaintiffs cannot artificially limit the scope of constituent suits impacted by the Court's Rule 702 Order by ignoring (*id.*) what the Court stated, and the parties understood and acknowledged, was the purpose of the date. The Court made clear, and all parties knew, that any Plaintiff who chose to file in the MDL before November 21 would be "bound" by the Rule 702 ruling. (Dkt. 448 at 48:9-12.) Plaintiffs' arguments about the rights of nonparties have no bearing here, where every Plaintiff who filed on or before November 21 was and is a party to these proceedings. Plaintiffs provide no justification for the Court to change its original deadline, and summary judgment should be entered for all actions filed on or before November 21, 2025.

Third, Plaintiffs contend that their failure to offer any general causation expert evidence related to neurological injuries other than ASD and ADHD means that any such claims should survive. (*Id*. at 12-14.) Plaintiffs had the burden to come forward with such evidence to support their theory of the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Plaintiffs' theory in this MDL has been that consumption of Defendants' baby food products can cause neurodevelopmental injuries that "manifest" as ASD and/or ADHD. Plaintiffs never identified any other "manifestations" of neurological harm beyond ASD/ADHD and related symptoms, and never offered any experts on other "manifestations" of the injuries at issue. Therefore, even if such unspecified claims of neurological harm independent of ASD/ADHD exist (and they do not), they cannot survive summary judgment.

The Court should grant summary judgment in favor of Defendants on all baby food product claims in all MDL member actions filed on or before November 21, 2025.

2

## II.    ARGUMENT

### A.    The Court's Rule 702 Order Compels Summary Judgment For Multiple, Independent Reasons.

Plaintiffs admit that this Court's Rule 702 Order requires summary judgment. (Br. at 14.) Yet their opposition aims to limit the scope of that Order, largely by rewriting and minimizing the methodological flaws it addressed in Plaintiffs' general causation experts' opinions. Specifically, Plaintiffs attempt to re-cast the Court's holding as limited to one methodological flaw: the experts' reliance on studies that lack temporality. According to Plaintiffs, "[t]he Court did not bar testimony from any of these experts based on *any* consideration *other* than temporality." (*Id.* at 5). This is simply untrue. The Court based its decision on many different methodological failings, including: (1) the analytical gap between the underlying data and the opinions offered, both because of temporality flaws and others; (2) the failure of any expert to reliably offer causation opinions based on realistic consumption of baby food products and realistic levels of lead or arsenic in those products; and (3) the lack of a reliable assessment of the epidemiological evidence. *See, e.g.*, *supra* at 1. Plaintiffs' effort to sidestep the impact of these findings and pretend that the Court offered only one basis for its ruling should be rejected.

### 1.    The Court identified multiple analytical gaps between the data and opinions offered.

The Court found Plaintiffs' general causation experts failed to bridge the analytical gap between the data and their opinions for multiple reasons in addition to the distinct problem of lack of temporality in the studies on which they relied. To be sure, Plaintiffs' experts certainly did unreliably extrapolate from studies with *no* evidence of temporality at all. (Op. at 33.) But contrary to Plaintiffs' argument, the lack of temporality was just one of many other analytical gaps between the underlying literature and the expert opinions offered. To start, "[t]here are ***no studies*** considering whether consumption of baby food is associated with ASD or ADHD." (*Id.* at 28 (emphasis in original)). And Plaintiffs' "experts fail to scientifically justify extrapolating from the studies they cite." (*Id.*) Plaintiffs do not and cannot dispute this basic failure and instead attempt to reframe the causal inquiry as based on "exposure to toxic heavy metals." (*See, e.g.*, Br. 2.) But this Court

3

correctly applied binding precedent to require Plaintiffs to introduce admissible expert opinions showing that "consumption of each Defendant's baby food products is capable of causing ASD or ADHD." (Op. at 5.)

Another analytical gap that Plaintiffs' experts could not bridge was that the studies measured different endpoints than ASD or ADHD. (*Id*. at 36-37, 39, 41). For example, the Kim et al. (2016) study on which Plaintiffs' experts heavily relied and identified as one of the key bases for their opinions, "did not consider whether the children studied were subsequently diagnosed with ASD" and specifically noted that the behavioral test score it used instead "***is not a diagnostic tool***." (Op. at 35-36) (emphasis original)); *see also* (*Id*. at 39, 41) (identifying Plaintiffs' experts' failure to show scientific evidence connecting "exposure to these metals during the relevant postnatal period to diagnosed ASD or ADHD"). In light of these flaws, the Court correctly found that the analytical gap between the underlying studies "and the experts' opinions is 'simply too great.'" (*Id*. at 36 quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Still another gap is that Plaintiffs' experts offered the opinion that postnatal consumption of baby food can cause ASD and ADHD, while basing that opinion on certain studies that measured only prenatal exposure to heavy metals. As the Court found, several of the studies on which Plaintiffs' experts relied "looked at maternal blood samples indicating *prenatal* exposure to lead, not *postnatal* exposure." (Op. at 34). But Plaintiffs' experts failed to "reliably extrapolate" from these prenatal studies to opine that "*postnatal* lead exposure can cause ASD, let alone that consumption of Defendants' baby food products can lead to such a diagnosis." (*Id*. at 35.)

In the end, Plaintiffs' experts could point to *no study* that evaluated the relevant exposure window, satisfied temporality, and showed that lead or arsenic exposure statistically significantly increased the risk of ASD diagnosis. Ji et al. 2018, the only ADHD study that satisfied the temporality requirement, used a diagnosis of ADHD, and assessed the relevant time-period reported an increased risk only in boys and only at lead exposure levels higher even than those that Plaintiffs' exposure expert Dr. Jones unreliably calculated could come from Defendants' baby foods. (*See* Dkt. 701-4 at slides 20-25 (slide deck summarizing the relevant epidemiological literature as to these

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

CASE NO. 3:24-MD-3101-JSC

issues for lead and ASD; arsenic and ASD; and lead and ADHD); slides 20-25 attached for reference as Ex. 1.)

Plaintiffs bear the burden under Rule 702 to establish that their experts' opinions are "based on sufficient facts or data," "the product of reliable principles and methods," and "reflect[] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Time and time again, this Court identified methodological flaws and gaps that establish that Plaintiffs did not meet their burden. Each of these failures independently precludes Plaintiffs from establishing general causation, and the Court should enter summary judgment reflecting all of the bases for its Rule 702 decision.

### 2.      Realistic level of exposure is a general causation issue.

Plaintiffs also argue that the exclusion of their experts' exposure analyses "cannot form a basis for summary judgment against any specific Plaintiff." (Br. at 7.) They are wrong. The Court excluded Plaintiffs' exposure experts' opinions because they failed to establish a realistic "dose" of exposure to Defendants' baby food products, or any lead or arsenic in those baby food products, to which any children are realistically exposed and from which Plaintiffs' causation experts could then use to attempt to compare the literature concerning lead or arsenic and ASD or ADHD (Op. at 30-31; *see also id*. at 39 (noting that the sole study that observed a statistically significant increased risk of ADHD in boys hinged on blood lead levels "higher than all of Dr. Jones' calculated mean blood lead levels, and higher than most of her maximum estimated levels")). Without reliable dose calculations, the Court correctly reasoned that Plaintiffs' general causation experts also could not stand, and also excluded *all* of Plaintiffs' general causation experts on the grounds that their opinions necessarily failed to consider a realistic exposure dose that they could then relate to the scientific literature and on which they could rely to support general causation. (Op. at 30-32.) Without any admissible general causation expert opinions, each of Plaintiffs' claims fail as a matter of law. *In re Hanford Nuclear Rsrv. Litig.*, 292 F.3d 1124, 1134 (9th Cir. 2002) (to prevail on their claims, plaintiffs "must establish both gener[al] and individual causation").

Plaintiffs' arguments as to why summary judgment is not warranted on this basis are difficult to follow. Defendants understand them to fall into three buckets, none of which has merit.

5

*First*, Plaintiffs insist that having found Plaintiffs to be lacking in sufficient evidence to satisfy general causation there somehow can still be "no basis in the record to enter summary judgment against any [individual] Plaintiff for a purported failure to show sufficient exposure." (Br. at 5.) But the Court's summary judgment Order addresses general causation and how Plaintiffs failed on that issue. That is, they failed to show "whether a child's consumption of each Defendant's baby food—at realistic doses—is capable of causing ASD or ADHD." (Op. at 12, 13-24.) Without any evidence to support general causation, there is no need or basis to address any specific Plaintiff's level of exposure or specific causation in any particular case. *Newkirk v. ConAgra Foods, Inc.*, 727 F. Supp. 2d 1006, 1030 (E.D. Wash. 2010) ("If a plaintiff is not able to establish general causation, it is unnecessary to consider whether the plaintiff can establish specific causation.").

*Second*, Plaintiffs argue that addressing general and specific causation separately was error because it required Plaintiffs to prematurely introduce individual evidence of realistic exposure at the general causation stage. (Br. at 6-7.) The Court has already addressed and rejected this argument on at least two occasions (Dkt. 700 at 683-84, December 11, 2025 Hr'g Tr.; Op. 19-20)—and for good reason. As the Ninth Circuit and many other courts have recognized, general causation and specific causation are separate, sequential inquiries: "where the distinction is made, it must be strictly observed." *Hanford*, 292 F.3d at 1135; *see also Wells v. SmithKline Beecham Corp.,* 601 F.3d 375, 378 (5th Cir. 2010) ("Sequence matters: a plaintiff must establish general causation before moving to specific causation."). General causation asks whether realistic exposure to a defendant's product is capable of causing the alleged injury in the population generally. *See Hardeman v. Monsanto Co.*, 997 F.3d 941, 963 (9th Cir. 2021); *see also In re Deepwater Horizon BELO Cases*, 119 F.4th 937, 945 (11th Cir. 2024) (explaining that "a plaintiff must demonstrate the level of exposure to the allegedly harmful chemical that is hazardous to a human being"); *In re Deepwater Horizon BELO Cases*, 2024 WL 3176927 at \*5 (N.D. Fla. June 25, 2024) (rejecting plaintiffs' assertion that "dose threshold is a specific causation inquiry due to every individual's unique dermal sensitivity"); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1075, 1109–10 (S.D. Fla. 2022) (explaining plaintiffs "must identify at least a range at which [the product's] consumption becomes toxic" as part of the general causation inquiry). Specific causation, in contrast, asks

6

whether a plaintiff's exposure to the alleged product, in fact, caused that specific plaintiff's alleged injury. *See Engilis v. Monsanto Co.*, 151 F.4th 1040, 1045 (9th Cir. 2025). If there is no general causation—no proof that exposure at realistic levels can cause the injury in the human population generally—then by definition there can be no specific causation. *See Newkirk*, 727 F. Supp. 2d at 1030; *see also Hanford*, 292 F.3d at 1134 ("[P]laintiffs must establish both generic *and* individual causation."). For this reason, the Ninth Circuit has long affirmed summary judgment for lack of proof of general causation. *See, e.g., Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) ("Summary judgment was appropriate since without [the expert's] testimony, [Plaintiff] offered no evidence of causation, a necessary element of his personal injury action.").

*Third*, recasting their second argument, Plaintiffs appear to argue that it is error as a matter of law to frame the general causation standard as whether a "toxin can cause the disease at exposure levels people ***realistically*** may have experienced." (Br. at 6 (emphasis in original).) But, as stated above, binding Ninth Circuit precedent (along with other appellate precedent) demands *exactly* that inquiry: Plaintiffs must show the toxin can cause injury "at exposure levels people realistically may have experienced." *Hardeman*, 997 F.3d at 963, 965; *In re Deepwater Horizon BELO Cases*, 119 F.4th at 945; *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781–83 (10th Cir. 1999); *Wright v. Willamette Indus. Inc.*, 91 F.3d 1105, 1106 (8th Cir. 1996). In their opposition to Defendants' Rule 702 Motion, Plaintiffs agreed that Ninth Circuit law required this very showing: "As the Ninth Circuit explained in *Hardeman*, ***general causation requires*** showing that the 'toxic agent' is capable of causing the injury and that it can cause the injury at 'exposure levels people realistically may have experienced.' *See* 997 F.3d at 963." (Dkt. 642 at 23 (emphasis added).) Now, Plaintiffs seek to change the standard that governs the admissibility of their general causation evidence. But their own admission and Ninth Circuit binding precedent stand in their way. Having failed to provide admissible expert evidence of general causation at realistic doses, Plaintiffs cannot avoid summary judgment by attempting to once again re-cast their burden on dose as a case-specific issue.

**3.   Other flaws permeated the reliability of Plaintiffs' experts' opinions.**

Independent of the analytical gaps identified by the Court and the failure to offer opinions based on realistic exposure levels, the Court also excluded Plaintiffs' experts because their opinions lacked other hallmarks of reliable expert testimony. As this Court explained, when there were significant changes in the purported assumptions on which the experts based their opinions, "Plaintiffs' causation experts did not further engage with the literature to update their opinions." (Op. at 32.) The Court focused on one particular example to highlight this problem: "Dr. Aschner—who identified specific background exposure levels underlying his opinion—did not change his causation conclusion when Dr. Jones' estimates for certain defendants dropped *below* his identified values." (*Id.*) The Court thus had no way to "evaluate Dr. Aschner's method, or its reliability, because he supplies none." (*Id.*) Rather than an isolated incident, the Court found that "[t]his kind of perfunctory analysis" was not an exception—it was "common across Plaintiffs' experts" and made it impossible to evaluate the experts' methods or their reliability. (*Id.*)

The upshot of all of this is that the Court did not, as Plaintiffs claim (Br. at 5), limit its decision to the experts' reliance on studies that lacked temporality. The Court excluded Plaintiffs' general causation experts for multiple, independent reasons, each of which supports the Court's grant of summary judgment.

**B.   The Court's November 21, 2025 Deadline—Not May 23, 2025—Is the Proper Cutoff.**

The Court established November 21, 2025 as the deadline for Plaintiffs to join the MDL to make clear who would be "bound one way or the other" by the rulings on Rule 702 motions. (Dkt. No. 448 at 48:9-12). Plaintiffs now propose a new, earlier date—May 23, 2025—which they never mentioned before the Rule 702 ruling and which would exempt more than half of the pending cases. (Br. at 2.) According to Plaintiffs, sticking with the Court's November 21, 2025 deadline would conflict with (1) issue preclusion and (2) the Due Process Clause. (*Id.* at 9-10.) Both arguments are wrong.

*First,* the issue preclusion principles Plaintiffs invoke are inapplicable and irrelevant because every Plaintiff who filed in the MDL on or before November 21 became a party to these proceedings.

8

*See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006) ("A district judge charged with the responsibility of 'just and efficient conduct' of the multiplicity of actions in an MDL proceeding must have discretion to manage them that is commensurate with the task.") The Court set November 21, 2025 as the deadline by which Plaintiffs who filed directly into the MDL would be "bound one way or the other" by the general causation proceedings. (Dkt. 448 at 48:9-12). No one objected to the Court's setting of this deadline and every Plaintiff who filed by that deadline voluntarily chose to participate in these proceedings with full knowledge that the general causation process was underway. Entering summary judgment as to those Plaintiffs simply enforces the Court's own pretrial order—which aligns with the power and obligation of an MDL court to "apply prior rulings to new cases if a party presents no new facts, evidence, or arguments to warrant a departure." *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 66 & n.6 (3d Cir. 2023). Plaintiffs attempt to recast the Court's Order as relating simply to direct filing, with no other implications, but the record tells an entirely different story.

The Court first announced at the March 27 hearing that "because we're doing general causation we have to have a deadline for plaintiffs to join so that they're bound one way or the other." (Dkt. 448 at 48:9-12.) Then at the April 23 hearing, the Court identified ending the Direct Filing Order as the *mechanism* for accomplishing that goal: the Court explained it wanted to "give some incentive for plaintiffs…to decide, do you want to be part of these proceedings happening now?" (Dkt. 466 at 24:1-16.) Plaintiffs cannot now divorce the mechanism from its purpose and pretend the deadline carried no substantive consequences. The Court's statements in both hearings make clear that anyone who filed on or before November 21 would be bound by the ruling on the Rule 702 motions.

Plaintiffs' principal authority, *Taylor v. Sturgell,* 553 U.S. 880 (2008)—which is not an MDL case at all—addresses a different question: whether a *non-party* may be bound by a judgment in separate litigation. *Id.* at 893–95. That is not the issue before this Court. Defendants are not seeking to bind nonparties—all relevant Plaintiffs are in the same MDL, before the same judge, represented by the same leadership counsel. Indeed, of the 216 cases filed between May 24 and November 21, 2025, all were filed directly in the Northern District of California under the Court's

9

Direct Filing Order, and all but twelve were filed by attorneys on the Plaintiffs' Steering Committee or by attorneys who had previously filed cases in the MDL. (*See* Ex. 2; Dkt. 467, PTO 16.)

Moreover, even were *Taylor* of some relevance here, the opinion makes clear that it is appropriate even to bind *non-parties* in certain circumstances, including where an individual "agrees to be bound" or is "adequately represented by someone with the same interests." 553 U.S. at 893–95. Plaintiffs who filed in this action on or before November 21, 2025 readily satisfy those standards. They voluntarily filed directly into this MDL, knew the general causation process was underway and that a December 2025 Rule 702 hearing was scheduled, and were represented by the same leadership counsel. Plaintiffs' own Opposition underscores the point: they describe the November 21 deadline as "the date on which the Court's Direct Filing Order would expire." (Br. at 9.) In other words, every Plaintiff who filed before that date chose to enter this MDL through a voluntary filing mechanism, not by involuntary transfer. Plaintiffs' own authority, *Montana v. United States*, 440 U.S. 147, 153–54 (1979), further underscores this point. In *Montana*, the Supreme Court made clear that even a nonparty may be bound by judicial decisions where the nonparty exercised a sufficient "laboring oar" in the prior litigation. *Id*. at 154–55. If *nonparties* can be estopped from relitigating the same issues, then *parties* who chose to file in the MDL before the binding deadline and whose own lead counsel selected the experts, developed their opinions, and presented them during a week-long evidentiary hearing, cannot plausibly claim they lacked a full and fair opportunity to litigate.

As for *Geddes v. United Fin. Grp.*, 559 F.2d 557 (9th Cir. 1977), it is similarly inapposite— it is not an MDL case, did not involve parties to the same proceeding, and concerned two entirely separate lawsuits consolidated for discovery. *Id.* at 561.

Trying to evade the November 21 deadline, Plaintiffs point to this Court's remarks at the April 24, 2025 conference to suggest that the Plaintiffs who filed in the MDL before November 21 were not on notice that they would be bound by the Rule 702 order. (Br. at 10-11.) But those remarks addressed whether a Plaintiff who filed *outside* the MDL *after* the direct-filing deadline expired could later be bound by the Court's rulings—not whether Plaintiffs who voluntarily filed into the MDL before November 21 would be bound. (Dkt. 466 at 27:13-28:7 (responding to Plaintiffs' counsel's hypothetical about a plaintiff who "file[s] a case in the District of Colorado... in

10

December")). The Court's discussion of the November 21 deadline was plain: at the March 27, 2025 hearing, the Court explained that "because we're doing general causation" there needed to be "a deadline for plaintiffs to join so that they're bound one way or the other." (Dkt. 448 at 48:9-12.) Returning to this issue at the April conference, the Court explained the deadline would "give some incentive for plaintiffs…to decide, do you want to be part of these proceedings happening now?" (Dkt. 466 at 24:1-16.) Even Plaintiffs acknowledge that the deadline was designed to give prospective plaintiffs "some incentive" to join the MDL. (Br. at 9.) The incentive is that the Court's ruling would apply to their cases, such that if Defendants' Rule 702 motions had been denied, those Plaintiffs would have gotten the benefit of that ruling. Plaintiffs offer no reason (much less a valid one) to change that determination now.

*Second,* abiding by this Court's November 21 deadline is fully consistent with due process. Plaintiffs fail to identify any case holding that the Due Process Clause prohibits an MDL court from applying its decisions to actions filed in an MDL before those rulings. *In re Korean Air Lines Co.*, 642 F.3d 685, 699–700 (9th Cir. 2011) (Br. at 10), recognizes that an MDL transferee court exercises full pretrial authority over coordinated cases, including the power to resolve dispositive motions; it does not even suggest that such rulings cannot apply across the MDL docket. *See also In re PPA*, 460 F.3d at 1231–32, 1236–37, 1246–50 (9th Cir. 2006) (upholding several MDL-wide dismissals entered to enforce case management orders and reversing dismissals only where plaintiffs had no notice what specific fact sheet deficiencies warranted dismissal). In fact, courts routinely apply Rule 702 expert exclusion decisions to all cases in coordinated mass tort proceedings, without triggering any due process or issue preclusion concerns. *See e.g., In re: Zantac (Ranitidine) Litig.*, 2026 WL 1009008, at *4, *7 (Del. Super. Ct. Apr. 14, 2026); *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 892 F.3d 624, 638–42, 647–49 (4th Cir. 2018) (affirming MDL-wide summary judgment after *Daubert* rulings); *In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prods. Liab. Litig.*, No. 3:16-md-02691, Dkt. 1021, at 2 (N.D. Cal. Apr. 8, 2020) (granting summary judgment "as to all of Plaintiffs' claims" after excluding plaintiffs' general causation opinions under Daubert).

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

CASE NO. 3:24-MD-3101-JSC

Plaintiffs attempt to distinguish *Zantac* (Br. at 11-12) by arguing that the Delaware court there secured a stipulation from the parties before applying its ruling docket wide, but that misses the point. Defendants' argument for applying the November 21 deadline does not turn on whether Plaintiffs stipulated to the Court setting that deadline—it rests on the Court's inherent authority to apply its own pretrial rulings to the cases before it, *see Home Depot*, 59 F.4th at 66 & n.6, particularly where, as here, the Court gave notice that Plaintiffs who filed by a date certain would be "bound one way or the other" by the Rule 702 rulings. (Dkt. 448 at 48:9-12.) No Plaintiff, after receiving that notice, objected to the deadline. Plaintiffs cite no authority holding that a MDL court must first secure a stipulation before its Rule 702 order can apply to plaintiffs who chose to file in the MDL before the court-imposed deadline.

If Plaintiffs had their way, more than two years of these consolidated proceedings (which Plaintiffs specifically asked for over Defendants' objections); extensive discovery on general causation; and this Court's detailed Order would be rendered a nullity for most of the cases filed in the MDL. Of the 390 cases filed on or before November 21, 216 were filed between May 24 and November 21, 2025. Only 174 were filed on or before May 23. Adopting Plaintiffs' proposed cutoff would mean the two-year general causation process applies to just over half of the cases filed before the Court's November 21 deadline. No one could plausibly have understood this Court's Order to have been so limited. Moreover, Plaintiffs' proposed May 23 deadline would invite gamesmanship by allowing Plaintiffs and their counsel to withhold cases until after general causation expert disclosures, affording them a second opportunity to relitigate general causation if their experts are excluded. Having accepted the Court's process and its deadline when they hoped to win, Plaintiffs cannot now disclaim that same deadline simply because they lost. The Court should grant summary judgment on all baby food claims in actions filed on or before November 21, 2025.

**C.** **Summary Judgment Covers All Baby Food Product Injuries Alleged in the MDL.**

Plaintiffs do not dispute that their failure to offer general causation expert opinions concerning exposure to mercury or cadmium in baby food products requires that summary judgment on those aspects of their claims be granted. (*See* Dkt. 728 ("Mot.") at 3, 5.) Despite that, Plaintiffs

12

argue that they have claims for other non-specific neurological injuries on which they also presented no expert evidence, which should somehow survive. (Br. at 12.) Not so. It is a fundamental principle that a plaintiff bears the burden of establishing causation for every injury they allege. *Celotex*, 477 U.S. at 322–23. Without admissible expert testimony at the general causation stage, summary judgment is appropriate. *In re Hanford*, 292 F.3d at 1133; *Lust*, 89 F.3d at 598. Plaintiffs chose to pursue their baby-food related claims but chose to introduce evidence of only two specific diagnosed injuries, ASD and ADHD. And their experts opined solely as to the purported relationship between lead and arsenic in Defendants' baby foods and ASD or ADHD, or symptoms associated with ASD or ADHD. (*See* Op. at 1-2, 5, 9.) No expert offered causation opinions on any other "neurodevelopmental harm" supposedly alleged by Plaintiffs independent of ASD or ADHD. (Br. at 8.) There is no difference between Plaintiffs' strategic decision regarding these supposed other injuries and Plaintiffs' decision regarding cadmium and mercury. Having chosen to offer no expert testimony at the general causation stage, Plaintiffs cannot now avoid summary judgment.

Plaintiffs invoke this Court's Pretrial Order ("PTO") 15, which allowed Plaintiffs to plead additional claims and injuries in the SFC that "will not be considered within MDL proceedings but may be preserved for adjudication in the transferor court." (Dkt. 440 at 2.) But PTO 15 contemplated other independent claims and injuries wholly distinct from what the MDL addressed—whether exposure to allegedly elevated levels of heavy metals in Defendants' baby food products was a cause of alleged "brain injuries and other neurologic harms" that manifested in diagnosed ASD and/or ADHD. (Dkt. 1 at 1-2.) The paradigmatic example of such a new claim discussed at the March 27, 2025 hearing was based on formula products,[1] which involve different products, different regulatory frameworks, and different factual questions. (Dkt. 448 at 25:24-31:10.) The "other" injuries Plaintiffs now invoke are not new or distinct in that same way. From the very beginning, Plaintiffs in the MDL have defined their injuries as those focused on "brain injuries and other neurological

---

[1] Defendants agree that formula claims fall outside the scope of this MDL and this motion. (*See* Dkt. 728 at 2 n.1; Dkt. 440, PTO 15 at 1.)

13

harms" that manifest as ASD and ADHD, and they re-iterated that position at the Rule 702 hearing during the opening statement:

> First, I want to remind the Court what our actual injuries are. Our actual injuries, and this is taken from the short form complaint, are that Plaintiffs' exposure to Defendants' baby food products caused Plaintiff to suffer brain injuries and other neurological harms that manifested in a constellation of behaviors diagnosed as ASD or ADHD….
>
> [T]he question that we're here and that our experts are here answering is whether ingesting the lead and arsenic to which an infant could be exposed from Defendants' baby food can cause symptoms … that would lead to a diagnosis of ASD or ADHD or exacerbate those conditions. So that's what our experts are going to be talking about.

(Dkt. 697 at 10:23-11:3, 12:3-8.) This representation wholly undermines their claim now that some residual, unspecified neurological injury claims remain. Notably, Plaintiffs' Opposition fails to identify a single case that supposedly asserts a distinct and different disorder other than ASD and/or ADHD or a symptom not associated with ASD and/or ADHD. Claims that consumption of baby food caused "neurological harms that manifested in a constellation of behaviors diagnosed as ASD or ADHD" are, in Plaintiffs' counsel's own words, central to this MDL and were pursued broadly in the general causation phase. (*Id.* at 11:2-3.)

Indeed, the record shows that, if any supposed other injury claims ever existed, Plaintiffs abandoned them just as they abandoned claims based on cadmium and mercury. (Op. at 1 n.1 (noting Plaintiffs' counsel conceded at the hearing that his clients were "dismissing their claims as to those metals with prejudice")). Plaintiffs' Rule 702 briefing never claimed that they could meet their burden of proof as to some other distinct injuries unrelated to ASD or ADHD. Nor did any of Plaintiffs' experts ever opine that any known "neurodevelopmental harm" independent of the "constellation of symptoms" that can be diagnosed as ASD or ADHD was caused by Defendants' baby foods. If they had such claimed injuries, they had an affirmative obligation to provide expert support and bring them to the Court's attention so they could be addressed at the Rule 702 hearing. Instead, at the March 27, 2025 hearing, Plaintiffs' lead counsel himself argued that his clients have "only alleged autism and ADHD" and admitted that any other neurocognitive problem asserted by Plaintiffs in the MDL "would be related to those." (Dkt. 448 at 32:23-33:2.) Having made this

14

admission, Plaintiffs cannot attempt to get a second bite at the same apple by arguing that their claims are anything but what they are–and what the Court found lacking in scientific basis–allegations of ASD and/or ADHD and all the related symptoms of those conditions supposedly caused by Defendants' baby foods. Moreover, in their briefing now, Plaintiffs explain that "Plaintiffs do not intend to press claims based on these other injuries … at this point in the MDL." (Br. at 13-14.) Thus, in one breath Plaintiffs claim there is somehow some non-specific, unidentified plaintiff who makes a claim of some other injury and in the next breath represent that they have no intention of pressing such a claim forward.

All plaintiffs have a duty to diligently prosecute their claims and cannot litigate in piecemeal. *See In re PPA*, 460 F.3d at 1251 (9th Cir. 2006) (recognizing that "public policy favors…the principle that litigants should be ready to prosecute claims when brought"). An MDL is not a vehicle for piecemeal litigation or for preserving claims that plaintiffs decline to prove when obligated to do so. Having sought and obtained an MDL, Plaintiffs cannot now disclaim the MDL's result simply because the result did not go their way. Summary judgment as to all claims related to baby food products should be entered in favor of Defendants.

## III.   CONCLUSION

For all the foregoing reasons, the Court should grant summary judgment in favor of Defendants on all Plaintiffs' baby food claims in MDL member actions filed on or before November 21, 2025.

15

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

CASE NO. 3:24-MD-3101-JSC

Dated:  June 15, 2026                    KING & SPALDING LLP

By: */s/ Livia M. Kiser*
Livia M. Kiser
Michael Anthony Lombardo
Todd P. Davis (*pro hac vice*)

*Attorneys for Defendants Beech-Nut Nutrition Company and Walmart Inc.*

Dated:  June 15, 2026                    WHITE & CASE LLP

By:  */s/ Bryan A. Merryman*
Bryan A. Merryman

WILLIAMS & CONNOLLY LLP

By:  */s/ Joseph G. Petrosinelli*
Neelum J. Wadhwani
Joseph G. Petrosinelli (*pro hac vice*)

*Attorneys for Defendant Gerber Products Company*

Dated:  June 15, 2026                    DLA PIPER LLP (US)

By: */s/ Brooke Killian Kim*
Brooke Killian Kim
Mary Gately (*pro hac vice*)
Loren H. Brown (*pro hac vice*)

*Attorneys for Defendant Nurture, LLC*

Dated:  June 15, 2026                    COVINGTON & BURLING LLP

By: */s/ Michael X. Imbroscio*
Michael X. Imbroscio (*pro hac vice*)
Phyllis A. Jones (*pro hac vice*)
David N. Sneed (*pro hac vice*)
Elizabeth T. Fouhey (*pro hac vice*)

*Attorneys for Defendant The Hain Celestial Group, Inc.*

16

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT                    CASE NO. 3:24-MD-3101-JSC

Dated: June 15, 2026                    GORDON REES SCULLY MANSUKHANI, LLP

                                        By: /s/ Michael R. Klatt
                                        Michael R. Klatt (*pro hac vice*)
                                        Nancy Mae Erfle (*pro hac vice*)

                                        *Attorneys for Defendant Sprout Foods, Inc.*

Dated: June 15, 2026                    DECHERT LLP

                                        By: /s/ Hope Freiwald
                                        Hope S. Freiwald (*pro hac vice*)
                                        Michelle H. Yeary (*pro hac vice*)

                                        *Attorneys for Defendant Plum, PBC*

Dated: June 15, 2026                    COZEN O'CONNOR

                                        By: /s/ Peter M. Ryan
                                        Peter M. Ryan (*pro hac vice*)
                                        Brett Nicole Taylor

                                        *Attorneys for The Campbell's Company
                                        (f/k/a Campbell Soup Company)*

Dated: June 15, 2026                    DAVIS WRIGHT TREMAINE LLP

                                        By: /s/ Ashley L. Vulin
                                        Ashley L. Vulin (*pro hac vice*)
                                        P. Andrew McStay, Jr. (*pro hac vice*)

                                        *Attorneys for Amazon.com Services LLC*

Dated: June 15, 2026                    BAKER DONELSON

                                        By: /s/ Brian M. Ballay (*pro hac vice*)
                                        N. Kordell Caldwell (*pro hac vice*)

                                        *Attorneys for Whole Foods Market Service*

17

DEFENDANTS' REPLY IN SUPPORT OF                    CASE NO. 3:24-MD-3101-JSC
MOTION FOR SUMMARY JUDGMENT

## **L.R. 5-1 ATTESTATION**

I, Livia M. Kiser, attest that all signatories listed herein, and on whose behalf this filing is submitted, concur in this filing's content and have authorized this filing.


/s/ Livia M. Kiser
Livia M. Kiser

1

DEFENDANTS' NOTICE OF MOTION AND                    CASE NO. 3:24-MD-3101-JSC
MOTION FOR SUMMARY JUDGMENT