LOREN BROWN (Admitted *Pro Hac Vice*)
loren.brown@us.dlapiper.com
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
Tel:  212.335.4500
Fax:  212.335.4501

MARY GATELY (Admitted *Pro Hac Vice*)
mary.gately@us.dlapiper.com
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Tel:  202.799.4000
Fax:  202.799.5000

BROOKE KILLIAN KIM, SBN 239298
brooke.kim@dlapiper.com
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, California 92121
Telephone: (619) 699-3439
Facsimile: (858) 677-1401

*Attorneys for Defendant Nurture, LLC*
*(Additional counsel listed on signature page)*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION | Case No. 24-md-3101-JSC<br>MDL 3101<br><br>Hon. Jacqueline Scott Corley |
| This Document Relates to:<br><br>*Watkins v. Nurture, LLC, et al.*,<br>Case No. 3:24-cv-02832-JSC | **DEFENDANTS' BRIEF IN OPPOSITION TO WATKINS PLAINTIFF'S SECOND MOTION TO REMAND**<br><br>Date: August 13, 2026<br>Time: 10:00 a.m.<br>Location:  Courtroom 8<br>         19th Floor 450 Golden Gate Ave.<br>         San Francisco, CA 94102 |

# TABLE OF CONTENTS

|  | | Page |
|---|---|---|
| FACTUAL AND PROCEDURAL BACKGROUND | | 1 |
| I. | Procedural History in the Transferor Court | 1 |
| II. | Proceedings Before the JPML | 4 |
| III. | Proceedings in the MDL | 5 |
| LEGAL STANDARD | | 6 |
| ARGUMENT | | 8 |
| I. | The Sewerage and Water Board Does Not Destroy Diversity. | 9 |
|  | A. Plaintiff Has Conceded the Relevant Jurisdictional Facts. | 9 |
|  | B. Because Plaintiff's Voluntary Dismissal of the SWB Cured any Initial Lack of Complete Diversity, the Supreme Court's Ruling in *Caterpillar* Enables This Court to Proceed with the Completely Diverse Parties Before it. | 10 |
|  | C. Plaintiff Did Not Contest Defendants' Fraudulent Joinder Argument Before the Transferor Court; the SWB Was a Sham Defendant. | 13 |
|  | D. Plaintiff Cannot Succeed on His LPLA Claim Against the SWB | 15 |
| II. | Nurture, LLC Properly Alleged and Proved Facts Demonstrating Its Diversity of Citizenship from Plaintiff. | 18 |
|  | A. Nurture Was Permitted Under the Federal Rules to Amend the Removal Notice, and the Amendment Relied on the Same Jurisdictional Basis. | 19 |
|  | B. The Evidence Submitted by Nurture Establishes That It Was Diverse from Plaintiff at the Time of Removal. | 23 |
| CONCLUSION | | 25 |

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Title Ins. Co. v. Lacelaw Corp.*,
861 F.2d 224 (9th Cir. 1988)..................................................................................7

*Anderson v. Serenity Gathering, LLC*,
No. 316CV02802GPCKSC, 2017 WL 192268 (S.D. Cal. Jan. 18, 2017)...............22

*ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality*,
213 F.3d 1108 (9th Cir. 2000)...............................................................................20

*Asana Partners Fund II Reit 14 LLC v. Heath Fam. I LLC*,
No. C20-1034-JCC, 2020 U.S. Dist. LEXIS 231600 (W.D. Wash. Dec. 9, 2020)....7

*Asana Partners Fund II Reit 14 LLC v. Heath Fam. I LLC*,
No. C20-1034-JCC, 2020 WL 7241449 (W.D. Wash. Dec. 9, 2020)..............20, 25

*Caswell v. Olympic Pipeline Co.*,
484 F. App'x 151 (9th Cir. 2012) ....................................................................13, 14

*Caterpillar Inc. v. Lewis*,
519 U.S. 61 (1996) ....................................................................................9, 10, 11, 12

*Dewan v. M-I, L.L.C.*,
No. 1:14-CV-01151-AWI, 2015 WL 3797462 (E.D. Cal. June 18, 2015) .............23

*Doe v. Deutsche Lufthansa Aktiengesellschaft*,
No. 23-CV-04413-SI, 2025 WL 2578241 (N.D. Cal. Sept. 5, 2025)......................22

*Duyen Kwong v. Santa Clara Cty. Sheriff's Office*,
No. 17-cv-02127-BLF, 2018 U.S. Dist. LEXIS 41281 (N.D. Cal. Mar. 12,
2018)........................................................................................................................7

*Geerlof v. C & S Wholesale Grocers, Inc.*,
2014 WL 1415974 (E.D. Cal. Apr. 14, 2014)........................................................22

*Good v. Google LLC*,
No. 22-CV-05622-JSC, 2022 WL 17436482 (N.D. Cal. Dec. 6, 2022) ................21

*Grancare LLC v. Thrower by and through Mills*,
889 F.3d 543 (9th Cir. 2018)................................................................................15

*Grupo Dataflux v. Atlas Global Group, L.P.*,
541 U.S. 567 (2004) ..............................................................................................12

BRIEF IN OPPOSITION TO MOTION TO REMAND TO STATE COURT
CASE NO. 3:24-CV-02832-JSC (MDL NO. 3101)

*Hain Celestial Group, Inc. v. Palmquist*,
  607 U.S. 421 (2026) ............................................................................................ 11, 12, 15

*Hankins v. Am. Med. Response Ambulance Serv., Inc.*,
  No. 116CV0/1046LJOMJS, 2018 WL 339062 (E.D. Cal. Jan. 9, 2018) ................................ 13

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) ............................................................................................................. 7

*Hosp. Mgmt., Inc. v. Preferred Contractors Ins. Co.*,
  No. 3:18-CV-452-YY, 2022 WL 3755156 (D. Or. Aug. 30, 2022) ........................................ 10

*Hosp. Mgmt. v. Preferred Contractors Ins. Co.*,
  No. 3:18-cv-452-YY, 2022 U.S. Dist. LEXIS 155925 (D. Or. Aug. 30, 2022) ...................... 10

*Huffman v. Lindgren*,
  81 F.4th 1016 (9th Cir. 2023) ........................................................................................... 14

*Hunter v. Philip Morris USA*,
  582 F.3d 1039 (9th Cir. 2009) ...................................................................................... 7, 15

*Kanter v. Warner-Lambert Co.*,
  265 F.3d 853 (9th Cir. 2001) ........................................................................................ 6, 21

*Kwong v. Santa Clara Cnty. Sheriff's Off.*,
  No. 17-CV-02127-BLF, 2018 WL 1258180 (N.D. Cal. Mar. 12, 2018) ............................... 20

*Lindley Contours, LLC v. AABB Fitness Holdings, Inc.*,
  414 Fed. App'x 62 (9th Cir. 2011) .................................................................................... 22

*Lynch v. Dawson*,
  820 F.2d 1014 (9th Cir. 1987) ............................................................................................. 7

*Medero v. Norada Cap. Mgmt.*,
  No. 8:25-CV-00574-DOC-KES, 2025 WL 2630389 (C.D. Cal. Sept. 12, 2025) .................. 21

*Mitchell v. Paws Up Ranch LLC*,
  No. CV 08-111-M-DWM-JCL, 2008 WL 11417152 (D. Mont. Oct. 10, 2008) .................... 22

*Molnar v. Nat'l Broad. Co.*,
  231 F.2d 684 (9th Cir.1956) ............................................................................................. 21

*Morgan v. Tyree*,
  No. 2:23-cv-01160-GMN-NJK, 2023 U.S. Dist. LEXIS 158334 (D. Nev. Sep.
  6, 2023) ............................................................................................................................ 13

*NewGen, Ltd. Liab. Co. v. Safe Cig, Ltd. Liab. Co.*,
  840 F.3d 606 (9th Cir. 2016) ........................................................................... 6, 7, 19, 22

iii

*Newman-Green, Inc. v. Alfonzo-Larrain*,
   490 U.S. 826 (1989) ................................................................................................. 19

*In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Pracs. Litig.*,
   282 F.R.D. 486 (C.D. Cal. 2012) ............................................................................ 23

*Overholt v. Airista Flow Inc.*,
   No. 17CV1337-MMA (AGS), 2018 WL 355231 (S.D. Cal. Jan. 10, 2018)........................... 22

*Randolph v. Wyatt*,
   No. CIV.A. 09-2020, 2010 WL 299257, at *1 (W.D. La. Jan. 15, 2010) ................................ 7

*Rudow v. Monsanto Co.*,
   No. C99-4700 TEH, 2001 WL 228163 (N.D. Cal. Mar. 1, 2001) ......................................... 13

*Schnabel v. Lui*,
   302 F.3d 1023 (9th Cir. 2002)................................................................................ 14

*Singh v. Am. Honda Fin. Corp.*,
   925 F.3d 1053 (9th Cir. 2019)......................................................................... 11, 12

*Snell v. Cleveland, Inc.*,
   316 F.3d 822 (9th Cir. 2002)................................................................................. 21

*Strotek Corp. v. Air Transp. Ass'n of Am.*,
   300 F.3d 1129 (9th Cir. 2002)................................................................................. 6

*United States v. Alexander*,
   106 F.3d 874 (9th Cir. 1997)................................................................................. 23

*Vasura v. Acands*,
   84 F. Supp. 2d 531 (S.D.N.Y. 2000) ..................................................................... 13

*Verzosa v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   589 F.2d 974 (9th Cir. 1978)................................................................................. 10

**Statutes**

28 U.S.C. § 1332 ........................................................................................................ 6

28 U.S.C. § 1332(a)(1) ............................................................................................... 6

28 U.S.C. § 1407 ..................................................................................................... 23

28 U.S.C. § 1441 ..................................................................................................... 11

28 U.S.C. § 1653 .............................................................................................. *passim*

All Writs Act .......................................................................................................... 20

BRIEF IN OPPOSITION TO MOTION TO REMAND TO STATE COURT
CASE NO. 3:24-CV-02832-JSC (MDL NO. 3101)

La. R.S. 9:2800.53(1) ...................................................................................................... 16

La. R.S. 9:2800.53(3) ...................................................................................................... 15

La. R.S. § 9:2800.53(3) ................................................................................................... 17

Louisiana Products Liability Act................................................................................ 1, 9, 15, 16

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ..................................................................................................... 15

Fed. R. Civ. P. 20(a)(2) ................................................................................................... 17

Fed. R. Civ. P. 28-1(c) .................................................................................................... 14

Fed. R. Civ. P. 30-1.3 ..................................................................................................... 14

Fed. R. Evid. 702 .............................................................................................................. 9

J. Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 La. L. Rev. 565,
     579 (1989) ............................................................................................................... 16

16 Moore's Federal Practice § 107.30[2][a][iv]................................................................ 21

Sewerage & Water Bd. of New Orleans, Comprehensive Annual Financial Report
     for the Years Ended Dec. 31, 2017 & 2016, at 4,
     https://app.lla.state.la.us/PublicReports.nsf/B6FB75D1AF877B088625835A00
     65891C/$FILE/0001AE30.pdf........................................................................... 16

Sewerage & Water Bd. of New Orleans, Rates, Fees & Charges,
     https://www.swbno.org/CustomerService/RatesFeesAndCharges ........................... 17

14C Wright & Miller, Federal Practice and Procedure § 3733, 651 (4th ed. 2009) ...................... 21

BRIEF IN OPPOSITION TO MOTION TO REMAND TO STATE COURT
CASE NO. 3:24-CV-02832-JSC (MDL NO. 3101)

Defendants Nurture, LLC, Hain Celestial Group, Inc., Whole Foods Market Services, Inc., and Amazon.com Services, LLC (collectively, "Defendants") respectfully submit this Response Brief in Opposition to Plaintiff's Second Motion to Remand.[1] Federal diversity jurisdiction is proper, and Plaintiff's Motion should be denied on two grounds. First, the naming of the Sewerage and Water Board of New Orleans ("SWB") (voluntarily dismissed by Plaintiff over four years ago) in the original state court complaint does not defeat diversity because Plaintiff has admitted that he is not a citizen of any state where Defendants are citizens, Plaintiff had four years to raise the argument as to the SWB but never did so until now, and in any event the SWB was fraudulently joined and was a sham defendant because Plaintiff cannot establish a claim under the Louisiana Products Liability Act against the SWB. Second, Nurture, LLC provided sufficient evidence that both Nurture and its relevant corporate members are citizens of New York and Delaware and are therefore diverse from Plaintiff, a Louisiana citizen.  28 USC § 1653 allows for liberal and retroactive amendment of pleadings long after the 30-day deadline, and at any stage of the litigation to encompass jurisdictional allegations and facts. As the transferor court found more than two years ago, subject matter jurisdiction is therefore proper and the Court's upcoming order on Defendants' Motion for Summary Judgment should govern the claims in this case.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural History in the Transferor Court

On February 1, 2022, Plaintiff filed his Petition for Damages in the Civil District Court for the Parish of New Orleans (State of Louisiana). ECF No. 1-2.[2] In the Petition, Plaintiff named "Nurture, Inc." as a defendant, along with Plum, PBC, Hain Celestial Group, Inc., Amazon.com Sales, Inc., Whole Foods Market, Inc., and the Sewerage and Water Board of New Orleans. *Id.*

---

[1] At one point in this case, there were several Watkins family members listed as plaintiffs. Per the Short Form Complaint, JMW is the only listed plaintiff, with James Watkins listed as representative and guardian *ad litem*. *See* ECF No. 428 at 2. For purposes of clarity, Defendants use the term "Plaintiff" when referring to the plaintiff in this case.

[2] References to "ECF" are to the *Watkins*-specific docket; references to "JPML ECF" are to the JPML docket, and references to "MDL ECF" are to the MDL docket.

1

Relying on diversity jurisdiction (and arguing that the SWB, a Louisiana citizen just like Plaintiff, was fraudulently joined), on March 4, 2022, Nurture removed this action to the U.S. District Court for the Eastern District of Louisiana (the "transferor court"), asserting that Nurture, Inc. was a foreign corporation organized under the laws of Delaware with its principal place of business in New York. ECF No. 1. Nurture, Inc. had only been recently converted to Nurture, LLC, and thus the Notice of Removal only referenced the jurisdictional facts relevant to the previous corporate entity, Nurture, Inc.

On April 4, 2022 – the deadline to oppose removal – having had the opportunity to review Defendants' arguments as to why joinder of the SWB was improper – Plaintiff voluntarily dismissed the SWB as a defendant. ECF No. 17. Plaintiff did not file a motion to remand at that time. ***From that point on, the issue as to the SWB was not raised in the transferor court, before the JPML or before this Court***.

Given that jurisdiction was at that time uncontested, Nurture did not immediately amend its Notice of Removal to reflect the Nurture, LLC entity. On April 14, 2022, Nurture filed a Motion to Dismiss (ECF No. 23). On May 11, 2022, Nurture filed a Reply in Support of its Motion to Dismiss, expressly naming Nurture, LLC as the moving party (ECF No. 36), and continued to identify as Nurture, LLC in subsequent filings. After denial of the Motion to Dismiss by the transferor court (ECF No. 51), Nurture, LLC filed its Answer (ECF No. 53), and on October 10, 2022, Nurture, LLC filed its Corporate Disclosure Statement (ECF No. 55), stating that "as of January 1, 2022, Nurture, Inc. had converted to a Delaware limited liability company ("Nurture, LLC")." *Id.*

Plaintiff propounded jurisdictional discovery on May 5, 2023. ECF No. 112-5. Nurture served its responses and objections to the jurisdictional discovery on June 6, 2023, providing citizenship facts as to Nurture, LLC and its sole member, Happy Family Holding Company, LLC. ECF No. 112-3. Plaintiff then filed a Motion to Remand on June 30, 2023, alleging that Nurture had "not disclosed the facts needed to demonstrate its true citizenship for diversity purposes" because it had not documented the citizenship status of Nurture's parent LLCs through the corporate chain. ECF No. 112-1 at 1. ***None of Plaintiff's briefs on the motion to remand argued that the SWB (which Plaintiff had dismissed more than a year earlier) at any time destroyed diversity***

2

*jurisdiction*. Concurrent with the filing of an Opposition to the Motion to Remand (ECF No. 119) attaching corporate documents showing the citizenship of the relevant entities, Nurture, LLC filed a Motion for Leave to file an Amended Notice of Removal (ECF No. 118). Seeking leave to address the oversight, Nurture proposed to amend Paragraph 5 of the original removal notice as follows:

> Upon information and belief, Defendant Nurture, LLC ("Nurture") is not presently, and was not at the time this action was commenced, a citizen of the State of Louisiana. Nurture is a limited liability company incorporated in Delaware with its principal place of business in New York. Nurture's sole member is Happy Family Holding Company, LLC, which is a limited liability company incorporated in Delaware with its principal place of business in New York. The sole member of Happy Family Holding Company, LLC is Danone US, LLC, which is a limited liability company incorporated in Delaware with its principal place of business in New York. The sole member of Danone US, LLC is Danone US, Inc., which is a foreign corporation organized under the laws of Delaware with its principal place of business in New York. Therefore, Nurture is a citizen of Delaware and New York for purposes of determining diversity.

ECF No. 119 at 3. The amendment reflected that each of the relevant Nurture, LLC entities were citizens of Delaware and New York – *i.e.*, the same states of citizenship as Nurture, Inc., the entity upon which Nurture, LLC relied for diversity jurisdiction.  None of the relevant entities was (or is) a citizen of Louisiana, which is Plaintiff's state of citizenship. At all relevant times, complete diversity existed between both Nurture, Inc. (the entity sued by Plaintiff) and Nurture LLC, on the one hand, and Plaintiff, on the other hand.[3]

The transferor court held oral argument on Plaintiff's motion to remand on August 17, 2023. Plaintiff's counsel's argument focused exclusively on the citizenship status of Nurture and its parent entities and ***never mentioned the SWB or raised the issue of its citizenship status***. Toward the conclusion of that hearing, the court asked Nurture's counsel whether Nurture would be willing to

---

[3] On August 9, 2023, Nurture filed a motion for leave to file a Second Amended Notice of Removal, this time to clarify facts regarding the citizenship status of Amazon.com Services LLC (incorrectly named as "Amazon.com Sales, Inc." in Plaintiff's original Petition). ECF No. 153. Plaintiff raised the citizenship status of the Amazon entity in a Supplemental Memorandum on the motion to remand (ECF No. 144) but later conceded at oral argument that the issue had been satisfied. *See* ECF No. 170 at 20-21 ("Your Honor, we, based on our own investigation and the information that has been submitted by Amazon, we do not harbor the same concerns concerning Amazon. It was incumbent, having looked into this issue and found another defect in the removal papers, we felt that it should be fixed, and we are not challenging the citizenship of the Amazon, LLC.").

BRIEF IN OPPOSITION TO MOTION TO REMAND TO STATE COURT
CASE NO. 3:24-CV-02832-JSC (MDL NO. 3101)

submit a company declaration in support of Nurture's motion to amend the removal notice, which Nurture's counsel indicated it would do. ECF No. 170 at 30-31. On August 24, 2023, Nurture requested leave to file a Supplemental Memorandum in support of Subject Matter Jurisdiction. ECF No. 180. Along with the same corporate documents it had previously submitted in support of its motion to amend the removal notice, Nurture submitted a declaration from Charles George, Director of Tax Planning for Nurture's indirect parent entity Danone North America PBC. Mr. George stated that he was familiar with and had personal knowledge of the corporate structure of Nurture, LLC, narrated the history regarding the relevant entities and the conversion of Nurture, Inc. into Nurture, LLC, and affirmed that all of the relevant entities were citizens of Delaware and New York. ECF No. 180-3. Mr. George also verified that the attached corporate documents reflecting these facts were true and correct copies. *Id.* The transferor court granted Nurture's motion for leave on September 19, 2023 (ECF No. 199), and it was deemed filed by the court that same day. ECF No. 200. Even though Plaintiff filed his own post-hearing supplemental memorandum (ECF No. 201), he never challenged the accuracy or sufficiency of the George Declaration, either in the supplemental memorandum or at any time thereafter in the transferor court.

On August 25, 2023, Plaintiff moved for leave to file an amended complaint. ECF No. 183. The transferor court granted the motion (ECF No. 196) on September 15, 2023, and deemed the amended complaint filed that same day. ECF No. 197. ***The amended complaint no longer listed the SWB as a defendant and did not mention the SWB at all.***

On March 22, 2024, the transferor court granted Nurture's motions for leave to amend the removal notice and denied Plaintiff's motion to remand, "with written reasons to follow." ECF No. 357. In its Order, the court noted that it had "carefully reviewed and considered the record in this action, the subject motions, the memoranda and materials submitted in connection with same, as well as the arguments of counsel, and the applicable law[.]" *Id.* Both amended notices of removal were deemed filed by the court that same day. ECF Nos. 358 and 359.

## II.    Proceedings Before the JPML

The MDL plaintiffs filed their Motion for Transfer as to the nationwide baby food litigation with the JPML on January 4, 2024. JPML ECF No. 1. In the Memorandum in support of transfer,

4

the MDL Plaintiffs requested that the Watkins case not be transferred and that it should remain in the Eastern District of Louisiana, "given the advanced stage of the case and imminent trial date", that the parties "are on the brink of submitting expert reports and wrapping up fact discovery" and that trial was set for August 12, 2024. JPML ECF No. 1-1. However, just before oral argument before the JPML on the Motion for Transfer on March 28, 2024, Plaintiff's counsel notified defense counsel that the Watkins Plaintiff now supported transfer of that case to the MDL, which Hain's counsel noted on the record during oral argument. *See* JPML ECF No. 125 at 20-21 ("I need to mention one thing on Watkins, if I may? . . . It was a change of position this morning. The plaintiff were trying to keep Watkins out. Now they want Watkins to go in . . .").

The JPML initially denied transfer of Watkins to the MDL on the grounds that it was not included in the original petition to the JPML. JPML ECF No. 128. On April 24, 2024, the parties to the Watkins case – including Plaintiff – filed a Joint Motion to Transfer the Watkins case to the newly-formed MDL. JPML ECF No. 132. Plaintiff fully supported transfer and did not challenge subject matter jurisdiction or raise an objection to diversity jurisdiction. The only reference to jurisdiction in the Joint Motion was a footnote indicating that the transferor court denied Plaintiff's motion to remand. *See* ECF No. 132-1 at 3 n.3 The JPML granted the Motion to Transfer and centralized the Watkins case in the MDL on April 26, 2024. JPML ECF No. 133.

### III.    Proceedings in the MDL

After the Watkins case was transferred to the MDL,[4] Plaintiff filed a series of amended complaints – on August 15, 2024 (ECF No. 408), January 6, 2025 (ECF No. 411), January 15, 2025 (ECF No. 415), and May 9, 2025 (ECF No. 426). None of these amended complaints raised the issue of diversity jurisdiction with regard to the SWB or even mentioned the SWB at all. Indeed, ***Plaintiff later expressly alleged facts supporting the existence of complete diversity in his Short Form Complaint***, filed on July 7, 2025. In the Short Form Complaint, Plaintiff stated that "Plaintiff alleges that they are not citizens of any state where the named Defendant(s) are also citizens." ECF

---

[4] Notably, the Watkins Plaintiff's attorneys have taken an active role in MDL plaintiffs' counsel leadership and trumpeted their experience in the *Watkins* case in their applications for appointment to the Plaintiffs' Steering Committee. *See* MDL ECF Nos. 62 at 2; 64 at 1; 65 at 2; 76 at 1.

5

No. 428 at 3. Plaintiff further expressly adopted the Eastern District of Louisiana as the "designated venue" of his case and pleaded "Diversity of Citizenship" as the basis for the Court's subject matter jurisdiction. *Id.*

After the parties fully briefed the issue of general causation and the Court conducted a week-long hearing in December 2025—during which time Plaintiff raised no objection to the Court's jurisdiction—on February 27, 2026, the Court entered an order excluding certain of Plaintiffs' general causation experts. MDL ECF No. 710. The Court's order effectively prevents Plaintiffs from establishing causation. *See generally* Defendants' Motion for Summary Judgment (MDL ECF No. 728). Only after suffering this adverse ruling did Plaintiff challenge this Court's jurisdiction in the instant Motion to Remand on May 28, 2026, arguing for the very first time in the litigation that the SWB's presence destroyed diversity. Without seeking leave for reconsideration, the Motion also raises the same argument previously denied before the transferor Court, i.e., that Nurture has not proved that it was diverse from Plaintiff. ECF No. 430.

## LEGAL STANDARD

Under 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . Citizens of different States[.]" 28 U.S.C. § 1332(a)(1). "The party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction." *NewGen, Ltd. Liab. Co. v. Safe Cig, Ltd. Liab. Co.*, 840 F.3d 606, 613-14 (9th Cir. 2016). Diversity is determined as of the time the complaint is filed and removal effected. *See Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002).

When there are "defective allegations of jurisdiction … in the trial or appellate courts[,]" 28 U.S.C § 1653 permits amendment of a notice of removal to provide relevant jurisdictional facts. *NewGen*, 840 F.3d at 612-13. Section 1653 is a "liberal amendment rule" that "permits a party who has not proved, or even alleged, that diversity exists to amend his pleadings even as late as on appeal." *Id.* at 613 (quoting *D.C. ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1044 (D.C. Cir. 1986)). Section 1653 allows for the curing of defective allegations regarding citizenship. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857-58 (9th Cir. 2001).

6

A corporation is a citizen of its state of incorporation and the state in which it has its principal place of business. *Hertz Corp. v. Friend*, 559 U.S. 77, 79-80 (2010). In evaluating diversity jurisdiction, "[a] limited liability company is a citizen of every state of which its owners/members are citizens, not the state in which it was formed or does business." *NewGen, Ltd. Liab. Co.*, 840 F.3d at 612 (internal quotations omitted). "[I]f an LLC's membership includes other unincorporated associations, like partnerships or additional LLCs," a party must "'trace[] through however many layers of partners or members there may be' until the underlying party's citizenship is established." *Asana Partners Fund II Reit 14 LLC v. Heath Fam. I LLC*, No. C20-1034-JCC, 2020 U.S. Dist. LEXIS 231600, at *7 (W.D. Wash. Dec. 9, 2020) (citation omitted); *see also Duyen Kwong v. Santa Clara Cty. Sheriff's Office*, No. 17-cv-02127-BLF, 2018 U.S. Dist. LEXIS 41281, at *12 n.2 (N.D. Cal. Mar. 12, 2018) (tracing citizen status to incorporated member of LLC); *Randolph v. Wyatt,* No. CIV.A. 09-2020, 2010 WL 299257, at *1 (W.D. La. Jan. 15, 2010) (each member of LLC that is an LLC or partnership must trace member citizenship up the chain "until one reaches only individuals and/or corporations[]") (citing *Mullins v. TestAmerica, Inc.,* 564 F.3d 386, 397 (5th Cir. 2009)).

"[O]ne exception to the requirement for complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (internal citation and quotations omitted). "Joinder is fraudulent '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.' . . . In such a case, the district court may ignore the presence of that defendant for the purpose of establishing diversity." *Id.* (internal citations and quotations omitted).

"Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (internal citation and quotations omitted). "While 'consent of parties cannot give the courts of the United States jurisdiction, . . . the parties may admit the existence of facts which show jurisdiction, and the courts may act judicially upon such an admission." *Lynch v. Dawson*, 820 F.2d 1014, 1016–17 (9th Cir. 1987) (quoting *Verzosa v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 589 F.2d 974, 977 (9th Cir. 1978)).

BRIEF IN OPPOSITION TO MOTION TO REMAND TO STATE COURT
CASE NO. 3:24-CV-02832-JSC (MDL NO. 3101)

PUBLIC - REDACTS MATERIALS FROM CONDITIONALLY SEALED RECORD

## ARGUMENT

Since having his first motion to remand denied more than two years ago, Plaintiff has repeatedly recognized the jurisdiction of this Court—by agreeing to be transferred to this MDL, by filing a Short Form Complaint admitting the facts underlying the existence of complete diversity jurisdiction, and by adopting a federal district court, the Eastern District of Louisiana, as his venue should this case be remanded following the conclusion of the MDL. Now, after failing to present admissible evidence supporting causation and while facing certain summary judgment, Plaintiff has the audacity to suggest that diversity jurisdiction is somehow improper. But as even Plaintiff admits, he is not "[a] citizen[] of any state where the named Defendant(s) are also citizens." Plaintiff alleged that this action was properly before this Court based on "Diversity of Citizenship" and cannot wash himself of these concessions in an attempt to dodge this Court's ruling on the merits of his case.

Defendants removed this case to federal court arguing that the SWB, one of the original named defendants, was fraudulently joined. Plaintiff's claim against the SWB in no way related to baby food. Rather, Plaintiff and his entire family alleged that they were exposed to purported MTBE and ETBE contamination present in New Orleans' water supply. Rather than move to remand – and implicitly recognizing that the SWB was improperly joined – Plaintiff dismissed the SWB and accepted that federal subject matter jurisdiction existed based on diversity of citizenship. Plaintiff first objected to subject matter jurisdiction in the transferor court in June 2023 based solely on his belief that Nurture, LLC did not properly allege the citizenship of its members. Based on a fully briefed motion and following oral argument, the transferor court denied remand, finding that Plaintiff's case was properly before the Eastern District of Louisiana. At no point did Plaintiff claim in the transferor court that the presence of the SWB destroyed complete diversity at the time of removal. Plaintiff later moved to transfer this action to the MDL, and upon filing a Short Form complaint conceded jurisdiction. Only after the Court's ruling excluding Plaintiffs' general causation experts did Plaintiff reverse course on jurisdiction. Plaintiff filed this motion disclaiming jurisdictional facts he previously admitted and re-raising arguments the transferor court rejected.

Ultimately, Plaintiff's arguments against diversity jurisdiction fail because (1) the naming of the SWB in the state court complaint and its presence at the time of removal does not defeat

8

diversity, and (2) Nurture, LLC and its relevant corporate members are (and were at the time of removal) citizens of New York and Delaware and are therefore diverse from Plaintiff.

## I. The Sewerage and Water Board Does Not Destroy Diversity.

In his Motion to Remand this case back to Louisiana state court, Plaintiff makes an argument not raised in the litigation for nearly four and a half years – namely, that the SWB was properly joined at the time of removal, and therefore, its presence destroys the existence of complete diversity and subject matter jurisdiction does not exist. But Plaintiff has admitted facts in his Short Form Complaint sufficient to establish that complete diversity exists, and in any event, he *voluntarily dismissed* the SWB as a defendant one month after removal and never mentioned the SWB again before the transferor court, not even when Plaintiff moved to remand on other grounds over a year later in June 2023. Until filing his motion a few weeks ago, Plaintiff never mentioned the SWB in proceedings before this Court (or the JPML) and made no move to exit the MDL prior to this Court's Rule 702 order. Now facing summary judgment, Plaintiff hopes to save his case at the eleventh hour with new arguments directly contradicted by his previous admissions. The Court should disregard this gamesmanship, and hold that the SWB does not destroy diversity jurisdiction in this case because (1) Plaintiff has already conceded the relevant jurisdictional facts in the Short Form Complaint; (2) the Supreme Court's held in *Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996) that this Court can ignore the SWB's citizenship; (3) by never responding to Nurture's jurisdictional allegations regarding fraudulent joinder in the removal notice during the proceedings before the transferor court, Plaintiff is deemed to have constructively admitted those allegations; and (4) the SWB was fraudulently joined and does not count for diversity purposes because Plaintiff cannot recover against the SWB for Plaintiff's manufacturing defect claim under the Louisiana Products Liability Act.

### A. Plaintiff Has Conceded the Relevant Jurisdictional Facts.

Plaintiff's motion should be denied because he concedes the existence of facts establishing complete diversity. Having admitted these facts, he cannot now argue to the contrary. "While 'consent of parties cannot give the courts of the United States jurisdiction, . . . the parties may admit the existence of facts which show jurisdiction, and the courts may act judicially upon such an

9

admission." *Verzosa v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 589 F.2d 974, 977 (9th Cir. 1978) (quoting *Ry. Co. v. Ramsey*, 89 U.S. 322, 327 (1874); *see also Hosp. Mgmt., Inc. v. Preferred Contractors Ins. Co.*, No. 3:18-CV-452-YY, 2022 WL 3755156, at *6 n.4 (D. Or. Aug. 30, 2022) *Hosp. Mgmt. v. Preferred Contractors Ins. Co.*, No. 3:18-cv-452-YY, 2022 U.S. Dist. LEXIS 155925, at *19 n.4 (D. Or. Aug. 30, 2022) (explaining "the distinction between an admission that federal subject matter jurisdiction exists, and an admission of facts serving in part to establish federal subject matter jurisdiction." (internal citation omitted)).

In the Short Form Complaint, Plaintiff alleges that he is not a citizen "of any state where the named Defendant(s) are also citizens" and that jurisdiction is appropriate in this action based on diversity of citizenship. *See* ECF No. 428 at 3 (selecting "Diversity of Citizenship" as the "Basis for Subject Matter Jurisdiction" and stating that "Plaintiff alleges that they are not citizens of any state where the named Defendant(s) are also citizens."). In doing so, Plaintiff affirmatively conceded the facts necessary to establish complete diversity of the parties and the existence of federal subject matter jurisdiction. *See id.*

**B. Because Plaintiff's Voluntary Dismissal of the SWB Cured any Initial Lack of Complete Diversity, the Supreme Court's Ruling in *Caterpillar* Enables This Court to Proceed with the Completely Diverse Parties Before it.**

Plaintiff now seeks to contradict his own allegations by arguing that the SWB is properly joined and, like Plaintiff, is a citizen of Louisiana, and therefore destroys the existence of complete diversity. But even if the SWB's presence as a named defendant at the time of removal destroyed complete diversity at that moment (a point Defendants contest), Plaintiff's voluntary dismissal of the SWB after removal cured that problem, perfecting complete diversity. Under the Supreme Court's ruling in *Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996), the initial *statutory* flaw in diversity jurisdiction does not preclude the Court from exercising diversity jurisdiction now over the completely diverse parties that remain.

In *Caterpillar,* the case was removed by Caterpillar to federal court after the plaintiff settled with a non-diverse defendant, based on Caterpillar's belief that the remaining parties were diverse. *Caterpillar*, 519 U.S. at 64. The plaintiff filed a motion to remand, pointing out that another non-diverse defendant remained, but the trial court denied the motion. *Id.* The remaining non-diverse

10

PUBLIC - REDACTS MATERIALS FROM CONDITIONALLY SEALED RECORD

defendant later settled, thus rendering all remaining parties diverse for trial. *Id.* The Supreme Court ultimately held that the dismissal of the non-diverse defendant had created diversity jurisdiction for constitutional purposes and had cured any initial failure to satisfy the statutory requirement that all parties be diverse at the time of removal. *Id.* at 73. The Supreme Court later explained that, because the non-diverse defendant in *Caterpillar* was "gone for good" after the plaintiff agreed to the dismissal, the dismissal "left behind a completely diverse set of parties." *Hain Celestial Group, Inc. v. Palmquist*, 607 U.S. 421, 430-31 (2026).

Here, Plaintiff voluntarily dismissed the SWB—meaning that the SWB was from that moment forward "gone for good" from the case. And from that moment forward, the parties to the case have been and will remain completely diverse. Under the reasoning in *Caterpillar*, any failure to satisfy the statutory requirement in 28 U.S.C. § 1441 that the parties be completely diverse at the time of removal cannot now defeat the Court's constitutional jurisdiction over the remaining completely diverse parties. The Court and parties have already invested enormous resources into this matter, engaging in extensive fact and expert discovery, hearing testimony from Plaintiffs' experts on the issue of general causation, and ultimately determining that each of the experts Plaintiffs relied on to establish general causation should be excluded. In view of that ruling, the MDL Plaintiffs did not oppose entry of summary judgment in cases such as this, where Plaintiff filed his claim well in advance of the deadlines to designate expert witnesses.[5] *See* Plaintiffs' Opp. to Motion for Summary Judgment (MDL ECF No. 738 at 1) (conceding that, assuming the correctness of the court's expert ruling, summary judgment is appropriate, though disagreeing with that ruling). Remanding the matter now would be inconsistent with the principles of "efficiency[] and economy" that motivated the Supreme Court's decision in *Caterpillar*. 519 U.S. at 75.

Plaintiff dismissed the SWB more than four years ago; at the time of this Court's general causation order effectively ending this litigation, federal diversity requirements were readily met. Five amended complaints have been filed since 2023. At no point in time since April 4, 2022, (the

---

[5] The Ninth Circuit has held that the *Caterpillar* rule may be applied to the summary judgment stage. *See Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019)

BRIEF IN OPPOSITION TO MOTION TO REMAND TO STATE COURT
CASE NO. 3:24-CV-02832-JSC (MDL NO. 3101)

date on which Plaintiff voluntarily dismissed the SWB from the litigation) has the SWB been a defendant; complete diversity of citizenship exists, as expressly confirmed by Plaintiff in his Short Form Complaint.  In light of the Supreme Court's admonition that "failing to remand a case improperly removed is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered," this Court should deny the motion to remand.[6] *Caterpillar*. 519 U.S. at 64.

Plaintiff attempts to minimize *Caterpillar* by invoking the Supreme Court's recent ruling in *Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. 421 (2026), which vacated a trial verdict after the Court determined that diversity jurisdiction was not satisfied because defendant Whole Foods had the same citizenship status as the plaintiffs. The district court attempted to cure the defect by dismissing Whole Foods, but unlike the defendant in *Caterpillar* and the SWB in this case, Whole Foods "was not dismissed correctly, and the interlocutory nature of that dismissal meant that it was reversible on appeal from the final judgment in Hain's favor. Whole Foods thus was only temporarily and erroneously removed from the case; it was not 'gone for good.'" *Hain Celestial Grp., Inc.*, 607 U.S. at 431. Thus, unlike here (where the SWB has been properly long gone—and by Plaintiff's own hand) and in *Caterpillar* (with the plaintiff's consent), in *Hain Celestial*, "the defect 'lingered through judgment[.]'" *Id.* Additionally, in *Hain Celestial*, the plaintiff always contended that Whole Foods was inappropriately dismissed, whereas in this case Plaintiff ***voluntarily dismissed*** the SWB, effectively conceding that in light of arguments made by Defendants in the removal notice, dismissal was appropriate. Applying the ruling in *Hain Celestial* to this situation would incentivize plaintiffs to quickly dismiss *any* defendant fraudulently joined, thus depriving defendants from getting a ruling on diversity jurisdiction and giving plaintiffs a

---

[6] The Supreme Court subsequently reaffirmed courts' ability to ignore the citizenship of dismissed non-diverse parties in *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004), in which it contrasted the ruling in *Caterpillar*, where the jurisdictional defect had been cured by a "method of curing a jurisdictional defect [that] had long been an exception to the time-of-filing rule" – namely, "dismissal of the party that destroyed diversity" – with circumstances where there has been a change in the citizenship status of a specific party during the litigation. *Id.* at 572, 574. The former situation cures the jurisdictional defect; the latter does not. *Id.* at 572–76; *see also Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1064–65 (9th Cir. 2019) (discussing same).

12

second bite at the apple later if they get an unfavorable ruling on the merits. That cannot be the law.

Nor do the cases cited by Plaintiff hold any sway. *See* Pl. Br. at 9-10. In *Morgan v. Tyree*, No. 2:23-cv-01160-GMN-NJK, 2023 U.S. Dist. LEXIS 158334, at \*1-2 (D. Nev. Sep. 6, 2023), the court issued an Order to Show Cause shortly after removal (i.e., nowhere near the judgment phase) and directed the defendants to demonstrate that they were completely diverse from Plaintiff; the court held that they were not. Similarly, in *Vasura v. Acands*, 84 F. Supp. 2d 531, 532 (S.D.N.Y. 2000), a decision from outside of the Ninth Circuit, the district court decided the existence of complete diversity at the very outset of the case, on a motion to remand filed just a few weeks after removal. Neither of these cases had even remotely approached the stage of the litigation that the *Watkins* case has, and none involved a years-long period where the jurisdictional issue was not even raised or mentioned. Finally, in *Rudow v. Monsanto Co.*, No. C99-4700 TEH, 2001 WL 228163, at \*2 (N.D. Cal. Mar. 1, 2001) it was the defendant who admitted that its removal was improper and advocated for remand. None of these cases govern here.

### C.    Plaintiff Did Not Contest Defendants' Fraudulent Joinder Argument Before the Transferor Court; the SWB Was a Sham Defendant.

Because Plaintiff voluntarily dismissed the SWB just after removal and never re-joined the SWB as a defendant, he did not contest before the transferor court the jurisdictional allegations that the SWB was fraudulently joined. And until a few weeks ago – over two years after transfer to this Court – Plaintiff remained completely silent as to the SWB; he did not address the issue in his June 2023 motion to remand or in oral argument on that motion, and did not mention the SWB *at all*. Indeed, he admitted in his short form complaint that diversity jurisdiction existed. The Ninth Circuit has held that a plaintiff's "failure to object to the factual allegations in the notice of removal and their decision not to move for remand" in the trial court "are construed as an admission" that the named non-diverse defendants "were sham defendants joined solely to defeat diversity." *Caswell v. Olympic Pipeline Co.*, 484 F. App'x 151, 153 (9th Cir. 2012) (removal based on diversity jurisdiction was proper, despite lack of complete diversity, because plaintiffs failed to contest fraudulent joinder allegations in removal notice). *See also Hankins v. Am. Med. Response Ambulance Serv., Inc.*, No. 116CV0/1046LJOMJS, 2018 WL 339062, at \*3 and n.5 (E.D. Cal. Jan. 9, 2018) (holding that non-

BRIEF IN OPPOSITION TO MOTION TO REMAND TO STATE COURT
CASE NO. 3:24-CV-02832-JSC (MDL NO. 3101)

diverse defendants "meet the legal definition of sham defendants and therefore do not defeat complete diversity" because, *inter alia*, "Plaintiff did not contest Defendant's position in its removal order that the Individual Defendants were sham defendants.") (citing *Caswell*, 484 Fed. App'x at 153); *Schnabel v. Lui*, 302 F.3d 1023, 1031-32 (9th Cir. 2002) ("Although subject matter jurisdiction is reviewed de novo and may be raised at any point in the proceedings, the standard shifts when the argument raises new factual bases for the lack of jurisdiction which were not developed in the trial court record. . . . the failure to contest facts alleged on removal constitutes an admission of those facts.") (citing *Albrecht v. Lund,* 845 F.2d 193, 194 (9th Cir.1988)).

To be clear, the holding in *Caswell* was rendered on appeal. But the same principle applies here. Confronted with removal allegations demonstrating that the SWB was fraudulently joined, Plaintiff decided to voluntarily cut the SWB loose and accept diversity jurisdiction and proceed in federal court, rather than challenge those allegations through a timely motion to remand.[7] And when he eventually filed his motion to remand, he challenged the diversity status of Nurture, LLC – not the SWB. Plaintiff is correct that the issue of subject matter jurisdiction may be raised at any time; but under *Caswell*, what **cannot** be raised at any time are admissions of fact sufficient to establish diversity, as well as admissions by silence as to fraudulent joinder, which is the case here. Plaintiff had numerous opportunities to litigate the SWB's diversity status and strategically chose not to do

---

[7] Plaintiff attempts to evade his voluntary decision to dismiss the SWB by claiming it was done pro se. *See* Pl. Br. at 3 ("The Watkins were proceeding pro se when Nurture removed; counsel did not appear for them until February 3, 2023, eleven months later. . . . On April 4, 2022, thirty-one days after removal, the pro se Watkins filed a one-page voluntary dismissal of the SWB without prejudice."). To be clear, James Watkins, Plaintiff's father, is a practicing attorney and is a member of the Louisiana bar. His LinkedIn profile states that he has "18 years of experience as a litigator in a broad range of cases." https://www.linkedin.com/in/james-watkins-7847482a. Mr. Watkins purported to appear "pro se" for all family members in the case and operated as lead counsel for almost a year under the charade of acting "pro se." Under Ninth Circuit precedent and rules, neither Mr. Watkins nor Plaintiff should be afforded the deference that comes with pro se status. In *Huffman v. Lindgren,* 81 F.4th 1016 (9th Cir. 2023), the Ninth Circuit addressed "whether pro se litigants who are also attorneys should be afforded liberal pleading construction and treated as proceeding without counsel under Circuit Rules 28-1(c) and 30-1.3." *Id.* at 1018-19. The court noted that pro se parties are afforded leeway because they are "[p]resumably unskilled in the law" and "far more prone to making errors in pleading that the person who benefits from the representation of counsel." *Id.* at 1021 (quoting *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000)). However, the court held "[t]hat logic does not apply to practicing attorneys, nor should the grace extend to them." *Id.* at 1021.

BRIEF IN OPPOSITION TO MOTION TO REMAND TO STATE COURT
CASE NO. 3:24-CV-02832-JSC (MDL NO. 3101)

PUBLIC - REDACTS MATERIALS FROM CONDITIONALLY SEALED RECORD

so. He should not be rewarded for lying in wait for an opportunity to spring a diversity trap on Defendants via an entity that has not been a party to the case for *over four years.*

### D.    Plaintiff Cannot Succeed on His LPLA Claim Against the SWB.

Next, the SWB was a fraudulently joined defendant because it cannot be liable under any theory as to the sole claim alleged against it under the Louisiana Products Liability Act. When applicable, the doctrine of fraudulent joinder overrides a lack of complete diversity at the time of removal. "Although an action may be removed to federal court only where there is complete diversity of citizenship . . . one exception to the requirement for complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (internal citation and quotations omitted). "Joinder is fraudulent '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.' . . . In such a case, the district court may ignore the presence of that defendant for the purpose of establishing diversity." *Id.* (internal citation and quotations omitted). The Ninth Circuit has more recently clarified that fraudulent joinder will be found when "a defendant shows that an 'individual joined in the action cannot be liable on any theory.'"[8] *Grancare LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citation omitted). Fraudulent joinder applies here for two reasons: (1) even if the SWB was still a party to the case – which it is not – Plaintiff cannot recover on his LPLA claim against the SWB because (1) it is not a "manufacturer" under the statute; and (2) the evidence produced by Plaintiff shows that ███████████████████████████████████████, the only substances for which he alleged that the SWB was purportedly responsible.

### 1.    The SWB Is Not a "Manufacturer" Under the LPLA.

A plaintiff seeking to hold an entity liable under the LPLA must establish: (1) that the utility's commodity is a "product" under La. R.S. 9:2800.53(3); (2) that the utility is a

---

[8] Plaintiff points to Justice Thomas's concurrence in *Hain Celestial,* which suggests that the fraudulent joinder theory is invalid and should be revisited. *See* Pl. Br. at 7 (quoting *Hain Celestial Grp., Inc. v. Palmquist,* 607 U.S. 421, 434, 437 (2026) (Thomas, J., concurring). A concurrence is not binding authority, nor does it represent the current state of the law in the Ninth Circuit.

BRIEF IN OPPOSITION TO MOTION TO REMAND TO STATE COURT
CASE NO. 3:24-CV-02832-JSC (MDL NO. 3101)

PUBLIC - REDACTS MATERIALS FROM CONDITIONALLY SEALED RECORD

"manufacturer" under La. R.S. 9:2800.53(1); and (3) that the product was unreasonably dangerous under one of the LPLA's four theories of liability. Here, under a plain reading of the statute, the SWB is not a "manufacturer" and therefore is otherwise exempt under the LPLA's provisions. Plaintiff simply cannot recover against the SWB under the LPLA and should never have joined it as a defendant in the first instance.

Unless the SWB qualifies as a "manufacturer" under the LPLA – which it does not – it is exempt from liability under the LPLA because it is a "[p]rovider[] of nonprofessional services where the essence of the service is the furnishing of judgment or skill, even if the service results in a product." LSA-R.S. 9:2800.52(2). As explained by one of the LPLA's drafters, "[p]roviders of professional and nonprofessional services are exempt so long as the *essence of the relationship* between the professional and nonprofessional, as the case may be, and the consumer *is a service— the furnishing of judgment or skill-and not the sale of a product*."[9] The SWB, a government entity, provides a comprehensive water, sewerage, and drainage *service* to the citizens of New Orleans. Its mission statement describes its function as providing "safe drinking water; removing waste water for safe return to the environment; and draining storm water to protect our community."[10] The fees paid are for the services of SWB, not products: "The Board is an enterprise fund of the City of New Orleans and like most enterprise funds, it is financed by user fees. These user fees cover water and sewer services only."[11] Moreover, the SWB employs engineering judgment and technical skill in water purification, sewage treatment, and storm water management. Thus, the essence of the SWB's relationship with its customers is the continuous provision of these complex engineering services — not the discrete sale of a product. It is therefore exempt under the statute.

Nor does the SWB qualify as a "manufacturer" under the statute. Under the LPLA,

---

[9] J. Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 La. L. Rev. 565, 579 (1989) (emphasis added).

[10] *See* Sewerage and Water Board of New Orleans, Comprehensive Annual Financial Report for the Years Ended December 31, 2017 and 2016, at 4, available at https://app.lla.state.la.us/PublicReports.nsf/B6FB75D1AF877B088625835A0065891C/$FILE/0001AE30.pdf. Defendants request that the Court take judicial notice of this document.

[11] *Id.* at I-6.

16

"'[m]anufacturer' means a person or entity who is in the business of manufacturing a product for placement into trade or commerce."[12] LSA-R.S. 9:2800.53. To qualify as a manufacturer under this definition, the SWB must be in the business of manufacturing a product for placement into trade or commerce, where manufacturing means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. But the SWB does not "manufacture" water "*for placement into trade or commerce*." La. R.S. § 9:2800.53(3) (emphasis added). Unlike a discrete manufactured good that is placed into commerce through a sale transaction, the SWB's water delivery is a continuous service. The SWB is a public utility and does not "sell" water in the commercial sense — it charges ratepayers for the *service* of water treatment and delivery, as established by its rate structure approved through governmental processes. Nor does the SWB have competitors who can provide similar services, and residents do not have the option to decline to purchase the services of the SWB, even if they do not use them.[13] In short, the SWB is simply not a "manufacturer" under the LPLA; as such, it is exempt from the statute's reach and Plaintiff therefore cannot hold the SWB liable under the LPLA.

### 2.    Plaintiff's Claim Against the SWB Is Unsupported by the Evidence.

Additionally, the SWB cannot be liable under Plaintiff's LPLA claim because Plaintiff's own testing of the Watkins home water supply demonstrates that the substances that Plaintiff claims caused his injuries – MTBE and ETBE – ███████████████████████████.[14] In his original state

---

[12] The LPLA also lists four alternative definitions of "manufacturer", none of which apply to the SWB on their face. *See* LSA-R.S. 9:2800.53 ("'Manufacturer' also means: (a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product[;] (b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage[;] (c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer[;] or (d) A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer.")

[13] *See* Sewerage and Water Board of New Orleans Rates, Fees & Charges Page, https://www.swbno.org/CustomerService/RatesFeesAndCharges (noting there are "Ready to Serve Essentials" which result in a "Minimum Bill for Everyone" of $58.56, regardless of water use). Defendants request that the Court take judicial notice of this document.

[14] Additionally, joinder of the SWB is inappropriate under Fed. R. Civ. P. 20(a)(2), which requires

---

17

court Petition, Plaintiff alleged (albeit indirectly) that he may have sustained injuries from drinking and bathing in water provided by the SWB and which was purportedly contaminated with MTBE and ETBE. ECF No. 1-2, ¶ 59. The Petition further alleged that the Watkins family was tested for the presence of a metabolite that indicates ETBE and MTBE exposure, and further alleged that testing of the home water supply was "pending." *Id.* In its removal notice, Nurture noted the speculative nature of that allegation, stating that "the Petition admits that Plaintiffs do not know if SWB water is contaminated with MTBE and/or ETBE at all, let alone that it is their *sole* and thus causative source of exposure." ECF No. 1 at 7.

In his Motion, Plaintiff distorts Nurture's argument by claiming that "the Petition does not allege a speculative claim" and that Nurture mischaracterized the test results mentioned in the complaint. Plaintiff misses the point – at the time the Petition was filed, there was no factual basis for Plaintiff's claim that SWB's water was a source of MTBE and ETBE, much less the only source. And since the original Petition was filed, the testing of the SWB water – ███████████████ ███ (prior to removal) and later produced in discovery – affirmatively disproves Plaintiff's theory as to MTBE and ETBE contamination of the water supply, ████████████████████ ████████████████████ Kim Decl., Ex. A. Tellingly, Plaintiff voluntarily dismissed the SWB as a defendant shortly thereafter. Because testing demonstrates that Plaintiff's theory of liability as to SWB's liability was unfounded, Plaintiff could not have succeeded in its claim under the LPLA as to the SWB, which was fraudulently joined and therefore did not defeat diversity.

## II.    Nurture, LLC Properly Alleged and Proved Facts Demonstrating Its Diversity of Citizenship from Plaintiff.

Plaintiff once again raises the same argument that he argued and lost before the transferor court – namely, that Nurture and its parent company members were not diverse from Plaintiff, who

---

that "any right to relief" against joined defendants "is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." `Here, the SWB was only named in a single count separate from the other defendants, and the alleged contamination of baby food with heavy metals and the alleged contamination of the water with MTBE and ETBE are not part of "the same transaction, occurrence, or series of transactions or occurrences."

18

is a Louisiana citizen. Plaintiff's argument fails because (1) under 28 U.S.C. § 1653, defective allegations of jurisdiction may be amended, and (2) Plaintiff does not meaningfully challenge or disprove the evidence that Nurture offered in support of diversity. Plaintiff's arguments to the contrary misrepresent the law and/or are entirely speculative, and the Court should reject them.

### A.    Nurture Was Permitted Under the Federal Rules to Amend the Removal Notice, and the Amendment Relied on the Same Jurisdictional Basis.

Plaintiff challenges Nurture being permitted to amend the Notice of Removal to add allegations as to the citizenship of Nurture, LLC'S members. The parties agree that 28 U.S.C. § 1653, which states that that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts[,]" governs the issue. And per the Ninth Circuit, section 1653 is a "liberal amendment rule" that "permits a party who has not proved, or even alleged, that diversity exists to amend his pleadings even as late as on appeal." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613 (9th Cir. 2016). Plaintiff nevertheless insists that section 1653, along with the Supreme Court's ruling in *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826 (1989), forecloses the type of amendment that Nurture sought and the transferor court granted.  Plaintiff misrepresents the meaning of the statute and ignores a legion of authority from the Ninth Circuit and district courts within the Ninth Circuit expressly permitting amendment of citizenship allegations generally as well as allegations regarding members of an LLC.

Plaintiff relies on the holding in *Newman-Green* for the proposition that "§ 1653 'allows appellate courts to remedy inadequate jurisdictional allegations, but not defective jurisdictional facts.'"  Pl. Br. at 12 (quoting *Newman-Green,* 490 U.S. at 832). But Plaintiff ignores entirely the type of situation that the Supreme Court specified as constituting "defective jurisdictional facts" – namely, "where diversity jurisdiction does not, in fact, exist." *Newman-Green*, 490 U.S. at 831; *see also id.* (noting that "[t]his interpretation of § 1653 is consistent with the language of its predecessor statute, enacted in 1915, which expressly limited jurisdictional amendments to cases in which diversity jurisdiction 'in fact existed at the time the suit was brought or removed, though defectively alleged.'"). Here, in contrast, Nurture's amended allegations regarding the LLC's members, once established, demonstrate that diversity exists as to Nurture and Plaintiff, and always did exist. That

19

is because those amendments and the supporting documents "trace through" the "layers of partners or members" in Nurture's corporate structure "until the underlying party's citizenship is established" – in this case, Danone US, Inc., which is a foreign corporation organized under the laws of Delaware with its principal place of business in New York. *Asana Partners Fund II Reit 14 LLC v. Heath Fam. I LLC*, No. C20-1034-JCC, 2020 WL 7241449, at \*2 (W.D. Wash. Dec. 9, 2020) (citation omitted); *see also Kwong v. Santa Clara Cnty. Sheriff's Off.*, No. 17-CV-02127-BLF, 2018 WL 1258180, at \*4 n.2 (N.D. Cal. Mar. 12, 2018) (tracing citizen status to incorporated member of LLC). These are precisely the type of "jurisdictional allegations" contemplated by section 1653. Indeed, Plaintiff agrees with this principle, stating that "[w]here jurisdiction actually existed but was inadequately pleaded, § 1653 cures[.]" Pl. Br. at 12.

Next, Plaintiff distorts the standard to determine what types of "jurisdictional allegations" may be permissibly amended under section 1653, arguing that the statute "does not reach the supply of different jurisdictional facts under a different analytical framework" and that "where the original notice rests on a fundamentally different jurisdictional basis," section 1653 does not permit amendment.[15] Pl. Br. at 12, 14. Citing *ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality,* 213 F.3d 1108 (9th Cir. 2000), Plaintiff states that "a notice of removal 'cannot be amended to add a separate basis for removal jurisdiction after the thirty day period.'" Pl. Br. at 12 (quoting *ARCO,* 213 F.3d at 1117). Plaintiff then attempts to classify Nurture's grounds for amendment – adding allegations as to citizenship – as a "separate basis" not permitted by the statute. But *ARCO* and other decisions in the Ninth Circuit do not agree with Plaintiff's interpretation. Adding allegations in support of diversity does not constitute a "separate basis" for jurisdiction.

In *ARCO*, the court denied amendment because the defendant sought to add two additional statutory justifications for federal jurisdiction (the supplemental jurisdiction statute and the All Writs Act) ***not pleaded in the notice of removal***; the court held that these were separate bases for

---

[15] Plaintiff argues that the amended removal notice does not relate back to the original removal notice because "[a]n amendment beyond § 1653's scope, filed after § 1446's thirty-day removal window, does not relate back to the original Notice." Pl. Br. at 14. As discussed above, Nurture's amendments are well within section 1653's scope, and thus relate back to the original notice.

jurisdiction and denied amendment. In contrast, Nurture amended allegations as to ***the same statutory justification relied upon in its notice of removal*** – the diversity statute. In Plaintiff's other cited Ninth Circuit case, *Snell v. Cleveland, Inc.,* 316 F.3d 822 (9th Cir. 2002), the court granted amendment, noting that "[w]e have previously permitted amendment of complaints at the appellate level in order to correct defective jurisdictional allegations." *Id.* at 828. It then cited two Ninth Circuit cases that expressly permitted amendment of citizenship allegations. [16] *See id.* (citing *Blue Ridge Ins. Co. v. Stanewich,* 142 F.3d 1145, 1148 (9th Cir.1998) (permitting amendment of the complaint after ordering the plaintiff to file certifications of citizenship to show complete diversity existed); *Molnar v. Nat'l Broad. Co.,* 231 F.2d 684, 686–87 (9th Cir.1956) (holding that a complaint defectively alleging citizenship can be amended to show true facts).

Decisions from courts throughout this Circuit have repeatedly affirmed the principle that diversity allegations can be amended or supplemented in an amended removal notice in circumstances where diversity remains the basis for subject matter jurisdiction. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001) (noting that defendant "could potentially have cured its defective allegations regarding citizenship by amending its notice of removal."); *Medero v. Norada Cap. Mgmt.*, No. 8:25-CV-00574-DOC-KES, 2025 WL 2630389, at *4 (C.D. Cal. Sept. 12, 2025) (contrasting the "multiple bases under which federal question jurisdiction may attach" with diversity jurisdiction, which has only "one basis" – "that there is complete diversity and the amount in controversy threshold has been met."); *Good v. Google LLC*, No. 22-CV-05622-JSC, 2022 WL 17436482, at *4 (N.D. Cal. Dec. 6, 2022) ("[a] defendant may amend its notice of

---

[16] Plaintiff cites two treatises in support of his framing of the scope of section 1653. The first, 14C Wright & Miller, Federal Practice and Procedure § 3733, at 651–59 (4th ed. 2009), as quoted by Plaintiff, states that an amended removal notice cannot "furnish missing allegations[.]" But as explained below, courts in this circuit have repeatedly permitted parties to add missing allegations as to the citizenship of LLC members. And both Wright & Miller and Plaintiff's other cited treatise, Moore's Federal Practice, are actually consistent with Ninth Circuit precedent permitting amendment so long as it is not a different basis for jurisdiction. *See id.* (parties "may not add completely new grounds for removal"); 16 Moore's Federal Practice § 107.30[2][a][iv] ("Amendment may be permitted after the 30-day period if the amendment corrects defective allegations of jurisdiction, but not to add a new basis for removal jurisdiction."). As noted above, Nurture never sought to add a different basis for jurisdiction to the removal notice.

BRIEF IN OPPOSITION TO MOTION TO REMAND TO STATE COURT
CASE NO. 3:24-CV-02832-JSC (MDL NO. 3101)

removal to correct defective jurisdictional allegations—such as the failure to specify a party's citizenship—so long as the basis for removal (e.g., diversity jurisdiction) remains the same as in the original notice of removal."); *Overholt v. Airista Flow Inc.*, No. 17CV1337-MMA (AGS), 2018 WL 355231, at *3 (S.D. Cal. Jan. 10, 2018) (allowing amendment of removal notice because defendant "is not asserting a new ground for removal" as the notice alleged diversity jurisdiction and defendant sought to "supplement its notice of removal with the declarations . . . in support of its claim that the parties are diverse."); *Anderson v. Serenity Gathering, LLC*, No. 316CV02802GPCKSC, 2017 WL 192268, at *3 (S.D. Cal. Jan. 18, 2017) (granting motion to amend notice of removal and denying motion to remand because defendant "maintains the same legal grounds for removal—diversity jurisdiction—and seeks to amend its imperfect allegations of citizenship in a manner consistent with Ninth Circuit precedent."); *Geerlof v. C & S Wholesale Grocers, Inc.*, 2014 WL 1415974, at *5 (E.D. Cal. Apr. 14, 2014) (permitting amendment where the defendants "merely seek to supplement their original Notice of Removal with facts that support" diversity jurisdiction).

Further, this principle explicitly extends to circumstances where a party seeks to amend a removal notice to add allegations as to the citizenship of an LLC's members, as is the case here. Such amendments are typically allowed under section 1653's liberal pleading standards. *See Lindley Contours, LLC v. AABB Fitness Holdings, Inc.*, 414 Fed. App'x 62, 64 (9th Cir. 2011) (granting leave to amend removal notice where defendant removed on basis of diversity jurisdiction but failed to allege the citizenship of all members of a limited liability company); *Doe v. Deutsche Lufthansa Aktiengesellschaft*, No. 23-CV-04413-SI, 2025 WL 2578241, at *1–4 (N.D. Cal. Sept. 5, 2025) (permitting defendants to amend notice of removal to add allegations as to citizenship of one LLC defendant's members); *Mitchell v. Paws Up Ranch LLC*, No. CV 08-111-M-DWM-JCL, 2008 WL 11417152, at *2 (D. Mont. Oct. 10, 2008), *report and recommendation adopted*, 597 F. Supp. 2d 1132 (D. Mont. 2009) (allowing amendment of removal notice as to facts regarding citizenship of members of two LLC defendants); *see also NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 611–13 (9th Cir. 2016) (allowing amendment of complaint under 28 U.S.C. § 1653 to allege citizenship of LLC's members). In short, section 1653 definitively allows the types of amendments offered here.

BRIEF IN OPPOSITION TO MOTION TO REMAND TO STATE COURT
CASE NO. 3:24-CV-02832-JSC (MDL NO. 3101)

**B.    The Evidence Submitted by Nurture Establishes That It Was Diverse from Plaintiff at the Time of Removal.**

Finally, Plaintiff challenges the sufficiency of the evidence presented by Nurture as to its citizenship. As an initial matter, the issue of whether Nurture, LLC was diverse from Plaintiff was *already decided* by the transferor court. It reviewed all of Nurture's evidence and found it sufficient to establish diversity jurisdiction, and denied Plaintiff's motion to remand. *See* ECF No. 357 (stating that the court had "carefully reviewed and considered the record in this action, the subject motions, the memoranda and materials submitted in connection with same, as well as the arguments of counsel, and the applicable law[.]"). Plaintiff never moved for reconsideration of that ruling and does not attempt to satisfy the standard for reconsideration in his brief. *See Dewan v. M-I, L.L.C.,* No. 1:14-CV-01151-AWI, 2015 WL 3797462, at *5 (E.D. Cal. June 18, 2015) (transferor court may reconsider a prior ruling of a transferor court when the governing law has been changed by the subsequent decision of a higher court, new evidence becomes available, clear error has been committed, or to prevent manifest injustice). Instead, he simply notes that subject matter jurisdiction can be reviewed at any time. *See* Pl. Br. at 6. But that does not encompass a wholesale reassessment of the exact same issue and the exact same evidence previously reviewed by a transferor court. "Courts that have analyzed the issue of whether a transferee court has authority to vacate orders issued prior to MDL consolidation and transfer apply the 'law of the case' doctrine because 'nothing in the text of 28 U.S.C. § 1407 ... authorizes a transferee judge to vacate or modify an order of a transferor judge.'" *In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Pracs. Litig.,* 282 F.R.D. 486, 491 (C.D. Cal. 2012) (quoting *In re Pharmacy Benefit Managers Antitrust Litig.,* 582 F.3d 432, 440 (3d Cir. 2009). "A court may have discretion to depart from the law of the case where: (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." *United States v. Alexander,* 106 F.3d 874, 876 (9th Cir. 1997). Plaintiff makes no effort to demonstrate how any of those circumstances apply here.

As for the merits of Nurture's evidentiary showing, Plaintiff attacks the George Declaration, which was submitted by Nurture in the transferor court in support of diversity jurisdiction. Nurture

23

PUBLIC - REDACTS MATERIALS FROM CONDITIONALLY SEALED RECORD

presented the declaration in a supplemental memorandum after the transferor court suggested during oral argument on the first motion to remand that Nurture do so. *See* ECF No. 170 at 30-31, 36; *see also* ECF No. 200. Importantly, Plaintiff filed his own post-hearing supplemental memorandum (ECF No. 201), but he never challenged the accuracy or sufficiency of the George Declaration, either in the supplemental memorandum or at any time thereafter in the transferor court.

Plaintiff first attempts to cast doubt on the George Declaration because it was made by the Director of Tax Planning of Danone North America, PBC (the parent company of all of the relevant entities) and that Danone North America "does not appear anywhere in the asserted four-link chain" of Danone entities relevant to the diversity issue. Pl. Br. at 12-13. This is absurd. Danone North America (now Danone USA, PBC) is the parent company of all of the relevant entities. A representative of that parent company – particularly one focused on tax planning – is surely competent to testify regarding Nurture's corporate structure. And Mr. George specifically stated that he had personal knowledge. *See* ECF No. 200-1 ¶ 1. Plaintiff offers nothing to refute that fact.

Plaintiff's second complaint is that Mr. George's declaration did not specifically spell out that the relevant Danone entities were citizens of Delaware and New York ***at the time of removal***. Pl. Br. at 13. But that information can be easily confirmed or inferred from the documents attached and verified by Mr. George and by Nurture's amended removal notice and its opposition to the original motion to remand.[17] *See supra* at 3; ECF No. 200-1 (George Decl.), ¶¶ 8-14; ECF No. 200-2 at 6-7 (Nurture, LLC); ECF No. 200-5 at 6-7 (Happy Family Holding Company, LLC); ECF No. 200-7 at 2 (Danone US, LLC); ECF No. 200-9 at 2 (Danone US, Inc.); ECF No. 153-2 at 2-3 (stating that the relevant entities were not presently, and were not at the time this action was commenced or removed, a citizen of the State of Louisiana); ECF No. 119 at 6-7 (stating that information showing diversity of citizenship of Nurture entities "was operative both when Plaintiffs filed their Petition in state court and when Nurture removed this suit to federal court[.]"). And, as noted above (*supra* at

---

[17] In any event, should the Court deem it necessary, Nurture is prepared to offer a declaration from a corporate representative specifically stating that none of the relevant entities were **ever** citizens of Louisiana. To be clear, based on its previous submissions and the transferor court's ruling, Nurture does not believe that such a declaration is necessary to establish diversity jurisdiction.

24

Section II.A.), there can be no doubt (nor does Plaintiff offer any) that the evidence provided by Nurture "traces through" the "layers of partners or members" in Nurture's corporate structure to Danone US, Inc., a foreign corporation organized under the laws of Delaware with its principal place of business in New York. *Asana Partners*, 2020 WL 7241449, at *2. Instead, Plaintiff has provided nothing more than speculation in attempting to refute the fact that none of the relevant entities is a citizen of Louisiana. For all of these reasons, diversity jurisdiction clearly exists, and Plaintiff's motion should be denied.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand should be denied.

Dated: June 30, 2026                           Respectfully submitted,

                                               DLA PIPER LLP (US)

                                               By: /s/ Brooke Killian Kim
                                               Brooke Killian Kim (CA Bar No. 239298)
                                               4365 Executive Drive, Suite 1100
                                               San Diego, CA 92121
                                               Telephone: (619) 699-3439
                                               Facsimile: (858) 677-1401
                                               E-mail: brooke.kim@dlapiper.com

                                               Mary Gately (*pro hac vice*)
                                               500 Eighth Street NW
                                               Washington, DC 20004
                                               Telephone: (202) 799-4507
                                               Facsimile: (202) 799-5507
                                               E-mail: mary.gately@dlapiper.com

                                               Loren H. Brown (*pro hac vice*)
                                               1251 Avenue of The Americas
                                               New York, NY 10020
                                               Telephone: (212) 335-4846
                                               Facsimile: (212) 884-8546
                                               E-mail: loren.brown@dlapiper.com

                                               *Attorneys for Defendant*
                                               *Nurture, LLC*

By: /s/ Michael X. Imbroscio
Michael Xavier Imbroscio
Covington and Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-5694
Fax: (202) 278-5868
Email: mimbroscio@cov.com

*Counsel for Hain Celestial Group, Inc.*

By: /s/ Brian M. Ballay
Steven F. Griffith, Jr. (pro hac vice)
sgriffith@bakerdonelson.com
Brian M. Ballay (pro hac vice)
bballay@bakerdonelson.com
Samuel L., Felker (pro hac vice)
samfelker@bakerdonelson.com
Alexandra B. Rychlak (pro hac vice)
arychlak@bakerdonelson.com
N. Kordell Caldwell (pro hac vice)
kcaldwell@bakerdonelson.com
BAKER DONELSON BEARMAN CALDWELL &
BERKOWITZ
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone: (504) 566-5200

*Counsel for Whole Foods Market Services, Inc*

By: /s/ Ashley Vulin
Ashley Vulin *(pro hac vice)*
P. Andrew McStay, Jr. *(pro hac vice)*
DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, OR 97205
Telephone: (503) 778-5493
Facsimile: (503) 276-5793
ashleyvulin@dwt.com
Andymcstay@dwt.com

*Counsel for Amazon.com Services LLC*

26

## ATTESTATION OF CONCURRENCE IN FILING

In accordance with Northern District of California Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the signatories who are listed on the signature page.

/s/ Brooke Killian Kim
Brooke Killian Kim

BRIEF IN OPPOSITION TO MOTION TO REMAND TO STATE COURT
CASE NO. 3:24-CV-02832-JSC (MDL NO. 3101)

PUBLIC - REDACTS MATERIALS FROM CONDITIONALLY SEALED RECORD

## CERTIFICATE OF SERVICE

I certify that on June 30, 2026, I electronically filed the foregoing Opposition to Plaintiff's

Motion to Remand with the Clerk of the Court using the ECF system, which sent notification of

such filing to all counsel of record.

/s/ Brooke Killian Kim
Brooke Killian Kim
*Counsel for Nurture, LLC*

28