BROOKE KILLIAN KIM, SBN 239298
brooke.kim@dlapiper.com
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, California 92101-2133
Telephone: 619.699.3439
Facsimile: 619.699.2701

*Attorney for Defendant Nurture, LLC*
*and Liaison Counsel for Defendants*

R. BRENT WISNER, SBN 276023
rbwisner@wisnerbaum.com
**WISNER BAUM**
11111 Santa Monica Blvd., Suite 1750
Los Ángeles, CA 90025
Telephone: (310) 207-3233

AIMEE H. WAGSTAFF, SBN 278480
awagstaff@wagstafflawfirm.com
**WAGSTAFF LAW FIRM**
940 N. Lincoln Street
Denver, Colorado 80203
Telephone: 303.376.6360
Facsimile: 303.376.6361

*Co-Lead Counsel and Liaison for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION | Case No. 24-MD-3101-JSC<br><br>MDL 3101<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT PURSUANT TO PRETRIAL ORDER NO. 22** |
| This document relates to:<br><br>ALL ACTIONS | Date: October 14, 2026<br>Time: 9:00 a.m. PT<br>Judge Hon. Jacqueline Scott Corley |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Pursuant to Pretrial Order No. 22, the Parties have met and conferred regarding a list of cases for which summary judgment, and partial summary judgment, will be granted.

Exhibit A includes the list of plaintiffs whose claims the Parties agree are subject to summary judgment in light of the Court's *Daubert* ruling.

Exhibit B includes the list of plaintiffs whose claims the Parties agree are subject to partial summary judgment because they also assert a claim related to infant formula. Partial summary judgment is appropriate as to all claims except the plaintiffs' claims relating to infant formula. The Parties agree that the surviving infant formula claims should be stayed pending resolution of the anticipated appeal of the Court's *Daubert* ruling.

Exhibit C includes the list of plaintiffs who allege injuries in addition to autism and/or ADHD. The Parties agree that these plaintiffs' autism and/or ADHD claims are subject to partial summary judgment on their autism and/or ADHD claims.

Because each of these Plaintiffs have alleged injuries beyond ASD and ADHD, Plaintiffs propose two alternative approaches. The most efficient approach is for the Court to stay these cases pending resolution of the anticipated appeal of the Court's *Daubert* ruling. Should the Ninth Circuit reverse, then these cases can proceed in step with the rest of the cases in the MDL upon remand. Should the Ninth Circuit affirm, then these Plaintiffs will be in an ideal position to decide if they will want to proceed with the remaining injuries or simply dismiss their claims. Requiring each Plaintiff to file a "declaration of intent" without yet knowing the disposition of the *Daubert* appeal deprives the Plaintiffs from making a fully informed decision. Alternatively, if staying the cases does not work for the Court, Plaintiffs ask this Court to have each case worked up pursuant to a second general causation proceeding for the injuries alleged. Plaintiffs object to the one-sided and prejudicial plan proposed by Defendants, effectively requiring Plaintiffs to engage in expert work without any attendant expert disposition or motions practice.

With regard to any additional claims identified in Column I, however, Defendants contend that each plaintiff who is identified as having such a claim should be required to submit (i) a declaration of intent to proceed with such claim, and (ii) supporting declaration(s) from an

expert(s), as described more fully in section I, *infra*. Plaintiffs who do not submit both declarations within 30 days of an order requiring same should be subject to complete summary judgment.

## I. <u>Exhibit B and C Plaintiffs</u>

The Parties agree that the cases identified on Exhibit B should be stayed pending the *Daubert* appeal. Following resolution of that appeal, the Parties will meet and confer and present a proposal for the MDL based on the Ninth Circuit's ruling. The Parties disagree on the next steps for the current plaintiffs who allege injuries other than autism or ADHD (Exhibit C), and their respective positions are described below.

### A. Plaintiffs' Position

Twenty-six (26) Plaintiffs on Exhibit C allege stand-alone injuries that are distinct from ASD and/or Autism, such as "Intellectual Disability,"[1] "Disruptive Mood Dysregulation Disorder,"[2] "Mixed Receptive-Expressive Language Disorder,"[3] "General Anxiety Disorder,"[4] and "Developmental Language Disorder"[5]—to name a few. These conditions are diagnostically different than ASD and ADHD and are, clinically and in the epidemiology, treated separately. Defendants' claim that such injuries are merely "derivative" of ASD and ADHD glosses over substantial scientific consensus that such diagnoses are distinct from ASD and ADHD. None of these injuries are "new" as suggested by Defendants below. These injuries are clearly alleged as "other" from ASD and ADHD in each of 26 Plaintiffs' short form complaints.

Here, the Court never considered, and Plaintiffs never presented, expert opinions addressing whether the heavy metals in baby food are capable of causing these other, sometimes less severe, injuries that several MDL Plaintiffs alleged. And, at no point, did the Court or the Parties contemplate general causation proceedings on these separate injuries and clinical diagnoses.

To address these cases, Plaintiffs propose that the cases simply be stayed pending resolution of the anticipated appeal, along with all the other cases that will be stayed. If the Ninth Circuit

---

[1] 25-cv-05701, Doc. 1, at 26.
[2] 25-cv-09337, Doc. 1 at 25.
[3] 24-cv-02828, Doc. 153 at 25.
[4] *Id.*
[5] 25-cv-09309, Doc. 1 at 25.

reverses, then these Plaintiffs can have the partial summary judgment on their ASD / ADHD claims vacated and they can proceed with however this Court organizes the litigation at that point. If the Ninth Circuit affirms, these Plaintiffs can decide if they want to continue with their claims without their ASD and/or ADHD claims. Many Plaintiffs, at that point, may very well decide to abandon their non-ASD/ADHD claims based on the Ninth Circuit's ruling. However, forcing these Plaintiffs to move forward, now, without knowing the outcome of the appeal on their ASD and/or ADHD claims, simply incentivizes litigation and creates work that may or may not be needed in the future. Everyone agrees that an appeal is forthcoming and that the result of that appeal will bear directly on all cases pending in this MDL. It only makes sense, then, to allow that process to unfold before any more time is spent litigating.

If the Court, however, wants to move these claims forward, Plaintiffs propose that the Court proceed the same way it did for the ASD and/or ADHD claims. The Court should frame the issues, order expert disclosures and discovery related to each alleged injury, and hear Rule 702 motions regarding the admissibility of proffered experts. Yes, this would entail several months of discovery and briefing—but that is exactly what the Rules of Civil Procedure require in adjudicating the merits of a Plaintiff's claim.

Defendants, however, propose an unorthodox one-sided approach that departs from any known Rule and, essentially, asks each Plaintiff to do something above and beyond what they would be required to do if their case were to proceed individually. First, Defendants ask Plaintiffs to declare that they personally read this Court's Daubert order and then acknowledge that they must proceed with their claims without ASD / ADHD without any acknowledgment or mention of the fact that the Court's Daubert order will be subject to an appeal and, if reversed, may very well allow their ASD / ADHD claims to proceed. It is almost impossible to fashion a declaration that does not invade or undermine the attorney-client relationship, and it essentially allows Defendants to conduct discovery about litigation strategy. There is zero authority to require that each plaintiff file a "declaration of intent" essentially outlining conversations with counsel because such overreach is inappropriate. Defendants seem to suggest that Plaintiffs failed to properly advise their clients despite zero evidence to suggest otherwise. There is simply no reason for the Court to

inject itself into the attorney-client relationship as proposed or circumvent the traditional method of attorney-client relations.

If the Court wants to address the non-ASD / ADHD claims now, then ordering an expert discovery process, followed by Rule 702 briefing, is what the Rules—and the Manual on Complex Litigation—provide. Any Plaintiff that wants to proceed with non-ASD / ADHD claims will need to produce an expert to support general causation and, following expert discovery, the Court can adjudicate whether that proffered testimony is admissible. If the Court wants to order case-specific discovery at the same time, Plaintiffs would not object—indeed, Plaintiffs continue to assert that separating general and case-specific expert work in this MDL is exceptionally difficult due to the nature of the claims.

Defendants' proposal below, involving an awkward "declaration of intent" process with incomplete "expert" opinions, is unnecessary and highly prejudicial. The Court should either give each Plaintiff due process and allow them to proceed with expert discovery and general causation, or stay the cases to allow an informed decision after the appeal process—which makes much more sense. A one-sided Defense-oriented procedure that requires Plaintiffs to do some of the expert work without any adjudication or forward movement of the case is unfair.

**A. Defendants' Position**

Some plaintiffs plead purported injuries that they now claim are in addition to autism and ADHD, *see* Ex. B; for example, speech and/or developmental delays, anxiety disorders, and mixed receptive-expressive language disorder, among others. Because these injuries are commonly viewed as being derivative or associated with autism and/or ADHD, Defendants propose that this group of plaintiffs submit the following sworn declarations: (1) a declaration by the plaintiff or the guardian ad litem that attests he/she is aware of the Court's February 2026 Order applicable to autism and ADHD claims (Dkt. 710), he/she understands the Court's Order, and he/she wants to proceed with claims for injuries separate from claims and without the right to pursue claims for autism and ADHD; (2) a declaration from a general causation expert that consumption of Defendants' baby foods is capable of causing the identified additional injury claims based on scientific literature studying the specific additional injury alleged; and (3) a declaration from an

expert that the plaintiff's other alleged injuries are not derivative of or consequences of the plaintiff's autism or ADHD.

Requiring these plaintiffs to submit such declarations is important for three reasons. *First*, the Parties and the Court need to know if these plaintiffs are willing to undertake the time and resources involved in continuing to litigate these claims in light of the Court's Order to exclude Plaintiffs' expert witnesses. (Dkt. 710). *Second*, relevant to the Court's Order, these plaintiffs cannot proffer the same experts that the Court excluded because their methodology is unreliable and there is no basis to assume that methodology can be cured based on new or different studies that would alter the epidemiology. *Third*, these plaintiffs need an expert who will opine that the alleged additional injuries are not derivative or consequences of their autism or ADHD. As Defendants noted in their summary judgment reply (Dkt. 743, at 13-14), Plaintiffs have consistently defined their injuries as "neurological harms" manifesting as autism and ADHD. The "other injuries" alleged by these plaintiffs are neurological conditions: anxiety and mood disorders, speech and language delays and disorders, behavioral disorders, developmental delays, intellectual disability, and oppositional defiant disorders. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 5th ed. 2013 ("APA 2013"); Hyman SL, Levy SE, Myers SM, *Identification, Evaluation, and Management of Children With Autism Spectrum Disorder*, Pediatrics. 2020;145(1). doi:10.1542/peds.2019-3447. Around 70% of individuals with autism have one of these mental disorders, and 40% may have two or more of them. APA 2013. A reason for the overlap is the substantial shared or overlapping genetic risks amongst them. Faraone SV, Banaschewski T, Coghill D, et al., *The World Federation of ADHD International Consensus Statement: 208 Evidence-based conclusions about the disorder*. Neurosci Biobehav Rev. 2021; 128:789-818, doi:10.1016/j.neubiorev. Thus, the plaintiffs need an expert who can reliably show that the alleged additional injuries are not part of the overall presentation of their autism or ADHD but rather independent and stand-alone "injuries." Otherwise, they are subject to the Court's Order to exclude Plaintiffs' expert witnesses.

Contrary to Plaintiffs' position, Defendants' proposal is neither unorthodox, nor does it require that "any more time is spent litigating within the MDL." Defendants do not seek full expert

reports. Instead, Defendants ask this group of Plaintiffs to inform the Court and Parties whether they intend to proceed with their claims and to provide declarations from new experts simply stating that, despite the Court's Rule 702 Order and the current state of the epidemiology, those experts intend to opine that baby foods are capable of causing these other injuries and that these injuries are separate, distinct injuries and not part and parcel of their autism or ADHD. Plaintiffs' proposal to either stay these claims or engage in another Rule 702 exercise does not make sense. One purpose of these next steps is to evaluate the actual docket inventory remaining after summary judgment is entered to help inform next steps after the Ninth Circuit decides the appeal. It is not too much to ask these plaintiffs to take a small number of steps to help get a realistic sense of the docket. Another Rule 702 general causation proceeding is too much to ask at this point and puts the cart before the horse. If these plaintiffs no longer intend to proceed with their claims and/or do not have experts who can simply attest that there is reliable scientific evidence demonstrating general causation and that their injuries are not symptoms of their autism or ADHD, then a general causation proceeding would be a waste of everyone's time and resources. Plaintiffs' alternative proposal also contradicts their position that no more time should be spent litigating these cases pending the resolution of the appeal.

## II. <u>Orders Of Judgment</u>

### A. Plaintiffs' Position

Without waiving their rights to appeal or any arguments about the propriety of the Court's various pretrial, *Daubert,* and summary judgment orders, Plaintiffs respectfully request that the Court enter the following orders:

1. Summary judgment and entry of final judgment on those cases listed on Exhibit A;
2. Partial summary judgment on Plaintiffs' baby food claims related to ASD and ADHD for those cases listed on Exhibit B and C.
3. Within 30 days of the issuance of the Ninth Circuit's mandate, the Parties should be ordered to submit a joint CMC statement addressing the Ninth Circuit's ruling and how to proceed within the MDL.

**B. Defendants' Position**

Defendants respectfully request that the Court enter the following orders and judgments:

1. In cases involving only pleaded claims that commercial baby food caused the plaintiff to develop autism and/or ADHD: (i) grant summary judgment under Rule 56 to Defendants, and (ii) enter final judgment under Rule 58 in each of those actions.[6]
2. In cases where plaintiffs, in addition to the above claims, pleaded other injuries and/or infant formula claims: (i) grant summary judgment under Rule 56 to Defendant on their claims that commercial baby food caused the plaintiff to develop autism and/or ADHD, (ii) expressly determine under Rule 54(b) that there is no just reason for delay in entry of final judgment as to those claims, and direct entry of final judgment in favor of Defendants on those claims after plaintiffs who plead other injuries submit the requisite declarations.[7]

The plaintiffs alleging other injuries should provide the requested declarations. Those who do should remain stayed, and those who don't should be dismissed with prejudice. The remaining claims not subject to (1) and (2) should remain stayed pending resolution of any appeal. Defendants are not opposed to Plaintiffs' suggestion for a CMC statement and conference after the Ninth Circuit issues its decision but suggest that the statement be due 60 days after the Ninth Circuit issues its final mandate to allow the Parties time to digest the decision and confer regarding next steps.

## III. *Watkins* Remand

**A. Plaintiffs' Position**

On September 17, 2026, after this Court remanded *Watkins* to the Civil District Court for the Parish of Orleans, Whole Foods removed the case to the Eastern District of Louisiana a second time, with the consent of every other Defendant. This time, Whole Foods, does not argue fraudulent joinder explicitly. Instead, they invoke the bad-faith exception to the one-year limit on diversity

[6] These include the plaintiffs listed on Exhibits A.
[7] These include the plaintiffs listed on Exhibits B and C.

removals, claiming that Plaintiff joined the Sewerage and Water Board in 2022 "without any genuine intent to pursue claims against it." As its "new factual basis," the Notice identifies the same April 2022 dismissal, the same four years in which Plaintiff did not pursue the Board, and a September 11 state-court scheduling motion that lists the parties as the docket has reflected them since 2022 (that is, the same facts this Court considered in its August 19 order). The Notice also takes the position that the thirty-day removal window under § 1446(b) runs from the date of this Court's remand order. Plaintiff had served written discovery on all four Defendants in state court on September 1, and four days after removing, Defendants advised Plaintiff's counsel that they "will not be responding" to it while the removal is pending.

Plaintiff will move to remand by the applicable deadline. Plaintiff seeks no relief from this Court, but raises the matter so that the Court is aware that the case it remanded less than eight weeks ago is again in federal court on the facts the Court has already weighed, and because, should the Eastern District not remand first, Watkins would be a potential tag-along action and would return to this Court in due course.

**B. Defendants' Position**

As of the date of this submission, no issue relating to the *Watkins* case is before this Court. A party not before this Court, Whole Foods, removed the *Watkins* case because the parties to that action are completely diverse given that Plaintiff dismissed the non-diverse party. Whole Foods does not make a fraudulent joinder argument. It asserts that the one-year bar does not prevent removal because including the non-diverse party in the case was done in bad faith, pursuant to 28 U.S.C. § 1446(c)(1). This one-year bar analysis is based on a different standard than fraudulent joinder.

Respectfully submitted,

Dated: October 12, 2026

DLA PIPER LLP (US)

By: */s/ Brooke K. Kim*
Brooke Killian Kim (CA Bar No. 239298)
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Telephone: (619) 699-3439

Facsimile: (858) 677-1401
E-mail: brooke.kim@dlapiper.com

*Liaison Counsel for Defendants*

Dated: October 12, 2026

WAGSTAFF LAW FIRM

By: */s/ Aimee H. Wagstaff*
Aimee H. Wagstaff (CA Bar No. 278480)
940 N. Lincoln Street
Denver, Colorado 80203
Telephone: (303) 376-6360
E-mail: awagstaff@wagstafflawfirm.com

Dated: October 12, 2026

WISNER BAUM LLP

By: */s/ R. Brent Wisner*
R. Brent Wisner (CA Bar No. 276023)
11111 Santa Monica Blvd., Suite 1750
Los Angeles, CA 90025
Telephone: (310) 207-3233
E-mail: rbwisner@wisnerbaum.com

*Co-Lead Counsel and Liaison Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2026 a true and correct copy of the foregoing document was electronically filed with the Clerk of the United States District for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

*/s/ Brooke Killian Kim*
Brooke Killian Kim

## ATTESTATION OF CONCURRENCE IN FILING

In accordance with Northern District of California Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the signatories who are listed on the signature page.

*/s/ Brooke Killian Kim*
Brooke Killian Kim